| | |
|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR MFRA TRUST 2015-1 | |
|     Plaintiff | |
| v. | CIVIL ACTION NO: 2:21-CV-00278-NT |
| HENRY W. HOWE, IV & MELANIE B. HOWE | ANSWER & AFFIRMATIVE DEFENSES, COUNTERCLAIMS & DEMAND FOR JURY TRIAL |
|     Defendants | |
| MELANIE B. HOWE | |
|     Counter Plaintiff | |
| v. | |
| WILMINGTON TRUST, NATIONAL ASSOCIATION NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR MFRA TRUST 2015-1 & FAY SERVICING, LLC | |
|     Counter Defendants | |

## ANSWER

NOW COMES the Defendant, Melanie B. Howe ("Ms. Howe"), by and through counsel and hereby answers the Plaintiff's Complaint (Doc. 1), demands a jury trial on Plaintiff's claims and her affirmative defenses, and answers as follows:

1. The Defendant denies the allegation in Paragraph 1 on the Complaint and demands strict proof. On information and belief, the Wilmington Trust N.A. does not exercise a

sufficient degree of control over the MFRA Trust 2015-1 for Wilmington Trust N.A.'s ("MFRA Trust 2015-1") citizenship to control the question of diversity. In support of this belief, Ms. Howe states as follows:

   a. According to public records, MFRA Trust 2015-1 is a Delaware Statutory Trust.

   b. Under Delaware law, the trustee of a statutory trust does not control the trust *per se* as is more common under a common law trust. Instead, a Delaware statutory trust is controlled by a governing instrument which may permit a trustee to act on its behalf and also permit any person (including beneficial owners of the statutory trust) to direct a trustee. Del. Code Ann. tit. 12, § 3806.

2. The Defendant is without sufficient knowledge to either confirm or deny the allegations in Paragraph 2, and, therefore, denies the same.

3. The Defendant admits she is a resident of the State of Maine and venue of this action is appropriate in the State of Maine. All other allegations in Paragraph 3 of the Complaint are denied.

4. The Defendant is without sufficient knowledge to either confirm or deny the allegations in Paragraph 4, and, therefore, denies the same.

5. The Defendant admits the allegation in Paragraph 5 of the Complaint.

6. The Defendant admits the allegation in Paragraph 6 of the Complaint.

7. The Defendant is without knowledge to verify any of the endorsements and alterations appearing on Exhibit B to the Complaint and denies the allegation in Paragraph 7 of the Complaint on that ground. She does admit that she signed a note to Challenge Financial Investors Corp., on or about April 20, 2007.

8. The Defendant admits the allegation in Paragraph 8 of the Complaint.

9.  The Defendant is without sufficient knowledge to either confirm or deny the allegations in Paragraph 9, and, therefore, denies the same.

10. The Defendant is without sufficient knowledge to either confirm or deny the allegations in Paragraph 10, and, therefore, denies the same.

11. The Defendant is without sufficient knowledge to either confirm or deny the allegations in Paragraph 11, and, therefore, denies the same.

12. The Defendant admits in part and denies in part the allegations in paragraph 12. Only Melanie Howe (along with her children) is currently in possession of the property.

13. The Defendant admits the allegation in Paragraph 13.

## COUNT I – BREACH OF NOTE

14. The Defendant realleges her answers and responses to Paragraphs 1-13 of the Complaint.

15. The Defendant is without knowledge to verify any of the endorsements and alternations appearing on Exhibit B to the Complaint and denies the allegation in Paragraph 15 of the Complaint on that ground.  She does admit that she signed a note to Challenge Financial Investors Corp., on or about April 20, 2007.

16. The Defendant is without sufficient knowledge to either confirm or deny the allegations in Paragraph 16, and, therefore, denies the same.

17. The Defendant is without sufficient knowledge to either confirm or deny the allegations in Paragraph 17, and, therefore, denies the same.

18. The Defendant denies the allegation in Paragraph 18 on the Complaint.

19. The Defendant is without sufficient knowledge to either confirm or deny the allegations in Paragraph 19, and, therefore, denies the same.

20. The Defendant denies the allegations in Paragraph 20.

21. The Defendant denies the allegations in Paragraph 21. Defendant would also note that Plaintiff's action is an injustice since it lost in state court and is simply forum shopping without the right to do so since it never appealed the adverse decisions against it.

<u>COUNT II – BREACH OF CONTRACT, MONEY HAD AND RECEIVED</u>

22. The Defendant realleges her answers and responses to Paragraphs 1-21 of the Complaint.

23. The Defendant is without knowledge to verify any of the endorsements and alternations appearing on Exhibit B to the Complaint and denies the allegation in Paragraph 23 of the Complaint on that ground.  She does admit that she signed a note to Challenge Financial Investors Corp., on or about April 20, 2007.

24. The Defendant is without sufficient knowledge to either confirm or deny the allegations in Paragraph 24, and, therefore, denies the same.

25. The Defendant is without sufficient knowledge to either confirm or deny the allegations in Paragraph 25, and, therefore, denies the same.

26. The Defendant is without sufficient knowledge to either confirm or deny the allegations in Paragraph 26, and, therefore, denies the same.

27. The Defendant is without sufficient knowledge to either confirm or deny the allegations in Paragraph 27, and, therefore, denies the same.

28. The Defendant denies the allegation in Paragraph 28 on the Complaint.

29. The Defendant is without sufficient knowledge to either confirm or deny the allegations in Paragraph 29, and, therefore, denies the same.

30. The Defendant is without sufficient knowledge to either confirm or deny the allegations in Paragraph 30, and, therefore, denies the same.

