## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR MFRA TRUST 2015-1,<br><br>Plaintiff,<br><br>v.<br><br>HENRY W. HOWE IV and MELANIE B. HOWE,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Docket No. 2:21-cv-00278-NT |

## ORDER ON DEFENDANT'S MOTION FOR LEAVE TO ADD PARTY TO COUNTERCLAIMS AND PLAINTIFF'S MOTION TO STRIKE

Before me are Defendant/Counter-Plaintiff Melanie B. Howe's motion for leave to add a party *nunc pro tunc* to Ms. Howe's existing Counterclaims (ECF No. 9) and the Plaintiff's motion to strike portions of Ms. Howe's Counterclaims, Answer, and affirmative defenses (ECF No. 17). For the reasons set forth below, the Defendant's motion is **GRANTED**, and the Plaintiff's motion is **DENIED**.

## BACKGROUND

On September 30, 2021, Plaintiff Wilmington Trust National Association, Not In Its Individual Capacity, But Solely As Trustee For MFRA Trust 2015-1 ("**Wilmington**") filed its Complaint, alleging claims of breach of contract, quantum meruit, and unjust enrichment against Defendants Henry W. Howe IV and Melanie B. Howe related to a loan taken out by the two Defendants. Compl. (ECF No. 1). On

December 6, 2021, Melanie Howe filed her Answer and fifteen affirmative defenses, and she asserted Counterclaims against Wilmington and Fay Servicing, LLC ("**Fay**"), alleging that both Wilmington and Fay violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, and that Fay violated a Maine law, 14 M.R.S. § 6113, that requires mortgage servicers to act in good faith in servicing a mortgage-secured debt. Melanie Howe's Answer & Countercls. (ECF No. 8).[1] Minutes later, Ms. Howe filed her Motion for Order of the Court Granting Leave to Add Party to Defendant's Counterclaims Pursuant to Rule 13 *Nunc Pro Tunc* ("**Mot. for Leave**") (ECF No. 9). In Ms. Howe's Motion for Leave, she states that the case law is not clear as to whether leave of the Court is necessary to add parties under Federal Rule of Civil Procedure 13(h), so she filed the Motion for Leave to add Fay as a named party "to err on the side of caution." Mot. for Leave 2–3.

Wilmington opposed Ms. Howe's Motion for Leave. Counter Def.'s Opp'n to Counter Pl.'s Mot. for Order of the Court Granting Leave to Add Party to Def.'s Countercls. Pursuant to Rule 13 *Nunc Pro Tunc* ("**Wilmington's Opp'n**") (ECF No. 16). Wilmington also filed its own motion, asking the Court to strike portions of Ms. Howe's Answer, affirmative defenses, and Counterclaims. Countercl. Def.'s Mot. to Strike Pursuant to Fed. R. Civ. P. Rule 12(f) ("**Mot. to Strike**") (ECF No. 17). Ms. Howe filed an opposition. Opp'n to Pl.'s Mot. to Strike ("**Howe's Opp'n**") (ECF No. 20). And Wilmington filed a reply. Counter Def.'s Reply to Counter Pl.'s Opp'n to Mot. to Strike (ECF No. 21).

---

[1]     Defendant Henry Howe defaulted. Order (ECF No. 19).

## DISCUSSION

### I.   Ms. Howe's Motion for Leave to Add Fay as Party

Ms. Howe requests an order from me granting leave to add a party—the servicer of her mortgage, Fay Servicing LLC—*nunc pro tunc* as an additional defendant to her Counterclaims. According to Ms. Howe, in investigating Wilmington's claims against her, "it was determined that Ms. Howe had certain legal claims arising out of and related to the claims asserted by the Plaintiff in its Complaint which involve its collector Fay Servicing LLC." Mot. for Leave 2.

Ms. Howe asserts that Fay acted as Wilmington's debt collector and servicer and therefore Ms. Howe's Counterclaims against Fay involve the same transactions and raise issues of fact and law common to the claims and counterclaims between Wilmington and Ms. Howe. Mot. for Leave 3. She also points out that adding Fay as a counter-defendant in this action, rather than filing separate litigation against the servicer, promotes judicial economy. Mot. for Leave 3. Wilmington argues that Fay should not be joined in this action because Fay acted at the direction of and as an agent for Wilmington, so there is no independent cause of action against Fay. Wilmington's Opp'n 4. Wilmington also objects to the *nunc pro tunc* nature of Ms. Howe's request. Wilmington's Opp'n 3–4.

