UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR MFRA TRUST 2015-1, <br><br> Plaintiff, <br><br> v. <br><br> HENRY W. HOWE IV and MELANIE B. HOWE, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) Docket No. 2:21-cv-00278-NT ) ) ) ) ) ) |

**ORDER ON PLAINTIFF'S MOTION TO STAY**

Before me is the Plaintiff's motion to stay this matter pending a decision in a Maine state court appeal (ECF No. 36). For the reasons set forth below, the Plaintiff's motion is **DENIED**.

**BACKGROUND**

On September 30, 2021, Plaintiff Wilmington Trust National Association Not In Its Individual Capacity, But Solely As Trustee For Wilmington 2015-1 ("**Wilmington**") filed its complaint, alleging claims for breach of contract, quantum meruit, and unjust enrichment against Defendants Henry W. Howe IV and Melanie B. Howe related to a loan taken out by the two Defendants. Compl. (ECF No. 1). Specifically, Wilmington alleges that, in 2007, when the Howes bought their property in Hollis, Maine, they executed a promissory note for $208,000, which was later modified. Compl. ¶¶ 6–8. According to Wilmington, it is now the lawful holder and

owner of the note, and the Howes have breached the terms of the note and owe more than $352,000 on it. Compl. ¶¶ 9–11, 16–20. Although the note was originally secured by the Howes' Hollis property, Wilmington is not seeking foreclosure in this action and instead asserts (1) a claim for breach of the note, (2) a claim for breach of contract, money had and received, (3) a claim for quantum meruit, and (4) a claim for unjust enrichment, based on the Howes' alleged breaches of the note and failure to repay the loan obligation. Compl. ¶¶ 12, 14–42.

Defendant Henry Howe defaulted. Order (ECF No. 19). Defendant Melanie Howe, however, filed an answer and affirmative defenses, and she asserted counterclaims against Wilmington and Fay Servicing, LLC ("**Fay**"). Melanie Howe's Answer & Countercls. ("**Countercls.**") (ECF No. 8). According to Ms. Howe, when she and Henry Howe borrowed the $208,000, they executed a promissory note and mortgage to Challenge Financial Investor's Corp. ("**Challenge**"). Countercls. ¶ 17. In 2017, MTGLQ Investors LP believed it was holding the note, and it filed an action in state court against Challenge, naming the Howes as parties in interest and seeking a declaratory judgment that, as holder of the note, MTGLQ Investors LP had standing to foreclose to enforce the note ("**Prior Action**"). Countercls. ¶¶ 19–21. The Prior Action apparently did not include the claims asserted here. Countercls. ¶ 22.[1]

---

[1] Presumably the state court action was initiated to try to address a "*Greenleaf* issue" because the Howes' mortgage gave Mortgage Electronic Registration Systems, Inc. the right to record, but under *Bank of Am., N.A. v. Greenleaf*, 2014 ME 89, 96 A.3d 700, the other rights under the mortgage, including the right to foreclose, remained with Challenge. Melanie Howe's Answer & Countercls. ("**Countercls.**") ¶¶ 18–19 (ECF No. 8).

A few months into the Prior Action, Wilmington was substituted as the plaintiff, *see* Countercls. Ex. C (ECF No. 8-3), and eventually the Prior Action was dismissed with prejudice, following *Beal Bank USA v. New Century Mortg. Corp.*, 2019 ME 150, 217 A.3d 731. Countercls. ¶¶ 24–27, 30; *see* Countercls. Ex. B (ECF No. 8-2). Wilmington filed a motion to amend the order dismissing

2

Ms. Howe alleges that, after having chosen to "split its claims" by not bringing any collection claims in the Prior Action, and then losing on the declaratory judgment claims asserted in the Prior Action, Wilmington continued to try to collect on the note. Countercls. ¶¶ 32–40. According to Ms. Howe, the collection attempts include: (a) Wilmington filing this federal action; (b) the loan servicer, Fay, sending written correspondence to Ms. Howe, representing that Wilmington and Fay had a right to collect and threatening foreclosure; (c) Fay repeatedly calling Ms. Howe in an attempt to collect on the loan; and (d) an agent working for either Wilmington or Fay sending agents to Ms. Howe's house to inspect and take photographs of the property. Countercls. ¶¶ 40–51. Ms. Howe alleges that both Wilmington and Fay violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, and that Fay violated a Maine law, 14 M.R.S. § 6113, that requires mortgage servicers to act in good faith in servicing a mortgage-secured debt. Countercls. ¶¶ 53–71.

