MFRA v. Howe

Joint Exhibit 11

**PINE TREE LEGAL ASSISTANCE, INC.**
*Jonathan E. Selkowitz ◆ Portland Area Office*
88 Federal Street
P.O. Box 547
Portland, Maine 04112
(207) 400-3207 ◆ V/TTY: 711 ◆ (207) 828-2300 FAX
*www.ptla.org ◆ jselkowitz@ptla.org*

February 14, 2018

Tamara Rueda, Clerk
York County Superior Court
P.O. Box 160
Alfred, ME 04002-0160

RE:     *Wilmington Trust, NA v. Challenge Financial Investors, et al.*, YORSC-CV-17-161

Dear Clerk:

Enclosed for filing in the above-referenced matter, please find the Opposition to Plaintiff's Motion for Quiet Title Default Judgment and Judgment on the Pleadings and Incorporated Memorandum Law by Party-In-Interest Melanie Howe.

Thank you very much for your attention to this matter.

Sincerely,

Jonathan E. Selkowitz
Staff Attorney

Enclosures

cc:     John Doonan, Esq.
        Duncan A. Edgar, Esq.
        Melanie Howe

1

STATE OF MAINE  
YORK, ss.

SUPERIOR COURT  
LOCATION: Alfred  
Docket No. YORSC-CV-17-161

**WILMINGTON TRUST, NATIONAL ASSOCIATION, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1**

          **Plaintiff**

v.

**CHALLENGE FINANCIAL INVESTORS CORP.**

          **Defendant**

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; NATIONSTAR MORTGAGE, LLC; HENRY W. HOWE, IV; MELANIE B. HOWE; ASSET ACCEPTANCE, LLC**

          **Parties-In-Interest**

## PARTY-IN-INTEREST MELANIE HOWE'S OPPOSITION TO PLAINTIFF'S MOTION FOR QUIET TITLE DEFAULT JUDGMENT AND JUDGMENT ON THE PLEADINGS AND INCORPORATED MEMORANDUM OF LAW

Party-in-Interest Melanie B. Howe ("Ms. Howe"), by and through her undersigned attorney, respectfully submits this Opposition with Memorandum of Law to Plaintiff Wilmington Trust, National Association, as Trustee for MFRA Trust 2015-1's ("Plaintiff") Motion for Quiet Title Default Judgment and Judgment on the Pleadings ("Motion").

**I.**      **INTRODUCTION**

This action is an attempt by Plaintiff to correct what would be a standing defect should Plaintiff ever attempt to foreclose on a mortgage that Ms. Howe and her husband gave to their lender, Challenge Financial Investors Corp. ("Challenge Financial") under the Maine Law Court decisions, *MERS v. Saunders*, 2010 ME 79, 2 A.3d 289, and *Bank of America v. Greenleaf*, 2014

1

ME 89, 96 A.3d 700, and their progeny. However, Plaintiff's attempt, via a declaratory judgment action, is a wholly inadequate short-cut to what Plaintiff must do to obtain the ownership rights to the Howes' mortgage.

As laid out below, Plaintiff's first error is that it has named Challenge Financial as the lone defendant, even though Challenge Financial has been dissolved for seven years. Plaintiff has apparently not investigated what happened to Challenge Financial's assets, including the Howes' mortgage, upon dissolution and made a demand for assignment upon the entity that now owns it. Nor has it named that entity in this action. Therefore, this declaratory judgment action is unfit for judicial determination.

Moreover, Plaintiff's legal theory as to why the Court should order that the Howes' mortgage be deemed transferred to Plaintiff fails as a matter of law. The very same argument was raised and rejected by the Law Court in *Greenleaf*. Accordingly, this Court should deny Plaintiff's Motion and, moreover, dismiss this case with prejudice.

## II.    STATEMENT OF FACTS

On April 20, 2007, Ms. Howe and her husband Henry Howe executed and delivered to Defendant Challenge Financial Investors Corp. ("Challenge Financial") a promissory note ("Note") and executed and delivered to Challenge Financial a mortgage on their home as collateral for their loan ("Mortgage"). (Compl. Exs. B & C.). Party-in-Interest Mortgage Electronic Registration Systems, Inc. ("MERS") is identified in the Mortgage as functioning "solely as a nominee for the Lender," and "Lender" is defined as "Challenge Financial Investors Corp." (Compl. Ex. C.) Challenge Financial was a Florida Corporation. (*See* Compl. Ex. B. at 1 (identifying Challenge as "a Florida Corporation"); Compl. Ex. C (defining "Lender" as "Challenge Financial Investors, Corp." and stating "Lender is a corporation or association which

exists under the laws of Florida").)  According to the Florida Department of State, Division of Corporations, Challenge Financial Investors Corp. was administratively dissolved on September 24, 2010 and remains defunct.  (Affidavit of Jonathan Selkowitz ("Selkowitz Affidavit") ¶¶ 3-9 & Ex.1; *see also* Compl. ¶ 2 (alleging Defendant ***was*** a corporation located in Florida (emphasis added).)[1]

On March 1, 2013, MERS purported to assign the Mortgage to Party-in-Interest Nationstar Mortgage, LLC ("Nationstar").  (Compl. Ex. E.)  On January 17, 2017, Nationstar purported to assign the Mortgage to MTGLQ Investors, L.P. ("MTGLQ").  (Compl. Ex. F.)  MTGLQ filed this action for declaratory judgment and to quiet title on or about June 22, 2017.  On September 12, 2017, MTGLQ purported to assign the Mortgage to Plaintiff, and subsequently moved to substitute Plaintiff.  (*See* Mot. For Substitution of Parties, Ex. A.)

On or about September 14, 2017, Ms. Howe filed an Answer denying many of the allegations in the Complaint, including that there is a cloud upon the title of the real property at issue in this case (Ms. Howe's Answer ¶ 10); that Plaintiff is the current holder of the Note by possession and proper endorsement (*id.* ¶ 12); that the Howes executed the Mortgage in favor of MERS (*id.* ¶ 13.); that Plaintiff is entitled to enforce the Note and Mortgage (*id.* ¶ 16); that ownership rights in the Mortgage were transferred by assignment to Nationstar and MTGQL (*id.* ¶¶ 23-24); and that MTGQL owns the Note and Mortgage (*id.* ¶¶ 25-28).  Ms. Howe further denied that Plaintiff was transferred ownership rights in the Mortgage by assignment and denied Plaintiff owns her Mortgage.  (*See generally* Ms. Howe's Resp. to Pl's Motion for Substitution.)  Defendant

---

[1] Ms. Howe requests that the Court take judicial notice of Challenge Financial's administrative dissolution as of September 24, 2010 pursuant to Me. R. Evid. 201(b)(2) because this fact is not subject to reasonable dispute as it can be accurately and readily determined from a source—the official website of the Florida Division of Corporations—whose accuracy cannot reasonably be questioned.  (*See* Selkowitz Affidavit ¶¶ 3-9 & Ex. 1.)

Challenge Financial has not answered, presumably because Plaintiff served Challenge by serving a copy of the Summons and Complaint on the Maine Secretary of State, and did not attempt to notify the principals responsible for winding up the business of Challenge Financial.

## III.   LEGAL STANDARD

### A.   Granting a Default Judgment Still Requires A Determination That Plaintiff's Claim Has Merit.

"The court has discretion in entering default judgment. '[T]he granting of a default judgment is discretionary, premised on the theory that justice is better served by adjudicating cases on their merits than by the use of default judgment.'" *The Bank of New York Mellon v. Decision One Mortg. Co.*, SAGSC-RE-16-10, 2017 WL 3873058, *3 (Me. Super. Mar. 27, 2017). Plaintiff argues that because Me. R. Civ. P. 8(d) provides that any averment in the Complaint not denied is deemed admitted, and because Challenge Financial failed to answer, it is entitled to default judgment pursuant to Rule 55. However, it is fundamental that even if the well-pleaded allegations in the Complaint are deemed admitted as to Challenge Financial, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." 10A, Wright & Miller, Fed. Prac. & Proc. Civ. § 2688.1 (4th ed.) (citing Fed. R. Civ. P. 55, which is effectively identical to Me. R. Civ. P. 55); *see also Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (default operates as admission of well-pleaded facts but not legal conclusions, and "[t]he court must, therefore, determine whether the well-pleaded allegations in [the] complaint support the relief sought in this action"); *Bonilla v. Trebol Motors Corp.*, 150 F.3d 77, 80 (1st Cir. 1998) ("[A] default judgment bars the defaulting party from disputing the facts alleged in the complaint, but it preserves for appeal arguments of law made below as to whether the facts aas alleged state a claim."); *Black v. Lane*, 22 F.3d 1395, 1407 (7th Cir. 1994) (after default, considering whether the facts alleged in

4

the complaint state a claim for relief); *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975 ("[A] default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover."); *United States v. Kahn*, 164 Fed. App'x 855, 858 (11th Cir. 2006) ("[A] default judgment may not stand on a complaint that fails to state a claim."); *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 271 (E.D. Pa. 2014) (upon application for default judgment, the court must determine whether unchallenged facts constitute cause of action); *Frazier v. Absolute Collection Service, Inc.*, 767 F. Supp. 2d 1354, 1362 (N.D. Ga. 2011) (same); *Finkel v. Triple A Group, Inc.*, 708 F. Supp. 2d 277, 280 (E.D.N.Y. 2010) (same); *United States v. Ponte*, 246 F. Supp. 2d 74, 76 (De. Me. 2003) (after default, "[a] plaintiff must nevertheless establish that on the law it is entitled to the relief it seeks, given the facts as established by the default.")

