Filing # 156206960 E-Filed 08/26/2022 01:21:46 PM

MFRA v. Howe

Joint Exhibit 15

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA

WILMINGTON     TRUST,     NATIONAL
ASSOCIATION, NOT IN ITS INDIVIDUAL
CAPACITY,  BUT  SOLELY  AS  TRUSTEE     CASE NO.
FOR MFRA TRUST 2015-1

                                                DIVISION

   Plaintiff,

vs.

CHALLENGE   FINANCIAL   INVESTORS
CORP.

   Defendant,

_____/

**COMPLAINT FOR DECLARATORY RELIEF AND APPOINTING RECEIVER FOR
CHALLENGE FINANCIAL INVESTORS CORPORATION**

     Plaintiff, WILMINGTON TRUST, NATIONAL ASSOCIATION, NOT IN ITS

INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR MFRA TRUST 2015-1

("Plaintiff" and/or "Wilmington Trust"), hereby sues Defendant, CHALLENGE FINANCIAL

INVESTORS CORP. ("Challenge"), and alleges:

THE PARTIES, JURISDICTION & VENUE

     1.     Plaintiff is a National Association, operating and existing under the laws of the

United States.

     2.     Defendant, Challenge Financial Investors Corp., ("Challenge"), was incorporated

in the State of Florida on July 25, 1997, and, upon information and belief, was administratively

dissolved for failure to file an annual report on September 24, 2010 and has since ceased all

operations.

3.      This Court enjoys jurisdiction over this matter as the damages incurred are in excess of $30,000.00 exclusive attorneys' fees and costs.

4.      Venue is proper in this Court as the acts and omissions occurred in Hillsborough County, Florida.

5.      Plaintiff retained the undersigned in this matter and has agreed to pay reasonable fees and costs.

<u>**ALLEGATIONS COMMON TO ALL COUNTS**</u>

6.      On April 20, 2007, Henry Howe, IV and Melanie B. Howe ("the Howes") executed and delivered a certain Note ("Howe Note") to Challenge in the original amount of $208,000.00 for the property located at 334 Deerwander Road, Hollis Center, Maine, 04042 (the "Property"). *See* Exhibit A (a true and correct copy of the original Howe Note endorsed in blank is attached hereto and the Original is in the possession of Plaintiff's Maine Counsel, Doonan, Graves and Longoria LLC).

7.      Plaintiff is in possession of the Howe Note.

8.      On or around April 20, 2007, the Howes executed a Mortgage ("Howe Mortgage") in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Challenge, securing the Property, recorded in the York County Registry of Deeds in Book 15139, Page 540. *See* Exhibit B (a true and correct copy of the Howe Mortgage as recorded is attached hereto).

9.      On or around July 24, 2010, the Howes executed a Loan Modification Agreement, evidencing the Mortgage Loan. *See* Exhibit C (a true and correct copy of the Loan Modification is attached hereto).

10.     On or around July 30, 2011, the Howes executed a second Loan Modification Agreement, evidencing the Mortgage Loan. *See* Exhibit D (a true and correct copy of the second Loan Modification is attached hereto).

11.     On or around March 4, 2013, an Assignment of Mortgage was executed, assigning the interest in the Howe Mortgage from MERS to Nationstar Mortgage LLC, recorded in the York County Registry of Deeds in Book 16559, Page 45. *See* Exhibit E (a true and correct copy of the Assignment as recorded is attached hereto).

12.     On or around August 26, 2014, Henry Howe and Melanie Howe executed a third Loan Modification Agreement with Nationstar Mortgage LLC, evidencing the Mortgage Loan, recorded in the York County Registry of Deeds in Book 16893, Page 631. *See* Exhibit F (a true and correct copy of the third Loan Modification is attached hereto).

13.     On or around January 17, 2017, an Assignment of Mortgage was executed, assigning interest in the Mortgage from Nationstar Mortgage LLC to MTGLQ Investors, L.P., recorded in the York County Registry of Deeds in Book 17411, Page 360. *See* Exhibit G (a true and correct copy of the Assignment as recorded is attached hereto).

14.     On or around January 19, 2017, a repetitive Assignment of Mortgage to MTGLQ Investors, L.P. was executed on behalf of Nationstar Mortgage LLC by MTGLQ Investors, L.P., its attorney-in-fact, recorded in the York Country Registry of Deeds in Book 17448, Page 478. *See* Exhibit H (a true and correct copy of the Assignment as recorded is attached hereto).

15.     On or around September 12, 2017, an Assignment of Mortgage was executed, assigning interest in the Mortgage from MTGLQ Investors, L.P. to Plaintiff, Wilmington Trust, recorded in the York County Registry of Deeds in Book 17568, Page 206. *See* Exhibit I (a true and correct copy of the Assignment as recorded is attached hereto).

16.     Notwithstanding the fact that Plaintiff is the current owner and older of the Howe Note evidencing the Howe Mortgage Loan on the Property, Plaintiff is unable to foreclose the Mortgage Loan under Maine Law.

17.     Plaintiff holds the original Note evidencing the Mortgage Loan and thus seeks the Appointment of a Receiver to obtain an assignment reflecting its valid interest in the Mortgage for the purpose of foreclosing the same.

18.     Since 2014, unique case law in Maine[1] provides, inter alia, that an Assignment of Mortgage from MERS is ineffective to establish the standing necessary to enable the assignee to initiate foreclosure proceedings, and that only an assignment directly from the originating lender (Challenge) will permit the assignee to foreclose the Mortgage.

19.     Under Maine case law, the Assignment chain from MERS to the Plaintiff is ineffective to provide standing to foreclose the subject mortgage.

20.     The Howe Mortgage has been in default since October 1, 2014.

21.     Thus, without a Quitclaim Assignment of Mortgage from the now defunct Challenge to Plaintiff, Plaintiff cannot foreclose pursuant to the terms of the Howe Mortgage.

22.     Challenge is for all intents and purposes defunct since its operations have ceased and it has been a suspended corporation for more than 12 years.

23.     Upon information and belief, that Challenge exists for the purposes of winding up its affairs only.

24.     Upon information and belief, that, although Challenge was previously qualified to do business in Maine, the State of Maine revoked Challenge's authority to transact business on September 10, 2008.

---

[1] *Bank of America, N.A. v. Greenleaf*, 96 A.3d 700 (Me. 2014) (*Greenleaf I*); *Bank of America, N.A. v. Greenleaf*, 124 A.3d 1122 (Me. 2015)(*Greenleaf II*).

25.     Accordingly, Plaintiff requires the appointment of a Receiver to execute an Assignment of the Howe Mortgage from Challenge directly to Plaintiff, Wilmington Trust, and to execute Assignments of Mortgage for other mortgages on behalf of Challenge as the need arises.

26.     Plaintiff seeks the appointment of a Receiver for the purposes of winding up Challenge's affairs, including but not limited to executing an Assignment of the Howe Mortgage directly to Plaintiff, and to execute other assignments of other mortgages as the need arises.

27.     All conditions precedent were satisfied prior to the filing of this action

<u>**COUNT I: APPOINTMENT OF RECEIVER**</u>

Plaintiff repeats and incorporates above paragraphs 1-27 inclusive as though fully set forth herein.

28.     This is an action to appoint a receiver for Challenge pursuant to Florida Statute Chapter 86.

29.     Challenge, as a dissolved corporation, "continues its corporate existence but may not carry on any business except that appropriate to wind up and liquidate its business and affairs." FL. Stat. § 607.1405 (2013).

30.     Challenge therefore continues to exist for the purpose of winding up its affairs.

31.     Under Maine law and pursuant to *Greenleaf I* and *Greenleaf II*, for the purposes of foreclosure, the Howe Mortgage is an undistributed asset of Challenge.

32.     The Court may appoint a "trustee, custodian, or receiver, for any property owned or acquired by the corporation who may engage in any act permitted under subsection (1) if any director or officer of the dissolved corporation is unwilling or unable to serve or cannot be located." FL. Stat. § 607.1405 (2013).

33.     Plaintiff, by and through its attorneys, has previously contacted Chris Faoro, a former officer for Challenge, who is unwilling to sign or serve as an agent for Challenge.

34.     Faoro is unwilling to execute a Quitclaim Assignment for this or any other Maine loans.

35.     Based on the foregoing allegations, Plaintiff requests that to preserve Plaintiff's property rights, the Court should appoint a Receiver to continue to wind up Challenge's affairs, and in particular assign the Howe Mortgage, but also other mortgage loans that Challenge may have originated in Maine, but for which it did not directly assign the mortgage loans to the successor-in-interest.

36.     Unless a Receiver is appointed who can assign the Howe Mortgage and other mortgages to Plaintiff, Plaintiff will suffer irreparable injury to the extent the terms of the Howe Mortgage cannot be enforced by Plaintiff, who gave valuable consideration for the transfer of said original Note and Howe Mortgage.

37.     Accordingly, Plaintiff asks that the Court appoint a Receiver to assign the Howe Mortgage to Plaintiff, and to assign other MERS/Challenge mortgages and otherwise wind-up Challenge's affairs, and to discharge further obligations.

**WHEREFORE**, Plaintiff prays judgment against Defendant, and for appointment of a Receiver to execute an Assignment of Mortgage from Challenge to Plaintiff, and such assignments as may be necessary concerning other mortgage loans that are believed to exist.

## COUNT II: DECLARATORY RELIEF

Plaintiff repeats and incorporates above paragraphs 1-27 inclusive as though fully set forth herein.

38.     This is an action for declaratory relief pursuant to Chapter 86 of the Florida Statutes.

39.     A bona fide issue is present before the Court regarding the need for a Quitclaim Assignment of Mortgage so the Plaintiff can enforce its lien in Maine.

40.     The facts before the Court establish a present controversy.

41.     Plaintiff requires this Court to adjudicate that the Plaintiff is the current holder and owner of the loan, and require Challenge, via a receiver, to execute a Quitclaim Assignment of Mortgage.

