**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

MFRA v. Howe

Joint Exhibit 18

| | |
|---|---|
| **Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1** | **CIVIL ACTION NO:** |
| **Plaintiff** | **COMPLAINT** |
| **vs.** | **RE:**<br>**334 Deerwander Road, Hollis Center, ME 04042** |
| **Henry W. Howe IV and Melanie B. Howe** | **Mortgage:**<br>**April 20, 2007**<br>**Book 15139, Page 0540**<br>**York County** |
| **Defendants** | |

NOW COMES the Plaintiff, Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1, by and through its attorneys, Doonan, Graves & Longoria, LLC, and hereby complains against the Defendants, Henry W. Howe IV and Melanie B. Howe, as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant 28 U.S.C. § 1332(a)(1) (Diversity) because the Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds the sum or value of seventy-five thousand and 00/100 ($75,000.00) dollars, exclusive of interest and costs. Any Court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought under 28 U.S.C. § 2201.

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the object of this litigation is a Note executed under seal currently owned and held by

Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1, in which the Defendants, Henry W. Howe IV and Melanie B. Howe, are the obligor and the total amount owed under the terms of the Note is Three Hundred Fifty-Two Thousand Two Hundred Ninety-Nine and 91/100 ($352,299.91) Dollars, plus attorney fees and costs associated with the instant action; thus, the amount in controversy exceeds the jurisdictional threshold of seventy-five thousand ($75,000.00) dollars.

3. Venue is properly exercised pursuant to 28 U.S.C. §1391(b)(2) insofar as all or a substantial portion of the events that give rise to the Plaintiff's claims transpired in Maine and the property is located in Maine.

<u>PARTIES</u>

4. Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1 is a National Association organized under the laws of United States of America, with its principal place of business located at 1100 North Market, Wilmington, DE 19801.

5. The Defendant, Henry W. Howe IV, is a resident of Standish, County of Cumberland and State of Maine. The Defendant, Melanie B. Howe, is a resident of Hollis Center, County of York and State of Maine.

<u>FACTS</u>

6. On April 20, 2007, by virtue of a Warranty Deed from Christopher J. Cote and Heather L. Cote, formerly known as Heather L. King, which is recorded in the York County Registry of Deeds in **Book 15139, Page 0538**, the property situated at 334 Deerwander Road, County of York, and State of Maine, was conveyed to the Defendants, Henry W. Howe IV and

Melanie B. Howe, being more particularly described by the attached legal description. *See* Exhibit A (a true and correct copy of the legal description is attached hereto and incorporated herein).

7.  On April 20, 2007, the Defendants, Henry W. Howe IV and Melanie B. Howe, executed and delivered to Challenge Financial Investors Corp. a certain Note in the amount of $208,000.00. *See* Exhibit B (a true and correct copy of the Note is attached hereto and incorporated herein).

8.  On August 12, 2014, the Defendants, Henry W. Howe IV and Melanie B. Howe, executed a Home Affordable Modification Agreement which increased the principal amount of the Note to $237,329.72 (herein after referred to as the "Loan Modification"). *See* Exhibit D (a true and correct copy of the Loan Modification is attached hereto and incorporated herein)

9.  The Plaintiff, Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1, is the present holder of the Note pursuant to endorsement by the previous holder (if applicable), payment of value and physical possession of the Note in conformity with 11 M.R.S. § 3-1201, et seq., 10 M.R.S. § 9416, and *Simansky v. Clark*, 147 A. 205, 128 Me. 280 (1929).

10. The Plaintiff, Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1, is the lawful holder and owner of the Note.

11. The total debt owed under the Note as of August 31, 2021 is Three Hundred Fifty-Two Thousand Two Hundred Ninety-Nine and 91/100 ($352,299.91) Dollars, which includes:

| Description | Amount |
| --- | --- |
| Principal Balance | $237,175.09 |
| Interest | $69,301.46 |
| Late Fees | $588.40 |
| Escrow Advance | $36,035.81 |

| Pro Rata MIP/PMI Amount | $34.67 |
| Rec Corp Advance Balance | $9,164.48 |
| Grand Total | $352,299.91 |

*See* Exhibit C (a true and correct copy of the Payment History is attached hereto and incorporated herein).

