# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

MFRA v. Howe

Joint Exhibit 21

| | |
|---|---|
| **Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1** | **CIVIL ACTION NO: 2:21-cv-00278-NT** |
| **Plaintiff** | |
| **vs.** | **MOTION TO AMEND COMPLAINT** |
| | **RE:** |
| | **334 Deerwander Road, Hollis Center, ME 04042** |
| **Henry W. Howe IV and Melanie B. Howe** | **Mortgage:** |
| **Defendants** | **April 20, 2007** |
| | **Book 15139, Page 0540** |
| **Melanie B. Howe** | |
| **Counter-Plaintiff** | |
| **Wilmington  Trust, National Association, not in its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1 and Fay Servicing LLC** | |
| **Counter-Defendants** | |

**NOW COMES** the Plaintiff, Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1 ("Wilmington"), by and through undersigned counsel, pursuant to Fed.R.Civ.P.15(a) and hereby moves to amend its Complaint to include specific information regarding the diversity and citizenship of the parties, to include information pertaining to the subject mortgage and the related assignments of said mortgage, to include a Count for Foreclosure and Sale, and to include a Credit Acceptance Corp. as a Party-in-Interest in this action.  As grounds therefore, Plaintiff states the following:

1. Plaintiff's Complaint was filed on September 30, 2021.

2. The Defendants were served with the subject Complaint on December 6, 2021.

3. Proof of Service for Defendants was filed on December 9, 2021.

4. The original lender, Challenge Financial Investors Corp., ("Challenge") is for all intents and purposes a defunct Florida corporation, since its operations ceased, and it has been a suspended corporation for more than 12 years.

5. Although Challenge is a defunct corporation, it exists for the purposes of winding up its affairs only.

6. As Challenge was a defunct corporation, a signor for the execution of quitclaim assignment of mortgage was unavailable.

7. On August 26, 2022, Wilmington initiated an action (2022CA007254) in the State of Florida, where Challenge was incorporated, in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, requesting the appointment of a Receiver for Challenge, for the sole purpose of winding up its affairs, including execution of Assignments of Mortgage, and more specifically, execution of an Assignment of the Howe Mortgage to Wilmington.

8. Service of the Complaint to Appoint Receiver was completed on October 21, 2022, with a response deadline of November 11, 2022.

9. On December 19, 2022, as a result of no answer or response being received, Plaintiff filed a Motion for Default against Challenge.

10. On December 27, 2022, the Clerk for the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida entered Default against Challenge.

11. On January 18, 2023, Wilmington filed a Motion to Appoint Receiver for Challenge.

12. On January 23, 2023, Wilmington filed an Affidavit in Support of Motion to Appoint Receiver.

13. On February 3, 2023, the Circuit Court Judge entered an Order granting Wilmington's Motion to Appoint Receiver, found that the appointment of a receiver was proper and

necessary for Wilmington to enforce its lien in Maine, appointed Paul W.ersant, Esq. as Receiver for Challenge, and specifically provided Receiver, Paul Wersant, Esq. with power to execute any documents on behalf of the Challenge, including but not limited to Assignments of Mortgage.

14. On February 21, 2023, Paul Wersant, Esq., solely as Receiver for Challenge Financial Investors Corp., as authorized by Order, dated February 3, 2023, of the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida in Case No. 22-CA-007254, executed a Quitclaim Assignment of Mortgage from Challenge to Plaintiff.

15. Said Quitclaim Assignment of Mortgage, dated February 21, 2023, was recorded in the York County Registry of Deeds in **Book 19238**, **Page 93**.

16. Said Quitclaim Assignment of Mortgage, dated February 21, 2023, was subsequently re-recorded, to include the Order Appointing Receiver for Challenge Financial Corp, in the York County Registry of Deeds in **Book 17568**, **Page 206**.

17. On April 14, 2023, the Defendants, Henry W. Howe IV and Melanie B. Howe, were sent and recieved a Notice of Mortgagor's Right to Cure, via Certificate of Mailing, certified mail and regular mail.

18. At this time, Plaintiff seeks to amend its Complaint to reference the Howe Mortgage, related Assignments of said Mortgage, and include a Count for Foreclosure and Sale, as it now has valid standing to foreclose said Mortgage, as a result of the executed Quitclaim Assignment of Mortgage.

19. Plaintiff also seeks to add Credit Acceptance Corp as a Party-in-Interest in this action, as the undersigned's most recent title examination reflects a Writ of Execution against the Defendants, Henry W. Howe, IV and Melanie B. Howe, dated February 3, 2017, in the amount of $9,308.19, and recorded in the York County Registry of Deeds in Book 17452,

Page 826.

20. In addition, Plaintiff intends to amend its Complaint to include complete information pertaining to the diversity and citizenship of the parties in this action.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court allow Plaintiff to amend its Complaint to include specific information regarding the diversity and citizenship of the parties, to include information pertaining to the subject mortgage and the related assignments of said mortgage, to include a Count for Foreclosure and Sale, and to include a Credit Acceptance Corp. as a Party-in-Interest in this action.

Dated:  May 26, 2023

/s/ Reneau J. Longoria, Esq.
Reneau J. Longoria, Esq. Bar No. 005746
Attorney for Plaintiff
Doonan, Graves & Longoria, LLC
100 Cummings Center, Suite 303C
Beverly, MA 01915
(978) 921-2670
RJL@dgandl.com

## CERTIFICATE OF SERVICE

I, Reneau J. Longoria, Esq., hereby certify that on this 26th day of May, 2023 I served a copy of the above document by electronic notification using the CM/ECF system and/or First Class Mail to the following:

/s/ Reneau J. Longoria, Esq.
Reneau J. Longoria, Esq. Bar No. 005746

Henry W. Howe IV
334 Deerwander Road
Hollis Center, ME 04042

Henry W. Howe IV
83 Deer Crossing Road
Limerick, ME 04048

John Z Steed, Esq.
Attorney for M. Howe
PO Box 386
Blue Hill, ME 04614

Credit Acceptance Corp.
c/o Corporation Service Company
45 Memorial Circle
Augusta, ME 04330

## UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | |
|---|---|
| Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1 | CIVIL ACTION NO: 2:21-cv-00278-NT |
| **Plaintiff** | **AMENDED COMPLAINT** |
| **vs.** | RE:<br>334 Deerwander Road, Hollis Center, ME 04042 |
| Henry W. Howe, IV and Melanie B. Howe | |
| **Defendants** | |
| Credit Acceptance Corp. | |
| **Party-in-Interest** | |
| Melanie B. Howe | |
| **Counter-Plaintiff** | |
| Wilmington Trust, National Association, not in its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1 and Fay Servicing LLC | Mortgage:<br>April 20, 2007<br>Book 15139, Page 0540 |
| **Counter-Defendants** | York County Registry of Deeds |

NOW COMES the Plaintiff, Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1 ("Wilmington"), by and through its attorneys, Doonan, Graves & Longoria, LLC, and hereby complains against the Defendants, Henry W. Howe, IV, ("H. Howe"), Melanie B. Howe ("M. Howe"), and Credit Acceptance Corp. ("C.A.C.") as follows:

.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant 28 U.S.C. § 1332(a)(1) (Diversity) because the Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds the sum or value of seventy-five thousand and 00/100 ($75,000.00) dollars, exclusive of interest and costs. Any Court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought under 28 U.S.C. § 2201.

2. Plaintiff is a duly formed Delaware Statutory Business Trust, in good standing and Wilmington Trust, National Association, not in its Individual Capacity, but solely as Trustee, is bringing this action in its capacity as the Trustee of the MFRA 2015-1 Trust. *See* Exhibit A (a true and correct copy of the trust documents are attached hereto and incorporated herein).

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the object of this litigation is a Note executed under seal currently owned and held by Wilmington, in which the Defendants, Henry W. Howe, IV and Melanie B. Howe, are the obligors and the total amount owed under the terms of the Note as of May 26, 2023 is Three Hundred Eighty-Two Thousand One Hundred Twenty-One and 35/100 ($382,121.35) Dollars, plus attorney fees and costs associated with the instant action; thus, the amount in controversy exceeds the jurisdictional threshold of seventy-five thousand ($75,000.00) dollars.

4. Venue is properly exercised pursuant to 28 U.S.C. §1391(b)(2) insofar as all or a substantial portion of the events that give rise to the Plaintiff's claims transpired in Maine and the property is located in Maine.

<u>PARTIES</u>

5.  Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1 is a National Association with its principal place of business and main office located at 1100 North Market Street, Wilmington, Delaware, 19890.

6.  Pursuant to 28 U.S.C. Section 1348 and the Supreme Court's decision in *Wachovia Bank v. Schmidt*, 126 S.Ct. 941 (2006), a National Association is a citizen only of the state in which its main office is located. *See also Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 459, 100 S.Ct. 1779, 1781 (1980); *Onewest Bank v. Melina*, 827 F.3rd 214, 218 2nd Cir. (N.Y). Wilmington's main office is located in the State of Delaware as set forth in the attached. *See* Exhibit B (the true and correct copy of the SEC Form T-1 is attached hereto).

7.  The Defendant, Henry W. Howe, IV, is a resident of Limerick, County of York and State of Maine.

8.  The Defendant, Melanie B. Howe, is a resident of Hollis Center, County of York and State of Maine.

9.  The Party-in-Interest, Credit Acceptance Corp., is a Corporation incorporated in the State of Michigan, with its principal place of business and main office located in the State of Michigan at 25505 W 12 Mile Road, Southfield, MI 48034, and whose State of Maine Registered Agent is Corporation Service Company, 45 Memorial Circle, Augusta, ME 04330.

10. The Counter-Defendant, Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1, has been named as a Counter-Defendant, per Court Order [ECF No. 23] and is citizenship is set forth in paragraph 5 above.

11. The Counter-Defendant, Fay Servicing LLC ("Fay"), per Court Order [ECF No. 23], is a single member Limited Liability Corporation, whose single managing member is Edward J. Fay, a citizen of the State of Florida with an address of 5426 Bay Center Drive, Suite 300, Tampa, FL 33609.

## FACTS

12. On April 20, 2007, by virtue of a Warranty Deed from Christopher J. Cote and Heather L. Cote, formerly known as Heather L. King, which is recorded in the York County Registry of Deeds in **Book 15139, Page 0538**, the property situated at 334 Deerwander Road, County of York, Hollis Center, and State of Maine, ("the Property") was conveyed to the Defendants, Henry W. Howe, IV and Melanie B. Howe.

13. The Property was further conveyed on February 3, 2022, from Henry W. Howe, IV to Melanie B. Howe by virtue of a Quitclaim Deed, which is recorded York County Registry of Deeds in Book **18944, Page 635**, and being more particularly described by the attached legal description. *See* Exhibit C (a true and correct copy of the legal description is attached hereto and incorporated herein).

14. On April 20, 2007, the Defendants, Henry W. Howe, IV and Melanie B. Howe, executed and delivered to Challenge Financial Investors Corp. a certain Note in the amount of $208,000.00. *See* Exhibit D (a true and correct copy of the Note is attached hereto and incorporated herein).

15. 'To secure said Note, on April 20, 2007, Defendants, Henry W. Howe, IV and Melanie B. Howe, executed a Mortgage Deed with mortgage and warranty covenants in favor of Mortgage Electronic Registration Systems, Inc. as nominee for Challenge Financial Investors Corp, securing the property located at 334 Deerwander Road, Hollis Center, ME 04042, which Mortgage Deed is recorded in the York County Registry of Deeds in **Book 15139**,

**Page 0540**.  *See* Exhibit E (a true and correct copy of the Mortgage is attached hereto and incorporated herein).

16. On July 24, 2010, Defendants, Henry W. Howe, IV and Melanie B. Howe, executed a Loan Modification Agreement (herein after referred to as the "2010 Loan Modification").  *See* Exhibit F (a true and correct copy of the 2010 Loan Modification is attached hereto and incorporated herein)**.**

17. On July 30, 2011, Defendants, Henry W. Howe, IV and Melanie B. Howe, executed a Loan Modification Agreement (herein after referred to as the "2011 Loan Modification").  *See* Exhibit G (a true and correct copy of the 2011 Loan Modification is attached hereto and incorporated herein)**.**

18. On July 30, 2011, Defendants, Henry W. Howe, IV and Melanie B. Howe, executed a Compliance Agreement, in consideration of receiving a modification of their Mortgage Loan.  *See* Exhibit H (a true and correct copy of said Compliance Agreement is attached hereto and incorporated herein)**.**

19. The Mortgage was assigned to Nationstar Mortgage LLC by virtue of an Assignment of Mortgage, dated March 4, 2013, and recorded in the York County Registry of Deeds in **Book 16559**, **Page 45**.  *See* Exhibit I (a true and correct copy of the Assignment of Mortgage is attached hereto and incorporated herein).

20. On August 12, 2014, the Defendants, Henry W. Howe, IV and Melanie B. Howe, executed a Loan Modification Agreement (herein after referred to as the "2014 Loan Modification"), which is recorded in the York County Registry of Deeds in **Book 16893, Page 631**.  *See* Exhibit J (a true and correct copy of the 2014 Loan Modification is attached hereto and incorporated herein)

21. The Mortgage was then assigned to MTGLQ Investors, L.P. by virtue of an Assignment of Mortgage, dated January 17, 2017, and recorded in the York County Registry of Deeds in **Book 17411**, **Page 360**. *See* Exhibit K (a true and correct copy of the Assignment of Mortgage is attached hereto and incorporated herein).

22. The Mortgage was then assigned to MTGLQ Investors, L.P. by virtue of an Assignment of Mortgage, dated January 19, 2017, and recorded in the York County Registry of Deeds in **Book 17411**, **Page 478,** as affected by Recission of Assignment of Mortgage, dated December 5, 2017, and recorded in the York County Registry of Deeds in Book 19113, Page 486. *See* Exhibit L (a true and correct copy of the Assignment of Mortgage is attached hereto and incorporated herein) and Exhibit M (a true and correct copy of the Recission of Assignment of Mortgage is attached hereto and incorporated herein).

23. The Mortgage was then assigned to Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1 by virtue of an Assignment of Mortgage, dated September 12, 2017, and recorded in the York County Registry of Deeds in **Book 17568**, **Page 206**. *See* Exhibit N (a true and correct copy of the Assignment of Mortgage is attached hereto and incorporated herein).

24. To address the *Greenleaf* issue created by the above listed chain of assignments which began with a MERS assignment, a Complaint to appoint a Receiver to wrap-up the affairs of the originator, Challenge Financial Corp. was filed, Receiver appointed and quitclaim assignment executed.

25. The Mortgage was assigned by the appointed receiver to Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1 by virtue of a Quitclaim Assignment of Mortgage, dated February 21, 2023, and recorded in the York County Registry of Deeds in **Book 19238**, **Page 93**. *See* Exhibit O (a true and

correct copy of the Quitclaim Assignment of Mortgage is attached hereto and incorporated herein).

26. The Quitclaim Assignment together with the authority to execute as set forth in the Order of appointment was recorded at in the York County Registry of Deeds in **Book 17568**, **Page 206**. *See* Exhibit P (a true and correct copy of the Assignment of Mortgage with Order Appointing Receiver for Challenge Financial Investors Corp. is attached hereto and incorporated herein).

27. The February 3, 2023, an Order Appointing Receiver for Challenge Financial Investors Corp. was entered by the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, in Case No. 22-CA-007254, and Paul Wersant, Esq. was appointed Receiver for Challenge Financial Investors Corp. *See* Ex. P at pp. 3-5.

28. On April 14, 2023, the Defendants, Henry W. Howe IV and Melanie B. Howe, were sent a Notice of Mortgagor's Right to Cure, pursuant to 14 M.R.S. §6111 as evidenced by the Certificate of Mailing (herein after referred to as the "Demand Letter"). *See* Exhibit Q (a true and correct copy of the Demand Letter is attached hereto and incorporated herein).

29. The Demand Letter informed the Defendants, Henry W. Howe IV and Melanie B. Howe, of the payment due date, the total amount necessary to cure the default, and the deadline by which the default must be cured, which was thirty-five (35) days from receipt of the Demand Letter. *See* Ex. Q (a true and correct copy of the Demand Letter, proof it was sent and received is attached hereto).

30. The Defendants, Henry W. Howe, IV and Melanie B. Howe, failed to cure the default prior to the expiration of the Demand Letter.

31. The Plaintiff, Wilmington, is the present holder of the Note pursuant to endorsement by the previous holder (if applicable), payment of value and physical possession of the Note in

conformity with 11 M.R.S. § 3-1201, et seq., 10 M.R.S. § 9416, and *Simansky v. Clark*, 147 A. 205, 128 Me. 280 (1929).

32. The Plaintiff, Wilmington, is the lawful holder and owner of the Note and the Original Note was presented for M. Howe's review and inspection during her May 24, 2023 deposition.

33. Credit Acceptance Corp. is a Party-in-Interest pursuant to a Writ of Execution against the Defendants, Henry W. Howe, IV and Melanie B. Howe, dated February 3, 2017, in the amount of $9,308.19, and recorded in the York County Registry of Deeds in Book 17452, Page 826.

34. The total debt owed under the Note as of May 26, 2023 is Three Hundred Eighty-Two Thousand One Hundred Twenty one and 35/100 ($382,121,35) Dollars, which includes:

| Description | Amount |
| --- | --- |
| Principal Balance | $237,175.09 |
| Interest | $86,464.14 |
| Late Fees | $588.40 |
| Escrow Advance | $44,959.12 |
| Rec Corp Advance Balance | $12,934.60 |
| Grand Total | $382,121.35 |

*See* Exhibit R (a true and correct copy of the Judgment Figures is attached hereto and incorporated herein).

35. Upon information and belief, the Defendant, Melanie B. Howe, is presently in possession of the subject property originally secured by the Note, and the Defendant, Henry W. Howe, IV is presently not in possession of the subject property originally secured by the Note.

36. The Defendants are not in the Military.  *See* Exhibit S (a true and correct copy of the Affidavit Relating to Military Search is attached hereto and incorporated herein).

