MFRA v. Howe

Joint Exhibit 24

**In the Matter Of:**

Wilmington Trust N.A. vs Howe

# 30(B)(6) OF FAY SERVICING, LLC VIA MICHAEL PATERNO

*May 31, 2023*





*Gaige & Feliccitti, LLC*
Litigation Services

75 York Street, Ste 2
Portland, Maine 04101
(207) 854-5296
scheduling@gandfreporting.com

Tax ID:  46-3855727

OUT-OF-TOWN DEPOSITIONS?
WWW.DEPOSPAN.COM

```
 1               UNITED STATES DISTRICT COURT
                      DISTRICT OF MAINE
 2

 3
    WILMINGTON TRUST,          )
 4  NATIONAL ASSOCIATION       )
    NOT IN ITS INDIVIDUAL      )
 5  CAPACITY, BUT SOLELY AS    )
    TRUSTEE FOR MFRA TRUST     )
 6  2015-1,                    )
                               )
 7          Plaintiff,         )
                               )   CIVIL ACTION NO:
 8     vs.                     )   2:21-CV-00278-NT
                               )
 9  HENRY W. HOWE IV and       )
    MELANIE B. HOWE,           )
10                             )
            Defendants.        )
11  _____  )
    MELANIE B. HOWE,           )
12                             )
      Counter Plaintiff,       )
13                             )
        Vs.                    )
14                             )
    WILMINGTON TRUST,          )
15  NATIONAL ASSOCIATION       )
    NOT IN ITS INDIVIDUAL      )
16  CAPACITY, BUT SOLELY AS    )
    TRUSTEE FOR MFRA TRUST     )
17  2015-1                     )
    And                        )
18  FAY SERVICING, LLC,        )
                               )
19    Counter Defendants       )

20
             VIDEOTAPE (30)(b)(6) DEPOSITION OF
21       MICHAEL PATERNO/FAY SERVICING, LLC

22

23       _____
                   GAIGE & FELICCITTI, LLC
24            75 York Street, Suite 2
                 Portland, Maine 04101
25                  (207)854-5296
             scheduling@gandfreporting.com
```

Wilmington Trust N.A. vs Howe
VIA MICHAEL PATERNO, 30(B)(6) OF FAY SERVICING, LLC on 05/31/2023                    Pages 2..5

Page 2

```
1
2        VIDEOTAPE DEPOSITION OF MICHAEL PATERNO,
3   taken pursuant to notice before Beth Gaige,
4   RPR, a Notary Public in and for the State of
5   Maine, at the offices of Gaige & Feliccitti,
6   LLC, 75 York Street, Portland, Maine, on
7   May 31, 2023, commencing at 9:42 a.m.
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22   _____
23           GAIGE & FELICCITTI, LLC
              75 York Street, Suite 2
24          Portland, Maine 04101
              (207)854-5296
25          scheduling@gandfreporting.com
```

Page 4

```
1                       I N D E X
2   WITNESS:  Michael Paterno
3     Direct Examination by Mr. Robinson        7
      Further Examination by Ms. Longoria      104
4     Further Examination by Mr. Robinson      107
      Further Examination by Ms. Longoria      118
5     Further Examination by Mr. Robinson      121
6
7
8
9
              E X H I B I T S
10
    Exhibit No.      Exhibit Description     Page
11
    1        Counter Defendants' Response to    38
12           Counter Plaintiff's Answer &
             Affirmative Defenses,
13           Counterclaims, Opposition to
             Demand for Jury trial
14
    2        Complaint                          22
15
    3        Answer & Affirmative Defenses,     42
16           Counterclaims & Demand For Jury
             Trial
17
    3A       Motion to Amend Judgment Pursuant  42
18           to M.R. Civ.P.59 (e)
19  3B       Party-In-Interest Melanie Howe's   42
             Opposition to Plaintiff's Motion
20           to Dismiss Without Prejudice and
             Request for Dismissal With
21           Prejudice
22  3C       Docket Record                      42
23  4        Note                               28
24  5        Mortgage                           28
25  6        404 Notice                         47
```

Page 3

```
1            A P P E A R A N C E S
2   FOR MELANIE B. HOWE
3      JOHN ZACHARY STEED, ESQ.
         Island Justice
4      43 School Street
         Stonington, Maine 04681
5      Phone:  207.200.7077
         E-mail:  John@islandjusticelaw.com
6
                          (Appearing via Zoom)
7      PHILLIP R. ROBINSON, ESQ.
         Consumer Law Center, LLC
8      10125 Colesville Road, Suite 378
         Silver Spring, Maryland 20901
9      Phone:  (301) 448-1304
         E-mail:  Phillip@MarylandConsumer.com
10
11  FOR WILMINGTON TRUST, NATIONAL ASSOCIATION AS
    TRUSTEE FOR THE TRUST AND FAY SERVICING, LLC.
12
13     RENEAU J. LONGORIA, ESQ.
         Doonan, Graves & Longoria, LLC
14     100 Cummings Center, Suite 303C
         Beverly, MA 01915
15     Phone:  978.921.2670
         E-mail:  RJL@dgandl.com
16
17  THE REMOTE VIDEOGRAPHER,
18  Merissa Rhine, Technica LLC
19  ALSO APPEARING VIA ZOOM,
20  Kelly Hartigan
21
22
23
24
25
```

Page 5

```
1   7        Notice of Servicing Transfer       30
2   8        Notice of Mortgagor's Right to      58
             Cure
3
    9        Fair Debt Collections Practices     61
4            Act (FDCPA) Validation Notice
5   10       Flow Servicing Agreement -          62
             November 17, 2014
6
    13       Complaint for Declaratory Relief    65
7            and Appointing Receiver for
             Challenge Financial Investors
8            Corporation
9   14       Motion to Appoint Receiver          70
10  15       Order Granting Plaintiff's Motion   74
             to Appoint Receiver
11
    16       Wilmington Trust, National          74
12           Association vs. Challenge
             Financial Investors Corp
13
    17       Complaint for Declaratory Judgment  15
14
    18       Motion to Amend Judgment Pursuant   16
15           to M.R. Civ.P.59(e)
16  19       Mortgage Statements                 81
17  20       Mortgage Statements                 89
18  21       Fay Servicing September 21, 2021    96
             letter
19
    22       Page 1 of Delaware - The First     106
20           State regarding the Certificate of
             Statutory Trust Registration
21
    23       09-05-2017 Selene to MFA Transfer  107
22           - Post Board Data Validation
             Report
23
    (Exhibit Nos. 1 - 10 and 13 - 23 are included
24  in Original and all copies.  Exhibits 11 and
25  12 were not used.)
```

Page 6

| 1 | STIPULATION |
| 2 | (It is hereby agreed by and between the |
| 3 | parties that signature is not waived.) |
| 4 | - - - - - - - - - - |
| 5 | THE VIDEOGRAPHER:  We are going on the |
| 6 | record.  Today is May 31st, 2023.  The time is |
| 7 | approximately 9:42 a.m. |
| 8 | We are here today to take the deposition |
| 9 | of Michael Paterno for Fay Servicing, LLC, in |
| 10 | the captioned case of Melanie B. Howe versus |
| 11 | Wilmington, Trust National Association, not in |
| 12 | the individual capacity, but solely as the |
| 13 | trustee of Fay Servicing, LLC, State of Maine, |
| 14 | Docket No. 2:21-CV-00278-NT. |
| 15 | My name is Merissa Rhine, the |
| 16 | videographer on behalf of Technica, LLC.  The |
| 17 | court reporter is Beth Gaige of Gaige & |
| 18 | Felicitti, LLC. |
| 19 | At this time, starting -- starting with |
| 20 | the noticing attorney, will the attorneys |
| 21 | please identify themselves and the parties |
| 22 | they represent. |
| 23 | MR. STEED:  This is -- |
| 24 | MR. ROBINSON:  Go ahead, John. |
| 25 | MR. STEED:  John Steed for Melanie Howe. |

Page 7

| 1 | MR. ROBINSON:  Phillip Robinson for |
| 2 | Melanie Howe. |
| 3 | MS. LONGORIA:  Reneau Longoria for both |
| 4 | Wilmington Trust, National Association as |
| 5 | trustee for the trust and Fay Servicing, LLC. |
| 6 | THE VIDEOGRAPHER:  And will the court |
| 7 | reporter please swear in the witness. |
| 8 | (The Witness was administered the oath.) |
| 9 | MR. ROBINSON:  Let me just note for the |
| 10 | record that the caption that the videographer |
| 11 | read was for the counterclaim.  There's also |
| 12 | a -- a primary claim in the case, so the |
| 13 | caption's a little more involved, but |
| 14 | Wilmington Trust, National Association, as the |
| 15 | plaintiff, versus Henry Howe and Melanie Howe, |
| 16 | same case number, and it's pending in the |
| 17 | United States District Court for the District |
| 18 | of Maine. |
| 19 | MICHAEL PATERNO, having been duly sworn by the |
| 20 | Notary Public, was examined and testified as |
| 21 | follows: |
| 22 | DIRECT EXAMINATION |
| 23 | BY MR. ROBINSON: |
| 24 | Q. Mr. Paterno, thanks for being here today. |
| 25 | Can you please state your name and your |

Page 8

| 1 | business address for the record? |
| 2 | A. Michael Paterno, P-a-t-e-r-n-o.  The business |
| 3 | address is in Tampa, and I've actually drawn a |
| 4 | blank on the street.  I don't attend that |
| 5 | office very well -- much. |
| 6 | Q. Okay.  And my understanding is you're here as |
| 7 | the corporate designee under Rule (30)(b)(6) |
| 8 | on behalf of the counter defendant Fay |
| 9 | Servicing, LLC; is that right? |
| 10 | A. That is correct. |
| 11 | (Off-the-record colloquy.) |
| 12 | BY MR. ROBINSON: |
| 13 | Q. So, Mr. Paterno, are -- have you been deposed |
| 14 | before? |
| 15 | A. Yes, sir. |
| 16 | Q. How many times? |
| 17 | A. In my career or just with Fay Servicing? |
| 18 | Q. Well, let's just ask how many times through |
| 19 | your career, and if you don't know exactly, |
| 20 | you can just say over a certain amount. |
| 21 | A. Over 200. |
| 22 | Q. So your -- your -- done this bit before.  I'm |
| 23 | just going to go through the general rules for |
| 24 | the road that you're probably familiar with. |
| 25 | If we think of any others as we go along, I'll |

Page 9

| 1 | add them in. |
| 2 | Is that fair? |
| 3 | A. Yes. |
| 4 | Q. So it's a little different, as you know, doing |
| 5 | some of these by Zoom, but if you can't hear |
| 6 | me for whatever reason, technical reason, I'd |
| 7 | ask that you wave your hands and let me know |
| 8 | or ask me to rephrase the question if it broke |
| 9 | up. |
| 10 | Is that fair? |
| 11 | A. Fair. |
| 12 | Q. And sometimes I'm not hearing a complete |
| 13 | answer from you, and I may ask you to repeat. |
| 14 | It's not intended to be rude, but, for |
| 15 | example, like I think you just said yes, but |
| 16 | it sort of broke up a little bit. |
| 17 | A. You asked if it was fair and I said fair; but |
| 18 | yes, I understand. |
| 19 | Q. Okay.  Maybe it's -- that was very clear to me |
| 20 | so maybe if you could stay close to wherever |
| 21 | the mic is on your end, that would be great. |
| 22 | I don't anticipate this deposition being |
| 23 | very long today; but if you need a break, let |
| 24 | me know, and I'll try to work that in and |
| 25 | finish the line of questioning that I'm |

Page 10

1   working on.
2         Is that fair?
3   A.  Yes, sir.
4   Q.  And then we have a couple different parties
5       here with long names.  The trust that we
6       mentioned a moment ago is the plaintiff, and
7       the counter defendant, that's Wilmington
8       Trust, National Association not in its
9       individual capacity but solely as trustee for
10      MFRA Trust 2015-1.
11        Rather than say that long name over and
12      over, I'm just going to say MFRA when I mean
13      that trust.
14        Is that fair?
15  A.  Yes.
16  Q.  And then rather than say Fay Servicing, LLC,
17      I'll just say Fay or Fay Servicing.
18        Do you understand that to mean Fay
19      Servicing, LLC?
20  A.  Yes.
21  Q.  All right.  And Mr. Steed and I represent Ms.
22      Howe.  That's Melanie Howe.  Her ex-husband is
23      Henry Howe.  So I'll try when I'm using their
24      names to say Ms. or Mr. Howe.
25        Is that fair?

Page 11

1   A.  Yes.
2   Q.  And anytime I'm using a name you're not sure
3       what I -- who I mean and who I'm identifying,
4       just let me know, and I can try to rephrase
5       that question.
6         Is that fair?
7   A.  Yes.
8   Q.  All right.  And then the last thing is since
9       in this deposition you're the designee for Fay
10      Servicing, I also might use the pronoun you
11      from time to time or your; and I generally
12      mean that to be Fay Servicing, LLC.  If I mean
13      it to mean you personally, I'm going to try to
14      say you personally to differentiate.
15        Is that fair?
16  A.  Yes.
17  Q.  All right.  Are you personally employed by Fay
18      Servicing?
19  A.  Yes.
20  Q.  And what is your personal job title?
21  A.  Litigation representative.
22  Q.  And what are your general responsibilities,
23      your personal general responsibilities as
24      litigation representative?
25  A.  I review the business records of Fay in

Page 12

1       preparation for any court-related matter.
2   Q.  And are you an attorney?
3   A.  No.
4   Q.  Have you received any legal training?
5   A.  Limited only regard to the job itself.
6   Q.  All right.  And what is the business of Fay
7       Servicing, if you can generally describe that
8       for me?
9   A.  We are a mortgage service servicer.
10  Q.  And -- and what is a mortgage servicer?
11  A.  We collect payments from borrowers.  We pay
12      out any escrow on behalf of the borrower, any
13      insurance or taxes.  We are pretty much a soup
14      to nuts mortgage servicer.  We also bring
15      loans through foreclosure if that is the need.
16      We do loss mitigation.
17        Again we're a soap to nuts mortgage
18      servicer.
19  Q.  And does Fay Servicing own mortgage loans or
20      does it collect payments on behalf of others?
21  A.  We do not own any loans.  We collect on behalf
22      of others.
23  Q.  All right.  And in this case, Fay Servicing is
24      the servicer for -- the mortgage servicer for
25      the Howe loan that is subject to this

Page 13

1       litigation; is that right?
2   A.  Yes, sir.
3   Q.  And how -- do you know when Fay Servicing
4       became the mortgage servicer for the Howe
5       loan?
6   A.  It was late in 2017.  I believe it was in
7       November.
8   Q.  And do you know what the status of the Howe
9       loan was at that time?
10  A.  That loan was in default at that time.
11  Q.  And as part of its business, does Fay
12      Servicing collect on loans that are
13      transferred to it in default?
14  A.  I'm sorry; can you repeat the question?
15  Q.  As part of its business, does Fay Servicing
16      collect on loans that are transferred to it
17      when they are in default?
18  A.  Yes.
19  Q.  And it seeks to collect on those defaulted
20      loans after the loans are transferred to it,
21      correct?
22  A.  That is correct.
23  Q.  And what are the methods by which Fay
24      Servicing tries to collect on loans?
25  A.  Our main goal would be to try to get a

Page 14

1   borrower into some loss mitigation hoping that
2   we would be able to give them a modification
3   on that loan.
4        There are other types of loss mitigation
5   that can occur, cash for keys or any kind of,
6   you know, deed in lieu option, something to
7   that effect.  But certainly to get resolution
8   on the default.
9   Q.  All right.  And -- and loss mitigation is a --
10      a way to avoid a foreclosure; is that right?
11  A.  Correct.
12  Q.  And -- and to avoid the foreclosure, I think
13      if I'm understanding your testimony, Fay
14      Servicing seeks to have a borrower, you know,
15      participate or engage in loss mitigation; is
16      that right?
17  A.  Yes, sir.
18  Q.  All right.  And from time to time does Fay
19      Servicing get involved in litigation against
20      borrowers on behalf of the owners of the
21      mortgage loans it collects upon?
22  A.  Yes.  If it calls for that, yes, we do.
23  Q.  All right.  And in this case, was Fay
24      Servicing involved in litigation against Ms.
25      Howe related to the Howe loan?

Page 15

1   A.  Yes.
2   Q.  All right.  And at the time the servicing was
3       transferred to Fay Servicing, was there
4       pending litigation against Ms. Howe on behalf
5       of the owner of the Howe loan?
6   A.  I believe there was, yes.
7        MR. ROBINSON:  All right.  So, Mr. Steed,
8       if you can help me out, we -- so for
9       everybody's benefit, we premarked some
10      exhibits.  I'm not necessarily going to go in
11      the order they are, but Mr. Steed is going to
12      help me presenting the witness with the copy,
13      and we have one for opposing counsel.
14       So, Mr. Steed, let's look at the --
15      Exhibit 17.  That's the DJ complaint.
16       (Deposition Exhibit No. 17 for
17      identification.)
18       MR. ROBINSON:  And, Mr. Paterno, while
19      he's getting that ready, anytime I show you an
20      exhibit, I'm going to ask you to review it and
21      let me know when you're ready.  I'm not trying
22      to push you and jump to questions until you
23      tell me you're ready.  And if I do jump ahead,
24      just tell me you need more time.
25       THE WITNESS:  Understood.

Page 16

1        MR. ROBINSON:  So if you could take a
2   moment to review that and let me know.
3        (Witness complying.)
4        MR. ROBINSON:  Mr. Steed, we'll need 18
5   next.
6        THE WITNESS:  Okay.  I've reviewed
7   Exhibit 17.
8   BY MR. ROBINSON:
9   Q.  Have you seen Exhibit 17 before today?
10  A.  Yes, sir.
11  Q.  And what is your understanding of what
12      Exhibit 17 is?
13  A.  This is the original complaint for declaratory
14      judgment.
15  Q.  Okay.  And that was filed in the state court,
16      the superior court for York County, I believe;
17      is that right?
18  A.  State of Maine, York, yes, superior court.
19  Q.  All right.  And Mr. Steed can show you what I
20      marked as Exhibit -- keep that exhibit nearby,
21      but in fairness to you, I want him to give you
22      Exhibit 18 now, too.
23       (Deposition Exhibit No. 18 for
24      identification.)
25  Q.  And when you're ready, just let me know.

Page 17

1   A.  (Reviewing document)
2        MR. ROBINSON:  Mr. Steed, this is
3   supposed be the order or the motion to amend
4   judgment, the margin order.
5        Is this something different?
6        MR. STEED:  It also has the -- the order
7   and I think...
8        MR. ROBINSON:  Docket entries maybe?
9        MR. STEED:  The docket entries, yeah.
10       MR. ROBINSON:  Okay.
11       MS. LONGORIA:  Yeah, that's what --
12  BY MR. ROBINSON:
13  Q.  All right.  So, Mr. Paterno, have you seen
14      Exhibit 18 before today?
15  A.  Yes, sir.
16  Q.  And would you agree with me that that appears
17      to be the motion to amend that was filed on
18      behalf of the trust and also a margin order
19      from the court and the docket entries from the
20      DJ action?
21  A.  That is correct.  I would agree.
22  Q.  All right.  And if you compare Exhibit 17, the
23      caption on Exhibit 17, to Exhibit 18, we can
24      see the captions changed because during the DJ
25      action, the trust, the same plaintiff in this

Page 18

1  case, became the plaintiff in the DJ action,
2  correct?
3  A.  Yes.
4  Q.  All right.  On Exhibit 18 it identifies
5      several defendants and parties in interest.
6          Do you see that?
7  A.  Yes.
8  Q.  And one of those parties in interest is Ms.
9      Howe.
10         Do you see that?
11 A.  I see that.
12 Q.  And -- and does Fay Servicing know why Ms.
13     Howe was a party in interest to the DJ action?
14 A.  I don't know specifically.
15 Q.  Okay.  And in preparation for today's
16     deposition, did you review Exhibit 17 and 18?
17 A.  Yes, I did.
18 Q.  Did you identify any errors or mistakes in
19     Exhibit 17 or 18 in that review?
20 A.  I -- none that stood out to me.
21 Q.  Okay.  And on Exhibit 17, that's the
22     complaint, if you go to -- there's several
23     attachments to it, but before the attachments
24     you go to the last page of the complaint, I
25     think, before the exhibits.

Page 19

1  A.  (Witness complying)
2  Q.  Is that a signature page --
3  A.  Says Howe 752?
4  Q.  Correct.
5          MR. STEED:  Yeah.
6  A.  Okay.
7          BY MR. ROBINSON:
8  Q.  Thank you for noting that Bates number.
9          And there is a signature there for an
10     attorney.  And were those attorneys authorized
11     on that signature line to file the declaratory
12     judgment action on behalf of the owner of the
13     loan?
14 A.  Yes.
15 Q.  And were they authorized when the trust in
16     this case substituted in that case to maintain
17     the declaratory judgment action on behalf of
18     the trust?
19 A.  Yes.
20 Q.  All right.  And then if you go back to
21     Exhibit 18, and you go to Howe 299 on the
22     Bates numbers.
23         It's also the signature page?
24 A.  (Witness complying)  I have that.
25 Q.  Right.  On -- on the motion -- I'm not talking

Page 20

1  about the handwriting below.  That's the
2  order, I think.  But the -- on the motion,
3  that's dated March 11, 2020, and there's a
4  signature line for attorneys on behalf of the
5  trust.
6      Do you see that?
7  A.  Yes, sir.
8  Q.  And were those attorneys authorized by Fay
9      Servicing and the trust to file the motion to
10     amend judgment?
11 A.  Yes, they were.
12 Q.  All right.  At any point in time was Fay
13     Servicing unaware of the margin note on that
14     same page that you're looking at from the --
15     the retired justice?
16 A.  I'm sorry.  Can you repeat your question?
17 Q.  Yeah, I'm not sure the lingo for Maine, but I
18     would call this like a margin order, it
19     appears.  It's an order signed by the superior
20     court retired justice.
21         And so my question was whether or not Fay
22     Servicing or the trust was unaware of that
23     margin order dated April 7, 2021?
24         MS. LONGORIA:  Objection as to form.
25 A.  I don't know aware or unaware of that note.

Page 21

1      BY MR. ROBINSON:
2  Q.  All right.  Did you understand my question?
3  A.  I believe you said was Fay unaware of the
4      note, of this margin note.
5  Q.  I'm characterizing it as a margin order.  It
6      appears to be signed by a state court superior
7      court judge; is that correct?
8  A.  It does look like a retired -- I believe it
9      says retired justice superior court, yes.
10 Q.  And it's -- and in handwriting it's dated
11     April 7, 2021, correct?
12 A.  It appears to be that, yes.
13 Q.  All right.  And then so was Fay Servicing
14     aware of this order on or after April 7, 2021?
15 A.  Again, I don't know the answer to that
16     question.  I don't know whether we were aware
17     or not.
18 Q.  Okay.  And same question for the trust.
19         Is the trust aware on or after April 7,
20     2021, of the order of the superior court judge
21     that's on Howe 299?
22 A.  That would be the same answer.
23 Q.  And -- and that's another rule for the road.
24     If you don't know the answer or you're not
25     sure, to answer just like you did so the

Page 22

1   record is clear.  So thank you for that.
2         MR. ROBINSON:  All right.  And then let's
3   go to Exhibit 2, Mr. Steed.
4         (Deposition Exhibit No. 2 for
5   identification.)
6   Q.  And, Mr. Paterno, you know this, but if you
7   need to look back at a prior exhibit, you can;
8   but just like you just did, it's easier to
9   push them to the side.  But you're welcome to
10  look back if you need to.  We'll just
11  reference the record if you are.
12  A.  Will do.  Thank you.
13  Q.  Just let me know after you've reviewed
14  Exhibit 2 when you're ready.
15  A.  (Reviewing document).  Okay.  I've reviewed
16  it.
17  Q.  All right.  And you've reviewed Exhibit 2.
18        Can you identify that for me, please?
19  A.  This is the original complaint in this action.
20  Q.  All right.  And was -- did Fay authorize the
21  original complaint to be filed in this action?
22  A.  Yes.
23  Q.  And did you review the original complaint in
24  preparation for the deposition today?
25  A.  I did.