31. The Defendant denies the allegation in Paragraph 31 on the Complaint. Defendant would also note that Plaintiff's action is an injustice since it lost in state court and is simply forum shopping without the right to do so since it never appealed the adverse decisions against it.

COUNT III – QUANTUM MERUIT

32. The Defendant realleges her answers to Paragraphs 1-31 of the Complaint.

33. The Defendant is without knowledge to verify any of the endorsements and alternations appearing on Exhibit B to the Complaint and denies the allegation in Paragraph 33 of the Complaint on that ground. She does admit that she signed a note to Challenge Financial Investors Corp., on or about April 20, 2007.

34. The Defendant is without sufficient knowledge to either confirm or deny the allegations in Paragraph 34, and, therefore, denies the same.

35. The Defendant denies the allegation in Paragraph 35 of the Complaint.

36. The Defendant is without sufficient knowledge to either confirm or deny the allegations in Paragraph 36, and, therefore, denies the same.

COUNT IV – UNJUST ENRICHMENT

37. The Defendant realleges her answers to Paragraphs 1-36 of the Complaint.

38. The Defendant is without knowledge to verify any of the endorsements and alternations appearing on Exhibit B to the Complaint and denies the allegation in Paragraph 38 of the Complaint on that ground. She does admit that she signed a note to Challenge Financial Investors Corp., on or about April 20, 2007.

39. The Defendant admits the allegation in Paragraph 39 of the Complaint as to her actions and admits that she has not paid the loan obligation. She lacks personal knowledge of

what her ex-husband has done and so denies the allegations of Paragraph 39 as they relate to Henry Howe.

40. The Defendant is without sufficient knowledge to either confirm or deny the allegations in Paragraph 40, and, therefore, denies the same.

41. The Defendant denies the allegation in Paragraph 41 on the Complaint.

42. The Defendant is without sufficient knowledge to confirm or deny the allegations in Paragraph 42, and, therefore, denies the same.

## RESPONSE TO PLAINTIFF'S PRAYERS FOR RELIEF

Defendant demands strict proof and denies Plaintiff is entitled to any of the relief it requests.

## AFFIRMATIVE DEFENSES TO PLAINTIFF'S CLAIMS

I.    **FIRST AFFIRMATIVE DEFENSE**: Plaintiff's claims are barred by the Rooker-Feldman Doctrine.  Plaintiff lost its purported rights in a prior state court action, sought no appellate review of those final decisions, and may not now appeal to this Court as a state court loser the judgments entered against it.

II.    **SECOND AFFIRMATIVE DEFENSE**: Plaintiff's claims are barred by res judicata, collateral estoppel or general claim preclusion since Plaintiff previously did bring or could have asserted the claims herein is a prior action between the Parties and lost that action with prejudice on an adjudication of the merits.

III.    **THIRD AFFIRMATIVE DEFENSE**: Plaintiff's claims are barred by the Fair Debt Collection Practices Act and 14 M.R.S. § 6113 because its conduct is in contravention to remedial, consumer protection laws (illegality).

IV.  **FOURTH AFFIRMATIVE DEFENSE**: Plaintiff's claims are barred by the Fair Debt Collection Practices Act and 14 M.R.S. § 6113 because its conduct is in contravention to remedial, consumer protection laws it has willfully or recklessly disregarded without the right to do so (illegality).

V.  **FIFTH AFFIRMATIVE DEFENSE**: Plaintiff's claims in Counts III and IV are barred by the applicable statute of limitations.

VI.  **SIXTH AFFIRMATIVE DEFENSE**: Plaintiff's claims in Counts III and IV are barred by law and fail to state a claim for relief which can be granted since Plaintiff's claims concern a written contract.

VII.  **SEVENTH AFFIRMATIVE DEFENSE**: Plaintiff's claims are barred by the doctrine of latches.

VIII.  **EIGHTH AFFIRMATIVE DEFENSE**: Plaintiff's claims are barred in whole or in part based on the written contract and prior court orders from the state court which denied the relief and claims asserted in this action by the Plaintiff and certain of the fees, charges, and sums are not expressly authorized by the contract Plaintiff seeks to enforce in this action.

IX.  **NINTH AFFIRMATIVE DEFENSE**: Plaintiff has failed to meet its burden to show this Court's subject matter jurisdiction based on diversity by failing to plead any facts to identify its management agents, control structure, and beneficial owners.

X.  **TENTH AFFIRMATIVE DEFENSE**: Plaintiff has failed to state claims upon which it is entitled to relief.

XI.     **ELEVENTH AFFIRMATIVE DEFENSE**: Plaintiff is not entitled to any judgment in its favor to be collected from Defendant's home and property as Defendant is entitled under 14 M.R.S. 1422(1) to exempt $160,000 from the value of her home, and Plaintiff's income is protected income not subject to garnishment.

XII.    **TWELFTH AFFIRMATIVE DEFENSE**:    Plaintiff's claims in Count II are barred by law and fail to state a claim for relief which can be granted since Plaintiff's claims relate to the enforcement of a negotiable instrument and are governed by the UCC and are barred by common law and/or not enforceable in contract.

XIII.   **THIRTEENTH AFFIRMATIVE DEFENSE**:  Plaintiff's claims are barred in whole or in part under the doctrine of waiver.

**XIV.   FOURTEENTH AFFIRMATIVE DEFENSE**:  In the alternative, if the fact finder determines that Defendant owes any sum of money to Plaintiff, Defendant is entitled to a set-off, in whole or in part, of all sums claimed due and owing from the injuries and damages she is awarded on her counterclaims.