### A.   Legal Standard

Rule 13(h) of the Federal Rules of Civil Procedure addresses joining "the addition of a person as a party to a counterclaim" and directs that Rules 19 and 20 govern. Fed. R. Civ. P. 13(h). Rule 20(a)(2) applies to permissive joinder and provides:

Persons . . . may be joined in one action as defendants if:

> (A)  any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2); *see Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84, 96 (1st Cir. 2022) ("Rule 20 sets the limit for allowing additional parties to join a pre-existing lawsuit, permitting joinder of those parties with claims arising out of the 'same transaction or occurrence' and presenting common 'questions of law or fact.' " (quoting  Fed. R. Civ. P. 20(a)(1)(A),(B))).  "The transaction and common-question requirements prescribed by Rule 20(a) are not rigid tests." *Arista Recs. LLC v. Does 1-27*, 584 F. Supp. 2d 240, 261 (D. Me. 2008) (quoting 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1653 at 415 (3d ed. 2001)).  Whether to permit joinder of parties is within the discretion of the court, and "the rules governing party joinder are construed liberally for the sake of convenience and economy." *Cruz v. Bristol-Myers Squibb Co., PR*, 699 F.3d 563, 569 (1st Cir. 2012); *see also Arista*, 584 F. Supp. 2d at 251, 261 (noting that courts read Rule 20 "as broadly as possible whenever doing so is likely to promote judicial economy" because the purpose of the rule is "to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits" (quoting Wright, Miller & Kane, *supra* §§ 1652 at 395, 1653 at 415)).

### B.  Application

To join Fay as a defendant in this action, Ms. Howe first must show that the right to relief she is asserting against Wilmington and Fay arises out of the same transaction or occurrence or series of transactions or occurrences. Ms. Howe's

Counterclaims against both Wilmington and Fay concern the rights available to the parties under a promissory note and mortgage executed by Ms. Howe. Stemming from that one transaction are a series of collection and enforcement attempts by Wilmington and Fay, including collection efforts they undertook after judgment in the prior state court action. The actions allegedly undertaken by Wilmington and Fay to enforce and collect on the note and mortgage do not overlap entirely (for example, Fay allegedly sent mortgage statements to Ms. Howe falsely claiming a right to foreclose while Wilmington filed this federal court action). But they all are in furtherance of enforcing and collecting on that original note and mortgage, and therefore Ms. Howe's allegations against Wilmington and Fay meet the same-transaction test.

As to the second requirement—whether questions of law or fact common to all defendants will arise in this action—that prerequisite is also met. The facts underlying the note and mortgage, and any subsequent assignments, are the same for both Wilmington and Fay. The collection attempts by Wilmington, whether undertaken directly or through Fay as servicer of the loan, also involve facts common to both defendants. And the legal questions implicated in this action—Wilmington's right to collect (through its servicer Fay) on the note and foreclose on the mortgage following the state court litigation and Ms. Howe's allegation that both Wilmington and Fay engaged in unlawful means of collection—are common to both defendants.

Wilmington makes no real attempt to argue otherwise. Instead, it maintains that joining Fay would be impermissible because the Counterclaims "are devoid of

any allegations that Fay acted independently of Wilmington." Wilmington's Opp'n 4. But that further supports my finding that the Counterclaims against Wilmington and Fay  arise out of the same transaction or occurrence and present common questions of law and fact. Wilmington seemingly argues that joinder against a principal (Wilmington) and its agent (Fay) is not proper. But such joinder of defendants is done all the time, particularly where, at the pleading stage, it is unclear which of the defendants is liable for what actions. Maine law recognizes that "[i]n an action for the tortious conduct of an agent, both the agent and the principal can be held liable."[2] *Advanced Constr. Corp. v. Pilecki*, 2006 ME 84, ¶ 16, 901 A.2d 189 (citing Restatement (Second) of Agency § 217B(1) (1958); *Cnty. Forest Prods., Inc. v. Green Mountain Agency, Inc.,* 2000 ME 161, ¶¶ 43–44, 758 A.2d 59, 69–70). Wilmington cites no case law to the contrary.