The Plaintiff now requests that I stay the case until after the Maine Supreme Judicial Court, sitting as the Law Court, issues a decision in a pending state appeal, *J.P. Morgan Acquisition Corp. v. Camille J. Moulton*, Docket No. Oxf-21-412. Mot. to Stay Pending Appeal (**"Mot."**) 1–2 (ECF No. 36). Wilmington argues that resolution of the issues before the Law Court in *Moulton* "will directly impact the outcome of the

---

the Prior Action with prejudice, seeking to have the order modified to "specify that the Dismissal with Prejudice only precludes a future action brought by Wilmington . . . , or a successor-in-interest, for the claims advanced in this action," but the state court denied the motion. Countercls. Ex. A (ECF No. 8-1); Countercls. ¶¶ 31, 37. Wilmington did not appeal that decision. Countercls. ¶¶ 34, 38.

3

instant matter." Mot. 2. Ms. Howe opposes the stay. Opp'n to Pl.'s Mot. to Stay Pending Appeal (**"Opp'n"**) (ECF No. 38).

## LEGAL STANDARD

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Pan Am Sys., Inc. v. Hardenbergh*, No. 2:11-cv-00339-NT, 2012 WL 4855205, at *1 (D. Me. Oct. 12, 2012) (quoting *Landis v. N. Am. Co.,* 299 U.S. 248, 254 (1936)). But "[a] stay is an intrusion into the ordinary processes of administration and judicial review." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (internal quotation marks omitted). Therefore, "stays cannot be cavalierly dispensed." *Marquis v. F.D.I.C.,* 965 F.2d 1148, 1155 (1st Cir. 1992).

In determining whether to grant a stay request, courts consider the following factors: "(1) potential prejudice to the non-moving party, (2) hardship and inequity to the moving party without a stay, and (3) judicial economy." *Kourembanas v. InterCoast Colls.*, No. 2:17-cv-00331-JAW, 2018 WL 4087999, at *2 (D. Me. Aug. 27, 2018) (internal quotation marks omitted). "The movant bears the burden of demonstrating that a stay is appropriate." *Id.* (internal quotation marks omitted).

## DISCUSSION

To meet its burden of showing that a stay is appropriate, the Plaintiff copied and pasted the questions posed by the Law Court in its invitation for amicus briefing in *Moulton*. Among the questions are: (1) whether the Law Court should "reconsider its existing precedent that a foreclosure judgment in favor of the mortgagor . . .

4

renders the note and mortgage unenforceable because a second foreclosure action is barred by principles of res judicata?" and (2) "If the lender is barred from pursuing a second foreclosure action under principles of *res judicata*, does this inability render the note and mortgage unenforceable such that the lender may pursue alternative claims including, but not limited to, an unjust enrichment claim against the borrower . . . ?" Mot. 2. Wilmington claims that "the outcome of the *Moulton* decision, particularly if the Law Court overturns its prior decisions, would certainly foreclose Howe's arguments that the instant action is precluded." Mot. 2.

Ms. Howe counters that it is unlikely that the forthcoming *Moulton* decision will have an effect on this litigation because "the flavor of *res judicata* at issue" in *Moulton* differs from this case. Opp'n 3. Ms. Howe points out that because this matter does not involve a foreclosure claim; the *res judicata* question at issue here is whether the Plaintiff could have brought its current claims in the Prior Action, and whether the Prior Action, which was for a declaratory judgment and was dismissed with prejudice, bars the current action. Opp'n 3. Further, Ms. Howe argues that nothing the Law Court decides in *Moulton* will affect Ms. Howe's counterclaims that Wilmington and Fay violated the Fair Debt Collection Practices Act and Maine's law requiring mortgage servicers like Fay to act in good faith. Opp'n 3–4.

I find that the Plaintiff has not met its burden of demonstrating that a stay is warranted pending an outcome in *Moulton*. As to the first factor, granting the stay would prevent Ms. Howe from proceeding with her counterclaims based on the collection practices employed by Wilmington and Fay, which Wilmington seems to

acknowledge do not play any role in the *Moulton* case. *See* Pl./Counter-Def.'s Reply to Opp'n ("**Reply**") 2 (ECF No. 40). In addition, Ms. Howe's Answer and Counterclaims outline the alleged physical and emotional distress that Wilmington's and Fay's collection efforts have caused Ms. Howe and her family. Countercls. ¶¶ 14–16, 52. Postponing resolution in this case would prolong this alleged damage to her mental health and well-being.

Wilmington claims that "factors one and two are both met" because "the delay would allow the Defendant to remain in the property, whereas the Plaintiff is paying taxes and insurance and Howe is not paying the loan obligation." Reply 1–2. I fail to see how factor two is met under this logic. Imposing a stay would delay resolution here and extend the period of time that Wilmington must pay taxes and insurance costs on the property. Thus, Wilmington's harm is actually aligned with Ms. Howe's— the longer this case (brought by Wilmington in the first place) drags on, the more Wilmington is out of pocket for these carrying costs. Wilmington has not put forward any hardship or inequity that would befall it *absent* a stay.