Some of the facts alleged in the Complaint are not in dispute. However, the Complaint avers many legal conclusions regarding Plaintiff's alleged ownership of Ms. Howe's Mortgage. This Court should examine the well-pleaded facts of the Complaint, disregard Plaintiff's legal conclusions, and make an independent determination of whether Plaintiff has presented sufficient evidence to demonstrate its entitlement to relief. Many Maine trial courts have determined that a hearing authorized by Rule 55(b)(2) is necessary in these declaratory judgment actions, and have denied motions for default judgment so that a hearing could be held. *E.g.*, *HSBC Mortg. Servs, Inc. v. Corinthian Mortg. Corp.*, ANDSC-CV-15-127, 2016 WL 7326260, *2 (Me. Super. Sept. 28, 2016); *Fed. Nat'l Mortg. Assoc. v. America's Wholesale Lender*, CUMSC-RE-15-068, 2016 WL 1706501, *2 (Me. Super. Mar. 1, 2016).

### B.   Judgment on the Pleadings

"A motion for judgment on the pleadings filed by the plaintiff tests the legal sufficiency of the affirmative defenses set forth in the defendant's answer." *Cunningham v. Haza*, 538 a.2d 265,

267 n.2 (Me. 1988).  To the extent the Court considers Ms. Howe's Answer on Plaintiff's Motion

for Judgment on the Pleadings, it must not accept any allegation in the Complaint that Ms. Howe

has adequately denied, and consider the legal sufficiency of Ms. Howe's affirmative defenses.  *See*

*id.*; Me. R. Civ. P. 12(c). In the event the Court would only consider an Answer by the named

Defendant, Challenge Financial, a motion for judgment on the pleadings is not appropriate because

Challenge Financial has not filed an answer.  *See, e.g.*, *U.S. Bank Trust, N.A. v. Accredited Home*

*Lenders, Inc.*, YORSC-CV-15-228, 2017 WL 2672526, *2 (Me. Super. May 2, 2017) (in similar

declaratory judgment action against defunct lender, "[j]udgment on the pleadings is inappropriate

in this matter because the defendant has neither appeared nor filed any responsive pleading."); *The*

*Bank of New York Mellon*, 2017 WL 3873058, *3 (same).

## IV.   **ARGUMENT**

### A.   **Plaintiff Has Sued the Wrong Defendant.**

Under Maine's Declaratory Judgments Act, in order for Plaintiff to proceed in this case

"all persons shall be made parties who have or claim any interest which would be affected by the

declaration." 14 M.R.S. § 5963.  Plaintiff has named a single defendant, Challenge Financial

Investors Corp., which was subject to administrative dissolution by the Florida Department of

State on September 24, 2010.  (Selkowitz Affidavit ¶ 9 & Ex. 1); *see also* Fla. Stat. Ann. §

617.1421 ("Procedure for and effect of administrative dissolution").  Under Florida corporations

law, a dissolved corporation is required to wind up its business, including dispose of its

properties, which may be prescribed by the corporation's Plan of Distribution of Assets or not.

Fla. Stat. Ann. § 617.1405(1)(b) & § 617.1406.

Plaintiff has sued Challenge Financial, a dissolved corporation, but has not alleged or

established how Challenge Financial's property, including any residual assets, were disposed of

through the corporation's winding up. Plaintiff has not alleged that Plaintiff has made any demand upon any successor in interest to Challenge Financial for assignment of the Mortgage. Rather, Plaintiff simply seeks an order seven years after Challenge Financial dissolved transferring the Mortgage from Challenge Financial to Plaintiff without citing to any legal authority to do so. If Plaintiff believes it has some legal entitlement to receive an assignment of the Mortgage, it must determine who was vested with Challenge Financial's real property interests, including residual assets, after its dissolution, and sue that entity. For this reason, the Court should deny Plaintiff's Motion.

## B.   This Case Is Not Ripe For Judicial Review

Plaintiff's sole claim is one for a declaratory judgment.[2] The Declaratory Judgments Act, 14 M.R.S.A. §§ 5951-5963, "does not create a new cause of action; its purpose is to provide a more adequate and flexible remedy in cases where jurisdiction already exists." *Hodgdon v. Campbell*, 411 A.2d 667, 669 (Me. 1980). As one court presiding over a nearly identical case as this reasoned: "Thus, as a declaratory judgment is merely a remedy, and not a cause of action in and of itself, there is no cause of action in this case on which the Court can grant relief." *Wilmington Savings Fund Society, FSB v. Mortg. Lenders Network USA, Inc.*, ANDSC-RE-16-35, 2017 WL 6804957, *1 (Me. Super. Nov. 16, 2017).

Furthermore, the Declaratory Judgments Act may be invoked only where there is a genuine controversy. *Wagner v. Secretary of State*, 663 A.2d 564, 567 (Me. 1995). "Although the

---

[2] Although the title of Plaintiff's Motion includes the phrase "Quiet Title" Plaintiff's Complaint does not appear to be pursuing a claim for quiet title. In any event, a quiet title action would not be appropriate because the quiet title statute, 14 M.R.S. § 6651, only authorizes such an action by "a person in possession" of real property or a "person who has conveyed such property." *See also Bank of Am. v. Mortgage Lenders Network USA*, CUMSC-RE-16-132, 2017 WL 1036128, *2 (Me. Super. Feb. 3, 2017).

Declaratory Judgments Act expands the range of available relief, it does not relax the requirements of justiciability necessary to present the Court with a judicable controversy." *Berry v. Daigle*, 322 A2d 320, 325 (Me. 1974). A genuine controversy exists if a case is ripe for judicial consideration and action. *Wagner*, 663 A.2d at 567. "An analysis of the ripeness issue involves two principal points of focus: the fitness of the issue for judicial decision, and the hardship to the parties of withholding court consideration." *Patrons Oxford Mutual Ins. Co. v. Garcia*, 1998 ME 38, ¶ 4, 707 A2d 384, 385.

Plaintiff's Complaint, even accepting its factual allegations as true, is insufficient to establish that: (1) any party suffered a hardship that would makes this case ripe for judicial review; or (2) the issues before the court are fit for judicial decision. Plaintiff merely alleges that "[a]n apprehension exists the parties named in the complaint ***claim or may claim*** some right, title or interest in the property adverse to the estate of Plaintiff.  The aforesaid apprehension creates a cloud upon the title and depreciates the market value of the property." (Compl. ¶¶ 9-10.)  There is no allegation that Plaintiff has demanded that the Howe's original lender, Challenge Financial, or the entity that acquired ownership rights to the Mortgage when Challenge Financial dissolved, assign its interest in the Mortgage to Plaintiff and the demand was refused.  The only averment that comes close to alleging a justiciable controversy is the wholly equivocal statement that Plaintiff fears that some other party "may claim some right, title or interest in the property adverse to" Plaintiff's.  (Compl. ¶ 9.)  This allegation is not sufficient to invoke the Court's power under the Declaratory Judgments Act. It certainly does not justify the relief requested by Plaintiff: that the Court use its equitable powers to transfer the Mortgage ownership rights from another entity to Plaintiff. *See HSBC Mortg. Servs, Inc. v. Corinthian Mortg. Corp.*, ANDSC -CV-15-127, 2016 WL 7326260, *2 (Me. Super. Sept. 28, 2016) ("Here, the court has no evidence, other than the

statement made by HSBC itself, that Corinthian is unwilling or unable to confirm its intent to give MERS the authority to transfer the mortgage's interest. Therefore, at present the court has insufficient evidence to say that this case contains a substantial, justiciable controversy that would empower the court to declare HSBC's rights.") Because Plaintiff has not demanded the title owner of the Mortgage to assign the Mortgage to Plaintiff, and that title owner has not refused such demand, Plaintiff's request for declaratory judgment must be denied because there is no justiciable controversy.

C.   **Plaintiff Is Not Entitled To A Declaration That It Owns The Mortgage As A Matter of Law.**

1.   **The Mortgage Assignments Relied Upon By Plaintiff Failed To Transfer Any Interest In the Mortgage Other Than the Right To Record the Mortgage.**

Plaintiff alleges ownership rights in the Mortgage were transferred by assignment from MERS to Nationstar; Nationstar to MTGLQ; and then MTGLQ to Plaintiff. (Compl. ¶¶ 23-24; Pl's Mot. for Substitution of Parties.)  The Maine Law Court has clearly stated, however, that the rights given to MERS as nominee for the lender in standard mortgage contracts do not confer MERS with the right to assign mortgages. *See Bank of America v. Greenleaf*, 2014 ME 89, ¶¶ 13-17, 96 A.3d 700 (MERS as nominee for original lender does not have right to assign a mortgage, therefore any such assignment is void and any foreclosure plaintiff alleging mortgage ownership based on such assignment lacks standing because it does not own the mortgage); *see also U.S. Bank, N.A. v. Curit*, 2016 ME 17, ¶ 10, 131 A.3d 903 (plaintiff relying on MERS assignment lacked standing); *Bank of America, N.A. v. Greenleaf* ("*Greenleaf* II), 2015 ME 127, ¶¶ 4-7, 124 A.3d 1122 (clarifying *Greenleaf* I); *Bank of N.Y. v. Dyer*, 2016 ME 10, 130 A.3d 966 (no standing due to MERS Assignment); *MERS v. Saunders*, 2010 ME 79, ¶ 10, 2 A.3d 289, 295 (finding the only rights conferred to MERS by the mortgage and note "are bare legal title to the property for the sole

purpose of recording the mortgage and the corresponding right to record the mortgage with the Registry of Deeds. . . . The remaining, beneficial rights in the mortgage and note are vested solely in the lender . . . and its successors and assigns.").

The Mortgage at issue here has the same language limiting MERS's interest to only recording the Mortgage that were analyzed in *Greenleaf* and *Saunders*. Therefore, none of the purported assignments of the Mortgage conveyed ownership interest in the Mortgage, and Plaintiff lacks any interest in the Mortgage other than the right to record it. Plaintiff is obviously aware of this, as it states in its Motion that "Plaintiff has brought this action in this Court to address the Law Court's concerns in *Greenleaf*." (Pl.'s Mem. in Supp. of Mot. at 5.)