42.     Plaintiff is suing all parties who may claim an interest in the loan.

43.     The Plaintiff's relief sought herein is not merely a request for this Court to provide legal advice but requires a declaratory adjudication establishing Plaintiff's rights in the subject loan.

**WHEREFORE**, Plaintiff prays judgment against Defendant, finding that the Plaintiff is the holder and owner of the subject loan, that Defendant shall execute a Quitclaim Assignment of Mortgage, and such assignments as may be necessary concerning other mortgage loans that are believed to exist.

Respectfully Submitted,

DATED:  August 26, 2022

By:  /s/ Adam A. Diaz
Adam A. Diaz, Esq.
Fla. Bar No. 98379
Diaz, Anselmo & Associates P.A.
499 NW 70th Ave , Suite. 309
Plantation, FL 33317
(954)564-0071
(954) 564-9252
Answers@dallegal.com

# NOTE

APRIL 20, 2007                  ST. PETERSBURG              FLORIDA
[Date]                              [City]                          [State]

334 DEERWANDER ROAD, HOLLIS CENTER, MAINE 04042
[Property Address]

**1.   BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 208,000.00     (this amount is called "Principal"), plus interest, to the order of the Lender.  The Lender is  CHALLENGE FINANCIAL INVESTORS, CORP., A FLORIDA CORPORATION                                              .
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid.  I will pay interest at a yearly rate of    7.250 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.   PAYMENTS**

**(A)   Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  1st  day of each month beginning on  JUNE 1             ,
2007   .  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal.  If, on  MAY 1, 2037                          ,
, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  360 CENTRAL AVENUE, SUITE 600, ST. PETERSBURG, FLORIDA 33701
or at a different place if required by the Note Holder.

**(B)   Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 1,418.93          .

**4.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge.  The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note.  If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit;

---

MAINE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3220 1/01                              Page 1 of 3

DocMagic *eRarmss* 800-649-1362
www.docmagic.com



EXHIBIT
A

**Howe - 1029**

and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6.   BORROWER'S FAILURE TO PAY AS REQUIRED**
   **(A)   Late Charge for Overdue Payments**
   If the Note Holder has not received the full amount of any monthly payment by the end of    15
calendar days after the date it is due, I will pay a late charge to the Note Holder.   The amount of the charge will be
   5.000   % of my overdue payment of principal and interest. I will pay this late charge promptly but only once
on each late payment.
   **(B)   Default**
   If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
   **(C)   Notice of Default**
   If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.
   **(D)   No Waiver By Note Holder**
   Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
   **(E)   Payment of Note Holder's Costs and Expenses**
   If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.   GIVING OF NOTICES**
   Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
   Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**
   If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.   WAIVERS**
   I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.   UNIFORM SECURED NOTE**
   This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep

MAINE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3220 1/01                    Page 2 of 3

DocMagic *eForms*  800-649-1362
www.docmagic.com

**Howe - 1030**

the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any interest in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, Lender will not require immediate payment in full if prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement, following the procedures in Section 15. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
MELANIE B. HOWE            -Borrower

_____ (Seal)
HENRY W. HOWE, IV          -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

[Sign Original Only]

PAY TO THE ORDER OF: CitiMortgage, Inc.
WITHOUT RECOURSE

CHALLENGE FINANCIAL INVESTORS CORP., A FLORIDA CORPORATION

BY: _____

ITS: Matthew Richards, V.P.

MAINE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3220 1/01                    Page 3 of 3

DocMagic eRunns 800-649-1362
www.docmagic.com

Pay to the order of

_____

without recourse on us CitiMortgage, Inc.

Janet Sims, Vice President
CitiMortgage, Inc.

**Howe - 1031**

```
Doc# 2007019461
Bk 15139  Pg 0540 - 0556
Received York SS
04/24/2007    10:45AM
Debra L. Anderson
Register of Deeds
```

After Recording Return To:
CHALLENGE FINANCIAL INVESTORS, CORP.
360 CENTRAL AVENUE, SUITE 600
ST. PETERSBURG, FLORIDA 33701
Loan Number: ███████████

———————————————— [Space Above This Line For Recording Data] ————————————————

# MORTGAGE

**MIN:** ███████████████████

## WORDS USED OFTEN IN THIS DOCUMENT

Words used in multiple sections of this document are defined below.  Other words are defined in Sections 3, 5, 8, 10, 11, 13, 18, 20 and 21.  Certain rules about the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated  APRIL 20, 2007          .  The term "Security Instrument" includes any Riders recorded with the Security Instrument.

(B)  "Borrower" means  MELANIE B. HOWE AND HENRY W. HOWE, IV, WIFE AND HUSBAND

who sometimes will be called "Borrower" and sometimes simply "I" or "me."  "Borrower" is granting a mortgage under this Security Instrument.  "Borrower" is not necessarily the same as the Person or Persons who signed the Note. The obligations of Borrowers who did not sign the Note are explained further in Section 13.

(C)  "MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.  **FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.**

(D)  "Lender" means  CHALLENGE FINANCIAL INVESTORS, CORP.

Lender is a corporation or association which exists under the laws of  FLORIDA
Lender's address is  360 CENTRAL AVENUE, SUITE 600, ST. PETERSBURG, FLORIDA 33701

Except as provided in Sections 13 and 20, the term "Lender" may include any Person who takes ownership of the Note and this Security Instrument.

(E)  "Note" means the note signed by  MELANIE B. HOWE, HENRY W. HOWE, IV

and dated  APRIL 20, 2007                   .  The Note shows that its signer or signers owe Lender

MAINE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3020 01/01 (02/01/07)                    Page 1 of 16                         DocMagic *EForms* 800-649-1362
                                                                                  www.docmagic.com

**EXHIBIT
B**

**Howe - 1032**

TWO HUNDRED EIGHT THOUSAND AND 00/100
Dollars (U.S. $ 208,000.00          ) plus interest and promise to pay this debt in Periodic Payments and to
pay the debt in full by  MAY 1, 2037          .
(F)   "Property" means the property that is described below in the section titled "Description of the Property" or any
portion of the Property.
(G)   "Sums Secured" means the unpaid balance of amounts described below in the section titled "Borrower's Transfer
to Lender of Rights in the Property."
(H)   "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under
the Note, and all sums due under this Security Instrument, plus interest.
(I)   "Riders" means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are
to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Planned Unit Development Rider | |
| ☐ Balloon Rider | ☐ Biweekly Payment Rider | |
| ☐ 1-4 Family Rider | ☐ Second Home Rider | |
| ☐ Condominium Rider | ☒ Other(s) [specify] –Exhibit A | |

(J)   "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial
opinions.
(K)   "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges
that are imposed on Borrower or the Property by a condominium association, homeowners association or similar
organization.
(L)   "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft,
or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or
magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term
includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by
telephone, wire transfers, and automated clearinghouse transfers.
(M)   "Escrow Items" means those items that are described in Section 3.
(N)   "Miscellaneous Proceeds" means any monies or other thing of value paid by any third party, other than
insurance proceeds paid under the coverages described in Section 5, for:  (i) damage to, or destruction of, the
Property; (ii) Condemnation or other taking of all or any part of the Property (see Section 11 for an explanation of
"Condemnation"); (iii) conveyance in lieu of Condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(O)   "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P)   "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note,
plus (ii) any amounts under Section 3 of the Security Instrument.
(Q)   "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing
regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or
successor legislation or regulation that governs the same subject matter.  When this Security Instrument refers to a
requirement or restriction under "RESPA," Lender intends to abide by that requirement or restriction, even if it is
not technically applicable to the Loan.
(R)   "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that
party has assumed Borrower's obligations under the Note and/or this Security Instrument.
(S)   "Ground Rents" means amounts I owe if I rented the real property under the buildings covered by this Security
Instrument.  Such an arrangement usually takes the form of a long-term "ground lease."

Howe - 1033

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors and assigns), with mortgage covenants, subject to the terms of this Security Instrument, to have and to hold all of the Property to MERS (solely as nominee for Lender and Lender's successors and assigns) and to its successors and assigns, forever. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to Lenders who hold mortgages on real property. Those rights that Applicable Law gives to Lenders who hold mortgages on real property include those rights known as "Mortgage Covenants." I am giving Lender these rights to protect Lender from possible losses that might result if:

   (A) Some or all of the Loan is not paid when due;
   (B) I fail to pay, with interest, any amounts that Lender spends under Section 9 of this Security Instrument to protect the value of the Property and Lender's rights in the Property; or
   (C) I fail to keep any of my other promises and agreements under this Security Instrument. These amounts are the "Sums Secured."

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

   (A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and
   (B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

**DESCRIPTION OF THE PROPERTY**

I grant and mortgage to MERS (solely as nominee for Lender and Lender's successors in interests) the Property described in (A) through (G) below:

   (A) The Property which is located at        334 DEERWANDER ROAD
                                                       [Street]

        HOLLIS CENTER               , Maine    04042       ("Property Address"):
            [City]                                [Zip Code]

This Property is in  YORK                          County.  It has the following legal description:
   SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF
   AS EXHIBIT "A".

   (B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;
   (C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

Howe - 1034

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that:  (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender.  This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have.  I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country.  It also contains promises and agreements that vary, to a limited extent, in different parts of the country.  My promises and other agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

1.   **Borrower's Promise to Pay.**  If I signed the Note, I will pay to Lender when due principal and interest due under the Note and any prepayment charges and late charges due under the Note.  Regardless of whether I signed the Note, I will pay funds for Escrow Items as described in Section 3.  I will make all payments in U.S. currency.  If any Borrower makes any Loan payment to Lender with a check or other instrument that is returned for any reason (i.e., the check bounces), except when prohibited by Applicable Law, the Lender may require that any subsequent payment be made by:  (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check (all of which must be drawn on an institution whose deposits are insured by a federal agency, instrumentality, or entity); or (d) Electronic Funds Transfer.  Lender may reasonably specify which payment form is required.