12. Upon information and belief, the Defendants, Henry W. Howe IV and Melanie B. Howe, are presently in possession of the subject property originally secured by the Note.

13. The Defendants are not in the Military.  *See* Exhibit E (a true and correct copy of the Affidavit Relating to Military Search is attached hereto and incorporated herein).

## COUNT I – BREACH OF NOTE

14. The Plaintiff, Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1, repeats and re-alleges paragraphs 1 through 13 as if fully set forth herein.

15. On April 20, 2007, the Defendants, Henry W. Howe IV and Melanie B. Howe, executed and delivered to Challenge Financial Investors Corp. a certain Note in the amount of $208,000.00.  *See* Exhibit B.

16. The Plaintiff, Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1, is the proper holder of the Note and is entitled to enforce the terms and conditions of the Note due to its breach by the Defendants, Henry W. Howe IV and Melanie B. Howe.

17. The Defendants, Henry W. Howe IV and Melanie B. Howe, having failed to comply with the terms of the Note, are in breach of the Note.

18. The Defendants Henry W. Howe IV and Melanie B. Howe's breach is knowing, willful, and continuing.

19. The Defendants Henry W. Howe IV and Melanie B. Howe's breach has caused Plaintiff Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1 to suffer actual damages, including, but not limited to money lent, interest, expectancy damages, as well as attorney's fees and costs.

20. The total debt owed under the Note as of August 31, 2021 is Three Hundred Fifty-Two Thousand Two Hundred Ninety-Nine and 91/100 ($352,299.91) Dollars, which includes:

| Description | Amount |
|---|---|
| Principal Balance | $237,175.09 |
| Interest | $69,301.46 |
| Late Fees | $588.40 |
| Escrow Advance | $36,035.81 |
| Pro Rata MIP/PMI Amount | $34.67 |
| Rec Corp Advance Balance | $9,164.48 |
| Grand Total | $352,299.91 |

*See* Exhibit C

21. Injustice can only be avoided by awarding damages for the total amount owed under the Note including interest, plus costs and expenses, including attorney fees.

## COUNT II – BREACH OF CONTRACT, MONEY HAD AND RECEIVED

22. The Plaintiff, Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1, repeats and re-alleges paragraphs 1 through 22 as if fully set forth herein.

23. By executing, under seal, and delivering the Note, the Defendants, Henry W. Howe IV and Melanie B. Howe, entered into a written contract with Challenge Financial Investors Corp. who agreed to loan the amount of $208,000.00 to the Defendants.  *See* Exhibit B.

24. The Plaintiff, Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1, is the proper holder of the Note and successor-

in-interest to Challenge Financial Investors Corp., and has performed its obligations under the Note.

25. The Plaintiff, Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1, is the proper holder of the Note, and is entitled to enforce the terms and conditions of the Note due to its breach by the Defendants, Henry W. Howe IV and Melanie B. Howe.

26. The Defendants, Henry W. Howe IV and Melanie B. Howe, having failed to comply with the terms of the Note, are in breach of contract.

27. The Defendants, Henry W. Howe IV and Melanie B. Howe, are indebted to Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1 in the sum of Three Hundred Fifty-Two Thousand Two Hundred Ninety-Nine and 91/100 ($352,299.91) Dollars, for money lent by the Plaintiff, Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1, to the Defendants.

28. Defendants Henry W. Howe IV and Melanie B. Howe's breach is knowing, willful, and continuing.

29. Defendants Henry W. Howe IV and Melanie B. Howe's breach has caused Plaintiff, Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1, to suffer actual damages, including, but not limited to money lent, interest, expectancy damages, as well as attorney's fees and costs.

30. The total debt owed under the Note as of August 31, 2021 is Three Hundred Fifty-Two Thousand Two Hundred Ninety-Nine and 91/100 ($352,299.91) Dollars, which includes:

| Description | Amount |
| --- | --- |
| Principal Balance | $237,175.09 |

| | |
|---|---|
| Interest | $69,301.46 |
| Late Fees | $588.40 |
| Escrow Advance | $36,035.81 |
| Pro Rata MIP/PMI Amount | $34.67 |
| Rec Corp Advance Balance | $9,164.48 |
| Grand Total | $352,299.91 |

*See* Exhibit C.