## COUNT I – BREACH OF NOTE

37. The Plaintiff, Wilmington repeats and re-alleges paragraphs 1 through 36 as if fully set forth herein.

38. On April 20, 2007, the Defendants, Henry W. Howe, IV and Melanie B. Howe, executed and delivered to Challenge Financial Investors Corp. a certain Note in the amount of $208,000.00.  *See* Exhibit D.

39. The Plaintiff, Wilmington, is the proper holder of the Note and is entitled to enforce the terms and conditions of the Note due to its breach by the Defendants, Henry W. Howe, IV and Melanie B. Howe.

40. The Defendants, Henry W. Howe, IV and Melanie B. Howe, having failed to comply with the terms of the Note, are in breach of the Note.

41. The Defendants Henry W. Howe, IV and Melanie B. Howe's breach is knowing, willful, and continuing.

42. The Defendants Henry W. Howe, IV and Melanie B. Howe's breach has caused Plaintiff, Wilmington, to suffer actual damages, including, but not limited to money lent, interest, expectancy damages, as well as attorney's fees and costs.

43. The total debt owed under the Note as of May 26, 2023 is Three Hundred Eighty-Two Thousand One Hundred Twenty-one and 35/100 ($382,121.35) Dollars, which includes:

| Description | Amount |
|---|---|
| Principal Balance | $237,175.09 |
| Interest | $86,464.14 |
| Late Fees | $588.40 |
| Escrow Advance | $44,959.12 |
| Rec Corp Advance Balance | $12,934.60 |
| Grand Total | $382,121.35 |

*See* Ex. R.

44. Injustice can only be avoided by awarding damages for the total amount owed under the Note including interest, plus costs and expenses, including attorney fees.

## COUNT II – BREACH OF CONTRACT, MONEY HAD AND RECEIVED

45. The Plaintiff, Wilmington repeats and re-alleges paragraphs 1 through 44 as if fully set forth herein.

46. By executing, under seal, and delivering the Note, the Defendants, Henry W. Howe, IV and Melanie B. Howe, entered into a written contract with Challenge Financial Investors Corp. who agreed to loan the amount of $208,000.00 to the Defendants. *See* Exhibit B.

47. The Plaintiff, Wilmington is the proper holder of the Note and successor-in-interest to Challenge Financial Investors Corp. and has performed its obligations under the Note.

48. The Plaintiff, Wilmington is the proper holder of the Note, and is entitled to enforce the terms and conditions of the Note due to its breach by the Defendants, Henry W. Howe, IV and Melanie B. Howe.

49. The Defendants, Henry W. Howe, IV and Melanie B. Howe, having failed to comply with the terms of the Note, are in breach of contract.

50. The Defendants, Henry W. Howe, IV and Melanie B. Howe, are indebted to Wilmington in the sum of Three Hundred Eighty-Two Thousand Two Hundred Twenty-One and 35/100 ($382,121.35) Dollars, for money lent by the Plaintiff, Wilmington, to the Defendants.

51. Defendants Henry W. Howe, IV and Melanie B. Howe's breach is knowing, willful, and continuing.

52. Defendants Henry W. Howe, IV and Melanie B. Howe's breach has caused Plaintiff, Wilmington to suffer actual damages, including, but not limited to money lent, interest, expectancy damages, as well as attorney's fees and costs.

53. The total debt owed under the Note as of May 26, 2023 is Three Hundred Eighty-Two Thousand One Hundred Twenty-one and 35/100 ($382,121.35) Dollars, which includes:

| Description | Amount |
|---|---|
| Principal Balance | $237,175.09 |
| Interest | $86,464.14 |
| Late Fees | $588.40 |
| Escrow Advance | $44,959.12 |
| Rec Corp Advance Balance | $12,934.60 |
| Grand Total | $382,121.35 |

*See* Ex. R.

54. Injustice can only be avoided by awarding damages for the total amount owed under the Note, and for money had and received, including interest, plus costs and expenses, including attorney fees.

## COUNT III– *QUANTUM MERUIT*

55. The Plaintiff, Wilmington repeats and re-alleges paragraphs 1 through 54 as if fully set forth herein.

56. Challenge Financial Investors Corp., predecessor-in-interest to Wilmington loaned Defendants, Henry W. Howe, IV and Melanie B. Howe, $208,000.00.  *See* Exhibit D.

57. As a result of the Defendants' failure to perform under the terms of their obligation, the Defendants, Henry W. Howe, IV and Melanie B. Howe, should be required to compensate the Plaintiff, Wilmington.

58. As such, the Plaintiff, Wilmington is entitled to relief under the doctrine of *quantum meruit*.

59. The total debt owed as of May 26, 2023 is Three Hundred Eighty-Two Thousand One Hundred Twenty-one and 35/100 ($382,121.35) Dollars, which includes:

| Description | Amount |
|---|---|
| Principal Balance | $237,175.09 |
| Interest | $86,464.14 |
| Late Fees | $588.40 |
| Escrow Advance | $44,959.12 |
| Rec Corp Advance Balance | $12,934.60 |
| Grand Total | $382,121.35 |

*See* Ex. R.

## COUNT IV –UNJUST ENRICHMENT

60. The Plaintiff, Wilmington repeats and re-alleges paragraphs 1 through 59 as if fully set forth herein.

61. Challenge Financial Investors Corp., predecessor-in-interest to Wilmington loaned the Defendants, Henry W. Howe IV and Melanie B. Howe, $208,000.00.  *See* Exhibit D.

62. The Defendants, Henry W. Howe IV and Melanie B. Howe, have failed to repay the loan obligation.

63. As a result, the Defendants, Henry W. Howe, IV and Melanie B. Howe, have been unjustly enriched to the detriment of the Plaintiff, Wilmington, as successor-in-interest to Challenge

Financial Investors Corp. by having received the aforesaid benefits and money and not repaying said benefits and money.

64. As such, the Plaintiff, Wilmington is entitled to relief.

65. The total debt owed under the Note as of May 26, 2023 is Three Hundred Eighty-Two Thousand One Hundred Twenty-one and 35/100 ($382,121,35) Dollars, which includes:

| Description | Amount |
|---|---|
| Principal Balance | $237,175.09 |
| Interest | $86,464.14 |
| Late Fees | $588.40 |
| Escrow Advance | $44,959.12 |
| Rec Corp Advance Balance | $12,934.60 |
| Grand Total | $382,121.35 |

*See* Ex R.

## COUNT V – FORECLOSURE AND SALE

66. The Plaintiff, Wilmington, repeats and re-alleges paragraphs 1 through 65 as if fully set forth herein.

67. This is an action for foreclosure and sale respecting a real estate related Mortgage and title located at 334 Deerwander Road, Hollis Center, County of York, and State of Maine. *See* Exhibit C.

68. The Plaintiff, Wilmington, is the holder of the Note referenced in Paragraph 12, pursuant to endorsement by the previous holder (if applicable) and physical possession of the aforesaid Note in conformity with Title 11, section 3-1201, et seq. of the Maine Revised Statutes and *Simansky v. Clark*, 147 A. 205, 128 Me. 280 (1929). As such, Plaintiff, Wilmington, has the right to foreclosure and sale upon the subject property.

69. The Plaintiff, Wilmington, is the current owner and investor of the aforesaid Mortgage and Note.

70. The Defendants, Henry W. Howe, IV and Melanie B. Howe, are presently in default on said Mortgage and Note, having failed to make the monthly payment due October 1, 2014, and all subsequent payments, and, therefore, have breached the condition of the aforesaid Mortgage and Note.

71. The total debt owed under the Note and Mortgage as of May 26, 2023 is Three Hundred Eighty-two Thousand One Hundred Twenty-One and 35/100 ($382,121.35) Dollars.

72. The record established through the York County Registry of Deeds indicates that there are no public utility easements recorded subsequent to the Mortgage and prior to the commencement of these proceedings affecting the mortgaged premises at issue herein.

73. By virtue of the Defendants, Henry W. Howe, IV and Melanie B. Howe's, breach of condition, the Plaintiff hereby demands a foreclosure and sale on said real estate.

74. Notice in conformity with 14 M.R.S.A. § 6111 and/or Note and Mortgage was sent to the Defendants, Henry W. Howe, IV and Melanie B. Howe, on April 14, 2023, evidenced by the Certificate of Mailing. *See* Ex. Q.

75. The Defendants, Henry W. Howe, IV and Melanie B. Howe, are not in the Military as evidenced by the attached Ex. S.

76. If any Defendant has received a Bankruptcy Discharge of this Debt, the Court should enter an Order finding that this action does not seek any personal liability on the part of that Defendant, but only seeks *in rem* judgment against the property.

## PRAYERS FOR RELIEF

WHEREFORE, the Plaintiff, Wilmington prays this Honorable Court:

a) Issue a judgment of foreclosure and sale in conformity with Title 14 § 6322;

b)  Grant possession to the Plaintiff, Wilmington, upon the expiration of the period of redemption;

c)  Determine the priority of any junior lienholders who appear in this action;

d)  Find that the Defendants, Henry W. Howe, IV and Melanie B. Howe, are in breach of the Note by failing to make payment due as of October 1, 2014, and all subsequent payments;

e)  Find that the Defendants, Henry W. Howe, IV and Melanie B. Howe, are in breach of the Mortgage by failing to make payment due as of October 1, 2014, and all subsequent payments;

f)  Find that the Defendants, Henry W. Howe, IV and Melanie B. Howe, entered into a contract for a sum certain in exchange for a security interest in the subject property;

g)  Find that the Defendants, Henry W. Howe, IV and Melanie B. Howe, are in breach of contract by failing to comply with the terms and conditions of the Note and Mortgage by failing to make the payment due October 1, 2014 and all subsequent payments;

h)  Find that the Plaintiff is entitled to enforce the terms and conditions of the Note and Mortgage;

i)  Find that by virtue of the money retained by the Defendants, Henry W. Howe, IV and Melanie B. Howe have been unjustly enriched at the Plaintiff's expense;

j)  Find that such unjust enrichment entitles the Plaintiff, Wilmington, to restitution;

k)  Find that the Defendants, Henry W. Howe, IV and Melanie B. Howe, are liable to the Plaintiff, Wilmington, for money had and received;

l)  Find that the Defendants, Henry W. Howe, IV and Melanie B. Howe, are liable to the Plaintiff for *quantum meruit*;

m)  Find that the Defendants, Henry W. Howe, IV and Melanie B. Howe, have appreciated and retained the benefit of the Mortgage and the subject property;

n) Find that it would be inequitable for the Defendants, Henry W. Howe, IV and Melanie B. Howe, to continue to appreciate and retain the benefit of the Mortgage, Note and subject property without recompensing the appropriate value;

o) Find that the Plaintiff, Wilmington, is entitled to restitution for this benefit from the Defendants, Henry W. Howe, IV and Melanie B. Howe;

p) Determine the amount due on said Mortgage and Note, including principal, interest, reasonable attorney's fees and court costs;

q) Additionally, issue a money judgment against the Defendants, Henry W. Howe, IV and Melanie B. Howe, and in favor of the Plaintiff, Wilmington, as of May 26, 2023 in the amount of Three Hundred Eighty-Two Thousand One Hundred Twenty-One 35/100 ($382,121,35) Dollars, the total debt owed under the Note plus interest and costs including attorney's fees and costs (If any Defendant has received a Bankruptcy Discharge of this Debt, the Court should enter an Order finding that this action does not seek any personal liability on the part of that Defendant, but only seeks *in rem* judgment against the property);

r) For such other and further relief as this Honorable Court deems just and equitable.


Respectfully Submitted,
Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1,
By its attorneys,

Dated: May 26, 2023

/s/ Reneau J. Longoria, Esq.
Reneau J. Longoria, Esq., Bar No. 5746
Attorneys for Plaintiff
Doonan, Graves & Longoria, LLC
100 Cummings Center, Suite 303C
Beverly, MA 01915
(978) 921-2670
RJL@dgandl.com

**Department of State: Division of Corporations**

Allowable Characters

HOME

| | Entity Details |

**THIS IS NOT A STATEMENT OF GOOD STANDING**

| File Number: | **5778177** | Incorporation Date / Formation Date: | **7/1/2015** (mm/dd/yyyy) |
| Entity Name: | **MFRA TRUST 2015-1** | | |
| Entity Kind: | **Statutory Trust** | Entity Type: | **General** |
| Residency: | **Domestic** | State: | **DELAWARE** |

**REGISTERED AGENT INFORMATION**

| Name: | **WILMINGTON TRUST, NATIONAL ASSOCIATION** |
| Address: | **RODNEY SQUARE NORTH 1100 NORTH MARKET STREET** |
| City: | **WILMINGTON** | County: | **New Castle** |
| State: | **DE** | Postal Code: | **19890** |
| Phone: | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ○ Status ○ Status,Tax & History Information

[ Submit ]

[ View Search Results ]          [ New Entity Search ]

For help on a particular field click on the Field Tag to take you to the help area.



EXHIBIT

A

# Delaware

Page 1

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF STATUTORY TRUST REGISTRATION OF
"MFRA TRUST 2015-1", FILED IN THIS OFFICE ON THE FIRST DAY OF
JULY, A.D. 2015, AT 1:50 O`CLOCK P.M.



Jeffrey W. Bullock, Secretary of State

5778177  8100
SR# 20232176915

Authentication: 203382210
Date: 05-19-23

You may verify this certificate online at corp.delaware.gov/authver.shtml

State of Delaware
Secretary of State
Division of Corporations
Delivered 01:50 PM 07/01/2015
FILED 01:50 PM 07/01/2015
SRV 150999610 - 5778177 FILE

### CERTIFICATE OF TRUST
### OF
### MFRA TRUST 2015-1

THIS CERTIFICATE OF TRUST OF MFRA Trust 2015-1(the "Trust") is being duly executed and filed by the undersigned on behalf of the Trust to form a statutory trust under the Delaware Statutory Trust Act (12 Del. C. §§3801 *et seq.*) (the "Act").

1.  Name.  The name of the statutory trust being formed is MFRA Trust 2015-1.

2.  Trustee.  The name and business address of the trustee of the Trust with a principal place of business in the State of Delaware is as follows:

> Wilmington Trust, National Association
> Rodney Square North
> 1100 N. Market St.
> Wilmington, Delaware 19890
> telecopy number: (302) 636-4140
> telephone number: (302) 651-1000
> Attention: Corporate Trust Administration

IN WITNESS WHEREOF, each of the undersigned has executed this Certificate of Trust in accordance with Section 3811(a) of the Act.

WILMINGTON TRUST, NATIONAL
ASSOCIATION, not in its individual capacity
but solely as Delaware Trustee of the Trust

By: _____
Name:    Adam B. Scozzafava
Title:        Vice President

WILMINGTON TRUST, NATIONAL
ASSOCIATION, not in its individual capacity,
but solely as Certificate Trustee of the Trust

By: _____
Name:    Adam B. Scozzafava
Title:        Vice President

**2**

## Delaware Division of Corporations

# Division of Corporations Survey

401 Federal Street, Suite 4
Dover, DE  19901
**Fax: 302-739-7219**

*On a scale of 1 (unacceptable) to 10 (outstanding), please rate the following questions.*

1. How would you rate the **overall quality** of service provided by the Division of Corporations?
   1   2   3   4   5   6   7   8   9   10   NA

2. How would you rate the **convenience** of our services?
   1   2   3   4   5   6   7   8   9   10   NA

3. How would you rate the **promptness** of service provided?
   1   2   3   4   5   6   7   8   9   10   NA

4. How would you rate the **accessibility** of the Division of Corporations staff?
   1   2   3   4   5   6   7   8   9   10   NA

5. How would you rate the **training** you received from the Division of Corporations staff?
   1   2   3   4   5   6   7   8   9   10   NA

6. How would you rate the **written materials** received from the Division of Corporations? (Were they easy to read and helpful?  i.e., guidelines, forms, DCIS Manual.)
   1   2   3   4   5   6   7   8   9   10   NA

7. Were Division of Corporations **staff attentive and helpful** relative to your comments and concerns?
   1   2   3   4   5   6   7   8   9   10   NA

8. Did Division of Corporations staff display **professionalism & courtesy**?
   1   2   3   4   5   6   7   8   9   10   NA

9. Are Division of Corporations staff **knowledgeable**?
   1   2   3   4   5   6   7   8   9   10   NA

Please let us know about experiences and incidents with the Division of Corporations (i.e., staff, equipment, connectivity, customer service) that impressed or disappointed you.

Comments: _____

_____

Company name and contact information: _____
**If you would prefer, you may take this survey online at
https://surveymonkey.com/r/corporationssurvey**

5/2/23, 9:18 AM

Form T-1 (Wilmington Trust, National Association)

Case 2:21-cv-00278-NT   Document 47-3   Filed 05/26/23   Page 1 of 1   PageID #: 313
EX-25.1 7 d333207dex251.htm FORM T-1 (WILMINGTON TRUST, NATIONAL ASSOCIATION)

https://www.sec.gov/Archives/edgar/data/13239/000119312512166278/d333207dex251.htm

1/40

Exhibit 25.1

File No. _____

**EXHIBIT**

**B**

# SECURITIES AND EXCHANGE COMMISSION

**Washington, D.C. 20549**

## FORM T-1

**STATEMENT OF ELIGIBILITY**

**UNDER THE TRUST INDENTURE ACT OF 1939 OF A**
**CORPORATION DESIGNATED TO ACT AS TRUSTEE**

☐ **CHECK IF AN APPLICATION TO DETERMINE ELIGIBILITY OF A TRUSTEE PURSUANT TO SECTION 305(b)(2)**

# WILMINGTON TRUST, NATIONAL ASSOCIATION

**(Exact name of trustee as specified in its charter)**

**16-1486454**
**(I.R.S. employer identification no.)**

**1100 North Market Street**
**Wilmington, DE 19890**
**(Address of principal executive offices)**

**Robert C. Fiedler**
**Vice President and Counsel**
**1100 North Market Street**
**Wilmington, Delaware 19890**
**(302) 651-8541**
**(Name, address and telephone number of agent for service)**

**HEXION U.S. FINANCE CORP.!**
**(Exact name of obligor as specified in its charter)**

| Delaware | 20-1362484 |
|---|---|
| **(State of incorporation)** | **(I.R.S. employer**
**identification no.)** |

| **180 East Broad Street**
**Columbus, Ohio** | **43215** |
|---|---|
| **(Address of principal executive offices)** | **(Zip Code)** |

Order No: 1309922 (Howe)

### EXHIBIT 'A'

A CERTAIN LOT OR PARCEL OF LAND WITH ANY BUILDINGS THEREON, SITUATED ON THE
DEERWANDER ROAD IN THE TOWN OF HOLLIS, COUNTY OF YORK, STATE OF MAINE AND BEING LOT 1
ON A PLAN ENTITLED, "PLAN OF LAND OF RUSSELL A. & LOIS A. BLACK, 344 DEERWANDER ROAD,
HOLLIS, MAINE", PREPARED BY BH2M ENGINEERS, 28 STATE STREET, GORHAM, MAINE 04038 AND
RECORDED IN YORK COUNTY REGISTRY OF DEEDS ON OCTOBER 25, 2000 IN PLAN BOOK 258, PAGE
41, TO WHICH PLAN AND THE RECORD THEREOF REFERENCE SHOULD BE MADE FOR A MORE
PARTICULAR DESCRIPTION.