Page 23

1   Q.  And did you identify any errors or mistakes in
2   it?
3   A.  None that I noted.
4   Q.  And if you could go to -- at the top there's
5   the ECF number.  It's page 11 of 11.
6   A.  (Witness complying) I have that.
7   Q.  All right.  And there's an e signature for
8   Ms. Longoria.
9         Was she authorized to file this on behalf
10  of the trust?
11  A.  Yes, she was.
12  Q.  And was she authorized by Fay Servicing to
13  file this complaint also?
14  A.  Yes, she was.
15  Q.  All right.  And -- and within that complaint,
16  pages 1 through 11 of that complaint,
17  Exhibit 2, did Fay Servicing or the trust
18  identify anywhere in there that -- the prior
19  DJ action that we reviewed on Exhibits 17 and
20  18?
21  A.  Have to give me a minute to read through it.
22  Q.  No problem.
23  A.  (Reviewing document).  In reading through it,
24  I did not see mention of that.
25  Q.  Okay.  In Fay Servicing's work, does it strive

Page 24

1   to be honest in its communications to various
2   courts and other parties involved in
3   litigation with it?
4   A.  Yes.
5   Q.  All right.  Is it honest from the point of
6   view of Fay Servicing to file an action in
7   federal court after Fay Servicing lost in
8   state court?
9         MS. LONGORIA:  Objection.
10  A.  That's more of a legal issue and something
11  that I would not have an answer for.
12  BY MR. ROBINSON:
13  Q.  Okay.  And so Fay has no position on whether
14  or not omitting information in the federal
15  complaint in this case was honest or not?
16        MS. LONGORIA:  Objection.
17  A.  Again, it's more of a legal argument.  I don't
18  have any response for that.
19  BY MR. ROBINSON:
20  Q.  All right.  So as part of Fay's policy,
21  practices, and procedures in its work that it
22  conducts as a mortgage servicer, does it take
23  a position on whether omission of facts are
24  honest or dishonest?
25        MS. LONGORIA:  Objection.

Page 25

1   A.  Again, omission of facts would be dishonest.
2   However, I don't know in relation to any court
3   matter what needs to be specified and what
4   does not.
5   BY MR. ROBINSON:
6   Q.  All right.  Fay Servicing retains counsel to
7   make that determination; is that correct?
8   A.  Yes.
9   Q.  And Fay Servicing authorizes counsel to make
10  those determinations without any review or
11  supervision; is that correct?
12  A.  I'm sorry.  Repeat your question, please.
13  Q.  Does Fay Servicing authorize counsel to make
14  those determinations about what is necessary
15  in a court pleading?
16  A.  Yes.
17  Q.  Okay.  Does Fay Servicing supervise whether
18  the pleadings that are provided at its
19  instruction are true and accurate?
20  A.  Yes, we do.
21  Q.  All right.  In this case, what did Fay
22  Servicing do to ensure that Exhibit 2, the
23  original complaint on note was true and
24  accurate?
25  A.  We would have just had a -- discussed with the

Page 26

1   attorney and whether this had the pertinent
2   information that it needed to have.
3   Q.  And did you -- without divulging any
4       communications, just a yes or no question.
5           Did you personally have any involvement
6       in reviewing Exhibit 2 before it was filed in
7       the United States District Court for the
8       District of Maine?
9   A.  I did not.
10  Q.  Do you know who at Fay Servicing reviewed that
11      complaint before it was filed?
12  A.  I do not.
13  Q.  Did you -- in preparation for today's
14      deposition, did you speak to anybody at Fay
15      Servicing about your testimony today?
16  A.  I did not.
17  Q.  Did you speak to anybody at the trust about
18      your testimony today?
19  A.  I did not.
20  Q.  Did you speak to anybody at MFRA -- I'm
21      sorry -- MF Residential Assets I, roman I,
22      LLC, about your testimony today?
23  A.  I did not.
24  Q.  Did you speak to anybody at the trust related
25      to your testimony today?

Page 27

1   A.  I did not.
2   Q.  Did you speak to anybody at Diplomat Property
3       Manager, LLC, about your testimony today?
4   A.  I don't even know who that is.  I did not.
5   Q.  Did you speak to anybody at Spartan Property
6       Manager, LLC, about your testimony today?
7   A.  I did not.
8   Q.  Besides counsel, did you speak to anybody
9       about your testimony that you're providing
10      today?
11  A.  I did not.
12  Q.  Did you have -- how much time did you spend
13      preparing for your testimony today?
14  A.  Within the time frame of the assignment of
15      this deposition coming up, which I'm not -- I
16      don't quite remember the exact time frame.  It
17      might have been about three weeks ago.  Maybe
18      even sooner than that.  But from that time
19      forward I would begin reviewing loan
20      documents.
21          I'd say maybe eight to ten hours in
22      total.
23  Q.  Okay.  And as part of Fay Servicing's pattern
24      and practice and procedure, you did -- you --
25      that preparation did not include

Page 28

1   communications with anybody at Fay Servicing
2   about this loan who may have been involved in
3   the events and occurrences subject to the
4   litigation; is that correct?
5   A.  Correct.
6   Q.  Just a moment.
7       MR. ROBINSON:  All right.  Mr. Steed,
8   let's go to Exhibit 5 and probably Exhibit 4
9   also.
10      (Deposition Exhibit No. 4 for
11  identification.)
12      (Deposition Exhibit No. 5 for
13  identification.)
14  BY MR. ROBINSON:
15  Q.  So, Mr. Paterno, if you can take a moment to
16      look at those and let me know when you're
17      ready.
18  A.  (Witness complying) I reviewed 4 and 5.  I'm
19      ready.
20  Q.  All right.  In preparation for today's
21      deposition, did you review what we marked as
22      Exhibits 4?
23  A.  Yes, I did.
24  Q.  And can you generally identify that document
25      for me?

Page 29

1   A.  This is a copy of the original note in this
2       action.
3   Q.  All right.  And a note -- that's the loan
4       agreement to pay back the sum of money,
5       correct?
6   A.  Correct.
7   Q.  And does the note define default in paragraph
8       6?
9   A.  Yes.  Number 6 is titled Borrower's failure to
10      pay as required.
11  Q.  All right.  And 6(b) is -- is -- has a
12      definition for default; is that correct?
13  A.  That is correct.
14  Q.  So earlier when you answered that the Howe
15      loan was in default at the time of transfer to
16      Fay, did you mean it was in default pursuant
17      to paragraph 6(b) of the note?
18  A.  That would be correct.
19  Q.  All right.  And then if you look at Exhibit 5,
20      can you identify that for me?
21  A.  5 is a copy of the original mortgage in this
22      action.
23  Q.  And generally can you describe for me what a
24      mortgage is?
25  A.  A mortgage is the instrument by which the

Page 30

1    property is secured.
2  Q. Okay.  And does the mortgage also define
3    default?
4  A. Yes, it does.
5  Q. All right.  So in your answer earlier that Fay
6    received the servicing when the loan was in
7    default, did that also include the definition
8    of default that's in the mortgage?
9  A. Yes, sir.
10 Q. Sorry, that's one of those hiccups.  I didn't
11    hear the answer.
12 A. Yes, sir.
13 Q. Okay.
14      MR. ROBINSON:  All right.  Now, Mr.
15    Steed, let's do Exhibit 7.
16      MS. LONGORIA:  Can we go off the record
17    for just a moment?
18      MR. ROBINSON:  Who's asking to go off the
19    record?
20      MS. LONGORIA:  Attorney Longoria.
21      MR. ROBINSON:  Can -- can I just finish
22    up Exhibit 7?
23      MS. LONGORIA:  Sure.
24      (Deposition Exhibit No. 7 for
25    identification.)

Page 31

1  BY MR. ROBINSON:
2  Q. Mr. Paterno, if you can take a moment to look
3    at Exhibit 7 and let me know when you're
4    ready.
5  A. I'm ready.
6  Q. Can you identify for me Exhibit 7?
7  A. So this is a notice of servicing transfer when
8    a loan is transferred from one servicer to
9    another.
10 Q. All right.  So you gave an approximation
11    earlier of when the Howe loan transferred.
12      Does this Exhibit 7 refresh your memory
13    of the exact date of when the servicing
14    transferred?
15 A. Yes.  I believe earlier I may have said
16    November of 2017, and it is reflective here of
17    September of '17.
18 Q. Right.  So is that your understanding that the
19    loan transferred to Fay on September 5th,
20    2017?
21 A. Yes.
22 Q. All right.  And at the time of the transfer on
23    September 5th, 2017, the loan was in default
24    pursuant to the terms of the note and the
25    mortgage; is that correct?

Page 32

1  A. That is correct.
2  Q. All right.  And the -- the prior servicer
3    identified on these notes was Selene Finance,
4    LP.
5      Do you see that?
6  A. Yes, I do.
7  Q. In preparation for the deposition today, did
8    you review any -- or did you talk to anybody
9    at Selene Finance, LP?
10 A. I did not.
11 Q. Did you review any of Selene Finance, LP's
12    records related to the Howe loan?
13 A. Yes, I did.
14 Q. And did those records reflect that at the time
15    of the transfer the Howe loan was in default
16    when it transferred to Fay Servicing?
17 A. Yes, it did.
18 Q. All right.  Did you see any errors or mistakes
19    in the Selene Finance records that you
20    reviewed?
21 A. No, sir.
22 Q. All right.  Could you explain to me generally
23    how does -- when a loan transfers from one
24    servicer to Fay how that generally occurs?
25 A. Sure.  The boarding process is the tool that's

Page 33

1    used in order to board the records from one
2    servicer to another.  That boarding process
3    with Fay takes place -- start -- begins about
4    40 -- 40 to 45 days prior to the final
5    transfer date.
6      Our boarding team will be meeting with
7    the -- what would be called in the industry
8    the off-board team, in this case for Selene.
9    They would be discussing when the information
10    will be coming over, how the information is to
11    be transmitted.
12      These particular letters for the notice
13    of servicing transfers, which are also --
14    there's a hello and goodbye letter that
15    happens in this case, all of those are
16    prepared at the time of these meetings.
17    They're reviewed by both sides, and then
18    they're mailed to the particular borrowers in
19    the -- in the transfer.
20      Once all that happens, there is a
21    preliminary phase that will take place.
22    Preliminary information usually comes in about
23    halfway between that 40-day, 45-day start, and
24    the day of the final board.
25      The preliminary information comes over in

Wilmington Trust N.A. vs Howe
VIA MICHAEL PATERNO, 30(B)(6) OF FAY SERVICING, LLC on 05/31/2023          Pages 34..37

Page 34

1   a digital secured file.  It is unwrapped by
2   Fay.  It goes through a system.
3        In 2017, we were using a system called
4   ELI, which is Electronic Loan Interface.  The
5   electronic loan interface at that time
6   disseminates through all of the information
7   for every loan, and it's looking for anomalies
8   or things that may be inconsistent as far as
9   the information.
10       And just an example, if you have a loan
11  that's in foreclosure or is a status
12  foreclosure loan, there would be certain
13  criteria that would have to be in the
14  information in order to have a status
15  foreclosure.  One of those would be a default
16  date, which is prior to the transfer date.  It
17  would have to have a demand letter date.
18       So all of that information would need to
19  be in that document or in the information in
20  order to be classified as foreclosure.  If
21  there's -- if the information does not line
22  up, it would come out in an exception report.
23       In that particular instance, however, the
24  preliminary information goes through --
25  through that LLB system and then that

Page 35

1   information is disseminated through the
2   different departments that will be responsible
3   for those loans.
4        Then we await the final board.  The final
5   board information comes through the same exact
6   way as the preliminary information did.  It
7   comes through a secured file.  Fay unwraps
8   that.  Also runs that back through the ELI
9   system.  The ELI system does the exact same
10  process of looking for the anomalies in the
11  information, and any of that will come out on
12  an exception report again.
13       There are several other verifications
14  that are done by Fay.  There are doc-to-data
15  verifications that are done on about 35
16  different aspects of the documents from the
17  loan.  So that would be the note information,
18  mortgage information, any modification.
19       We do have a team that does doc-to-data
20  review on any of that information that's going
21  to get boarded into MSP, and that is done on
22  every loan.
23       There is also a verification of any
24  adjustable rate mortgage information that is
25  done when the loan is in MSP, as well.

Page 36

1        Once all of the information that goes
2   through the final board process is deemed to
3   be ready to go, that information is boarded
4   into MSP, which is our main system of record.
5   That -- all of the prior servicer records
6   become Fay's system of -- become Fay's
7   records, and we move forward from that point.
8        Also, at that time we are getting a
9   digital download of all of the documents from
10  prior servicer.  Those digital documents are
11  stored in our AIQ system, which is our
12  document storage system.
13  Q.  Okay.  Thank you for that excellent review.
14      It sounds like you've done that before.
15  A.  I have.
16  Q.  In this case in preparation for your testimony
17      today, did you review any exception reports
18      related to the transfer of the Howe loan to
19      Fay Servicing?
20  A.  I did review the exception report.
21  Q.  And was there anything -- were there any
22      exceptions identified related to the Howe loan
23      at the preliminary or at the final transfer
24      phase that you just described?
25  A.  There were no issues with the Howe loan on the

Page 37

1   exception report.
2   Q.  All right.  So there was no issues identified
3       as to the enforceability of the mortgage; is
4       that correct?
5   A.  Correct.
6   Q.  All right.  And was the -- the DJ action
7       included in the information that was provided
8       in the preliminary and in the final transfer
9       or boarding of data?
10  A.  Those documents were in the document file.
11  Q.  All right.  Was there -- were there any
12      indication in the exception reports or other
13      records at the time of transfer about the
14      status of the DJ action?
15  A.  No.
16  Q.  Were there any -- in any of the information
17      that you reviewed in preparation for the
18      deposition, was there any discussion about the
19      enforceability of the mortgage and that
20      transfer from Selene to Fay?
21  A.  Nothing in that -- in the boarding record, no.
22  Q.  In any other records at that time?  Were there
23      any other records from Fay -- I'm sorry --
24      from Selene to Fay --
25  A.  No.

Page 38

1   Q.  -- of the enforceability of the mortgage?
2   A.  No.
3   Q.  All right.
4           MR. ROBINSON:  I think we -- we've been
5       going almost an hour, and counsel wanted to go
6       off the record.  So why don't we take five
7       minutes to take a break, if that's enough for
8       everybody?
9           MS. LONGORIA:  That's fine.  I just --
10      there's just something I need to point out on
11      your docs.  It's not going to take a second.
12          MR. ROBINSON:  Okay.  Well, I'm okay
13      taking a five-minute break.
14          MS. LONGORIA:  Okay.
15          MR. ROBINSON:  And you can let us know
16      what you want to let us know.
17          MS. LONGORIA:  That's fine.
18          MR. ROBINSON:  We'll go off the record.
19          THE VIDEOGRAPHER:  Going off the record
20      at 10:30.
21          (Brief recess taken.)
22          (Deposition Exhibit No. 1 for
23      identification.)
24          THE VIDEOGRAPHER:  We're going back on
25      the record.  The time is 10:37.

Page 39

1       BY MR. ROBINSON:
2   Q.  So, Mr. Paterno, I've shown you what was
3       premarked as Exhibit 1.
4           When you're ready, let me know.
5   A.  I'm ready.
6   Q.  Have you seen Exhibit 1 before today?
7   A.  Yes, I have.
8   Q.  And can you generally identify it for me?
9   A.  These are the Counter -- Counter Defendants'
10      Responses to Counter Plaintiff.
11  Q.  Okay.  And did you in your review of it before
12      today's deposition identify any errors or
13      mistakes?
14  A.  None that I noticed.
15  Q.  And if you go to page 22 of 23.
16  A.  (Witness complying) I have that.
17  Q.  And it has a signature line there, is that
18      correct, for an attorney representing the
19      counter defendants?
20  A.  Yes.
21  Q.  And -- and was Ms. Longoria authorized to file
22      this response and answer to the counterclaim
23      on behalf of Fay Servicing and the trust?
24  A.  Yes, sir.
25  Q.  And then if you go to page 20 of 23.

Page 40

1   A.  (Witness complying) I have that.
2   Q.  There's a section titled:  Affirmative
3       Defenses to Counterclaims.
4           Do you see that?
5   A.  I see that.
6   Q.  So I have some questions for you about this.
7           On the second defense that's listed
8       there, do you -- do you -- can you identify
9       for me any facts in support of the second
10      defense?
11          MS. LONGORIA:  Oh, objection.
12      BY MR. ROBINSON:
13  Q.  Do you understand the question?
14  A.  I do understand the question.  And -- and
15      again, I would just respond that that's more
16      of a legal argument and not anything that I
17      would have an answer for.
18  Q.  Right.  I'm not asking for legal opinions.
19      I'm just asking for facts.
20          So do you know any facts in support of
21      the second defense?
22  A.  Not at this moment.  I don't -- I don't know
23      at this moment.
24  Q.  In your preparation for the deposition, did
25      you see any documents signed by Ms. Howe that

Page 41

1       she had released any claims that she had
2       against the trust or Fay Servicing?
3   A.  Not that I was aware of.
4   Q.  Did you see any documents showing that
5       Ms. Howe had acquiesced to her claims against
6       Fay Servicing and the trust in preparation for
7       the deposition?
8   A.  Not that I saw.
9   Q.  Did you see any documents that Ms. Howe had
10      ratified the conduct of Fay Servicing or the
11      trust in preparation for the deposition in any
12      document?
13  A.  Not that I saw.
14  Q.  All right.  In the third defense, do you know
15      any facts in support of the third defense?
16  A.  Not at this time.
17  Q.  And do you know any facts in support of the
18      fourth defense?
19  A.  Not at this time.
20  Q.  Do you know any facts in support of the fifth
21      defense?
22  A.  Not at this time.
23  Q.  And continuing on page 21 of 23, do you know
24      any facts in support of the sixth defense?
25  A.  Not at this time.

Wilmington Trust N.A. vs Howe
VIA MICHAEL PATERNO, 30(B)(6) OF FAY SERVICING, LLC on 05/31/2023                    Pages 42..45

Page 42

1   Q.  Do you know any facts in support of the
2       seventh defense?
3   A.  Not at this time.
4   Q.  And do you know any facts in support of the
5       eighth defense?
6   A.  Not at this time.
7   Q.  Do you know any facts in support of the ninth
8       defense?
9   A.  Not at this time.
10  Q.  Do you know any facts in support of the tenth
11      defense?
12  A.  Not at this time.
13  Q.  Do you know any facts in support of the
14      eleventh defense?
15  A.  Not at this time.
16  Q.  Do you know any facts in support of the
17      twelfth defense?
18  A.  Not at this time.
19  Q.  Do you know any facts in support of the
20      thirteenth defense?
21  A.  Not at this time.
22          MR. ROBINSON:  Let's go to Exhibits 3,
23      3-A, 3-B, 3-C, Mr. Steed.
24          (Deposition Exhibit Nos.  3, 3-A, 3-B,
25      3-C were marked for identification.)

Page 43

1           MS. LONGORIA:  I can pull them out.
2   BY MR. ROBINSON:
3   Q.  So, Mr. Paterno, I think you've looked at
4       Exhibit 3.  There's three exhibits to that.
5       So those are 3-A, 3-B and 3-C for the purpose
6       of the deposition.  Some of them I think
7       you've already seen.
8           Take your time and let me know when
9       you're ready.
10  A.  (Reviewing documents) Okay.
11  Q.  Are you ready, Mr. Paterno?
12  A.  Yes.
13  Q.  Mr. Paterno, did Fay Servicing receive a copy
14      of Exhibit 3 on or about December 6, 2021?
15  A.  Yes.
16  Q.  And would you agree with me that if you go to
17      the end of that document, which is page 30 or
18      31 -- 30 and 31, it identifies Mr. Steed as
19      counsel for Ms. Howe; is that correct?
20  A.  Yes, it does.
21  Q.  All right.  So did Fay Servicing know on or
22      about December 6, 2021, that Mr. Steed was
23      representing Ms. Howe?
24  A.  Yes.
25  Q.  Do you know why Fay Servicing continues to

Page 44

1       communicate directly to Ms. Howe about the
2       Howe loan when it knows she's represented by
3       counsel?
4   A.  That I do not.
5   Q.  Is that part of Fay Servicing's policy,
6       practices, and procedures to continue to
7       communicate directly with the borrower it
8       knows is represented by counsel about the
9       mortgage debt?
10  A.  It is our policy to communicate with the
11      attorney; and also, I don't know that there is
12      any written communication that we were to
13      cease and desist in discussing with the
14      borrower.  And if we're not getting any
15      responses from counsel or -- we would try to
16      still communicate with the borrower.
17  Q.  Okay.  And is Fay Servicing aware of any laws
18      governing its communications with borrowers?
19  A.  Can you repeat your question?
20  Q.  Sure.
21          Is Fay Servicing aware of any laws
22      governing when it may communicate with
23      borrowers who are represented by counsel?
24  A.  Off the top of my head I don't know which they
25      are.  I'm sure that there are some types of

Page 45

1       laws in that regard.
2   Q.  Does Fay Servicing have a policy, practice,
3       and procedure for compliance with the Fair
4       Debt Collection Practices Act?
5   A.  Yes.
6   Q.  All right.  And did you see that produced in
7       any of the discovery by Fay Servicing in this
8       case?
9   A.  Again not that I recall.
10  Q.  If you look at Exhibit 3 -- what we marked as
11      3-A, that appears, I believe, to be the same
12      motion to amend and what I call the margin we
13      referred to earlier; is that correct?
14  A.  I'm sorry, sir, can you repeat that?
15  Q.  Sure.
16          If you look at Exhibit 3-A, that appears
17      to be the same motion to amend that was filed
18      in the DJ action along with the -- what I
19      called -- referred to as the margin order.
20  A.  Yes.
21  Q.  Is that correct?
22  A.  That appears to be the same copy.
23  Q.  All right.  And Exhibit B -- 3-B, sorry, have
24      you seen that before today?
25  A.  This particular one I don't recall seeing.

Page 46

1  Q.  Okay.  And it identifies an opposition to the
2      motion, I believe, filed on behalf of Ms. Howe
3      by Pine Tree Legal Assistance, Inc.
4          Do you see that?  It's on page 4 of 4 of
5      that exhibit.
6          Do you see that?
7  A.  Yes.
8  Q.  And then if you look at Exhibit C, 3-C, I
9      believe those are the documents which we had
10     on a prior exhibit related to the DJ action;
11     is that correct?
12 A.  They do look like docket entries.  I didn't
13     compare them to the prior document.
14 Q.  Did -- did you talk, in preparing for today's
15     deposition, from -- anybody from MTGLQ
16     Investors, LP?
17 A.  No.
18 Q.  Do you know who that entity is?
19 A.  I believe they were the owner prior to the
20     current trust.
21 Q.  And did Fay Servicing receive any documents as
22     part of that boarding process you generally
23     described earlier from MTGLQ Investors, LP?
24 A.  Only what would have been part of the board
25     from their servicer Selene.

Page 47

1  Q.  All right.  So if I'm understanding you
2      correctly, the documents that Fay has received
3      from Selene but not from MTGLQ directly --
4  A.  Correct.
5  Q.  -- right?
6  A.  Correct.
7  Q.  Did you talk to anybody at Nationstar Mortgage
8      before -- in preparation for today's
9      deposition?
10 A.  I did not.
11     MR. ROBINSON:  Let's cover Exhibit 6.
12         (Deposition Exhibit No. 6 for
13     identification.)
14     BY MR. ROBINSON:
15 Q.  Actually, Mr. Paterno, can you hold on a
16     minute on Exhibit 6?
17         Let's go back to 3-B, and then we'll be
18     done with that one.
19         What I'm referring to is the margin order
20     on Exhibit 3-B.  That would be below Mr.
21     Selkowitz signature line.
22         Do you agree with me that that margin
23     order says that the case was dismissed with
24     prejudice?
25 A.  It looks to be that way.  It's kind of hard to

Page 48

1      read, but it does look like that's what it
2      says.
3  Q.  And did you review Exhibit 3-A before today's
4      deposition, the motion to amend judgment and
5      margin order?
6  A.  This one I believe I saw beforehand, yes.
7  Q.  In your review of that is your understanding
8      that the trust was seeking to have the case
9      dismissed without prejudice as opposed to with
10     prejudice?
11         Let me withdraw that question so I can be
12     more accurate for you.
13         If you look at the wherefore clause on
14     that motion, which is the second, page 2 of 2
15     on the ECF thing.  It says:  Wherefore
16     Wilmington seeks to amend the judgment of
17     dismissal with prejudice pursuant to M.R.
18     Civ.P. 59(e) to specify the dismissal with
19     prejudice is as to the claims advanced in this
20     case.
21         Do you see that?
22 A.  I see that.
23 Q.  So did the trust understand on March 11, 2020,
24     that its claims in the DJ action had been
25     dismissed with prejudice?