XV.     **FIFTEENTH AFFIRMATIVE DEFENSE**: Defendant reserves the right to add additional affirmative defenses as this matter progresses.

## <u>PRAYERS FOR RELIEF ON COMPLAINT</u>

I.      WHEREFORE, the Defendant, Melanie Howe, requests this Honorable Court dismiss the Plaintiff's Complaint with prejudice and enter judgment in her favor against the Plaintiff, Wilmington Trust N.A., as Trustee for MFRA Trust 2015-1; and

II.     WHEREFORE, Defendant, Melanie Howe, requests the Court award her reasonable costs including attorney's fees for defending Plaintiff's action.

III.    WHEREFORE, Defendant, Melanie Howe, requests the Court grant and award her other such relief as is necessary and appropriate.

## COUNTER COMPLAINT (COUNTERCLAIMS)

Counter Plaintiff Melanie B. Howe ("Ms. Howe" or "Counter Plaintiff") by her attorney, John Z. Steed, Esq., hereby files this Counter Complaint and Jury Demand against: (i) **WILMINGTON TRUST, NATIONAL ASSOCIATION NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR MFRA TRUST 2015-1** ("MFRA"); and (ii) **FAY SERVICING, LLC**[1] ("Fay")(collectively "Counter Defendants") and states as follows:

### INTRODUCTION & PARTIES

1. This pleading seeks to enforce the remedial statutory rights and protections of Federal[2] and State[3] law afforded to Ms. Howe which have been unfairly, deceptively, and unconscionably disregarded by the Counter Defendants.  Specifically,

   a. MFRA is attempting to collect upon a loan obligation without the right to do so since it previously sought the right to collect the same sums it seeks in this action in the state court and it lost that action and never appealed the result.  State court losers cannot proceed in this Court in such circumstances.  Alternatively, MFRA

---

[1]     Ms. Howe adds Fay to this action by this pleading pursuant to Rule 13(h).

[2]     The key Federal law at issue in this action are (i) the Fair Debt Collection Practices Act, 15 U.S.C.A. § 1692, *et seq.* ("FDCPA").

[3]     The key State laws at issue in these counterclaims are remedial statutes for the protection of Ms. Howe and other consumers under Maine's Mortgage Servicer Duty of Good Faith statute (14 M.R.S.A. § 6113).

could have pursued the claims in this action in the prior litigation between the parties but voluntarily chose not to pursue them and in this action is apparently attempting to assert the right to split its claims when under Maine law it has no such right.

b. Fay has also attempted to collect money it has no right to collect and by threatening methods of collection it has no legal right to pursue.

2. Ms. Howe is a borrower on a note she and her former husband signed on or about April 20, 2007, in favor of Challenge Financial Investor's, Corp., a Florida Corporation ("Challenge") (the "Loan"). The proceeds of the Loan were used by Ms. Howe to acquire her home and property located at 334 Deerwander Road, Hollis Center, Maine 04042, (the "Property") as their family home and otherwise entirely for consumer purposes. Ms. Howe remains obligated on the Loan.

3. MFRA claims to be the assignee and holder of the note memorializing the Loan but it cannot show any assignment by any authorized party. In addition:

a. MFRA is a debt collector pursuant to 15 U.S.C. §1692a(6) as its principal business is the purchase and acquisition of defaulted consumer debts acquired while they are in default for pennies on the dollar of what is claimed to be due on the debts. MRFA exists solely to acquire defaulted consumer debts, and, as part of its business, MFRA uses instrumentalities of interstate commerce or the mails in relation to the collection of the Plaintiff's Loan and other similar consumer debts.

b. These facts are based in part on the facts that MRFA allegedly acquired the Loan during the Prior Litigation, discussed *infra*, when it knew the enforceability and

collectability of the Loan was in serious doubt according to the admissions of its predecessor(s) in interest which it ratified by its own voluntary business practices. Only professional defaulted debt collectors like MRFA would have acquired Plaintiff's Loan under the circumstances described above.

4. Fay is also a debt collector pursuant to 15 U.S.C. §1692a(6) as it acquired the servicing and/or collection rights to the Plaintiff's Loan when it believed the account was delinquent or in default during the prior litigation as discussed *infra*. Fay also attempts to collect or collects on behalf of another who is the owner of the Loan—i.e., MRFA. In addition:

   a. MRFA is vicariously liable for the acts and omissions of Fay while acting on its behalf.

   b. Fay is a servicer involved in the servicing of a loan as that term is defined in 14 M.R.S. § 6113 in relation to Ms. Howe and her purported obligation on the Loan.

5. Not named as a party to these counterclaims is the law firm of Doonan, Graves & Longoria, LLC ("Doonan") which is also a debt collector pursuant to 15 U.S.C. §1692a(6). MRFA and Fay have engaged and authorized Doonan and its attorneys to act on their behalf in relation to the Loan and Ms. Howe. MRFA and Fay know what Doonan knows in relation to the Loan and the prior litigation and have ratified all acts and omissions taken by Doonan on their behalf in relation to the Loan.

## II. JURISDICTION AND VENUE

6. These counterclaims are authorized by Fed. R. Civ. P. 13, and Fay is properly added as a counter-defendant pursuant to Fed. R. Civ. P. 13(h).

7. This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 since certain of the counterclaims asserted herein arise under the laws of the United States. The Court also has supplemental jurisdiction over the state law counterclaims asserted herein pursuant to 28 U.S.C. § 1367(a).

8. This Court has jurisdiction asserted for the counterclaims herein because MRFA and Fay transact business, perform work in, and have interests in real property, and provide services in Maine.