The only case Wilmington cites for its position, *Arista*, does not, as Wilmington claims, "illustrate[ ] the distinct difference between seeking to join additional defendants with allegations of similar wrongful conduct on separate occasions and joining a party-agent to answer duplicative claims for the same allegedly wrongful actions." Wilmington's Opp'n 4. The *Arista* court merely denied a motion for sanctions based on the plaintiffs' alleged violation of the joinder rules; it never suggested that the outcome might be different if the plaintiffs had tried to join a party's agent for the same alleged wrongful conduct. *See* 584 F. Supp. 2d at 250–52. Here, Ms. Howe's

---

[2]     Ms. Howe's Counterclaims fall within this category because "actions for unlawful and deceptive conduct sound in tort." *Advanced Constr. Corp. v. Pilecki*, 2006 ME 84, ¶ 16, 901 A.2d 189 (citing *Drinkwater v. Patten Realty Corp.,* 563 A.2d 772, 774 (Me. 1989)).

allegations against Fay satisfy the requirements of Rule 20, and accordingly I grant Ms. Howe leave to join Fay, the servicer of the mortgage and an agent of Wilmington, as a counter-defendant.[3]

## II.   Wilmington's Motion to Strike

Wilmington moves to strike parts of Ms. Howe's Answer, affirmative defenses, and Counterclaims because, it says, doing so "will clarify the issues in dispute" and "avoid potential prejudice to Wilmington that may arise out of its obligation to respond to meritless defenses and . . . a potential jury's obligation to sift through a convoluted morass of allegations." Mot. to Strike 3. More specifically, Wilmington requests that I strike parts of three paragraphs in Ms. Howe's Answer, that I strike nine of fifteen affirmative defenses asserted by Ms. Howe, and that I strike all or part of dozens of paragraphs in Ms. Howe's Counterclaims against Wilmington and Fay. Ms. Howe opposes the Motion to Strike, arguing that Wilmington disputes the merit of Ms. Howe's claims and defenses and that a motion to strike is not the proper procedural vehicle to hash out such a dispute. Howe's Opp'n 2.

### A.   Legal Standard

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial,

---

[3]    Ms. Howe asks for a *nunc pro tunc* order granting leave, and Wilmington objects to joining Fay in a *nunc pro tunc* fashion. I question why this matters to either party. "*Nunc pro tunc*, a Latin phrase meaning 'now for then,' refers to the power of a court to treat something done now—typically a court order—as effective as of an earlier date." *Gutierrez-Castillo v. Holder*, 568 F.3d 256, 261 (1st Cir. 2009). To the extent that Ms. Howe is seeking after-the-fact permission to have added Fay to the Counterclaims, she has it, and the Counterclaims naming Fay are to be treated as filed on December 6, 2021. Ms. Howe shall promptly effectuate service of the Counterclaims on Fay, and Wilmington shall file its answer to the Counterclaims within twenty-one days of this order.

impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). But "[m]otions to strike . . . are disfavored, and they are rarely granted absent a showing of prejudice to the moving party." *Nelson v. Univ. of Me. Sys.,* 914 F. Supp. 643, 646 (D. Me. 1996) (citing Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 1381 at 672 (1990)). This is because "striking a portion of a pleading is a drastic remedy and it is often sought by the movant simply as a dilatory or harassing tactic." *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013) (quoting 5C Charles Alan Wright, et al., *Federal Practice & Procedure* § 1380 (3d ed. 2011)). Indeed, this Court has a long practice of not "tamper[ing] with the pleadings unless there is a strong reason for so doing." *Sebunya v. Holder*, Civil No. 2:12-cv-67-GZS, 2012 WL 5993160, at *1 (D. Me. Nov. 30, 2012) (internal quotation omitted); *see Black v. UNUMProvident Corp.*, 245 F. Supp. 2d 194, 197 (D. Me. 2003) ("While a court may dismiss a pleading that does not comply with the notice pleading requirements of Rule 8, the exercise of this power is generally reserved for a pleading that is 'so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.' " (quoting *Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir. 1995))).