Finally, judicial economy weighs in favor of denying the stay request. Wilmington maintains that a decision in *Moulton* should issue "relatively soon" and therefore conducting discovery in this matter "in such a fluid environment" would be a waste of judicial resources and the parties' time and money. Reply 2. There are a few reasons I am unpersuaded by this argument. First, I have no way to predict when the Law Court will issue its *Moulton* opinion so it is impossible to know if it will come out in the near future as Wilmington suggests. *See Nken*, 556 U.S. at 421 ("It takes

time to decide a case on appeal. Sometimes a little; sometimes a lot."). Second, at this stage in the federal litigation, there is little by way of judicial resources that will be wasted. I have already ruled on the parties' pleadings-related motions. *See* Order on Def.'s Mot. for Leave to Add Party to Countercls. & Pl.'s Mot. to Strike (ECF No. 23). A scheduling order will issue in this case as soon as Fay files its answer, and the parties will have the standard months-long period to conduct discovery. Likely nothing will require the Court's time unless and until a party notifies me of its intent to file a motion for summary judgment. Further, I doubt that the scope of discovery will change much based on *Moulton* because presumably the majority of *res judicata*-related documents—such as state court filings—are already known to the parties given that they were also involved in the Prior Action. So the additional time and money expended by the parties if this case proceeds while *Moulton* is undecided is negligible.

That leads to the question at the heart of the parties' briefing—how much the outcome of the *Moulton* case could affect this litigation. The Law Court's summary of the *Moulton* appeal explains the case as follows:

> J.P. Morgan Acquisition Corp. filed a foreclosure action against Camille J. Moulton. It later moved to dismiss the action without prejudice. The trial court denied J.P. Morgan's motion to dismiss the action and granted a summary judgment to Camille Moulton, determining that there was no dispute of material fact as to J.P. Morgan's failure to properly notify Moulton of her default and opportunity to cure the default. The trial court also declared that Moulton owned the title to the property free and clear of the mortgage.
>
> J.P. Morgan appeals, arguing that (1) there is a dispute of material fact regarding the validity of the notice of default and right to cure; (2) the trial court erred by declaring that Moulton owns the property free and

7

> clear of the mortgage because there was no claim, counterclaim, or other action requesting that relief; (3) the trial court erred in determining that J.P. Morgan lacked standing to foreclose without permitting J.P. Morgan to produce evidence to prove its standing; and (4) the trial court was compelled to grant its motion to dismiss without prejudice.
>
> The Law Court invited amicus briefs and supplemental briefing of the parties on whether the Court should reconsider existing precedent that holds that a foreclosure judgment in favor of a mortgagor bars a second foreclosure action and entitles the mortgagor to a discharge of the mortgage and title to the mortgaged property.

Maine Supreme Judicial Court, Oral Arguments (Tuesday, Nov. 1, 2022, at the Penobscot Judicial Center, Bangor), Summary of *J.P. Morgan Acquisition Corp. v. Camille J. Moulton*, Docket. No. Oxf-21-412, *available at* https://www.courts.maine.gov/courts/sjc/arguments-stream.html (last accessed Dec. 7, 2022). The "existing precedent" mentioned are two 2017 Law Court cases holding that, when a lender brings a foreclosure action against a mortgagor which is dismissed with prejudice, res judicata bars certain future enforcement actions by the lender. *See Fed. Nat'l Mortg. Ass'n v. Deschaine*, 2017 ME 190, 170 A.3d 230, *as revised* (Dec. 7, 2017) (holding that lender was precluded from seeking to recover the underlying debt on the note and borrowers were entitled to declaration that they held title to their property unencumbered by the mortgage); *Pushard v. Bank of Am., N.A.*, 2017 ME 230, 175 A.3d 103 (holding that borrowers were entitled to declaration that the note and mortgage were unenforceable and the borrowers held title to their property unencumbered by the mortgage).

The case before me is not a second foreclosure action. In fact, there was never a first foreclosure action relating to the note in question. This case involves whether the note-related and equitable claims brought here are barred because they could

8

have been brought in the Prior Action and weren't and because the Prior Action for declaratory judgment on the note was dismissed. Whether the *Moulton* decision will directly impact the issues in this case is unclear. *See Kourembanas*, 2018 WL 4087999, at *3 (denying motion for indefinite stay to wait for a different court "to rule on a similar, though not identical, issue in another case"). It is true that one of the questions the Law Court invited supplemental briefing on was whether, if a lender is barred from pursuing a second foreclosure action, that rendered the note "unenforceable such that the lender may pursue alternative claims" such as an unjust enrichment claim. *See* Mot. 2. But that hypothetical still is not identical to the scenario at issue here. And even if the Law Court does issue an opinion that changes Maine law in a way that might affect this litigation, the case is at an early enough stage that the parties and the Court should be able to incorporate the changed law by the time any dispositive motions must be filed. Therefore, it is in the interests of judicial economy to allow this case to proceed through discovery while the Law Court decides the *Moulton* appeal.

## CONCLUSION

For the reasons stated above, the Court **DENIES** the Plaintiff's motion to stay pending appeal (ECF No. 38).

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 15th day of December, 2022.