Furthermore, the fact that MERS, acting as the agent of Challenge Financial, attempted to assign the Mortgage three years after Challenge Financial dissolved raises questions about MERS's authority to even act on Challenge Financial's behalf when it made the assignment. Plaintiff's Complaint and Motion makes no attempt to answer those questions.

### 2. Plaintiff's Equitable Trust Argument Has Been Rejected By the Law Court and Should Continue to Be Rejected.

Effectively conceding that Plaintiff does not own the Mortgage by virtue of the chain of assignments, Plaintiff argues the Court should nevertheless order that the Mortgage is deemed transferred to Plaintiff based on equity. Specifically, Plaintiff argues that based on a decision from 1883, *Jordon v. Cheney*, 74 Me. 359 (Me. 1883), Plaintiff should be declared the Mortgage's owner because the Mortgage is held in an equitable trust for the holder of the Note. This argument was specifically raised by the plaintiff in *Greenleaf*—by the same attorney representing Plaintiff in this case—and rejected by the Law Court.

> [I]t is well established that an assignment of mortgage is not even necessary in instances where, as here, a mortgage is given to secure a promissory note. *See Jordon v. Cheney*, 74 ME 359, 361-62 (1883) (holding that an assignment of mortgage is not necessary in instances where the mortgage is given to secure

negotiable promissory notes). When the Greenleafs executed their Mortgage in favor of MERS as nominee for Residential Mortgage Services, Inc. (the original lender herein), MERS received bare legal title while the "remaining, beneficial rights in the mortgage and note [remained] vested solely in the lender [Residential Mortgage Services, Inc.] and its successors and assigns." *Saunders,* 2010 ME 79, ¶ 10, 2 A.2d 289. Legal title thus was separated from equitable title from the onset of this transaction. However, once the Note was transferred to BANA - as evidenced by the uncontested endorsements - and BANA became holder of the Note (evidenced by producing the original note, endorsed in blank, at trial) (A. 137), legal title and equitable title were reunited. *See Jordon,* 74 ME 359, 361 (noting that a holder's title in equity was complete without a formal assignment of mortgage); *see also Simansky v. Clark,* 128 ME 280, 147 A. 205 (1929) (the promissory note need only be produced at trial and the suit cannot be defeated by questioning the standing of the party entitled to enforce a promise). Accordingly, even were there not a formal assignment of the Mortgage, as holder of the Note, BANA still would be the mortgagee pursuant to § 6321 and, thus, entitled to enforce the Note and Mortgage in foreclosure.

Brief of Appellee at 12-13, *Bank of Am., N.A. v. Greenleaf,* 2014 ME 89, (*available* at 2013 WL 9828466, at *12-13) (Law Docket No. CUM-13-536).[3]

The Law Court necessarily rejected this argument by holding that without an assignment from the original lender, Bank of America lacked an ownership interest in the mortgage. The Law Court concluded Bank of America held the Note and was authorized to enforce the debt, *Greenleaf,* 2014 ME 89, ¶ 11, but that "the mortgage portion of the standing analysis requires the plaintiff to establish *ownership* of the mortgage," *id.* at ¶ 12. The Court then found Bank of America failed to prove it owned the mortgage, notwithstanding its status as the note holder, because the series of assignments ending in Bank of America only conveyed the right to record the mortgage because the first assignment in that chain was made by MERS as nominee for the original lender. *Id.* ¶ 17.

A number of Superior Court decisions have rejected Plaintiff's same equitable trust argument in identical declaratory judgment actions.

---

[3] A copy of the Brief of Appellee in *Bank of America v. Greenleaf,* Law Docket No. CUM-13-536 is attached as Exhibit 2 to the Selkowitz Affidavit.

The court is not persuaded by plaintiff's argument that a declaratory judgment is proper because the mortgage is held in equitable trust for the holder of the mortgage note. (Pl.'s Memo. of Law 2) (citing, *Jordan v. Cheney*, 74 ME 359 (Me. 1883)).) The Law Court in *Greenleaf* held that a bank, as transferee of MERS as nominee for the mortgagee, had no standing to foreclose on the transferred mortgage despite having proven its status as holder of the mortgage note and its right to enforce the debt created thereby. *Greenleaf*, 2014 ME 89, ¶ 11, 96 A.3d 700. The court cannot decide here that the holder of the mortgage note, as a transferee of MERS as nominee for defendant mortgagee, is the owner of the mortgage as beneficiary of an equitable trust held by defendant without contradicting the Law Court's determination in *Greenleaf*.

*U.S. Bank Trust, N.A. v. Accredited Home Lenders, Inc.*, YORSC-CV-15-228, 2017 WL 2672526,

*2 (Me. Super. May 2, 2017) (O'Neil, Jr., J.).

Finally, in light of the Law Court's decision in *Greenleaf* and based on the facts of this case, it is unclear whether it is within the purview of this Court to grant Plaintiff the remedy that it truly seeks: standing to foreclose on the mortgage. *See Greenleaf I*, 2014 ME 89, ¶¶ 14-17, 96 A.3d 700. The Court is not persuaded by Plaintiff's argument that a declaratory judgment is proper because the mortgage is held in equitable trust for the holder of the mortgage note. (Pl.'s Memo. of Law 2-3) (citing, inter alia, *Jordan v. Cheney*, 74 ME 359 (Me. 1883)).) The Law Court in *Greenleaf I* held that a bank, as transferee of MERS as nominee for the mortgagee, had no standing to foreclose on the transferred mortgage despite having proven its status as holder of the mortgage note and its right to enforce the debt created thereby. *Greenleaf I*, 2014 ME 89, ¶ 11, 96 A.3d 700. To find here, for the sole reason that Plaintiff is the holder of the mortgage note, that Plaintiff, as transferee of MERS as nominee for Defendant mortgagee, is the owner of the mortgage as beneficiary of an equitable trust held by Defendant would either fly in the face of the Law Court's decision or would fail to satisfy the standing requirements set out therein, and possibly both.

*The Bank of New York Mellon v. Decision One Mortg. Co.*, SAGSC-RE-16-10, 2017 WL 3873058,

*3 (Me. Super. Mar. 27, 2017) (Billings, J.)

Finally, Plaintiff contends it can overcome a MERS defect on the basis that a note holder has an equitable interest in the mortgage, citing *Jordan v. Cheney*, 74 ME 359, 361 (Me. 1883). Courts in Maine have been hesitant to accept this argument, as the Law Court has not yet determined the propriety of the *Jordan* approach to resolve a *Greenleaf* problem. *See U.S. Bank, N.A. v. First Magnus Fin. Corp.*, 2017 Me. Super. LEXIS 131, at *2 (May 24, 2017); *Bank of N.Y. Mellon v. First Magnus Fin. Corp.*, 2016 Me. Super. LEXIS 132, at *3-5 (July 5, 2016). The Court agrees this is an issue to be resolved by the Law Court, and this Court will

12

not now grant a declaratory judgment in Plaintiff's favor on this basis.

*Wilmington Savings Fund Society, FSB v. Mortg. Lenders Network USA, Inc.*, ANDSC-RE-16-35, 2017 WL 6804957, *1 (Me. Super. Nov. 16, 2017).

Thus, while Maine is a title theory state, the law is clear that transfer of a note secured by a mortgage does not automatically transfer legal interest in the mortgagor's property to the transferee of the note. If the note owner wishes to obtain the legal interest in the property, it must obtain that interest by assignment from the mortgagee. Here, Plaintiff never obtained such an assignment. Plaintiff's equitable trust argument fails as a matter of law, and the Complaint should be dismissed with prejudice.

If Plaintiff had made a demand upon the current owner of the Mortgage, and the demand was refused, perhaps then, but only then, Plaintiff could seek court intervention to compel such an assignment. Here, Plaintiff makes no allegation that it has sought an assignment from the mortgagee. It has not even alleged that it has sued the party in whom the mortgage interest vested when Challenge Financial dissolved. It merely names as the defendant a party who once was, but now may or may not be the mortgage owner, and demands that the court enter an order constituting an assignment of a real property from that entity. The Court should deny Plaintiff's Motion and further dismiss this case with prejudice.

**D.    Melanie Howe Has Standing in This Case**

Any argument that Ms. Howe does not have any interest in this case is likewise without merit. Bank of America made this same argument before the Law Court in *Greenleaf.* Brief of Appellee at 13, *Bank of Am., N.A. v. Greenleaf*, 2014 ME 89, (*available* at 2013 WL 9828466, at *13) (arguing mortgagor lacks standing to contest validity of mortgage assignments because he is not party to an assignment or third-party beneficiary). The Mortgage in this case creates a lien against Ms. Howe's home. The entity who may enforce a mortgage lien and is entitled to the other

benefits of a mortgagee is of critical importance to the mortgagor, is the essence of the rights conveyed by the mortgagor to the mortgagee, and this interest is the type of right that a mortgagor has standing to assert pursuant to the mortgage.

As recognized by the Law Court in *Saunders* and *Greenleaf*, the Mortgage granted to MERS the bare legal right to record the mortgage. As signatory to the mortgage, Ms. Howe has a legally enforceable interest in the mortgage entitling her to enforce its terms as expressed by the plain language of the instrument.

In *Saunders* and *Greenleaf* the defendants had the same interest in the mortgage as Ms. Howe has in the instant case. Ms. Howe is not a party to any purported assignment of her Mortgage. However, in both *Saunders* and *Greenleaf* the Law Court found that the defendants nonetheless had the right to challenge the validity of the MERS assignments. Ms. Howe retains this right regardless of whether the Plaintiff attempts to assert its ownership interest in the mortgage through a complaint for foreclosure or complaint for declaratory judgment. Ms. Howe retains this right whether the Plaintiff sues her as a defendant or a party in interest. Having been joined in this action as a party-in-interest, Ms. Howe may be subject to whatever preclusive effect this Court's determination will have in the future, including any foreclosure action. To forbid her from challenging Plaintiff's claim of ownership of the Mortgage in this case would be wholly contradictory to the law in Maine that Ms. Howe may challenge Plaintiff's ownership of the Mortgage in a foreclosure case.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, not only has Plaintiff failed to meet its burden to obtain a default judgment or judgment on the pleadings, but Plaintiff's claim for declaratory judgment fails as a matter of law. Accordingly, this Court should deny Plaintiff's Motion and dismiss this case with prejudice.