Payments are only considered received when they reach the Lender's address specified in the Note, or a different address specified by Lender under Section 15 of this Security Instrument.  Lender may return any payments or partial payments if the payments are insufficient to bring the Loan current.  Lender may accept any payments or partial payments insufficient to bring the Loan current, but doing so will not affect Lender's rights under this Security Instrument, and Lender may still refuse such late, partial payments in the future.

I agree that no claim or legal right I may have against the Lender will excuse my obligation to make timely payments under the Loan or to keep my other promises in this Security Instrument.

2.   **Application of Payments or Proceeds.**  Except as otherwise described in this Section 2, all payments accepted and applied by Lender will be applied in the following order of priority:  (a) interest due under the Note; (b) principal due under the Note; (c) amounts payable under Section 3.  Such payments will be applied to each Periodic Payment in the order in which it became due.  Any remaining amounts will be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from me for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent Periodic Payment and the late charge.  If more than one Periodic Payment is outstanding, Lender may apply any payment received from me to the repayment of the

Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary extra payments must be applied first to any charges for making voluntary extra payments and then as described in the Note.

If voluntary extra payments I may make or the crediting of Insurance proceeds or Miscellaneous Proceeds to the Note are enough to pay principal ahead of schedule, I must still make my regularly scheduled Periodic Payments under the Note, when scheduled, without any delay or reduction of amount.

3.   **Monthly Payments for Taxes and Insurance.**

(a)  **Borrower's Obligations.**  I will pay to Lender all amounts necessary to pay for taxes, assessments, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a loss reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward the payment of the following items, which are called "Escrow Items:"

(1)  The taxes, assessments and other items which under the Applicable Law may be or become superior to this Security Instrument as a lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "lien;"

(2)  The leasehold payment or Ground Rents on the Property (if any);

(3)  The premium for insurance covering the Property required under Section 5;

(4)  The premium for Mortgage Insurance (if any);

(5)  The amount I may be required to pay Lender under Section 10 below instead of the payment of the premium for Mortgage Insurance (if any); and

(6)  If Lender requires, Community Association Dues, Fees, and Assessments.

After signing of the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment that I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

I will promptly send Lender a copy of all notices of amounts to be paid under this Section. I must pay Lender for Escrow Items as part of my regular Periodic Payments, unless Lender excuses this requirement in writing. If Lender excuses me in writing, I will pay all Escrow Items covered by the excuse, directly and on time. I will provide receipts proving my direct payments of Escrow Items on request and in the time period Lender requires. If Lender excuses me from paying Escrow Items to Lender and if I fail to pay any amount due for an Escrow Item directly, Lender may pay such amount under Section 9, and I will be obligated to repay Lender, plus interest at the Note rate. Lender may revoke the excuse regarding any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, I will pay to Lender all Funds (defined below), and in such amounts, that are then required under this Section 3.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called the "Funds." The Funds are pledged as additional security for all Sums Secured.

Lender may, at any time, collect and hold Funds in an amount (1) sufficient to permit Lender to apply the Funds at the time specified under RESPA, but (2) not to exceed the maximum amount a lender can require under RESPA. Lender will estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

(b)  **Lender's Obligation.**  Lender will keep the Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Funds. Lender will use the Funds to pay the Escrow Items. Lender will give to me, without charge, an annual accounting of the Funds. That accounting must show all additions to and deductions from the Funds and the reason for each deduction in the manner required by RESPA.

Lender may not charge me for holding or keeping the Funds, or for using the Funds to pay Escrow Items, or for making a yearly analysis of my payment of Funds or for receiving, verifying and totaling assessments and bills.

Howe - 1036

Maine law requires payment of, and Lender agrees to pay me, interest on the Funds in the manner and amount set forth in Maine law.

(c)  Adjustments to the Funds.  If there is a surplus of Funds held in escrow, as defined under RESPA, Lender will report to me regarding the excess funds in accordance with RESPA.  If there is a shortage or deficiency of Funds held in escrow, as defined under RESPA, Lender will notify me as required by RESPA and I will pay to Lender the amount necessary to make up the shortage or deficiency as required by RESPA, but in no more than 12 monthly payments.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Funds that are then being held by Lender.

4.  Borrower's Obligation to Pay Charges, Assessments and Claims.  I will pay all taxes, assessments, and any other charges and fines that may be imposed on the Property and that may be or become superior to this Security Instrument.  If I am a tenant under a ground lease on the Property, I will also pay Ground Rents or payments due under my ground lease.  I will also pay any Community Association Dues, Fees, and Assessments.  I will do this either by making the payments to Lender that are described in Section 3 above or, if I am not required to make payments to Lender under Section 3, by making the payments on time to the Person owed them.  In this Security Instrument, the word "Person" means any natural person, organization, governmental authority or other party.

I will promptly pay or satisfy all liens against the Property that may be or become superior to this Security Instrument.  However, this Security Instrument does not require me to satisfy a superior lien if:  (a) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves the way in which I agree to pay that obligation (but I must fully perform my agreement or this exception does not apply); (b) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced (but this exception ends when the lawsuit ends); or (c) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person.  If Lender determines that any part of the Property is subject to a superior lien, Lender may give me a notice identifying the superior lien.  I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5.  Borrower's Obligation to Maintain Hazard Insurance or Property Insurance; Use of Insurance Proceeds.  I will obtain hazard or property insurance to cover all buildings and other improvements that now are or in the future will be located on the Property.  The insurance must cover loss or damage caused by:  (a) fire; (b) hazards normally covered by "extended coverage" hazard insurance policies; and (c) other hazards for which Lender requires coverage, including floods and earthquakes.  The insurance must be in the amounts (including deductibles) and for the periods of time required by Lender.  Lender's requirements can change during the term of the Loan.  I may choose the insurance company, but my choice is subject to Lender's approval.  Lender may not refuse to approve my choice unless the refusal is reasonable.  If I do not maintain any of the insurance coverages described above, Lender may obtain insurance coverage at its option and charge me in accordance with Section 9 below.

Lender is under no obligation to purchase any particular type or amount of coverage.  Lender's coverage will protect Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard, or liability and might provide greater or lesser coverage than was previously in effect.  I acknowledge that the cost of the Lender's insurance coverage might significantly exceed the cost of insurance that I could have obtained.  Any amounts paid by Lender under this Section 5 will become my additional debt secured by this Security Instrument.  These amounts will bear interest at the Note rate from the date of disbursement and will be payable, with interest, upon notice from Lender to me requesting payment.

Lender may require me to pay, in connection with this Loan, either:  (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.  I will also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from my objection.

All of the insurance policies required by Lender and renewals of those policies:  (a) are subject to Lender's right to disapprove; (b) must include what is known as a "standard mortgage clause" to protect Lender; and (c) must name Lender as mortgagee and/or as an additional loss payee.  The form of all policies and renewal certificates must be

MAINE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3020 01/01 (02/01/07)                                           Page 6 of 16

DocMagic eForms 800-649-1362
www.docmagic.com

acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts for paid premiums and renewal notices that I receive.

If I obtain additional insurance for damage to or destruction of the Property not required by Lender, I will ensure that it contains a standard mortgage clause and names Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by any insurance company with regard to the Property is called "Proceeds." The Proceeds will be used to repair or to restore the damaged Property whether or not the underlying insurance was required by Lender unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Proceeds for that purpose. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Proceeds will be used to pay the Sums Secured. If any of the Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Proceeds will be paid to me. Such insurance proceeds will be applied in the order provided for in Section 2.

During the repair and restoration period, Lender will have the right to hold insurance proceeds until Lender has had an opportunity to inspect the Property to ensure the work has been completed to Lender's satisfaction. Lender will arrange the inspection promptly. Lender may disburse Proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender will not be required to pay me any interest or earnings on Proceeds. Fees for public adjusters, or other third parties I retain, will not be paid out of the insurance proceeds and will be my sole obligation.

If I abandon the Property, or if I do not answer, within 30 days a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle any insurance claim. The 30-day period will begin when the notice is given.

If I abandon the Property, do not answer the notice, or if Lender acquires the Property under Section 22 below or otherwise, all of my rights in all insurance policies covering the Property will belong to Lender, other than the right to any refund of unearned premiums I have paid. Lender may use the insurance proceeds either to repair or restore the Property or to pay the Sums Secured, whether or not then due. However, Lender's rights in those Proceeds will not be greater than the Sums Secured.

6. Occupancy. I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7. Borrower's Obligation to Maintain and Protect the Property; Inspections. I will keep the Property in good repair. I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate or diminish in value due to its condition whether or not I am residing in the Property. In addition, I will promptly repair the Property, if damaged, to avoid further deterioration or damage unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, I will be responsible for repairing or restoring the Property only if Lender has released Proceeds for such purposes. Lender may disburse Proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, I will not be relieved of my obligation to complete such repair or restoration.

Lender or its agents may enter and inspect the Property at reasonable times. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender will give me notice prior to an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. If, during the application process for the Loan, I made false, misleading, incomplete, or inaccurate statements to Lender about information important to Lender in determining my eligibility

for the Loan ("Material Information"), Lender will treat my actions as a default under this Security Instrument. I will also be in default if I knew about or consented to any other Person, giving false, misleading, incomplete, or inaccurate statements about Material Information to Lender. False, misleading, incomplete, or inaccurate statements about Material Information would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, incomplete, or inaccurate statement of Material Information. Also, if during the loan application process I failed to provide Lender with Material Information, Lender will treat this as a default under this Security Instrument. I will also be in default if I knew about or consented to any other Person failing to provide Lender with Material Information.

9. **Lender's Right to Protect its Rights in the Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture, for enforcement of a lien which may become superior to this Security Instrument or to enforce laws or regulations); or (c) I abandon the Property, then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding, may include appearing in court, paying reasonable attorneys' fees, paying superior liens on the Property, protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Securing the Property includes, for example, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. I agree that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will also pay interest on those amounts at the Note rate. Interest on each amount will begin on the date that the amount is spent by Lender.