31. Injustice can only be avoided by awarding damages for the total amount owed under the Note, and for money had and received, including interest, plus costs and expenses, including attorney fees.

## COUNT III – QUANTUM MERUIT

32. The Plaintiff, Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1, repeats and re-alleges paragraphs 1 through 31 as if fully set forth herein.

33. Challenge Financial Investors Corp., predecessor-in-interest to Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1, loaned Defendants, Henry W. Howe IV and Melanie B. Howe, $208,000.00.  *See* Exhibit B.

34. As a result of the Defendants` failure to perform under the terms of their obligation, the Defendants, Henry W. Howe IV and Melanie B. Howe, should be required to compensate the Plaintiff, Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1.

35. As such, the Plaintiff, Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1, is entitled to relief under the doctrine of *quantum meruit*.

36. The total debt owed under the Note as of August 31, 2021 is Three Hundred Fifty-Two Thousand Two Hundred Ninety-Nine and 91/100 ($352,299.91) Dollars, which includes:

| Description | Amount |
|---|---|
| Principal Balance | $237,175.09 |
| Interest | $69,301.46 |
| Late Fees | $588.40 |
| Escrow Advance | $36,035.81 |
| Pro Rata MIP/PMI Amount | $34.67 |
| Rec Corp Advance Balance | $9,164.48 |
| Grand Total | $352,299.91 |

See Exhibit C.

## COUNT IV –UNJUST ENRICHMENT

37. The Plaintiff, Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1, repeats and re-alleges paragraphs 1 through 36 as if fully set forth herein.

38. Challenge Financial Investors Corp., predecessor-in-interest to Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1, loaned the Defendants, Henry W. Howe IV and Melanie B. Howe, $208,000.00. *See* Exhibit B.

39. The Defendants, Henry W. Howe IV and Melanie B. Howe, have failed to repay the loan obligation.

40. As a result, the Defendants, Henry W. Howe IV and Melanie B. Howe, have been unjustly enriched to the detriment of the Plaintiff, Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1 as successor-in-interest to Challenge Financial Investors Corp. by having received the aforesaid benefits and money and not repaying said benefits and money.

41. As such, the Plaintiff, Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1, is entitled to relief.

42. The total debt owed under the Note as of August 31, 2021 is Three Hundred Fifty-Two Thousand Two Hundred Ninety-Nine and 91/100 ($352,299.91) Dollars, which includes:

| Description | Amount |
|---|---|
| Principal Balance | $237,175.09 |
| Interest | $69,301.46 |
| Late Fees | $588.40 |
| Escrow Advance | $36,035.81 |
| Pro Rata MIP/PMI Amount | $34.67 |
| Rec Corp Advance Balance | $9,164.48 |
| Grand Total | $352,299.91 |

See Exhibit C.

## PRAYERS FOR RELIEF

WHEREFORE, the Plaintiff, Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1, prays this Honorable Court:

a) Find that the Defendants, Henry W. Howe IV and Melanie B. Howe, are in breach of the Note by failing to make payment due as of October 1, 2014, and all subsequent payments;

b) Find that the Defendants, Henry W. Howe IV and Melanie B. Howe, entered into a contract for a sum certain in exchange for a loan;

c) Find that the Defendants, Henry W. Howe IV and Melanie B. Howe, are in breach of contract by failing to comply with the terms and conditions of the Note by failing to make the payment due October 1, 2014 and all subsequent payments;

d) Find that the Plaintiff, Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1, is entitled to enforce the terms and conditions of the Note;

e)   Find that by virtue of the money retained by the Defendants, Henry W. Howe IV and Melanie B. Howe have been unjustly enriched at the Plaintiff's expense;

f)   Find that such unjust enrichment entitles the Plaintiff, Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1, to restitution;

g)   Find that the Defendants, Henry W. Howe IV and Melanie B. Howe, are liable to the Plaintiff, Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1, for money had and received;

h)   Find that the Defendants, Henry W. Howe IV and Melanie B. Howe, are liable to the Plaintiff for quantum meruit;

i)   Find that the Defendants, Henry W. Howe IV and Melanie B. Howe, have appreciated and retained the benefit of the Note and the subject property;