BEING THE SAME PREMISES CONVEYED TO HENRY HOWE AND MELANIE HOWE BY VIRTUE OF A DEED
FROM CHRISTOPHER J. COTE AND HEATHER L. COTE, FORMERLY KNOWN AS HEATHER L. KING,
DATED APRIL 20, 2007 AND TO BE RECORDED HEREWITH.

**END OF DOCUMENT**



ATLANTIC TITLE COMPANY
76 ATLANTIC PLACE
SOUTH PORTLAND, ME 04106



EXHIBIT

C

# NOTE

APRIL 20, 2007                 ST. PETERSBURG                 FLORIDA
  [Date]                          [City]                       [State]

        334 DEERWANDER ROAD, HOLLIS CENTER, MAINE 04042
                         [Property Address]

**1.   BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 208,000.00     (this amount is called "Principal"), plus interest, to the order of the Lender.  The Lender is  CHALLENGE FINANCIAL INVESTORS, CORP., A FLORIDA CORPORATION                                            .
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid.  I will pay interest at a yearly rate of      7.250 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.   PAYMENTS**

**(A)   Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  1st  day of each month beginning on  JUNE 1         , 2007  .  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal.  If, on  MAY 1, 2037                              , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  360 CENTRAL AVENUE, SUITE 600, ST. PETERSBURG, FLORIDA 33701

                                    or at a different place if required by the Note Holder.

**(B)   Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 1,418.93         .

**4.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge.  The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note.  If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit;

---

MAINE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3220 1/01                          Page 1 of 3

DocMagic *eForms*  800-649-1362
www.docmagic.com

EXHIBIT
D

and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6.  BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)  Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of     15
calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be
     5.000    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once
on each late payment.

**(B)  Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C)  Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)  No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)  Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees.

**7.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep

the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any interest in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, Lender will not require immediate payment in full if prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement, following the procedures in Section 15. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
MELANIE B. HOWE            -Borrower

_____ (Seal)
HENRY W. HOWE, IV          -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

[Sign Original Only]

PAY TO THE ORDER OF: CitiMortgage, Inc.
WITHOUT RECOURSE

CHALLENGE FINANCIAL INVESTORS CORP., A FLORIDA CORPORATION

BY: _____

ITS: Matthew Richards, V.P.

MAINE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3220 1/01                Page 3 of 3

DocMagic *eRunna* 800-649-1362
www.docmagic.com

Pay to the order of

_____
without recourse on us CitiMortgage, Inc.

_____
Janet Sims, Vice President
CitiMortgage, Inc.

Bk 15139 Pg 0540 - 0556
Received York SS
04/24/2007   10:45AM
Debra L. Anderson
Register of Deeds

After Recording Return To:
CHALLENGE FINANCIAL INVESTORS, CORP.
360 CENTRAL AVENUE, SUITE 600
ST. PETERSBURG, FLORIDA 33701

———————— [Space Above This Line For Recording Data] ————————

# MORTGAGE

MIN:

## WORDS USED OFTEN IN THIS DOCUMENT

Words used in multiple sections of this document are defined below.  Other words are defined in Sections 3, 5, 8, 10, 11, 13, 18, 20 and 21.  Certain rules about the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated  APRIL 20, 2007        .  The term "Security Instrument" includes any Riders recorded with the Security Instrument.
(B)  "Borrower" means  MELANIE B. HOWE AND HENRY W. HOWE, IV, WIFE AND HUSBAND

who sometimes will be called "Borrower" and sometimes simply "I" or "me."  "Borrower" is granting a mortgage under this Security Instrument.  "Borrower" is not necessarily the same as the Person or Persons who signed the Note.  The obligations of Borrowers who did not sign the Note are explained further in Section 13.
(C)  "MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.  FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.
(D)  "Lender" means  CHALLENGE FINANCIAL INVESTORS, CORP.

Lender is a corporation or association which exists under the laws of  FLORIDA
Lender's address is  360 CENTRAL AVENUE, SUITE 600, ST. PETERSBURG, FLORIDA 33701

Except as provided in Sections 13 and 20, the term "Lender" may include any Person who takes ownership of the Note and this Security Instrument.
(E)  "Note" means the note signed by  MELANIE B. HOWE, HENRY W. HOWE, IV

and dated  APRIL 20, 2007        .  The Note shows that its signer or signers owe Lender

MAINE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3020 01/01 (02/01/07)                    Page 1 of 16

DocMagic EForms  800-649-1362
www.docmagic.com


EXHIBIT
E

TWO HUNDRED EIGHT THOUSAND AND 00/100
Dollars (U.S. $ 208,000.00          ) plus interest and promise to pay this debt in Periodic Payments and to pay the debt in full by  MAY 1, 2037                 .

(F)   "Property" means the property that is described below in the section titled "Description of the Property" or any portion of the Property.

(G)   "Sums Secured" means the unpaid balance of amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property."

(H)   "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I)   "Riders" means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider        ☐ Planned Unit Development Rider
☐ Balloon Rider                ☐ Biweekly Payment Rider
☐ 1-4 Family Rider             ☐ Second Home Rider
☐ Condominium Rider            ☒ Other(s) [specify]  —Exhibit A

(J)   "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)   "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)   "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)   "Escrow Items" means those items that are described in Section 3.

(N)   "Miscellaneous Proceeds" means any monies or other thing of value paid by any third party, other than insurance proceeds paid under the coverages described in Section 5, for:  (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property (see Section 11 for an explanation of "Condemnation"); (iii) conveyance in lieu of Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)   "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)   "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of the Security Instrument.

(Q)   "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  When this Security Instrument refers to a requirement or restriction under "RESPA," Lender intends to abide by that requirement or restriction, even if it is not technically applicable to the Loan.

(R)   "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

(S)   "Ground Rents" means amounts I owe if I rented the real property under the buildings covered by this Security Instrument.  Such an arrangement usually takes the form of a long-term "ground lease."

MAINE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3020 01/01 (02/01/07)                    Page 2 of 16                    DocMagic eForms 800-649-1362
www.docmagic.com

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors and assigns), with mortgage covenants, subject to the terms of this Security Instrument, to have and to hold all of the Property to MERS (solely as nominee for Lender and Lender's successors and assigns) and to its successors and assigns, forever. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to Lenders who hold mortgages on real property. Those rights that Applicable Law gives to Lenders who hold mortgages on real property include those rights known as "Mortgage Covenants." I am giving Lender these rights to protect Lender from possible losses that might result if:

    (A) Some or all of the Loan is not paid when due;

    (B) I fail to pay, with interest, any amounts that Lender spends under Section 9 of this Security Instrument to protect the value of the Property and Lender's rights in the Property; or

    (C) I fail to keep any of my other promises and agreements under this Security Instrument. These amounts are the "Sums Secured."

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

    (A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

    (B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

**DESCRIPTION OF THE PROPERTY**

I grant and mortgage to MERS (solely as nominee for Lender and Lender's successors in interests) the Property described in (A) through (G) below:

    (A) The Property which is located at          334 DEERWANDER ROAD
                                                   [Street]

         HOLLIS CENTER            . Maine     04042     ("Property Address"):
             [City]                                [Zip Code]

This Property is in  YORK                        County. It has the following legal description:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF
AS EXHIBIT "A".

    (B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

    (C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

MAINE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3020 01/01 (02/01/07)                   Page 3 of 18               DocMagic eFormes 800-649-1362
                                                                       www.docmagic.com

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that:  (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender.  This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have.  I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country.  It also contains promises and agreements that vary, to a limited extent, in different parts of the country.  My promises and other agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

1.   Borrower's Promise to Pay.  If I signed the Note, I will pay to Lender when due principal and interest due under the Note and any prepayment charges and late charges due under the Note.  Regardless of whether I signed the Note, I will pay funds for Escrow Items as described in Section 3.  I will make all payments in U.S. currency.  If any Borrower makes any Loan payment to Lender with a check or other instrument that is returned for any reason (i.e., the check bounces), except when prohibited by Applicable Law, the Lender may require that any subsequent payment be made by:  (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check (all of which must be drawn on an institution whose deposits are insured by a federal agency, instrumentality, or entity); or (d) Electronic Funds Transfer.  Lender may reasonably specify which payment form is required.

Payments are only considered received when they reach the Lender's address specified in the Note, or a different address specified by Lender under Section 15 of this Security Instrument.  Lender may return any payments or partial payments if the payments are insufficient to bring the Loan current.  Lender may accept any payments or partial payments insufficient to bring the Loan current, but doing so will not affect Lender's rights under this Security Instrument, and Lender may still refuse such late, partial payments in the future.

I agree that no claim or legal right I may have against the Lender will excuse my obligation to make timely payments under the Loan or to keep my other promises in this Security Instrument.

2.   Application of Payments or Proceeds.  Except as otherwise described in this Section 2, all payments accepted and applied by Lender will be applied in the following order of priority:  (a) interest due under the Note; (b) principal due under the Note; (c) amounts payable under Section 3.  Such payments will be applied to each Periodic Payment in the order in which it became due.  Any remaining amounts will be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from me for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent Periodic Payment and the late charge.  If more than one Periodic Payment is outstanding, Lender may apply any payment received from me to the repayment of the

Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary extra payments must be applied first to any charges for making voluntary extra payments and then as described in the Note.

If voluntary extra payments I may make or the crediting of insurance proceeds or Miscellaneous Proceeds to the Note are enough to pay principal ahead of schedule, I must still make my regularly scheduled Periodic Payments under the Note, when scheduled, without any delay or reduction of amount.

3.    **Monthly Payments for Taxes and Insurance.**

(a)    **Borrower's Obligations.** I will pay to Lender all amounts necessary to pay for taxes, assessments, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a loss reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward the payment of the following items, which are called "Escrow Items:"

(1)    The taxes, assessments and other items which under the Applicable Law may be or become superior to this Security Instrument as a lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "lien;"

(2)    The leasehold payment or Ground Rents on the Property (if any);

(3)    The premium for insurance covering the Property required under Section 5;

(4)    The premium for Mortgage Insurance (if any);

(5)    The amount I may be required to pay Lender under Section 10 below instead of the payment of the premium for Mortgage Insurance (if any); and

(6)    If Lender requires, Community Association Dues, Fees, and Assessments.

After signing of the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment that I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

I will promptly send Lender a copy of all notices of amounts to be paid under this Section. I must pay Lender for Escrow Items as part of my regular Periodic Payments, unless Lender excuses this requirement in writing. If Lender excuses me in writing, I will pay all Escrow Items covered by the excuse, directly and on time. I will provide receipts proving my direct payments of Escrow Items on request and in the time period Lender requires. If Lender excuses me from paying Escrow Items to Lender and if I fail to pay any amount due for an Escrow Item directly, Lender may pay such amount under Section 9, and I will be obligated to repay Lender, plus interest at the Note rate. Lender may revoke the excuse regarding any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, I will pay to Lender all Funds (defined below), and in such amounts, that are then required under this Section 3.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called the "Funds." The Funds are pledged as additional security for all Sums Secured.

Lender may, at any time, collect and hold Funds in an amount (1) sufficient to permit Lender to apply the Funds at the time specified under RESPA, but (2) not to exceed the maximum amount a lender can require under RESPA. Lender will estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

(b)    **Lender's Obligation.** Lender will keep the Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Funds. Lender will use the Funds to pay the Escrow Items. Lender will give to me, without charge, an annual accounting of the Funds. That accounting must show all additions to and deductions from the Funds and the reason for each deduction in the manner required by RESPA.

Lender may not charge me for holding or keeping the Funds, or for using the Funds to pay Escrow Items, or for making a yearly analysis of my payment of Funds or for receiving, verifying and totaling assessments and bills.

Maine law requires payment of, and Lender agrees to pay me, interest on the Funds in the manner and amount set forth in Maine law.

(c) Adjustments to the Funds. If there is a surplus of Funds held in escrow, as defined under RESPA, Lender will report to me regarding the excess funds in accordance with RESPA. If there is a shortage or deficiency of Funds held in escrow, as defined under RESPA, Lender will notify me as required by RESPA and I will pay to Lender the amount necessary to make up the shortage or deficiency as required by RESPA, but in no more than 12 monthly payments.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Funds that are then being held by Lender.

4. Borrower's Obligation to Pay Charges, Assessments and Claims. I will pay all taxes, assessments, and any other charges and fines that may be imposed on the Property and that may be or become superior to this Security Instrument. If I am a tenant under a ground lease on the Property, I will also pay Ground Rents or payments due under my ground lease. I will also pay any Community Association Dues, Fees, and Assessments. I will do this either by making the payments to Lender that are described in Section 3 above or, if I am not required to make payments to Lender under Section 3, by making the payments on time to the Person owed them. In this Security Instrument, the word "Person" means any natural person, organization, governmental authority or other party.

I will promptly pay or satisfy all liens against the Property that may be or become superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves the way in which I agree to pay that obligation (but I must fully perform my agreement or this exception does not apply); (b) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced (but this exception ends when the lawsuit ends); or (c) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance; Use of Insurance Proceeds. I will obtain hazard or property insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by: (a) fire; (b) hazards normally covered by "extended coverage" hazard insurance policies; and (c) other hazards for which Lender requires coverage, including floods and earthquakes. The insurance must be in the amounts (including deductibles) and for the periods of time required by Lender. Lender's requirements can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. If I do not maintain any of the insurance coverages described above, Lender may obtain insurance coverage at its option and charge me in accordance with Section 9 below.

Lender is under no obligation to purchase any particular type or amount of coverage. Lender's coverage will protect Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard, or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the Lender's insurance coverage might significantly exceed the cost of insurance that I could have obtained. Any amounts paid by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the Note rate from the date of disbursement and will be payable, with interest, upon notice from Lender to me requesting payment.

Lender may require me to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. I will also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from my objection.

All of the insurance policies required by Lender and renewals of those policies: (a) are subject to Lender's right to disapprove; (b) must include what is known as a "standard mortgage clause" to protect Lender; and (c) must name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewal certificates must be

acceptable to Lender.  Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts for paid premiums and renewal notices that I receive.

If I obtain additional insurance for damage to or destruction of the Property not required by Lender, I will ensure that it contains a standard mortgage clause and names Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender.  If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by any insurance company with regard to the Property is called "Proceeds." The Proceeds will be used to repair or to restore the damaged Property whether or not the underlying insurance was required by Lender unless:  (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Proceeds for that purpose.  If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Proceeds will be used to pay the Sums Secured. If any of the Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Proceeds will be paid to me.  Such insurance proceeds will be applied in the order provided for in Section 2.

During the repair and restoration period, Lender will have the right to hold insurance proceeds until Lender has had an opportunity to inspect the Property to ensure the work has been completed to Lender's satisfaction.  Lender will arrange the inspection promptly.  Lender may disburse Proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender will not be required to pay me any interest or earnings on Proceeds. Fees for public adjusters, or other third parties I retain, will not be paid out of the insurance proceeds and will be my sole obligation.

If I abandon the Property, or if I do not answer, within 30 days a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle any insurance claim.  The 30-day period will begin when the notice is given.

If I abandon the Property, do not answer the notice, or if Lender acquires the Property under Section 22 below or otherwise, all of my rights in all insurance policies covering the Property will belong to Lender, other than the right to any refund of unearned premiums I have paid.  Lender may use the insurance proceeds either to repair or restore the Property or to pay the Sums Secured, whether or not then due.  However, Lender's rights in those Proceeds will not be greater than the Sums Secured.

6.  Occupancy.  I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument.  I will continue to occupy the Property and to use the Property as my principal residence for at least one year.  The one-year period will begin when I first occupy the Property.  However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so.  Lender may not refuse to agree unless the refusal is reasonable.  I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7.  Borrower's Obligation to Maintain and Protect the Property; Inspections.  I will keep the Property in good repair.  I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate or diminish in value due to its condition whether or not I am residing in the Property.  In addition, I will promptly repair the Property, if damaged, to avoid further deterioration or damage unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible.  If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, I will be responsible for repairing or restoring the Property only if Lender has released Proceeds for such purposes.  Lender may disburse Proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, I will not be relieved of my obligation to complete such repair or restoration.

Lender or its agents may enter and inspect the Property at reasonable times.  If it has reasonable cause, Lender may inspect the interior of the improvements on the Property.  Lender will give me notice prior to an interior inspection specifying such reasonable cause.

8.  Borrower's Loan Application.  If, during the application process for the Loan, I made false, misleading, incomplete, or inaccurate statements to Lender about information important to Lender in determining my eligibility

for the Loan ("Material Information"), Lender will treat my actions as a default under this Security Instrument. I will also be in default if I knew about or consented to any other Person, giving false, misleading, incomplete, or inaccurate statements about Material Information to Lender. False, misleading, incomplete, or inaccurate statements about Material Information would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, incomplete, or inaccurate statement of Material Information. Also, if during the loan application process I failed to provide Lender with Material Information, Lender will treat this as a default under this Security Instrument. I will also be in default if I knew about or consented to any other Person failing to provide Lender with Material Information.

9.   **Lender's Right to Protect its Rights in the Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture, for enforcement of a lien which may become superior to this Security Instrument or to enforce laws or regulations); or (c) I abandon the Property, then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding, may include appearing in court, paying reasonable attorneys' fees, paying superior liens on the Property, protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Securing the Property includes, for example, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. I agree that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will also pay interest on those amounts at the Note rate. Interest on each amount will begin on the date that the amount is spent by Lender.