Page 49

1  A.  It's specified here.  Whether they understood
2      that or not, that I don't know.  I mean, that
3      would be discussed with counsel.
4  Q.  All right.  Do you have any reason to believe
5      that counsel is filing a motion with
6      something -- based on an understanding they
7      didn't actually have?
8  A.  I would think not.
9  Q.  All right.  And if you look down in the margin
10     order, the second paragraph of that, I
11     believe, states as follows:  Motion to
12     amendment judgment is dismissed as untimely.
13     If timely, the motion to amend judgment would
14     be denied.
15         Would you agree with me that's what it
16     appears to say in that margin order on
17     Exhibit 3-A?
18 A.  Can you repeat that because I'm -- it's hard
19     for me to read.
20         And you're talking about the second part
21     of that order, correct?
22 Q.  Correct, correct.  I can read it slower.  Just
23     trying to -- it is handwriting, but I think
24     it's clear.  It's just you and I aren't used
25     to cursive anymore, so...

Page 50

1   A.  Good cursive, yes.
2   Q.  It says, I believe:  Motion to amend judgment
3       is dismissed as untimely.  If timely, comma,
4       the motion to amend judgment would be denied,
5       period.
6   A.  Okay.  That -- that does look like what it
7       says.
8   Q.  Okay.  And so -- and that's again dated
9       April 7th, 2021, correct?
10  A.  Correct.
11  Q.  All right.  And Fay and the trust were aware
12      of that order on or after April 7, 2021,
13      correct?
14  A.  Yes, I would imagine so.
15  Q.  All right.  And they were aware of the order
16      that was on Exhibit 3-B, that margin order
17      there, as well, correct?
18  A.  Again I would imagine so.
19  Q.  All right.  And neither of those margin orders
20      that were on Exhibit 3-A or 3-B were disclosed
21      in the complaint filed by the trust as
22      authorized by Fay Servicing in this case; is
23      that right?
24          MS. LONGORIA:  Objection.
25  A.  Again I -- in going back to some of the

Page 51

1       questions we had earlier on the complaint,
2       I -- I don't believe that they were in there.
3   BY MR. ROBINSON:
4   Q.  Okay.  And you understood that question,
5       correct?
6   A.  Yes.
7   Q.  All right.  Let's -- let's go to Exhibit 6,
8       which I think Mr. Steed showed you.
9   A.  Okay.  I have that.
10  Q.  Could you identify that document for me?
11  A.  There are two separate documents here.  The
12      first two pages of Exhibit 6 are the required
13      404 notice which is sent to a borrower when
14      the loan -- when there is a loan sale of their
15      loan.  That tells them who the new owner of
16      that loan is.  The rest of the pages behind 1
17      and 2 are the Fay welcome letter.
18  Q.  So -- okay.  So on the first two pages the
19      4 -- what you called the 404 notice?
20  A.  Yes.
21  Q.  That's dated August 28, 2017, correct?
22  A.  Correct.
23  Q.  And what was the status of -- does it say in
24      the 404 notice the date that the loan was
25      actually sold?

Page 52

1   A.  Yes.  In the first box on page 1 at the bottom
2       of the page, Loan Information, it does specify
3       date your loan was sold to the new lender was
4       8/8/2017.
5   Q.  All right.  And do you have any reason to
6       believe that that's inaccurate?
7   A.  No, sir.
8   Q.  All right.  And as of August 8, 2017, what was
9       the status of the Howe loan?  Was it in
10      default or current or some other status?
11  A.  That loan was in default.
12  Q.  All right.  So at the time of the sale of the
13      loan, it was in default?
14  A.  Correct.
15  Q.  And the trust acquired it when it was in
16      default?
17  A.  That is correct.
18  Q.  Does Fay Servicing know the status -- well,
19      let me ask you this.
20          Does Fay Servicing collect on behalf of
21      the trust, this MFRA Trust 2015-1, for all of
22      its mortgage loans or just some of them?
23  A.  That I do not know.  I don't know if we're
24      their sole servicer.
25  Q.  And does -- does Fay Servicing identify in its

Page 53

1       system of record that you testified about
2       earlier, MSP, the date a loan is transferred
3       from one investor or owner to another?
4   A.  Yes.
5   Q.  And so would Fay Servicing have an MSP the
6       date -- the same date that the Howe loan
7       transferred, August 8th, 2017?
8   A.  In this particular case, the loan sale in MSP
9       is only registered when the sale happens if
10      Fay is the servicer at that time.  This --
11      this particular loan sale happened right at
12      the time that the transfer took place.  So the
13      transfer actually took place the month later.
14      So this was all in the process of the
15      onboarding and when the boarding started.  So
16      MSP would not show that change in ownership at
17      that time.
18          It will show the date we acquired as
19      servicer but not when the loan was sold.  Only
20      if it were sold after the servicing date when
21      we started.
22  Q.  Okay.  The -- but Exhibit 6 was sent by Fay
23      Servicing before the servicing transfer to
24      Mrs. Howe; isn't that right?
25  A.  Correct.

Wilmington Trust N.A. vs Howe
VIA MICHAEL PATERNO, 30(B)(6) OF FAY SERVICING, LLC on 05/31/2023          Pages 54..57

Page 54

1  Q.  All right.  So it's not even the servicer, but
2      it's sending her on August 28, 2017, the 404
3      notice.
4  A.  **Well, again, because the transaction took**
5      **place and took place during the boarding**
6      **process at the time when Fay was becoming**
7      **servicer.  So we would send the 404 notice.**
8      **It would not be noted in MSP when the actual**
9      **date happened.  It would -- it would only show**
10     **that this owner is the owner.**
11 Q.  Would it show -- would any other records
12     maintained by Fay Servicing in the normal
13     course of business identify the transfer date
14     of the Howe loan?
15 A.  **When you say transfer date, are you talking**
16     **about the sale of transfer or the transfer of**
17     **servicing?  Because there are two different...**
18 Q.  No, no, no.  I agree with you.  Thank you for
19     being more precise.
20         Is there any other records in the Fay
21     Servicing systems that would identify the loan
22     sale transfer date of August 8th, 2017?
23 A.  **It would not show that.  It would only show**
24     **that the entity, Wilmington Trust, National**
25     **Association, or as we're going to title it**

Page 55

1      **MFRA, that they were the owner as of the entry**
2      **into the system.  There was no additional sale**
3      **after that or no change to that.  So it will**
4      **just show that MFRA is the owner of the loan.**
5  Q.  All right.  MSP would also show -- it -- could
6      you run a report from MSP that would identify
7      every loan service by Fay Servicing that is
8      owned by MFRA Trust?
9  A.  **Yeah, I would -- I don't -- I have never**
10     **personally done that, but I don't see why it**
11     **couldn't be done.**
12 Q.  Right.  And then -- and MSP, I think you
13     testified, would show the date the servicing
14     transferred to Fay, correct?
15 A.  **Correct.**
16 Q.  And MSP would show the date of default for a
17     loan; is that right?
18 A.  **Yes.**
19 Q.  All right.  So it would be possible for MSP to
20     identify every loan serviced by Fay on behalf
21     of MFRA Trust with the date of default and the
22     date that the servicing transferred to Fay.
23 A.  **Yes.**
24 Q.  And we would know from that report, wouldn't
25     we, of how many loans the trust acquired that

Page 56

1      were in default at least at the time it hired
2      Fay to be the servicer, correct?
3  A.  **Can you repeat that for me?**
4  Q.  Sure.
5          We would know from that information at
6      least every loan serviced by Fay on behalf of
7      MFRA Trust that was in default at the time of
8      the servicing transfer to Fay?
9  A.  **Yes.**
10 Q.  Okay.  Does Fay know what the -- the business
11     of MFRA Trust is?
12 A.  **I mean, I would imagine so.  I specifically**
13     **don't know that though.**
14 Q.  You personally don't know?
15 A.  **Right.**
16 Q.  That -- that's fair.
17         Do you know of any facts that MFRA Trust
18     is not in the business of defying -- of buying
19     and purchasing defaulted mortgage debts?
20 A.  **Can you repeat your question?**
21 Q.  Do you know of any facts that -- to suggest
22     that MFRA Trust is not in the business of
23     buying defaulted mortgage debts?
24 A.  **I do not know.**
25 Q.  All right.  And do you -- if -- you mentioned

Page 57

1      earlier if loans are modified or -- in some
2      way, that's one form of loss mitigation,
3      correct?
4  A.  **Correct.**
5  Q.  Does MFRA intend to hold modified loans for
6      the rest of their term or does it sell those
7      re-performing loans to others on the secondary
8      market?
9  A.  **I would think that that's all based on market**
10     **conditions, and I really don't know their --**
11     **their plan for that.**
12 Q.  Where would you go to get the answer to that
13     question, if you wanted to know?
14 A.  **I would have to go back to somebody at MFA, I**
15     **would imagine.**
16 Q.  Right.  Would you go to anybody at Wilmington
17     Trust?
18 A.  **Yeah, honestly I really don't know in that**
19     **regard.**
20 Q.  Do you know if Wilmington Trust controls MFRA
21     or has any management responsibilities for
22     MFRA?
23 A.  **Only management in regard to POA assignment**
24     **or -- or, you know, contracting the POA with**
25     **Fay Servicing and hiring Fay Servicing, or a**

Page 58

1  servicer for that matter; and they would also
2  be responsible for some documents of the
3  trust.
4  Q. Okay.  So -- and by POA do mean power of
5     attorney?
6  A. Yes.
7  Q. All right.  So your understanding is that
8     Wilmington Trust, National Association's
9     responsibilities relate to power of attorneys
10    and the trust documents related to MFRA Trust
11    2015-1; is that right?
12 A. Correct.
13        MR. ROBINSON:  Let's go to Exhibit 8.
14        (Deposition Exhibit No. 8 for
15    identification.)
16        THE WITNESS:  Okay.
17 BY MR. ROBINSON:
18 Q. Mr. Paterno, have you seen what was marked as
19    Exhibit 8 before today?
20 A. Yes, I have.
21 Q. Can you generally identify that for me?
22 A. This is the, what I would call, a demand
23    letter or in this case it's also a notice of
24    right to cure from the attorney.
25 Q. Okay.  And did Fay authorize the attorneys to

Page 59

1     send this to Ms. Howe?
2  A. Yes.
3  Q. And that was on or about April 14th, 2023,
4     correct?
5  A. That is correct.
6  Q. And Fay Servicing knew on April 14th, 2023,
7     that Ms. Howe was represented by Mr. Steed,
8     correct?
9  A. Yes.
10 Q. And do -- do you know why Fay Servicing's
11    attorneys are communicating directly to
12    Ms. Howe when Fay knows that she is
13    represented by Mr. Steed?
14 A. I'm sorry, could you repeat your question for
15    me?
16        MR. ROBINSON:  I'll ask the court
17    reporter to read it back.
18        (Previous question read back by The
19    Reporter.)
20 A. I don't know specifically the answer to that.
21 BY MR. ROBINSON:
22 Q. All right.  Did -- but Fay Servicing
23    authorized its attorneys to communicate
24    directly on or about April 14th, 2023, with
25    Ms. Howe when she was represented by counsel,

Page 60

1     correct?
2  A. We communicated to, yes, have the demand
3     noticed.
4  Q. All right.  And if you go to -- the Bates
5     numbers on this one just have numbers at the
6     bottom, and it's 2383, I think.
7  A. I see that.
8  Q. It's the last page of the letter, right?
9  A. 2383, I have that.
10 Q. All right.  And there's some initials there,
11    MMK.
12        Do you know who that is?
13 A. I do not off the top of my head, no.
14 Q. All right.  And then there's a cc.  That's
15    old-fashioned lingo for carbon copy.
16        Would you agree with me on that?
17 A. Yes.
18 Q. All right.  And it identifies the client.
19        Who is the client, if you know,
20    referenced in Exhibit 8; the trust or Fay or
21    both?
22 A. I would think that this would be Fay.
23 Q. Okay.  And then it also lists the Bureau of
24    Consumer Credit Protection.
25        Do you see that?

Page 61

1  A. I see that.
2  Q. Would you agree with me that Mr. Steed is
3     neither the client nor the Bureau of Consumer
4     Credit Protection identified on Exhibit 8?
5  A. Yes.
6  Q. Would it -- is there any policy, practice, or
7     procedure by Fay Servicing not to copy
8     attorneys representing the borrowers receiving
9     correspondence similar to Exhibit 8?
10 A. I don't believe that this particular letter
11    would be a policy of Fay Servicing.
12 Q. Okay.
13        MR. ROBINSON:  Let's go to Exhibit 9.
14        (Deposition Exhibit No. 9 for
15    identification.)
16        THE WITNESS:  Okay.
17 BY MR. ROBINSON:
18 Q. Have you seen Exhibit 9 before today?
19 A. Yes, I have.
20 Q. Can you identify it for me?
21 A. Sure.  This is a FDCPA letter that's sent to
22    the borrower.
23 Q. And was sent by Fay Servicing to Ms. Howe; is
24    that correct?
25 A. That is correct.

Wilmington Trust N.A. vs Howe
VIA MICHAEL PATERNO, 30(B)(6) OF FAY SERVICING, LLC on 05/31/2023                    Pages 62..65

Page 62

1  Q.  It's dated September 11th, 2017?
2  A.  **That is correct.**
3  Q.  And -- did you review this in preparation
4      for today's deposition?
5  A.  **Yes, I have seen this before.**
6  Q.  Okay.  And did you identify any errors in it
7      when you reviewed it?
8  A.  **Not to my knowledge, no.**
9  Q.  Okay.  And at the bottom of each page, it
10     states Fay Servicing is a debt collector.
11         Is that a true statement on this
12     correspondence sent by Fay Servicing to Ms.
13     Howe?
14 A.  **Yes, sir.**
15 Q.  Sorry, it broke up, Mr. Paterno.
16 A.  **Yes, sir.**
17         MR. ROBINSON:  All right.  Let's go to
18     Exhibit 10.
19         (Deposition Exhibit No. 10 for
20     identification.)
21 BY MR. ROBINSON:
22 Q.  This one's pretty thick.  You can take your
23     time to look at it, but I just have some
24     general questions about it whenever you're
25     ready.

Page 63

1  A.  **I've seen this before.**
2  Q.  Can you generally describe for me what it is?
3  A.  **This is a -- what they call a flow servicing**
4      **agreement, which is the agreement of servicing**
5      **between Fay and the trust.**
6  Q.  And -- and did -- did Wilmington Trust,
7      National Association, are they a party to this
8      agreement?
9  A.  **Wilmington as trustee, no, I don't believe so.**
10 Q.  So if you go to -- again, it has the little
11     numbers at the bottom for Bates numbers --
12     2273.  It's page 23 of the first part of the
13     exhibit.
14 A.  **(Witness complying) I have that.**
15 Q.  It doesn't appear to have a signature for
16     anybody from Wilmington Trust on there; is
17     that correct?
18 A.  **That is correct.**
19 Q.  And do you know who Loren Morris is?
20 A.  **Mr. Morris is the executive vice president and**
21     **general counsel for Fay Servicing.**
22 Q.  And did you talk to Mr. Morris in preparation
23     for today's deposition?
24 A.  **I did not.**
25 Q.  All right.  And do you know who Peter Kollydas

Page 64

1      is, K-o-l-l-y-d-a-s?
2  A.  **I do not.**
3  Q.  You ever talk to him, to your knowledge?
4  A.  **No, sir.**
5  Q.  All right.  Exhibit 10 is not -- is not, I
6      believe, and correct me if I'm wrong, a
7      management agreement for how the trust is
8      managed; is that correct?
9  A.  **That is correct.**
10 Q.  This Exhibit 10 is how -- is the agreement
11     between the trust or the owners of the trust
12     and Fay Servicing for how loans are serviced,
13     I believe; is that right?
14 A.  **That is correct.**
15         MR. ROBINSON:  And there's a bunch of
16     pages that are blacked out, and we didn't,
17     counsel, receive a privilege log explaining
18     why those were blacked out, I believe.  So I'm
19     assuming that the original is not blacked out.
20         But that's my basic question for the
21     witness.
22         **THE WITNESS:  The original is not blacked**
23     **out.**
24 BY MR. ROBINSON:
25 Q.  Okay.  So I can't -- you don't have -- you

Page 65

1      don't have this document memorized, Mr.
2      Paterno, right?
3  A.  **I do not.**
4  Q.  All right.  And although most documents
5      generally speak for themselves, we don't know
6      what this document says in the blacked out
7      areas, correct?
8  A.  **Correct.**
9  Q.  From -- from the printout.
10 A.  **Correct.**
11         MR. ROBINSON:  We'd probably need,
12     counsel, a privilege log at least some idea of
13     what's behind the blackout to know whether it
14     should be blacked out in the first place.
15         All right.  Let's go to Exhibit 13.
16         (Deposition Exhibit No. 13 for
17     identification.)
18 BY MR. ROBINSON:
19 Q.  Just let me know when you're ready, Mr.
20     Paterno.
21 A.  **I'm ready.**
22 Q.  Have you seen Exhibit 13 before today?
23 A.  **Yes, sir.**
24 Q.  I'm sorry, you broke up again.
25 A.  **Yes, sir.**

Page 66

1  Q.  All right.  And can you identify it for me?
2  A.  **This is a complaint for declaratory relief and**
3      **appointing a receiver for the Challenge**
4      **Financial Investors Corporation.**
5  Q.  Did Fay Servicing authorize this complaint to
6      be filed in the Circuit Court of the
7      Thirteenth Judicial Circuit in and for
8      Hillsbury County -- Hillsborough County,
9      Florida?
10 A.  Yes.
11 Q.  And in the caption of the case, you see the
12     plaintiff and the defendant, correct?
13 A.  Yes.
14 Q.  Did Fay Servicing -- and this was filed on or
15     about, according to the document, I believe --
16     I'm just asking if this is true -- August 26,
17     2022?
18 A.  That would be correct.
19 Q.  And that was after this action that you're
20     here to testify about today commenced,
21     correct?
22         If you want to refresh your memory, look
23     at Exhibit 2.  That might help you.
24         At the top on Exhibit 2 is the ECF.
25 A.  Yes, I see that.  Filed on 9/30 of '21 was

Page 67

1      Exhibit 2.
2  Q.  All right.  So do you know why the Fay
3      Servicing authorized the complaint that we
4      were just reviewing as Exhibit 13 to be filed
5      in the Florida court nearly a year later?
6  A.  I do not.
7  Q.  Did -- did Fay Servicing disclose to the
8      federal court, the United States District
9      Court For the District of Maine, that it was
10     filing other litigation related to the subject
11     matter of the Maine litigation in the Circuit
12     Court in and for Hillsborough County, Florida?
13 A.  I do not know.
14 Q.  And do you think it's honest for Fay Servicing
15     to be maintaining a foreclosure action in the
16     U.S. District Court in Maine for an action to
17     collect on a note in Maine while it's pursuing
18     collateral litigation in Florida without
19     disclosing that to the federal court?
20 A.  Again, I don't know whether that would be
21     right or wrong, as far as the courts go.
22 Q.  Okay.  And in the Florida action on Exhibit 13
23     in that complaint, did Fay Servicing require
24     that Ms. Howe or any other interested party be
25     named in that action?

Page 68

1  A.  I'm sorry, could you repeat that question?
2  Q.  Right.  In the -- in the complaint, Exhibit 13
3      that you're looking at from the Florida case,
4      did Fay Servicing require that Ms. Howe be
5      made a party to that action or at least an
6      interested party?
7  A.  I don't see that they -- that she was.
8  Q.  Right.  Does Fay Servicing take the position
9      that Ms. Howe has no interest in the note and
10     mortgage that's subject to the litigation here
11     in Maine?
12 A.  Again, the scenario behind the actual action
13     taken with the court I -- I don't know whether
14     she should be named or not.
15 Q.  Right.  Is it honest -- did the Florida
16     complaint, Exhibit 13 that you reviewed before
17     today, does that disclose anywhere in that
18     complaint that there's collateral litigation,
19     related litigation pending in the United
20     States District Court for the District of
21     Maine?
22 A.  I don't see that it does.
23 Q.  I'm sorry, what was the answer to that
24     question?
25 A.  I -- I said I don't see that it does.

Page 69

1  Q.  All right.  Is -- is -- was then Fay honest to
2      the Florida court by omitting the information
3      it knew and had in its possession and control
4      about this related case pending in the United
5      States District Court for Maine?
6  A.  Again I don't --
7          MS. LONGORIA:  Objection.
8          THE WITNESS:  Sorry.
9  A.  I -- I don't know that that needs to be
10     specified.
11 BY MR. ROBINSON:
12 Q.  Okay.  And did Fay Servicing retain Adam Diaz,
13     who's on Howe 1028, the last page of that
14     Florida complaint, to represent its interest
15     in the Florida litigation?
16 A.  Yes.
17 Q.  And did Fay Servicing provide Mr. Diaz with
18     all the information about this pending case in
19     the United States District Court in the
20     District of Maine?
21 A.  That I do not know.
22 Q.  Where would you go to get the answer to that
23     question?
24 A.  I'd have to back to Adam.
25 Q.  Okay.  Was there anybody at Fay Servicing that

Page 70

1    you could talk to?
2    A.  Possibly, but I don't know who that would be
3        at this point.
4    Q.  All right.
5            MR. ROBINSON:  Let's go to Exhibit 14.
6            (Deposition Exhibit No. 14 for
7        identification.)
8            THE WITNESS:  Okay.
9        BY MR. ROBINSON:
10   Q.  Let me know when you're ready, Mr. Paterno.
11   A.  I'm ready.
12   Q.  Have you seen Exhibit 14 before today?
13   A.  Yes, I have.
14   Q.  And can you identify that document for me?
15   A.  Exhibit 14 is a motion to appoint the
16       receiver.
17   Q.  Okay.  And it was -- was that filed on Fay's
18       behalf by Mr. Diaz in the Florida action that
19       we were talking about a moment ago?
20   A.  Yes, it was.
21   Q.  And he was authorized to file that motion on
22       Fay's behalf and the trust's behalf?
23   A.  Yes, he is.
24   Q.  All right.  And in that motion to appoint
25       receiver, did Mr. Diaz, Fay or the trust

Page 71

1        identify to the Florida court that Ms. Howe
2        had an interest in the subject matter of that
3        motion?
4    A.  I do not see her named in this motion.
5    Q.  Right.  And if you look at the certificate of
6        service, which is on Howe 1082, she was not
7        even identified on the certificate of service
8        as being sent a copy of this motion on or
9        about January 18th, 2023.
10   A.  I don't see that.
11   Q.  And do you know why she wasn't sent a copy of
12       this motion on or about January 18th, 2023?
13   A.  I do not.
14   Q.  And in this motion is there -- does it
15       identify anywhere the pending litigation in
16       the United States District Court for the
17       District of Maine that you're here testifying
18       about today?
19   A.  I do not see that it does.
20   Q.  And do you know why this motion did not
21       disclose to the Florida court the pending
22       action in Maine?
23   A.  I do not.
24   Q.  Do you believe that it is honest to file a
25       motion without conveying all relevant and

Page 72

1        material facts?
2            MS. LONGORIA:  Objection.
3    A.  Again, I don't know that it would be
4        necessary.
5        BY MR. ROBINSON:
6    Q.  And do you know -- is it -- is it Fay's
7        position that it's honest for it to pursue the
8        Florida litigation without disclosing it to
9        Ms. Howe, who has pending litigation against
10       it and the trust on the same core occurrence?
11           MS. LONGORIA:  Same objection.
12   A.  I'm sorry, can you repeat your question for
13       me?
14       BY MR. ROBINSON:
15   Q.  Do you understand that the Florida action
16       relates to the mortgage and the note that is
17       subject to the action in the United States
18       District Court for the District of Maine?
19   A.  Yes, it does.
20   Q.  All right.  Does -- does Fay normally split
21       its claims to pursue certain claims in one
22       court and other claims related to the same
23       subject matter in a different court?
24           MS. LONGORIA:  Objection.
25   A.  I do not know that to have happened.