9. This Court also has jurisdiction for the counterclaims asserted because the injuries caused by MRFA and Fay to Ms. Howe occurred in Maine.

10. Venue is proper in this Court as certain acts and conduct alleged occurred in Maine.

## IV. FACTS

### A. THE GENERAL DEBT BUYER & MORTGAGE CRISIS

11. Over the last fourteen years, Maine and the United States have been in the midst of a foreclosure crisis. At times news reports have established that one in ten American homes was at risk of foreclosure. In response to this crisis and the factors that led to it, the Maine Legislature has enacted and signed into law several new protections and requirements for so-called mortgage professionals and others involved as mortgage servicers.

12. This case also involves a new industry which has entered the field of consumer debt collection since the financial crisis which began. Specifically, this industry of defaulted debt purchasers that have acquired hundreds and thousands of defaulted consumer mortgage loans which are non-performing and otherwise in default, for pennies on the dollar of what is claimed due and owing from consumers. Multiple public interest and

media organizations have reported irregularities related to this industry including the following:

    a.   The New York Times has reported, "Private equity and hedge fund firms have bought more than 100,000 troubled mortgages at a discount from banks and federal housing agencies, emerging as aggressive liquidators for the remains of the mortgage crisis that erupted nearly a decade ago. As the housing market nationwide recovers, this is a dark corner from which banks, stung by hefty penalties for bungling mortgage modifications and foreclosures, have retreated. Federal housing officials, for the most part, have welcomed the new financial players as being more nimble and creative than banks with terms for delinquent borrowers. But the firms are now drawing fire. Housing advocates and lawyers for borrowers contend that the private equity firms and hedge funds are too quick to push homes into foreclosure and are even less helpful than the banks had been in negotiating loan modifications with borrowers. Federal and state lawmakers are taking up the issue, questioning why federal agencies are selling loans at a discount of as much as 30 percent to such firms." *As Banks Retreat, Private Equity Rushes to Buy Troubled Home Mortgages* (available at http://www.nytimes.com/2015/09/29/business/dealbook/as-banks-retreat-private-equity-rushes-to-buy-troubled-home-mortgages.html)(last visited October 5, 2021).

    b.   The National Consumer Law Center reports "In New York, [HUD's Distressed Asset Stabilization Program] has also impeded mediations that could have improved the performance of FHA loans. For example, Brooklyn homeowner

Paulette Morrison was participating in the New York foreclosure conference program during 2014. She repeatedly submitted documents to Bank of America for years without getting a decision on her eligibility for an FHA modification. Without notice to her, Bank of America sold her mortgage loan through DASP. Rushmore, as servicer for the DASP buyer, then appeared for settlement conferences and would not consider a loan modification unless Ms. Morrison first made an up-front payment equal to 25% of the overdue payments and fees. This outlandishly high payment was well beyond anything she could afford. Had her loan remained FHA insured, Ms. Morrison would never have been faced such an unreasonable barrier to a modification. Servicers of FHA loans may not demand upfront payments to begin a modification." *OPPORTUNITY DENIED How HUD's Note Sale Program Deprives Homeowners of the Basic Benefits of Their Government-Insured Loans,* National Consumer Law Center (May 2016) at Page 17 (available online at https://www.nclc.org/images/pdf/pr-reports/opportunity-denied-report.pdf)(last visited 9/14/2018).

c.  The Center for Popular Democracy reports that "Nearly eight years after the start of the global financial crisis, hedge funds and private equity firms have found yet another way to make big profits: distressed housing assets. Often, the very same corporate actors that precipitated the housing crash in the first place are buying and selling off delinquent mortgages and vacant houses that are a product of the crash. Together, these Wall Street entities have raised over $20 billion to buy the notes for as many as 200,000 homes in the United States. The newly consolidated single-family rental market is a lucrative business. A 2014 study estimated that

the four largest holders of these assets have seen as much as a 23 percent rate of return on the properties they purchased in the last three years." (footnote omitted). *Do Hedge Funds Make Good Neighbors? How Fannie Mae, Freddie Mac & HUD are Selling Off Our Neighborhoods to Wall Street,* Center for Popular Democracy (June 2015)(available at https://populardemocracy.org/sites/default/files/Housing-report_web-final.pdf)(last visited 9/14/2018).

13. At issue in this case are the remedial protections established under FDCPA and Maine's Mortgage Servicer Duty of Good Faith statute (14 M.R.S.A. § 6113) concerning this new industry of defaulted debt purchasers which includes MRFA and various debt collectors like Fay.

### B.     FACTS RELATED TO THE COUNTER PLAINTIFF

14. Ms. Howe is the disabled mother of two minor children ages 15 and 12 who participate in a home-school program as an alternative to conventional education.

15. Ms. Howe suffers from intracranial hypertension and has been disabled since 2010, and has had numerous brain surgeries to address the condition, and requires regular spinal taps.

16. As a result of her conditions, Ms. Howe also suffers from stress-related anxiety which is provoked by the unlawful collection efforts of MRFA and Fay with reckless indifference of the consequences of these actions. Examples of this anxiety manifests itself as follows:

    a.   She and her sons feel unsafe in their home;

    b.   Lost sleep;

    c.   Severe diarrhea, and long bouts of the same, sometimes taking hours to resolve;

    d.   Intensified debilitating headaches;

    e.   Caused her to perseverate on negative thoughts and fears related to losing her home;

    f.   Caused her to suffer strife in her family relationships with her sons, and former husband; and

    g.   Caused her to be less able to enjoy her life.