"Where there are disputed issues of fact or substantial issues of law, a motion to strike should not be used to test the merits of the defense; close or new questions of law and disputed factual issues should await a full hearing on the merits." *In re All Me. Asbestos Litig.*, 575 F. Supp. 1375, 1377 (D. Me. 1983). Therefore, "[i]t is appropriate for the court to grant a Rule 12(f) motion to strike a defense only if the defense is legally insufficient and presents no question of law or fact that the court

8

must resolve." *Johnson v. Chrysler Corp.*, 187 F.R.D. 440, 441 (D. Me. 1999). An affirmative "defense is 'legally insufficient' if it appears the movant would succeed despite any stated facts that could be proved in support of defense." *Tobin v. Univ. of Me. Sys.*, No. CIV. 98-237-B, 2000 WL 863228, at *1 (D. Me. Mar. 3, 2000) (internal quotation omitted).

### B.    Ms. Howe's Answer

First, Wilmington requests that I strike everything in Paragraph 1 of the Answer after "[t]he Defendant denies the allegation in Paragraph 1 o[f] the Complaint." Paragraph 1 of the Answer (with the contested parts underlined) reads:

> The Defendant denies the allegation in Paragraph 1 on [sic] the Complaint and demands strict proof. On information and belief, the Wilmington Trust N.A. does not exercise a sufficient degree of control over the MFRA Trust 2015-1 for Wilmington Trust N.A.'s ("MFRA Trust 2015-1") citizenship to control the question of diversity. In support of this belief, Ms. Howe states as follows:
> a. According to public records, MFRA Trust 2015-1 is a Delaware Statutory Trust.
> b. Under Delaware law, the trustee of a statutory trust does not control the trust *per se* as is more common under a common law trust. Instead, a Delaware statutory trust is controlled by a governing instrument which may permit a trustee to act on its behalf and also permit any person (including beneficial owners of the statutory trust) to direct a trustee. Del. Code Ann. tit. 12, § 3806.

Answer ¶ 1. The only argument that Wilmington puts forward is that Ms. Howe "has no legal basis to demand 'strict proof' in an Answer." Mot. to Strike 3. When arguing its position, a party must fully develop the argument on which it relies. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation"—like Wilmington's effort here—"are deemed waived." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990). Even if I were to consider the merits, I

would deny Wilmington's motion to strike as to Paragraph 1 because much of Ms. Howe's response goes to the issue of diversity jurisdiction alleged in Paragraph 1 of the Complaint, and I see nothing prejudicial, redundant, immaterial, impertinent, or scandalous in this paragraph.

Next, Wilmington asks to strike the below underlined portion of Paragraphs 21 and 31:

> The Defendant denies the allegations in Paragraph [21/31]. <u>Defendant would also note that Plaintiff's action is an injustice since it lost in state court and is simply forum shopping without the right to do so since it never appealed the adverse decisions against it.</u>

Answer ¶¶ 21, 31.[4] Wilmington argues that the disputed language should be stricken to omit the argumentative material, which it says is legally insufficient. I disagree. To start, I note that Wilmington likely invited Ms. Howe's forum-shopping-injustice argument by itself alleging in Paragraphs 21 and 31 of the Complaint that "injustice" can only be avoided by awarding the Plaintiff damages. And again, Wilmington has not shown that it will be prejudiced by this paragraph. Further, whether there is merit to Ms. Howe's claim that Wilmington is impermissibly forum shopping following an unfavorable state court decision turns on questions of law and disputed factual issues that should await a full disposition on the merits rather than be stricken now. Wilmington's motion to strike these portions of Ms. Howe's Answer is therefore denied.

---

[4]     Save for the paragraph number, the language in Paragraphs 21 and 31 of the Answer is identical.

C.     **Ms. Howe's Affirmative Defenses**

Wilmington next challenges several of the affirmative defenses that Ms. Howe asserts in her Answer. Wilmington's arguments largely fall into two categories—either the asserted defense is legally insufficient or it is inflammatory and prejudicial.