14

Respectfully submitted,

Date: February 14, 2018

Jonathan E. Selkowitz
Bar No. 5711
Pine Tree Legal Assistance, Inc.
P.O. Box 547
Portland, ME 04112
207-400-3207
jselkowitz@ptla.org

15

STATE OF MAINE
YORK, ss.

SUPERIOR COURT
LOCATION: Alfred
Docket No. YORSC-CV-17-161

**WILMINGTON TRUST, NATIONAL ASSOCIATION, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1**
      I.        **Plaintiff**

      v.

**CHALLENGE FINANCIAL INVESTORS CORP.**

      **Defendant**

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.;**
**NATIONSTAR MORTGAGE, LLC;**
**HENRY W. HOWE, IV;**
**MELANIE B. HOWE;**
**ASSET ACCEPTANCE, LLC**

      **Parties-In-Interest**

## AFFIDAVIT OF JONATHAN SELKOWITZ

I, Jonathan E. Selkowitz, being duly sworn, hereby depose and say:

1. I am the attorney representing Party-in-Interest Melanie Howe in the above-captioned civil action.

2. I make this affidavit based on my own personal knowledge.

3. On February 12, 2018, I conducted a corporation search on the official Florida website of the Florida Division of Corporations, at the URL: http://search.sunbiz.org/Inquiry/Corporation Search/ByName.

4. The website states explicitly under a banner that reads "Division of Corporations," that the site is "an official State of Florida website."

1

5.   I entered the name "Challenge Financial Investors Corp." and executed a search.

6.   The results returned a top hit for CHALLENGE FINANCIAL INVESTORS CORP., with a Document Number P97000064423.

7.   I selected CHALLENGE FINANCIAL INVESTORS CORP., in order to view its corporate details.

8.   A true and accurate copy of the resulting webpage is attached to this Affidavit as Exhibit 1.

9.   The information provided by the Florida Division of Corporations indicates that Challenge Financial Investors Corp. was administratively dissolved on September 24, 2010. (See Ex. 1.)

10. The last annual report filed by Challenge Financial Investors Corp. with the state of Florida was on March 25, 2009.  (See Ex. 1.)

11. A true and accurate copy of the original Brief of Appellee in *Bank of America v. Greenleaf*, Law Docket No. CUM-13-536 is attached to this Affidavit as Exhibit 2.

Date: 2/14/18

Jonathan E. Selkowitz

STATE OF MAINE
CUMBERLAND, ss.

Personally appeared the above signed Jonathan E. Selkowitz before me this 14th day of February, 2018 and stated under oath that the foregoing statements by him are true and accurate to the best of his knowledge.

Notary Public / Attorney at Law

Bar # 7987

2

# EXHIBIT 1



## Detail by Entity Name

Florida Profit Corporation
CHALLENGE FINANCIAL INVESTORS CORP.

**Filing Information**

| | |
|---|---|
| **Document Number** | P97000064423 |
| **FEI/EIN Number** | 59-3460034 |
| **Date Filed** | 07/25/1997 |
| **State** | FL |
| **Status** | INACTIVE |
| **Last Event** | ADMIN DISSOLUTION FOR |
| ANNUAL REPORT | |
| **Event Date Filed** | 09/24/2010 |
| **Event Effective Date** | NONE |

**Principal Address**

3505 E FRONTAGE RD #165
TAMPA, FL 33607-1762

Changed: 04/30/2008

**Mailing Address**

3505 E FRONTAGE RD #165
TAMPA, FL 33607-1762

Changed: 04/30/2008

**Registered Agent Name & Address**

NRAI SERVICES, INC.
515 E. PARK AVENUE
TALLAHASSEE, FL 32301

**Officer/Director Detail**

**Name & Address**

Title SEC

FAORO, CHRIS J, SEC
5370 W 95TH ST
PRAIRIE VILLAGE, KS 66207-3204

**Annual Reports**

**Report Year        Filed Date**

| 2007 | 02/08/2007 |
| 2008 | 04/30/2008 |
| 2009 | 03/25/2009 |

**Document Images**

| | |
|---|---|
| 07/28/2015 -- Reg. Agent Resignation | View image in PDF format |
| 03/25/2009 -- ANNUAL REPORT | View image in PDF format |
| 04/30/2008 -- ANNUAL REPORT | View image in PDF format |
| 02/08/2007 -- ANNUAL REPORT | View image in PDF format |
| 01/03/2007 -- ANNUAL REPORT | View image in PDF format |
| 03/27/2006 -- ANNUAL REPORT | View image in PDF format |
| 01/04/2005 -- ANNUAL REPORT | View image in PDF format |
| 01/06/2004 -- ANNUAL REPORT | View image in PDF format |
| 11/07/2003 -- Reg. Agent Change | View image in PDF format |
| 10/08/2003 -- REINSTATEMENT | View image in PDF format |
| 03/12/2002 -- ANNUAL REPORT | View image in PDF format |
| 01/28/2002 -- Reg. Agent Change | View image in PDF format |
| 09/17/2001 -- ANNUAL REPORT | View image in PDF format |
| 12/14/2000 -- Amendment | View image in PDF format |
| 07/24/2000 -- ANNUAL REPORT | View image in PDF format |
| 02/19/1999 -- ANNUAL REPORT | View image in PDF format |
| 08/27/1998 -- ANNUAL REPORT | View image in PDF format |
| 07/25/1997 -- Domestic Profit Articles | View image in PDF format |

# EXHIBIT 2

STATE OF MAINE

# Supreme Judicial Court

SITTING AS THE LAW COURT

LAW DOCKET NO. CUM-13-536

BANK OF AMERICA, N.A.,

PLAINTIFF/APPELLEE,

v.

SCOTT GREENLEAF, ET AL.

DEFENDANTS/APPELLANTS.

ON APPEAL FROM DISTRICT COURT (CUMBERLAND COUNTY)

## BRIEF FOR THE PLAINTIFF/APPELLEE
## BANK OF AMERICA, N.A.

Phoebe N. Coddington
*Visiting attorney motion pending*
WINSTON & STRAWN LLP
100 N. Tryon Street
29th Floor
Charlotte, North Carolina 28202
(704) 350-7782
(704) 350-7800 (fax)
pcoddington@winston.com

John Doonan (Bar #3250)
Jenai Cormier (Bar #4682)
DOONAN, GRAVES & LONGORIA
100 Cummings Center, Suite 225 D
Beverly, Massachusetts 01915
(978) 921-2670
(978) 921-4870 (fax)
jad@dgandl.com
jjc@dgandl.com

*Attorneys for Bank of America, N.A.*

Dated: March 18, 2014

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................. iii

INTRODUCTION............................................................................................ 1

BACKGROUND AND STATEMENT OF FACTS.................................................. 1

SUMMARY OF ARGUMENT ............................................................................ 5

ARGUMENT .................................................................................................. 6

    I.    THE DISTRICT COURT CORRECTLY DETERMINED AS A
        MATTER OF LAW THAT BANA ESTABLISHED ITS RIGHT TO
        FORECLOSE THE MORTGAGE. ................................................ 6

    II.   THE DISTRICT COURT PROPERLY ADMITTED BANA'S
        EXHIBITS INTO EVIDENCE........................................................ 8

        a.    The District Court Properly Admitted the Assignment
            From MERS to BAC and Found It Constitutes a Valid
            Transfer of the Mortgage. .................................................. 8

        b.    The District Court Properly Admitted the Notice of
            Mortgagor's Right to Cure ("Notice") Into Evidence, and
            the Notice Complies with 14 M.R.S. § 6111. ...................... 14

        c.    The District Court Properly Admitted BANA's Exhibit 6
            (the "Account Information Statement" and "Payment
            History"). ........................................................................ 16

    III.  THE AMOUNT OF MONETARY SANCTIONS WAS
        APPROPRIATE AND WITHIN THE DISTRICT COURT'S
        DISCRETION........................................................................... 19

CONCLUSION ............................................................................................. 23

CERTIFICATE OF SERVICE ....................................................................... 24

## TABLE OF AUTHORITIES

**CASES**                                                                                    **Page(s)**

*Baker's Table, Inc. v. City of Portland,*
   2000 ME 7, 743 A.2d 237 ............................................................. 6, 19, 22

*Bank of Am., N.A. v. Barr,*
   2010 ME 124, 9 A.3d 816 ............................................................. 5, 17, 18

*Bank of America, N.A. v. Cloutier,*
   2013 ME 17, 61 A.3d 1242 ............................................................. *passim*

*Chase Home Finance LLC v. Higgins,*
   2009 ME 136, 985 A.2d 508 ............................................................. 4, 5, 6, 7

*Culhane v. Aurora Loan Servs. of Neb.,*
   708 F.3d 282 (1st Cir. 2013) ............................................................. 11, 12

*Edelkind v. Fairmont Funding, Ltd.,*
   539 F. Supp. 2d 449 (D. Mass. 2008) ......................................... 13

*Goudreau v. Pine Springs Rd. & Water, LLC,*
   2012 ME 70, 44 A.3d 315 ............................................................. 5

*Handrahan v. Malenko,*
   2011 ME 15, 12 A.3d 79 ............................................................. 5

*HBC Bank USA, NA. v. Gabay,*
   2011 ME 101, 28 A.3d 1158, 1162 ............................................. 10, 12