If I do not own but am a tenant on the Property, I will fulfill all my obligations under my lease. I will not give up the rights that I have as a tenant on the Property. I will not cancel or terminate my lease and I will not change or amend that lease unless Lender agrees in writing to the change or amendment. I also agree that, if I subsequently purchase or otherwise become the owner of the Property, my interest as the tenant and my interest as the owner will remain separate unless Lender agrees in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage required by Lender lapses or ceases to be available from the original mortgage insurer, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available and if I was required to make separately designated payments toward the premiums for Mortgage Insurance, Lender will establish a loss reserve as a substitute for the Mortgage Insurance coverage. I will pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. Such loss reserve will not be refundable.

Lender will no longer require loss reserve payments if Mortgage Insurance coverage again becomes available and is obtained. In that case, I will once again make Mortgage Insurance premiums. The Mortgage Insurance coverage must be in the amount and for the period of time required by Lender. Lender must approve the insurance company providing the coverage.

I will pay the Mortgage Insurance premiums, or the non-refundable loss reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the loss reserve payments, in the manner described in this Section 10.

This Section 10, and the existence or termination of my obligation to pay Mortgage Insurance premiums or reserve payments, does not affect my obligation to pay interest under the Note at the rate set by the Note.

MAINE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3020 01/01 (02/01/07)                    Page 8 of 16                    DocMagic *eForms* 800-649-1362
www.docmagic.com

Howe - 1039

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed.  Borrower is not a party to the Mortgage Insurance policy.

Mortgage Insurers assess their total risk on all Mortgage Insurance from time to time.  Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses.  These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements.  These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity, may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses.  If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that:  (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan.  These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any- regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law.  These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11.  Agreements about Miscellaneous Proceeds and Condemnation of the Property. I assign to Lender all Miscellaneous Proceeds (as defined above in subsection (M) of the section entitled "Words Used Often In This Document").  All Miscellaneous Proceeds will be paid to Lender.  Miscellaneous Proceeds include, among other things, awards or claims for damages for Condemnation.  A taking of property by any governmental authority by eminent domain is known as "Condemnation."

If the Property is damaged, all Miscellaneous Proceeds will be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During the repair and restoration period, Lender will have the right to hold Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to ensure the work has been completed to Lender's satisfaction.  Lender will arrange the inspection promptly.  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Miscellaneous Proceeds, Lender will not be required to pay me any interest or earnings on such Miscellaneous Proceeds.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured by this Security Instrument, whether or not then due, with the excess, if any, paid to me.  Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

If all of the Property is taken or destroyed, the Miscellaneous Proceeds will be used to reduce the Sums Secured, whether or not then due.  If any of the Miscellaneous Proceeds remain after the Loan has been paid in full, the remaining proceeds will be paid to me.

Unless Lender and I agree otherwise in writing, if only a part of the Property is taken or destroyed, and the fair market value of the Property immediately before the partial taking or destruction either is equal to, or greater than, the amount of the Sums Secured immediately before the partial taking or destruction, then a portion of the Miscellaneous Proceeds will be applied to pay a portion of the Loan.  That portion will equal the Miscellaneous Proceeds multiplied by a fraction.  That fraction is as follows:  (a) the total amount of the Sums Secured immediately before the partial taking or destruction; divided by (b) the fair market value of the Property immediately before the partial taking or destruction.  The remainder of the Miscellaneous Proceeds will be paid to me.

Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, if only a part of the Property is taken or destroyed, and the fair market value of the Property immediately before the partial taking or destruction is less than the amount of the Sums Secured immediately before the partial taking or destruction, the proceeds will be used to reduce the Sums Secured whether or not then due.

If I abandon the Property, or if I do not answer within 30 days, a notice from Lender stating that the Opposing Party (as defined below) offered to make an award to settle a claim for damages, Lender has the authority to settle

MAINE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3020 01/01 (02/01/07)                                    Page 9 of 16                        DocMagic *eFerms* 800-649-1362
www.docmagic.com

any claim and collect the proceeds. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a legal action in regard to Miscellaneous Proceeds. Lender may then use the Miscellaneous Proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

I will be in default if any lawsuit or other legal proceeding is brought seeking Forfeiture of the Property or seeking any other significant reduction of Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" means a legal order or judgment that takes away some or all of my rights in the Property, whether in a civil or in a criminal proceeding. I can cure that default by causing the lawsuit or legal proceeding to be dismissed with a legal ruling that, in Lender's reasonable judgment, precludes any Forfeiture or any other significant reduction of Lender's interest in the Property or rights under this Security Instrument. If there is any award or claim for damages for the reduction of Lender's interest or rights, the proceeds of that award or claim are assigned to and will be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

12. **Continuation of Borrower's Obligations and of Lender's Rights.**

(a) **Borrower's Obligations.** Lender may allow me, any Borrower, and any Successor in Interest of Borrower to delay or to change the amount of the Periodic Payments of principal and interest due under the Note or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Note and under this Security Instrument.

Lender may allow those delays or changes for a Successor in Interest of Borrower, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against a Successor in Interest of Borrower for not fulfilling obligations under the Note or under this Security Instrument, even if Lender is requested to do so by Borrower or a Successor in Interest of Borrower.

(b) **Lender's Rights.** Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property; (2) Lender accepts payments from third Persons or Successors in Interest; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make immediate payment in full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

13. **Obligations of Borrower and of Persons Taking over Borrower's Rights or Obligations.** Except as provided in Section 18, any Successor in Interest of Borrower who takes over my rights or obligations under this Security Instrument in writing and who is approved by Lender will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. I will not be released from my liability under this Security Instrument unless Lender agrees to that release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument, except as provided in Section 20.

If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender can agree with the other Borrowers to delay enforcing any of Lender's rights or to modify or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection, and valuation fees. In regard to any other fees, the fact that this Security Instrument does not expressly authorize Lender to charge a specific fee to Borrower should not be interpreted to be a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

MAINE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3020 01/01 (02/01/07)          Page 10 of 16          DocMagic eForms 800-649-1362
www.docmagic.com

Howe - 1041

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). My acceptance of any such refund made by direct payment to me will constitute a waiver of any right of action I might have arising out of such overcharge, unless Applicable Law expressly provides otherwise.

15. **Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument must be in writing. Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless Applicable Law requires use of another method. The notice will be effective or "given" when mailed (or, if not mailed, when actually delivered) to my address, unless Applicable Law requires otherwise. Notice to any one Borrower will constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice will be addressed to me at the address stated in the section above titled "Description of the Property." A notice will be given to me at a different address if I give Lender a notice of my different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time.

Any notice that must be given to Lender under this Security Instrument will be given by delivering or mailing it to Lender's address stated in subsection (C) of the section above entitled "Words Used Often In This Document." A notice will be mailed or delivered to Lender at a different address if Lender gives me a notice of the different address. A notice to Lender required by this Security Instrument is not given until it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Law That Governs this Security Instrument; Interpretation.** This Security Instrument is governed by federal law and the law that applies in the place where the Property is located. If any term of this Security Instrument or of the Note conflicts with the Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence will not be construed as a prohibition against agreement by contract.

As used in this Security Instrument: (a) words of the masculine gender will mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular will mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

18. **Agreements about Lender's Rights If the Property Is Sold or Transferred.** As used in this Section 18, "Interest in the Property" means any interest in the Property recognized or protected by Applicable Law including, for example, those interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, if the intent is the transfer of title by Borrower at a future date to a purchaser.

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any interest in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, Lender will not require immediate payment in full if prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement, following the procedures in Section 15. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

MAINE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3020 01/01 (02/01/07)                                    Page 11 of 18                    DocMagic eForms 800-649-1362
www.docmagic.com

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required immediate payment in full, I may have the right to have enforcement of this Security Instrument discontinued. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) such other period as Applicable Law might specify for the termination of my right to reinstate; or (c) before a judgment has been entered enforcing this Security Instrument, if I meet the following conditions:

(1) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if immediate payment in full had never been required;

(2) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(3) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(4) I do whatever Lender reasonably requires to assure that Lender's interest in the Property, Lender's rights under this Security Instrument, and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then the Note and this Security Instrument will remain in full effect as if immediate payment in full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required immediate payment in full under Section 18 above.

**20. Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Notice of Grievances.** The Note, or an interest in the Note, together with this Security Instrument, can be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects my Periodic Payments due under the Note and this Security Instrument and also performs other mortgage loan servicing obligations under the Note, this Security Instrument and Applicable Law is called the "Loan Servicer." There can be a change of the Loan Servicer as a result of the sale of the Note; there also can be one or more changes of the Loan Servicer unrelated to a sale of the Note. The law requires that I be given written notice of any change of the Loan Servicer. The written notice must be given in the manner required under RESPA. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA in connection with a notice of transfer of servicing. If the Note is sold, the Purchaser may hire a third party as Loan Servicer. In that case, the Loan Servicer, and not the Note Purchaser, will have mortgage loan servicing obligations to Borrower, except when the Note or Applicable Law expressly requires otherwise.

Lender and I agree that we will not start a lawsuit or legal proceeding or join, or be joined to, an existing lawsuit (such as a class action) that arises from the other party's actions pursuant to the Security Instrument or that claims the other party broke any promise or failed to fulfill any duty under this Security Instrument or relating to the Loan until: (a) the complaining party gives written notice in the manner provided in Section 15 to the other party; (b) the notice clearly describes the promise broken or the duty unfulfilled; and (c) the party receiving the notice is given a reasonable time to correct the problem. This provision does not apply if Applicable Law specifically authorizes a lawsuit by me against Lender under the facts in question and does not permit any cure or correction by Lender. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of default and opportunity to cure given to me pursuant to Section 22 and the demand for immediate payment in full given to Borrower pursuant to Section 18 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection are called "Environmental Laws."