j)   Find that it would be inequitable for the Defendants, Henry W. Howe IV and Melanie B. Howe, to continue to appreciate and retain the benefit of the Note and subject property without recompensing the appropriate value;

k)   Find that the Plaintiff, Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1, is entitled to restitution for this benefit from the Defendants, Henry W. Howe IV and Melanie B. Howe;

l)   Determine the amount due on said Note, including principal, interest, reasonable attorney's fees and court costs;

m)  Additionally, issue a money judgment against the Defendants, Henry W. Howe IV and Melanie B. Howe, and in favor of the Plaintiff, Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1, in the amount of Three Hundred Fifty-Two Thousand Two Hundred Ninety-Nine and 91/100 ($352,299.91) Dollars, the total debt owed under the Note plus interest and costs including attorney's fees and costs;

n)  For such other and further relief as this Honorable Court deems just and equitable.

Respectfully Submitted,
Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1,
By its attorneys,

Dated: September 30, 2021

/s/ Reneau J. Longoria, Esq.
Reneau J. Longoria, Esq., Bar No. 5746
Attorneys for Plaintiff
Doonan, Graves & Longoria, LLC
100 Cummings Center, Suite 303C
Beverly, MA 01915
(978) 921-2670
JAD@dgandl.com
RJL@dgandl.com

Order No: 1309922 (Howe)

### EXHIBIT 'A'

A CERTAIN LOT OR PARCEL OF LAND WITH ANY BUILDINGS THEREON, SITUATED ON THE DEERWANDER ROAD IN THE TOWN OF HOLLIS, COUNTY OF YORK, STATE OF MAINE AND BEING LOT 1 ON A PLAN ENTITLED, "PLAN OF LAND OF RUSSELL A. & LOIS A. BLACK, 344 DEERWANDER ROAD, HOLLIS, MAINE", PREPARED BY BH2M ENGINEERS, 28 STATE STREET, GORHAM, MAINE 04038 AND RECORDED IN YORK COUNTY REGISTRY OF DEEDS ON OCTOBER 25, 2000 IN PLAN BOOK 258, PAGE 41, TO WHICH PLAN AND THE RECORD THEREOF REFERENCE SHOULD BE MADE FOR A MORE PARTICULAR DESCRIPTION.

BEING THE SAME PREMISES CONVEYED TO HENRY HOWE AND MELANIE HOWE BY VIRTUE OF A DEED FROM CHRISTOPHER J. COTE AND HEATHER L. COTE, FORMERLY KNOWN AS HEATHER L. KING, DATED APRIL 20, 2007 AND TO BE RECORDED HEREWITH.

### END OF DOCUMENT



**NOTE**          Loan Number: ▮▮▮▮▮▮▮

APRIL 20, 2007          ST. PETERSBURG     ,     FLORIDA
[Date]                       [City]                    [State]

334 DEERWANDER ROAD, HOLLIS CENTER, MAINE 04042
[Property Address]

**1.  BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 208,000.00     (this amount is called "Principal"), plus interest, to the order of the Lender.  The Lender is CHALLENGE FINANCIAL INVESTORS, CORP., A FLORIDA CORPORATION                                      .
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.  INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid.  I will pay interest at a yearly rate of     7.250 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.  PAYMENTS**

**(A)  Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  1st  day of each month beginning on  JUNE 1     ,
2007  .  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal.  If, on  MAY 1, 2037
, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  360 CENTRAL AVENUE, SUITE 600, ST. PETERSBURG, FLORIDA 33701
or at a different place if required by the Note Holder.

**(B)  Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 1,418.93     .

**4.  BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge.  The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note.  If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5.  LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit;

MAINE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3220 1/01                    Page 1 of 3

DocMagic *eFormas*  800-649-1362
*www.docmagic.com*

and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6.   BORROWER'S FAILURE TO PAY AS REQUIRED**

  **(A)   Late Charge for Overdue Payments**
  If the Note Holder has not received the full amount of any monthly payment by the end of   15
calendar days after the date it is due, I will pay a late charge to the Note Holder.   The amount of the charge will be
  5.000   % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

  **(B)   Default**
  If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

  **(C)   Notice of Default**
  If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

  **(D)   No Waiver By Note Holder**
  Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

  **(E)   Payment of Note Holder's Costs and Expenses**
  If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.   Those expenses include, for example, reasonable attorneys' fees.