If I do not own but am a tenant on the Property, I will fulfill all my obligations under my lease. I will not give up the rights that I have as a tenant on the Property. I will not cancel or terminate my lease and I will not change or amend that lease unless Lender agrees in writing to the change or amendment. I also agree that, if I subsequently purchase or otherwise become the owner of the Property, my interest as the tenant and my interest as the owner will remain separate unless Lender agrees in writing.

10.  **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage required by Lender lapses or ceases to be available from the original mortgage insurer, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available and if I was required to make separately designated payments toward the premiums for Mortgage Insurance, Lender will establish a loss reserve as a substitute for the Mortgage Insurance coverage. I will pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. Such loss reserve will not be refundable.

Lender will no longer require loss reserve payments if Mortgage Insurance coverage again becomes available and is obtained. In that case, I will once again make Mortgage Insurance premiums. The Mortgage Insurance coverage must be in the amount and for the period of time required by Lender. Lender must approve the insurance company providing the coverage.

I will pay the Mortgage Insurance premiums, or the non-refundable loss reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the loss reserve payments, in the manner described in this Section 10.

This Section 10, and the existence or termination of my obligation to pay Mortgage Insurance premiums or reserve payments, does not affect my obligation to pay interest under the Note at the rate set by the Note.

MAINE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3020 01/01 (02/01/07)                    Page 8 of 16                    DocMagic eForms 800-649-1362
                                                                             www.docmagic.com

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity, may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any- regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. Agreements about Miscellaneous Proceeds and Condemnation of the Property. I assign to Lender all Miscellaneous Proceeds (as defined above in subsection (M) of the section entitled "Words Used Often In This Document"). All Miscellaneous Proceeds will be paid to Lender. Miscellaneous Proceeds include, among other things, awards or claims for damages for Condemnation. A taking of property by any governmental authority by eminent domain is known as "Condemnation."

If the Property is damaged, all Miscellaneous Proceeds will be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During the repair and restoration period, Lender will have the right to hold Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to ensure the work has been completed to Lender's satisfaction. Lender will arrange the inspection promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Miscellaneous Proceeds, Lender will not be required to pay me any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured by this Security Instrument, whether or not then due, with the excess, if any, paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

If all of the Property is taken or destroyed, the Miscellaneous Proceeds will be used to reduce the Sums Secured, whether or not then due. If any of the Miscellaneous Proceeds remain after the Loan has been paid in full, the remaining proceeds will be paid to me.

Unless Lender and I agree otherwise in writing, if only a part of the Property is taken or destroyed, and the fair market value of the Property immediately before the partial taking or destruction either is equal to, or greater than, the amount of the Sums Secured immediately before the partial taking or destruction, then a portion of the Miscellaneous Proceeds will be applied to pay a portion of the Loan. That portion will equal the Miscellaneous Proceeds multiplied by a fraction. That fraction is as follows: (a) the total amount of the Sums Secured immediately before the partial taking or destruction; divided by (b) the fair market value of the Property immediately before the partial taking or destruction. The remainder of the Miscellaneous Proceeds will be paid to me.

Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, if only a part of the Property is taken or destroyed, and the fair market value of the Property immediately before the partial taking or destruction is less than the amount of the Sums Secured immediately before the partial taking or destruction, the proceeds will be used to reduce the Sums Secured whether or not then due.

If I abandon the Property, or if I do not answer within 30 days, a notice from Lender stating that the Opposing Party (as defined below) offered to make an award to settle a claim for damages, Lender has the authority to settle

any claim and collect the proceeds. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a legal action in regard to Miscellaneous Proceeds. Lender may then use the Miscellaneous Proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

I will be in default if any lawsuit or other legal proceeding is brought seeking Forfeiture of the Property or seeking any other significant reduction of Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" means a legal order or judgment that takes away some or all of my rights in the Property, whether in a civil or in a criminal proceeding. I can cure that default by causing the lawsuit or legal proceeding to be dismissed with a legal ruling that, in Lender's reasonable judgment, precludes any Forfeiture or any other significant reduction of Lender's interest in the Property or rights under this Security Instrument. If there is any award or claim for damages for the reduction of Lender's interest or rights, the proceeds of that award or claim are assigned to and will be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations and of Lender's Rights.**

(a) Borrower's Obligations. Lender may allow me, any Borrower, and any Successor in Interest of Borrower to delay or to change the amount of the Periodic Payments of principal and interest due under the Note or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Note and under this Security Instrument.

Lender may allow those delays or changes for a Successor in Interest of Borrower, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against a Successor in Interest of Borrower for not fulfilling obligations under the Note or under this Security Instrument, even if Lender is requested to do so by Borrower or a Successor in Interest of Borrower.

(b) Lender's Rights. Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property; (2) Lender accepts payments from third Persons or Successors in Interest; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make immediate payment in full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower and of Persons Taking over Borrower's Rights or Obligations.** Except as provided in Section 18, any Successor in Interest of Borrower who takes over my rights or obligations under this Security Instrument in writing and who is approved by Lender will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. I will not be released from my liability under this Security Instrument unless Lender agrees to that release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument, except as provided in Section 20.

If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender can agree with the other Borrowers to delay enforcing any of Lender's rights or to modify or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection, and valuation fees. In regard to any other fees, the fact that this Security Instrument does not expressly authorize Lender to charge a specific fee to Borrower should not be interpreted to be a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). My acceptance of any such refund made by direct payment to me will constitute a waiver of any right of action I might have arising out of such overcharge, unless Applicable Law expressly provides otherwise.

15. Notices Required under this Security Instrument. All notices given by me or Lender in connection with this Security Instrument must be in writing. Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless Applicable Law requires use of another method. The notice will be effective or "given" when mailed (or, if not mailed, when actually delivered) to my address, unless Applicable Law requires otherwise. Notice to any one Borrower will constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice will be addressed to me at the address stated in the section above titled "Description of the Property." A notice will be given to me at a different address if I give Lender a notice of my different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time.

Any notice that must be given to Lender under this Security Instrument will be given by delivering or mailing it to Lender's address stated in subsection (C) of the section above entitled "Words Used Often In This Document." A notice will be mailed or delivered to Lender at a different address if Lender gives me a notice of the different address. A notice to Lender required by this Security Instrument is not given until it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Law That Governs this Security Instrument; Interpretation. This Security Instrument is governed by federal law and the law that applies in the place where the Property is located. If any term of this Security Instrument or of the Note conflicts with the Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence will not be construed as a prohibition against agreement by contract.

As used in this Security Instrument: (a) words of the masculine gender will mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular will mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. I will be given one copy of the Note and of this Security Instrument.

18. Agreements about Lender's Rights if the Property is Sold or Transferred. As used in this Section 18, "Interest in the Property" means any interest in the Property recognized or protected by Applicable Law including, for example, those interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, if the intent is the transfer of title by Borrower at a future date to a purchaser.

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any interest in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, Lender will not require immediate payment in full if prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement, following the procedures in Section 15. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required immediate payment in full, I may have the right to have enforcement of this Security Instrument discontinued. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) such other period as Applicable Law might specify for the termination of my right to reinstate; or (c) before a judgment has been entered enforcing this Security Instrument, if I meet the following conditions:

(1) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if immediate payment in full had never been required;

(2) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(3) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(4) I do whatever Lender reasonably requires to assure that Lender's interest in the Property, Lender's rights under this Security Instrument, and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then the Note and this Security Instrument will remain in full effect as if immediate payment in full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required immediate payment in full under Section 18 above.

**20. Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Notice of Grievances.** The Note, or an interest in the Note, together with this Security Instrument, can be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects my Periodic Payments due under the Note and this Security Instrument and also performs other mortgage loan servicing obligations under the Note, this Security Instrument and Applicable Law is called the "Loan Servicer." There can be a change of the Loan Servicer as a result of the sale of the Note; there also can be one or more changes of the Loan Servicer unrelated to a sale of the Note. The law requires that I be given written notice of any change of the Loan Servicer. The written notice must be given in the manner required under RESPA. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA in connection with a notice of transfer of servicing. If the Note is sold, the Purchaser may hire a third party as Loan Servicer. In that case, the Loan Servicer, and not the Note Purchaser, will have mortgage loan servicing obligations to Borrower, except when the Note or Applicable Law expressly requires otherwise.

Lender and I agree that we will not start a lawsuit or legal proceeding or join, or be joined to, an existing lawsuit (such as a class action) that arises from the other party's actions pursuant to the Security Instrument or that claims the other party broke any promise or failed to fulfill any duty under this Security Instrument or relating to the Loan until: (a) the complaining party gives written notice in the manner provided in Section 15 to the other party; (b) the notice clearly describes the promise broken or the duty unfulfilled; and (c) the party receiving the notice is given a reasonable time to correct the problem. This provision does not apply if Applicable Law specifically authorizes a lawsuit by me against Lender under the facts in question and does not permit any cure or correction by Lender. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of default and opportunity to cure given to me pursuant to Section 22 and the demand for immediate payment in full given to Borrower pursuant to Section 18 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection are called "Environmental Laws."

MAINE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3020 01/01 (02/01/07)                    Page 12 of 16                    DocMagic *eForms* 800-649-1362
                                                                www.docmagic.com

Environmental Laws classify certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous or as pollutants or wastes by Environmental Laws and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances."

An "Environmental Cleanup" includes any removal, remedial action or other response as defined in an Environmental Law. An "Environmental Condition" means a condition that can cause or contribute to or otherwise trigger an Environmental Cleanup.

Except as provided below: (a) I will not permit Hazardous Substances to be present on the Property; (b) I will not use or store Hazardous Substances on the Property; and (c) I will not allow anyone else to do so. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. However, I may permit the presence on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property, and I may use or store these small quantities on the Property.

I will not do anything affecting the Property that violates Environmental Laws, and I will not allow anyone else to do so. I will not create an Environmental Condition affecting the Property or permit anyone else to do so or do anything which due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property.

If I know of: (a) any investigation, claim, demand, lawsuit or other action by the government or by a private party involving the Property and any Hazardous Substance or Environmental Laws; (b) any Environmental Conditions, for example, any spill or leak of any Hazardous Substance; or (c) any condition relating to a Hazardous Substance that reduces the value of the Property, I will promptly notify the Lender in writing. If the government or a private party notifies me (or I otherwise learn) that it is necessary to remove a Hazardous Substance affecting the Property or to take other remedial actions, I will promptly take all necessary remedial actions as required by Environmental Laws.

This Section does not require the Lender to conduct or pay for any Environmental Cleanup.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

22. **Lender's Rights If Borrower Fails to Keep Promises and Agreements.** After the occurrence of the conditions stated in subsections (a), (b) and (c) below, Lender may demand that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. If all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may do this without making any further demand for payment. This requirement is called "immediate payment in full."

Lender may also require immediate payment in full if any of the events described in Section 18 occur, even if the conditions stated in subsections (a), (b) and (c) below are not met.

If Lender requires immediate payment in full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "foreclosure and sale." In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs allowed by law. These costs include reasonable attorneys' fees and costs of title evidence.

Lender may require immediate payment in full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument, including the promises to pay when due the Sums Secured;

(b) Lender sends to me, in the manner described in Section 15 above, a notice that states:

(1) The promise or agreement that I failed to keep;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date must be at least 30 days from the date on which the notice is given;

(4)  That if I do not correct the default by the date stated in the notice, Lender may require immediate payment in full, and Lender or another Person may acquire the Property by means of foreclosure and sale;

(5)  That if I meet the conditions stated in Section 19 above, I will have the right to have Lender's enforcement of this Security Instrument discontinued and to have the Note and this Security Instrument remain fully effective as if immediate payment in full had never been required; and

(6)  That I have the right in any lawsuit for foreclosure and sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c)  I do not correct the default stated in the notice from Lender by the date stated in that notice.

23.  **Lender's Obligation to Discharge this Security Instrument.**  When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering to the appropriate Registry of Deeds a discharge or release stating that this Security Instrument has been satisfied.  I will not be required to pay Lender for the discharge, but I will pay all costs of recording the discharge in the proper official records (unless those costs were collected in advance of my loan closing).

24.  **Payment During Foreclosure.**  I agree that Lender may accept rents from the Property, hazard insurance proceeds, condemnation awards, and any other monies produced by the Property or paid by me, even though Lender has demanded immediate payment in full and begun foreclosure and sale under Section 22 above.  Lender may use such monies to pay off any part of the Sums Secured without affecting Lender's right to continue foreclosure and sale.

25.  **Riders to this Security Instrument.**  The promises and agreements of each Rider are incorporated as a part of this Security Instrument.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in this Security Instrument and to the Rider signed by me and recorded with it.

_____ (Seal)
MELANIE B. HOWE                -Borrower

_____ (Seal)
HENRY W. HOWE, IV              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

Witness:

Witness:

MAINE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3020 01/01 (02/01/07)                    Page 15 of 16

DocMagic EForms 800-649-1362
www.docmagic.com

——————— [Space Below This Line For Acknowledgment] ———————

State of Maine

County of _____ York _____

The foregoing instrument was acknowledged before me this __20th day of April, 2007__

by __MELANIE B. HOWE AND HENRY W. HOWE, IV__

and acknowledged the foregoing instrument to be Their free act and deed.

Notary Public, State of Maine

Connie Jo Minervino
Notary Public, Maine
My Commission Exp 12/23/07
(Print or Type Name)

My commission expires: _____

Order No: 1309922 (Howe)

## EXHIBIT 'A'

A CERTAIN LOT OR PARCEL OF LAND WITH ANY BUILDINGS THEREON, SITUATED ON THE DEERWANDER ROAD IN THE TOWN OF HOLLIS, COUNTY OF YORK, STATE OF MAINE AND BEING LOT 1 ON A PLAN ENTITLED, "PLAN OF LAND OF RUSSELL A. & LOIS A. BLACK, 344 DEERWANDER ROAD, HOLLIS, MAINE", PREPARED BY BH2M ENGINEERS, 28 STATE STREET, GORHAM, MAINE 04038 AND RECORDED IN YORK COUNTY REGISTRY OF DEEDS ON OCTOBER 25, 2000 IN PLAN BOOK 258, PAGE 41, TO WHICH PLAN AND THE RECORD THEREOF REFERENCE SHOULD BE MADE FOR A MORE PARTICULAR DESCRIPTION.

BEING THE SAME PREMISES CONVEYED TO HENRY HOWE AND MELANIE HOWE BY VIRTUE OF A DEED FROM CHRISTOPHER J. COTE AND HEATHER L. COTE, FORMERLY KNOWN AS HEATHER L. KING, DATED APRIL 20, 2007 AND TO BE RECORDED HEREWITH.

# END OF DOCUMENT



ATLANTIC TITLE COMPANY
76 ATLANTIC PLACE
SOUTH PORTLAND, ME 04106

-----------------[Space Above This Line for Recording Data]-----------------

# LOAN MODIFICATION AGREEMENT
## (Providing for Step Interest Rate)

This Loan Modification Agreement ("Agreement"), made July 20, 2010, between MELANIE B. HOWE AND HENRY W HOWE, IV , WIFE AND HUSBAND,  ("Borrower") whose address is 334 DEERWANDER RD, HOLLIS CENTER, ME  04042-3613 and CitiMortgage, Inc. ("Lender"), whose address is 1000 Technology Drive, O'Fallon, MO  63368-2240, and Mortgage Electronic Registration Systems, Inc., whose address is P.O. Box 2026, Flint, MI 48501-2026 ("Mortgagee"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated 04/20/07, and recorded on  na  in Book or Liber na, at page(s) na, or Document No. na, of the Recorders Office of the Records of YORK COUNTY, Maine, and (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at 334 DEERWANDER ROAD, HOLLIS CENTER, ME  04042, the real property described being set forth in the LEGAL DESCRIPTION.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.  As of 08/01/10, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $224,186.62, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized. (The current unpaid principal balance now due and owing of $203,256.84, plus the total capitalized amount of $20,929.78 equal the Unpaid Principal Balance of $224,186.62.)

2.  Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance for the first five years at the yearly rate of 2.000%, from 08/01/10 and Borrower promises to pay monthly payments of principal and interest in the amount of $828.64, beginning on 09/01/10. During the sixth year, interest will be charged at the yearly rate of 3.000%, from 08/01/15, and Borrower shall pay monthly payments of principal and interest in the amount of $927.08 beginning on 09/01/15. During the seventh year, interest will be charged at the yearly rate of 4.000%, from 08/01/16, and Borrower shall pay monthly payments of principal and interest in the amount of $ 1,028.22 beginning on 09/01/16. During the eighth year and continuing thereafter until the Maturity date (as hereinafter defined), interest will be charged at the yearly rate of 4.375%, from 08/01/17, and Borrower shall pay monthly payments of principal and interest in the amount of $1,066.28 beginning on 09/01/17 and shall continue the monthly payments thereafter on the same day of each succeeding month until principal and interest are paid in full.  If on 08/01/40 (the "Maturity Date"), Borrower still owes amounts under the Note and  Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

LOAN MODIFICATION AGREEMENT--Single Family--Fannie Mae Uniform Instrument        Form 3162  (rev. 1/09)
Page 1 of 5                                                                       MODMERS2.STP (10/2006)



**EXHIBIT**

**F**

Borrower will make such payments at CitiMortgage, Inc., 1000 Technology Drive, O'Fallon, MO 63368-2240 or at such other place as Lender may require.