Page 73

1        BY MR. ROBINSON:
2    Q.  Okay.  But this -- this motion that we were
3        just looking at was filed on or about
4        January 18th, 2023, correct?
5    A.  That is correct.
6    Q.  All right.  And if you look back at Exhibit 1,
7        the top of Exhibit 1, Fay Servicing and the
8        trust filed their answer in response to the
9        counter complaint three weeks prior on
10       December 28th, '22, correct?
11   A.  Correct.
12   Q.  So it knew -- Fay Servicing knew and the trust
13       knew in January of 2023 that there was already
14       litigation pending in this court that we're
15       testifying about today about the mortgage and
16       the note, correct?
17   A.  Correct.
18   Q.  Why didn't Fay bring its claims in the United
19       States District Court for the District of
20       Maine and instead pursue a secret action in a
21       Florida state court without notice to Ms. Howe
22       or any other interested party?
23           MS. LONGORIA:  Objection.
24   A.  Again, I don't know that it would be relevant
25       for Fay to disclose that.  I don't -- I don't

Page 74

1  know the litigation steps that would -- would
2  be necessary.
3  BY MR. ROBINSON:
4  Q.  Okay.  And has Fay gotten a legal opinion --
5      it's just a yes or no question -- from any
6      attorney stating whether or not it is okay to
7      file pleadings and papers in a court
8      proceeding with omitting material facts?
9           MS. LONGORIA:  Objection.
10 A.  That I do not know.
11 BY MR. ROBINSON:
12 Q.  Where would you go to get the answer to that
13     question?
14 A.  To the attorney.
15 Q.  Okay.  And in preparation for today's
16     deposition, you did not talk to Mr. Diaz; is
17     that correct?
18 A.  That is correct.
19           MR. ROBINSON:  Let's look at Exhibit 15
20     and 16, Mr. Steed.
21          (Deposition Exhibit No. 15 for
22      identification.)
23          (Deposition Exhibit No. 16 for
24      identification.)
25           MR. STEED:  Just got two more boxes of

Page 75

1  exhibits.
2           THE WITNESS:  Okay.
3  BY MR. ROBINSON:
4  Q.  Have you seen, Mr. Paterno, Exhibits 15 and 16
5      before today's deposition?
6  A.  I have seen 15.  I don't recall whether I've
7      seen 16.
8  Q.  Okay.  So if you want to take a moment to look
9      at 16.  I'll just represent to you it's docket
10     entries that we produced in discovery,
11     Ms. Howe did, from the Florida action.  But
12     since you haven't seen those today, if you
13     want to take a moment to look at those and let
14     me know when you're ready.
15 A.  (Witness complying) Okay.
16 Q.  So according to Exhibits 15 -- well, what is
17     15?
18           What is your understanding of Exhibit 15?
19 A.  15 is the order granting the motion to appoint
20     the receiver.
21 Q.  And it has a service list attached to it,
22     correct?
23 A.  There is a service list attached.
24 Q.  All right.  And did -- is Ms. Howe identified
25     on the service list or Mr. Steed?

Page 76

1  A.  No.
2  Q.  But at the time this order was sought and the
3      order was entered, Fay and the trust both knew
4      that Ms. Howe and Ms. -- had an interest in
5      this -- in the subject matter of the Florida
6      action and was represented by Mr. Steed,
7      correct?
8  A.  She had an interest in the Maine action.  I
9      don't understand your question.
10 Q.  Well, what's the -- what's the subject matter
11     of the Florida -- I'm sorry, go ahead.
12 A.  I didn't understand your question.  If you
13     could repeat the question.
14 Q.  Sure.  What's your understanding of the
15     purpose of the Florida action?
16 A.  To allow the defunct originator of the loan
17     who was assigned by MERS to bypass the MERS
18     assignment so that the assignment could be --
19     the mortgage could be assigned to the entity
20     that owns the loan.
21 Q.  All right.  And in the Florida -- so the loan
22     in that answer you just provided is the Howe
23     loan, correct?
24 A.  Yes.
25 Q.  And that Howe loan is memorialized into a note

Page 77

1  and a mortgage that we went over earlier as
2  Exhibits 4 and 5, right?
3  A.  Correct.
4  Q.  All right.  And in the Florida action did Fay
5      or the trust add Nationstar Mortgage as a
6      party to that action?
7  A.  No, I don't believe so.
8  Q.  Did it identify Selene Finance as a party,
9      interested or otherwise, to that action?
10 A.  No.
11 Q.  Did it identify, I think it was, MTLGQ as a
12     party to that action?
13 A.  No.
14 Q.  And would -- would you agree with me that
15     Nationstar, Selene, and MTLGQ were all prior
16     predecessors to Fay Servicing and the trust
17     either as a servicer or as the owner of this
18     loan?
19 A.  As a servicer or owner, yes.
20 Q.  Okay.  But they were not made parties to the
21     DJ action, the declaratory action in Florida,
22     correct?
23 A.  Correct.
24 Q.  All right.  Now, if you look at Exhibit 16,
25     those are the Florida actions docket entries.

Page 78

1    If you see at the top, it identifies case type
2    as the declaratory judgment action.
3  A. I see that.
4  Q. Is -- is it Fay Servicing's understanding that
5    it may obtain a declaratory judgment about a
6    matter without notifying all potential
7    interested persons?
8      MS. LONGORIA:  Objection.
9  A. Again, I don't know the legality behind that.
10     BY MR. ROBINSON:
11 Q. Okay.  In looking at those docket entries, do
12    you see any docket entries of notices to Ms.
13    Howe or any other person besides the defunct
14    mortgage company?
15 A. I do not.
16 Q. Do you know if Mr. Diaz represented to the
17    Florida court that all necessary persons were
18    made party to the Florida action for the
19    purposes of the Florida court's relief that
20    was granted?
21 A. That I do not know.
22 Q. All right.
23     MR. ROBINSON:  All right.  Let me -- I'm
24    going to ask one more question then we'll take
25    a break, and I'm thinking I'm going to wrap up

Page 79

1    just before 12.  Okay?  So I missed something
2    earlier.
3      BY MR. ROBINSON:
4  Q. So go back to Exhibit 8.
5  A. (Witness complying) Okay.
6  Q. Exhibit 8 was mailed, we went over earlier, to
7    multiple people including Ms. Howe.
8      Do you see that?
9  A. Yes.
10 Q. Ms. Howe lives at the property address that's
11    also identified on the letter, 334 Deerwander
12    Road, Hollis Center, Maine?
13 A. I see that.
14 Q. Does Fay Servicing have any reason to believe
15    that she lives somewhere else?
16 A. I did not review that, so I don't -- I don't
17    know.
18 Q. Do you know why Fay Servicing decided -- or
19    its attorneys decided to send this letter to
20    Ms. Howe's mother in Illinois?
21 A. That I do not know.
22 Q. And is it Fay's normal practice -- policy,
23    practice, and procedure to send default
24    correspondence about borrowers to their
25    parents?

Page 80

1  A. No, unless they were specified to live with
2    their parents.
3  Q. Okay.  But is -- is Ms. Howe's mother a party
4    to the mortgage or note that we've gone over
5    earlier, Exhibits 5 and 6?
6  A. Not to my knowledge.
7  Q. Did you see any correspondence in the file
8    authorizing Fay Servicing to communicate with
9    Ms. Howe's mother about the mortgage?
10 A. Again I didn't review that part.  I didn't --
11    wasn't anticipating that to be part of today,
12    so I didn't look at that.
13 Q. Okay.  But just in your review of whatever
14    documents you did review over the course of
15    ten hours or so that you testified about
16    earlier, did you see any authorizations for
17    Fay Servicing or any agents, including its
18    attorneys on its behalf, to communicate with
19    Ms. Howe's mother about this mortgage?
20 A. I -- I didn't see anything.
21 Q. All right.  Would you want your mortgage
22    company to contact your mother if you were
23    having trouble with your mortgage situation?
24 A. Well, the latter wouldn't be happening, but
25    no.

Page 81

1      MR. ROBINSON:  All right.  Let's go off
2    the record.  I'll get organized, and we'll try
3    to wrap up probably less than 30 minutes.
4      THE VIDEOGRAPHER:  Going off the record.
5    The time is 11:44.
6      (Brief recess taken.)
7      THE VIDEOGRAPHER:  We are back on the
8    record.  The time is 11:55.
9      BY MR. ROBINSON:
10 Q. Okay.  So, Mr. Paterno, I'm going to ask Mr.
11    Steed to show you Exhibit 19.
12     (Deposition Exhibit No. 19 for
13    identification.)
14 Q. And these are a series of periodic statements
15    that I'm going to kind of go through with you
16    generally.  So if you want to take a moment to
17    look at them generally and let me know when
18    you're ready.
19 A. (Witness complying) Okay.  I'm ready.
20 Q. So, Mr. Paterno, if you could -- would you
21    agree with me that generally Exhibit 19
22    include a series of periodic statements?
23 A. Yes, I would agree.
24 Q. All right.  And each of them are dated --
25    they're several pages long and they're dated

Page 82

1    on the first page at the top right; is that
2    correct?
3  A.  That is correct.
4  Q.  I just kind of want to walk through them
5      generally for some information on each of
6      those.
7          So I think the first one on the top of
8      the exhibit is dated December 10, 2020; is
9      that correct?
10 A.  That is correct.
11 Q.  All right.  And then -- and this was sent by
12     Fay to Ms. Howe at the property address; is
13     that right?
14 A.  That is correct.
15 Q.  And within the -- there's different sections
16     to each periodic statement.
17         There's a section called Delinquency
18     Notice.
19         Do you see that?
20 A.  Yes.
21 Q.  And within that section there is, you know, a
22     description about foreclosure.
23         Do you see that?
24 A.  In the last paragraph of that section; is that
25     what you're referring to?

Page 83

1  Q.  Yeah.
2  A.  Yes.
3  Q.  Was -- was Fay communicating to Ms. Howe in
4      this notice of its right to foreclose?
5  A.  That is just a standard notice that's in
6      the -- in that section.  It's standard in all
7      the statements.  It's not --
8  Q.  Okay.
9  A.  -- specific to the loan.
10 Q.  Is there any notice on the periodic statement
11     from December 10, 2020, stating we do not have
12     the right to foreclose?
13 A.  No, I don't see that.
14 Q.  Okay.  And if you go to the second page of
15     that statement, at the bottom it has a
16     statement that Fay Servicing, LLC, is a debt
17     collector.
18 A.  That is correct.
19 Q.  Okay.  Is there any -- is that inaccurate or
20     is that accurate?
21 A.  That's accurate.
22 Q.  All right.  If you go to the next statement,
23     is that one dated January 11, 2021?
24 A.  Yes, it is.
25 Q.  All right.  And it appears to be generally the

Page 84

1    same form and has the same information and the
2    delinquency notice about foreclosure and the
3    same statement about debt collector on the
4    second page; is that right?
5  A.  That is correct.
6  Q.  All right.  And then the next statement, I
7      believe, is February 10, 2021.
8  A.  That's correct.
9  Q.  And then the one after that is March 10, 2021?
10 A.  Correct.
11 Q.  And the one after that is April 10th, 2021?
12 A.  That is correct.
13 Q.  And then we have May 10th, 2021?
14 A.  Correct.
15 Q.  Then we have June 10th, 2021?
16 A.  Correct.
17 Q.  Then we have July 10th, 2021?
18 A.  That is correct.
19 Q.  And I'm just going to stop there for a moment
20     in that exhibit.  They all generally have the
21     same delinquency notice with a reference to
22     foreclosure and each identify Fay Servicing as
23     a debt collector, is that right, all those
24     statements that we just reviewed generally?
25 A.  That is correct.

Page 85

1  Q.  All right.  And then -- then the format of the
2      statements changed in August of 2021 within
3      that exhibit, right?
4  A.  That is correct.
5  Q.  And that statement from August 10th, 2021, was
6      sent to Ms. Howe at the property address,
7      right?
8  A.  Yes, it was.
9  Q.  And on the second page of that August
10     statement in the disclosure section it says:
11     Fay Servicing, LLC, is a debt collector,
12     right?
13 A.  That is correct.
14 Q.  All right.  And then the next statement is
15     September 11th, 2021?
16 A.  Correct.
17 Q.  October 11th, 2021?
18 A.  That is correct.
19 Q.  November 10th, 2021?
20 A.  That is correct.
21 Q.  December 11th, 2021?
22 A.  Correct.
23 Q.  And I think that's the -- that's it for that
24     exhibit; is that right?
25 A.  That is correct.

Wilmington Trust N.A. vs Howe
VIA MICHAEL PATERNO, 30(B)(6) OF FAY SERVICING, LLC on 05/31/2023      Pages 86..89

Page 86

1  Q. All right.  And those last statements that we
2     went over from September through December they
3     also identify Fay Servicing as a debt
4     collector, correct?
5  A. Yes.  On page -- on the second page of each
6     statement under disclosures.
7  Q. Right.  And then let's look at December 11th,
8     2021.
9  A. (Witness complying)
10 Q. There's a section on that statement titled:
11    Transactional -- Transaction Activity.
12       Could you share with me what's that
13    information that Fay is conveying to Ms. Howe
14    on that statement within the transaction
15    activity section?
16 A. So in a transaction activity there from
17    11/11/21 through the date of the statement
18    12/11/21 there is -- there were transactions
19    for foreclosure attorney fee for $250.  There
20    were foreclosure fees and costs at two
21    entries; one for 265, and the other one for
22    67.28.  And the loan has mortgage insurance,
23    and there was mortgage insurance paid for
24    34.67.
25 Q. Okay.  But Fay's position, according to this

Page 87

1     statement, is it had in December and November
2     of 2021 the right to foreclose; is that right?
3  A. Yes.
4  Q. And the right to foreclose though comes out of
5     the mortgage, not the note; is that right?
6  A. The note specifies default, yes; but the -- I
7     think the -- the actual procedure would be on
8     the mortgage.
9  Q. Right.  And in the complaint that was filed on
10    behalf of the trust with the authority of Fay,
11    Exhibit 13 in Florida, that -- that complaint
12    says, we cannot foreclose without the relief
13    that we're requesting in Florida, doesn't it?
14       And if you want to review Exhibit 13,
15    you're welcome to.
16 A. I'd have to -- if you can point me to that.  I
17    mean, I --
18       MR. STEED:  Here it is.
19 BY MR. ROBINSON:
20 Q. So if you can look at paragraphs 17, 18.
21 A. 17 states:  Plaintiff holds the original note
22    evidencing the mortgage loan and thus seeks
23    the appointment of a receiver to obtain an
24    assignment reflecting its valid interest in
25    the mortgage for the purpose of foreclosing

Page 88

1     the same.
2        18 says:  Since 2014 unique case law in
3     Maine provides, inter alia, that an assignment
4     of mortgage from MERS isn't effective to
5     establish the standing necessary to enable the
6     assignee to initiate foreclosure proceedings,
7     that -- and that only an assignment directly
8     from the originating lender will permit the
9     assignee to foreclose the mortgage.
10 Q. All right.  So you -- you just read from the
11    paragraphs in Exhibit 13, which was the
12    complaint, the DJ action filed in Florida,
13    correct?
14 A. Correct.  Exhibit 13, No. 17 and 18.
15 Q. Right.  So in that complaint filed by the
16    trust with the authority of Fay in Florida,
17    there's an admission that there's no right to
18    foreclose but for the relief requested by the
19    Florida court, correct?
20 A. I think the document speaks for itself, yes.
21 Q. And does Fay think it's fair to be charging
22    foreclosure fees in 2021 when it knows and has
23    stated so to the Florida court that it has no
24    right to foreclosure without relief that it
25    was seeking in Florida later, a year later?

Page 89

1  A. I'm sorry, you'll have to repeat your question
2     for me.
3  Q. Sure.
4        Does Fay think it's fair to be charging
5     foreclosure fees when it doesn't have the
6     right to foreclose by its own admission in the
7     complaint filed in Florida a year later?
8  A. I do not specifically know the foreclosure
9     fees that are included in the December 11,
10    2021, statement and whether those are fair or
11    unfair.  I have no -- no knowledge to that.
12 Q. Okay.
13       MR. ROBINSON:  Let's go to Exhibit 20.
14       (Deposition Exhibit No. 20 for
15    identification.)
16 BY MR. ROBINSON:
17 Q. So, Mr. Paterno, these are another group of
18    statements.  I think what I'm going to let you
19    do just for identification purposes if you can
20    go through them and just identify the dates of
21    each of the statements, and then I'm going to
22    ask a couple general questions.  But take as
23    long as you want to look at it.
24 A. If I'm not mistaken, the first three were part
25    of Exhibit 19, as well; is that correct?

Page 90

1   Q.  I think so.  That's why I wanted you to
2       identify them, because I think there's some
3       duplication by inadvertent error on our part.
4   A.  Okay.  So the first statement October 11, '21;
5       the second is November 10th, '21; and then
6       the third, which we just discussed, is
7       December 11, 2021.  So those are the same
8       three that were in the previous exhibit.
9   Q.  Yeah, I think it's December 12th in this one
10      honestly, or maybe I'm -- I'm sorry, I'm
11      looking at the wrong year.  You're right, I'm
12      wrong.  I was looking at the wrong year.
13  A.  And then there's also a blank page, which
14      wasn't in the other exhibit.
15  Q.  So why don't you just run through that
16      Exhibit 20 and just read to me the rest of
17      those statements -- the dates of those
18      statements.
19  A.  After the ones we just talked about.  You
20      don't want to go back through those.  Okay.
21  Q.  Correct.
22  A.  Okay.  So the remainder of Exhibit 20 are
23      statements from Fay to the borrower at the
24      property address.  And the first one is dated
25      January 10th, 2022; February 10th, 2022, is

Page 91

1       the second one; the third one is March 10th,
2       2022; the fourth one, April 11th, 2022; then
3       May 10th of 2022; June 10th of 2022; July 8th
4       of 2022; August 10th, 2022; September 9th,
5       2022; October 7th of 2022; November 7th of
6       2022; December 12th of 2022.  And we have
7       January 10th of 2023; February 10th of 2023;
8       and finally March 10th of 2023.
9   Q.  All right.  So those statements in Exhibit 20
10      from January 10, 2022, through March of 2023
11      were sent by Fay to Ms. Howe at the property
12      address, correct?
13  A.  Correct.
14  Q.  Some of those statements identify additional
15      foreclosure costs, correct?  And that would be
16      identified in the transaction activity section
17      of those statements.
18  A.  I do see on January 10th some references to
19      foreclosure fees.  I don't see any on February
20      and March.  I don't see any in April.  I don't
21      see any in May.  None in June.  None in July.
22      None in August.  I don't see any in September.
23      There are a couple of references on the
24      October 7th statement for foreclosure.  There
25      are none in November.  None in December.  None

Page 92

1       in January of '23.  None in February of '23.
2       And none in March of '23.
3   Q.  Right.  And -- and when you were -- the ones
4       that you did identify where there were
5       foreclosure costs, those were within the
6       transaction activity section of those
7       statements, right?
8   A.  That is correct.
9   Q.  Right.  And then on multiple of those
10      transaction activity sections of those same
11      statements from January of '22 through March
12      of '23, there's property inspection fees
13      identified, as well, right?
14  A.  Yes.
15  Q.  And what are those -- what's a property
16      inspection fee?
17  A.  When a property is in default a -- we send out
18      an inspector to just see if the property is
19      still occupied, you know, and if there's
20      anything that is being -- you know, if it --
21      if it -- if it becomes unoccupied, then it has
22      a tendency to be either vandalized or
23      something to that effect, so we want to make
24      sure that the property is still at least
25      occupied and nothing has happened to it damage

Page 93

1       wise.
2   Q.  Okay.  And each of the statements from January
3       of '22 through March of '23 were sent at a
4       time when Fay Servicing knew Ms. Howe was
5       represented by Mr. Steed, correct?
6   A.  Yes.
7   Q.  Right.  And do you know why these statements
8       weren't sent then instead to Mr. Steed?
9   A.  Again I do not.
10  Q.  All right.  Is that -- is it Fay's standard
11      policy, practice, and procedure to send
12      correspondence to borrowers it knows are
13      represented by counsel directly, or does it
14      send the correspondence as part of its normal
15      practice, policy, and procedures to counsel
16      on -- for the borrower's behalf?
17  A.  Again, on -- unless -- I think if we're
18      specifically notified to send them somewhere
19      else, then we would send them to the address.
20  Q.  Okay.  And each of those statements that we
21      went through in Exhibit 20 also identified Fay
22      Servicing as a debt collector, correct?
23  A.  Yes.  They all have the same disclosure
24      section on page 2.
25  Q.  And then what -- do you know where in the loan

Page 94

1   documents the property inspection fees are
2   authorized to be charged to a borrower?
3        And -- and if you want to look back at
4   them, you're welcome to.  It's Exhibits 4 and
5   5 is what I mean by the loan documents.
6   A.  Mm-hmm.  (Reviewing documents)
7        Part of that is covered in section No. 7
8   of the mortgage, borrower's obligation to
9   maintain and protect property, semicolon,
10  inspections.
11  Q.  Anywhere else?
12  A.  There is one other section in the mortgage,
13  and I'm sorry I'm not finding it; but I will
14  find it in a minute.
15  Q.  Well, let me ask a different question.  It
16  might be simpler.
17       Does anywhere in the note, Exhibit 4,
18  authorize property inspection fees to be
19  charged to a borrower?
20  A.  Section 6, borrower's failure to pay as
21  required.  Section 6(e):  Payment of note
22  holder's costs and expenses.  If the note
23  holder has required me to pay immediately in
24  full, as described above, the note holder will
25  have the right to be paid back for -- for me

Page 95

1   for all of its costs and expenses in enforcing
2   this note to the extent not published by
3   applicable law.  Those expenses include, for
4   example, reasonable attorney's fees.
5   Q.  Okay.  But it doesn't say specifically
6   property inspection fees, right?
7   A.  It does not, but I think it -- it just gives
8   you the one example of attorney's fees, but I
9   think that does cover costs, other fees.
10  Q.  Well, let's -- I'll help you out with it where
11  you were looking in Exhibit 5.
12       So in Exhibit 5, if you go to paragraph
13  14?  Exhibit 5 is the mortgage.
14  A.  (Witness complying) Under loan charges.  Okay.
15  Q.  Right.  That first sentence of that paragraph
16  says:  Lender may charge borrower for services
17  performed in connection with borrower's
18  default for the purposes of protecting
19  lender's interest in the property and rights
20  under this security instrument, including, but
21  not limited to, attorney fees, property
22  inspection, and valuation fees.
23  A.  Correct.
24  Q.  So -- so there there's an -- in the mortgage,
25  would you agree with me, there's an -- an

Page 96

1   express authorization of property inspection
2   fees to be charged to a borrower?
3   A.  It is there in the mortgage, yes.
4   Q.  Right.  But there's -- that same expressed
5   language isn't in the note, correct?
6   A.  Not specific to saying what the fees are,
7   only --
8   Q.  All right.
9        MR. ROBINSON:  All right.  So let's go to
10  Exhibit 21.
11       (Deposition Exhibit No. 21 for
12  identification.)
13  BY MR. ROBINSON:
14  Q.  Just let me know when you're ready.
15  A.  Okay.
16  Q.  So we started to group together a series of
17  other correspondence.
18       I believe the first one in Exhibit 21 is
19  dated September 21st, '21; is that correct?
20  A.  That is correct.
21  Q.  And if you look in the third paragraph, would
22  you agree with me that that paragraph suggests
23  that Ms. Howe -- this was sent to Ms. Howe at
24  her property address, and that paragraph is
25  indicating that she may be at risk of

Page 97

1   foreclosure on September 21st, 2021?
2   A.  It does say as an alternative to foreclosure,
3   yes.
4   Q.  And then if you go to the third page of that
5   correspondence, and Howe 988 there's a section
6   called Disclosures.
7   A.  I see that.
8   Q.  And there's a mini Miranda paragraph that
9   says:  This is a communication from a debt
10  collector.
11       Is that true and accurate?
12  A.  Yes.
13  Q.  Okay.  And then if you go to the next notice,
14  which is dated April 1st, 2021, this appears
15  to be correspondence sent by Fay to Ms. Howe
16  at the property address; is that right?
17  A.  That is correct.
18  Q.  And similar to the last one, it also in the --
19  suggests in the second paragraph that she's at
20  risk of foreclosure; is that right?
21  A.  It does say as an alternative to foreclosure.
22  Q.  And then if you go to the -- this -- this was
23  produced by Fay so buried in the fine print at
24  the bottom is their Bates number.
25       But if you go to the second page at the

Page 98

1    bottom, it says, Fay Servicing is a debt
2    collector.
3         Is that a true and accurate statement?
4  A. Yes.
5  Q. All right.  And we go to the next letter.
6    It's dated February 10th, 2022.
7  A. Correct.
8  Q. All right.  And that's correspondence from Fay
9    addressed again to Ms. Howe at the property
10   address; is that right?
11 A. That is correct.
12 Q. And at this time, as of February 10th, 2022,
13   Fay knew that Ms. Howe was represented by Mr.
14   Steed, correct?
15 A. Yes.
16 Q. And the first paragraph says, we have a right
17   to invoke foreclosure based on the terms of
18   your mortgage contract.
19        Is that a true and accurate statement as
20   of February 10th, 2022?
21 A. Oh, there it is.
22 Q. First paragraph -- the first paragraph, the
23   third sentence says:  We have a right to
24   invoke foreclosure based on the terms of your
25   mortgage contract.