17. On April 20, 2007, Melanie and Henry Howe borrowed $208,000 secured by a promissory note ("the Note" or "the Loan") and mortgage ("the Mortgage"), both to Challenge Financial Investor's, Corp., a Florida Corporation ("Challenge").

18. At the time of the transaction, the right to record the Mortgage was assigned to the Mortgage Electronic Registrations System (MERS), but the bulk of the substantive rights in the Mortgage, including the right to enforce the Note through foreclosure and to impose and/or collect certain fees remained with Challenge.

19. Through a series of invalid attempts to assign the Mortgage, MTGLQ Investors LP, came to believe it held rights under the mortgage and came to believe it was the holder of the Note, endorsed in blank. The rights under the mortgage, however, remained with Challenge as a matter of Maine law.

20. Aware that it did not have the legal right to foreclose, on June 26, 2017, MTGLQ Investors LP, filed a declaratory judgment action in the Superior Court for York County, Maine (the "Prior Action") seeking a declaration that MTGLQ Investors LP, as the holder of the Note, also had standing to bring a foreclosure action to enforce the Note.

21. Melanie Howe and Henry Howe, were named as parties to the Prior Action.

22. In the Prior Action, commenced on or about June 26, 2017, MTGLQ Investors LP:

   a.  Was represented by Doonan who represents MRFA in this action.

   b.  Attached the Promissory Note to its Complaint which is the same Promissory Note subject to, and attached to the Complaint these proceedings as Exhibit B.

   c.  Claimed, by its authorized counsel, Doonan, that it was the then holder and owner of the same Promissory Note subject to this action and it was "entitled to enforce" the [same] Promissory Note subject to these proceedings.

   d.  Failed to join the claims asserted in this action which it had the right to include in the Prior Action (in other words it voluntarily elected by its counsel Doonan to apparently split its claims which it is not permitted to do under Maine law).

   e.  Failed in the Prior Action to ever seek to amend its Complaint to add the identical claims it filed in this action.

23. Doonan filed the Prior Action on behalf of MTGLQ INVESTORS LP and litigated the Prior Action to its conclusion as the authorized counsel for the Plaintiff.

24. The Prior Action was commenced by MTGLQ INVESTORS LP. However, during the litigation, MFRA was substituted as the Plaintiff in the Prior Action on or about December 15, 2017, after it had acquired the Loan for pennies on the dollar with knowledge that it was likely unenforceable and there was pending litigation to determine the enforceability of the Loan which was defective by public admissions of MTGLQ in the pleadings and papers in the Prior Litigation.

25. At the time MRFA acquired the Loan and substituted itself for MTGLQ, the Loan was in default and otherwise delinquent and had the same date of default asserted in this action by MFRA.

17

26. MRFA is not entitled to any greater rights than MTGLQ had to give it and it knew when it acquired the Loan that it was defective and non-performing and otherwise unenforceable because its own counsel and its predecessor believed that to be the case.

27. MFRA did not seek to amend its Complaint in the Prior Action once it was substituted as a new plaintiff. With Doonan acting as its counsel, MFRA:

    a. Continued to claim, by its authorized counsel, Doonan, that it was the then holder and owner of the same Promissory Note subject to this action and it was "entitled to enforce" the [same] Promissory Note subjected to these proceedings.

    b. Continue to fail to join the claims asserted in this action which it had the right to include in the Prior Action (in other words, it voluntarily elected by its counsel, Doonan, to apparently split its claims which it is not permitted to do under Maine law).

28. Fay became the collector and servicer of the Loan on or around August 28, 2017. At that time, Fay believed the Loan to be in default and otherwise delinquent. Fay also knew that the Loan was unenforceable due to the allegations advanced by Doonan on behalf of MTGLQ in the Prior Litigation which was a matter of public record and the records of its predecessor, Selene Finance, which it incorporated into its own records when the collection rights transferred/boarded over from Selene. In addition:

    a. Upon information and belief when Fay incorporated Selene's records into its systems, it knew that Selene was continuing to claim it was entitled to collect sums which by a state court Order from March 17, 2014, it was barred from collecting. Fay never investigated the accuracy of Selene's records and simply

adopted Selene's practice of disguising fess with the label of 'corporate advances' which were recoverable from Ms. Howe when they were not.

29. Thus, from December 15, 2017, to the present day, Doonan has acted as legal counsel for MFRA at the direction of Fay and in privity with each other. Fay also acted as the collector/servicer on behalf of MFRA claiming to seek payment from Ms. Howe. Doonan, MFRA, and Fay's conduct includes the prosecution of the Prior Action and the Plaintiff's Collection Action in this Court as well as other collection efforts undertaken by Fay discussed herein.

30. The Prior Action was dismissed, with prejudice, on February 26, 2020, in a final judgment in favor of Ms. Howe, following the Maine Supreme Judicial Court's decision in *Beal Bank v. New Century*, 217 A.3d 731.

31. On or around March 13, 2020, after the time to do so under Maine's procedural rules, MFRA filed a Motion to Amend Judgment Pursuant to M.R.Civ.P. 59(e) in the Prior Action. In that motion, MFRA asked the court to modify its order dismissing its complaint with prejudice to "specify that the Dismissal with Prejudice only precludes a future action brought by [MRFA], or a successor-in-interest, for the claims advanced in this action." *See* Exhibit A. That motion was denied as untimely and with dicta that were the Motion timely, it would still be denied. *Id.*

32. In other words, MFRA sought, by an untimely motion, to change the allegations itself had ratified and adopted in the Prior Litigation so that it could proceed in further litigation against Ms. Howe because it knew it had no such right to split its claims and a further order of the Maine state court was necessary for it to proceed again (and again) against Ms. Howe to collect upon the Loan.