Wilmington argues that Ms. Howe's First, Second, Eighth, Ninth, Eleventh and Twelfth Affirmative Defenses are legally insufficient. As to the Eighth Defense,[5] Wilmington fails to provide any argument as to why this defense is insufficient, other than to assert that "it fails to state any legal claim or defense," Mot. to Strike 6, so Wilmington has waived this argument. *See Zannino*, 895 F.2d at 17.

The First and Second Affirmative Defenses raise issues concerning the *Rooker-Feldman* Doctrine and *res judicata*, respectively, relating to prior state court orders denying the Plaintiff relief.[6] According to Wilmington, the *Rooker-Feldman* and res judicata doctrines are not implicated because this Court is not being asked "to overturn an injurious state court judgment" and the state court did not reach the merits of Wilmington's claim. Mot. to Strike 5. But the facts as alleged by Ms. Howe, if true, suggest that Wilmington may indeed be attempting some sort of end-run

---

[5]     The Eighth Affirmative Defense asserts: "Plaintiff's claims are barred in whole or in part based on the written contract and prior court orders from the state court which denied the relief and claims asserted in this action by the Plaintiff and certain of the fees, charges, and sums are not expressly authorized by the contract Plaintiff seeks to enforce in this action." Melanie Howe's Answer & Countercls. ("**Answer**") ¶ VIII (ECF No. 8).

[6]     The First Affirmative Defense states: "Plaintiff's claims are barred by the Rooker-Feldman Doctrine. Plaintiff lost its purported rights in a prior state court action, sought no appellate review of those final decisions, and may not now appeal to this Court as a state court loser the judgments entered against it." Answer ¶ I. The Second Affirmative Defense is that "Plaintiff's claims are barred by res judicata, collateral estoppel or general claim preclusion since Plaintiff previously did bring or could have asserted the claims herein is [sic] a prior action between the Parties and lost that action with prejudice on an adjudication of the merits." Answer ¶ II.

around the state court proceedings. It seeks to collect on Ms. Howe's promissory note in federal court after its declaratory judgment action in state court—which sought a declaration that Wilmington's predecessor in interest had standing to bring a foreclosure action to enforce the promissory note—was dismissed with prejudice. Countercls. ¶¶ 20–24, 30.[7] And the First Circuit has recognized that the assertion of claims in state court can collaterally estop the assertion of similar claims in federal court. *See generally Diversified Foods, Inc. v. First Nat'l Bank of Bos.,* 985 F.2d 27, 30–32 (1st Cir. 1993). The interconnectedness of a note holder and mortgage owner under Maine state law is complicated, but an order on a motion to strike is not the vehicle to resolve the disputed facts and questions of law necessary to determine whether the state court orders entered against Wilmington (or its predecessor in interest) in its declaratory judgment action on its mortgage foreclosure rights affect the Plaintiff's ability to recover in this separate action in federal court to enforce the terms of the underlying promissory note. These issues present a close question that I need not tackle here other than to say that I do not find the first two affirmative defenses insufficient as a matter of law.

As to the Ninth Affirmative Defense, which challenges the Court's subject-matter jurisdiction based on diversity of citizenship, Wilmington argues that this defense is insufficient because a trustee has standing to act for the trust. Mot. to

---

[7]    I am aware that Wilmington only agreed to a dismissal *without* prejudice and that the state court, siding with Ms. Howe, dismissed *with* prejudice. *See* Answer Ex. B, at 1, 4 (ECF No. 8-2). Wilmington moved to amend the state court order dismissing the action with prejudice, but that motion was denied and the case was instead dismissed with prejudice. *See* Answer Ex. A (ECF No. 8-1), Ex. B. (ECF No. 8-2).

Strike 6. In support of this argument, Wilmington attaches a case in which Judge Hornby denied a motion to dismiss on the grounds that the plaintiff trustee adequately pleaded diversity by alleging only the trustee's citizenship. Mot. to Strike Ex. A, at 1–2 (ECF No. 17-1). Ms. Howe responds that the issue of citizenship of a real estate investment trust or Delaware statutory trust is an open question in the First Circuit (and others). Howe's Opp'n 11–12. While Ms. Howe may not ultimately prevail on the merits of her jurisdictional defense, given that substantial issues of law exist, Wilmington has not established that the defense is legally insufficient.