*Higgins v. Higgins,*
   370 A.2d 670 (Me. 1977) ............................................................. 19

*HSBC Mortg. Servs. v. Murphy,*
   2011 ME 59, 19 A.3d 815 ............................................................. 17, 18

*Jordan v. Cheney,*
   74 ME 359 (Me. 1883) ............................................................. 11, 12, 13

*Mortg. Elec. Registration Sys., Inc. v. Saunders,*
   2010 ME 79, 2 A.2d 289 ............................................................. *passim*

*Oum v. Wells Fargo, N.A.,*
   2012 WL 390271 (D. Mass. Feb. 8, 2012) ................................. 13

*Peoples Mortg. Co. v. Fed. Nat'l Mort. Ass'n,*
  856 F. Supp. 910 (E.D. Pa. 1994) ............................................................ 2

*Presnell v. Peoples Heritage Bank,*
  619 A.2d 1205 (Me. 1993) .................................................................... 19

*Sewall v. Saritvanich,*
  1999 ME 46, 726 A.2d 224 ................................................................... 6

*Simansky v. Clark,*
  128 ME 280, 147 A. 205 (1929) ........................................................... 13

*Smith v. Rideout,*
  2010 ME 69, 1 A.3d 441 ...................................................................... 20

*Stenzel v. Dell, Inc.,*
  2005 ME 37, 870 A.2d 133 ................................................................... 9

*Stone v. Locke,*
  46 ME 445 (Me. 1859) ......................................................................... 11

*U.S. v. Ruffin,*
  575 F.2d 346 (2d Cir. 1978) ................................................................ 8

*Weinburg v. Brother,*
  263 Mass. 61, 160 N.E. 403 (1928) ..................................................... 11

*Wells Fargo v. Burek,*
  2013 ME 87, 81 A.3d 330 ................................................................. 9, 10

*Wenzel v. Sand Canyon Corp.,*
  841 F. Supp. 2d 463 (D. Mass. 2012) ................................................... 13

**OTHER AUTHORITIES**

Federal Rule of Evidence 803(14) ............................................................ 8

Maine Rule of Evidence 803(6) .......................................................... 16, 17

Maine Rule of Evidence 803(14) ............................................................. 8

Maine Rule of Evidence 902(4) ............................................................... 8

-iv-

## INTRODUCTION

On October 28, 2013, the District Court entered judgment for Plaintiff-Appellee Bank of America, N.A.'s ("BANA") complaint for a judgment of foreclosure. It is undisputed that Kristina Greenleaf and Appellant Scott Greenleaf defaulted on their mortgage loan and failed to cure the default under Maine law, and that BANA is the holder of the mortgage note (the "Note") and the assignee of the mortgage deed (the "Mortgage") securing the Note. The District Court correctly entered judgment for BANA and concluded BANA met its burden of proof consistent with the Maine foreclosure statute, 14 M.R.S. § 6321. Further, the District Court appropriately weighed applicable factors in determining whether sanctions were appropriate based on BANA's counsel's failure to abide by Rule 56(h)(1) and used its discretion in imposing monetary sanctions, and Appellant has no grounds for asking for more on appeal. Having presented no reason to reverse the District Court's well-supported orders, this Court should affirm.

## BACKGROUND AND STATEMENT OF FACTS

On November 30, 2006, Defendant Kristina Greenleaf ("Ms. Greenleaf"), by virtue of Power-of-Attorney for Scott A. Greenleaf ("Mr. Greenleaf," and together with Ms. Greenleaf, the "Greenleafs" or "Defendants"), executed and delivered to Residential Mortgage Services, Inc. a certain promissory note in the amount of $385,000.00 (the "Note"). (*See* A. 87.) To secure the Note, on November 30, 2006, Ms. Greenleaf, individually and by Power-of-Attorney for Mr. Greenleaf, executed a mortgage deed in favor of Mortgage Electronic

Registration Systems, Inc. ("MERS"), as nominee for Residential Mortgage Services, Inc. and its successors and assigns, which mortgage deed is recorded in the Cumberland County Registry of Deeds in Book 24653, Page 30 (the "Mortgage"). (*See* A. 92.)  MERS, as mortgagee and nominee for the lender, assigned the Mortgage on April 23, 2011 to BAC Home Loans Servicing LP ("BAC") (which merged into and with BANA) by virtue of an Assignment of Mortgage recorded in the Cumberland County Registry of Deeds in Book 28703, Page 73 (the "Assignment"). (*See* A. 109.)  The Greenleafs presently are in default on the Mortgage and Note, having failed to make the monthly payment due on December 1, 2008, and all subsequent payments.

At the July 23, 2013 Trial, Heather Pollock appeared as a fact witness on behalf of BANA.  As Ms. Pollock established, she is a Mortgage Resolution Associate presently employed by BANA, who is familiar with the subject loan and BANA's record keeping policies and procedures.  (A. 131-140, 144-198.) As the servicer of the Greenleafs' mortgage loan, BANA assumes the role of crediting payments made to the borrowers' account, the maintenance of escrow accounts, and, in the event it becomes necessary, such as here, commencement of any action required to restore a delinquent account.[1]  Ms. Pollock's testimony established that Federal National Mortgage Association ("Fannie Mae") is the current owner and investor of this loan.  (A. 177, 194.)

---

[1] *See Peoples Mortg. Co. v. Fed. Nat'l Mort. Ass'n*, 856 F. Supp. 910, 917-18 (E.D. Pa. 1994).

BANA (the servicer for Fannie Mae) holds the Note indorsed in blank and is entitled to enforce both it and Mortgage. (A. 177.)

*Procedural History.* BANA's predecessor, BAC, filed its Complaint of Foreclosure and Sale on August 23, 2011 based upon the failure of Defendants to make their mortgage payment due December 1, 2008, and all subsequent payments. (A. 30.) Mr. Greenleaf, by and through his counsel, filed an Answer. (A. 5.) Ms. Greenleaf appeared at mediation, but neither answered nor appeared throughout the litigation below. (A. 23 n.1.) The parties mediated on January 30, 2012, but were unable to reach settlement. (A. 5.) The case was returned to the regular docket shortly thereafter. Mr. Greenleaf further filed a Motion to Amend Answer on February 6, 2012. (A. 5.) On July 16, 2012, BAC filed a Motion for Summary Judgment and Motion to Substitute Plaintiff (to name Bank of America, N.A. as plaintiff in place of its predecessor by merger, BAC). (A. 36-47.) On or about August 6, 2012, Mr. Greenleaf, through his counsel, filed a Motion to Dismiss Plaintiff's Motion for Summary Judgment and a Motion for Sanctions. (A. 48-61.) BANA replied to Mr. Greenleaf's motions on August 16, 2012. (A. 201.) The parties participated in oral argument regarding the pending motions on November 6, 2012. Pursuant to the District Court's Order, docketed December 4, 2012 ("December 4 Order"), the District Court dismissed BANA's Motion for Summary Judgment as untimely and awarded Mr. Greenleaf a nominal amount in sanctions, which BANA's counsel timely paid. (A. 14-20.) Mr. Greenleaf filed a Motion for Reconsideration of the District Court's December 4 Order, which the District

Court denied on January 15, 2013.  (A. 21-22, 67-86.)  This matter proceeded to trial on July 23, 2013.

Mr. Greenleaf's counsel, Attorneys John D. Clifford, IV and Thomas Cox, appeared at the July 23 Trial.  Mr. Greenleaf himself failed to appear, despite being listed on BANA's (and the Greenleafs') Witness and Exhibit Lists, previously filed with the District Court.  Mr. Greenleaf's counsel failed to introduce or otherwise attempt to admit any evidence at the July 23 Trial.  (A. 198.)

**Final Judgment & Appeal.**  The District Court entered its September 6, 2013 Judgment declaring:  "The evidence in this matter satisfies the requirements set forth in *Chase Home Finance LLC v. Higgins*, 2009 ME 136, 985 A.2d 508, and *Bank of America, N.A. v. Cloutier*, 2013 ME 17, 61 A.3d 1242." (A. 23.)  The District Court further found,

> [BANA] may properly enforce the Mortgage. The Mortgage was assigned to [BANA] from MERS. Defendant contends that MERS may not validly assign a mortgage.  The court does not agree, and notes that the Law Court has repeatedly recognized the validity of assignments involving MERS. *See, e.g., HBC Bank USA, NA. v. Gabay*, 2011 ME 101, ¶ 3, 28 A.3d 1158, 1162 (noting that "HSBC became the holder of the mortgage by virtue of an assignment from MERS"); *id.* at ¶ 14, 28 A. 3d at 1165 (noting that the assignment "assigned MERS's interest in the mortgage . . . to HSBC"); *Bank of America, N.A. v. Cloutier*, 20 13 ME 17, ¶ 4, 61 A.3d 1242, 1243 (noting that "MERS subsequently assigned the mortgage to BAC Home Loans Servicing, L.P.").

> \*\*\*

> [T]he court finds that the Notice complies with the requirements of 14 M.R.S. § 6111.

-4-

> Defendant does not dispute that he is in default. He does not dispute the amount due on the Note. The court finds that Plaintiff has been properly put to its proof, and that Plaintiff has satisfied its burden. Accordingly, it is hereby ORDERED that Judgment shall be entered in favor of Plaintiff and against Defendant.

(A. 23-24.) The District Court rendered a Judgment of Foreclosure and Sale in BANA's favor on October 28, 2013. (A. 25-27.) On November 19, 2013, Mr. Greenleaf filed his Notice of Appeal. (A. 13.)