---

Environmental Laws classify certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous or as pollutants or wastes by Environmental Laws and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances."

An "Environmental Cleanup" includes any removal, remedial action or other response as defined in an Environmental Law. An "Environmental Condition" means a condition that can cause or contribute to or otherwise trigger an Environmental Cleanup.

Except as provided below: (a) I will not permit Hazardous Substances to be present on the Property; (b) I will not use or store Hazardous Substances on the Property; and (c) I will not allow anyone else to do so. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. However, I may permit the presence on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property, and I may use or store these small quantities on the Property.

I will not do anything affecting the Property that violates Environmental Laws, and I will not allow anyone else to do so. I will not create an Environmental Condition affecting the Property or permit anyone else to do so or do anything which due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property.

If I know of: (a) any investigation, claim, demand, lawsuit or other action by the government or by a private party involving the Property and any Hazardous Substance or Environmental Laws; (b) any Environmental Conditions, for example, any spill or leak of any Hazardous Substance; or (c) any condition relating to a Hazardous Substance that reduces the value of the Property, I will promptly notify the Lender in writing. If the government or a private party notifies me (or I otherwise learn) that it is necessary to remove a Hazardous Substance affecting the Property or to take other remedial actions, I will promptly take all necessary remedial actions as required by Environmental Laws.

This Section does not require the Lender to conduct or pay for any Environmental Cleanup.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

22. **Lender's Rights If Borrower Fails to Keep Promises and Agreements.** After the occurrence of the conditions stated in subsections (a), (b) and (c) below, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. If all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may do this without making any further demand for payment. This requirement is called "Immediate payment in full."

Lender may also require immediate payment in full if any of the events described in Section 18 occur, even if the conditions stated in subsections (a), (b) and (c) below are not met.

If Lender requires immediate payment in full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "foreclosure and sale." In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs allowed by law. These costs include reasonable attorneys' fees and costs of title evidence.

Lender may require immediate payment in full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument, including the promises to pay when due the Sums Secured;

(b) Lender sends to me, in the manner described in Section 15 above, a notice that states:

(1) The promise or agreement that I failed to keep;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date must be at least 30 days from the date on which the notice is given;

(4)  That if I do not correct the default by the date stated in the notice, Lender may require immediate payment in full, and Lender or another Person may acquire the Property by means of foreclosure and sale;

(5)  That if I meet the conditions stated in Section 19 above, I will have the right to have Lender's enforcement of this Security Instrument discontinued and to have the Note and this Security Instrument remain fully effective as if immediate payment in full had never been required; and

(6)  That I have the right in any lawsuit for foreclosure and sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c)  I do not correct the default stated in the notice from Lender by the date stated in that notice.

23.  **Lender's Obligation to Discharge this Security Instrument.**  When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering to the appropriate Registry of Deeds a discharge or release stating that this Security Instrument has been satisfied.  I will not be required to pay Lender for the discharge, but I will pay all costs of recording the discharge in the proper official records (unless those costs were collected in advance of my loan closing).

24.  **Payment During Foreclosure.**  I agree that Lender may accept rents from the Property, hazard insurance proceeds, condemnation awards, and any other monies produced by the Property or paid by me, even though Lender has demanded immediate payment in full and begun foreclosure and sale under Section 22 above.  Lender may use such monies to pay off any part of the Sums Secured without affecting Lender's right to continue foreclosure and sale.

25.  **Riders to this Security Instrument.**  The promises and agreements of each Rider are incorporated as a part of this Security Instrument.

Howe - 1045

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in this Security Instrument and in the Rider signed by me and recorded with it.

_____ (Seal)
MELANIE B. HOWE                -Borrower

_____ (Seal)
HENRY W. HOWE, IV              -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

Witness:

Witness:

MAINE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3020 01/01 (02/01/07)        Page 15 of 16          DocMagic eForms 800-649-1362
                                                          www.docmagic.com

**Howe - 1046**

———————— [Space Below This Line For Acknowledgment] ————————

State of Maine

County of ____York____

The foregoing instrument was acknowledged before me this ___20th day of April, 2007_____

by ___MELANIE B. HOWE AND HENRY W. HOWE, IV_____

and acknowledged the foregoing instrument to be Their free act and deed.

Notary Public, State of Maine

Connie Jo Minervino
Notary Public. Maine
My Commission Exp 12/23/07
(Print or Type Name)

My commission expires: _____

MAINE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3020 01/01 (02/01/07)                              Page 16 of 16

DocMagic ⓔForms 800-649-1362
www.docmagic.com

Order No: 1309922 (Howe)

## EXHIBIT 'A'

A CERTAIN LOT OR PARCEL OF LAND WITH ANY BUILDINGS THEREON, SITUATED ON THE
DEERWANDER ROAD IN THE TOWN OF HOLLIS, COUNTY OF YORK, STATE OF MAINE AND BEING LOT 1
ON A PLAN ENTITLED, "PLAN OF LAND OF RUSSELL A. & LOIS A. BLACK, 344 DEERWANDER ROAD,
HOLLIS, MAINE", PREPARED BY BH2M ENGINEERS, 28 STATE STREET, GORHAM, MAINE 04038 AND
RECORDED IN YORK COUNTY REGISTRY OF DEEDS ON OCTOBER 25, 2000 IN PLAN BOOK 258, PAGE
41, TO WHICH PLAN AND THE RECORD THEREOF REFERENCE SHOULD BE MADE FOR A MORE
PARTICULAR DESCRIPTION.

BEING THE SAME PREMISES CONVEYED TO HENRY HOWE AND MELANIE HOWE BY VIRTUE OF A DEED
FROM CHRISTOPHER J. COTE AND HEATHER L. COTE, FORMERLY KNOWN AS HEATHER L. KING,
DATED APRIL 20, 2007 AND TO BE RECORDED HEREWITH.

## END OF DOCUMENT



ATLANTIC TITLE COMPANY
76 ATLANTIC PLACE
SOUTH PORTLAND, ME 04106

----------------[Space Above This Line for Recording Data]------------------

## LOAN MODIFICATION AGREEMENT
### (Providing for Step Interest Rate)

CMI/CB # 

     This Loan Modification Agreement ("Agreement"), made July 20, 2010, between MELANIE B. HOWE AND HENRY W HOWE, IV , WIFE AND HUSBAND,  ("Borrower") whose address is 334 DEERWANDER RD, HOLLIS CENTER, ME  04042-3613 and CitiMortgage, Inc. ("Lender"), whose address is 1000 Technology Drive, O'Fallon, MO  63368-2240, and Mortgage Electronic Registration Systems, Inc., whose address is P.O. Box 2026, Flint, MI 48501-2026 ("Mortgagee"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated 04/20/07, and recorded on   na   in Book or Liber na, at page(s) na, or Document No. na, of the Recorders Office of the Records of YORK COUNTY, Maine, and (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at 334 DEERWANDER ROAD, HOLLIS CENTER, ME  04042, the real property described being set forth in the LEGAL DESCRIPTION.

     In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of 08/01/10, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $224,186.62, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized. (The current unpaid principal balance now due and owing of $203,256.84, plus the total capitalized amount of $20,929.78 equal the Unpaid Principal Balance of $224,186.62.)

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance for the first five years at the yearly rate of 2.000%, from 08/01/10 and Borrower promises to pay monthly payments of principal and interest in the amount of $828.64, beginning on 09/01/10. During the sixth year, interest will be charged at the yearly rate of 3.000%, from 08/01/15, and Borrower shall pay monthly payments of principal and interest in the amount of $927.08 beginning on 09/01/15. During the seventh year, interest will be charged at the yearly rate of 4.000%, from 08/01/16, and Borrower shall pay monthly payments of principal and interest in the amount of $ 1,028.22 beginning on 09/01/16. During the eighth year and continuing thereafter until the Maturity date (as hereinafter defined), interest will be charged at the yearly rate of 4.375%, from 08/01/17, and Borrower shall pay monthly payments of principal and interest in the amount of $1,066.28 beginning on 09/01/17 and shall continue the monthly payments thereafter on the same day of each succeeding month until principal and interest are paid in full.  If on 08/01/40 (the "Maturity Date"), Borrower still owes amounts under the Note and  Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

LOAN MODIFICATION AGREEMENT--Single Family--Fannie Mae Uniform Instrument       Form 3162 (rev. 1/09)
Page 1 of 5       MODMERS2.STP (10/2006)



Borrower will make such payments at <u>CitiMortgage, Inc., 1000 Technology Drive, O'Fallon, MO 63368-2240</u> or at such other place as Lender may require.

3.  If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

(a)  all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

(b)  all terms and provisions of any adjustable rate rider or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.  Borrower understands and agrees that:

(a)  All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)  All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)  All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

LOAN MODIFICATION AGREEMENT--Single Family--Fannie Mae Uniform Instrument          Form 3162  (rev. 1/09)
Page 2 of 5                                                                        MODMERS2.STP (10/2006)

----------------[Space Below This Line for Acknowledgments]-----------------

State of _Main_ )
                ) SS
County of _York_ )

**On this** _24_ day of _July_, _2010_, before me personally appeared <u>HENRY W HOWE</u>, to me known or proved to be the person(s) described in and who executed the foregoing instrument, and acknowledged that <u>HE/SHE/THEY</u> executed the same as <u>HIS/HER/THEIR</u> free act and deed.

     **IN TESTIMONY WHEREOF,** I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.

Notary Public _[signature]_

                                           SEAN P. McQUAIDE
                                    Notary Public, Maine
                    My Commission Expires October 31, 2010

My Commission Expires: _____

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

State of _Mani_ )
                ) SS
County of _York._ )

     **On this** _24_ day of _July_ _2010_, before me personally appeared <u>MELANIE B HOWE</u>, to me known or proved to be the person(s) described in and who executed the foregoing instrument, and acknowledged that <u>HE/SHE/THEY</u> executed the same as <u>HIS/HER/THEIR</u> free act and deed.