**7.   GIVING OF NOTICES**

  Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

  Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

  If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.   WAIVERS**

  I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.  UNIFORM SECURED NOTE**

  This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep

the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any interest in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, Lender will not require immediate payment in full if prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement, following the procedures in Section 15. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
MELANIE B. HOWE            -Borrower

_____ (Seal)
HENRY W. HOWE, IV          -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

[Sign Original Only]

PAY TO THE ORDER OF: CitiMortgage, Inc.
WITHOUT RECOURSE

CHALLENGE FINANCIAL INVESTORS CORP., A FLORIDA CORPORATION

BY: _____

ITS: Matthew Richards, V.P.

MAINE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3220 1/01                              Page 3 of 3

DocMagic ℮Rsms 800-649-1362
www.docmagic.com

Pay to the order of _____
without recourse on us CitiMortgage, Inc.

_____
Janet L. Sims, Vice President
CitiMortgage, Inc.

**Payoff/Paydown Quote Information:** ███████ **[ dcs:644 ]**

| Borrower: | HOWE W,IV HENRY | Address: | 334 DEERWANDER RD | Prin Bal: | $213,975.36 | Investor Type: | Other |
|---|---|---|---|---|---|---|---|
| Co-Borrower Name: | HOWE,MELANIE B | City: | HOLLIS CENTER | Add Prin Bal: | $23,199.73 (P) | Investor #: | A1U |
| Due Date: | 10/01/2014 | State: | ME | Account Type: | First Mortgage - Conventional With PMI | Investor Account #: | ████ |
| Last Pmt Appd On: | | Zip Code: | 04042 | Total Pmt Amt: | $1,530.13 | PLS Client ID: | |

## Quote Summary ███████ [ dcs:644 ] Tue Aug 17 14:15:23 EDT 2021

| As Of Date: | 08/31/2021 |
|---|---|
| Per Diem Amt: | $27.11 |
| Piggyback Per Diem Amt: | $0.00 |
| Total Principal Balance: | $237,175.09 |
| Total Interest Amt: | $69,301.46 |
| Pro Rata MIP/PMI Amt: | $34.67 |
| Escrow Advance Amt: | $36,035.81 |
| Escrow Balance: | $0.00 |
| Suspense Balance: | $0.00 |
| HUD Balance: | $0.00 |
| Rep Res Balance: | $0.00 |
| Restricted Escrow Balance: | $0.00 |
| Total Fees Amt: | $0.00 |
| Total Accumulated Late Charge Amt: | $588.00 |
| Total NSF Charge Fee Amt: | $0.00 |
| Total Other Fees Due Amt: | $0.00 |
| Total Penalty Interest Amt: | $0.00 |
| Total Flat Penalty Fee Amt: | $0.00 |
| Credit Life Orig Fee Rebate Amt: | $0.00 |
| Rec Corp Adv Balance: | $9,164.48 |
| Total Amt To Payoff: | $352,299.51 |

### Primary Rate Changes

Row Count = 2

| From Date | Rate | Interest Amount |
|---|---|---|
| 09/01/2014 | 4.625% | $69,301.46 |
| 08/31/2021 | | |

### Second Mortgage Rate Changes

Row Count = 1

| From Date | Rate | Interest Amount |
|---|---|---|
| 09/01/2014 | | |



BK 16893  PGS 631 - 637      09/22/2014  09:46:28 AM
INSTR # 2014038790           DEBRA ANDERSON
RECEIVED YORK SS             REGISTER OF DEEDS



Return to:
Document Recording Services
P.O. Box 3008
Tallahassee, FL  32315-3008

**This Document Prepared By:**
**NATIONSTAR MORTGAGE LLC**
**350 HIGHLAND DRIVE**
**LEWISVILLE, TX 75067**
**Tatiana Vakidis**

_____ [Space Above This Line For Recording Data]
Original Recording Date: **April 24, 2007**
Original Loan Amount: **$208,000.00**
New Money: **$20,895.40**



# LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 12th day of August, 2014, between **HENRY HOWE and MELANIE HOWE** ("Borrower") and **NATIONSTAR MORTGAGE LLC, whose address is 350 HIGHLAND DRIVE, LEWISVILLE, TX 75067** ("Lender"), and Mortgage Electronic Registration Systems, Inc. ("MERS"), and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS, ("Mortgagee"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated **April 20, 2007** and recorded in **Book/Liber 15139**, Page **0540**, Instrument No: **2007019461**, of the **Official Records (Name of Records) of YORK County, ME (County and State, or other Jurisdiction)** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

**334 DEERWANDER ROAD, HOLLIS CENTER, ME 04042,**
(Property Address)
the real property described being set forth as follows:

**See Exhibit "A" attached hereto and made a part hereof;**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument          Form 3179 1/01 (rev. 06/12)
8300b 01/14                                                                        (page 1 of 6)

1. As of **August 1, 2014**, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. **$237,329.72**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. **$23,199.73** of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and Borrower will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is **$214,129.99**. Interest will be charged on the Interest Bearing Principal Balance at the yearly rate of **4.625%**, from **August 1, 2014**. Borrower promises to make monthly payments of principal and interest of U.S. **$979.92**, beginning on the **1st** day of **September, 2014**, and continuing thereafter on the same day of each succeeding month until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The yearly rate of **4.625%** will remain in effect until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The new Maturity Date will be **August 1, 2054**.

3. Borrower agrees to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and Security Instrument by the earliest of: (i) the date Borrower sells or transfers an interest in the Property, (ii) the date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

4. If Borrower makes a partial prepayment of Principal, Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

5. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

6. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   (a)  all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may



have otherwise been entitled; and

    (b)   all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

7.   Borrower understands and agrees that:

    (a)   All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

    (b)   All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law.  Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

    (c)   Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

    (d)   All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

    (e)   Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

    (f)   "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. **MERS is the Mortgagee, of record under the Security Instrument and this Agreement.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

8.   In the event that I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the loan documents and did not reaffirm the mortgage debt under applicable law, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

9.   By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

10.   This Agreement modifies an obligation secured by an existing security instrument recorded in YORK

County, ME, upon which all recordation taxes have been paid. As of the date of this agreement, the unpaid principal balance of the original obligation secured by the existing security instrument is $216,434.32. The principal balance secured by the existing security instrument as a result of this Agreement is $237,329.72, which amount represents the excess of the unpaid principal balance of this original obligation.

In Witness Whereof, the Lender and I have executed this Agreement.

_____ (Seal)
HENRY HOWE  -Borrower

_____ (Seal)
MELANIE HOWE  -Borrower

_____ [Space Below This Line For Acknowledgments] _____

State of Maine

County of _____YORK_____

The foregoing instrument was acknowledged before me, a Notary Public on

_____8|26|2014_____ by HENRY HOWE and MELANIE HOWE.

SEAL

_____Martha E Huff_____
(Signature of person taking acknowledgment)

_____NOTARY PUBLIC_____
(Title or rank)

My commission expires: May 16, 2020

MARTHA E. HUFF
Notary Public, Maine
My Commission Expires May 16, 2020




**NATIONSTAR MORTGAGE LLC**

By: _____ (Seal) - Lender
Name: _____Krista Moore_____
Title: _____Assistant Secretary_____

_____8-29-14_____
Date of Lender's Signature
_____ [Space Below This Line For Acknowledgments] _____

The State of TX

County of _____Denton_____

Before me _____Bianca Hockensmith_____ Notary Public (name/title of officer) on this day personally appeared

_____Krista Moore_____, the __Assistant Secretary__ of

_____Nationstar Mortgage LLC_____,

known to me (or proved to me on the oath of _____ or through _____ (description of identity card or other document)) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this __25__ day of __August__, A.D., __2014__.

_____
Signature of Officer

_____Notary Public_____
Title of Officer

My Commission expires : __3/2/16__

8.29-14   Krista Moore
_____
Mortgage Electronic Registration Systems, Inc - Nominee for Lender

Title: Assistant Secretary

_____ [Space Below This Line For Acknowledgments] _____

The State of TX

County of _____Denton_____                    Notary Public

Before me ___Bianca Hockensmith_____ (name/title of officer) on this day personally appeared

_____Krista Moore_____, the ____Assistant Secretary_____ of

___Mortgage Electronic Registration System, Inc._____,

known to me (or proved to me on the oath of _____ or through _____ (description
of identity card or other document)) to be the person whose name is subscribed to the foregoing instrument and
acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this ___29__ day of ___August____, A.D. _2014_.