3.  If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

(a)  all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider.  By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

(b)  all terms and provisions of any adjustable rate rider or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.  Borrower understands and agrees that:

(a)  All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)  All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law.  Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)  All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

LOAN MODIFICATION AGREEMENT--Single Family--Fannie Mae Uniform Instrument     Form 3162  (rev. 1/09)
Page 2 of 5                                                                                                              MODMERS2.STP (10/2006)

(e)  Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

_Henry W Howe IV_       _7|24|2010_
HENRY W HOWE          Date

_Melanie B. Howe_       _7|24|2010_
MELANIE B HOWE       Date

WITNESS
SIGNATURE: _____    WITNESS SIGNATURE: _____
PRINT NAME: _Jimmy L. Wood_    PRINT NAME: _____

WITNESS
SIGNATURE: _Ada L. Wood_    WITNESS SIGNATURE: _____
PRINT NAME: _Ada L. Wood_    PRINT NAME: _____

**Mortgage Electronic Registration Systems, Inc. ("MERS"), Mortgagee**

By: _____
Title: Vice President
_7|27|10_

Prepared By: CitiMortgage, Inc.
5280 Corporate Drive
Frederick, MD 21703
Betty Clark

LOAN MODIFICATION AGREEMENT--Single Family--Fannie Mae Uniform Instrument      Form 3162  (rev. 1/09)
Page 3 of 5          MODMERS2.STP (10/2006)

-----------------[Space Below This Line for Acknowledgments]------------------

State of _Maine_     )
                     ) SS
County of _York_     )

    On this _24_ day of _July_, _2010_, before me personally appeared <u>HENRY W HOWE</u>, to me known or proved to be the person(s) described in and who executed the foregoing instrument, and acknowledged that <u>HE/SHE/THEY</u> executed the same as <u>HIS/HER/THEIR</u> free act and deed.

    **IN TESTIMONY WHEREOF,** I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.

Notary Public _____

                                              SEAN P. McQUAIDE
                                              Notary Public, Maine
                                              My Commission Expires October 31, 2010

My Commission Expires: _____

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

State of _Maine_     )
                     ) SS
County of _York_     )

    **On this** _24_ day of _July_, _2010_, before me personally appeared <u>MELANIE B HOWE</u>, to me known or proved to be the person(s) described in and who executed the foregoing instrument, and acknowledged that <u>HE/SHE/THEY</u> executed the same as <u>HIS/HER/THEIR</u> free act and deed.

    **IN TESTIMONY WHEREOF,** I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written.

Notary Public _____

                                              SEAN P. McQUAIDE
                                              Notary Public, Maine
                                              My Commission Expires October 31, 2010

My Commission Expires: _____

LOAN MODIFICATION AGREEMENT--Single Family--Fannie Mae Uniform Instrument          Form 3162 (rev. 1/09)
Page 4 of 5                                                                         MODMERS2.STP (10/2006)

**After Recording Return To:**
**NATIONSTAR MORTGAGE**
**LLC**
**350 HIGHLAND DRIVE**
**LEWISVILLE, TX 75067**

**This Document Prepared By:**
**NATIONSTAR MORTGAGE**
**LLC**
**350 HIGHLAND DRIVE**
**LEWISVILLE, TX 75067**

_____ [Space Above This Line For Recording Data] _____

| | Loan No▮ |
| Original Loan Amount: **$208,000.00** | Investor Loan No: ▮ |
| | MIN Number: ▮ |

# LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement"), made this **21st** day of **July, 2011**, between **HENRY HOWE and MELANIE HOWE** ("Borrower") and **NATIONSTAR MORTGAGE LLC** ("Lender"), and Mortgage Electronic Registration Systems, Inc. ("MERS"), and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS, ("Mortgagee"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated _____, ____ and recorded in **Book/Liber N/A**, of the **Official Records (Name of Records) of** _____ **County, ME (County and State, or other Jurisdiction)** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at
**334 DEERWANDER ROAD, HOLLIS CENTER, ME 04042,**
(Property Address)
the real property described being set forth as follows:

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **July 1, 2011**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$223,204.66**, consisting of the unpaid amount(s) loaned to Borrower by



EXHIBIT
G

Lender plus any interest and other amounts capitalized.

2.  Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance for the first five years at the yearly rate of **2.000%** from **July 01, 2011**, and Borrower promises to pay monthly payments of principal and interest in the amount of U.S. **$764.98** beginning on the **1st** day of **August, 2011**. During the sixth year, interest will be charged at the yearly rate of **3.000%** from **July 01, 2016**, and Borrower shall pay monthly payments of principal and interest in the amount of **$867.06** beginning on the **1st** day of **August, 2016**. During the seventh year, interest will be charged at the yearly rate of **4.000%** from **July 01, 2017**, and Borrower shall pay monthly payments of principal and interest in the amount of **$973.04** beginning on the **1st** day of **August, 2017**. During the eighth year and continuing thereafter until the Maturity Date (as hereinafter defined), interest will be charged at the yearly rate of **4.500%** from **July 01, 2018**, and Borrower shall pay monthly payments of principal and interest in the amount of **$1,026.87** beginning on the **1st** day of **August, 2018** and will continue to make monthly payments on the same day of each succeeding month until principal and interest are paid in full. If on **November 1, 2044** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3.  If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

    (a)   all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

     (b)    all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.   Borrower understands and agrees that:

     (a)    All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

     (b)    All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

     (c)    Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

     (d)    All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

     (e)    Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

     (f)    "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. **MERS is the Mortgagee, of record under the Security Instrument and this Agreement.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

6.  By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

7.  This Agreement modifies an obligation secured by an existing security instrument recorded in County, ME, upon which all recordation taxes have been paid.  As of the date of this agreement, the unpaid principal balance of the original obligation secured by the existing security instrument is $220,793.23.  The principal balance secured by the existing security instrument as a result of this Agreement is $223,204.66, which amount represents the excess of the unpaid principal balance of this original obligation.

In Witness Whereof, the Lender and I have executed this Agreement.

_____ (Seal)
**HENRY HOWE** -Borrower

_____ (Seal)
**MELANIE HOWE** -Borrower

_____ [Space Below This Line For Acknowledgments] _____

State of Maine

County of York _____

The foregoing instrument was acknowledged before me on July 30, 2011
by Tracey Smith _____

_____
(Signature of person taking acknowledgment)

Notary
(Title or rank)

My commission expires: Nov. 4, 2016



TRACEY L. SMITH
Notary Pubic, Maine
My Commission Expires November 4, 2016

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument          Form 3179 1/01 (rev. 01/09)
8300 03/11                                                                                                          *(page 4 of 6)*

**NATIONSTAR MORTGAGE LLC**

By: _____ (Seal)
-Lender

Name: Brady Niehaus

Title: Representative   8/23/11

_____ [Space Below This Line For Acknowledgments] _____

State of _Texas_

County of _Denton_

The foregoing instrument was acknowledged before me on August 23, 2011
by Brady Niehaus _____, the representative _____ of
Nationstar Mortgage _____.

_____
(Signature of person taking acknowledgment)

KERI JONKER
Notary Public, State of Texas
My Commission Expires
October 24, 2012

_____
(Title or rank)

My commission expires: October 24, 2012

Keenan Cain   AVP   8/23/11

_____
Mortgage Electronic Registration Systems, Inc - Nominee for Lender

_____ [Space Below This Line For Acknowledgments] _____

State of _Texas_____

County of _Denton_____

The foregoing instrument was acknowledged before me on _August 23, 2011_____
by _Keenan Cain_____, the _AVP_____ of
_Nationstar mortgage_____.

_____
(Signature of person taking acknowledgment)

KERI JONKER
Notary Public, State of Texas
My Commission Expires
October 24, 2012

_____
(Title or rank)

My commission expires: _October 24, 2012___

Loan No.

Borrower: HENRY HOWE and MELANIE HOWE

# COMPLIANCE AGREEMENT

In consideration of Nationstar Mortgage LLC ("Lender") extending funds (the "Loan"), in connection with the closing of the property located at 334 DEERWANDER ROAD, HOLLIS CENTER, ME 04042 (the "Closing"), the undersigned ("Borrower") agrees, upon request of Lender, its successors or assigns ("Note Holder"), or upon request of any person acting on behalf of Note Holder, to fully cooperate with Note Holder or such person to correct any inaccurate term or provision of, mistake in, or omission from any document associated with the Closing. Borrower further agrees to execute such documents or take such action as Note Holder or such person acting on behalf of Note Holder reasonably may deem necessary (including without limitation the correction of any such inaccuracy, mistake, or omission) as will enable Note Holder to sell, convey, seek guaranty of, or market the Loan to any entity, including without limitation an Investor, the Federal National Mortgage Association, the Government National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Department of Housing and Urban Development, the Department of Veterans Affairs, or any bonding authority.

Borrower further agrees to comply with any such request within a reasonable period of time as specified by Note Holder or by such person acting on behalf of Note Holder. Failure to comply shall constitute default under the Note and Security Instrument that evidence the Loan, and Note Holder may pursue its available remedies.

BY SIGNING BELOW BORROWER ACKNOWLEDGES THAT BORROWER FULLY UNDERSTANDS THIS COMPLIANCE AGREEMENT OR OTHERWISE HAS SOUGHT THE ADVISE OF COUNSEL.

Borrower - HENRY HOWE

Date   7/30/11

Borrower - MELANIE HOWE

Date   7/30/11

TRACEY L. SMITH
Notary Public, Maine
My Commission Expires November 4, 2016

Tracey Smith ( 7/30/11 ) For Henry Howe



EXHIBIT

H

BK 16559 P9 45
Received York SS
03/25/2013 10:06AM
Debra L. Anderson
Register of Deeds

Recording Requested By:
Nationstar Mortgage

When Recorded Return To:

DOCUMENT ADMINISTRATION
Nationstar Mortgage
2617 COLLEGE PARK
SCOTTSBLUFF, NE 69361

## CORPORATE ASSIGNMENT OF MORTGAGE

York, Maine
SELLER'S SERVICING #:
SELLER'S LENDER ID#: 255        "HOWE"
POOL #: 255

MERS #:

Date of Assignment: March 1st, 2013
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR CHALLENGE FINANCIAL INVESTORS, CORP., ITS SUCCESSORS AND/OR ASSIGNS at P.O. BOX 2026, FLINT, MI 48501
Assignee: NATIONSTAR MORTGAGE LLC at 350 HIGHLAND DRIVE, LEWISVILLE, TX 75067

Executed By: HENRY B. HOWE AND MELANIE W. HOWE, IV, WIFE AND HUSBAND To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR CHALLENGE FINANCIAL INVESTORS, CORP.
Date of Mortgage: 04/20/2007 Recorded: 04/24/2007 in Book/Reel/Liber: 15139 Page/Folio: 0540 as Instrument No.: 2007019481 In the County of York, State of Maine.

Property Address: 334 DEERWANDER ROAD, HOLLIS CENTER, ME 04042

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $208,000.00 with interest, secured thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

   TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

   MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR CHALLENGE FINANCIAL INVESTORS, CORP., ITS SUCCESSORS AND/OR ASSIGNS
On

By:
REGINA LASHLEY, Assistant Secretary

STATE OF Nebraska
COUNTY OF Scotts Bluff

On _____, before me, IRENE GUERRERO, a Notary Public in and for Scotts Bluff in the State of Nebraska, personally appeared REGINA LASHLEY, Assistant Secretary, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

IRENE GUERRERO
Notary Expires: 09/14/2013

GENERAL NOTARY - State of Nebraska
IRENE GUERRERO
My Comm. Exp. Sept. 14, 2013

(This area for notarial seal)

*OA*IGA*NATN*03/01/2013 01:42:43 PM* NATTO1NATNA_____MEYORI_____ESTATE_MORT_ASSIGN_ASSN *LPNATN*



EXHIBIT
I

BK 16893  PGS 631 - 637        09/22/2014 09:46:28 AM
INSTR # 2014038790            DEBRA ANDERSON
RECEIVED YORK SS             REGISTER OF DEEDS



Return to:
Document Recording Services
P.O. Box 3008
Tallahassee, FL 32315-3008

**This Document Prepared By:**
**NATIONSTAR MORTGAGE LLC**
**350 HIGHLAND DRIVE**
**LEWISVILLE, TX 75067**
**Tatiana Vakidis**

_____ [Space Above This Line For Recording Data] _____

| | |
|---|---|
| Original Recording Date: **April 24, 2007** | Loan No: |
| Original Loan Amount: **$208,000.00** | Investor Loan No: |
| New Money: **$20,895.40** | MIN Number: |

## LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 12th day of August, 2014, between **HENRY HOWE and MELANIE HOWE** ("Borrower") and **NATIONSTAR MORTGAGE LLC,** whose **address is 350 HIGHLAND DRIVE, LEWISVILLE, TX 75067** ("Lender"), and Mortgage Electronic Registration Systems, Inc. ("MERS"), and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS, ("Mortgagee"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated **April 20, 2007** and recorded in Book/Liber 15139, Page 0540, Instrument No: 2007019461,  of the **Official Records (Name of Records) of YORK County, ME (County and State, or other Jurisdiction)** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

### 334 DEERWANDER ROAD, HOLLIS CENTER, ME 04042,
(Property Address)

the real property described being set forth as follows:

**See Exhibit "A" attached hereto and made a part hereof;**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument          Form 3179 1/01 (rev. 06/12)
8300b 01/14                                                                                                          (page 1 of 6)



**EXHIBIT**
**J**

1.  As of **August 1, 2014**, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. **$237,329.72**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2.  **$23,199.73** of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and Borrower will not pay interest or make monthly payments on this amount.  The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is **$214,129.99**.  Interest will be charged on the Interest Bearing Principal Balance at the yearly rate of **4.625%**, from **August 1, 2014**. Borrower promises to make monthly payments of principal and interest of U.S. **$979.92**, beginning on the **1st** day of **September, 2014**, and continuing thereafter on the same day of each succeeding month until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The yearly rate of **4.625%** will remain in effect until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full.  The new Maturity Date will be **August 1, 2054**.

3.  Borrower agrees to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and Security Instrument by the earliest of:  (i) the date Borrower sells or transfers an interest in the Property, (ii) the date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

4.  If Borrower makes a partial prepayment of Principal, Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

5.  If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

6.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

    (a)   all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider.  By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may

have otherwise been entitled; and

(b)    all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

7.    Borrower understands and agrees that:

(a)    All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)    All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)    Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)    All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)    Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f)    "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. **MERS is the Mortgagee, of record under the Security Instrument and this Agreement.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

8.    In the event that I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the loan documents and did not reaffirm the mortgage debt under applicable law, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

9.    By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

10.    This Agreement modifies an obligation secured by an existing security instrument recorded in YORK

County, ME, upon which all recordation taxes have been paid. As of the date of this agreement, the unpaid principal balance of the original obligation secured by the existing security instrument is $216,434.32. The principal balance secured by the existing security instrument as a result of this Agreement is $237,329.72, which amount represents the excess of the unpaid principal balance of this original obligation.

In Witness Whereof, the Lender and I have executed this Agreement.

_____ (Seal)
HENRY HOWE -Borrower

_____ (Seal)
MELANIE HOWE -Borrower

_____ [Space Below This Line For Acknowledgments] _____

State of Maine

County of ____YORK_____

The foregoing instrument was acknowledged before me, a Notary Public on

_____8/26/2014_____ by HENRY HOWE and MELANIE HOWE.     **SEAL**

____Martha E Huff_____
(Signature of person taking acknowledgment)

____NOTARY PUBLIC_____
(Title or rank)

My commission expires: May 16, 2020

MARTHA E. HUFF
Notary Public, Maine
My Commission Expires May 16, 2020

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument     Form 3179 1/01 (rev. 06/12)
8300b 01/14                                                                   (page 4 of 6)

BK 16893     Page 635     INSTR# 2014038790
Case 2:21-cv-00278-NT   Document 63-21   Filed 09/03/23   Page 64 of 121   PageID #: 937
Case 2:21-cv-00278-NT   Document 47-11   Filed 05/26/23   Page 5 of 7   PageID #: 351

**NATIONSTAR MORTGAGE LLC**

By: _____ (Seal) - Lender
Name: _____Krista Moore_____
Title: _____Assistant Secretary___

_____8-29-14_____
Date of Lender's Signature
_____ [Space Below This Line For Acknowledgments] _____

The State of TX

County of ____Denton_____

Before me ____Bianca Hockensmith_____ Notary Public (name/title of officer) on this day personally appeared

____Krista Moore_____, the __Assistant Secretary_____ of

_____Nationstar Mortgage LLC_____.

known to me (or proved to me on the oath of _____ or through _____
(description of identity card or other document)) to be the person whose name is subscribed to the
foregoing instrument and acknowledged to me that he executed the same for the purposes and
consideration therein expressed.

Given under my hand and seal of office this __29__ day of __August__, A.D., __2014__.

_____
Signature of Officer

_____Notary Public_____
Title of Officer

My Commission expires : __3/2/16___

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument                Form 3179 1/01 (rev. 06/12)
8300b 01/14                                                                                                        (page 5 of 6)

8·29-14   Krista Moore
Mortgage Electronic Registration Systems, Inc - Nominee for Lender

Title: Assistant Secretary

_____ [Space Below This Line For Acknowledgments] _____

The State of TX

County of ___Denton___                        Notary Public

Before me ____Bianca Hockensmith_____ (name/title of officer) on this day personally appeared

_____Krista Moore_____, the ___Assistant Secretary___ of

____Mortgage Electronic Registration System, Inc._____

known to me (or proved to me on the oath of _____ or through _____ (description of identity card or other document)) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this ___27___ day of ___August___, A.D. __2014__.

                                             _____
                                             Signature of Officer
                                             Notary Public

                                             _____
My Commission expires : ___3/2/16___          Title of Officer

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument          Form 3179 1/01 (rev. 06/12)
8300b 01/14                                                                        (page 6 of 6)

# Exhibit "A"

**Loan Number:** ███████

**Property Address: 334 DEERWANDER ROAD, HOLLIS CENTER, ME 04042**

**Legal Description:**

A CERTAIN LOT OR PARCEL OF LAND WITH ANY BUILDINGS THEREON, SITUATED ON THE DEERWANDER ROAD IN THE TOWN OF HOLLIS, COUNTY OF YORK, STATE OF MAINE AND BEING LOT 1 ON A PLAN ENTITLED, PLAN OF LAND OF RUSSELL A. AND LOIS A. BLACK, 344 DEERWANDER ROAD, HOLLIS, MAINE, PREPARED BY BH2M ENGINEERS, 28 STATE STREET, GORHAM, MAINE 04038 AND RECORDED IN YORK COUNTY REGISTRY OF DEEDS ON OCTOBER 25, 2000 IN PLAN BOOK 258, PAGE 41, TO WHICH PLAN AND THE RECORD THEREOF REFERENCE SHOULD BE MADE FOR A MORE PARTICULAR DESCRIPTION.