Page 99

1  A. Based on the actual contract, that would be
2    correct.
3  Q. Right.  But at the same time, there was no
4    order from any Florida court as of
5    February 10th, 2022, related to the mortgage,
6    was there?
7  A. Not at that time, no.
8  Q. All right.  And Fay and the trust were
9    representing to the Florida court that they
10   had no right to foreclose, which is why they
11   commenced the action in Florida, right?
12        MS. LONGORIA:  Objection.
13 A. That was to clear the issue of the -- the
14   assignment, yes; but the actual mortgage
15   itself is still intact with the understanding
16   to the borrower.
17 BY MR. ROBINSON:
18 Q. All right.  So on what basis do you have an
19   understanding of Ms. Howe's understanding that
20   you just described?
21        Did you talk to Ms. Howe before the
22   deposition today?
23 A. I did not.
24 Q. All right.  Has Fay communicated with Ms. Howe
25   or -- since she's been represented by Mr.

Page 100

1    Steed?
2  A. I'm sorry, can you repeat that?
3  Q. Has Fay communicated directly to Ms. Howe
4    since she's been represented by Mr. Steed to
5    talk about the mortgage?
6  A. That I do not know.  I mean, as far as the
7    case goes, I don't know -- you know, I don't
8    know that to be for sure.
9  Q. All right.  Does Fay have any information to
10   believe that Ms. Howe is a lawyer and
11   understands whether the mortgage was
12   enforceable or not?
13 A. That I do not know.
14 Q. Does Fay have an understanding about whether
15   the mortgage was enforceable in February of
16   2022?
17 A. I don't know that specifically.
18 Q. Okay.  So if you go -- on that same notice
19   there's a disclosure section on 714.
20 A. I see that.
21 Q. It has the same little section we saw before
22   under mini Miranda.  This is a communication
23   from a debt collector.
24 A. Yes, I see that.
25 Q. Is that a true statement on that communication

Page 101

1    from Fay to Ms. Howe?
2  A. Yes, it is.
3  Q. All right.  Then we go to the next
4    correspondence, which is August 1st of 2022.
5  A. I see that.
6  Q. And is this correspondence that was sent by
7    Fay to Ms. Howe at the property address?
8  A. Yes, it is.
9  Q. And on or about August 1st, 2022, did Fay know
10   that Ms. Howe was represented by Mr. Steed in
11   this action?
12 A. Yes.
13 Q. And in the third sentence of the first
14   paragraph again Fay is representing to Ms.
15   Howe, we have a right to invoke foreclosure
16   based on the terms of your mortgage contract,
17   end quote.
18        Is that a true and accurate statement as
19   of August 1st, 2022?
20 A. Yeah.  Again these are -- these letters are
21   all of the same.  They're -- they're the same
22   letters.  I'm sorry, I'm losing my -- the word
23   that I'm looking for.
24        But it does say that in the letter.  It
25   says:  We have the right to invoke foreclosure

Page 102

1   based on the mortgage -- terms of the mortgage
2   contract.
3   Q.  Okay.  And let's go to the last one, which is
4       on 720, the little Bates numbers at the
5       bottom.
6   A.  (Witness complying) I have that.
7   Q.  All right.  So that's correspondence dated
8       January 25th of '23, correct?
9   A.  That is correct.
10  Q.  And this was correspondence sent by Fay to
11      Ms. Howe on or about that date; is that right?
12  A.  That is correct.
13  Q.  And at that -- as of that date, Fay knew Ms.
14      Howe was represented by Mr. Steed in this
15      action, correct?
16  A.  Correct.
17  Q.  All right.  I think I messed up earlier on one
18      thing.  I need to double-check and then I'm
19      done.
20          All right.  So I asked -- let's go back
21      to Exhibit 8.
22  A.  (Witness complying) I have 8.
23  Q.  Okay.  That was -- that correspondence we went
24      over earlier.  I asked you some questions
25      related to Ms. Howe's mother.

Page 103

1   A.  Yes, I recall that.
2   Q.  I think I misspoke and stated that she -- or
3       implied that she had the same name.  Her
4       address, I believe, is Illinois.  Her name is
5       different though.  So I -- in candor to you, I
6       just want to be -- ask you the same question.
7           Do you have any reason to know why Fay or
8       Fay's lawyers are writing to Ms. Howe at her
9       mother's address?
10  A.  I do not.  I didn't get that --
11  Q.  Is that part --
12  A.  I didn't get that as your reference earlier
13      but that's fine.
14  Q.  I don't want to -- trying to be honest with
15      you, because I think I misspoke earlier and
16      implied they had the same name.
17          MR. ROBINSON:  Okay.  So let me see if
18      Mr. Steed has sent me any other questions.  He
19      has not.
20          There was a motion filed last week to
21      amend the complaint.  We've asked all the
22      questions we intend to ask at this time, but
23      I'm not going to adjourn the deposition
24      because until that motion is ruled on we don't
25      know if we need another deposition, Mr.

Page 104

1   Paterno.
2       My -- my -- we've not met, but I don't
3   usually call witnesses back if I don't need
4   them.  So I'm holding it open, but I'm
5   concluding the Fay deposition for today
6   pending whatever might happen to that motion
7   that Fay filed last week or the trust filed
8   last week.
9       So your -- your counsel can ask you
10  questions and advise you, and then we'll go on
11  to the second one in a minute.
12      THE WITNESS:  Okay.
13      MS. LONGORIA:  Just a couple questions,
14  Mr. Paterno.
15          FURTHER EXAMINATION
16  BY MS. LONGORIA:
17  Q.  With regard to Exhibit 8, the notice of right
18      to cure dated April 14, 2023, on page 2 of
19      that document, was the borrower given the
20      opportunity to cure the loan based upon
21      payment of only the payments, principal,
22      interest, taxes, and insurance and the late
23      fees without any demand of attorney fees or
24      property preservation?
25  A.  Yes.

Page 105

1   Q.  And you testified with regard to the trust and
2       the trustee earlier.  I'm going to mark for
3       identification purposes as Plaintiff's 1 in
4       your deposition the document that is Bates
5       stamped 2405 and 2406, and I'll give a copy to
6       you, too.
7       MR. ROBINSON:  So I just want to --
8       MS. LONGORIA:  Yeah.
9       MR. ROBINSON:  This -- this can't be
10  marked as plaintiff's 1.  The court reporter
11  can figure out where we left off, but it
12  can't -- we already have a 1, I think.
13      MS. LONGORIA:  Oh, I thought we
14  distinguished between plaintiff and defendant.
15  If she wants to mark them all sequentially,
16  that's fine.
17      We left off at 20.  So I can take it back
18  and make it Exhibit 21.
19      MR. STEED:  No, I think we left -- we
20  have a -- we had 21.
21      MS. LONGORIA:  Okay.
22      MR. ROBINSON:  22 I think is where we're
23  at.
24      MS. LONGORIA:  Will that mess up the rest
25  of your exhibits that are already prenumbered?

Wilmington Trust N.A. vs Howe
VIA MICHAEL PATERNO, 30(B)(6) OF FAY SERVICING, LLC on 05/31/2023          Pages 106..109

Page 106

1    Where do you leave off, John?
2    MR. STEED:  21.
3    MR. ROBINSON:  No.  We --
4    MS. LONGORIA:  Okay.  Okay.
5    MR. ROBINSON:  We didn't -- we didn't use
6  all of them.  It's just simpler to go with the
7  next number, I think.
8    MS. LONGORIA:  That's fine.
9    MR. ROBINSON:  So we don't get confused
10  and mixed up.
11    (Deposition Exhibit No. 22 for
12  identification.)
13  BY MS. LONGORIA:
14  Q.  Does this document reflect the relationship
15    between the trustee and the trust as the
16    certificate of trust filed when the trust was
17    born?
18  A.  Yes, it does.
19  Q.  Okay.  And you referred to boarding of the
20    loan.  And during your examination you talked
21    about when the loan was boarded there was a
22    process to review the loan and make sure that
23    it was taken on accurately, et cetera.
24  A.  That is correct.  That's -- at that time we
25    were using the ELI system.

Page 107

1  Q.  And you testified that there were no
2    exceptions for this loan, and it was boarded.
3    Is there a document that we have produced
4    that reflects the exception report?
5  A.  Yes.  And it is the exception report that's
6    been produced.
7    (Deposition Exhibit No. 23 for
8  identification.)
9  Q.  And the document that I've marked as
10    Exhibit 23, is that the document?
11  A.  This is the document.
12  Q.  Now, this document is redacted for loan
13    numbers and et cetera for everything not
14    having to do with this loan.
15    But is this the loan exception report
16    that you pulled from the system yourself?
17  A.  Yes, it is.
18    MS. LONGORIA:  And I don't have anything
19  further.  That's fine.
20    MR. ROBINSON:  I don't have -- and I have
21  the Bates numbers from what was produced
22  yesterday, so let me just ask a couple
23  follow-ups.
24    MS. LONGORIA:  Mm-hmm.
25    FURTHER EXAMINATION

Page 108

1  BY MR. ROBINSON:
2  Q.  So yesterday, Mr. Paterno, some additional
3    documents were produced.  So I'm not exactly
4    sure what's in front of you, but 2405 was a
5    statement that says, Delaware the first state
6    at the top?
7  A.  Right.
8  Q.  And it says:  Attached hereto is a true and
9    correct copy of the Certificate of Statutory
10    Trust MFRA Trust 2015-1; is that right?
11  A.  That is correct.
12  Q.  All right.  And then the next page, 2406, is
13    that same referenced certificate of trust, I
14    believe, that is signed by someone from
15    Wilmington Trust, National Association,
16    Adam -- I don't know how to pronounce his last
17    name so I'll spell it, S-c-o-z-z-a-f-a-b-a; is
18    that correct?
19  A.  That is correct.
20  Q.  And all that's doing is identifying -- what
21    that document appears to be doing is
22    identifying that the trust is being formed and
23    that Wilmington Trust is the trustee; is that
24    right?
25  A.  That is correct.

Page 109

1  Q.  It does not attach a management agreement to
2    it explaining how the trust is managed,
3    correct?
4  A.  It does not.
5  Q.  All right.  And then I'm not sure -- there was
6    another document produced yesterday starting
7    at 2407.
8    Is this something that you were just
9    asked questions about?
10  A.  Yes.
11  Q.  All right.  So it has on mine, the colored
12    version has 9/5/2017 Selene to MF a transfer
13    post board date of validation report.
14  A.  That is correct.
15  Q.  All right.  And so this document, if it --
16    does it go from 2407 to 2421?
17  A.  Correct.
18  Q.  And where did this document come from?
19  A.  This comes from the boarding file when the
20    boarding is complete.  This is the validation
21    report that goes to the different departments
22    that specifies if there's any things that need
23    to be corrected with a particular loan
24    boarding.
25  Q.  So I -- because it came yesterday, Mr.

Page 110

1   Paterno, I didn't really look at it carefully.
2   Didn't have time to honestly.
3   A.  Well --
4   Q.  And counsel asked you about the -- the
5   blackout on there.
6       It's just -- it's blacking out the data
7   that's within those particular fields,
8   correct?
9   A.  It's blacking out the data, and it refers to
10  other loans that were part of this portfolio,
11  but as I had stated earlier, the Howe loan --
12  there were no exceptions on the Howe loan, so
13  it's not on this report as any exception.
14  Q.  So -- but in my -- if I look at 2410 -- let me
15  just ask a question about that chart that's on
16  that page.
17  A.  Mm-hmm.
18  Q.  So the first column is final by state, so
19  that's the final number that the loan -- if
20  a -- if any loans from a particular state,
21  that state would be listed in that column; am
22  I reading that correctly?  Or just every state
23  is listed there?
24  A.  I'm sorry, repeat your question for me.  I
25  didn't understand that.

Page 111

1   Q.  I didn't understand it either so sorry about
2   that.
3       Let's go to the second column.  It says:
4   Number of accounts by state.
5       So those would be the number of loans by
6   each state that were transferred in this batch
7   of loans --
8   A.  That --
9   Q.  -- if I'm reading that correctly; is that
10  right?
11  A.  That is correct.
12  Q.  All right.  So I can total that up and do the
13  math later, but it doesn't look as if this
14  batch had a significant number of loans in it,
15  and I only mean that's less than 30 maybe.
16  A.  I think it's 41, just to save your --
17  Q.  41.
18  A.  -- addition.  Yeah.
19  Q.  Okay.  And then the next column has un -- I
20  think it's UPV, that's unpaid policy -- state;
21  is that right?
22  A.  That is correct.
23  Q.  Okay.  And then the next column is FC by
24  state.
25      What's FC stand for?

Page 112

1   A.  I believe that would be foreclosure by state.
2   Q.  Okay.  So reading the Maine line, Maine is
3   abbreviated ME, correct?
4   A.  Yes.
5   Q.  This page shows that there's two loans by
6   state and two loans -- two loans from Maine;
7   is that correct?
8   A.  Correct.
9   Q.  And then there's two loans that are in
10  foreclosure, so that means each of the two
11  Maryland -- or Maine loans were in
12  foreclosure; is that right?
13  A.  That is correct.
14  Q.  And then the next column says BK by state.
15      Does BK stand for bankruptcy?
16  A.  That is correct.
17  Q.  All right.  So one of those two loans from
18  Maine was in bankruptcy or had -- or could it
19  have also been through bankruptcy previously?
20  A.  It would be active bankruptcy, I believe.
21  Q.  All right.  So at least according to the
22  exception report, Fay understood that you --
23  that was produced yesterday -- Fay understood
24  at the time of the transfer, or it was
25  represented to Fay by Selene, that the Howe

Page 113

1   loan was in foreclosure.
2   A.  Correct.
3   Q.  And you testified earlier that Fay
4   incorporated all of Selene's data into its
5   systems and -- and tested that data to
6   determine if it was accurate, right?
7   A.  Correct.
8   Q.  Okay.  Then if we go to 2412.
9   A.  (Witness complying)
10  Q.  There's a section called Foreclosure.
11      Is this a summary of the loans in
12  foreclosure that are part of this final
13  exception report dated September 7, 2018?
14  A.  Yes.
15  Q.  And do we know of the Howe loan where it fit
16  into any of these categories that are listed?
17  A.  I don't recall where it fit into these
18  categories in that.  I don't recall.
19  Q.  Okay.  And if counsel wants to ask more
20  questions on this, I -- I forgot to ask
21  earlier, do you know who the mortgage -- you
22  mentioned that there's mortgage insurance
23  premiums that are being paid on the -- out of
24  the Howe loan?
25  A.  Yes.

Page 114

1  Q.  Do you know who the mortgage insurance carrier
2      is?
3  A.  I do not.
4  Q.  Do you know if the trust has made a claim on
5      the mortgage insurance in any way?
6  A.  I do not.
7  Q.  Where -- would Fay have that information
8      anywhere in its normal course of business?
9  A.  I believe we would, yes.  I mean, I know that
10     MI Insurance, the name of the company would be
11     in MSP, and I would imagine if a filing was
12     done we would -- we would be involved in that.
13 Q.  Okay.  Let's go down to the last couple pages
14     of that exhibit, 2420.
15     THE WITNESS:  You've dropped something on
16     the floor there.
17 A.  I have 2420.
18     BY MR. ROBINSON:
19 Q.  Well, actually let's start at 2419.
20 A.  Okay.
21 Q.  Probably look at 2420 at the same time, but --
22     so this exception report, final exception
23     report dated -- these pages are September 5th,
24     2017, I think.  At least the one is, 2419.
25     There's a section called Foreclosure.

Page 115

1      All of the information is blacked out.  There
2      appear to be three loans or three findings
3      issued there.
4  A.  Correct.
5  Q.  Do you know if any of those findings relate to
6      the Howe loan?
7  A.  They did not.  If you look at the -- just
8      below where it says Foreclosure, you can see
9      a -- sort of a very light area where it says
10     click here for a list of the loans?
11 Q.  Right.
12 A.  When I clicked on that and it took me to the
13     list of the loans that were involved in that,
14     the Howe loan was not on that list.
15 Q.  Which -- what type of loans would be on this
16     final exception report under the foreclosure
17     section that we're looking at?
18     What would be the issues that would be
19     flagged?
20 A.  Again, let's say -- I think they're actually
21     listed on -- I don't see it.  Not on the -- I
22     thought they were on 2413, but they're not.
23     As I had stated earlier, it could be as
24     simple as a loan in foreclosure where the
25     issue might be that the demand letter date was

Page 116

1      missing.  So when the information is coming
2      over, it's statused as a foreclosure, but if
3      it doesn't have a demand letter date, then
4      that would be an inconsistency in the
5      information.
6      So anything where it's out of the -- if
7      it doesn't match that particular status for
8      that loan, it's looking for a different --
9      again the other thing would be a default date.
10     If the default date was blank and yet it says
11     it's in foreclosure, we can't have that.  You
12     have to have one to be in foreclosure.
13 Q.  All right.  And then on 2420, there's a
14     section called Special Loans.
15     Do you know what that section --
16 A.  Yeah.  Special loans deals with when you get
17     to adjustable rate mortgages and things that
18     require special attention, like I was
19     explaining earlier with the boarding process,
20     that we do additional reviews on adjustable
21     rate mortgages.  So those would fall under the
22     special loan section.
23 Q.  So -- and the special loans though would
24     not -- this section wouldn't include loans
25     that are in litigation?

Page 117

1  A.  No.
2  Q.  Is there any section on this exception report
3      that would identify loans that were in
4      litigation like the Howe loan that was subject
5      to the DJ action?
6  A.  No.  The only -- in the boarding process, one
7      of the things that would be discussed is if
8      there is any loan that might need a special
9      attention.  Sometimes if there's a heavy --
10     heavily litigated loan that's been, you know,
11     litigated for years or years, that it would be
12     spelled out specifically at the time of the
13     boarding meetings that we're having with the
14     prior servicer.
15 Q.  Did you see any notes in the prior meetings
16     with Selene about the Howe loan, about the
17     years and years of litigation about this loan?
18 A.  No, sir.
19 Q.  Sorry, I didn't hear you.
20 A.  No, sir.
21 Q.  All right.  And then last question to jump
22     back up to 2415, there's a section called
23     Bankruptcy.  That one doesn't have any
24     information in it.
25     So does that mean that there's no active

Page 118

1  bankruptcies?
2  A.  **No.  That just means that any of the**
3  **bankruptcy data was all correct within the --**
4  **the fields.**
5  Q.  Okay.
6      MR. ROBINSON:  I have no more questions.
7  Your counsel might want to ask some since I
8  asked more.  So I'm sorry about that.
9      MS. LONGORIA:  No, that's fine.
10         FURTHER EXAMINATION
11  BY MS. LONGORIA:
12  Q.  Just directing your attention to the loan
13  modifications done on this loan.  I believe
14  there is one in 2010, 2011, and 2014.
15      Did you review those loan modification
16  agreements in preparation for your testimony?
17  A.  **I did.**
18  Q.  And do those documents acknowledge the
19  standing of the owner of the loan at the time
20  the loan modification agreement was entered to
21  pursue the security in the event that there's
22  a default under the modified loan modification
23  agreement?
24  A.  **I'd have to look back at each individual one,**
25  **but I -- it would be standard language in the**

Page 119

1  **modifications that that would be in there.**
2  Q.  Directing your attention back to the exhibit
3  that is the Florida complaint.
4      MR. STEED:  13.
5      MS. LONGORIA:  Thank you, 13.
6  BY MS. LONGORIA:
7  Q.  Within that document Bates stamp pages 1049
8  and thereafter appear the three loan
9  modification agreements that Ms. Howe was
10  given.
11      Can you take a moment to review those and
12  point out the language that acknowledges the
13  standing of the entities to --
14  A.  **That's not the --**
15      MR. STEED:  It wouldn't be 1049.
16  Exhibit 13 would be -- these are our Bates
17  stamps, so it would be 774.
18      **THE WITNESS:  Because I don't -- it's not**
19  **in Exhibit 13.**
20      MR. STEED:  No.
21      MS. LONGORIA:  Oh, did --
22      **THE WITNESS:  Is that part of Exhibit --**
23      MR. ROBINSON:  Exhibit 13 -- hold on a
24  sec.  Exhibit 13 doesn't include the exhibits
25  that might have been filed with it.