33. Even after the court in the Prior Action expressly declined to limit the preclusive effect of its dismissal with prejudice, MFRA brought the Collection Action to this Court. *See* (Doc 1).

34. Also, MFRA could have pursued a timely appeal of the adverse against it in the February 26, 2020, state court orders (Exhibits A and B), but failed to do so. *See* Exhibit C.

35. Fay knew about the February 26, 2020 order which was a matter of public record and also through Doonan. Fay is in privity with MFRA and as its agent is granted no greater rights than MFRA has itself in relation to the Loan and Ms. Howe.

36. No person, including a professional defaulted debt purchaser like MRFA, is permitted the right to pursue duplicative litigation having voluntarily elected one course of action and then lost on the merits of its claims. There would be no end to litigation if sophisticated parties like MRFA were permitted such rights to unlawfully split their claims for strategic purposes.

37. On April 7, 2021, the state court denied MFRA's March 30, 2020, motion to permit it to pursue more litigation against Ms. Howe and limit the scope of the February 26, 2020, Order of the state court. *See* Exhibit B.

38. MFRA could have pursued a timely appeal of the adverse against it in the April 7, 2021, state court order but failed to do so. *See* Exhibit C.

39. Fay also knew about the April 7, 2021, state court order which was a matter of public record and also through Doonan. Fay remained in privity with MFRA at this time and as its agent is granted no greater rights than MFRA has itself in relation to the Loan and Ms. Howe.

40. Mere months after it was made clear that the Prior Action dismissal with Prejudice precluded it from the right to collect from Ms. Howe and in violation of the Rooker Feldman doctrine, MFRA submitted a four-count Complaint ("Collection Action") against Ms. Howe seeking enforcement of the Note at issue in the Prior Action.

41. In its Complaint in the Collection Action, each of MFRA's asserted claims could have been pursued in the Prior Action but that MFRA and MTGLQ voluntarily elected not to do so while represented by the same counsel in this litigation—i.e., Doonan.

42. Fay also knows about the Collection Action and knows that MFRA abandoned each of the claims asserted in it by not pursuing them in the Prior Action.

43. MFRA and Fay know that the Collection Action is also barred by the doctrine of claim preclusion or collateral estoppel for the following reasons.

   a. The same relevant parties are involved in the Collection Action as were involved in the Prior Action, to wit: MFRA and Ms. Howe.

   b. Two valid prior final judgments were entered in the Prior Action in favor of Ms. Howe and against MFRA's claims that were brought or could have been brought.

   c. The matters presented for decision in the Collection Action could have been asserted in the Prior Action but were not at the sole election of MFRA and its counsel, Doonan. Ms. Howe had been in default on the Loan for over three years at the time the Prior Action was filed, and there was no other procedural or legal reason an action to enforce the alleged default on the Note could not have been commenced when the Prior Action was commenced.

44. Even though MFRA and Fay knew the Collection Action is barred as a matter of law, they authorized Doonan to file it in this Court for the purpose of debt collection to

unfairly and deceptively attempt to collect sums from Ms. Doonan that they are barred from collecting. As part of their deception, MFRA and Fay, acting through Doonan, did not even disclose to the Court the adverse judgments against MFRA in the Prior Action.

45. MFRA has also unfairly asserted legal claims that its own pleading demonstration in the Collection Action are barred by the statute of limitations. Specifically, NFRA's claims for Quantum Meruit and Unjust enrichment, asserted on September 30, 2021, are time barred since MFRA admits Ms. Howe has made no payments on the promissory note since October of 2014, over seven (7) years ago.

46. The applicable limitations period for claims of Quantum Meruit and Unjust Enrichment under Maine law, however, is six (6) years. So, MFRA has asserted rights which, as matter of law, it is barred from asserting because they are time barred.

47. In a letter dated September 21, 2021, Fay falsely represented to Ms. Howe that it claimed "a right to foreclose based on the terms of your mortgage contract." Fay knew this statement was false, unfair, and otherwise deceptive since the right to foreclose was resolved in Ms. Howe's favor in the Prior Action. Neither Fay nor MFRA had any right to threaten collection by foreclosure on September 21, 2021.

48. From 2017 to present, in spite of it being clear that MFRA held no valid mortgage, Fay, on behalf of MFRA, has falsely represented to Ms. Howe on a nearly monthly basis, including in the twelve months preceding these counterclaims, invoices titled "Mortgage Statement" each month representing that MFRA had a valid mortgage interest in Melanie Howe's home when, in fact, it did not. This written correspondence from Fay to Ms. Howe included, but it not limited to:

a. Correspondence dated November 10, 2021, which falsely claimed Fay and MFRA had an interest in a mortgage when as a matter of law they did not. This correspondence also falsely claimed a right to collect sums authorized by a mortgage which Fay and MFRA have no legal right to impose and attempt to collect. Fay also admitted in this correspondence it is a debt collector and it threatened foreclosure without the right to do so under Maine law and by virtue of the orders from the Prior Action.

b. Correspondence dated September 21, 2021, which falsely claimed Fay and MFRA had an interest in a mortgage when, as a matter of law, they did not. This correspondence stated, "we have a right to invoke foreclosure," when Fay had no such right and when Fay was aware that it had no such right. (emphasis added).

c. Correspondence dated August 10, 2021, which falsely claimed Fay and MFRA had an interest in a mortgage when, as a matter of law, they did not. This correspondence also falsely claimed a right to collect sums authorized by a mortgage which Fay and MFRA have no legal right to impose and attempt to collect. Fay also admitted in this correspondence it is a debt collector and it threatened foreclosure without the right to do so under Maine law and by virtue of the orders from the Prior Action.