The same is true for the Eleventh and Twelfth Affirmative Defenses.[8] Wilmington takes issue with the merits and applicability of these two defenses, Mot. to Strike 6–7, but it has failed to show that they are legally insufficient so as to warrant striking at this stage. And Ms. Howe's Fifteenth Affirmative Defense, in which she "reserves the right to add additional affirmative defenses as this matter progresses," Answer ¶ XV, is a boilerplate defense asserted by many defendants in this Court, and I see no reason to strike it here.

With respect to the Third and Fourth Affirmative Defenses, they both assert that the "Plaintiff's claims are barred by the Fair Debt Collection Practices Act and 14 M.R.S. § 6113" and that Wilmington's conduct was "in contravention to remedial,

---

[8]     The Eleventh Affirmative Defense states: "Plaintiff is not entitled to any judgment in its favor to be collected from Defendant's home and property as Defendant is entitled under 14 M.R.S. 1422(1) to exempt $160,000 from the value of her home, and Plaintiff's income is protected income not subject to garnishment." Answer ¶ XI. The Twelfth Affirmative Defense states: "Plaintiff's claims in Count II are barred by law and fail to state a claim for relief which can be granted since Plaintiff's claims relate to the enforcement of a negotiable instrument and are governed by the UCC and are barred by common law and/or not enforceable in contract." Answer ¶ XII.

13

consumer protection laws," and they include parenthetically at the end "(illegality)."[9] Answer ¶¶ III, IV. Wilmington argues that these two defenses appear to allege that it has committed criminal acts, and therefore they are "highly inflammatory and prejudicial." Mot. to Strike 5–6. But asserting the violation of two consumer protection laws as a defense to a collection action is hardly prejudicial. Contrary to Wilmington's argument, there is no allegation of criminality; Ms. Howe is merely claiming that Wilmington violated the consumer protection laws in its debt collection practices. The Plaintiff has failed to show that it is prejudiced by this defense.

Wilmington's motion to strike the foregoing affirmative defenses from Ms. Howe's Answer is therefore denied.

### D.    Ms. Howe's Counterclaims

Finally, Wilmington argues that much of Ms. Howe's Counterclaims should be stricken either because they reference Fay or because Wilmington disagrees with their content for various factual or legal reasons. As to the Fay allegations, I have granted Ms. Howe's motion to add Fay as a counter-defendant in this action, so those allegations, claims, and the Counterclaims' caption containing Fay survive Wilmington's motion to strike.

As to the remaining allegations in the Counterclaims with which Wilmington takes issue, I will not go through all the requests to strike line-by-line. What

---

[9]     In full, the Third Affirmative Defense states: "Plaintiff's claims are barred by the Fair Debt Collection Practices Act and 14 M.R.S. § 6113 because its conduct is in contravention to remedial, consumer protection laws (illegality)." Answer ¶ III. The Fourth Affirmative Defense states: "Plaintiff's claims are barred by the Fair Debt Collection Practices Act and 14 M.R.S. § 6113 because its conduct is in contravention to remedial, consumer protection laws it has willfully or recklessly disregarded without the right to do so (illegality)." Answer ¶ IV.

Wilmington is essentially asking me to do through its many requests is to rewrite the Counterclaims to its liking. That is not an appropriate application of Rule 12(f). Wilmington has pointed to nothing in Ms. Howe's Counterclaims that is redundant, immaterial, impertinent, scandalous, or prejudicial to Wilmington and therefore has not shown that this is the rare instance where such a drastic remedy—striking large portions of the Counterclaims—is warranted. I decline Wilmington's invitation to tamper with the pleadings in this way and deny the Motion to Strike.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant/Counter-Plaintiff Melanie B. Howe's motion for leave to add Fay Servicing LLC as a counter-defendant. The Court **DENIES** Wilmington's motion to strike. The Counterclaims previously filed by Ms. Howe (ECF No. 8) shall be considered filed as of December 8, 2021, and Ms. Howe shall promptly effectuate service on Fay. The deadline for Wilmington's responsive pleading to the Counterclaims shall be twenty-one days from entry of this order.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 13th day of May, 2022.

15