## SUMMARY OF ARGUMENT

When a trial court judgment is based on a conclusion of law, this Court reviews the trial court's conclusion *de novo*. *Goudreau v. Pine Springs Rd. & Water, LLC,* 2012 ME 70, ¶ 11, 44 A.3d 315. This Court "review[s] factual findings for clear error and will affirm a trial court's findings if they are supported by competent evidence in the record, even if the evidence might support alternative findings of fact." *Handrahan v. Malenko,* 2011 ME 15, ¶ 13, 12 A.3d 79 (internal quotation marks omitted). The Court reviews foundational findings regarding the admissibility of a business record at trial for clear error and the ultimate determination of the record's admissibility for abuse of discretion. *See Bank of Am., N.A. v. Barr,* 2010 ME 124, ¶ 17, 9 A.3d 816.

This Court should affirm the District Court's judgment of foreclosure. BANA's trial evidence established and proved every element required by *Chase Home Finance LLC v. Higgins,* 2009 ME 136 (2009), and 14 M.R.S. § 6321, et seq. The District Court appropriately determined that BANA's trial exhibits

(including the Assignment, the Notice, and the Statement of Account and Payment History) were admissible, and Mr. Greenleaf provides no basis for this Court to find the District Court abused its discretion in admitting BANA's evidence. Mr. Greenleaf's legal arguments regarding the various documents also fail. This Court should affirm the District Court's judgment.

The trial court's decision to sanction a party is reviewed for an abuse of discretion. *Sewall v. Saritvanich*, 1999 ME 46, ¶ 10, 726 A.2d 224. The District Court's sanctions order appropriately weighed the factors outlined in *Baker's Table, Inc. v. City of Portland*, 2000 ME 7, 743 A.2d 237. The District Court reviewed its sanction order, not once, but twice, and was very precise and exhaustive of the factors it considered in its order. Mr. Greenleaf has failed to show any abuse of discretion or error of law in the District Court's order. This Court should affirm.

## ARGUMENT

### I.   THE DISTRICT COURT CORRECTLY DETERMINED AS A MATTER OF LAW THAT BANA ESTABLISHED ITS RIGHT TO FORECLOSE THE MORTGAGE.

BANA established and proved every element required by *Chase Home Finance LLC v. Higgins*, 2009 ME 136, 985 A.2d 508, and 14 M.R.S. § 6321, et seq., at trial, and this Court should affirm the District Court's judgment in BANA's favor. To prevail in the foreclosure action, BANA provided evidence of: 1) the existence of a mortgage including a property description; 2) proof of ownership of the mortgage note, and mortgage, including all assignments of mortgage; 3) breach of condition in the mortgage; 4) the amount due on the

mortgage note; 5) the order of priority; 6) evidence of property served notice of default; 7) after January 1, 2010, evidence of completed mediation; and 8) proof of non-military status.  *See Higgins*, 2009 ME 136, ¶ 11, 985 A.2d 508. BANA met this burden at trial.

BANA introduced and the District Court admitted the following documents, uncontroverted by any testimony or other evidence[2]: the original Note (Exhibit 1, A. 87); a certified public record copy of the Mortgage (Exhibit 2, A. 92); the Assignment (Exhibit 3 and Exhibit 4, A. 109, 111); a Statement of Account and Payment History showing the current amounts due and owing under the Note and Mortgage (Exhibit 6, A. 116); and evidence of Notice in compliance with 14 M.R.S. § 6111 (Exhibit 5, A. 113).  In addition, clear and uncontroverted testimony from Ms. Pollock, BANA's witness, established that BANA is the holder of Defendants' Note, while Fannie Mae is the Note owner and investor, which satisfies the requirements of *Cloutier*, 2013 ME 17, ¶ 16, 61 A.3d 1242.  Ms. Pollock also established, without doubt, that this loan has been in default and due for payment since December 1, 2008.

The District Court thus correctly determined that BANA had met its burden of proof and properly admitted all of BANA's trial exhibits.  This Court should affirm the District Court's judgment.

---

[2] The Greenleafs did not appear personally for trial and did not present any witnesses or documents in support of their positions or objections.

## II.  THE DISTRICT COURT PROPERLY ADMITTED BANA'S EXHIBITS INTO EVIDENCE.

### a. The District Court Properly Admitted the Assignment From MERS to BAC and Found It Constitutes a Valid Transfer of the Mortgage.

On appeal, Mr. Greenleaf contends that BANA did not establish its right to foreclose because the Assignment from MERS to BAC, BANA's predecessor by merger, merely gave BANA the right to record the Mortgage, nothing more. Appellant Br. at 4-7. Based on that erroneous theory, Mr. Greenleaf asserts that the District Court erred in admitting the Assignment into evidence and determining that BANA was entitled to foreclose. *Id.* Not only is Mr. Greenleaf incorrect, but he lacks standing to contest the Assignment on the grounds he asserts.

First, Mr. Greenleaf provides no evidentiary reason why the District Court should not have admitted the Assignment into evidence. *See id.* The Mortgage and Assignments are admissible under Maine Rule of Evidence 803(14), as documents affecting an interest in property. *See U.S. v. Ruffin*, 575 F.2d 346, 357 (2d Cir. 1978) (observing that mortgage is admissible under Federal Rule of Evidence 803(14)). Further, the Assignment is a self authenticating record pursuant to Maine Rule of Evidence 902(4) as it is a certified copy of a public record. (A. 109, 141.) Mr. Greenleaf does not contest this. (A. 140-143.) The District Court thus did not abuse its discretion in admitting the Assignment into evidence.

Second, Mr. Greenleaf's legal theory that the Assignment was a nullity and merely showed that BANA was an assignee of a nominee, "whose authority

-8-

was strictly limited," Appellant Br. at 4, is simply wrong.  Maine is a title theory state.  *See Mortg. Elec. Registration Sys., Inc. v. Saunders*, 2010 ME 79, ¶ 8, 2 A.2d 289.  As such, "a mortgage is a conditional conveyance vesting legal title to the property in the mortgagee, with the mortgagor retaining the equitable right of redemption and the right to possession." *Id.* (citing *Johnson v. McNeil*, 2002 ME 99, 800 A.2d 702, 704 (Me. 2002)).  As a matter of well-settled contract law, contract rights generally can be assigned, and contract obligations generally can be delegated to others.  Thus, "[a]n obligor can properly delegate the performance of his duty to another unless the delegation is contrary to public policy or the terms of his promise." *Stenzel v. Dell, Inc.*, 2005 ME 37, ¶ 37, 870 A.2d 133 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 318(1) (1981)).  Once MERS assigned its interest in the Mortgage to BAC, BAC (now BANA) became the mortgagee of record.  The District Court properly found that the Assignment in combination with BANA's status as holder of the Note made BANA the mortgagee pursuant to 14 M.R.S. § 6321. (A. 23-24.)

Mr. Greenleaf relies on *Wells Fargo v. Burek*, 2013 ME 87, 81 A.3d 330, and *Saunders* to suggest that the MERS Assignment was insufficient to constitute BAC/BANA as the mortgagee.  Appellant Br. 4-5.  These cases, however, provide no support for Mr. Greenleaf's contention.  In *Burek*, the Law Court examined whether MERS's assignment of a mortgage and note to Wells Fargo constituted competent evidence that Wells Fargo was transferred the note.  2013 ME 87, ¶ 20, 81 A.3d 330.  The Law Court determined that Wells

Fargo had the right to enforce the note. *Id.* ¶ 21. The court did not question MERS's ability to assign its interest in the mortgage, whether it was given full authority in the mortgage or the limited role of nominee. *Id.* ¶ 21 & n.7. *Burek* does not support Mr. Greenleaf's assertion.

In *Saunders*, the defendant borrowers had granted a mortgage in favor of MERS as nominee for a lender (Accredited Home Lenders, Inc.). 2010 ME 79 ¶ 3, 2 A.2d 289. By doing so, the borrowers conveyed "bare legal title" to MERS. *See id.* ¶ 10. By determining that MERS only had bare legal title, the Law Court found that MERS was not "a mortgagee pursuant to 14 M.R.S. § 6321 **because it has no enforceable right in the debt obligation securing the mortgage**," and thus it was unable to foreclose. *Id.* ¶ 15 (emphasis added). The Law Court did not, however, conclude that the MERS' assignment was a nullity or that its successor mortgagee would not be entitled to foreclose. To the contrary, the Law Court implicitly recognized the ability of MERS to assign, convey and otherwise transfer rights in the mortgage, including the power of sale. *See id.* ¶ 10 (noting that the "remaining, beneficial rights in the mortgage and note are vested solely in the lender [...] its successors and assigns"). This recognition has since consistently been upheld, such as in *HSBC Bank USA, N.A. v. Gabay*, 2011 ME 101, 28 A.3d 1158, and *Cloutier*—in both of which the Law Court confirmed MERS's ability to assign the rights in a mortgage to a successor in interest, despite MERS's lack of any claim to the underlying note. *See Gabay*, 2011 ME 101, ¶ 14, 28 A.3d 1158 (noting that the assignment at issue therein "assigned MERS' interest in the mortgage, but not the note, to

-10-

HSBC"); *Cloutier*, 2013 ME 17, ¶ 4, 61 A.3d 1242 (noting that "MERS subsequently assigned the mortgage to BAC Home Loans Servicing, L.P.").

The First Circuit U.S. Court of Appeals confirms MERS's ability to assign mortgages. *See Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282, 291-94 (1st Cir. 2013). The First Circuit, similar to the Law Court in *Saunders*, recognized that by executing a mortgage in favor of MERS, MERS retained "bare legal title" to the mortgaged premises. *Culhane*, 708 F.3d at 293; *Saunders*, 2010 ME 79, ¶ 10, 2 A.3d 289. The *Culhane* case is particularly instructive because both Maine and Massachusetts have long followed the basic tenet that if the note and mortgage are held by different entities, the mortgage holder holds the mortgage in trust for the holder of the note. 708 F.3d at 293; *see also Weinburg v. Brother*, 263 Mass. 61, 62, 160 N.E. 403 (1928); *Stone v. Locke*, 46 ME 445, 446-47 (Me. 1859); *Jordan v. Cheney*, 74 ME 359, 361-62 (Me. 1883). In *Culhane*, the First Circuit held that the assignment of mortgage from MERS to a successor-in-interest was a valid transfer of the rights contained in the mortgage. 708 F.3d at 293. It is therefore clear that the courts in Maine and Massachusetts have long endorsed the dividing of interests concerning notes and mortgages.