     **IN TESTIMONY WHEREOF,** I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.

Notary Public _____

                                             SEAN P. McQUAIDE
                                    Notary Public, Maine
                    My Commission Expires October 31, 2010

My Commission Expires: _____

LOAN MODIFICATION AGREEMENT--Single Family--Fannie Mae Uniform Instrument
Page 4 of 5

                    Form 3162 (rev. 1/09)
                    MODMERS2.STP (10/2006)

(e)  Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

_____        7\24\2010
HENRY W HOWE                            Date

_____        7\24\2010
MELANIE B HOWE                          Date


WITNESS                                 WITNESS
SIGNATURE:_____        SIGNATURE:_____
PRINT NAME: Jimmy L. Wood               PRINT NAME:_____


WITNESS                                 WITNESS
SIGNATURE: Ada L. Wood                  SIGNATURE:_____
PRINT NAME: Ada L. Wood                 PRINT NAME:_____


**Mortgage Electronic Registration Systems, Inc. ("MERS"), Mortgagee**

By:_____        Prepared By: CitiMortgage, Inc.
Title: Vice President                                5280 Corporate Drive
                                                     Frederick, MD 21703
            7\27\10                                  Betty Clark

LOAN MODIFICATION AGREEMENT--Single Family--Fannie Mae Uniform Instrument        Form 3162  (rev. 1/09)
Page 3 of 5                                                                      MODMERS2.STP (10/2006)

**Howe - 1052**



After Recording Return To:
**NATIONSTAR MORTGAGE
LLC
350 HIGHLAND DRIVE
LEWISVILLE, TX 75067**

This Document Prepared By:
**NATIONSTAR MORTGAGE
LLC
350 HIGHLAND DRIVE
LEWISVILLE, TX 75067**

_____ [Space Above This Line For Recording Data] _____

| | |
|---|---|
| | Loan No: █████████ |
| Original Loan Amount: **$208,000.00** | Investor Loan No: ███████ |
| | MIN Number: █████████ |

# LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement"), made this **21st** day of **July, 2011**, between **HENRY HOWE and MELANIE HOWE** ("Borrower") and **NATIONSTAR MORTGAGE LLC** ("Lender"), and Mortgage Electronic Registration Systems, Inc. ("MERS"), and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS, ("Mortgagee"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated _____, _____ and recorded in **Book/Liber N/A**, of the **Official Records (Name of Records) of** _____ **County, ME (County and State, or other Jurisdiction)** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at
**334 DEERWANDER ROAD, HOLLIS CENTER, ME 04042,**
(Property Address)
the real property described being set forth as follows:

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **July 1, 2011**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$223,204.66**, consisting of the unpaid amount(s) loaned to Borrower by

---



Lender plus any interest and other amounts capitalized.

2.  Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance for the first five years at the yearly rate of **2.000%** from **July 01, 2011**, and Borrower promises to pay monthly payments of principal and interest in the amount of U.S. **$764.98** beginning on the **1st** day of **August, 2011**.  During the sixth year, interest will be charged at the yearly rate of **3.000%** from **July 01, 2016**, and Borrower shall pay monthly payments of principal and interest in the amount of **$867.06** beginning on the **1st** day of **August, 2016**.  During the seventh year, interest will be charged at the yearly rate of **4.000%** from **July 01, 2017**, and Borrower shall pay monthly payments of principal and interest in the amount of **$973.04** beginning on the **1st** day of **August, 2017**.  During the eighth year and continuing thereafter until the Maturity Date (as hereinafter defined), interest will be charged at the yearly rate of **4.500%** from **July 01, 2018**, and Borrower shall pay monthly payments of principal and interest in the amount of **$1,026.87** beginning on the **1st** day of **August, 2018** and will continue to make monthly payments on the same day of each succeeding month until principal and interest are paid in full.  If on **November 1, 2044** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3.  If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

    (a)  all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider.  By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

**Howe - 1055**

(b)  all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.  Borrower understands and agrees that:

(a)  All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)  All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law.  Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)  All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)  Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f)  "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns.  **MERS is the Mortgagee, of record under the Security Instrument and this Agreement.**  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

6.    By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

7.    This Agreement modifies an obligation secured by an existing security instrument recorded in County, ME, upon which all recordation taxes have been paid.  As of the date of this agreement, the unpaid principal balance of the original obligation secured by the existing security instrument is $220,793.23.  The principal balance secured by the existing security instrument as a result of this Agreement is $223,204.66, which amount represents the excess of the unpaid principal balance of this original obligation.

In Witness Whereof, the Lender and I have executed this Agreement.

_____ (Seal)
HENRY HOWE  -Borrower

_____ (Seal)
MELANIE HOWE  -Borrower

_____  [Space Below This Line For Acknowledgments] _____

State of Maine

County of York _____

The foregoing instrument was acknowledged before me on July 30, 2011
by Tracey Smith

_____
(Signature of person taking acknowledgment)

Notary
(Title or rank)

My commission expires: Nov. 4, 2016



TRACEY L. SMITH
Notary Public, Maine
My Commission Expires November 4, 2016

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument          Form 3179 1/01 (rev. 01/09)
8300 03/11                                                                          (page 4 of 6)

Howe - 1057

**NATIONSTAR MORTGAGE LLC**

By: _~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~_ (Seal)
                                                        -Lender
Name: _Brady Niehaus_  8/23/11
Title: _Representative_

_____ [Space Below This Line For Acknowledgments] _____

State of _Texas_

County of _Denton_

The foregoing instrument was acknowledged before me on _August 23, 2011_
by _Brady Niehaus_, the _Representative_ of
_Nationstar mortgage_.

_____
(Signature of person taking acknowledgment)

KERI JONKER
Notary Public, State of Texas
My Commission Expires
October 24, 2012

_____
(Title or rank)

My commission expires: _October 24, 2012_

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Uniform Instrument        Form 3179 1/01 (rev. 01/09)
8300 03/11                                                                    (page 5 of 6)

_____     Keenan Cain    AVP   8/23/11
Mortgage Electronic Registration Systems, Inc - Nominee for Lender

_____ [Space Below This Line For Acknowledgments] _____

State of _Texas_

County of _Denton_

The foregoing instrument was acknowledged before me on _August 23, 2011_
by _Keenan Cain_____, the _AVP_____ of
_Nationstar mortgage_____.

_____
(Signature of person taking acknowledgment)

KERI JONKER
Notary Public, State of Texas
My Commission Expires
October 24, 2012

_____
(Title or rank)

My commission expires: _October 24, 2012_

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument
8300 03/11

Form 3179 1/01 (rev. 01/09)
(page 6 of 6)



Bk 16559 Pg 45
Received York SS
03/25/2013   10:00AM
Debra L. Anderson
Register of Deeds

Recording Requested By:
Nationstar Mortgage

When Recorded Return To:

DOCUMENT ADMINISTRATION
Nationstar Mortgage
2617 COLLEGE PARK
SCOTTSBLUFF, NE 69361

## CORPORATE ASSIGNMENT OF MORTGAGE

York, Maine
SELLER'S SERVICING #:
SELLER'S LENDER ID#: 255        "HOWE"
POOL #: 255

MERS #: ███████████   ██████████

Date of Assignment: March 1st, 2013
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR CHALLENGE
FINANCIAL INVESTORS, CORP., ITS SUCCESSORS AND/OR ASSIGNS at P.O. BOX 2026, FLINT, MI 48501
Assignee: NATIONSTAR MORTGAGE LLC at 350 HIGHLAND DRIVE, LEWISVILLE, TX 75067

Executed By: HENRY B. HOWE AND MELANIE W. HOWE, IV, WIFE AND HUSBAND To: MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR CHALLENGE FINANCIAL INVESTORS,
CORP.
Date of Mortgage: 04/20/2007 Recorded: 04/24/2007 in Book/Reel/Liber: 15139 Page/Folio: 0540 as Instrument
No.: 2007019461 In the County of York, State of Maine.

Property Address: 334 DEERWANDER ROAD, HOLLIS CENTER, ME  04042

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $208,000.00 with interest, secured thereby, with all moneys now owing
or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the
covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee,
the Assignor's beneficial interest under the Mortgage.

   TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

   MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR CHALLENGE FINANCIAL
INVESTORS, CORP., ITS SUCCESSORS AND/OR ASSIGNS
On _____

By: _____
REGINA LASHLEY, Assistant Secretary

STATE OF Nebraska
COUNTY OF Scotts Bluff

On _____, before me, IRENE GUERRERO, a Notary Public in and for Scotts Bluff in the State of
Nebraska, personally appeared REGINA LASHLEY, Assistant Secretary, personally known to me (or proved to me
on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by
his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal,

_____
IRENE GUERRERO
Notary Expires: 09/14/2013

GENERAL NOTARY - State of Nebraska
IRENE GUERRERO
My Comm. Exp. Sept. 14, 2013

(This area for notarial seal)

*IGA*IGA*NATN*03/01/2013 01:42:43 PM*    ████████████████    ASSIGN_ASSN *LPNATN*

EXHIBIT
E

Howe - 1061



BK 16893  PGS 631 - 637      09/22/2014  09:46:28 AM
INSTR # 2014038790           DEBRA ANDERSON
RECEIVED YORK SS            REGISTER OF DEEDS



Return to:
Document Recording Services
P.O. Box 3008
Tallahassee, FL  32315-3008

This Document Prepared By:
NATIONSTAR MORTGAGE LLC
350 HIGHLAND DRIVE
LEWISVILLE, TX 75067
Tatiana Vakidis

_____ [Space Above This Line For Recording Data] _____
Original Recording Date: April 24, 2007                    Loan No:
Original Loan Amount: $208,000.00                          Investor Loan No:
New Money: $20,895.40                                      MIN Number:

## LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

        This Loan Modification Agreement ("Agreement"), made this 12th day of August, 2014, between
**HENRY HOWE and MELANIE HOWE** ("Borrower") and **NATIONSTAR MORTGAGE LLC,** whose
**address is 350 HIGHLAND DRIVE, LEWISVILLE, TX 75067** ("Lender"), and Mortgage Electronic
Registration Systems, Inc. ("MERS"), and has an address and telephone number of P.O. Box 2026, Flint,
MI 48501-2026, tel. (888) 679-MERS, ("Mortgagee"), amends and supplements (1) the Mortgage, Deed of
Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated
**April 20, 2007** and recorded in **Book/Liber 15139, Page 0540, Instrument No: 2007019461,** of the
**Official Records (Name of Records) of YORK County, ME (County and State, or other Jurisdiction)**
and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the
real and personal property described in the Security Instrument and defined therein as the "Property",
located at

        **334 DEERWANDER ROAD, HOLLIS CENTER, ME 04042,**
                        (Property Address)
the real property described being set forth as follows:

**See Exhibit "A" attached hereto and made a part hereof;**

        In consideration of the mutual promises and agreements exchanged, the parties hereto agree as
follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument                    Form 3179 1/01 (rev. 06/12)
8300b 01/14                                                                                        (page 1 of 6)



EXHIBIT
**F**

**Howe - 1062**

1. As of **August 1, 2014**, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. **$237,329.72**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. **$23,199.73** of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and Borrower will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is **$214,129.99**. Interest will be charged on the Interest Bearing Principal Balance at the yearly rate of **4.625%**, from **August 1, 2014**. Borrower promises to make monthly payments of principal and interest of U.S. **$979.92**, beginning on the **1st** day of **September, 2014**, and continuing thereafter on the same day of each succeeding month until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The yearly rate of **4.625%** will remain in effect until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The new Maturity Date will be **August 1, 2054**.

3. Borrower agrees to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and Security Instrument by the earliest of: (i) the date Borrower sells or transfers an interest in the Property, (ii) the date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

4. If Borrower makes a partial prepayment of Principal, Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

5. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

6. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

    (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may



have otherwise been entitled; and

    (b)    all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

7.    Borrower understands and agrees that:

    (a)    All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

    (b)    All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

    (c)    Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

    (d)    All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

    (e)    Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

    (f)    "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. **MERS is the Mortgagee, of record under the Security Instrument and this Agreement.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

8.    In the event that I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the loan documents and did not reaffirm the mortgage debt under applicable law, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

9.    By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

10.    This Agreement modifies an obligation secured by an existing security instrument recorded in YORK

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument        Form 3179 1/01 (rev. 06/12)
8300b 01/14    (page 3 of 6)

Howe - 1064

County, ME, upon which all recordation taxes have been paid. As of the date of this agreement, the unpaid principal balance of the original obligation secured by the existing security instrument is $216,434.32. The principal balance secured by the existing security instrument as a result of this Agreement is $237,329.72, which amount represents the excess of the unpaid principal balance of this original obligation.

In Witness Whereof, the Lender and I have executed this Agreement.

_____ (Seal)
HENRY HOWE -Borrower

_____ (Seal)
MELANIE HOWE -Borrower

_____ [Space Below This Line For Acknowledgments] _____

State of Maine

County of _____ YORK _____

The foregoing instrument was acknowledged before me, a Notary Public on                         SEAL

_____ 8/26/2014 _____ by HENRY HOWE and MELANIE HOWE.

_____ Martha E Huff _____
(Signature of person taking acknowledgment)

_____ NOTARY PUBLIC _____
(Title or rank)

My commission expires: May 16, 2020

MARTHA E. HUFF
Notary Public, Maine
My Commission Expires May 16, 2020





LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument
6300b 01/14

Form 3179 1/01 (rev. 06/12)
(page 4 of 6)

Howe - 1065

**NATIONSTAR MORTGAGE LLC**

By: _____ (Seal) - Lender

Name: _____ Krista Moore _____

Title: _____ Assistant Secretary _____

_____ 8-29-14 _____

Date of Lender's Signature

_____ [Space Below This Line For Acknowledgments] _____

The State of TX

County of _____ Denton _____

Before me _____ Bianca Hockensmith _____ Notary Public (name/title of officer) on this day personally appeared

_____ Krista Moore _____, the _____ Assistant Secretary _____ of

_____ Nationstar Mortgage LLC _____,

known to me (or proved to me on the oath of _____ or through _____
(description of identity card or other document)) to be the person whose name is subscribed to the
foregoing instrument and acknowledged to me that he executed the same for the purposes and
consideration therein expressed.

Given under my hand and seal of office this _____ 29 _____ day of _____ August _____, A.D., _____ 2014.

_____

Signature of Officer

Notary Public

Title of Officer

My Commission expires : _____ 3/2/16 _____

BIANCA HOCKENSMITH
NOTARY PUBLIC
STATE OF TEXAS
EXPIRES
03-02-2016

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument        Form 3179 1/01 (rev. 06/12)
8300b 01/14                                                                       (page 5 of 6)

Howe - 1066

_____ 8·29·14   Krista Moore _____

Mortgage Electronic Registration Systems, Inc - Nominee for Lender

Title: Assistant Secretary

_____ [Space Below This Line For Acknowledgments] _____

The State of TX

County of _Denton_____   Notary Public

Before me ____Bianca Hockensmith_____ (name/title of officer) on this day personally appeared

_____Krista Moore_____, the ___Assistant Secretary_____ of

_____Mortgage Electronic Registration System, Inc._____,

known to me (or proved to me on the oath of _____ or through _____ (description of identity card or other document)) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this ___27___ day of ___August___, A.D. _2014_.



Signature of Officer
Notary Public

My Commission expires : ___3/2/16___   Title of Officer



LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument
8300b 01/14



Form 3179 1/01 (rev. 06/12)
(page 6 of 6)

Howe - 1067

# Exhibit "A"

**Loan Number** ▮▮▮▮▮▮▮

**Property Address: 334 DEERWANDER ROAD, HOLLIS CENTER, ME 04042**

**Legal Description:**

A CERTAIN LOT OR PARCEL OF LAND WITH ANY BUILDINGS THEREON, SITUATED ON THE
DEERWANDER ROAD IN THE TOWN OF HOLLIS, COUNTY OF YORK, STATE OF MAINE AND
BEING LOT 1 ON A PLAN ENTITLED, PLAN OF LAND OF RUSSELL A. AND LOIS A. BLACK,
344 DEERWANDER ROAD, HOLLIS, MAINE, PREPARED BY BH2M ENGINEERS, 28 STATE
STREET, GORHAM, MAINE 04038 AND RECORDED IN YORK COUNTY REGISTRY OF DEEDS ON
OCTOBER 25, 2000 IN PLAN BOOK 258, PAGE 41, TO WHICH PLAN AND THE RECORD
THEREOF REFERENCE SHOULD BE MADE FOR A MORE PARTICULAR DESCRIPTION.



Exhibit A Legal Description Attachment 11/12



*Page 1 of 1*



Recording Requested By:
Nationstar Mortgage

When Recorded Return To:

DOCUMENT ADMINISTRATION
Nationstar Mortgage
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019

BK 17411 PGS 360 - 360   01/26/2017 12 15 11 PM
INSTR # 2017003798   DEBRA ANDERSON
RECEIVED YORK SS   REGISTER OF DEEDS

*Doonan, Graves, + Longoria
100 Cummings Center - Steass D
Beverly, MA
01915*

## CORPORATE ASSIGNMENT OF MORTGAGE

York, Maine
SELLER'S SERVICING #        "HOWE"

Date of Assignment: January 17th, 2017
Assignor: NATIONSTAR MORTGAGE LLC at 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019
Assignee: MTGLQ INVESTORS, L.P at 200 WEST ST, NEW YORK, NY  10282-2102

Executed By: MELANIE B. HOWE AND HENRY W. HOWE, IV, WIFE AND HUSBAND  To: MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR CHALLENGE FINANCIAL INVESTORS,
CORP.
Date of Mortgage: 04/20/2007 Recorded: 04/24/2007  in Book/Reel/Liber: 15139 Page/Folio: 0540 as Instrument
No.: 2007019461  In the County of York, State of Maine.

Property Address: 334 DEERWANDER ROAD, HOLLIS CENTER, ME  04042

    KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $208,000.00 with interest, secured thereby, and the full benefit of all the
powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys
unto the said Assignee, the Assignor's interest under the Mortgage.

    TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

    NATIONSTAR MORTGAGE LLC
On January 17th, 2017

By: _____
MOHAMED HAMEED, Assistant Secretary

STATE OF Texas
COUNTY OF Dallas

On January 17th, 2017, before me, COLLEEN BARNETT, a Notary Public in and for Dallas in the State of Texas,
personally appeared MOHAMED HAMEED, Assistant Secretary, personally known to me to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
COLLEEN BARNETT
Notary Expires: 11/30/2019 #130453613

COLLEEN BARNETT
Notary Public, State of Texas
Comm. Expires 11-30-2019
Notary ID 130453613

(This area for notarial seal)

I HEREBY CERTIFY THIS IS A TRUE
AND CORRECT COPY OF THE
ORIGINAL FILED IN YORK COUNTY
MAINE REGISTRY OF DEEDS
ATTEST: _Nancy E Hammond_
                         REGISTRAR
DATED: 02/01/2022

*PA*PANATN*01/17/2017 09 18:57 AM* NAT                    5740132 MESTATE_MORT_ASSIGN_ASSN  **BHENATT**

EXHIBIT
G

YORK COUNTY ANDERSON REGISTER OF DEEDS
E-RECORDED

Bk 17448    PG 478
Instr # 20170012677
04/06/2017  09:01:59 AM
Pages 2
Receipt # 1711502

Prepared By and Return To:
Heather Neal
Collateral Department
Meridian Asset Services, Inc.
780 94th Avenue N., Suite 102
St. Petersburg, FL 33702
(727) 497-4650

Loan No ████████
Svcr Ln ████████
GS ID: ████████

Space above for Recorder's use

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **NATIONSTAR MORTGAGE LLC**, whose address is **8950 CYPRESS WATERS BLVD., COPPELL, TX 75019**, (ASSIGNOR), does hereby grant, assign and transfer to **MTGLQ INVESTORS, L.P.**, whose address is **6011 CONNECTION DRIVE, 5TH FLOOR, IRVING, TX 75039**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: **4/20/2007**
Original Loan Amount: **$208,000.00**
Executed by (Borrower(s)): **MELANIE B. HOWE AND HENRY W. HOWE, IV**
Original Lender:  **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR CHALLENGE FINANCIAL INVESTORS CORP., ITS SUCCESSORS AND ASSIGNS**
Filed of Record:  In Mortgage Book/Liber/Volume 15139, Page 540,
Document/Instrument No: 2007019461 in the Recording District of YORK, ME, Recorded on **4/24/2007**.