                              _____
                              Signature of Officer
                              Notary Public
                              _____
My Commission expires : ___3/2/16___   Title of Officer



LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument          Form 3179 1/01 (rev. 06/12)
8300b 01/14                                                                      (page 6 of 6)

# Exhibit "A"

Loan Number: ████████

Property Address: **334 DEERWANDER ROAD, HOLLIS CENTER, ME 04042**

Legal Description:

A CERTAIN LOT OR PARCEL OF LAND WITH ANY BUILDINGS THEREON, SITUATED ON THE DEERWANDER ROAD IN THE TOWN OF HOLLIS, COUNTY OF YORK, STATE OF MAINE AND BEING LOT 1 ON A PLAN ENTITLED, PLAN OF LAND OF RUSSELL A. AND LOIS A. BLACK, 344 DEERWANDER ROAD, HOLLIS, MAINE, PREPARED BY BH2M ENGINEERS, 28 STATE STREET, GORHAM, MAINE 04038 AND RECORDED IN YORK COUNTY REGISTRY OF DEEDS ON OCTOBER 25, 2000 IN PLAN BOOK 258, PAGE 41, TO WHICH PLAN AND THE RECORD THEREOF REFERENCE SHOULD BE MADE FOR A MORE PARTICULAR DESCRIPTION.




Exhibit A Legal Description Attachment 11/12                                    *Page 1 of 1*

### UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE
CIVIL ACTION NO:

Wilmington Trust, National Association,
Not in Its Individual Capacity, but Solely as
Trustee for MFRA Trust 2015-1

      Plaintiff

         vs.

Henry W. Howe IV and Melanie B. Howe

      Defendants

RE:
334 Deerwander Road, Hollis Center, ME
04042

Mortgage:
April 20, 2007
Book 15139, Page 0540

### AFFIDAVIT RELATING TO MILITARY SEARCH

I, Matthew N. Kelly, hereby certify that on _September 30,_ 2021 I searched the

Department of Defense/Defense Manpower Data Center (DOD/DMDC) and found that the

Defendants, Henry W. Howe IV and Melanie B. Howe, are not in the military.  An affidavit as to the

Defendants' military status will be filed with a Motion for Summary Judgment or at trial as Maine

Courts accept such affidavits only at those times.

Dated: _September 30,_ 2021

                               Matthew N. Kelly
                               Paralegal



EXHIBIT
E

## COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.                                    Dated this 30th day of September, 2021

COUNTY OF ESSEX

On this 30th day of September, 2021, before me, the undersigned notary public personally appeared Matthew N. Kelly, who proved to me through satisfactory evidence of identification to be the person whose name is signed on this document, who swore or affirmed to me that the contents of the document are truthful and accurate to the best of his/her knowledge and belief.

Notary Public
My Commission Expires: March 29, 2024

Noelle Marie Selden
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
March 29, 2024

Department of Defense Manpower Data Center

Results as of : Sep-30-2021 09:51:02 AM

SCRA 5.9

Case 2:21-cv-00278-NT   Document 1-5   Filed 09/30/21   Page 3 of 4   PageID #: 26



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

SSN:

Birth Date:

Last Name:      HOWE

First Name:     MELANIE

Middle Name:    B

Status As Of:   Sep-30-2021

Certificate ID:

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard).  This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA  93955

Department of Defense Manpower Data Center

Results as of : Sep-30-2021 09:51:02 AM

SCRA 5.9



## Status Report
## Pursuant to Servicemembers Civil Relief Act

SSN:

Birth Date:

Last Name:   HOWE IV

First Name:   HENRY

Middle Name:   W

Status As Of:   Sep-30-2021

Certificate ID:

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

Michael V. Sorrento, Director

Department of Defense - Manpower Data Center

400 Gigling Rd.

Seaside, CA  93955

51619-5979-Alias-P