*Page 1 of 1*

Recording Requested By:
Nationstar Mortgage

When Recorded Return To:

DOCUMENT ADMINISTRATION
Nationstar Mortgage
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019

BK 17411 PGS 360 - 360   01/26/2017 12 15 11 PM
INSTR # 2017003798   DEBRA ANDERSON
RECEIVED YORK SS   REGISTER OF DEEDS

*Handwritten in left margin:* Doonan, Graves, & Longoria, 100 Cummings Center - Steass D, Beverly, MA
1897



### CORPORATE ASSIGNMENT OF MORTGAGE

York, Maine
SELLER'S SERVICING #   "HOWE"

Date of Assignment: January 17th, 2017
Assignor: NATIONSTAR MORTGAGE LLC at 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019
Assignee: MTGLQ INVESTORS, L.P at 200 WEST ST, NEW YORK, NY 10282-2102

Executed By: MELANIE B. HOWE AND HENRY W. HOWE, IV, WIFE AND HUSBAND  To: MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR CHALLENGE FINANCIAL INVESTORS,
CORP.
Date of Mortgage: 04/20/2007 Recorded: 04/24/2007 in Book/Reel/Liber: 15139 Page/Folio: 0540 as Instrument
No.: 2007019461  In the County of York, State of Maine.

Property Address: 334 DEERWANDER ROAD, HOLLIS CENTER, ME 04042

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $208,000.00 with interest, secured thereby, and the full benefit of all the
powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys
unto the said Assignee, the Assignor's interest under the Mortgage.

   TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

   NATIONSTAR MORTGAGE LLC
On January 17th, 2017

By:
MOHAMED HAMEED, Assistant Secretary

STATE OF Texas
COUNTY OF Dallas

On January 17th, 2017, before me, COLLEEN BARNETT, a Notary Public in and for Dallas in the State of Texas,
personally appeared MOHAMED HAMEED, Assistant Secretary, personally known to me to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

COLLEEN BARNETT
Notary Expires: 11/30/2019 #130453613

COLLEEN BARNETT
Notary Public, State of Texas
Comm. Expires 11-30-2019
Notary ID 130453613

(This area for notarial seal)

I HEREBY CERTIFY THIS IS A TRUE
AND CORRECT COPY OF THE
ORIGINAL FILED IN YORK COUNTY
MAINE REGISTRY OF DEEDS
ATTEST: Nancy E Hammond
REGISTRAR
DATED: 02/01/2022

"PA"PANATN"01/17/2017 09 18:57 AM" NATT01NATN   STATE_MORT_ASSIGN_ASSN  "BHENATT"



EXHIBIT
K

YORK COUNTY, NANCY A. ANDERSON, REGISTER OF DEEDS
E-RECORDED
Bk 17448   PG 478
04/06/2017 09:01:59 AM
Pages 2
Receipt # 1711502

Prepared By and Return To:
Heather Neal
Collateral Department
Meridian Asset Services, Inc.
780 94th Avenue N., Suite 102
St. Petersburg, FL 33702
(727) 497-4650

Space above for Recorder's use

Loan No:
Svcr Ln No
GS ID:

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **NATIONSTAR MORTGAGE LLC**, whose address is **8950 CYPRESS WATERS BLVD., COPPELL, TX 75019**, (ASSIGNOR), does hereby grant, assign and transfer to **MTGLQ INVESTORS, L.P.**, whose address is **6011 CONNECTION DRIVE, 5TH FLOOR, IRVING, TX 75039**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: 4/20/2007
Original Loan Amount: **$208,000.00**
Executed by (Borrower(s)): **MELANIE B. HOWE AND HENRY W. HOWE, IV**
Original Lender: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR CHALLENGE FINANCIAL INVESTORS CORP., ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Mortgage Book/Liber/Volume 15139, Page 540,
Document/Instrument No: 2007019461 in the Recording District of YORK, ME, Recorded on 4/24/2007.

Property more commonly described as: 334 DEERWANDER ROAD, HOLLIS CENTER, MAINE 04042

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: _____ **JAN 1 9 2017** _____

**NATIONSTAR MORTGAGE LLC, BY MTGLQ INVESTORS, L.P., ITS ATTORNEY-IN-FACT**

By: **JAMES W MOFFETT**
Title: **VICE PRESIDENT**

Witness Name: **Edward Chavez**

FNMA NPL

EXHIBIT
L

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of **TEXAS**
County of **DALLAS**

On **JAN 1 9 2017**, before me, **E'meraude A. Rash**, a Notary Public, personally appeared **JAMES W MOFFETT, VICE PRESIDENT** of/for **MTGLQ INVESTORS, L.P., AS ATTORNEY-IN-FACT FOR NATIONSTAR MORTGAGE LLC**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **TEXAS** that the foregoing paragraph is true and correct. I further certify JAMES W MOFFETT, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): **E'meraude A. Rash**
My commission expires: **NOV 1 8 2019**

E'MERAUDE A. RASH
Notary Public State of Texas
My Commission # 130444321
My Comm. Exp. November 18, 2019

I HEREBY CERTIFY THIS IS A TRUE AND CORRECT COPY OF THE ORIGINAL FILED IN YORK COUNTY MAINE REGISTRY OF DEEDS

ATTEST: Nancy E Hammond
REGISTRAR

DATED: 02/01/2022

**FNMA NPL5**

BK: 17448  PG: 479

NANCY E HAMMOND, REGISTER OF DEEDS
E-RECORDED   **Bk 19113  PG 486**
Instr # 2022039727
09/15/2022  03:06:27 PM
Pages 2      YORK CO

Prepared By and Return To:
Kathleen Collins
Collateral Department
Meridian Asset Services, Inc.
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650



Space above for Recorder's use

## RESCISSION OF ASSIGNMENT OF MORTGAGE

Through inadvertence and mistake the undersigned executed an Assignment of Mortgage referenced below in the official records of said county. The undersigned state that they hereby INVALIDATE and NULLIFY the assignment to the same extent and effect as though the assignment had never been issued and recorded.

| | |
|---|---|
| Filed of Record: | 4/6/2017 In Book/Liber/Volume 17448, Page 478, |
| | Document/Instrument No: 20170012677 in the Recording District of York, ME |
| Assignor: | NATIONSTAR MORTGAGE LLC |
| Assignee: | MTGLQ INVESTORS, L.P. |

The Assignment of Mortgage refers to the following described Mortgage:

| | |
|---|---|
| Borrower(s): | MELANIE B. HOWE & HENRY W. HOWE, IV |
| Lender: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR CHALLENGE FINANCIAL INVESTORS CORP., ITS SUCCESSORS AND ASSIGNS |
| Filed of Record: | 4/24/2007 in Book/Liber/Volume 15139, Page 540, Instrument No: 2007019461 in the Recording District of YORK, ME. |

Property more commonly described as: **334 DEERWANDER ROAD, HOLLIS CENTER, MAINE 04042**

FNMA NPL5

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: **DEC 0 5 2017**

NATIONSTAR MORTGAGE LLC, BY MTGLQ INVESTORS, L.P., ITS ATTORNEY-IN-FACT

By: **TODD BERGER**
Title: **VICE PRESIDENT**

Witness Name: **Elizabeth T. Perez**

> A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of   **TEXAS**
County of   **DALLAS**

On **DEC 0 5 2017**, before me, **Danielle Bolin**, a Notary Public, personally appeared **TODD BERGER, VICE PRESIDENT of/for MTGLQ INVESTORS, L.P., AS ATTORNEY-IN-FACT FOR NATIONSTAR MORTGAGE LLC**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **TEXAS** that the foregoing paragraph is true and correct. I further certify **TODD BERGER**, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name): **Danielle Bolin**
My commission expires: **NOV 1 1 2019**

DANIELLE BOLIN
Notary Public, State of Texas
Comm. Expires 11-11-2019
Notary ID 130437026

FNMA NPL5

E-RECORDED   Bk 17568  PG 206
DEBRA L. ANDERSON, REGISTER OF DEEDS
Instr# 2017041869
09/20/2017  03:34:40 PM
Pages 2          YORK CO

Prepared By and Return To:
Paul Pugzlys
Collateral Department
Meridian Asset Services, Inc.
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

Space above for Recorder's use

Loan No:
Sver Ln No:
GS ID:

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **MTGLQ INVESTORS, L.P.**, whose address is **6011 CONNECTION DRIVE, IRVING, TX 75039**, (ASSIGNOR), does hereby grant, assign and transfer to **WILMINGTON TRUST, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE OF MFRA TRUST 2015-1**, whose address is C/O M F RESIDENTIAL ASSETS I, LLC **350 PARK AVENUE, 20TH FLOOR, NEW YORK, NEW YORK 10022**, (ASSIGNEE): its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: 4/20/2007
Original Loan Amount: $208,000.00
Executed by (Borrower(s)): **MELANIE B. HOWE & HENRY W. HOWE, IV**
Original Lender:  **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR CHALLENGE FINANCIAL INVESTORS CORP., ITS SUCCESSORS AND ASSIGNS**
Filed of Record:  In Mortgage Book/Liber/Volume 15139, Page 540,
Document/Instrument No: 2007019461 in the Recording District of YORK, ME, Recorded on 4/24/2007.

Property more commonly described as: 334 DEERWANDER ROAD, HOLLIS CENTER, MAINE 04042

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date:    **SEP 1 2 2017**

**MTGLQ INVESTORS, L.P.**

By: DAVE SLEAR
Title: **VICE PRESIDENT**

Witness Name:    Danielle Ellingson

FNMA NPLS

EXHIBIT
**N**

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF
THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE
TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of          **TEXAS**
County of         **DALLAS**

On ___SEP 1 2 2017___, before me, _____**Joel Pires**_____, a Notary Public, personally appeared **DAVE
SLEAR, VICE PRESIDENT** of/for **MTGLQ INVESTORS, L.P.**, personally known to me, or who proved to me
on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **TEXAS** that the
foregoing paragraph is true and correct. I further certify DAVE SLEAR, signed, sealed, attested and delivered this
document as a voluntary act in my presence.

Witness my hand and official seal.

(Notary Name):         **Joel Pires**
My commission expires:   ___FEB 0 9 2021___

JOEL PIRES
Notary Public State of Texas
My Commission# 131006061
My Comm. Exp. Feb. 09, 2021

I HEREBY CERTIFY THIS IS A TRUE
AND CORRECT COPY OF THE
ORIGINAL FILED IN YORK COUNTY
MAINE REGISTRY OF DEEDS
ATTEST: _Nancy E Hammond_
                        REGISTRAR
DATED: 02/01/2022

FNMA NPL5

NANCY E HAMMOND, REGISTER OF DEEDS
E-RECORDED    **Bk 19237  PG 344**
Instr # 2023012623
05/12/2023  02:04:05 PM
Pages 2        YORK CO

### Quitclaim Assignment of Mortgage

WHEREAS, **Challenge Financial Investors Corp.**, a Florida corporation with a former place of business at 3505 E. Frontage Road, #165, Tampa, FL 33607, is the lender on a certain mortgage executed by Melanie B. Howe and Henry W. Howe, IV, and bearing the date of April 20, 2007, and recorded in the York County Registry of Deeds on April 24, 2007 in Book 15139, Page 540 (the **"Mortgage"**);

WHEREAS, pursuant to an Order Appointing Receiver for Challenge Financial Investors Corp. entered on February 3, 2023, by the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, in Case No. 22-CA-007254 (the **"Receivership Order"**), Paul Wersant, Esq. was appointed Receiver for Lender, a true copy of which Order is attached hereto as Exhibit A;

WHEREAS, Lender may have certain rights that are described in the Mortgage and Receivership Order;

WHEREAS, Mortgage Electronic Registration Systems, Inc. (**"MERS"**) was designated the mortgagee in the Mortgage as the nominee of Lender and its successors and assigns, and MERS was the mortgagee of record;

WHEREAS, this Quitclaim Assignment of Mortgage is not intended to and does not modify or assign any of the rights, title or interests that MERS had in the Mortgage; and

ACCORDINGLY, Lender hereby assigns and quit claims all of its rights, title and interest (whatever they may be, if any), in the Mortgage to **Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1**.

PROPERTY ADDRESS:
334 Deerwander Road, Hollis Center, ME 04042

*[Signature page follows]*

51619



SIGNATURE PAGE
TO
QUITCLAIM ASSIGNMENT OF MORTGAGE

CHALLENGE FINANCIAL INVESTORS
CORP.

Dated: _Feb 21_____, 2023

_Paul Wersant_

Paul Wersant, Esq., solely as Receiver for
Challenge Financial Investors Corp., and not in
an Individual or other capacity, by order of the
the Circuit Court of the Thirteenth Judicial
Circuit in and for Hillsborough County, Florida
in Case No. 22-CA-007254

STATE OF _Florida_
COUNTY OF _Hillsborough_

Personally appeared before me this _21st_ day of _February_ 2023, the above-
named _Paul Wersant_, in their capacity as Court-Appointed Receiver of Challenge Financial
Investors Corp. and acknowledged the foregoing to be their free act and deed in said capacity and
the free act and deed of Challenge Financial Investors Corp.

_Dianne Sarkisian_

Type/Print Name: _Dianne Sarkisian_
Notary Public
My Commission Expires:

Notary Public State of Florida
DIANNE N SARKISIAN
My Commission GG 989678
Expires 02/18/2024

PROPERTY ADDRESS:
334 Deerwander Road, Hollis Center, ME 04042

51619

NANCY E HAMMOND, REGISTER OF DEEDS
E-RECORDED     **Bk 19238  PG 93**
Instr # 2023012759
05/15/2023  10:22:26 AM
Pages 5        YORK CO

### Quitclaim Assignment of Mortgage

WHEREAS, **Challenge Financial Investors Corp.,** a Florida corporation with a former place of business at 3505 E. Frontage Road, #165, Tampa, FL 33607, is the lender on a certain mortgage executed by Melanie B. Howe and Henry W. Howe, IV, and bearing the date of April 20, 2007, and recorded in the York County Registry of Deeds on April 24, 2007 in Book 15139, Page 540 (the **"Mortgage"**);

WHEREAS, pursuant to an Order Appointing Receiver for Challenge Financial Investors Corp. entered on February 3, 2023, by the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, in Case No. 22-CA-007254 (the **"Receivership Order"**), Paul Wersant, Esq. was appointed Receiver for Lender, a true copy of which Order is attached hereto as Exhibit A;

WHEREAS, Lender may have certain rights that are described in the Mortgage and Receivership Order;

WHEREAS, Mortgage Electronic Registration Systems, Inc. ("**MERS**") was designated the mortgagee in the Mortgage as the nominee of Lender and its successors and assigns, and MERS was the mortgagee of record;

WHEREAS, this Quitclaim Assignment of Mortgage is not intended to and does not modify or assign any of the rights, title or interests that MERS had in the Mortgage; and

ACCORDINGLY, Lender hereby assigns and quit claims all of its rights, title and interest (whatever they may be, if any), in the Mortgage to **Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1**.

PROPERTY ADDRESS:
334 Deerwander Road, Hollis Center, ME 04042

*[Signature page follows]*



51619

SIGNATURE PAGE
TO
QUITCLAIM ASSIGNMENT OF MORTGAGE

CHALLENGE FINANCIAL INVESTORS
CORP.

Dated: **Feb 21** , 2023

*Paul Wersant*

Paul Wersant, Esq., solely as Receiver for
Challenge Financial Investors Corp., and not in
an Individual or other capacity, by order of the
the Circuit Court of the Thirteenth Judicial
Circuit in and for Hillsborough County, Florida
in Case No. 22-CA-007254

STATE OF *Florida*
COUNTY OF *Hillsborough*

Personally appeared before me this *21st* day of *February* 2023, the above-
named *Paul Wersant*, in their capacity as Court-Appointed Receiver of Challenge Financial
Investors Corp. and acknowledged the foregoing to be their free act and deed in said capacity and
the free act and deed of Challenge Financial Investors Corp.

*Dianne Sarkisian*

Type/Print Name: *Dianne Sarkisian*
Notary Public
My Commission Expires:

Notary Public State of Florida
DIANNE N SARKISIAN
My Commission GG 959678
Expires 02/18/2024

PROPERTY ADDRESS:
334 Deerwander Road, Hollis Center, ME 04042

51619

IN THE CIRCUIT COURT OF THE
THIRTEENTH JUDICIAL CIRCUIT IN AND FOR
HILLSBOROUGH COUNTY, FLORIDA.

CASE NO. 292022CA007254A001HC
DIVISION: E

WILMINGTON TRUST, NATIONAL
ASSOCIATION, NOT IN ITS INDIVIDUAL
CAPACITY, BUT SOLELY AS TRUSTEE FOR
MFRA TRUST 2015-1
     Plaintiff,

vs.

CHALLENGE FINANCIAL INVESTORS CORP.
     Defendant(s).
_____/

## ORDER GRANTING PLAINTIFF'S MOTION TO APPOINT RECEIVER

THIS CAUSE came before the Court on January 24, 2023, Plaintiff's, WILMINGTON

TRUST, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY

AS TRUSTEE FOR MFRA TRUST 2015-1, Motion to Appoint Receiver over the Defendant,

counsel for the Plaintiff appeared, no party appeared for the Defendants, and the Court having

reviewed the Motion, affidavit and otherwise being duly advised on the premises finds as follows:

    1.    The Court adopts the undisputed facts outlined in Plaintiff's Motion and Affidavit

which establish the need for the appointment of a receiver.

    2.    The Court finds that the appointment of a receiver is proper and necessary for the

Plaintiff to enforce its lien in Maine.

    **ACCORDINGLY, IT IS HEREBY ORDERED AND ADJUDGED:**

    3.    Plaintiff's Motion is hereby GRANTED.

1



4.     Paul Wersant, Esq., is hereby appointed as the Receiver for the Defendant.  The term of this receivership shall begin on the date of this Order.  It shall terminate when the Receiver completes all tasks necessary to assist the Plaintiff with the enforcement of its lien.

5.     Specifically, the Receiver shall have the power to execute any documents on behalf of the Defendant, including but not limited to any Assignments of Mortgages.