Page 120

1      MS. LONGORIA:  Oh, okay.
2      **THE WITNESS:  I did see the loan**
3  **modification in one of these documents earlier**
4  **though.**
5      MS. LONGORIA:  Okay.
6      **THE WITNESS:  I'm trying to remember**
7  **which one it was.**
8      MS. LONGORIA:  It's also in the amended
9  complaint.
10      Do you have that in front of you?
11      MR. ROBINSON:  I think it's attached to
12  Exhibit -- what you're looking for --
13      **THE WITNESS:  Exhibit 2.**
14      MR. ROBINSON:  -- is attached to Exhibit
15  2.
16      **THE WITNESS:  Yes, it is Exhibit 2.**
17      MS. LONGORIA:  Okay.
18      **THE WITNESS:  All right.  So this is the**
19  **loan modification that's dated the 12th of**
20  **August of 2014.  And that is between Henry**
21  **Howe and Melanie Howe and Nationstar Mortgage,**
22  **LLC.**
23  BY MS. LONGORIA:
24  Q.  Actually I'll withdraw that question because
25  the document speaks for itself, and as long as

Page 121

1  it's in evidence in the deposition, I can
2  refer to it.
3      But in general that is -- is it your
4  understanding that loan modifications
5  acknowledge the fact that the loan was taken,
6  that it's in default and that the terms are
7  being restructured with the entity who has the
8  authority to do that?
9  A.  **Yes.**
10      MS. LONGORIA:  I have nothing further.
11      You can go to your second deposition.
12      MR. ROBINSON:  Hold on before we finish
13  this one.
14         FURTHER EXAMINATION
15  BY MR. ROBINSON:
16  Q.  Mr. Paterno, just let me ask, did you see any
17  loan modifications after April or -- I'm
18  sorry -- after February of 2020 to the present
19  related to the Howe loan?
20  A.  **There have been no modifications, no.**
21  Q.  Okay.
22      MR. ROBINSON:  All right.  So let's
23  conclude for today.  I promise not to bring
24  you back, Mr. Paterno, unless we absolutely
25  need you; but I have to hold it open because

Wilmington Trust N.A. vs Howe
VIA MICHAEL PATERNO, 30(B)(6) OF FAY SERVICING, LLC on 05/31/2023                    Pages 122..125

Page 122

```
 1    of the pending motion, and I would really only
 2    ask you candidly -- I have no poker face, even
 3    though we're not there in person, I have no
 4    poker face, I wouldn't call you back -- it
 5    would only be about new stuff.
 6         So we can do the second one when
 7    everybody's ready.
 8         THE VIDEOGRAPHER:  This concludes today's
 9    deposition of Michael Paterno for Fay
10    Servicing, LLC.  The time is 12:57 p.m.
11              * * * * *
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 124

```
 1                    Errata Sheet
 2    NAME OF CASE:     Wilmington Trust N.A. vs Howe
 3    DATE OF DEPOSITION: 05/31/2023
 4    NAME OF WITNESS:   30(b)(6) of Fay Servicing, LLC via Michael Paterno
 5    Reason Codes:  1. To clarify the record.
 6                   2. To conform to the facts.
 7                   3. To correct transcription errors.
 8    Page _____ Line _____ Reason _____
 9    From _____ to _____
10    Page _____ Line _____ Reason _____
11    From _____ to _____
12    Page _____ Line _____ Reason _____
13    From _____ to _____
14    Page _____ Line _____ Reason _____
15    From _____ to _____
16    Page _____ Line _____ Reason _____
17    From _____ to _____
18    Page _____ Line _____ Reason _____
19    From _____ to _____
20    Page _____ Line _____ Reason _____
21    From _____ to _____
22    Page _____ Line _____ Reason _____
23    From _____ to _____
24    _____
25         30(B)(6) OF FAY SERVICING, LLC VIA MICHAEL PATERNO
                               2
```

Page 123

```
 1                  STATE OF MAINE
 2         I, Beth Gaige, RPR, a Notary Public in and
 3    for the State of Maine, do hereby certify that the
 4    within-named deponent was sworn to testify the
 5    truth, the whole truth, and nothing but the truth
 6    in the aforementioned cause of action.
 7         I further certify that this deposition was
 8    stenographically reported by me and later reduced
 9    to print through computer-aided transcription, and
10    the foregoing is a full and true record of the
11    testimony given by the deponent.
12         I further certify that I am a disinterested
13    person in the event or outcome of the above-named
14    cause of action.
15      IN WITNESS WHEREOF, I have hereunto set my
16    hand this   24th    day of June, 2023.
17
18
19
       _____
20              Beth Gaige, RPR
      My Commission Expires
21    August 22, 2026
22
23
24
25
```

Page 125

```
 1      I, 30(B)(6) OF FAY SERVICING, LLC VIA MICHAEL PATERNO, do hereby certify that the
 2   foregoing testimony taken on 05/31/2023, is true
 3   and accurate to the best of my knowledge and
 4   belief.
 5
 6
 7   _____       _____
     DATE              30(B)(6) OF FAY SERVICING, LLC VIA MICHAEL PATERNO
 8
 9
10        At_____in said County
11   of_____ this day of _____ 2020
12   personally appeared 30(B)(6) OF FAY SERVICING, LLC VIA MICHAEL PATERNO, and
13   made oath to the truth of the foregoing answers by
14   their subscribed.
15       Before me,_____, a
16   Notary Public, in and for the State of Maine.
17
18
19   My Commission Expires:_____
20
21
22
23
24
25
```

Wilmington Trust N.A. vs Howe
VIA MICHAEL PATERNO, 30(B)(6) OF FAY SERVICING, LLC on 05/31/2023                      Page 126

Page 126