d. On information and belief, Fay sent monthy "mortgage statements" from September 2017, to the present which falsely claimed Fay and MFRA had an interest in a mortgage when, as a matter of law, they did not. This correspondence also falsely claimed a right to collect sums authorized by a mortgage which Fay and MFRA have no legal right to impose and attempt to

collect. Fay also admitted in these correspondences that it is a debt collector and it threatened foreclosure without the right to do so under Maine law and by virtue of the orders from the Prior Action.

e. Correspondence from Doonan related to the Collection Action which MFRA and Fay sent by its authorized counsel by mail, to Ms. Howe's biological mother, in Bunker Hill, Illinois, and former father in law, in Standish, Maine, both of which mailings led to embarrassment and familial strife for Ms. Howe and served no otherwise legitimate purpose. Ms. Howe's mother and her former father-in-law have no relationship to the Loan whatsoever.

49. In the Spring of 2021, on information and belief, an agent working on behalf of Fay and/or MFRA entered onto the property of Melanie Howe to take pictures of her property in connection with a mortgage inspection. Ms. Howe was wearing only her night gown at the time and was frightened by the invasion of her privacy and intrusion as was one of her sons. She asked the man what he was doing and he told it was inspecting the property related to a mortgage.

50. Prior to the Spring 2021 incident, an agent working for either Fay or MFRA would come to the house on a monthly basis to look at or photograph the property, but Ms. Howe had no verbal interactions with any inspectors and inspectors would leave if she or her children were seen. These prior incidents also wrongfully invaded Ms. Howe's privacy when Fay and/or MFRA had no such right to do since they do not own the mortgage rights under Maine law authoring them to so pursue.

51. Since October 2019, Fay has contacted Ms. Howe by telephone while attempting to collect from her sums related to the mortgage which MFRA had no right to collect upon, as a matter of law.

52. Ms. Howe has sustained damages and losses as a result of the acts and omissions of the Counter Defendants and their authorized agents including:

   a. Economic damages incurred to engage counsel to defend the unlawful Prior Action and the Collection Action.

   b. Economic damages incurred as a result of out-of-pocket medical expenses.

   c. Non-economic damages in the form of credit damages for the false, negative credit reporting of sums due which are barred from collection as a matter of law since the conclusion of the Prior Action and the false, negative porting of foreclosure activity when no foreclosure may occur as a matter of law.

   d. Non-economic damages in the form of emotional distress damages with physical manifestations caused by and exacerbated her pre-existing conditions by the Counter Defendants.

### COUNT I: VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT ("FDCPA"), 15 U.S.C. § 1692, *et seq.*

53.        Ms. Howe adopts by reference the factual allegations contained in the preceding paragraphs of her counterclaims with the same effect as if herein fully set forth.

54.        MFRA and Fay acquired their interests in the Loan account when each alleges (directly and indirectly) and believed the loan was in default and, therefore, MFRA and Fay are Debt Collectors within the meaning of 15 U.S.C. § 1692a(6).  Fay also acts as a

collector on behalf of MFRA as the owner of the loans which additionally qualifies it as a debt collector.

55.      MFRA's and Fay's conduct to impose and collect or attempt to collect sums not owed by Ms. Howe related to the Loan, but only related to the mortgage which they have no enforceable rights, violates 15 U.S.C. § 1692(e) in the twelve months proceeding the filing of these counterclaims, involves the unlawful use of false, deceptive, or misleading representations or means in connection with the collection of the Loan.

56.      MFRA's and Fay's conduct to threaten foreclosure in the twelve months proceeding the filing of these counterclaims also violates 15 U.S.C. § 1692(e) and involves the use of false, deceptive, or misleading representations or means in connection with the collection of the Loan.

57.      MFRA's and Fay's commencement and maintaining of the Collection Action without the right to do so in light of the state court judgments in the Prior Action and the applicable statutes of limitation and common law of Maine, also violates 15 U.S.C. § 1692(e) and involves the use of false, deceptive, or misleading representations or means in connection with the collection of the Loan.

58.      Alternatively to the claims asserted under the FDCPA in ¶¶ 54-57, MFRA and Fay have acted unfairly or with unconscionable means to collect or attempt to collect from Ms. Howe in violation of 15 U.S.C. § 1692f.

59.      By acquiring and utilizing knowingly inaccurate loan data into its own systems from its predecessors with no adequate policies, practices, and procedures to make sure the information is reasonably true and correct and then attempting to collect fees and charges accruing before it acquired the servicing of the loan but have never been sought

by its predecessors in interest or had been barred from collection by prior court order(s), Fay has also acted unfairly or with unconscionable means to collect or attempt to collect from Ms. Howe in violation of 15 U.S.C. § 1692f.

60.     MFRA is vicariously liable under the FDCPA for the acts and omissions of its agents, Doonan and Fay.

61.     Ms. Howe has suffered actual economic and non-economic damages in the twelve months preceding the filing of these counterclaims, as more fully described *supra* as a result of MFRA's and Fay's illegal debt collection practices and direct and indirect actions described herein.

62.     The FDCPA provides for statutory damages in addition to actual damages.  Ms. Howe is entitled to her actual damages and statutory damages allowed under the FDCPA.


### COUNT II: VIOLATION OF 14 M.R.S. § 6113
### (CLAIM FOR STATUTORY AND ACTUAL DAMAGES)
### (Against Fay Only)

63.     Ms. Howe adopts, by reference, the factual allegations contained in the preceding paragraphs of counterclaims with the same effect as if herein fully set forth.  This count is against Counter Defendant Fay only.