Furthermore, MERS's authority to assign is stated in the mortgage contract itself. By executing the Mortgage, Mr. Greenleaf agreed to the express language of the Mortgage, which authorized transfers to successors and assigns of MERS (such as BANA). (*See* A. 92, 109.) Thus, MERS had the authority to assign its bare legal interest in the Mortgage to BANA. Based upon

-11-

clear precedent established by *Saunders*, *Gabay*, and *Cloutier*, and by the First Circuit in *Culhane*, the District Court correctly admitted the Assignment conveying the interests in the Mortgage from MERS to BAC (Exhibit 3, A. 109) and ruled the Assignment constituted a valid transfer of the Mortgage. (A. 23-24 ("The court finds, further, that Plaintiff may properly enforce the Mortgage. The Mortgage was assigned to Plaintiff from MERS. Defendant contends that MERS may not validly assign a mortgage. The court does not agree, and notes that the Law Court has repeatedly recognized the validity of assignments involving MERS. [citing *Gabay* and *Cloutier*] Accordingly, . . . the court finds that the Assignment is properly admissible, and finds further that by virtue of the assignment Plaintiff is entitled to enforce the Mortgage.").)

Mr. Greenleaf's unsubstantiated argument that MERS somehow lacks the authority to assign the Mortgage has no merit. In addition to the case law summarized above upholding MERS's ability to assign mortgages, it is well established that an assignment of mortgage is not even necessary in instances where, as here, a mortgage is given to secure a promissory note. *See Jordon v. Cheney*, 74 ME 359, 361-62 (1883) (holding that an assignment of mortgage is not necessary in instances where the mortgage is given to secure negotiable promissory notes). When the Greenleafs executed their Mortgage in favor of MERS as nominee for Residential Mortgage Services, Inc. (the original lender herein), MERS received bare legal title while the "remaining, beneficial rights in the mortgage and note [remained] vested solely in the lender [Residential Mortgage Services, Inc.] and its successors and assigns." *Saunders*, 2010 ME

-12-

79, ¶ 10, 2 A.2d 289.  Legal title thus was separated from equitable title from the onset of this transaction.   However, once the Note was transferred to BANA—as evidenced by the uncontested endorsements—and BANA became holder of the Note (evidenced by producing the original note, endorsed in blank, at trial) (A. 137), legal title and equitable title were reunited.  *See Jordon*, 74 ME 359, 361 (noting that a holder's title in equity was complete without a formal assignment of mortgage); *see also Simansky v. Clark*, 128 ME 280, 147 A. 205 (1929) (the promissory note need only be produced at trial and the suit cannot be defeated by questioning the standing of the party entitled to enforce a promise).   Accordingly, even were there not a formal assignment of the Mortgage, as holder of the Note, BANA still would be the mortgagee pursuant to § 6321 and, thus, entitled to enforce the Note and Mortgage in foreclosure.

In any event, Mr. Greenleaf lacks standing to contest the validity of MERS's Assignment to BAC.   Only actual parties to an assignment or intended third-party beneficiaries have standing to contest the assignment's validity. *See Oum v. Wells Fargo, N.A.*, 2012 WL 390271, at *3 (D. Mass. Feb. 8, 2012); *Edelkind v. Fairmont Funding, Ltd.*, 539 F. Supp. 2d 449, 453-54 (D. Mass. 2008); *Wenzel v. Sand Canyon Corp.*, 841 F. Supp. 2d 463, 477-78 (D. Mass. 2012).  Mr. Greenleaf is neither a party to MERS's Assignment nor an intended third-party beneficiary, thus he lacks the requisite standing to contest the validity of that instrument.

For these reasons, the District Court properly admitted the Assignment and concluded that BANA proved it was the mortgagee entitled to foreclose.

-13-

This Court should, therefore, affirm the District Court's judgment of foreclosure.

### b. The District Court Properly Admitted the Notice of Mortgagor's Right to Cure ("Notice") Into Evidence, and the Notice Complies with 14 M.R.S. § 6111.

Mr. Greenleaf erroneously contends that the Notice did not comply with 14 M.R.S. § 6111 because it purportedly did not contain an itemization of the past due amounts and other charges that must be paid to cure the default. Appellant Br. 7-9. Mr. Greenleaf takes issue with the statement in the Notice under the itemization of all past due amounts that the borrower should "[c]ontact the servicer to obtain an up to date figure for outstanding attorney fees, unpaid taxes and costs before sending payment." (A. 113.) This statement, however, does not detract from the itemization of past due amounts directly above it. Further, Ms. Pollock's testimony at trial that BANA would have accepted the total amount listed in the Notice undercuts Mr. Greenleaf's unfounded objection. (See A. 192-193.) The District Court thus was correct in admitting the Notice and concluding that BANA had complied with the statutory requirements in § 6111. (A. 24.)

Section 6111 requires, among other things, an itemization of all past due amounts causing the loan to be in default and an itemization of any other charges that must be paid in order to cure the default. See 14 M.R.S. § 6111(1-A). The Notice included an itemization of all charges and missed payments for a sum total amount that must have been paid to properly cure the default of this loan:

-14-

| | |
|---|---|
| 1 Payment @ $2,866.83 | $ 2,866.83 |
| 21 Payments @ $2,877.10 | $ 60,419.10 |
| Payment due October 1, 2010 | $ 2,877.10 |
| Payment due November 1, 2010 | $ 2,877.10 |
| Late Charges | $ 2,484.51 |
| Suspense/Partial Payment | ($ 1,519.82) |
| Attorney Fees & Costs | $ 100.00 |
| **TOTAL TO CURE DEFAULT:** | $ 70,104.82 |

(A. 113.) The Notice also contained an itemization of all missed payments and amounts causing the subject loan to be in default. (A. 113.) Additionally, the Notice contained an itemization of charges that must be paid to cure the default; a statement that the Greenleafs may have options other than foreclosure; a list of counselors and agencies approved by the United States Department of Housing and Urban Development; the address and contact information of BANA with the authority to modify the subject loan; and a statement that the Greenleafs may request mediation. (A. 113-114.) The Notice thus complied with § 6111.

Additionally, Ms. Pollack provided clear and uncontroverted testimony that during the timeframe as indicated in the Notice (35 days from the date of receipt), BANA would have accepted the amount of $70,104.82 (as indicated in the Notice, A. 113) to cure the default and reinstate Defendants' loan. (A. 192-193 ("Q Ms. Pollock, in your review of these records, and of this account in preparation for today's hearing, just in your general view of this account, did you ever receive a check in the amount of $70,104.82? A No. Q If you had received a check in the amount of 11 $70,104.82 during the time period you just described, would you have reinstated this loan? A Yes.").) Further, Ms.

Pollack testified that there was no communication between the Greenleafs and BANA regarding either the Notice or this cure amount. (A. 193.) Thus, Mr. Greenleaf's contention that the Notice did not set out the amount needed to pay to cure the default and prevent foreclosure is nothing but pure speculation. The District Court did not abuse its discretion in admitting the Notice. Both the Notice itself and Ms. Pollock's uncontested testimony provided ample basis for the District Court to conclude that the Notice was not only admissible, but also that BANA had complied with § 6111. This Court should affirm the District Court's judgment.

### c. The District Court Properly Admitted BANA's Exhibit 6 (the "Account Information Statement" and "Payment History").

As part of its case in chief, BANA presented evidence through its trial witness, Ms. Pollock, and the admission of an account information statement and a payment history to prove the amount due on the Note. The District Court properly admitted Exhibit 6 over Mr. Greenleaf's counsel's objection at trial. (A. 153-156.) The District Court did not abuse its discretion in crediting the testimony of Ms. Pollock and the veracity of the information provided in Exhibit 6. This Court should, therefore, affirm.

Maine Rule of Evidence 803(6) establishes a four-pronged foundation for the admissibility of business records:

> (1) the record was made at or near the time of the events reflected in the record by, or from information transmitted by, a person with personal knowledge of the events recorded therein;
> (2) the record was kept in the course of a regularly conducted business;

-16-

(3) it was the regular practice of the business to make records of the type involved;

(4) no lack of trustworthiness is indicated from the source of information from which the record was made or the method or circumstances under which the record was prepared.

ME R. Evid. 803(6) advisory committee's note.    Additionally, to evaluate trustworthiness for purposes of Rule 803(6), "courts consider factors such as the existence of any motive or opportunity to create an inaccurate record, any delays in preparation of the record, the nature of the recorded information, 'the systematic checking, regularity and continuity in maintaining the records[,] and business'[s] reliance on them.'" *HSBC Mortg. Servs. v. Murphy*, 2011 ME 59, ¶ 11, 19 A.3d 815 (quoting *E.N. Nason, Inc. v. Land-Ho Dev. Corp.*, 403 A.2d 1173, 1179 (Me. 1979)).