Property more commonly described as: 334 DEERWANDER ROAD, HOLLIS CENTER, MAINE 04042

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: **JAN 1 9 2017**

**NATIONSTAR MORTGAGE LLC, BY MTGLQ INVESTORS, L.P., ITS ATTORNEY-IN-FACT**

By: **JAMES W MOFFETT**
Title: **VICE PRESIDENT**


Witness Name:  **Edward Chavez**

EXHIBIT
**H**

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of        **TEXAS**
County of      **DALLAS**

On _____**JAN 1 9 2017**_____, before me, _____**E'meraude A. Rash**_____, a Notary Public, personally appeared **JAMES W MOFFETT, VICE PRESIDENT** of/for **MTGLQ INVESTORS, L.P., AS ATTORNEY-IN-FACT FOR NATIONSTAR MORTGAGE LLC,** personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **TEXAS** that the foregoing paragraph is true and correct. I further certify JAMES W MOFFETT, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name):    **E'meraude A. Rash**
My commission expires: _____**NOV 1 8 2019**_____

**E'MERAUDE A. RASH**
Notary Public State of Texas
My Commission # 130444321
My Comm. Exp. November 18, 2019

I HEREBY CERTIFY THIS IS A TRUE AND CORRECT COPY OF THE ORIGINAL FILED IN YORK COUNTY MAINE REGISTRY OF DEEDS
ATTEST: Nancy E Hammond
                    REGISTRAR
DATED: 02/01/2022

BK: 17448  PG: 479                    **Howe - 1071**

DEBRA L. ANDERSON, REGISTER OF DEEDS
E-RECORDED   Bk 17568 PG 206
Instr # 2017041251
09/26/2017 03:34:40 PM
Pages 2      YORK CO

Prepared By and Return To:
Paul Pugzlys
Collateral Department
Meridian Asset Services, Inc.
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

Space above for Recorder's use

Loan No:
Svcr Ln No:
GS ID:

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **MTGLQ INVESTORS, L.P.**, whose address is **6011 CONNECTION DRIVE, IRVING, TX 75039**, (ASSIGNOR), does hereby grant, assign and transfer to **WILMINGTON TRUST, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE OF MFRA TRUST 2015-1**, whose address is C/O MFRESIDENTIAL ASSETS I, LLC **350 PARK AVENUE, 20TH FLOOR, NEW YORK, NEW YORK 10022,** (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: 4/20/2007
Original Loan Amount: $208,000.00
Executed by (Borrower(s)): **MELANIE B. HOWE & HENRY W. HOWE, IV**
Original Lender: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR CHALLENGE FINANCIAL INVESTORS CORP., ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Mortgage Book/Liber/Volume 15139, Page 540,
Document/Instrument No: 2007019461 in the Recording District of **YORK, ME**, Recorded on **4/24/2007.**

Property more commonly described as: **334 DEERWANDER ROAD, HOLLIS CENTER, MAINE 04042**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date:   **SEP 1 2 2017**

**MTGLQ INVESTORS, L.P.**

By: **DAVE SLEAR**
Title: **VICE PRESIDENT**

Witness Name:   **Danielle Ellingson**

**EXHIBIT I**

**Howe - 1072**

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of      **TEXAS**
County of    **DALLAS**

On   **SEP 1 2 2017**  , before me,    **Joel Pires**  , a Notary Public, personally appeared **DAVE SLEAR, VICE PRESIDENT** of/for **MTGLQ INVESTORS, L.P.**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **TEXAS** that the foregoing paragraph is true and correct. I further certify DAVE SLEAR, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

_____
(Notary Name)      **Joel Pires**
My commission expires:   **FEB 0 9 2021**

> JOEL PIRES
> Notary Public State of Texas
> My Commission# 131006061
> My Comm. Exp. Feb. 09, 2021

I HEREBY CERTIFY THIS IS A TRUE AND CORRECT COPY OF THE ORIGINAL FILED IN YORK COUNTY MAINE REGISTRY OF DEEDS
ATTEST: _Nancy E Hammond_
             REGISTRAR
DATED: 02/01/2022

**Howe - 1073**

DIVISION OF CORPORATIONS



Department of State  /  Division of Corporations  /  Search Records  /  Search by Entity Name  /

# Detail by Entity Name

Florida Profit Corporation
CHALLENGE FINANCIAL INVESTORS CORP.

## Filing Information

| | |
|---|---|
| **Document Number** | P97000064423 |
| **FEI/EIN Number** | 59-3460034 |
| **Date Filed** | 07/25/1997 |
| **State** | FL |
| **Status** | INACTIVE |
| **Last Event** | ADMIN DISSOLUTION FOR ANNUAL REPORT |
| **Event Date Filed** | 09/24/2010 |
| **Event Effective Date** | NONE |

## Principal Address

3505 E FRONTAGE RD #165
TAMPA, FL 33607-1762

Changed: 04/30/2008

## Mailing Address

3505 E FRONTAGE RD #165
TAMPA, FL 33607-1762

Changed: 04/30/2008

## Registered Agent Name & Address

NRAI SERVICES, INC.
515 E. PARK AVENUE
TALLAHASSEE, FL 32301

## Officer/Director Detail

**Name & Address**

Title SEC

FAORO, CHRIS J, SEC
5370 W 95TH ST
PRAIRIE VILLAGE, KS 66207-3204

EXHIBIT
J

## Annual Reports

| Report Year | Filed Date |
|---|---|

**Howe - 1074**



# MAINE
### Department of the Secretary of State
Bureau of Corporations, Elections and Commissions

Corporate Name Search

Information Summary

Subscriber activity report

**This record contains information from the CEC database and is accurate as of: Tue Jun 28 2022 09:47:38. Please print or save for your records.**

| Legal Name | Charter Number | Filing Type | Status |
|---|---|---|---|
| CHALLENGE FINANCIAL INVESTORS CORP. | 20040583 F | BUSINESS CORPORATION (FOREIGN) | FOREIGN AUTHORITY REVOKED |

| Filing Date | Expiration Date | Jurisdiction |
|---|---|---|
| 01/20/2004 | N/A | FLORIDA |

| Other Names | | (A=Assumed ; F=Former) |
|---|---|---|
| CFIC HOME MORTGAGE | | A |
| CHALLENGE MORTGAGE - CANCELLED | | A |

**Clerk/Registered Agent**

NATIONAL REGISTERED AGENTS, INC.
128 STATE ST #3
AUGUSTA, ME 04330

[ Back to previous screen ]    [ New Search ]

**Click on a link to obtain additional information.**

List of Filings                    View list of filings
**No additional information available for this entity.**

You will need Adobe Acrobat version 3.0 or higher in order to view PDF files. If you encounter problems, visit the troubleshooting page.

If you encounter technical difficulties while using these services, please contact the Webmaster. If you are unable to find the information you need through the resources provided on this web site, please contact the Bureau's Reporting and Information Section at 207-624-7752 or e-mail or visit our Feedback page.



EXHIBIT
**K**



**MAINE**
### Department of the Secretary of State
Bureau of Corporations, Elections and Commissions

Corporate Name Search

## List of All Filings

**CHALLENGE FINANCIAL INVESTORS CORP.**

Please check one of the following

☐ All documents
☐ Articles and amendments only
☐ Specific records

Select from the list below.

**Note: If you are selecting "All Documents" or "Articles and Amendments Only" and any of the filings below have "order" next to the checkbox, you must order these copies from the Bureau. See further instructions below.**

Each record $ 3.00
☐ Certify order $5.00

| Description | Date | Image Available | |
|---|---|---|---|
| ASSUMED NAME | 01/20/2004 | Yes | ☐ |
| FOREIGN QUALIFICATION | 01/20/2004 | Yes | ☐ |
| MARK | 07/28/2004 | Yes | ☐ |
| ASSUMED NAME | 11/19/2004 | Yes | ☐ |
| CANCELLATION/TERMINATION OF ASSUMED NAME | 11/19/2004 | Yes | ☐ |
| ANNUAL REPORT | 03/14/2005 | Yes | ☐ |
| CHANGE IN HOME OFFICE ADDRESS | 04/19/2005 | Yes | ☐ |
| ANNUAL REPORT | 03/06/2006 | Yes | ☐ |
| ANNUAL REPORT | 03/29/2007 | Yes | ☐ |
| NOTICE - FAILURE TO FILE AN ANNUAL REPORT | 07/03/2008 | No | order ☐ |
| REVOKED - NO REPORT FILED | 09/10/2008 | No | order ☐ |

Select one or more checkboxes above and click on

Order from Bureau and/or Download Available Images

If the word "order" appears next to the order checkbox, it means the image is not available to download. However, you may order these copies from the Bureau by checking the checkboxes you would like to request, then by clicking the "Order from Bureau" button above. Once you complete and submit the order form, the Bureau staff will process your request within 5 to 7 business days. The fee for copies from the Bureau is $2.00 per page and if certified copies are requested, an additional $5.00 for each certification.

Cancel

**Howe - 1076**