6.     The Court shall retain jurisdiction in this cause to enter such further orders or to take any action as it deems appropriate.

7.     The Receiver shall be immune from any and all liability of the Defendant.  The Receiver and his agents and employees are hereby declared to be held harmless and not responsible for any or all claims, liability, demands, damages, expenses, fees, fines, penalties, suits, proceedings, actions and fees, including attorneys' fees, that have arisen or may raise out of the past operation of the Defendant.

8.     The Plaintiff shall be entitled to enforce this Order against the Receiver if the Receiver fails to act out his duties.

DONE AND ORDERED in Chambers at _____, this _____ day of February 2023.

Electronically Conformed 2/3/2023
Anne-Leigh Gaylord Moe
_____

Circuit Judge

Copies furnished to:
Adam A. Diaz, Esq.
Diaz Anselmo & Associates, P.A.
P.O. BOX 19519
Fort Lauderdale, FL 33318
Service E-mail: answers@dallegal.com

All other parties on the service list attached
1491-187175 / CRO

2

SERIVCE LIST
292022CA007254A001HC


CHALLENGE FINANCIAL INVESTORS CORP
 C/O NATIONAL REGISTERED AGENTS, INC.
128 STATE ST. #3
AUGUSTA, ME 04300

3



## Doonan, Graves & Longoria LLC
### ATTORNEYS AT LAW | EXCELLENCE DAILY

100 CUMMINGS CENTER, SUITE 303C
BEVERLY, MASSACHUSETTS 01915

978.921.2670 | WWW.DGANDL.COM
HRS: MON-FRI 9 AM-4 PM

April 14, 2023

VIA CERTIFICATE OF MAILING
AND REGULAR MAIL

Henry W. Howe IV
350 River Road
Standish, ME 04084

Certified Article Number
9414 7266 9904 2200 4606 65
SENDER'S RECORD

Henry W. Howe IV
334 Deerwander Road
Hollis Center, ME 04042

Certified Article Number
9414 7266 9904 2184 8370 88
SENDER'S RECORD

Henry W. Howe IV
83 Deer Crossing Road
Limerick, ME 04048

Certified Article Number
9414 7266 9904 2184 8370 40
SENDER'S RECORD

Melanie B. Howe
334 Deerwander Road
Hollis Center, ME 04042

Certified Article Number
9414 7266 9904 2184 8370 57
SENDER'S RECORD

Melanie B. Howe
9118 Moulton Road
Bunker Hill, IL 62014

Certified Article Number
9414 7266 9904 2184 8370 64
SENDER'S RECORD

**NOTICE OF MORTGAGOR'S RIGHT TO CURE**
**THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED**
**WILL BE USED FOR THAT PURPOSE.**

Re:  Property Address:     334 Deerwander Road, Hollis Center, ME 04042
      Loan Number:

Dear Mortgagor:

      This letter is being sent by Doonan, Graves & Longoria, LLC, as Attorney in Fact and agent
for the Servicer and Mortgagee.  Doonan, Graves & Longoria, LLC is authorized to send this notice

EXHIBIT
Q

by and on behalf of the Servicer, Fay Servicing, LLC, the Mortgagee, Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1 and the Owner/Investor, Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1 pursuant to the terms of the subject Note, Mortgage and Title 14, Sec. 6111.

   Your loan is in default for failure to make payments of principal and interest when due.  This delinquency represents a breach of your Note and Mortgage in favor of Mortgage Electronic Registration Systems, Inc. as nominee for Challange Financial Investors Corp its successors and assigns (if MERs) dated April 20, 2007 and recorded in the York County Registry of Deeds in Book 15139, Page 0540. This firm is relying on information provided by the Servicer.  **If you are in Bankruptcy or received a Bankruptcy discharge of this debt, this letter is not an attempt to collect the debt, but notice of possible enforcement of our lien against the collateral property.**

   An itemization of all past due amounts, including, but not limited to, reasonable interest and late charges, attorney's fees and other reasonable fees and costs, causing the loan to be in default is as follows:

| | |
|---|---|
| Total Payment Amount | $146,324.89 |
| Accrued Late Fees | $588.00 |

   **TOTAL TO CURE DEFAULT:**  $146,912.89

   A portion of the amount due is reasonable interest in the amount of $84,945.89.

   **The total amount due does not include any amounts that become due after the date of the notice.**

   You have the right to cure the default within **35 days of receipt** of this notice by sending payment in the amount of $146,912.89 in the form of **certified and/or cashier's check(s) and/or money order(s)** in full to:  **Fay Servicing, LLC, Payment Processing, 425 S. Financial Place, Suite 2000, Chicago, IL 60605.  Please include the loan number, borrower's name and property address on your check.** If the default is not cured within this time-frame, the mortgagee may exercise its right to accelerate payment of this loan.  Failure to cure this default may result in the sale of the property secured by this mortgage at a foreclosure sale.  If the full amount listed above is paid within 35 days of receipt of this letter any other fees and costs due as of this date will be waived.  To reach a person with authority to modify a mortgage loan, please contact Fay Servicing, LLC at (312) 780-0446 to discuss your loan.

   Pursuant to Title 14, Section 6111 of M.R.S.A., you have the right to cure the default by full payment of all amounts that are due without acceleration, including reasonable interest and late charges specified in the mortgage or note as well as reasonable attorney's fees. If you meet the conditions above, you will have the right to have the mortgagee's enforcement of this Security Instrument discontinued and to have the Note and the Security Agreement remain fully effective as if immediate payment in full had never been required.  You have the right in any lawsuit for foreclosure and sale to argue that you did keep your promises and agreements under the Note and

under the Security Instrument, and to present any other defenses that you may have.

You may have options available other than foreclosure.  You may discuss available options with the mortgagee, which is Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1, the mortgage servicer, which is Fay Servicing, LLC or a counselor approved by the United States Department of Housing and Urban Development.  You are encouraged to explore available options prior to the end of the right-to-cure period.

As defined under Maine Law, Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1 is the Owner/Investor in the note and mortgage, which is the subject of this letter.

Where mediation is available under 14 M.R.S.A. section 6321-A, you may request mediation to explore options for avoiding foreclosure judgment.

A list of all counseling agencies approved by the United States Department of Housing and Urban Development operating to assist mortgagors in the State to avoid foreclosure is attached.  The attached list is integrated as if set forth in full.  You may also review this list by visiting the following website:
http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm?webListAction=search&searchstate=me

To reach people having authority to modify your mortgage loan, please contact Fay Servicing, LLC at the address below in order to resolve all matters relating to this mortgage and any foreclosure proceedings thereunder and to discuss options other than foreclosure.

Fay Servicing, LLC
Loss Mitigation Department/Loan Resolution
425 S. Financial Place
Suite 2000
Chicago, IL 60605
(312) 780-0446

## NOTICE OF IMPORTANT RIGHTS

Pursuant to the Federal Fair Debt Collection Practices Act (15 USCS Sec. 1692), a consumer debtor is required to be sent the following notice: (1) unless the consumer, within thirty days after receipt of this notice, disputes the validity of the debt or any portion thereof, the debt will be assumed to be valid by the debt collector; (2) if the consumer notifies the debt collector in writing with the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and copy of such verification or judgment will be mailed to the consumer by the debt collector; and (3) upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor. The law firm of Doonan, Graves & Longoria, LLC is acting as the debt collector, pursuant to the Federal Fair Debt Collection Practices Act. Any information will be used for that purpose. The Federal Trade Commission has ruled that the Federal Fair Debt Collection does not preclude the institution of legal action prior to the expiration of the thirty day period.  If you are in bankruptcy or received a bankruptcy discharge of this debt, this communication is not an attempt to collect the debt against

you personally, but is notice of a possible enforcement of the lien against the collateral property.

Very truly yours,
Fay Servicing, LLC
Wilmington Trust, National Association, Not
in Its Individual Capacity, but Solely as
Trustee for MFRA Trust 2015-1

by its attorney

Reneau J. Longoria, Esq.

MNK
cc:  Client
     Bureau of Consumer Credit Protection
Attachment: HUD Approved Housing Counseling Agencies

51619

**HUD Housing Counseling Agencies located in MAINE**

This listing is current as of 12/14/2022.

| HUD Agency Name | Phone Toll-Free Fax Number Email Website Agency ID | Address | Languages |
|---|---|---|---|
| PENQUIS COMMUNITY ACTION PROGRAM | P: 207-973-3500 T: F: E: N/A W: www.penquis.org A: 81649 | 262 Harlow St Bangor, Maine 04401-4952 | - English |
| COASTAL ENTERPRISES, INCORPORATED | P: 207-504-5900 T: 877-340-2649 F: E: jason.thomas@ceimaine.org W: www.ceimaine.org A: 80985 | 30 Federal Street Suite 100 BRUNSWICK, Maine 04011-1510 | - English - Spanish |
| AVESTA HOUSING DEVELOPMENT CORPORATION | P: 207-553-7780-3347 T: 800-339-6516 F: 207-553-7778 E: ndigeronimo@avestahousing.org W: www.avestahousing.org A: 81144 | 307 Cumberland Avenue PORTLAND, Maine 04101-4920 | - English |
| YORK COUNTY COMMUNITY ACTION AGENCY | P: 207-324-5762 T: F: 207-490-5026 E: meaghan.arzberger@yccac.org W: www.yccac.org A: 81150 | 6 Spruce Street SANFORD, Maine 04073-2917 | - English |
| COMMUNITY CONCEPTS, INC. ALSO DBA HOMEQUESTMAINE | P: 207-333-6419 T: 800-866-5588 F: 207-795-4069 E: homequest@community-concepts.org W: https://www.ccimaine.org/ A: 81580 | 17 Market Sq South Paris, Maine 04281-1533 | - English |
| KENNEBEC VALLEY COMMUNITY ACTION PROGRAM | P: 207-859-1500 T: 800-542-8227 F: E: housing@kvcap.org W: www.kvcap.org A: 81685 | 101 Water St Waterville, Maine 04901-6339 | - English |

GO BACK

**National Foreclosure Mitigation Counseling (NFMC) grantees through NeighborWorks America located in MAINE**

This listing is current as of 01/14/2015.

| Agency Name | Phone Website | Address | Languages |
|---|---|---|---|
| MMI - Auburn | Phone: 800-873-2227 Web: | 250 Center St., Ste. 205 Auburn, Maine 4210 | - English |
| MMI - Bangor | Phone: 800-308-2227 Web: www.moneymanagement.org | 175 Exchange St., Ste. 200 Bangor, Maine 4401 | - English |
| Penquis, Inc | Phone: 207-973-3500 Web: www.penquis.org | 262 Harlow Street Bangor, Maine 04402 | - English |
| Community Concepts, Inc. | Phone: 207-743-7716 Web: www.community-concepts.org | 240 Bates Street Lewiston, Maine 04240 | - English |
| Avesta Housing Development Corporation | Phone: 207-553-7777 Web: www.avestahousing.org | 307 Cumberland Avenue Portland, Maine 04101 | - English |
| MMI - South Portland | Phone: 800-873-2227 Web: | 111 Wescott Road South Portland, Maine 4106 | - English |
| MMI - South Portland | Phone: 800-308-2227 Web: www.moneymanagement.org | 111 Wescott Road South Portland, Maine 4106 | - English |
| Kennebec Valley Community Action Program | Phone: 800-542-8227 Web: www.kvcap.org | 97 Water Street Waterville, Maine 04901 | - English |

https://apps.hud.gov/offices/hsg/sfh/hcc/fc/index.cfm?webListAction=search&searchstate=ME&filterSvc=dfc



US POSTAGE ᴹᴵ PITNEY BOWES

$ 008.34⁰

ZIP 01915
02 7H
0001338074   APR 14 2021

FIRST-CLASS

CERTIFIED MAIL

9414 7266 9904 2184 8370 88



Doonan, Graves & L₀
ATTORNEYS AT LAW | EXCELL

100 CUMMINGS CENTER, S
BEVERLY, MASSACHUSETT

Henry W. Howe IV
334 Deerwander Road
Hollis Center, ME 04042

US POSTAGE ᴹᴵ PITNEY BOWES

$ 008.34⁰

ZIP 01915
02 7H
0001338074   APR 14 2021

FIRST-CLASS

CERTIFIED MAIL

9414 7266 9904 2200 4606 65



Doonan, Graves & L₀
ATTORNEYS AT LAW | EXCELLE

100 CUMMINGS CENTER, SU
BEVERLY, MASSACHUSETTS

Henry W. Howe IV
350 River Road
Standish, ME 04084

CERTIFIED MAIL



FIRST-CLASS



US POSTAGE IMI PITNEY BOWES

ZIP 01915
02 7H
0001338074      APR 14 2023

$ 008.34⁰

9414 7266 9904 2184 8370 57

onan, Graves & L
TTORNEYS AT LAW | EXCEL

100 CUMMINGS CENTER, :
BEVERLY, MASSACHUSET

Melanie B. Howe
334 Deerwander Road
Hollis Center, ME 04042

CERTIFIED MAIL



FIRST-CLASS



US POSTAGE IMI PITNEY BOWES

ZIP 01915
02 7H
0001338074      APR 14 2023

$ 008.34⁰

9414 7266 9904 2184 8370 40

onan, Graves & Lo
TTORNEYS AT LAW | EXCELLE

100 CUMMINGS CENTER, SU
BEVERLY, MASSACHUSETTS

Henry W. Howe IV
83 Deer Crossing Road
Limerick, ME 04048



US POSTAGE PITNEY BOWES
$ 000.84
ZIP 01915
02 7H
0001338074
APR 14 2021
FIRST-CLASS

**Doonan, Graves & Longoria** LLC
ATTORNEYS AT LAW | EXCELLENCE DAILY
100 CUMMINGS CENTER, SUITE 303C
BEVERLY, MASSACHUSETTS 01915

Henry W. Howe IV
350 River Road
Standish, ME 04084



US POSTAGE PITNEY BOWES
$ 008.34
ZIP 01915
07 7H
0001338074
APR 14 2021
FIRST-CLASS

CERTIFIED MAIL

9414 7266 9904 2184 8370 64

**Doonan, Graves & Lo**
ATTORNEYS AT LAW | EXCELLE
100 CUMMINGS CENTER, SU
BEVERLY, MASSACHUSETTS

Melanie B. Howe
9118 Moulton Road
Bunker Hill, IL 62014







FIRST-CLASS

US POSTAGE MR PITNEY BOWES

$ 000.83⁰

ZIP 01915
02 7H
0001338074

APR 14 2023



**Doonan, Graves & Longoria** LLC

ATTORNEYS AT LAW | EXCELLENCE DAILY

100 CUMMINGS CENTER, SUITE 303C
BEVERLY, MASSACHUSETTS 01915

Henry W. Howe IV
83 Deer Crossing Road
Limerick, ME 04048

---

FIRST-CLASS

US POSTAGE MR PITNEY BOWES

$ 000.83⁰

ZIP 01915
02 7H
0001338074

APR 14 2023



**Doonan, Graves & Longoria** LLC

ATTORNEYS AT LAW | EXCELLENCE DAILY

100 CUMMINGS CENTER, SUITE 303C
BEVERLY, MASSACHUSETTS 01915

Henry W. Howe IV
334 Deerwander Road
Hollis Center, ME 04042

**onan, Graves & Longoria** LLC
ORNEYS AT LAW | EXCELLENCE DAILY

00 CUMMINGS CENTER, SUITE 303C
BEVERLY, MASSACHUSETTS 01915



FIRST-CLASS

US POSTAGE (IMI) PITNEY BOWES

ZIP 01915
02 7H
0001338074      APR 14 2023

$ 000.84⁰

    Melanie B. Howe
    334 Deerwander Road
    Hollis Center, ME 04042

**onan, Graves & Longoria** LLC
TORNEYS AT LAW | EXCELLENCE DAILY

100 CUMMINGS CENTER, SUITE 303C
BEVERLY, MASSACHUSETTS 01915



FIRST-CLASS



US POSTAGE (IMI) PITNEY BOWES

ZIP 01915
02 7H
0001338074      APR 14 2023

$ 000.84⁰

    Melanie B. Howe
    9118 Moulton Road
    Bunker Hill, IL 62014



**UNITED STATES POSTAL SERVICE®**

**Certificate Of Mailing**

This Certificate of Mailing provides evidence that mail has been presented to USPS for mailing.
This form may be used for domestic and international mail.

To pay fee, affix stamps or meter postage here



**From:**   Doonan, Graves & Longoria, LLC

100 Cummings Center, Suite 303C

Beverly, MA  01915

**To:**   Henry W. Howe IV

334 Deerwander Road

Hollis Center, ME  04042

Postmark Here

PS Form **3817,** April 2007 PSN 7530-02-000-9065



**UNITED STATES POSTAL SERVICE®**

**Certificate Of Mailing**

To pay fee, affix stamps or meter postage here



$1.85 0
US POSTAGE
FIRST-CLASS
062S0011238745
FROM 01915

This Certificate of Mailing provides evidence that mail has been presented to USPS for mailing. This form may be used for domestic and international mail.

**From:**

Doonan, Graves & Longoria, LLC

100 Cummings Center, Suite 303C

Beverly, MA  01915

**To:**

Henry W. Howe IV

83 Deer Crossing Road

Limerick, ME  04048

Postmark Here



PS Form **3817**, April 2007 PSN 7530-02-000-9065



**UNITED STATES POSTAL SERVICE**

**Certificate Of Mailing**



To pay fee, affix stamps or meter postage here

$1.85 0
US POSTAGE
FIRST-CLASS
062S0011238745
FROM 01915

This Certificate of Mailing provides evidence that mail has been presented to USPS for mailing. This form may be used for domestic and international mail.

**From:**

Doonan, Graves & Longoria, LLC

100 Cummings Center, Suite 303C

Beverly, MA  01915

**To:**

Melanie B. Howe

334 Deerwander Road

Hollis Center, ME  04042

Postmark Here

PS Form **3817**, April 2007 PSN 7530-02-000-9065





**UNITED STATES POSTAL SERVICE®**

**Certificate Of Mailing**

To pay fee, affix stamps or meter postage here



This Certificate of Mailing provides evidence that mail has been presented to USPS for mailing. This form may be used for domestic and international mail.