```
 1          GAIGE & FELICCITTI, LLC
               75 York Street, Ste. 2
 2            Portland, Maine 04101
      scheduling@gandfreporting.com ~ (207) 854-5296
 3          www.gandfreporting.com
 4
 5
      06-28-2023
 6
 7    30(b)(6) of Fay Servicing, LLC via Michael Paterno
 8    Re:  Wilmington Trust N.A. vs Howe
            Deposition taken on 05/31/2023
 9
      Enclosed please find your copy of the
10    deposition of 30(b)(6) of Fay Servicing, LLC via Michael Paterno taken in the
      above-mentioned action on 05/31/2023.  Also
11    enclosed is the original signature page and a
      sheet for corrections.
12
      Please read your copy of the deposition and
13    sign the original signature page before a
      Notary Public.  If there are any corrections
14    30(b)(6) of Fay Servicing, LLC via Michael Paterno wishes to make, they should
      be made on the enclosed errata correction
15    sheet.  Do not mark on the deposition.
16    Please send a copy of the signed original
      signature page and correction sheet to other
17    counsel within 30 days.
18    Very Truly Yours,
19    Michelle R. Feliccitti
      Production Department
20
      Gaige & Feliccitti, LLC
21    production@gandfreporting.com |  phone:
      207.854.5296.  |
22
      Ref: 6076
23
24
25
```

Wilmington Trust N.A. vs Howe
VIA MICHAEL PATERNO, 30(B)(6) OF FAY SERVICING, LLC on 05/31/2023          Page 127Index: $250..45-day

---

**$**

**$250**  86:19

---

**(**

**(30)(b)(6)**  8:7

---

**1**

**1**  23:16 38:22 39:3,6 51:16 52:1 73:6,7 105:3,10,12

**10**  62:18,19 64:5,10 82:8 83:11 84:7,9 91:10

**1028**  69:13

**1049**  119:7,15

**1082**  71:6

**10:30**  38:20

**10:37**  38:25

**10th**  84:11,13,15,17 85:5,19 90:5,25 91:1,3,4,7,8,18 98:6,12,20 99:5

**11**  20:3 23:5,16 48:23 83:23 89:9 90:4,7

**11/11/21**  86:17

**11:44**  81:5

**11:55**  81:8

**11th**  62:1 85:15,17,21 86:7 91:2

**12**  79:1

**12/11/21**  86:18

**12:57**  122:10

**12th**  90:9 91:6 120:19

**13**  65:15,16,22 67:4,22 68:2,16 87:11, 14 88:11,14 119:4,5,16,19,23,24

**14**  70:5,6,12,15 95:13 104:18

**14th**  59:3,6,24

**15**  74:19,21 75:4,6,16,17,18,19

**16**  74:20,23 75:4,7,9 77:24

**17**  15:15,16 16:7,9,12 17:22,23 18:16, 19,21 23:19 31:17 87:20,21 88:14

**18**  16:4,22,23 17:14,23 18:4,16,19 19:21 23:20 87:20 88:2,14

**18th**  71:9,12 73:4

**19**  81:11,12,21 89:25

**1st**  97:14 101:4,9,19

---

**2**

**2**  22:3,4,14,17 23:17 25:22 26:6 48:14 51:17 66:23,24 67:1 93:24 104:18 120:13,15,16

**20**  39:25 89:13,14 90:16,22 91:9 93:21 105:17

**200**  8:21

**2010**  118:14

**2011**  118:14

**2014**  88:2 118:14 120:20

**2015-1**  10:10 52:21 58:11 108:10

**2017**  13:6 31:16,20,23 34:3 51:21 52:8 53:7 54:2,22 62:1 114:24

**2018**  113:13

**2020**  20:3 48:23 82:8 83:11 121:18

**2021**  20:23 21:11,14,20 43:14,22 50:9,12 83:23 84:7,9,11,13,15,17 85:2,5,15,17,19,21 86:8 87:2 88:22 89:10 90:7 97:1,14

**2022**  66:17 90:25 91:2,3,4,5,6,10 98:6,12,20 99:5 100:16 101:4,9,19

**2023**  6:6 59:3,6,24 71:9,12 73:4,13 91:7,8,10 104:18

**21**  41:23 66:25 90:4,5 96:10,11,18,19 105:18,20 106:2

**21st**  96:19 97:1

**22**  39:15 73:10 92:11 93:3 105:22 106:11

**2273**  63:12

**23**  39:15,25 41:23 63:12 92:1,2,12 93:3 102:8 107:7,10

**2383**  60:6,9

**2405**  105:5 108:4

**2406**  105:5 108:12

**2407**  109:7,16

**2410**  110:14

**2412**  113:8

**2413**  115:22

**2415**  117:22

**2419**  114:19,24

**2420**  114:14,17,21 116:13

**2421**  109:16

**25th**  102:8

**26**  66:16

**265**  86:21

**28**  51:21 54:2

**28th**  73:10

**299**  19:21 21:21

**2:21-CV-00278-NT**  6:14

---

**3**

**3**  42:22,24 43:4,14 45:10

**3-A**  42:23,24 43:5 45:11,16 48:3 49:17 50:20

**3-B**  42:23,24 43:5 45:23 47:17,20 50:16,20

**3-C**  42:23,25 43:5 46:8

**30**  43:17,18 81:3 111:15

**31**  43:18

**31st**  6:6

**334**  79:11

**34.67**  86:24

**35**  35:15

---

**4**

**4**  28:8,10,18,22 46:4 51:19 77:2 94:4, 17

**40**  33:4

**40-day**  33:23

**404**  51:13,19,24 54:2,7

**41**  111:16,17

**45**  33:4

**45-day**  33:23

---

Case 2:21-cv-00278-NT   Document 63-24   Filed 09/03/23   Page 36 of 49   PageID #: 1043

Wilmington Trust N.A. vs Howe
VIA MICHAEL PATERNO, 30(B)(6) OF FAY SERVICING, LLC on 05/31/2023       Page 128 Index: 5..assigned

### 5

**5** 28:8,12,18 29:19,21 77:2 80:5 94:5 95:11,12,13

**59(e)** 48:18

**5th** 31:19,23 114:23

### 6

**6** 29:8,9 43:14,22 47:11,12,16 51:7,12 53:22 80:5 94:20

**6(b)** 29:11,17

**6(e)** 94:21

**67.28** 86:22

### 7

**7** 20:23 21:11,14,19 30:15,22,24 31:3, 6,12 50:12 94:7 113:13

**714** 100:19

**720** 102:4

**752** 19:3

**774** 119:17

**7th** 50:9 91:5,24

### 8

**8** 52:8 58:13,14,19 60:20 61:4,9 79:4,6 102:21,22 104:17

**8/8/2017** 52:4

**8th** 53:7 54:22 91:3

### 9

**9** 61:13,14,18

**9/30** 66:25

**9/5/2017** 109:12

**988** 97:5

**9:42** 6:7

**9th** 91:4

### A

**a.m.** 6:7

**abbreviated** 112:3

**absolutely** 121:24

**accounts** 111:4

**accurate** 25:19,24 48:12 83:20,21 97:11 98:3,19 101:18 113:6

**accurately** 106:23

**acknowledge** 118:18 121:5

**acknowledges** 119:12

**acquiesced** 41:5

**acquired** 52:15 53:18 55:25

**Act** 45:4

**action** 17:20,25 18:1,13 19:12,17 22:19,21 23:19 24:6 29:2,22 37:6,14 45:18 46:10 48:24 66:19 67:15,16,22, 25 68:5,12 70:18 71:22 72:15,17 73:20 75:11 76:6,8,15 77:4,6,9,12,21 78:2,18 88:12 99:11 101:11 102:15 117:5

**actions** 77:25

**active** 112:20 117:25

**activity** 86:11,15,16 91:16 92:6,10

**actual** 54:8 68:12 87:7 99:1,14

**Adam** 69:12,24 108:16

**add** 9:1 77:5

**addition** 111:18

**additional** 55:2 91:14 108:2 116:20

**address** 8:1,3 79:10 82:12 85:6 90:24 91:12 93:19 96:24 97:16 98:10 101:7 103:4,9

**addressed** 98:9

**adjourn** 103:23

**adjustable** 35:24 116:17,20

**administered** 7:8

**admission** 88:17 89:6

**advanced** 48:19

**advise** 104:10

**Affirmative** 40:2

**agents** 80:17

**agree** 17:16,21 43:16 47:22 49:15 54:18 60:16 61:2 77:14 81:21,23 95:25 96:22

**agreed** 6:2

**agreement** 29:4 63:4,8 64:7,10 109:1 118:20,23

**agreements** 118:16 119:9

**ahead** 6:24 15:23 76:11

**AIQ** 36:11

**alia** 88:3

**alternative** 97:2,21

**amend** 17:3,17 20:10 45:12,17 48:4, 16 49:13 50:2,4 103:21

**amended** 120:8

**amendment** 49:12

**amount** 8:20

**anomalies** 34:7 35:10

**anticipate** 9:22

**anticipating** 80:11

**anymore** 49:25

**anytime** 11:2 15:19

**appears** 17:16 20:19 21:6,12 45:11, 16,22 49:16 83:25 97:14 108:21

**applicable** 95:3

**appoint** 70:15,24 75:19

**appointing** 66:3

**appointment** 87:23

**approximately** 6:7

**approximation** 31:10

**April** 20:23 21:11,14,19 50:9,12 59:3, 6,24 84:11 91:2,20 97:14 104:18 121:17

**area** 115:9

**areas** 65:7

**argument** 24:17 40:16

**aspects** 35:16

**Assets** 26:21

**assigned** 76:17,19

Case 2:21-cv-00278-NT   Document 63-24   Filed 09/03/23   Page 37 of 49   PageID #: 1044

Wilmington Trust N.A. vs Howe
VIA MICHAEL PATERNO, 30(B)(6) OF FAY SERVICING, LLC on 05/31/2023          Page 129 Index: assignee..cetera

**assignee** 88:6,9

**assignment** 27:14 57:23 76:18 87:24 88:3,7 99:14

**Assistance** 46:3

**Association** 6:11 7:4,14 10:8 54:25 63:7 108:15

**Association's** 58:8

**assuming** 64:19

**attach** 109:1

**attached** 75:21,23 108:8 120:11,14

**attachments** 18:23

**attend** 8:4

**attention** 116:18 117:9 118:12 119:2

**attorney** 6:20 12:2 19:10 26:1 30:20 39:18 44:11 58:5,24 74:6,14 86:19 95:21 104:23

**attorney's** 95:4,8

**attorneys** 6:20 19:10 20:4,8 58:9,25 59:11,23 61:8 79:19 80:18

**August** 51:21 52:8 53:7 54:2,22 66:16 85:2,5,9 91:4,22 101:4,9,19 120:20

**authority** 87:10 88:16 121:8

**authorization** 96:1

**authorizations** 80:16

**authorize** 22:20 25:13 58:25 66:5 94:18

**authorized** 19:10,15 20:8 23:9,12 39:21 50:22 59:23 67:3 70:21 94:2

**authorizes** 25:9

**authorizing** 80:8

**avoid** 14:10,12

**await** 35:4

**aware** 20:25 21:14,16,19 41:3 44:17, 21 50:11,15

---

### B

**back** 19:20 22:7,10 29:4 35:8 38:24 47:17 50:25 57:14 59:17,18 69:24 73:6 79:4 81:7 90:20 94:3,25 102:20 104:3 105:17 117:22 118:24 119:2 121:24 122:4

**bankruptcies** 118:1

**bankruptcy** 112:15,18,19,20 117:23 118:3

**based** 49:6 57:9 98:17,24 99:1 101:16 102:1 104:20

**basic** 64:20

**basis** 99:18

**batch** 111:6,14

**Bates** 19:8,22 60:4 63:11 97:24 102:4 105:4 107:21 119:7,16

**begin** 27:19

**begins** 33:3

**behalf** 6:16 8:8 12:12,20,21 14:20 15:4 17:18 19:12,17 20:4 23:9 39:23 46:2 52:20 55:20 56:6 70:18,22 80:18 87:10 93:16

**benefit** 15:9

**Beth** 6:17

**bit** 8:22 9:16

**BK** 112:14,15

**blacked** 64:16,18,19,22 65:6,14 115:1

**blacking** 110:6,9

**blackout** 65:13 110:5

**blank** 8:4 90:13 116:10

**board** 33:1,24 35:4,5 36:2 46:24 109:13

**boarded** 35:21 36:3 106:21 107:2

**boarding** 32:25 33:2,6 37:9,21 46:22 53:15 54:5 106:19 109:19,20,24 116:19 117:6,13

**born** 106:17

**borrower** 12:12 14:1,14 44:7,14,16 51:13 61:22 90:23 94:2,19 95:16 96:2 99:16 104:19

**borrower's** 29:9 93:16 94:8,20 95:17

**borrowers** 12:11 14:20 33:18 44:18, 23 61:8 79:24 93:12

**bottom** 52:1 60:6 62:9 63:11 83:15 97:24 98:1 102:5

**box** 52:1

**boxes** 74:25

**break** 9:23 38:7,13 78:25

**bring** 12:14 73:18 121:23

**broke** 9:8,16 62:15 65:24

**bunch** 64:15

**Bureau** 60:23 61:3

**buried** 97:23

**business** 8:1,2 11:25 12:6 13:11,15 54:13 56:10,18,22 114:8

**buying** 56:18,23

**bypass** 76:17

---

### C

**call** 20:18 45:12 58:22 63:3 104:3 122:4

**called** 33:7 34:3 45:19 51:19 82:17 97:6 113:10 114:25 116:14 117:22

**calls** 14:22

**candidly** 122:2

**candor** 103:5

**capacity** 6:12 10:9

**caption** 7:10 17:23 66:11

**caption's** 7:13

**captioned** 6:10

**captions** 17:24

**carbon** 60:15

**career** 8:17,19

**carefully** 110:1

**carrier** 114:1

**case** 6:10 7:12,16 12:23 14:23 18:1 19:16 24:15 25:21 33:8,15 36:16 45:8 47:23 48:8,20 50:22 53:8 58:23 66:11 68:3 69:4,18 78:1 88:2 100:7

**cash** 14:5

**categories** 113:16,18

**cease** 44:13

**Center** 79:12

**certificate** 71:5,7 106:16 108:9,13

**cetera** 106:23 107:13

Case 2:21-cv-00278-NT   Document 63-24   Filed 09/03/23   Page 38 of 49   PageID #: 1045

Wilmington Trust N.A. vs Howe
VIA MICHAEL PATERNO, 30(B)(6) OF FAY SERVICING, LLC on 05/31/2023          Page 130 Index: Challenge..criteria

**Challenge** 66:3

**change** 53:16 55:3

**changed** 17:24 85:2

**characterizing** 21:5

**charge** 95:16

**charged** 94:2,19 96:2

**charges** 95:14

**charging** 88:21 89:4

**chart** 110:15

**Circuit** 66:6,7 67:11

**Civ.p.** 48:18

**claim** 7:12 114:4

**claims** 41:1,5 48:19,24 72:21,22
73:18

**classified** 34:20

**clause** 48:13

**clear** 9:19 22:1 49:24 99:13

**click** 115:10

**clicked** 115:12

**client** 60:18,19 61:3

**close** 9:20

**collateral** 67:18 68:18

**collect** 12:11,20,21 13:12,16,19,24
52:20 67:17

**Collection** 45:4

**collector** 62:10 83:17 84:3,23 85:11
86:4 93:22 97:10 98:2 100:23

**collects** 14:21

**colloquy** 8:11

**colored** 109:11

**column** 110:18,21 111:3,19,23
112:14

**comma** 50:3

**commenced** 66:20 99:11

**communicate** 44:1,7,10,16,22 59:23
80:8,18

**communicated** 60:2 99:24 100:3

**communicating** 59:11 83:3

**communication** 44:12 97:9 100:22,
25

**communications** 24:1 26:4 28:1
44:18

**company** 78:14 80:22 114:10

**compare** 17:22 46:13

**complaint** 15:15 16:13 18:22,24
22:19,21,23 23:13,15,16 24:15 25:23
26:11 50:21 51:1 66:2,5 67:3,23 68:2,
16,18 69:14 73:9 87:9,11 88:12,15
89:7 103:21 119:3 120:9

**complete** 9:12 109:20

**compliance** 45:3

**complying** 16:3 19:1,24 23:6 28:18
39:16 40:1 63:14 75:15 79:5 81:19
86:9 95:14 102:6,22 113:9

**conclude** 121:23

**concludes** 122:8

**concluding** 104:5

**conditions** 57:10

**conduct** 41:10

**conducts** 24:22

**confused** 106:9

**connection** 95:17

**Consumer** 60:24 61:3

**contact** 80:22

**continue** 44:6

**continues** 43:25

**continuing** 41:23

**contract** 98:18,25 99:1 101:16 102:2

**contracting** 57:24

**control** 69:3

**controls** 57:20

**conveying** 71:25 86:13

**copy** 15:12 29:1,21 43:13 45:22 60:15
61:7 71:8,11 105:5 108:9

**core** 72:10

**corporate** 8:7

**Corporation** 66:4

**correct** 8:10 13:21,22 14:11 17:21

18:2 19:4 21:7,11 25:7,11 28:4,5 29:5,
6,12,13,18 31:25 32:1 37:4,5 39:18
43:19 45:13,21 46:11 47:4,6 49:21,22
50:9,10,13,17 51:5,21,22 52:14,17
53:25 55:14,15 56:2 57:3,4 58:12
59:4,5,8 60:1 61:24,25 62:2 63:17,18
64:6,8,9,14 65:7,8,10 66:12,18,21
73:4,5,10,11,16,17 74:17,18 75:22
76:7,23 77:3,22,23 82:2,3,9,10,14
83:18 84:5,8,10,12,14,16,18,25 85:4,
13,16,18,20,22,25 86:4 88:13,14,19
89:25 90:21 91:12,13,15 92:8 93:5,22
95:23 96:5,19,20 97:17 98:7,11,14
99:2 102:8,9,12,15,16 106:24 108:9,
11,18,19,25 109:3,14,17 110:8
111:11,22 112:3,7,8,13,16 113:2,7
115:4 118:3

**corrected** 109:23

**correctly** 47:2 110:22 111:9

**correspondence** 61:9 62:12 79:24
80:7 93:12,14 96:17 97:5,15 98:8
101:4,6 102:7,10,23

**costs** 86:20 91:15 92:5 94:22 95:1,9

**counsel** 15:13 25:6,9,13 27:8 38:5
43:19 44:3,8,15,23 49:3,5 59:25 63:21
64:17 65:12 93:13,15 104:9 110:4
113:19 118:7

**counter** 8:8 10:7 39:9,10,19 73:9

**counterclaim** 7:11 39:22

**Counterclaims** 40:3

**County** 16:16 66:8 67:12

**couple** 10:4 89:22 91:23 104:13
107:22 114:13

**court** 6:17 7:6,17 16:15,16,18 17:19
20:20 21:6,7,9,20 24:7,8 25:2,15 26:7
59:16 66:6 67:5,8,9,12,16,19 68:13,20
69:2,5,19 71:1,16,21 72:18,22,23
73:14,19,21 74:7 78:17 88:19,23 99:4,
9 105:10

**court's** 78:19

**court-related** 12:1

**courts** 24:2 67:21

**cover** 47:11 95:9

**covered** 94:7

**Credit** 60:24 61:4

**criteria** 34:13

**cure** 58:24 104:18,20

**current** 46:20 52:10

**cursive** 49:25 50:1

---

**D**

**damage** 92:25

**data** 37:9 110:6,9 113:4,5 118:3

**date** 31:13 33:5 34:16,17 51:24 52:3 53:2,6,18,20 54:9,13,15,22 55:13,16, 21,22 86:17 102:11,13 109:13 115:25 116:3,9,10

**dated** 20:3,23 21:10 50:8 51:21 62:1 81:24,25 82:8 83:23 90:24 96:19 97:14 98:6 102:7 104:18 113:13 114:23 120:19

**dates** 89:20 90:17

**day** 33:24

**days** 33:4

**deals** 116:16

**debt** 44:9 45:4 62:10 83:16 84:3,23 85:11 86:3 93:22 97:9 98:1 100:23

**debts** 56:19,23

**December** 43:14,22 73:10 82:8 83:11 85:21 86:2,7 87:1 89:9 90:7,9 91:6,25

**decided** 79:18,19

**declaratory** 16:13 19:11,17 66:2 77:21 78:2,5

**deed** 14:6

**deemed** 36:2

**Deerwander** 79:11

**default** 13:10,13,17 14:8 29:7,12,15, 16 30:3,7,8 31:23 32:15 34:15 52:10, 11,13,16 55:16,21 56:1,7 79:23 87:6 92:17 95:18 116:9,10 118:22 121:6

**defaulted** 13:19 56:19,23

**defendant** 8:8 10:7 66:12 105:14

**defendants** 18:5 39:19

**Defendants'** 39:9

**defense** 40:7,10,21 41:14,15,18,21, 24 42:2,5,8,11,14,17,20

**Defenses** 40:3

**define** 29:7 30:2

**definition** 29:12 30:7

**defunct** 76:16 78:13

**defying** 56:18

**Delaware** 108:5

**delinquency** 82:17 84:2,21

**demand** 34:17 58:22 60:2 104:23 115:25 116:3

**denied** 49:14 50:4

**departments** 35:2 109:21

**deposed** 8:13

**deposition** 6:8 9:22 11:9 15:16 16:23 18:16 22:4,24 26:14 27:15 28:10,12, 21 30:24 32:7 37:18 38:22 39:12 40:24 41:7,11 42:24 43:6 46:15 47:9, 12 48:4 58:14 61:14 62:4,19 63:23 65:16 70:6 74:16,21,23 75:5 81:12 89:14 96:11 99:22 103:23,25 104:5 105:4 106:11 107:7 121:1,11 122:9

**describe** 12:7 29:23 63:2

**description** 82:22

**designee** 8:7 11:9

**desist** 44:13

**determination** 25:7

**determinations** 25:10,14

**determine** 113:6

**Diaz** 69:12,17 70:18,25 74:16 78:16

**differentiate** 11:14

**digital** 34:1 36:9,10

**Diplomat** 27:2

**DIRECT** 7:22

**directing** 118:12 119:2

**directly** 44:1,7 47:3 59:11,24 88:7 93:13 100:3

**disclose** 67:7 68:17 71:21 73:25

**disclosed** 50:20

**disclosing** 67:19 72:8

**disclosure** 85:10 93:23 100:19

**disclosures** 86:6 97:6

**discovery** 45:7 75:10

**discussed** 25:25 49:3 90:6 117:7

**discussing** 33:9 44:13

**discussion** 37:18

**dishonest** 24:24 25:1

**dismissal** 48:17,18

**dismissed** 47:23 48:9,25 49:12 50:3

**disseminated** 35:1

**disseminates** 34:6

**distinguished** 105:14

**District** 7:17 26:7,8 67:8,9,16 68:20 69:5,19,20 71:16,17 72:18 73:19

**divulging** 26:3

**DJ** 15:15 17:20,24 18:1,13 23:19 37:6, 14 45:18 46:10 48:24 77:21 88:12 117:5

**doc-to-data** 35:14,19

**docket** 6:14 17:8,9,19 46:12 75:9 77:25 78:11,12

**docs** 38:11

**document** 17:1 22:15 23:23 28:24 34:19 36:12 37:10 41:12 43:17 46:13 51:10 65:1,6 66:15 70:14 88:20 104:19 105:4 106:14 107:3,9,10,11,12 108:21 109:6,15,18 119:7 120:25

**documents** 27:20 35:16 36:9,10 37:10 40:25 41:4,9 43:10 46:9,21 47:2 51:11 58:2,10 65:4 80:14 94:1,5,6 108:3 118:18 120:3

**double-check** 102:18

**download** 36:9

**drawn** 8:3

**dropped** 114:15

**duly** 7:19

**duplication** 90:3

---

**E**

**earlier** 29:14 30:5 31:11,15 45:13 46:23 51:1 53:2 57:1 77:1 79:2,6 80:5, 16 102:17,24 103:12,15 105:2 110:11 113:3,21 115:23 116:19 120:3

**easier** 22:8

Case 2:21-cv-00278-NT   Document 63-24   Filed 09/03/23   Page 40 of 49   PageID #: 1047

Wilmington Trust N.A. vs Howe
VIA MICHAEL PATERNO, 30(B)(6) OF FAY SERVICING, LLC on 05/31/2023          Page 132 Index: ECF..find

**ECF** 23:5 48:15 66:24

**effect** 14:7 92:23

**effective** 88:4

**eighth** 42:5

**electronic** 34:4,5

**eleventh** 42:14

**ELI** 34:4 35:8,9 106:25

**employed** 11:17

**enable** 88:5

**end** 9:21 43:17 101:17

**enforceability** 37:3,19 38:1

**enforceable** 100:12,15

**enforcing** 95:1

**engage** 14:15

**ensure** 25:22

**entered** 76:3 118:20

**entities** 119:13

**entity** 46:18 54:24 76:19 121:7

**entries** 17:8,9,19 46:12 75:10 77:25
78:11,12 86:21

**entry** 55:1

**error** 90:3

**errors** 18:18 23:1 32:18 39:12 62:6

**escrow** 12:12

**establish** 88:5

**event** 118:21

**events** 28:3

**everybody's** 15:9 122:7

**evidence** 121:1

**evidencing** 87:22

**ex-husband** 10:22

**exact** 27:16 31:13 35:5,9

**examination** 7:22 104:15 106:20
107:25 118:10 121:14

**examined** 7:20

**excellent** 36:13

**exception** 34:22 35:12 36:17,20 37:1,
12 107:4,5,15 110:13 112:22 113:13

114:22 115:16 117:2

**exceptions** 36:22 107:2 110:12

**executive** 63:20

**exhibit** 15:15,16,20 16:7,9,12,20,22,
23 17:14,22,23 18:4,16,19,21 19:21
22:3,4,7,14,17 23:17 25:22 26:6 28:8,
10,12 29:19 30:15,22,24 31:3,6,12
38:22 39:3,6 42:24 43:4,14 45:10,16,
23 46:5,8,10 47:11,12,16,20 48:3
49:17 50:16,20 51:7,12 53:22 58:13,
14,19 60:20 61:4,9,13,14,18 62:18,19
63:13 64:5,10 65:15,16,22 66:23,24
67:1,4,22 68:2,16 70:5,6,12,15 73:6,7
74:19,21,23 75:18 77:24 79:4,6 81:11,
12,21 82:8 84:20 85:3,24 87:11,14
88:11,14 89:13,14,25 90:8,14,16,22
91:9 93:21 94:17 95:11,12,13 96:10,
11,18 102:21 104:17 105:18 106:11
107:7,10 114:14 119:2,16,19,22,23,24
120:12,13,14,16

**exhibits** 15:10 18:25 23:19 28:22
42:22 43:4 75:1,4,16 77:2 80:5 94:4
105:25 119:24

**expenses** 94:22 95:1,3

**explain** 32:22

**explaining** 64:17 109:2 116:19

**express** 96:1

**expressed** 96:4

**extent** 95:2

---

**F**

**face** 122:2,4

**fact** 121:5

**facts** 24:23 25:1 40:9,19,20 41:15,17,
20,24 42:1,4,7,10,13,16,19 56:17,21
72:1 74:8

**failure** 29:9 94:20

**fair** 9:2,10,11,17 10:2,14,25 11:6,15
45:3 56:16 88:21 89:4,10

**fairness** 16:21

**fall** 116:21

**familiar** 8:24

**Fay** 6:9,13 7:5 8:8,17 10:16,17,18
11:9,12,17,25 12:6,19,23 13:3,11,15,
23 14:13,18,23 15:3 18:12 20:8,12,21

21:3,13 22:20 23:12,17,25 24:6,7,13
25:6,9,13,17,21 26:10,14 27:23 28:1
29:16 30:5 31:19 32:16,24 33:3 34:2
35:7,14 36:19 37:20,23,24 39:23 41:2,
6,10 43:13,21,25 44:5,17,21 45:2,7
46:21 47:2 50:11,22 51:17 52:18,20,
25 53:5,10,22 54:6,12,20 55:7,14,20,
22 56:2,6,8,10 57:25 58:25 59:6,10,
12,22 60:20,22 61:7,11,23 62:10,12
63:5,21 64:12 66:5,14 67:2,7,14,23
68:4,8 69:1,12,17,25 70:25 72:20
73:7,12,18,25 74:4 76:3 77:4,16 78:4
79:14,18 80:8,17 82:12 83:3,16 84:22
85:11 86:3,13 87:10 88:16,21 89:4
90:23 91:11 93:4,21 97:15,23 98:1,8,
13 99:8,24 100:3,9,14 101:1,7,9,14
102:10,13 103:7 104:5,7 112:22,23,25
113:3 114:7 122:9

**Fay's** 24:20 36:6 70:17,22 72:6 79:22
86:25 93:10 103:8

**FC** 111:23,25

**FDCPA** 61:21

**February** 84:7 90:25 91:7,19 92:1
98:6,12,20 99:5 100:15 121:18

**federal** 24:7,14 67:8,19

**fee** 86:19 92:16

**fees** 86:20 88:22 89:5,9 91:19 92:12
94:1,18 95:4,6,8,9,21,22 96:2,6
104:23

**Felicitti** 6:18

**fields** 110:7 118:4

**figure** 105:11

**file** 19:11 20:9 23:9,13 24:6 34:1 35:7
37:10 39:21 70:21 71:24 74:7 80:7
109:19

**filed** 16:15 17:17 22:21 26:6,11 45:17
46:2 50:21 66:6,14,25 67:4 70:17
73:3,8 87:9 88:12,15 89:7 103:20
104:7 106:16 119:25

**filing** 49:5 67:10 114:11

**final** 33:4,24 35:4 36:2,23 37:8
110:18,19 113:12 114:22 115:16

**finally** 91:8

**Finance** 32:3,9,11,19 77:8

**Financial** 66:4

**find** 94:14

**finding** 94:13

**findings** 115:2,5

**fine** 38:9,17 97:23 103:13 105:16
106:8 107:19 118:9

**finish** 9:25 30:21 121:12

**fit** 113:15,17

**five-minute** 38:13

**flagged** 115:19

**floor** 114:16

**Florida** 66:9 67:5,12,18,22 68:3,15
69:2,14,15 70:18 71:1,21 72:8,15
73:21 75:11 76:5,11,15,21 77:4,21,25
78:17,18,19 87:11,13 88:12,16,19,23,
25 89:7 99:4,9,11 119:3

**flow** 63:3

**follow-ups** 107:23

**foreclose** 83:4,12 87:2,4,12 88:9,18
89:6 99:10

**foreclosing** 87:25

**foreclosure** 12:15 14:10,12 34:11,
12,15,20 67:15 82:22 84:2,22 86:19,
20 88:6,22,24 89:5,8 91:15,19,24 92:5
97:1,2,20,21 98:17,24 101:15,25
112:1,10,12 113:1,10,12 114:25
115:8,16,24 116:2,11,12

**forgot** 113:20

**form** 20:24 57:2 84:1

**format** 85:1

**formed** 108:22

**forward** 27:19 36:7

**fourth** 41:18 91:2

**frame** 27:14,16

**front** 108:4 120:10

**full** 94:24

---

G

**Gaige** 6:17

**gave** 31:10

**general** 8:23 11:22,23 62:24 63:21
89:22 121:3

**generally** 11:11 12:7 28:24 29:23

32:22,24 39:8 46:22 58:21 63:2 65:5
81:16,17,21 82:5 83:25 84:20,24

**give** 14:2 16:21 23:21 105:5

**goal** 13:25

**Good** 50:1

**goodbye** 33:14

**governing** 44:18,22

**granted** 78:20

**granting** 75:19

**great** 9:21

**group** 89:17 96:16

---

H

**halfway** 33:23

**hands** 9:7

**handwriting** 20:1 21:10 49:23

**happen** 104:6

**happened** 53:11 54:9 72:25 92:25

**happening** 80:24

**hard** 47:25 49:18

**head** 44:24 60:13

**hear** 9:5 30:11 117:19

**hearing** 9:12

**heavily** 117:10

**heavy** 117:9

**Henry** 7:15 10:23 120:20

**hereto** 108:8

**hiccups** 30:10

**Hillsborough** 66:8 67:12

**Hillsbury** 66:8

**hired** 56:1

**hiring** 57:25

**hold** 47:15 57:5 119:23 121:12,25

**holder** 94:23,24

**holder's** 94:22

**holding** 104:4

**holds** 87:21

**Hollis** 79:12

**honest** 24:1,5,15,24 67:14 68:15 69:1
71:24 72:7 103:14

**honestly** 57:18 90:10 110:2

**hoping** 14:1

**hour** 38:5

**hours** 27:21 80:15

**Howe** 6:10,25 7:2,15 10:22,23,24
12:25 13:4,8 14:25 15:4,5 18:9,13
19:3,21 21:21 29:14 31:11 32:12,15
36:18,22,25 40:25 41:5,9 43:19,23
44:1,2 46:2 52:9 53:6,24 54:14 59:1,7,
12,25 61:23 62:13 67:24 68:4,9 69:13
71:1,6 72:9 73:21 75:11,24 76:4,22,25
78:13 79:7,10 82:12 83:3 85:6 86:13
91:11 93:4 96:23 97:5,15 98:9,13
99:21,24 100:3,10 101:1,7,10,15
102:11,14 103:8 110:11,12 112:25
113:15,24 115:6,14 117:4,16 119:9
120:21 121:19

**Howe's** 79:20 80:3,9,19 99:19 102:25

---

I

**idea** 65:12

**identification** 15:17 16:24 22:5
28:11,13 30:25 38:23 42:25 47:13
58:15 61:15 62:20 65:17 70:7 74:22,
24 81:13 89:15,19 96:12 105:3 106:12
107:8

**identified** 32:3 36:22 37:2 61:4 71:7
75:24 79:11 91:16 92:13 93:21

**identifies** 18:4 43:18 46:1 60:18 78:1

**identify** 6:21 18:18 22:18 23:1,18
28:24 29:20 31:6 39:8,12 40:8 51:10
52:25 54:13,21 55:6,20 58:21 61:20
62:6 66:1 70:14 71:1,15 77:8,11 84:22