64.     The Loan and Note is a negotiable instrument within the meaning of 11 M.R.S.§ 3-1104, and the Loan is an obligation within the meaning of 14 M.R.S. § 6113(1)(C).

65.     Fay is a mortgage servicer licensed by the Maine Bureau of Consumer Credit Protection to operate as a mortgage servicer in the State of Maine.

66.     Fay is a mortgage servicer engaged servicing of the Loan within the meaning of 14 M.R.S. § 6113(1)(F).

67.     Fay has been the servicer for the Loan engaged in servicing of the Loan from August 28, 2017, to the present.

68.     Through the knowledge of its agent, Doonan, regarding *Mortgage Electronic Registration Systems, Inc v. Saunders,* 2010 ME 79, 2 A.3d 289, *Bank of America, N.A. v. Greenleaf*, 2014 ME 89, 96 A.3d 700,  and  *Beal Bank USA v. New Century Mortgage,* 2019 ME 150, 217. A.3d 731, Fay was and is aware that it did not have a mortgage interest in the Property.

69.     For all relevant times Fay has violated its duty of good faith dealing with Ms. Howe by engaging in the activities outlined *supra*, including but not limited to:

    a.  Claiming a right to foreclose on the Property in written correspondence when, in fact, it did not have any such right;

    b.  Claiming in over 40 monthly "mortgage" statements when it had no rights under the mortgage on the Property when it did not, as a matter of law, have any rights to the Mortgage;

    c.  Indicating in more than forty statements that Ms. Howe owed it payment of costs that could only be enforced through the mortgage (PMI, Escrow, inspection fees, legal fees for foreclosure costs, etc.), which Fay did not hold or have any right to enforce;

    d.  Indicating in more than forty statements that it could enforce its rights to payment and collection by a foreclosure, when it had no such rights;

    e.  Calling Ms. Howe to collect payments for mortgage-related costs to which it had no right to collect;

f. Sending inspectors to Ms. Howe's home when it had no mortgage interest in the Property or any right to send inspectors to invade her privacy and the privacy of her children;

g. Charging Ms. Howe money for the unlawful inspections and mortgage insurance when it has no right to enforce a mortgage.

h. Filing the Collection Action in this Court, when it is barred by the doctrine of claim preclusion, the Rooker Feldman Doctrine, and res judicata after it received adverse decisions from the state courts to which it never sought to appeal.

i. Asserting claims in the Collection Action that are time barred; and

j. Violating the FDCPA in its efforts to collect from Ms. Howe.

70. The repeated and flagrant violations of its duty of good faith constitute a pattern and practice related to the Loan and permits the Court to impose statutory damages not to exceed $15,000.

71. Ms. Howe has suffered actual economic and non-economic damages, as more fully described *supra,* as a result of Fay's violations of its duty of good faith to her.

## PRAYERS FOR RELIEF ON COUNTERCLAIMS

I. WHEREFORE, pursuant to Count I of her counterclaims under the FDCPA, Ms. Howe prays that this Court (i) enter judgments pursuant to her claims under the FDCPA in her favor and against the Counter Defendants, Wilmington Trust, National Association, not in its individual capacity, but solely as Trustee for MFRA Trust 2015-1 and Fay Servicing, LLC, (ii) award actual and statutory damages, attorney fees, and costs to Ms. Howe as authorized by the FDCPA as determined by the trier of fact; and

II.     WHEREFORE, pursuant to Count II of her counterclaims pursuant to 14 M.R.S. §
        6113 Ms. Howe prays that this Court (i) enter judgments pursuant to 14 M.R.S. §
        6113 in her favor and against Defendant Fay Serving, LLC, and (ii) award her actual
        damages, $15,000 in statutory damages, and for an award of costs and attorney fees
        pursuant to 14 M.R.S. § 6113;

III.    WHEREFORE, Ms. Howe also requests judgments for pre-judgment and post-
        judgment interest at statutory rates in her favor and against the Counter Defendants;
        and

IV.     WHEREFORE, Ms. Howe requests such other and further relief as this Court deems
        just and proper.


## JURY DEMAND

Defendant/Counter Defendant, Melanie Howe, demands a jury trial on Plaintiff's claims
and her defenses thereto and also her counterclaims asserted herein.


Dated: December 6, 2021                                   _____/s/ John Z. Steed_____
                                                          John Z. Steed, Esq. Bar # 5399
                                                          Law Office of Ellen S. Best
                                                          P.O. Box 386
                                                          Blue Hill, Maine 04614
                                                          (207) 374-2573

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Answer & Affirmative Defenses and Counterclaims were served on counsel for **WILMINGTON TRUST, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR MFRA TRUST 2015-1,** when filed with this Court's CM/ECF system. I further certify that I will cause the foregoing along with all other previously filed papers to be served on Counter Defendant, Fay Servicing, LLC, along with the Writ of Summons issued by the Clerk of the Court. I also further certify that a paper copy of the foregoing Answer & Affirmative Defenses and Counterclaims were served on the Defendant, Henry Howe, IV, by first class mail to his address at C/O Sybil Howe, 83 Deercrossing Road, Limrick, Maine 04048, which, on information and belief is the best address at which to reach Mr. Howe.


Dated: December 6, 2021                                  _____/s/ John Z. Steed_____
                                                         John Z. Steed, Esq. Bar # 5399
                                                         Law Office of Ellen S. Best
                                                         P.O. Box 386
                                                         Blue Hill, Maine 04614
                                                         (207) 374-2573