Ms. Pollock was competent to testify at the July 23 Trial and establish the veracity of the business records.    Ms. Pollock's testimony established that she is both intimately involved with BANA's day-to-day operations, and she demonstrated the firsthand nature of her knowledge.    (A. 131-136, 150, 153-156, 179-181, 193-194.)    *See Barr*, 2010 ME 124, ¶ 19, 9 A.3d 816.    Ms. Pollock's testimony confirmed her duration of employment with BANA, and the specific positions held throughout her employment.    (A. 131-132.)    She testified that she reviewed the Greenleafs' account and related documents in preparation for her testimony at the July 23 Trial.    (A. 133-134.)    Ms. Pollock further testified to the degree and consistency of certain quality control assessments BANA routinely conducted to maintain accurate electronic records.    (A. 193-194.)    Such testimony established that there is no reason to

doubt the authenticity of the records, such as the account information statement, that the Court properly admitted at the July 23 Trial. *See Murphy,* 2011 ME 59, ¶ 10, 19 A.3d 815. Furthermore, merely because a particular witness neither prepared nor supervised the "'preparation of the record does not destroy the ability of the witness to provide the foundation for its admission,' nor must the witness have been the custodian at the time of the record's creation in order to be deemed a 'qualified witness.'" *Barr,* 2010 ME 124, ¶19, 9 A.3d 816 (quoting *State v. Hager,* 691 A.2d 1191, 1193 (Me. 1996)). By establishing that she was intimately involved in the day-to-day operations of Plaintiff, and that she was familiar with this particular transaction and account, Ms. Pollock exceeded the threshold requirements and standard of a "qualified witness."

Further, it is well established that a qualified witness need "not be an employee of the record's creator." *Beneficial Maine Inc.,* v. *Carter,* 2011 ME 77, ¶ 13, 28 A.3d 96. If the bank's records, such as the Account Information Statement and the Payment History, "were received and integrated into another business's records and were relied upon in that business's day-to-day operations, an employee of the receiving business may be a qualified witness." *Id.* Here, Ms. Pollock established that she was a qualified witness who was familiar with how the Account Information Statement and the Payment History were integrated into BANA's business records. (A. 153-156.) Mr. Greenleaf failed to specifically controvert the admission or validity of the Account Information Statement and the Payment History at trial, and has provided

-18-

nothing to controvert this evidence on appeal.   Therefore, the District Court properly admitted BANA's Exhibit 6 into evidence at the July 23 Trial and did not abuse its discretion.  This Court should affirm.

### III.   THE AMOUNT OF MONETARY SANCTIONS WAS APPROPRIATE AND WITHIN THE DISTRICT COURT'S DISCRETION.

The District Court properly used its inherent authority when it imposed sanctions as a result of "[BANA's counsel's] failure to abide by the requirements of 56(h)(1)" and ordered BANA's counsel to pay $625.00 to Mr. Greenleaf's counsel, which was promptly paid to Mr. Greenleaf's counsel by BANA's counsel.  (A. 19.)   Mr. Greenleaf contends that the District Court did not adequately consider the factors set forth in *Baker's Table, Inc. v. City of Portland*, 2000 ME 7, 743 A.2d 237, when it imposed the monetary amount of sanctions.  The District Court reviewed its sanction order, not once, but twice, on Defendant's Motion to Reconsider, and was very precise and exhaustive of the factors it considered in its order.   Mr. Greenleaf has failed to show any abuse of discretion or error of law in the District Court's order.

When the District Court's decision or ruling rests on the exercise of judicial discretion, this Court will review for an abuse of discretion or error of law. *See Higgins v. Higgins*, 370 A.2d 670, 674 (Me. 1977).  "The touchstone of determining whether the [court] has properly exercised its discretion is whether in a given case that discretion is exercised in furtherance of justice." *Presnell v. Peoples Heritage Bank*, 619 A.2d 1205, 1206 (Me. 1993) (quotation marks omitted).  This Court has

> previously determined that a trial court has exceeded
> the bounds of its discretion when, in discretionary
> decision-making, the court: (1) considers a factor
> prohibited by law, *see Pettinelli v. Yost*, 2007 ME 121,
> ¶ 11, 930 A.2d 1074, 1077–78; *Osier v. Osier*, 410
> A.2d 1027, 1029–31 (Me. 1980); (2) declines to
> consider a legally proper factor under a mistaken belief
> that the factor cannot be considered, *see State v. Svay*,
> 2003 ME 93, ¶ 11, 828 A.2d 790, 794; (3) acts or
> declines to act based on a mistaken view of the law,
> *see Shaw v. Packard*, 2005 ME 122, ¶¶ 11–12, 886
> A.2d 1287, 1290; *State v. Mason*, 408 A.2d 1269,
> 1272–73 (Me. 1979); or (4) expressly or implicitly finds
> facts not supported by the record according to the
> clear error standard of review, *Pettinelli*, 2007 ME 121,
> ¶ 11, 930 A.2d at 1077–78.

*Smith v. Rideout*, 2010 ME 69, ¶ 13, 1 A.3d 441.  Mr. Greenleaf can point to no

criteria that would permit vacating the District Court's order in this case.

In determining whether sanctions were warranted, the District Court

concluded:

> In drafting Plaintiffs SMF as he did, [BANA's counsel]
> required Defendants to parse through multiple-
> sentence paragraphs, causing Defendants to expend
> more time and effort than would otherwise have been
> necessary had each material fact been presented
> concisely and discretely as required by Rule 56(h)(1).
> Had Plaintiffs summary judgment motion not been
> dismissed as untimely, disregarding the SMF might
> have served as an appropriate sanction for [BANA's
> counsel's] noncompliance with Rule 56(h)(1). However,
> since Plaintiffs summary judgment motion has been
> dismissed on other grounds, disregarding the
> offending SMF has no teeth in these circumstances,
> and a monetary sanction will better serve to punish
> and deter the offensive conduct.

(A. 18.)  In creating a sanction that would "'fit the punishment to the crime,'"

the District Court rejected as "overbroad" Mr. Greenleaf's counsel's request for

"all attorney's fees expended in responding to the summary judgment motion

as well as reimbursement for the time spent preparing and arguing their Motion for Sanctions." (A. 18-19 (quoting *Baker's Table*, 2000 ME 7, ¶ 16).) Instead, the District Court concluded that the appropriate monetary amount would be based on BANA's counsel's flat fee for the preparation of uncontested summary judgment filings. The District Court concluded, "While conceptually sound, fashioning a monetary sanction based on the amount of extra time spent by Defendants (the margin of time directly attributable to Plaintiff's conduct) would be impossible without resorting to speculation." (A. 19.) The District Court thus "f[ound] it appropriate for [BANA's counsel] to pay half of that flat fee, or the sum of $625.00, to Defendants' counsel as a monetary sanction for [BANA's counsel's] failure to abide by the requirements of Rule 56(h)(l)." (A. 19.)

After the District Court entered its order, Mr. Greenleaf moved the court to reconsider its finding that the portion of time spent by counsel in responding to the Rule 56 motion was speculative and submitted attorney affidavits in support. The District Court reviewed the newly submitted evidence and reaffirmed its initial determination that Mr. Greenleaf's counsel's estimate of extra time was speculative and "st[ood] by its imposition of a monetary sanction of $625 as ordered." (A. 21-22.) The District Court explained, "In fashioning that monetary sanction, the court after due consideration exercised its discretion and imposed a monetary fine that it deems appropriate and fitted to the circumstances." (A. 22.)

Mr. Greenleaf contends that the $625.00 in sanctions is "inadequate" and that the District Court's rejection of Mr. Greenleaf's counsel's request for fees in the amount of their "extra investment of time" spent due to the Rule 56 motion was in error and constituted an abuse of discretion. Mr. Greenleaf's disagreement with the amount of monetary sanctions, however, does not amount to an abuse of discretion. Further, Mr. Greenleaf can point to no case where this Court has reversed a District Court's determination of an amount of monetary sanctions based on the purported failure to appropriately weigh the *Baker's Table* factors—and for good reason. Reversal is appropriate only where a court considered a factor prohibited by law, declined to consider a legally proper factor under a mistaken belief that the factor cannot be considered, acted or declined to act based on a mistaken view of the law, or expressly or implicitly found facts not supported by the record. No such showing can be presented here.

This Court's review of the District Court's analysis is deferential because the District Court sits in a unique position where it can evaluate the facts and circumstances surrounding the sanctionable conduct. The District Court is not required to exhaustively discuss each of the *Baker's Table* factors in its analysis as Mr. Greenleaf asserts; it merely needs to weigh the factors in determining the appropriate sanction, which the District Court did here. The District Court weighed the circumstances of the sanctionable conduct, on two separate occasions, and determined that monetary sanctions were warranted

in addition to the dismissal of BANA's motion for summary judgment.  (A. 14-22.)  Under these circumstances, there is no abuse of discretion.

The District Court's discretion is broad, and this Court should defer to its decision.   Mr. Greenleaf can point to no error in the District Court's consideration of the facts or a serious mistake in weighing the applicable factors.  This Court should affirm the District Court's order.

## CONCLUSION

For the reasons above, this Court should affirm the District Court's judgments in favor of BANA.

Dated: March 18, 2014

**Bank of America, N.A.,**

By its attorneys,

_____
Phoebe N. Coddington
*Visiting Attorney Motion Pending*
**WINSTON & STRAWN LLP**
100 N. Tryon Street
29th Floor
Charlotte, North Carolina 28205
(704) 350-7782
(704) 350-7800 (fax)
pcoddington@winston.com

John Doonan (Bar #3250)
Jenai Cormier (Bar #4682)
**DOONAN, GRAVES & LONGORIA**
100 Cummings Center, Suite 225 D
Beverly, Massachusetts 01915
(978) 921-2670
(978) 921-4870 (fax)
jad@dgandl.com
jjc@dgandl.com

-23-

## Certificate of Service

On February 14, 2018, I caused a true and accurate copy of the foregoing Opposition of Melanie Howe to Plaintiff's Motion for Quiet Title Default Judgment and Judgment on the Pleadings and Incorporated Memorandum of Law to be served upon the following by first class mail:

John Doonan, Esq.
Doonan, Graves & Longoria, LLC
100 Cummings Center, Suite 225D
Beverly, MA 01915
*Attorneys for Plaintiff*

Duncan A. Edgar, Esq.
Sandelands Eyet LLP
1545 US Highway 206, Suite 304
Bedminster, NJ 07921
*Attorneys for Nationstar Mortgage LLC*

2/14/18
Date

Jonathan E. Selkowitz, Esq.

1