**From:**  Doonan, Graves & Longoria, LLC

100 Cummings Center, Suite 303C

Beverly, MA  01915

**To:**  Melanie B. Howe

9118 Moulton Road

Bunker Hill, IL  62014

Postmark Here

PS Form **3817**, April 2007 PSN 7530-02-000-9065

**UNITED STATES POSTAL SERVICE®**

**Certificate Of Mailing**

This Certificate of Mailing provides evidence that mail has been presented to USPS for mailing. This form may be used for domestic and international mail.

**From:**

Doonan, Graves & Longoria, LLC

100 Cummings Center, Suite 303C

Beverly, MA  01915

**To:**

Henry W. Howe IV

350 River Road

Standish, ME  04084

PS Form **3817**, April 2007 PSN 7530-02-000-9065

To pay fee, affix stamps or meter postage here

$1.85 0
US POSTAGE
FIRST-CLASS
062S0011238745
FROM 01915

S96206.162

USPS
CUMMINGS STATION
APR  2023
BEVERLY MA 01915

USPS
CUMMINGS STATION
APR  2023
BEVERLY MA 01915

Postmark Here

**Matthew Kelly**

| | |
|---|---|
| **From:** | Nobody <nobody@informe.org> |
| **Sent:** | Friday, April 14, 2023 2:55 PM |
| **To:** | Matthew Kelly |
| **Subject:** | Pre-Foreclosure Reporting Form Submission |

Your pre-foreclosure reporting form has been successfully submitted to the Bureau of Consumer Credit Protection. Here is a copy of your submission.

-----

Mortgage Information

-----

Company providing the notice:Doonan, Graves & Longoria, LLC Owner of the mortgage:Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1 What term best describes the owner of the mortgage?:Private mortgage lender Filer's Email Address:mak@dgandl.com Contact information for persons having the authority to modify the mortgage to avoid foreclosure:Fay Servicing, LLC Loss Mitigation Department/Loan Resolution

425 S. Financial Place

Suite 2000

Chicago, IL 60605

(312) 780-0446


-----

Consumer Information

-----

Consumer First name:Melanie

Consumer Middle Initial/Middle Name: B.

Consumer Last name:Howe

Consumer Suffix:

Property Address line 1:334 Deerwander Road Property Address line 2:

Property Address line 3:

Property Address City/Town:Hollis Center Property Address State:

Property Address zip code:04042

Property Address County:York


-----

Notification Details

-----

Date notice was mailed:4/14/2023

Amount needed to cure the default:146,912.89 Consumer Address line 1:9118 Moulton Road Consumer Address line 2:

Consumer Address line 3:

Consumer Address City/Town:Bunker Hill

Consumer Address State:IL

Consumer Address zip code:62014

CAUTION: This email originated from outside the organization. Do not click links or open attachments until you confirm that the sender is trusted, sent the message intentionally, and the content is safe. Recognizing the sender does not guarantee safety. If it seems odd, please contact support or the sender directly.

**Matthew Kelly**

| | |
|---|---|
| **From:** | Nobody <nobody@informe.org> |
| **Sent:** | Friday, April 14, 2023 2:50 PM |
| **To:** | Matthew Kelly |
| **Subject:** | Pre-Foreclosure Reporting Form Submission |

Your pre-foreclosure reporting form has been successfully submitted to the Bureau of Consumer Credit Protection. Here is a copy of your submission.

-----

Mortgage Information

-----

Company providing the notice:Doonan, Graves & Longoria, LLC Owner of the mortgage:Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1 What term best describes the owner of the mortgage?:Private mortgage lender Filer's Email Address: mak@dgandl.com Contact information for persons having the authority to modify the mortgage to avoid foreclosure:Fay Servicing, LLC Loss Mitigation Department/Loan Resolution

425 S. Financial Place

Suite 2000

Chicago, IL 60605

(312) 780-0446


-----

Consumer Information

-----

Consumer First name:Henry

Consumer Middle Initial/Middle Name: W.

Consumer Last name:Howe IV

Consumer Suffix:

Property Address line 1:334 Deerwander Road Property Address line 2:

Property Address line 3:

Property Address City/Town:Hollis Center Property Address State:

Property Address zip code:04042

Property Address County:York


-----

Notification Details

-----

Date notice was mailed:4/14/2023

Amount needed to cure the default:146,912.89 Consumer Address line 1:350 River Road Consumer Address line 2:

Consumer Address line 3:

Consumer Address City/Town:Standish

Consumer Address State:ME

Consumer Address zip code:04084

CAUTION: This email originated from outside the organization. Do not click links or open attachments until you confirm that the sender is trusted, sent the message intentionally, and the content is safe. Recognizing the sender does not guarantee safety. If it seems odd, please contact support or the sender directly.

**Matthew Kelly**

| | |
|---|---|
| **From:** | Nobody <nobody@informe.org> |
| **Sent:** | Friday, April 14, 2023 2:51 PM |
| **To:** | Matthew Kelly |
| **Subject:** | Pre-Foreclosure Reporting Form Submission |

Your pre-foreclosure reporting form has been successfully submitted to the Bureau of Consumer Credit Protection. Here is a copy of your submission.

-----
Mortgage Information
-----

Company providing the notice:Doonan, Graves & Longoria, LLC Owner of the mortgage:Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1 What term best describes the owner of the mortgage?:Private mortgage lender Filer's Email Address:mak@dgandl.com Contact information for persons having the authority to modify the mortgage to avoid foreclosure:Fay Servicing, LLC Loss Mitigation Department/Loan Resolution

425 S. Financial Place

Suite 2000

Chicago, IL 60605

(312) 780-0446

-----
Consumer Information
-----

Consumer First name:Henry

Consumer Middle Initial/Middle Name: W.

Consumer Last name:Howe IV

Consumer Suffix:

Property Address line 1:334 Deerwander Road Property Address line 2:

Property Address line 3:

Property Address City/Town:Hollis Center Property Address State:

Property Address zip code:04042

Property Address County:York

-----
Notification Details
-----

Date notice was mailed:4/14/2023

Amount needed to cure the default:146,912.89 Consumer Address line 1:334 Deerwander Road Consumer Address line 2:

Consumer Address line 3:

Consumer Address City/Town:Hollis Center Consumer Address State:ME Consumer Address zip code:04042

CAUTION: This email originated from outside the organization. Do not click links or open attachments until you confirm that the sender is trusted, sent the message intentionally, and the content is safe. Recognizing the sender does not guarantee safety. If it seems odd, please contact support or the sender directly.

1

**Matthew Kelly**

| | |
|---|---|
| **From:** | Nobody <nobody@informe.org> |
| **Sent:** | Friday, April 14, 2023 2:54 PM |
| **To:** | Matthew Kelly |
| **Subject:** | Pre-Foreclosure Reporting Form Submission |

Your pre-foreclosure reporting form has been successfully submitted to the Bureau of Consumer Credit Protection. Here is a copy of your submission.

-----

Mortgage Information

-----

Company providing the notice:Doonan, Graves & Longoria, LLC Owner of the mortgage:Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1 What term best describes the owner of the mortgage?:Private mortgage lender Filer's Email Address:mak@dgandl.com Contact information for persons having the authority to modify the mortgage to avoid foreclosure:Fay Servicing, LLC Loss Mitigation Department/Loan Resolution

425 S. Financial Place

Suite 2000

Chicago, IL 60605

(312) 780-0446

-----

Consumer Information

-----

Consumer First name:Howe

Consumer Middle Initial/Middle Name: B.

Consumer Last name:Melanie

Consumer Suffix:

Property Address line 1:334 Deerwander Road Property Address line 2:

Property Address line 3:

Property Address City/Town:Hollis Center Property Address State:

Property Address zip code:04042

Property Address County:York

-----

Notification Details

-----

Date notice was mailed:4/14/2023

Amount needed to cure the default:146,912.89 Consumer Address line 1:334 Deerwander Road Consumer Address line 2:

Consumer Address line 3:

Consumer Address City/Town:Hollis Center Consumer Address State:ME Consumer Address zip code:04042

CAUTION: This email originated from outside the organization. Do not click links or open attachments until you confirm that the sender is trusted, sent the message intentionally, and the content is safe. Recognizing the sender does not guarantee safety. If it seems odd, please contact support or the sender directly.

**Matthew Kelly**

| | |
|---|---|
| **From:** | Nobody <nobody@informe.org> |
| **Sent:** | Friday, April 14, 2023 2:53 PM |
| **To:** | Matthew Kelly |
| **Subject:** | Pre-Foreclosure Reporting Form Submission |

Your pre-foreclosure reporting form has been successfully submitted to the Bureau of Consumer Credit Protection. Here is a copy of your submission.

-----

Mortgage Information

-----

Company providing the notice:Doonan, Graves & Longoria, LLC Owner of the mortgage:Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1 What term best describes the owner of the mortgage?:Private mortgage lender Filer's Email Address:mak@dgandl.com Contact information for persons having the authority to modify the mortgage to avoid foreclosure:Fay Servicing, LLC Loss Mitigation Department/Loan Resolution

425 S. Financial Place

Suite 2000

Chicago, IL 60605

(312) 780-0446

-----

Consumer Information

-----

Consumer First name:Henry

Consumer Middle Initial/Middle Name: W.

Consumer Last name:Howe IV

Consumer Suffix:

Property Address line 1:334 Deerwander Road Property Address line 2:

Property Address line 3:

Property Address City/Town:Hollis Center Property Address State:

Property Address zip code:04042

Property Address County:York

-----

Notification Details

-----

Date notice was mailed:4/14/2023

Amount needed to cure the default:146,912.89 Consumer Address line 1:83 Deer Crossing Road Consumer Address line 2:

Consumer Address line 3:

Consumer Address City/Town:Limerick

Consumer Address State:ME

Consumer Address zip code:04048

CAUTION: This email originated from outside the organization. Do not click links or open attachments until you confirm that the sender is trusted, sent the message intentionally, and the content is safe. Recognizing the sender does not guarantee safety. If it seems odd, please contact support or the sender directly.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X Melanie B Howe ☐ Agent ☐ Addressee

B. Received by (Printed Name)
Melanie B Howe

D. Is delivery address different from Item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

9590 9266 9904 2184 8370 81

1. Article Addressed to:

Henry W. Howe IV
334 Deerwander Road
Hollis Center, ME 04042

3. Service Type:
☒ Certified Mail

Reference Information

MNK/KH
Henry W. Howe, Melanie B. Howe
51619

2. Certified Mail (Form 3800) Article Number
9414 7266 9904 2184 8370 88

PS Form 3811, Facsimile, July 2015          Domestic Return Receipt

---

Return Receipt (Form 3811) Barcode

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature ☐ Agent ☐ Addressee

X Melanie B Howe

B. Received by (Printed Name)          C. Date of Delivery
Melanie Howe                              4 17 23

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

9590 9266 9904 2184 8370 50

1. Article Addressed to:

Melanie B. Howe
334 Deerwander Road
Hollis Center, ME 04042

3. Service Type:
☒ Certified Mail

Reference Information

MNK/KH
Henry W. Howe, Melanie B. Howe
51619

2. Certified Mail (Form 3800) Article Number
9414 7266 9904 2184 8370 57

PS Form 3811, Facsimile, July 2015          Domestic Return Receipt

---

Return Receipt (Form 3811) Barcode

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature ☐ Agent ☐ Addressee

X

B. Received by (Printed Name)          C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

9590 9266 9904 2184 8370 43

1. Article Addressed to:

Henry W. Howe IV
83 Deer Crossing Road
Limerick, ME 04048

3. Service Type:
☒ Certified Mail

Reference Information

MNK/KH
Henry W. Howe, Melanie B. Howe
51619

2. Certified Mail (Form 3800) Article Number
9414 7266 9904 2184 8370 40

**Payoff/Paydown Quote Information:** ███████ [ dcs:644 ]

| Borrower: | HOWE, IV,HENRY W | Address: | 334 DEERWANDER RD | Prin Bal: | $213,975 36 | Investor Type: | Other |
| Co-Borrower Name: | HOWE,MELANIE B | City: | HOLLIS CENTER | Add Prin Bal: | $23,199 73 (P) | Investor #: | A1U |
| Due Date: | 10/01/2014 | State: | ME | Account Type: | First Mortgage - Conventional With PMI | Investor Account #: | ████ |
| Last Pmt Appd On: | | Zip Code: | 04042 | Total Pmt Amt: | $1,530 13 | PLS Client ID: | |

## Quote Summary: ███████ [ dcs:644 ] Fri May 26 11:32:44 EDT 2023

| As Of Date: | 05/26/2023 |
|---|---|
| Per Diem Amt: | $27 11 |
| Piggyback Per Diem Amt: | $0 00 |
| Total Principal Balance: | $237,175 09 |
| Total Interest Amt: | $86,464 14 |
| Pro Rata MIP/PMI Amt: | $0 00 |
| Escrow Advance Amt: | $44,959 12 |
| Escrow Balance: | $0 00 |
| Suspense Balance: | $0 00 |
| HUD Balance: | $0 00 |
| Rep Res Balance: | $0 00 |
| Restricted Escrow Balance: | $0 00 |
| Total Fees Amt: | $0 00 |
| Total Accumulated Late Charge Amt: | $588 00 |
| Total NSF Charge Fee Amt: | $0 00 |
| Total Other Fees Due Amt: | $0 00 |
| Total Penalty Interest Amt: | $0 00 |
| Total Flat Penalty Fee Amt: | $0 00 |
| Credit Life Orig Fee Rebate Amt: | $0 00 |
| Rec Corp Adv Balance: | $12,934 60 |
| Total Amt To Payoff: | $382,120 95 |

### Primary Rate Changes

Row Count = 2

| From Date | Rate | Interest Amount |
|---|---|---|
| 09/01/2014 | 4 625% | $86,464 14 |
| 05/26/2023 | | |

### Second Mortgage Rate Changes

Row Count = 1

| From Date | Rate | Interest Amount |
|---|---|---|
| 09/01/2014 | | |



EXHIBIT
R

## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1 | CIVIL ACTION NO: 2:21-cv-00278-NT |
| Plaintiff | |
| vs. | RE: 334 Deerwander Road, Hollis Center, ME 04042 |
| Henry W. Howe, IV and Melanie B. Howe | |
| Defendants | |
| Credit Acceptance Corp. | |
| Party-in-Interest | |
| Melanie B. Howe | |
| Counter-Plaintiff | |
| Wilmington Trust, National Association, not in its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1 and Fay Servicing LLC | Mortgage: April 20, 2007 Book 15139, Page 0540 |
| Counter-Defendants | York County Registry of Deeds |

### AFFIDAVIT RELATING TO MILITARY SEARCH

I, Noelle Selden, hereby certify that on this 26ᵗʰ day of May 2023, I searched the Department of Defense/Defense Manpower Data Center (DOD/DMDC) and found that the Defendants, Henry W. Howe, IV and Melanie B. Howe, are not in the military. An affidavit as to the Defendants' military status will be filed with a Motion for Summary Judgment or at trial as Maine Courts accept such affidavits only at those times.

Dated: May 26, 2023

/s/Noelle Selden
Noelle Selden
Paralegal



EXHIBIT
S

## COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.

On this 26th day of May 2023, before me, the undersigned notary public, personally appeared Noelle Selden, who proved to me through satisfactory evidence of identification to be the person whose name is signed on this document, who swore or affirmed to me that the contents of the document are truthful and accurate to the best of his/her knowledge and belief.

/s/Reneau J. Longoria, Esq.
Notary Public
Commission Expires: 7/24/2026



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

SSN:

Birth Date:

Last Name:      HOWE

First Name:     MELANIE

Middle Name:    B

Status As Of:   May-26-2023

Certificate ID:

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA  93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days  preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1).  Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available.  In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds.  All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support.  This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs).  Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.  SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods.  Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction.  The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING:  This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester.  Providing erroneous information will cause an erroneous certificate to be provided.



## Status Report
## Pursuant to Servicemembers Civil Relief Act

SSN:
Birth Date:
Last Name:        HOWE
First Name:       HENRY
Middle Name:      W
Status As Of:     May-26-2023
Certificate ID:

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Michael V. Sorrento*

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA 93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information:  (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days  preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1).  Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available.  In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds.  All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support.  This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs).  Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.  SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods.  Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction.  The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING:  This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester.  Providing erroneous information will cause an erroneous certificate to be provided.



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

SSN:

Birth Date:

Last Name: HOWE

First Name: HENRY

Middle Name:

Status As Of: May-26-2023

Certificate ID:

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard).  This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Michael V. Sorrento*

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA  93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information:  (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days  preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1).  Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available.  In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds.  All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support.  This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs).  Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.  SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction.  The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING:  This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester.  Providing erroneous information will cause an erroneous certificate to be provided.



### Status Report
### Pursuant to Servicemembers Civil Relief Act

SSN:

Birth Date:

Last Name:   HOWE

First Name:   MELANIE

Middle Name:

Status As Of:   May-26-2023

Certificate ID:

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

Michael V. Sorrento, Director

Department of Defense - Manpower Data Center

400 Gigling Rd.

Seaside, CA  93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information:  (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days  preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1).  Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available.  In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds.  All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support.  This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs).  Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.  SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods.  Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction.  The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING:  This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester.  Providing erroneous information will cause an erroneous certificate to be provided.



## Status Report
## Pursuant to Servicemembers Civil Relief Act

SSN:
Birth Date:
Last Name: HOWE IV
First Name: HENRY
Middle Name: W
Status As Of: May-26-2023
Certificate ID:

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Michael V. Sorento*

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA 93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database, which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information:  (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days  preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1).  Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available.  In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds.  All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support.  This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs).  Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.  SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction.  The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING:  This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester.  Providing erroneous information will cause an erroneous certificate to be provided.



## Status Report
## Pursuant to Servicemembers Civil Relief Act

SSN:

Birth Date:

Last Name:       HOWE IV

First Name:      HENRY

Middle Name:

Status As Of:    May-26-2023

Certificate ID:

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Michael V. Sorrento*

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA  93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database, which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days  preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1).  Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available.  In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds.  All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support.  This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs).  Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.  SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction.  The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING:  This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester.  Providing erroneous information will cause an erroneous certificate to be provided.