86:3 89:20 90:2 91:14 92:4 117:3

**identifying** 11:3 108:20,22

**Illinois** 79:20 103:4

**imagine** 50:14,18 56:12 57:15 114:11

**immediately** 94:23

**implied** 103:3,16

**inaccurate** 52:6 83:19

**inadvertent** 90:3

**include** 27:25 30:7 81:22 95:3 116:24 119:24

**included** 37:7 89:9

**including** 79:7 80:17 95:20

**inconsistency** 116:4

**inconsistent** 34:8

**incorporated** 113:4

**indicating** 96:25

**indication** 37:12

**individual** 6:12 10:9 118:24

**industry** 33:7

**information** 24:14 26:2 33:9,10,22, 25 34:6,9,14,18,19,21,24 35:1,5,6,11, 17,18,20,24 36:1,3 37:7,16 52:2 56:5 69:2,18 82:5 84:1 86:13 100:9 114:7 115:1 116:1,5 117:24

**initials** 60:10

**initiate** 88:6

**inspection** 92:12,16 94:1,18 95:6,22 96:1

**inspections** 94:10

**inspector** 92:18

**instance** 34:23

**instruction** 25:19

**instrument** 29:25 95:20

**insurance** 12:13 86:22,23 104:22 113:22 114:1,5,10

**intact** 99:15

**intend** 57:5 103:22

**intended** 9:14

**inter** 88:3

**interest** 18:5,8,13 68:9 69:14 71:2 76:4,8 87:24 95:19 104:22

**interested** 67:24 68:6 73:22 77:9 78:7

**interface** 34:4,5

**investor** 53:3

**Investors** 46:16,23 66:4

**invoke** 98:17,24 101:15,25

**involved** 7:13 14:19,24 24:2 28:2

114:12 115:13

**involvement** 26:5

**issue** 24:10 99:13 115:25

**issued** 115:3

**issues** 36:25 37:2 115:18

---

**J**

**January** 71:9,12 73:4,13 83:23 90:25 91:7,10,18 92:1,11 93:2 102:8

**job** 11:20 12:5

**John** 6:24,25 106:1

**judge** 21:7,20

**judgment** 16:14 17:4 19:12,17 20:10 48:4,16 49:12,13 50:2,4 78:2,5

**Judicial** 66:7

**July** 84:17 91:3,21

**jump** 15:22,23 117:21

**June** 84:15 91:3,21

**justice** 20:15,20 21:9

---

**K**

**K-O-L-L-Y-D-A-S** 64:1

**keys** 14:5

**kind** 14:5 47:25 81:15 82:4

**knew** 59:6 69:3 73:12,13 76:3 93:4 98:13 102:13

**knowledge** 62:8 64:3 80:6 89:11

**Kollydas** 63:25

---

**L**

**language** 96:5 118:25 119:12

**late** 13:6 104:22

**law** 88:2 95:3

**laws** 44:17,21 45:1

**lawyer** 100:10

**lawyers** 103:8

**leave** 106:1

**left** 105:11,17,19

**legal** 12:4 24:10,17 40:16,18 46:3 74:4

**legality** 78:9

**lender** 52:3 88:8 95:16

**lender's** 95:19

**letter** 33:14 34:17 51:17 58:23 60:8 61:10,21 79:11,19 98:5 101:24 115:25 116:3

**letters** 33:12 101:20,22

**lieu** 14:6

**light** 115:9

**limited** 12:5 95:21

**lingo** 20:17 60:15

**list** 75:21,23,25 115:10,13,14

**listed** 40:7 110:21,23 113:16 115:21

**lists** 60:23

**litigated** 117:10,11

**litigation** 11:21,24 13:1 14:19,24 15:4 24:3 28:4 67:10,11,18 68:10,18,19 69:15 71:15 72:8,9 73:14 74:1 116:25 117:4,17

**live** 80:1

**lives** 79:10,15

**LLB** 34:25

**LLC** 6:9,13,16,18 7:5 8:9 10:16,19 11:12 26:22 27:3,6 83:16 85:11 120:22 122:10

**loan** 12:25 13:5,9,10 14:3,25 15:5 19:13 27:19 28:2 29:3,15 30:6 31:8, 11,19,23 32:12,15,23 34:4,5,7,10,12 35:17,22,25 36:18,22,25 44:2 51:14, 15,16,24 52:2,3,9,11,13 53:2,6,8,11, 19 54:14,21 55:4,7,17,20 56:6 76:16, 20,21,23,25 77:18 83:9 86:22 87:22 93:25 94:5 95:14 104:20 106:20,21,22 107:2,12,14,15 109:23 110:11,12,19 113:1,15,24 115:6,14,24 116:8,22 117:4,8,10,16,17 118:12,13,15,19,20, 22 119:8 120:2,19 121:4,5,17,19

**loans** 12:15,19,21 13:12,16,20,24 14:21 35:3 52:22 55:25 57:1,5,7 64:12 110:10,20 111:5,7,14 112:5,6,9,11,17 113:11 115:2,10,13,15 116:14,16,23, 24 117:3

Case 2:21-cv-00278-NT   Document 63-24   Filed 09/03/23   Page 43 of 49   PageID #: 1050

Wilmington Trust N.A. vs Howe
VIA MICHAEL PATERNO, 30(B)(6) OF FAY SERVICING, LLC on 05/31/2023     Page 135Index: log..named

log 64:17 65:12

long 9:23 10:5,11 81:25 89:23 120:25

Longoria 7:3 17:11 20:24 23:8 24:9, 16,25 30:16,20,23 38:9,14,17 39:21 40:11 43:1 50:24 69:7 72:2,11,24 73:23 74:9 78:8 99:12 104:13,16 105:8,13,21,24 106:4,8,13 107:18,24 118:9,11 119:5,6,21 120:1,5,8,17,23 121:10

looked 43:3

Loren 63:19

losing 101:22

loss 12:16 14:1,4,9,15 57:2

lost 24:7

LP 32:4,9 46:16,23

LP's 32:11

**M**

M.R. 48:17

made 68:5 77:20 78:18 114:4

mailed 33:18 79:6

main 13:25 36:4

Maine 6:13 7:18 16:18 20:17 26:8 67:9,11,16,17 68:11,21 69:5,20 71:17, 22 72:18 73:20 76:8 79:12 88:3 112:2, 6,11,18

maintain 19:16 94:9

maintained 54:12

maintaining 67:15

make 25:7,9,13 92:23 105:18 106:22

managed 64:8 109:2

management 57:21,23 64:7 109:1

Manager 27:3,6

March 20:3 48:23 84:9 91:1,8,10,20 92:2,11 93:3

margin 17:4,18 20:13,18,23 21:4,5 45:12,19 47:19,22 48:5 49:9,16 50:16, 19

mark 105:2,15

marked 16:20 28:21 42:25 45:10 58:18 105:10 107:9

market 57:8,9

Maryland 112:11

match 116:7

material 72:1 74:8

math 111:13

matter 12:1 25:3 58:1 67:11 71:2 72:23 76:5,10 78:6

means 112:10 118:2

meeting 33:6

meetings 33:16 117:13,15

Melanie 6:10,25 7:2,15 10:22 120:21

memorialized 76:25

memorized 65:1

memory 31:12 66:22

mention 23:24

mentioned 10:6 56:25 113:22

Merissa 6:15

MERS 76:17 88:4

mess 105:24

messed 102:17

met 104:2

methods 13:23

MF 26:21 109:12

MFA 57:14

MFRA 10:10,12 26:20 52:21 55:1,4,8, 21 56:7,11,17,22 57:5,20,22 58:10 108:10

MI 114:10

mic 9:21

Michael 6:9 7:19 8:2 122:9

mine 109:11

mini 97:8 100:22

minute 23:21 47:16 94:14 104:11

minutes 38:7 81:3

Miranda 97:8 100:22

missed 79:1

missing 116:1

misspoke 103:2,15

mistaken 89:24

mistakes 18:18 23:1 32:18 39:13

mitigation 12:16 14:1,4,9,15 57:2

mixed 106:10

Mm-hmm 94:6 107:24 110:17

MMK 60:11

modification 14:2 35:18 118:15,20, 22 119:9 120:3,19

modifications 118:13 119:1 121:4, 17,20

modified 57:1,5 118:22

moment 10:6 16:2 28:6,15 30:17 31:2 40:22,23 70:19 75:8,13 81:16 84:19 119:11

money 29:4

month 53:13

Morris 63:19,20,22

mortgage 12:9,10,14,17,19,24 13:4 14:21 24:22 29:21,24,25 30:2,8 31:25 35:18,24 37:3,19 38:1 44:9 47:7 52:22 56:19,23 68:10 72:16 73:15 76:19 77:1,5 78:14 80:4,9,19,21,23 86:22,23 87:5,8,22,25 88:4,9 94:8,12 95:13,24 96:3 98:18,25 99:5,14 100:5,11,15 101:16 102:1 113:21,22 114:1,5 120:21

mortgages 116:17,21

mother 79:20 80:3,9,19,22 102:25

mother's 103:9

motion 17:3,17 19:25 20:2,9 45:12,17 46:2 48:4,14 49:5,11,13 50:2,4 70:15, 21,24 71:3,4,8,12,14,20,25 73:2 75:19 103:20,24 104:6 122:1

move 36:7

MSP 35:21,25 36:4 53:2,5,8,16 54:8 55:5,6,12,16,19 114:11

MTGLQ 46:15,23 47:3

MTLGQ 77:11,15

multiple 79:7 92:9

**N**

named 67:25 68:14 71:4

**names** 10:5,24

**National** 6:11 7:4,14 10:8 54:24 58:8 63:7 108:15

**Nationstar** 47:7 77:5,15 120:21

**nearby** 16:20

**necessarily** 15:10

**needed** 26:2

**ninth** 42:7

**normal** 54:12 79:22 93:14 114:8

**Nos** 42:24

**Notary** 7:20

**note** 7:9 20:13,25 21:4 25:23 29:1,3,7, 17 31:24 35:17 67:17 68:9 72:16 73:16 76:25 80:4 87:5,6,21 94:17,21, 22,24 95:2 96:5

**noted** 23:3 54:8

**notes** 32:3 117:15

**notice** 31:7 33:12 51:13,19,24 54:3,7 58:23 73:21 82:18 83:4,5,10 84:2,21 97:13 100:18 104:17

**noticed** 39:14 60:3

**notices** 78:12

**noticing** 6:20

**notified** 93:18

**notifying** 78:6

**noting** 19:8

**November** 13:7 31:16 85:19 87:1 90:5 91:5,25

**number** 7:16 19:8 23:5 29:9 97:24 106:7 110:19 111:4,5,14

**numbers** 19:22 60:5 63:11 102:4 107:13,21

**nuts** 12:14,17

O

**oath** 7:8

**objection** 20:24 24:9,16,25 40:11 50:24 69:7 72:2,11,24 73:23 74:9 78:8 99:12

**obligation** 94:8

**obtain** 78:5 87:23

**occupied** 92:19,25

**occur** 14:5

**occurrence** 72:10

**occurrences** 28:3

**occurs** 32:24

**October** 85:17 90:4 91:5,24

**off-board** 33:8

**off-the-record** 8:11

**office** 8:5

**old-fashioned** 60:15

**omission** 24:23 25:1

**omitting** 24:14 69:2 74:8

**onboarding** 53:15

**one's** 62:22

**open** 104:4 121:25

**opinion** 74:4

**opinions** 40:18

**opportunity** 104:20

**opposed** 48:9

**opposing** 15:13

**opposition** 46:1

**option** 14:6

**order** 15:11 17:3,4,6,18 20:2,18,19,23 21:5,14,20 33:1 34:14,20 45:19 47:19, 23 48:5 49:10,16,21 50:12,15,16 75:19 76:2,3 99:4

**orders** 50:19

**organized** 81:2

**original** 16:13 22:19,21,23 25:23 29:1,21 64:19,22 87:21

**originating** 88:8

**originator** 76:16

**owned** 55:8

**owner** 15:5 19:12 46:19 51:15 53:3 54:10 55:1,4 77:17,19 118:19

**owners** 14:20 64:11

**ownership** 53:16

**owns** 76:20

P

**P-A-T-E-R-N-O** 8:2

**p.m.** 122:10

**pages** 23:16 51:12,16,18 64:16 81:25 114:13,23 119:7

**paid** 86:23 94:25 113:23

**papers** 74:7

**paragraph** 29:7,17 49:10 82:24 95:12,15 96:21,22,24 97:8,19 98:16, 22 101:14

**paragraphs** 87:20 88:11

**parents** 79:25 80:2

**part** 13:11,15 24:20 27:23 44:5 46:22, 24 49:20 63:12 80:10,11 89:24 90:3 93:14 94:7 103:11 110:10 113:12 119:22

**participate** 14:15

**parties** 6:3,21 10:4 18:5,8 24:2 77:20

**party** 18:13 63:7 67:24 68:5,6 73:22 77:6,8,12 78:18 80:3

**Paterno** 6:9 7:19,24 8:2,13 15:18 17:13 22:6 28:15 31:2 39:2 43:3,11,13 47:15 58:18 62:15 65:2,20 70:10 75:4 81:10,20 89:17 104:1,14 108:2 110:1 121:16,24 122:9

**pattern** 27:23

**pay** 12:11 29:4,10 94:20,23

**payment** 94:21 104:21

**payments** 12:11,20 104:21

**pending** 7:16 15:4 68:19 69:4,18 71:15,21 72:9 73:14 104:6 122:1

**people** 79:7

**performed** 95:17

**period** 50:5

**periodic** 81:14,22 82:16 83:10

**permit** 88:8

**person** 78:13 122:3

**personal** 11:20,23

**personally** 11:13,14,17 26:5 55:10

56:14

**persons** 78:7,17

**pertinent** 26:1

**Peter** 63:25

**phase** 33:21 36:24

**Phillip** 7:1

**Pine** 46:3

**place** 33:3,21 53:12,13 54:5 65:14

**plaintiff** 7:15 10:6 17:25 18:1 39:10
66:12 87:21 105:14

**plaintiff's** 105:3,10

**plan** 57:11

**pleading** 25:15

**pleadings** 25:18 74:7

**POA** 57:23,24 58:4

**point** 20:12 24:5 36:7 38:10 70:3
87:16 119:12

**poker** 122:2,4

**policy** 24:20 44:5,10 45:2 61:6,11
79:22 93:11,15 111:20

**portfolio** 110:10

**position** 24:13,23 68:8 72:7 86:25

**possession** 69:3

**Possibly** 70:2

**post** 109:13

**potential** 78:6

**power** 58:4,9

**practice** 27:24 45:2 61:6 79:22,23
93:11,15

**practices** 24:21 44:6 45:4

**precise** 54:19

**predecessors** 77:16

**prejudice** 47:24 48:9,10,17,19,25

**preliminary** 33:21,22,25 34:24 35:6
36:23 37:8

**premarked** 15:9 39:3

**premiums** 113:23

**prenumbered** 105:25

**preparation** 12:1 18:15 22:24 26:13
27:25 28:20 32:7 36:16 37:17 40:24
41:6,11 47:8 62:3 63:22 74:15 118:16

**prepared** 33:16

**preparing** 27:13 46:14

**present** 121:18

**presenting** 15:12

**preservation** 104:24

**president** 63:20

**pretty** 12:13 62:22

**previous** 59:18 90:8

**previously** 112:19

**primary** 7:12

**principal** 104:21

**print** 97:23

**printout** 65:9

**prior** 22:7 23:18 32:2 33:4 34:16 36:5,
10 46:10,13,19 73:9 77:15 117:14,15

**privilege** 64:17 65:12

**problem** 23:22

**procedure** 27:24 45:3 61:7 79:23
87:7 93:11

**procedures** 24:21 44:6 93:15

**proceeding** 74:8

**proceedings** 88:6

**process** 32:25 33:2 35:10 36:2 46:22
53:14 54:6 106:22 116:19 117:6

**produced** 45:6 75:10 97:23 107:3,6,
21 108:3 109:6 112:23

**promise** 121:23

**pronoun** 11:10

**pronounce** 108:16

**property** 27:2,5 30:1 79:10 82:12
85:6 90:24 91:11 92:12,15,17,18,24
94:1,9,18 95:6,19,21 96:1,24 97:16
98:9 101:7 104:24

**protect** 94:9

**protecting** 95:18

**Protection** 60:24 61:4

**provide** 69:17

**provided** 25:18 37:7 76:22

**providing** 27:9

**Public** 7:20

**published** 95:2

**pull** 43:1

**pulled** 107:16

**purchasing** 56:19

**purpose** 43:5 76:15 87:25

**purposes** 78:19 89:19 95:18 105:3

**pursuant** 29:16 31:24 48:17

**pursue** 72:7,21 73:20 118:21

**pursuing** 67:17

**push** 15:22 22:9

---

**Q**

**question** 9:8 11:5 13:14 20:16,21
21:2,16,18 25:12 26:4 40:13,14 44:19
48:11 51:4 56:20 57:13 59:14,18
64:20 68:1,24 69:23 72:12 74:5,13
76:9,12,13 78:24 89:1 94:15 103:6
110:15,24 117:21 120:24

**questioning** 9:25

**questions** 15:22 40:6 51:1 62:24
89:22 102:24 103:18,22 104:10,13
109:9 113:20 118:6

**quote** 101:17

---

**R**

**rate** 35:24 116:17,21

**ratified** 41:10

**re-performing** 57:7

**read** 7:11 23:21 48:1 49:19,22 59:17,
18 88:10 90:16

**reading** 23:23 110:22 111:9 112:2

**ready** 15:19,21,23 16:25 22:14 28:17,
19 31:4,5 36:3 39:4,5 43:9,11 62:25
65:19,21 70:10,11 75:14 81:18,19
96:14 122:7

**reason** 9:6 49:4 52:5 79:14 103:7

**reasonable** 95:4

Case 2:21-cv-00278-NT   Document 63-24   Filed 09/03/23   Page 46 of 49   PageID #: 1053

Wilmington Trust N.A. vs Howe
VIA MICHAEL PATERNO, 30(B)(6) OF FAY SERVICING, LLC on 05/31/2023    Page 138Index: recall..security

**recall** 45:9,25 75:6 103:1 113:17,18

**receive** 43:13 46:21 64:17

**received** 12:4 30:6 47:2

**receiver** 66:3 70:16,25 75:20 87:23

**receiving** 61:8

**recess** 38:21 81:6

**record** 6:6 7:10 8:1 22:1,11 30:16,19 36:4 37:21 38:6,18,19,25 53:1 81:2,4, 8

**records** 11:25 32:12,14,19 33:1 36:5, 7 37:13,22,23 54:11,20

**redacted** 107:12

**refer** 121:2

**reference** 22:11 84:21 103:12

**referenced** 60:20 108:13

**references** 91:18,23

**referred** 45:13,19 106:19

**referring** 47:19 82:25

**refers** 110:9

**reflect** 32:14 106:14

**reflecting** 87:24

**reflective** 31:16

**reflects** 107:4

**refresh** 31:12 66:22

**regard** 12:5 45:1 57:19,23 104:17 105:1

**registered** 53:9

**relate** 58:9 115:5

**related** 14:25 26:24 32:12 36:18,22 46:10 58:10 67:10 68:19 69:4 72:22 99:5 102:25 121:19

**relates** 72:16

**relation** 25:2

**relationship** 106:14

**released** 41:1

**relevant** 71:25 73:24

**relief** 66:2 78:19 87:12 88:18,24

**remainder** 90:22

**remember** 27:16 120:6

**Reneau** 7:3

**repeat** 9:13 13:14 20:16 25:12 44:19 45:14 49:18 56:3,20 59:14 68:1 72:12 76:13 89:1 100:2 110:24

**rephrase** 9:8 11:4

**report** 34:22 35:12 36:20 37:1 55:6,24 107:4,5,15 109:13,21 110:13 112:22 113:13 114:22,23 115:16 117:2

**reporter** 6:17 7:7 59:17,19 105:10

**reports** 36:17 37:12

**represent** 6:22 10:21 69:14 75:9

**representative** 11:21,24

**represented** 44:2,8,23 59:7,13,25 76:6 78:16 93:5,13 98:13 99:25 100:4 101:10 102:14 112:25

**representing** 39:18 43:23 61:8 99:9 101:14

**requested** 88:18

**requesting** 87:13

**require** 67:23 68:4 116:18

**required** 29:10 51:12 94:21,23

**Residential** 26:21

**resolution** 14:7

**respond** 40:15

**response** 24:18 39:22 73:8

**responses** 39:10 44:15

**responsibilities** 11:22,23 57:21 58:9

**responsible** 35:2 58:2

**rest** 51:16 57:6 90:16 105:24

**restructured** 121:7

**retain** 69:12

**retains** 25:6

**retired** 20:15,20 21:8,9

**review** 11:25 15:20 16:2 18:16,19 22:23 25:10 28:21 32:8,11 35:20 36:13,17,20 39:11 48:3,7 62:3 79:16 80:10,13,14 87:14 106:22 118:15 119:11

**reviewed** 16:6 22:13,15,17 23:19 26:10 28:18 32:20 33:17 37:17 62:7 68:16 84:24

**reviewing** 17:1 22:15 23:23 26:6 27:19 43:10 67:4 94:6

**reviews** 116:20

**Rhine** 6:15

**rights** 95:19

**risk** 96:25 97:20

**road** 8:24 21:23 79:12

**Robinson** 6:24 7:1,9,23 8:12 15:7,18 16:1,4,8 17:2,8,10,12 19:7 21:1 22:2 24:12,19 25:5 28:7,14 30:14,18,21 31:1 38:4,12,15,18 39:1 40:12 42:22 43:2 47:11,14 51:3 58:13,17 59:16,21 61:13,17 62:17,21 64:15,24 65:11,18 69:11 70:5,9 72:5,14 73:1 74:3,11,19 75:3 78:10,23 79:3 81:1,9 87:19 89:13,16 96:9,13 99:17 103:17 105:7, 9,22 106:3,5,9 107:20 108:1 114:18 118:6 119:23 120:11,14 121:12,15,22

**roman** 26:21

**rude** 9:14

**rule** 8:7 21:23

**ruled** 103:24

**rules** 8:23

**run** 55:6 90:15

**runs** 35:8

---

**S**

**S-C-O-Z-Z-A-F-A-B-A** 108:17

**sale** 51:14 52:12 53:8,9,11 54:16,22 55:2

**save** 111:16

**scenario** 68:12

**sec** 119:24

**secondary** 57:7

**secret** 73:20

**section** 40:2 82:17,21,24 83:6 85:10 86:10,15 91:16 92:6 93:24 94:7,12,20, 21 97:5 100:19,21 113:10 114:25 115:17 116:14,15,22,24 117:2,22

**sections** 82:15 92:10

**secured** 30:1 34:1 35:7

**security** 95:20 118:21

Case 2:21-cv-00278-NT   Document 63-24   Filed 09/03/23   Page 47 of 49   PageID #: 1054

Wilmington Trust N.A. vs Howe
VIA MICHAEL PATERNO, 30(B)(6) OF FAY SERVICING, LLC on 05/31/2023      Page 139 Index: seeking..stood

**seeking**  48:8 88:25

**seeks**  13:19 14:14 48:16 87:22

**Selene**  32:3,9,11,19 33:8 37:20,24 46:25 47:3 77:8,15 109:12 112:25 117:16

**Selene's**  113:4

**Selkowitz**  47:21

**sell**  57:6

**semicolon**  94:9

**send**  54:7 59:1 79:19,23 92:17 93:11, 14,18,19

**sending**  54:2

**sentence**  95:15 98:23 101:13

**separate**  51:11

**September**  31:17,19,23 62:1 85:15 86:2 91:4,22 96:19 97:1 113:13 114:23

**sequentially**  105:15

**series**  81:14,22 96:16

**service**  12:9 55:7 71:6,7 75:21,23,25

**serviced**  55:20 56:6 64:12

**servicer**  12:9,10,14,18,24 13:4 24:22 31:8 32:2,24 33:2 36:5,10 46:25 52:24 53:10,19 54:1,7 56:2 58:1 77:17,19 117:14

**services**  95:16

**servicing**  6:9,13 7:5 8:9,17 10:16,17, 19 11:10,12,18 12:7,19,23 13:3,12,15, 24 14:14,19,24 15:2,3 18:12 20:9,13, 22 21:13 23:12,17 24:6,7 25:6,9,13, 17,22 26:10,15 28:1 30:6 31:7,13 32:16 33:13 36:19 39:23 41:2,6,10 43:13,21,25 44:17,21 45:2,7 46:21 50:22 52:18,20,25 53:5,20,23 54:12, 17,21 55:7,13,22 56:8 57:25 59:6,22 61:7,11,23 62:10,12 63:3,4,21 64:12 66:5,14 67:3,7,14,23 68:4,8 69:12,17, 25 73:7,12 77:16 79:14,18 80:8,17 83:16 84:22 85:11 86:3 93:4,22 98:1 122:10

**Servicing's**  23:25 27:23 44:5 59:10 78:4

**seventh**  42:2

**share**  86:12

**show**  15:19 16:19 53:16,18 54:9,11, 23 55:4,5,13,16 81:11

**showed**  51:8

**showing**  41:4

**shown**  39:2

**shows**  112:5

**side**  22:9

**sides**  33:17

**signature**  6:3 19:2,9,11,23 20:4 23:7 39:17 47:21 63:15

**signed**  20:19 21:6 40:25 108:14

**significant**  111:14

**similar**  61:9 97:18

**simple**  115:24

**simpler**  94:16 106:6

**sir**  8:15 10:3 13:2 14:17 16:10 17:15 20:7 30:9,12 32:21 39:24 45:14 52:7 62:14,16 64:4 65:23,25 117:18,20

**situation**  80:23

**sixth**  41:24

**slower**  49:22

**soap**  12:17

**sold**  51:25 52:3 53:19,20

**sole**  52:24

**solely**  6:12 10:9

**sooner**  27:18

**sort**  9:16 115:9

**sought**  76:2

**sounds**  36:14

**soup**  12:13

**Spartan**  27:5

**speak**  26:14,17,20,24 27:2,5,8 65:5

**speaks**  88:20 120:25

**special**  116:14,16,18,22,23 117:8

**specific**  83:9 96:6

**specifically**  18:14 56:12 59:20 89:8 93:18 95:5 100:17 117:12

**specifies**  87:6 109:22

**spell**  108:17

**spelled**  117:12

**spend**  27:12

**split**  72:20

**stamp**  119:7

**stamped**  105:5

**stamps**  119:17

**stand**  111:25 112:15

**standard**  83:5,6 93:10 118:25

**standing**  88:5 118:19 119:13

**start**  33:3,23 114:19

**started**  53:15,21 96:16

**starting**  6:19 109:6

**state**  6:13 7:25 16:15,18 21:6 24:8 73:21 108:5 110:18,20,21,22 111:4,6, 20,24 112:1,6,14

**stated**  88:23 103:2 110:11 115:23

**statement**  62:11 82:16 83:10,15,16, 22 84:3,6 85:5,10,14 86:6,10,14,17 87:1 89:10 90:4 91:24 98:3,19 100:25 101:18 108:5

**statements**  81:14,22 83:7 84:24 85:2 86:1 89:18,21 90:17,18,23 91:9,14,17 92:7,11 93:2,7,20

**states**  7:17 26:7 49:11 62:10 67:8 68:20 69:5,19 71:16 72:17 73:19 87:21

**stating**  74:6 83:11

**status**  13:8 34:11,14 37:14 51:23 52:9,10,18 116:7

**statused**  116:2

**Statutory**  108:9

**stay**  9:20

**Steed**  6:23,25 10:21 15:7,11,14 16:4, 19 17:2,6,9 19:5 22:3 28:7 30:15 42:23 43:18,22 51:8 59:7,13 61:2 74:20,25 75:25 76:6 81:11 87:18 93:5, 8 98:14 100:1,4 101:10 102:14 103:18 105:19 106:2 119:4,15,20

**steps**  74:1

**STIPULATION**  6:1

**stood**  18:20

Wilmington Trust N.A. vs Howe
VIA MICHAEL PATERNO, 30(B)(6) OF FAY SERVICING, LLC on 05/31/2023      Page 140Index: stop..understanding

**stop** 84:19

**storage** 36:12

**stored** 36:11

**street** 8:4

**strive** 23:25

**stuff** 122:5

**subject** 12:25 28:3 67:10 68:10 71:2 72:17,23 76:5,10 117:4

**substituted** 19:16

**suggest** 56:21

**suggests** 96:22 97:19

**sum** 29:4

**summary** 113:11

**superior** 16:16,18 20:19 21:6,9,20

**supervise** 25:17

**supervision** 25:11

**support** 40:9,20 41:15,17,20,24 42:1, 4,7,10,13,16,19

**supposed** 17:3

**swear** 7:7

**sworn** 7:19

**system** 34:2,3,25 35:9 36:4,6,11,12 53:1 55:2 106:25 107:16

**systems** 54:21 113:5

___

**T**

**takes** 33:3

**taking** 38:13

**talk** 32:8 46:14 47:7 63:22 64:3 70:1 74:16 99:21 100:5

**talked** 90:19 106:20

**talking** 19:25 49:20 54:15 70:19

**Tampa** 8:3

**taxes** 12:13 104:22

**team** 33:6,8 35:19

**Technica** 6:16

**technical** 9:6

**tells** 51:15

**ten** 27:21 80:15

**tendency** 92:22

**tenth** 42:10

**term** 57:6

**terms** 31:24 98:17,24 101:16 102:1 121:6

**tested** 113:5

**testified** 7:20 53:1 55:13 80:15 105:1 107:1 113:3

**testify** 66:20

**testifying** 71:17 73:15

**testimony** 14:13 26:15,18,22,25 27:3,6,9,13 36:16 118:16

**thick** 62:22

**thing** 11:8 48:15 102:18 116:9

**things** 34:8 109:22 116:17 117:7

**thinking** 78:25

**thirteenth** 42:20 66:7

**thought** 105:13 115:22

**time** 6:6,19 11:11 13:9,10 14:18 15:2, 24 20:12 27:12,14,16,18 29:15 31:22 32:14 33:16 34:5 36:8 37:13,22 38:25 41:16,19,22,25 42:3,6,9,12,15,18,21 43:8 52:12 53:10,12,17 54:6 56:1,7 62:23 76:2 81:5,8 93:4 98:12 99:3,7 103:22 106:24 110:2 112:24 114:21 117:12 118:19 122:10

**timely** 49:13 50:3

**times** 8:16,18

**title** 11:20 54:25

**titled** 29:9 40:2 86:10

**today** 6:6,8 7:24 9:23 16:9 17:14 22:24 26:15,18,22,25 27:3,6,10,13 32:7 36:17 39:6 45:24 58:19 61:18 65:22 66:20 68:17 70:12 71:18 73:15 75:12 80:11 99:22 104:5 121:23

**today's** 18:15 26:13 28:20 39:12 46:14 47:8 48:3 62:4 63:23 74:15 75:5 122:8

**tool** 32:25

**top** 23:4 44:24 60:13 66:24 73:7 78:1 82:1,7 108:6

**total** 27:22 111:12

**training** 12:4

**transaction** 54:4 86:11,14,16 91:16 92:6,10

**Transactional** 86:11

**transactions** 86:18

**transfer** 29:15 31:7,22 32:15 33:5,19 34:16 36:18,23 37:8,13,20 53:12,13, 23 54:13,15,16,22 56:8 109:12 112:24

**transferred** 13:13,16,20 15:3 31:8, 11,14,19 32:16 53:2,7 55:14,22 111:6

**transfers** 32:23 33:13

**transmitted** 33:11

**Tree** 46:3

**trouble** 80:23

**true** 25:19,23 62:11 66:16 97:11 98:3, 19 100:25 101:18 108:8

**trust** 6:11 7:4,5,14 10:5,8,10,13 17:18,25 19:15,18 20:5,9,22 21:18,19 23:10,17 26:17,24 39:23 41:2,6,11 46:20 48:8,23 50:11,21 52:15,21 54:24 55:8,21,25 56:7,11,17,22 57:17, 20 58:3,8,10 60:20 63:5,6,16 64:7,11 70:25 72:10 73:8,12 76:3 77:5,16 87:10 88:16 99:8 104:7 105:1 106:15, 16 108:10,13,15,22,23 109:2 114:4

**trust's** 70:22

**trustee** 6:13 7:5 10:9 63:9 105:2 106:15 108:23

**twelfth** 42:17

**type** 78:1 115:15

**types** 14:4 44:25

___

**U**

**U.S.** 67:16

**un** 111:19

**unaware** 20:13,22,25 21:3

**understand** 9:18 10:18 21:2 40:13, 14 48:23 72:15 76:9,12 110:25 111:1

**understanding** 8:6 14:13 16:11 31:18 47:1 48:7 49:6 58:7 75:18 76:14 78:4 99:15,19 100:14 121:4

**understands** 100:11

**understood** 15:25 49:1 51:4 112:22, 23

**unfair** 89:11

**unique** 88:2

**United** 7:17 26:7 67:8 68:19 69:4,19 71:16 72:17 73:18

**unoccupied** 92:21

**unpaid** 111:20

**untimely** 49:12 50:3

**unwrapped** 34:1

**unwraps** 35:7

**UPV** 111:20

---

**V**

**valid** 87:24

**validation** 109:13,20

**valuation** 95:22

**vandalized** 92:22

**verification** 35:23

**verifications** 35:13,15

**version** 109:12

**versus** 6:10 7:15

**vice** 63:20

**view** 24:6

---

**W**

**waived** 6:3

**walk** 82:4

**wanted** 38:5 57:13 90:1

**wave** 9:7

**week** 103:20 104:7,8

**weeks** 27:17 73:9

**wherefore** 48:13,15

**Wilmington** 6:11 7:4,14 10:7 48:16 54:24 57:16,20 58:8 63:6,9,16 108:15, 23

**wise** 93:1

**withdraw** 48:11 120:24

**witnesses** 104:3

**word** 101:22

**work** 9:24 23:25 24:21

**working** 10:1

**wrap** 78:25 81:3

**writing** 103:8

**written** 44:12

**wrong** 64:6 67:21 90:11,12

---

**Y**

**year** 67:5 88:25 89:7 90:11,12

**years** 117:11,17

**yesterday** 107:22 108:2 109:6,25 112:23

**York** 16:16,18

---

**Z**

**Zoom** 9:5