# DOONAN, GRAVES & LONGORIA, LLC

## ATTORNEYS AT LAW

*Serving Massachusetts, Maine,*
*New York & New Hampshire*
*Hours: Monday – Friday 9 am – 4 pm*
*www.dgandl.com*

*100 Cummings Center, Suite 225D*
*Beverly, Massachusetts 01915*
*TEL: (978) 921-2670*
*FAX: (978) 921-4870*

August 9, 2017

Pine Tree Legal Assistance
Attn: Jonathan E. Selkowitz, Esq.
88 Federal Street
Portland, ME 04101

> **MFRA v. Howe**
>
> **Joint Exhibit 37**

RE:   **MTGLQ Investors, L.P. vs. Challenge Financial Investors Corp.**
Party-in-Interest:  **Melanie B. Howe**
334 Deerwander Road, Hollis Center, ME 04042
Docket No. CV-2017-161

Dear Attorney Selkowitz

Our office is trying to affect service of process on Melanie B. Howe.  As you are noted as the attorney of record, we hope that you would accept service of process on her behalf.

Please find enclosed a copy of the Summons, Complaint and Clerk's Certificate for the above referenced case, for which your client is a Party-in-Interest.

If you have any questions, please do not hesitate to call David Therrien at (978) 921-2670, ext. 127.

Very truly yours,

David Therrien
Paralegal



RECEIVED

AUG 1 6 2017

Pine Tree Legal
Assistance, Inc.

STATE OF MAINE
YORK, ss.

SUPERIOR COURT
LOCATION: ALFRED
Docket No. CV-2017-161

MTGLQ Investors, L.P.

        Plaintiff

        vs.

Challenge Financial Investors Corp.

        Defendant

Mortgage Electronic Registration Systems
Inc. as nominee for Challenge Financial
Investors Corp.
Nationstar Mortgage LLC,
Henry W. Howe IV
Melanie B. Howe
Asset Acceptance, LLD

        Party-In-Interest

MORTGAGED PREMISES:
334 Deerwander Road
Hollis Center, ME 04042
Book 15139, Page 0540

## ACCEPTANCE OF SERVICE

    I, Jonathan E Selkowitz, Esq., of Pine Tree Legal Assistance, 88 Federal Street, Portland, ME 04101, represents and hereby accept service of the Summons and Complaint for Declaratory Judgment and all attachments for the above captioned matter on behalf of Melanie B. Howe, as her attorney.

Dated: _____, 2017

                         _____
                         Jonathan E. Selkowitz, Esq. Bar No. 5711
                         Pine Tree Legal Services
                         88 Federal Street
                         Portland, ME 04101
                         Tel. (207) 400-3207

STATE OF MAINE

SUPERIOR COURT                                         DISTRICT COURT
York _____, ss.                                      Location _Alfred_____
Docket No._____                               Docket No._____

MTGLQ Investors,LP Plaintiff

        v.                                             **SUMMONS**
                                                       M.R. Civ. P. 4(d)
Melanie B. Howe
C/o Jonathan E. Selkowitz, Esq                 ~~Defendant~~ P11
Pine Tree Legal Assistance
88 Federal Street                              Address
Portland, ME 04101                             -

        The Plaintiff has begun a lawsuit against you in the (District) (Superior) Court, which
holds sessions at (street address) 45 Kennebunk Road _____, in the
Town/City of ___Alfred_____, County of ___York_____, Maine.
If you wish to oppose this lawsuit, you or your attorney **MUST PREPARE AND SERVE A
WRITTEN ANSWER** to the attached Complaint **WITHIN 20 DAYS** from the day this
Summons was served upon you. You or your attorney must serve your Answer, by delivering a
copy of it in person or by mail to the Plaintiff's attorney, or the Plaintiff, whose name and address
appear below. You or your attorney must also file the original of your Answer with the court by
mailing it to the following address: Clerk of (District) (Superior) Court, Kathy L. Jones
45 Kennebunk Road _____, Alfred ____, Maine 04002
(Mailing Address)                    (Town, City)            (Zip)
before, or within a reasonable time after, it is served. Court rules governing the preparation and
service of Answer are found at www.courts.maine.gov.

## IMPORTANT WARNING

**IF YOU FAIL TO SERVE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF,
AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT
NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED
AGAINST YOU IN YOUR ABSENCE FOR THE MONEY DAMAGES OR OTHER
RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR EMPLOYER
MAY BE ORDERED TO PAY PART OF YOUR WAGES TO THE PLAINTIFF OR
YOUR PERSONAL PROPERTY, INCLUDING BANK ACCOUNTS AND YOUR REAL
ESTATE MAY BE TAKEN TO SATISFY THE JUDGMENT. IF YOU INTEND TO
OPPOSE THIS LAWSUIT, DO NOT FAIL TO ANSWER WITHIN THE REQUIRED
TIME.**

        If you believe the plaintiff is not entitled to all or part of the claim set forth in the
Complaint or if you believe you have a claim of your own against the Plaintiff, you should talk to
a lawyer. If you feel you cannot afford to pay a fee to a lawyer, you may ask the clerk of court
for information as to places where you may seek legal assistance.

                                                       (Seal of Court)

Date: _6/30/17_____                          _Michele Lambert_____
_____                              Clerk
(Attorney for) Plaintiff

John A. Doonan, Esq., #3250                   51619
Reneau J. Longoria, Esq., Bar # 5746
Doonan, Graves & Longoria, LLC
100 Cummings Center, Suite 225D
Beverly, MA 01915

# D&L   DOONAN, GRAVES & LONGORIA, LLC
## ATTORNEYS AT LAW

| | |
|---|---|
| *Serving Massachusetts, Maine,* | *100 Cummings Center, Suite 225D* |
| *New York & New Hampshire* | *Beverly, Massachusetts 01915* |
| *Hours: Monday – Friday 9 am – 4 pm* | *TEL: (978) 921-2670* |
| *www.dgandl.com* | *FAX: (978) 921-4870* |

June ____, 2017

York County Superior Court
Attn: Kathy L. Jones
45 Kennebunk Road
Alfred, ME 04002

**Re: MTGLQ Investors, L.P. vs. Challenge Financial Investors Corp.**

**334 Deerwander Road, Hollis Center, ME 04042**

**Docket # To Be Assigned**

Dear Kathy L. Jones:

Enclosed please find the following documents for filing with the Court:

1. Summary Sheet
2. Clerk's Certificate
3. Complaint for Declaratory Judgment

Also please find enclosed a filing fee of $150.00, and a recording fee of $_____ to record the Clerk's Certificate with Exhibit A. Please forward the Clerk's Certificate with Exhibit A to the Registry for recording, as well as the self-addressed stamped envelope.

If you have any questions, please contact me at (978) 921-2670 ext. 111 or by email at nd@dgandl.com.

Very truly yours,

Nicole Dove
Paralegal

:ND
Encl.

SUMMARY SHEET

This summary sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other paper as required by the Maine Rules of Court or by law. This form is required for the use of the Clerk of Court for the purpose of initiating or updating the civil docket. (SEE INSTRUCTIONS ON REVERSE)

I.   County of Filing or Court Jurisdiction:  York County Superior Court York County

II.  CAUSE OF ACTION (Cite the primary civil statutes under which you are filing, if any.) *Pro se* plaintiffs: If unsure, leave blank.  Title 14 Sec. 6322

III.  NATURE OF FILING
☒ Initial Complaint
☐ Third-Party Complaint
☐ Cross-Claim or Counterclaim
   **If Reinstated or Reopened case, give original Docket Number**_____
   (If filing a second or subsequent Money Judgment Disclosure, give docket number of first disclosure)

IV.  ☒ TITLE TO REAL ESTATE IS INVOLVED

V.   MOST DEFINITIVE NATURE OF ACTION. (Place an X in one box only ) *Pro se* plaintiffs: If unsure, leave blank.

GENERAL CIVIL (CV)

**Personal Injury Tort**
☐ Property Negligence
☐ Auto Negligence
☐ Medical Malpractice
☐ Product Liability
☐ Assault/Battery
☐ Domestic Torts
☐ Other Negligence
**Non-Personal Injury Tort**
☐ Libel/Defamation
☐ Auto Negligence
☐ Other Negligence
☐ Other Non-Personal Injury Tort

**Contract**
☐ Contract
**Declaratory/Equitable Relief**
☐ General Injunctive Relief
☒ Declaratory Judgment
☐ Other Equitable Relief
**Constitutional/Civil Rights**
☐ Constitutional/Civil Rights
**Statutory Actions**
☐ Unfair Trade Practices
☐ Freedom of Access
☐ Other Statutory Actions
**Miscellaneous Civil**
☐ Drug Forfeitures

☐ Other Forfeitures/Property Libels
☐ Land Use Enforcement (80K)
☐ Administrative Warrant
☐ HIV Testing
☐ Arbitration Awards
☐ Appointment of Receiver
☐ Shareholders' Derivative Actions
☐ Foreign Deposition
☐ Pre-action Discovery
☐ Common Law Habeas Corpus
☐ Prisoner Transfers
☐ Foreign Judgments
☐ Minor Settlements
☐ Other Civil

CHILD PROTECTIVE CUSTODY (PC)
☐ Non-DHS Protective Custody

SPECIAL ACTIONS (SA)
**Money Judgment**
☐ Money Judgment Request Disclosure

REAL ESTATE (RE)

| **Title Actions** | **Foreclosure** | **Misc. Real Estate** | |
|---|---|---|---|
| ☐ Quiet Title | ☐ Foreclosure (ADR exempt) | ☐ Equitable Remedies | ☐ Nuisance |
| ☐ Eminent Domain | ☐ Foreclosure (Diversion eligible | ☐ Mechanics Lien | ☐ Abandoned Roads |
| ☐ Easements | | ☐ Partition | ☐ Trespass |
| ☐ Boundaries | ☐ Foreclosure - Other | ☐ Adverse Possession | ☐ Other Real Estate |

APPEALS (AP) (To be filed in Superior Court) (ADR exempt)
☐ Governmental Body (80B)     ☐ Administrative Agency (80C)     ☐ Other Appeals

VI.   **M.R.Civ.P. 16B Alternative Dispute Resolution (ADR):**
☒ I certify that pursuant to M.R.Civ.P. 16B(b), this case is exempt from a required ADR process because:
☐ It falls within an exemption listed above (i.e., an appeal or an action for non-payment of a note in a secured transaction).
☐ The plaintiff or defendant is incarcerated in a local, state or federal facility.
☐ The parties have participated in a statutory prelitigation screening process with _____
☐ The parties have participated in a formal ADR process with _____ (name of neutral) on _____ (date).
☒ This is an action in which the plaintiff's likely damages will not exceed $50,000, and the plaintiff requests an exemption from ADR pursuant to M.R. Civ. P. 16C(g).

**VII.** (a) PLAINTIFFS (Name & Address including county)

Or ☐ Third-Party, ☐ Counterclaim.   Cross-Claim Plaintiffs
☐ The plaintiff is a prisoner in a local, state or federal facility.

MTGLQ Investors, L.P.
6011 Connection Drive
Irving, TX 75039

(b) Attorneys (Name, Bar number, Firm name, Address, Telephone Number)
(If *pro se* plaintiff, leave blank)

John A. Doonan, Esq., Bar No.3250
Doonan, Graves, & Longoria, LLC
100 Cummings Center, Suite 225D
Beverly, MA 01915
(978) 921-2670

If all counsel listed do NOT represent all plaintiffs, specify wh
the listed attorney(s) represent.

**VIII.** (a) ☒ DEFENDANTS (Name & Address including county)
and/or ☐ Third-Party, ☐ Counterclaim or ☐ Cross-Claim Defendants
☐ The defendant is a prisoner in a local, state or federal facility.

Challenge Financial Investors Corp.
360 Central Avenue, Suite 600
St. Petersburg, FL 33701
Pinellas County

(b) Attorneys (Name, Bar number, Firm name, Address, Telephone Number)
(If known)

If all counsel listed do NOT represent all defendants, specify v
the listed attorney(s) represent.

(a) ☐ PARTIES OF INTEREST (Name & Address including County)

Asset Acceptance LLC          Nationstar Mortgage LLC
P.O. Box 2036                 350 Highland Drive
Warren, MI 48090             Lewisville, TX 75067

Mortgage Electronic Registration System, Inc.
1818 Library Street, Suite 300
Reston, VA 20190

Henry W. Howe IV             Melanie B. Howe
350 River Road               8118 Moulton Road
Standish, ME 04084           Bunker Hill, IL 62014

(b) Attorneys (Name, Bar number, Firm name, Address, Telephone Number)
(If known)

If all counsel listed do NOT represent all defendants, specify
the listed attorney(s) represent.

**X.   RELATED CASE(S) IF ANY** _____

Assigned Judge/Justice _____   Docket Number _____

Date: ____6/21/17____

John A. Doonan, Esq., Bar No. 3250
Name of Lead Attorney of Record or Pro se Party Signature of

Signature of Attorney or Pro se Party

CV-001, Rev. 07/15

| | |
|---|---|
| STATE OF MAINE | SUPERIOR COURT |
| YORK, SS. | LOCATION: ALFRED |

| | |
|---|---|
| | DOCKET NO: |
| MTGLQ Investors, L.P. | |
| Plaintiff | CLERK'S CERTIFICATE OF FORECLOSURE |
| vs. | |
| | TITLE TO REAL ESTATE IS INVOLVED |
| Challenge Financial Investors Corp. | |
| Defendant | MORTGAGED PREMISES: |
| | 334 Deerwander Road |
| Mortgage Electronic Registration Systems, Inc. as nominee for Challenge Financial Investors, Corp., Nationstar Mortgage LLC, Henry W. Howe IV, Melanie B. Howe, Asset Acceptance LLC, | Hollis Center, ME 04042 |
| | Book 15139, Page 0540 |
| Parties-In-Interest | |

I, _____, Clerk of the York County Superior Court, do hereby certify that said Plaintiff has filed with the office of the Clerk of said Court, a Complaint for Declaratory Judgment of a mortgage dated April 20, 2007, and recorded with the York County Registry of Deeds in **Book 15139, Page 0540**, affecting real estate situated in the Town of Hollis Center, County of York and State of Maine being more particularly described in the attached Exhibit A.

The Complaint for Declaratory Judgment was dated _June 22_, 2017 and was filed in the Clerk's Office of said Court on _____, 2017.

| | |
|---|---|
| John A. Doonan, Esq., Bar No. 3250 | IN TESTIMONY WHEREOF, I have hereunto |
| Attorney for Plaintiff | set my hand and affixed the seal of said Court the |
| Doonan, Graves & Longoria, LLC | day and year first above written. |
| 100 Cummings Center, Suite 225D | |
| Beverly, MA 01915 | |
| | _____ Clerk |

EXHIBIT 'A'

A CERTAIN LOT OR PARCEL OF LAND WITH ANY BUILDINGS THEREON, SITUATED ON THE
DEERWANDER ROAD IN THE TOWN OF HOLLIS, COUNTY OF YORK, STATE OF MAINE AND BEING LOT 1
ON A PLAN ENTITLED, "PLAN OF LAND OF RUSSELL A. & LOIS A. BLACK, 344 DEERWANDER ROAD,
HOLLIS, MAINE", PREPARED BY BH2M ENGINEERS, 28 STATE STREET, GORHAM, MAINE 04038 AND
RECORDED IN YORK COUNTY REGISTRY OF DEEDS ON OCTOBER 25, 2000 IN PLAN BOOK 258, PAGE
41, TO WHICH PLAN AND THE RECORD THEREOF REFERENCE SHOULD BE MADE FOR A MORE
PARTICULAR DESCRIPTION.

BEING THE SAME PREMISES CONVEYED TO HENRY HOWE AND MELANIE HOWE BY VIRTUE OF A DEED
FROM CHRISTOPHER J. COTE AND HEATHER L. COTE, FORMERLY KNOWN AS HEATHER L. KING,
DATED APRIL 20, 2007 AND TO BE RECORDED HEREWITH.

| | |
|---|---|
| STATE OF MAINE | SUPERIOR COURT |
| YORK, SS. | LOCATION: ALFRED |

| | |
|---|---|
| | DOCKET NO: |
| MTGLQ Investors, L.P. | |
| Plaintiff | COMPLAINT FOR DECLARATORY JUDGMENT |
| vs. | |
| | TITLE TO REAL ESTATE IS INVOLVED |
| Challenge Financial Investors Corp. | |
| Defendant | MORTGAGED PREMISES: 334 Deerwander Road |
| Mortgage Electronic Registration Systems, Inc. as nominee for Challenge Financial Investors, Corp., Nationstar Mortgage LLC, Henry W. Howe IV, Melanie B. Howe, Asset Acceptance LLC, | Hollis Center, ME 04042 Book 15139, Page 0540 |
| Parties-In-Interest | |

NOW COMES the Plaintiff, MTGLQ Investors, L.P., and complains pursuant to Title 14, §6651 *et seq.* and 14 M.R.S. §5951 *et seq.* against the Defendant, Challenge Financial Investors Corp. as follows:

1. The Plaintiff is a corporation with a principal place of business at 6011 Connection Drive, Irving, TX 75039.

2. The Defendant, Challenge Financial Investors Corp., was a corporation located at 360 Central Avenue, Suite 600, St. Petersburg, County of Pinellas, and State of Florida.

3. The Party-In-Interest, Mortgage Electronic Registration Systems, Inc. as nominee for Challenge Financial Investors, Corp, is located at 1818 Library Street, Suite 300, Reston, VA 20190.

4.  The Party-In-Interest, Nationstar Mortgage LLC is located at 350 Highland Drive, Lewisville, TX 75067.

5.  The Party-In-Interest, Henry W. Howe IV, is a resident of Standish, County of Cumberland, and State of Maine.

6.  The Party-In-Interest, Melanie B. Howe, is a resident of Bunker Hill, County of Macoupin, and State of Illinois.

7.  The Party-In-Interest, Asset Acceptance LLC, is located at 28405 Van Dyke, Warren, MI 48093.

8.  This is an action for declaratory judgment respecting a real estate related mortgage and title located at 334 Deerwander Road, Hollis Center, in the County of York and State of Maine, being more particularly described in the attached Exhibit A.

9.  An apprehension exists the parties named in the complaint claim or may claim some right, title or interest in the property adverse to the estate of Plaintiff.

10. The aforesaid apprehension creates a cloud upon the title and depreciates the market value of the property.

11. On April 20, 2007, the Parties-In-Interest, Henry W. Howe IV and Melanie B. Howe executed and delivered to Challenge Financial Investors Corp. a certain promissory note in the amount of $208,000.00.  A true and correct copy of the note is attached hereto as Exhibit B.

12. The Plaintiff is the holder of the Note referenced in Paragraph 11 pursuant to endorsement by the previous holder and physical possession of the aforesaid Note in conformity with Title 11, section 3-1201, et seq. of the Maine Revised Statutes and *Simansky v. Clark,* 147 A. 205, 128 Me. 280 (1929).

13. To secure said Promissory Note, on April 20, 2007, the Parties-In-Interest, Henry W. Howe IV and Melanie B. Howe, executed a Mortgage Deed in favor of Mortgage Electronic Registration Systems, Inc. as nominee for Challenge Financial Investors, Corp., securing the property located at 334 Deerwander Road, Hollis Center, ME 04042, which Mortgage Deed is recorded in the York County Registry of Deeds in **Book 15139, Page 0540.** A true and correct copy of the mortgage is attached hereto as Exhibit C.

14. On August 12, 2014, the Parties-In-Interest Henry W. Howe IV and Melanie B. Howe executed a Loan Modification Agreement which increased the principal to $214,129.99. A true and correct copy of the Loan Modification Agreement is attached hereto as Exhibit D.

15. Pursuant to the aforesaid Loan Modification Agreement, Henry W. Howe IV and Melanie Howe, Nationstar Mortgage LLC, and Mortgage Electronic Registration Systems, Inc. all agreed that as of August 12, 2014:

> All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, not shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

16. Pursuant to the endorsement and delivery of the subject Promissory Note, recorded assignments of the subject Mortgage and the aforesaid recorded Loan Modification Agreement the Plaintiff is entitled to enforce the aforesaid subject Promissory Note and Mortgage.

17. Challenge Financial Investors, Corp. is a Defendant pursuant to a Mortgage Deed in the ~~amount of $208,000.00 dated April 20, 2007 and recorded in the York County Registry of~~ Deeds in **Book 15139, Page 0540**.

18. Mortgage Electronic Registration Systems, Inc. is a Party-In-Interest pursuant to a Mortgage Deed in the amount of $208,000.00 dated April 20, 2007 and recorded in the York County Registry of Deeds in **Book 15139, Page 0540**.

19. Nationstar Mortgage LLC is a Party-In-Interest pursuant to a Corporate Assignment of Mortgage dated March 4, 2013 and recorded in the York County Registry of Deeds in **Book 16559, Page 45**.

20. Henry W. Howe IV and Melanie B. Howe are Parties-In-Interest pursuant to a Mortgage Deed in the amount of $208,000.00 dated April 20, 2007 and recorded in the York County Registry of Deeds in **Book 15139, Page 0540**.

21. Asset Acceptance, LLC is a Party-In-Interest pursuant to a Writ of Execution in the amount of $2,582.61 dated March 23, 2011 and recorded in York County Registry of Deeds in **Book 16122, Page 6**.

22. Maine is a title theory state. As such, the execution of the subject Mortgage transfers ownership of the subject property to the mortgagee, while the mortgagors retain the equitable right of redemption.

23. The ownership rights under the Mortgage Deed, referenced in Paragraph 13, were then assigned to Nationstar Mortgage LLC by an Assignment of Mortgage dated March 4, 2013 and recorded in the York County Registry of Deeds in **Book 16559, Page 45**. A true and correct copy of the Assignment of Mortgage is attached hereto as Exhibit E.

24. The ownership rights under the Mortgage Deed, referenced in Paragraph 13, were then assigned to MTGLQ Investors, L.P. by an Assignment of Mortgage dated January 17, 2017 and recorded in the York County Registry of Deeds in **Book 17411, Page 360**. A true and correct copy of the Assignment of Mortgage is attached hereto as Exhibit F.

25. MTGLQ Investors, L.P. is the current owner and investor of the aforesaid mortgage and promissory note, as defined under Maine law.

26. Since the Plaintiff is the holder and owner of the Note, any other party holding the Mortgage holds the Mortgage and its ownership rights in trust for the Plaintiff and the Plaintiff requests that this Court order the formal and confirmatory transfer of the Mortgage and its ownership rights of the subject property to the Plaintiff.

27. Accordingly, this Court should confirm the transfer of the Mortgage and its ownership rights to the Plaintiff *nunc pro tunc* as of January 17, 2017.

28. The Order requested is a confirmatory *Nunc Pro Tunc* Order and an effective reaffirmation of the assignment from Mortgage Electronic Registration Systems, Inc., referenced above.

WHEREFORE, the Plaintiff prays that this Honorable Court:

a) Confirm that Challenge Financial Investors Corp. intended that Mortgage Electronic Registration Systems, Inc. as nominee for Challange Financial Investors, Corp has the right to assign, enforce and discharge Challenge Financial Investors Corp.'s ownership interest in the mortgage, and ratify all actions taken in accordance with said assignment by said assignee or any subsequent assignee;

b) Order the Confirmatory Transfer of Mortgage dated April 20, 2007, and recorded in the York County Registry of Deeds in **Book 15139, Page 0540** to MTGLQ Investors, L.P.; the Plaintiff further requests that the aforesaid order is a confirmatory *Nunc Pro Tunc* order and an effective reaffirmation of the assignment from Mortgage Electronic Registration Systems,

Inc. dated March 4, 2013 and recorded in the York County Registry of Deeds in **Book 16559, Page 45;**

c)   Specifically find the Plaintiff is the owner of both the subject Note and Mortgage Deed and its ownership rights in the subject property; *nunc pro tunc* as of January 17, 2017 the date of the Mortgage Assignment to the Plaintiff recorded in **Book 16559, Page 45**; and

d)   Render an in rem permanent injunction concerning the ownership of the subject property mortgage, subject to any rights of redemption held by the mortgagees, rests with the Plaintiff; and

e)   Grant such other and further relief as the Court may determine proper.

Dated at Beverly, Massachusetts, this ____ day of _____, 2017.

John A. Doonan, Esq., Bar No. 3250
Attorney for Plaintiff
Doonan, Graves & Longoria, LLC
100 Cummings Center, Suite 225D
Beverly, MA 01915
(978) 921-2670

EXHIBIT 'A'

A CERTAIN LOT OR PARCEL OF LAND WITH ANY BUILDINGS THEREON, SITUATED ON THE DEERWANDER ROAD IN THE TOWN OF HOLLIS, COUNTY OF YORK, STATE OF MAINE AND BEING LOT 1 ON A PLAN ENTITLED, "PLAN OF LAND OF RUSSELL A. & LOIS A. BLACK, 344 DEERWANDER ROAD, HOLLIS, MAINE", PREPARED BY BH2M ENGINEERS, 28 STATE STREET, GORHAM, MAINE 04038 AND RECORDED IN YORK COUNTY REGISTRY OF DEEDS ON OCTOBER 25, 2000 IN PLAN BOOK 258, PAGE 41, TO WHICH PLAN AND THE RECORD THEREOF REFERENCE SHOULD BE MADE FOR A MORE PARTICULAR DESCRIPTION.

BEING THE SAME PREMISES CONVEYED TO HENRY HOWE AND MELANIE HOWE BY VIRTUE OF A DEED FROM CHRISTOPHER J. COTE AND HEATHER L. COTE, FORMERLY KNOWN AS HEATHER L. KING, DATED APRIL 20, 2007 AND TO BE RECORDED HEREWITH.

EXHIBIT

A

*Howe* (N)

| MIN: | **NOTE** | Loan Number: |
|---|---|---|

APRIL 20, 2007                    ST. PETERSBURG        .        FLORIDA (A) 4-26
[Date]                                    [City]                              [State]

334 DEERWANDER ROAD, HOLLIS CENTER, MAINE 04042
[Property Address]

**1.   BORROWER'S PROMISE TO PAY**
   In return for a loan that I have received, I promise to pay U.S. $ 208,000.00     (this amount is called "Principal"), plus interest, to the order of the Lender.  The Lender is CHALLENGE FINANCIAL INVESTORS, CORP., A FLORIDA CORPORATION                                                                 .
I will make all payments under this Note in the form of cash, check or money order.
   I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**
   Interest will be charged on unpaid principal until the full amount of Principal has been paid.  I will pay interest at a yearly rate of      7.250 %.
   The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.   PAYMENTS**
   **(A)   Time and Place of Payments**
   I will pay principal and interest by making a payment every month.
   I will make my monthly payment on the    1st  day of each month beginning on   JUNE 1                     ,
2007   .  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal.  If, on  MAY 1, 2037                                        ,
   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
   I will make my monthly payments at  360 CENTRAL AVENUE, SUITE 600, ST. PETERSBURG, FLORIDA 33701
                                              or at a different place if required by the Note Holder.

   **(B)   Amount of Monthly Payments**
   My monthly payment will be in the amount of U.S. $ 1,418.93         .

**4.   BORROWER'S RIGHT TO PREPAY**
   I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment."  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
   I may make a full Prepayment or partial Prepayments without paying a Prepayment charge.  The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note.  If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5.   LOAN CHARGES**
   If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit;

MAINE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3220 1/01                                Page 1 of 3

DocMagic *eRunners*  800-649-1362
www.docmagic.com

**EXHIBIT**
**B**

and (b) any sums already collected from me which exceeded permitted limits will be refunded to me.  The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me.  If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6.   BORROWER'S FAILURE TO PAY AS REQUIRED**
    **(A)   Late Charge for Overdue Payments**
    If the Note Holder has not received the full amount of any monthly payment by the end of    15
calendar days after the date it is due, I will pay a late charge to the Note Holder.   The amount of the charge will be
    5.000    % of my overdue payment of principal and interest.  I will pay this late charge promptly but only once
on each late payment.
    **(B)   Default**
    If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
    **(C)   Notice of Default**
    If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount.  That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.
    **(D)   No Waiver By Note Holder**
    Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
    **(E)   Payment of Note Holder's Costs and Expenses**
    If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees.

**7.   GIVING OF NOTICES**
    Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
    Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**
    If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note.  The Note Holder may enforce its rights under this Note against each person individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.   WAIVERS**
    I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.  "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.  UNIFORM SECURED NOTE**
    This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep

the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any interest in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, Lender will not require immediate payment in full if prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement, following the procedures in Section 15. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
MELANIE B. HOWE          -Borrower

_____ (Seal)
HENRY W. HOWE, IV          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

[Sign Original Only]

PAY TO THE ORDER OF: CitiMortgage, Inc.
WITHOUT RECOURSE

CHALLE_____ INVESTORS CORP., A FLORIDA CORPORATION

BY: _____

ITS: Matthew Richards, VP.

MAINE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Page 3 of 3
Form 3220 1/01

DocMagic *Forms* 800-649-1362
www.docmagic.com

Pay to the order of

without recourse on us CitiMortgage, Inc.

_____
James J. Sims, Vice President
CitiMortgage, Inc.

Doc# 2007019461
Bk 15139  Pg 0540 - 0556
Received York SS
04/24/2007  10:45AM
Debra L. Anderson
Register of Deeds

After Recording Return To:
CHALLENGE FINANCIAL INVESTORS, CORP.
360 CENTRAL AVENUE, SUITE 600
ST. PETERSBURG. FLORIDA 33701
Loan Number: ███████████

---

————————— [Space Above This Line For Recording Data] —————————

# MORTGAGE

MIN:

## WORDS USED OFTEN IN THIS DOCUMENT

Words used in multiple sections of this document are defined below.  Other words are defined in Sections 3, 5, 8, 10, 11, 13, 18, 20 and 21.  Certain rules about the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated  APRIL 20, 2007             . The term "Security Instrument" includes any Riders recorded with the Security Instrument.

(B)  "Borrower" means   MELANIE B. HOWE AND HENRY W. HOWE, IV, WIFE AND HUSBAND

who sometimes will be called "Borrower" and sometimes simply "I" or "me."  "Borrower" is granting a mortgage under this Security Instrument.  "Borrower" is not necessarily the same as the Person or Persons who signed the Note. The obligations of Borrowers who did not sign the Note are explained further in Section 13.

(C)  "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.  FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.

(D)  "Lender" means   CHALLENGE FINANCIAL INVESTORS, CORP.

Lender is a corporation or association which exists under the laws of  FLORIDA
Lender's address is  360 CENTRAL AVENUE, SUITE 600, ST. PETERSBURG, FLORIDA 33701

Except as provided in Sections 13 and 20, the term "Lender" may include any Person who takes ownership of the Note and this Security Instrument.

(E)  "Note" means the note signed by   MELANIE B. HOWE, HENRY W. HOWE, IV

and dated   APRIL 20, 2007                . The Note shows that its signer or signers owe Lender

MAINE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3020 01/01 (02/01/07)                          Page 1 of 16

DocMagic €Rarmas 800-649-1362
www.docmagic.com

EXHIBIT
C

TWO HUNDRED EIGHT THOUSAND AND 00/100
Dollars (U.S. $ 208,000.00        ) plus interest and promise to pay this debt in Periodic Payments and to
pay the debt in full by  MAY 1, 2037               .

(F)   "Property" means the property that is described below in the section titled "Description of the Property" or any
portion of the Property.
(G)   "Sums Secured" means the unpaid balance of amounts described below in the section titled "Borrower's Transfer
to Lender of Rights in the Property."
(H)   "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under
the Note, and all sums due under this Security Instrument, plus interest.
(I)   "Riders" means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are
to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Planned Unit Development Rider
☐ Balloon Rider              ☐ Biweekly Payment Rider
☐ 1-4 Family Rider           ☐ Second Home Rider
☐ Condominium Rider          ☒ Other(s) [specify]  –Exhibit A

(J)   "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial
opinions.
(K)   "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges
that are imposed on Borrower or the Property by a condominium association, homeowners association or similar
organization.
(L)   "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft,
or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or
magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term
includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by
telephone, wire transfers, and automated clearinghouse transfers.
(M)   "Escrow Items" means those items that are described in Section 3.
(N)   "Miscellaneous Proceeds" means any monies or other thing of value paid by any third party, other than
insurance proceeds paid under the coverages described in Section 5, for:  (i) damage to, or destruction of, the
Property; (ii) Condemnation or other taking of all or any part of the Property (see Section 11 for an explanation of
"Condemnation"); (iii) conveyance in lieu of Condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(O)   "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P)   "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note,
plus (ii) any amounts under Section 3 of the Security Instrument.
(Q)   "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing
regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or
successor legislation or regulation that governs the same subject matter.  When this Security Instrument refers to a
requirement or restriction under "RESPA," Lender intends to abide by that requirement or restriction, even if it is
not technically applicable to the Loan.
(R)   "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that
party has assumed Borrower's obligations under the Note and/or this Security Instrument.
(S)   "Ground Rents" means amounts I owe if I rented the real property under the buildings covered by this Security
Instrument.  Such an arrangement usually takes the form of a long-term "ground lease."

MAINE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3020 01/01 (02/01/07)                        Page 2 of 16                        DocMagic eFarms 800-649-1362
                                                                                     www.docmagic.com

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors and assigns), with mortgage covenants, subject to the terms of this Security Instrument, to have and to hold all of the Property to MERS (solely as nominee for Lender and Lender's successors and assigns) and to its successors and assigns, forever. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to Lenders who hold mortgages on real property. Those rights that Applicable Law gives to Lenders who hold mortgages on real property include those rights known as "Mortgage Covenants." I am giving Lender these rights to protect Lender from possible losses that might result if:

(A) Some or all of the Loan is not paid when due;

(B) I fail to pay, with interest, any amounts that Lender spends under Section 9 of this Security Instrument to protect the value of the Property and Lender's rights in the Property; or

(C) I fail to keep any of my other promises and agreements under this Security Instrument. These amounts are the "Sums Secured."

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

**DESCRIPTION OF THE PROPERTY**

I grant and mortgage to MERS (solely as nominee for Lender and Lender's successors in interests) the Property described in (A) through (G) below:

(A) The Property which is located at      334 DEERWANDER ROAD
[Street]

     HOLLIS CENTER      , Maine    04042    ("Property Address"):
[City]                            [Zip Code]

This Property is in   YORK               County. It has the following legal description:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains promises and agreements that vary, to a limited extent, in different parts of the country. My promises and other agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

1.   **Borrower's Promise to Pay.**  If I signed the Note, I will pay to Lender when due principal and interest due under the Note and any prepayment charges and late charges due under the Note.  Regardless of whether I signed the Note, I will pay funds for Escrow Items as described in Section 3.  I will make all payments in U.S. currency.  If any Borrower makes any Loan payment to Lender with a check or other instrument that is returned for any reason (i.e., the check bounces), except when prohibited by Applicable Law, the Lender may require that any subsequent payment be made by:  (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check (all of which must be drawn on an institution whose deposits are insured by a federal agency, instrumentality, or entity); or (d) Electronic Funds Transfer.  Lender may reasonably specify which payment form is required.

Payments are only considered received when they reach the Lender's address specified in the Note, or a different address specified by Lender under Section 15 of this Security Instrument.  Lender may return any payments or partial payments if the payments are insufficient to bring the Loan current.  Lender may accept any payments or partial payments insufficient to bring the Loan current, but doing so will not affect Lender's rights under this Security Instrument, and Lender may still refuse such late, partial payments in the future.

I agree that no claim or legal right I may have against the Lender will excuse my obligation to make timely payments under the Loan or to keep my other promises in this Security Instrument.

2.   **Application of Payments or Proceeds.**  Except as otherwise described in this Section 2, all payments accepted and applied by Lender will be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts payable under Section 3.  Such payments will be applied to each Periodic Payment in the order in which it became due.  Any remaining amounts will be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from me for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent Periodic Payment and the late charge.  If more than one Periodic Payment is outstanding, Lender may apply any payment received from me to the repayment of the

Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary extra payments must be applied first to any charges for making voluntary extra payments and then as described in the Note.

If voluntary extra payments I may make or the crediting of insurance proceeds or Miscellaneous Proceeds to the Note are enough to pay principal ahead of schedule, I must still make my regularly scheduled Periodic Payments under the Note, when scheduled, without any delay or reduction of amount.

**3.   Monthly Payments for Taxes and Insurance.**

**(a)  Borrower's Obligations.**  I will pay to Lender all amounts necessary to pay for taxes, assessments, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a loss reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward the payment of the following items, which are called "Escrow Items:"

(1)   The taxes, assessments and other items which under the Applicable Law may be or become superior to this Security Instrument as a lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "lien;"

(2)   The leasehold payment or Ground Rents on the Property (if any);

(3)   The premium for insurance covering the Property required under Section 5;

(4)   The premium for Mortgage Insurance (if any);

(5)   The amount I may be required to pay Lender under Section 10 below instead of the payment of the premium for Mortgage Insurance (if any); and

(6)   If Lender requires, Community Association Dues, Fees, and Assessments.

After signing of the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment that I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

I will promptly send Lender a copy of all notices of amounts to be paid under this Section. I must pay Lender for Escrow Items as part of my regular Periodic Payments, unless Lender excuses this requirement in writing. If Lender excuses me in writing, I will pay all Escrow Items covered by the excuse, directly and on time. I will provide receipts proving my direct payments of Escrow Items on request and in the time period Lender requires. If Lender excuses me from paying Escrow Items to Lender and if I fail to pay any amount due for an Escrow Item directly, Lender may pay such amount under Section 9, and I will be obligated to repay Lender, plus interest at the Note rate. Lender may revoke the excuse regarding any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, I will pay to Lender all Funds (defined below), and in such amounts, that are then required under this Section 3.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called the "Funds." The Funds are pledged as additional security for all Sums Secured.

Lender may, at any time, collect and hold Funds in an amount (1) sufficient to permit Lender to apply the Funds at the time specified under RESPA, but (2) not to exceed the maximum amount a lender can require under RESPA. Lender will estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

**(b)  Lender's Obligation.**  Lender will keep the Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Funds. Lender will use the Funds to pay the Escrow Items. Lender will give to me, without charge, an annual accounting of the Funds. That accounting must show all additions to and deductions from the Funds and the reason for each deduction in the manner required by RESPA.

Lender may not charge me for holding or keeping the Funds, or for using the Funds to pay Escrow Items, or for making a yearly analysis of my payment of Funds or for receiving, verifying and totaling assessments and bills.

MAINE–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3020 01/01 (02/01/07)                                    Page 5 of 16                                    DocMagic eForms 800-649-1362
www.docmagic.com

Maine law requires payment of, and Lender agrees to pay me, interest on the Funds in the manner and amount set forth in Maine law.

(c)  Adjustments to the Funds.  If there is a surplus of Funds held in escrow, as defined under RESPA, Lender will report to me regarding the excess funds in accordance with RESPA.  If there is a shortage or deficiency of Funds held in escrow, as defined under RESPA, Lender will notify me as required by RESPA and I will pay to Lender the amount necessary to make up the shortage or deficiency as required by RESPA, but in no more than 12 monthly payments.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Funds that are then being held by Lender.

4.  Borrower's Obligation to Pay Charges, Assessments and Claims.  I will pay all taxes, assessments, and any other charges and fines that may be imposed on the Property and that may be or become superior to this Security Instrument.  If I am a tenant under a ground lease on the Property, I will also pay Ground Rents or payments due under my ground lease.  I will also pay any Community Association Dues, Fees, and Assessments.  I will do this either by making the payments to Lender that are described in Section 3 above or, if I am not required to make payments to Lender under Section 3, by making the payments on time to the Person owed them.  In this Security Instrument, the word "Person" means any natural person, organization, governmental authority or other party.

I will promptly pay or satisfy all liens against the Property that may be or become superior to this Security Instrument.  However, this Security Instrument does not require me to satisfy a superior lien if:  (a) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves the way in which I agree to pay that obligation (but I must fully perform my agreement or this exception does not apply); (b) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced (but this exception ends when the lawsuit ends); or (c) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person.  If Lender determines that any part of the Property is subject to a superior lien, Lender may give me a notice identifying the superior lien.  I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5.  Borrower's Obligation to Maintain Hazard Insurance or Property Insurance; Use of Insurance Proceeds.  I will obtain hazard or property insurance to cover all buildings and other improvements that now are or in the future will be located on the Property.  The insurance must cover loss or damage caused by:  (a) fire; (b) hazards normally covered by "extended coverage" hazard insurance policies; and (c) other hazards for which Lender requires coverage, including floods and earthquakes.  The insurance must be in the amounts (including deductibles) and for the periods of time required by Lender.  Lender's requirements can change during the term of the Loan.  I may choose the insurance company, but my choice is subject to Lender's approval.  Lender may not refuse to approve my choice unless the refusal is reasonable.  If I do not maintain any of the insurance coverages described above, Lender may obtain insurance coverage at its option and charge me in accordance with Section 9 below.

Lender is under no obligation to purchase any particular type or amount of coverage.  Lender's coverage will protect Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard, or liability and might provide greater or lesser coverage than was previously in effect.  I acknowledge that the cost of the Lender's insurance coverage might significantly exceed the cost of insurance that I could have obtained.  Any amounts paid by Lender under this Section 5 will become my additional debt secured by this Security Instrument.  These amounts will bear interest at the Note rate from the date of disbursement and will be payable, with interest, upon notice from Lender to me requesting payment.

Lender may require me to pay, in connection with this Loan, either:  (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification.  I will also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from my objection.

All of the insurance policies required by Lender and renewals of those policies: (a) are subject to Lender's right to disapprove; (b) must include what is known as a "standard mortgage clause" to protect Lender; and (c) must name Lender as mortgagee and/or as an additional loss payee.  The form of all policies and renewal certificates must be

acceptable to Lender.  Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts for paid premiums and renewal notices that I receive.

If I obtain additional insurance for damage to or destruction of the Property not required by Lender, I will ensure that it contains a standard mortgage clause and names Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender.  If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by any insurance company with regard to the Property is called "Proceeds." The Proceeds will be used to repair or to restore the damaged Property whether or not the underlying insurance was required by Lender unless:  (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Proceeds for that purpose.  If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Proceeds will be used to pay the Sums Secured. If any of the Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Proceeds will be paid to me.  Such insurance proceeds will be applied in the order provided for in Section 2.

During the repair and restoration period, Lender will have the right to hold insurance proceeds until Lender has had an opportunity to inspect the Property to ensure the work has been completed to Lender's satisfaction.  Lender will arrange the inspection promptly.  Lender may disburse Proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender will not be required to pay me any interest or earnings on Proceeds.  Fees for public adjusters, or other third parties I retain, will not be paid out of the insurance proceeds and will be my sole obligation.

If I abandon the Property, or if I do not answer, within 30 days a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle any insurance claim.  The 30-day period will begin when the notice is given.

If I abandon the Property, do not answer the notice, or if Lender acquires the Property under Section 22 below or otherwise, all of my rights in all insurance policies covering the Property will belong to Lender, other than the right to any refund of unearned premiums I have paid.  Lender may use the insurance proceeds either to repair or restore the Property or to pay the Sums Secured, whether or not then due.  However, Lender's rights in those Proceeds will not be greater than the Sums Secured.

6.    Occupancy.  I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument.  I will continue to occupy the Property and to use the Property as my principal residence for at least one year.  The one-year period will begin when I first occupy the Property.  However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so.  Lender may not refuse to agree unless the refusal is reasonable.  I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7.    Borrower's Obligation to Maintain and Protect the Property; Inspections.  I will keep the Property in good repair.  I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate or diminish in value due to its condition whether or not I am residing in the Property.  In addition, I will promptly repair the Property, if damaged, to avoid further deterioration or damage unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible.  If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, I will be responsible for repairing or restoring the Property only if Lender has released Proceeds for such purposes.  Lender may disburse Proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, I will not be relieved of my obligation to complete such repair or restoration.

Lender or its agents may enter and inspect the Property at reasonable times.  If it has reasonable cause, Lender may inspect the interior of the improvements on the Property.  Lender will give me notice prior to an interior inspection specifying such reasonable cause.

8.    Borrower's Loan Application.  If, during the application process for the Loan, I made false, misleading, incomplete, or inaccurate statements to Lender about information important to Lender in determining my eligibility

for the Loan ("Material Information"), Lender will treat my actions as a default under this Security Instrument. I will also be in default if I knew about or consented to any other Person, giving false, misleading, incomplete, or inaccurate statements about Material Information to Lender. False, misleading, incomplete, or inaccurate statements about Material Information would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, incomplete, or inaccurate statement of Material Information. Also, if during the loan application process I failed to provide Lender with Material Information, Lender will treat this as a default under this Security Instrument. I will also be in default if I knew about or consented to any other Person failing to provide Lender with Material Information.

9. **Lender's Right to Protect its Rights in the Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture, for enforcement of a lien which may become superior to this Security Instrument or to enforce laws or regulations); or (c) I abandon the Property, then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding, may include appearing in court, paying reasonable attorneys' fees, paying superior liens on the Property, protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Securing the Property includes, for example, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. I agree that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will also pay interest on those amounts at the Note rate. Interest on each amount will begin on the date that the amount is spent by Lender.

If I do not own but am a tenant on the Property, I will fulfill all my obligations under my lease. I will not give up the rights that I have as a tenant on the Property. I will not cancel or terminate my lease and I will not change or amend that lease unless Lender agrees in writing to the change or amendment. I also agree that, if I subsequently purchase or otherwise become the owner of the Property, my interest as the tenant and my interest as the owner will remain separate unless Lender agrees in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage required by Lender lapses or ceases to be available from the original mortgage insurer, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available and if I was required to make separately designated payments toward the premiums for Mortgage Insurance, Lender will establish a loss reserve as a substitute for the Mortgage Insurance coverage. I will pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. Such loss reserve will not be refundable.

Lender will no longer require loss reserve payments if Mortgage Insurance coverage again becomes available and is obtained. In that case, I will once again make Mortgage Insurance premiums. The Mortgage Insurance coverage must be in the amount and for the period of time required by Lender. Lender must approve the insurance company providing the coverage.

I will pay the Mortgage Insurance premiums, or the non-refundable loss reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the loss reserve payments, in the manner described in this Section 10.

This Section 10, and the existence or termination of my obligation to pay Mortgage Insurance premiums or reserve payments, does not affect my obligation to pay interest under the Note at the rate set by the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed.  Borrower is not a party to the Mortgage Insurance policy.

Mortgage Insurers assess their total risk on all Mortgage Insurance from time to time.  Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses.  These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements.  These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity, may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses.  If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance."  It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan.  These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any- regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law.  These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11.  Agreements about Miscellaneous Proceeds and Condemnation of the Property. I assign to Lender all Miscellaneous Proceeds (as defined above in subsection (M) of the section entitled "Words Used Often In This Document").  All Miscellaneous Proceeds will be paid to Lender.  Miscellaneous Proceeds include, among other things, awards or claims for damages for Condemnation.  A taking of property by any governmental authority by eminent domain is known as "Condemnation."

If the Property is damaged, all Miscellaneous Proceeds will be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During the repair and restoration period, Lender will have the right to hold Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to ensure the work has been completed to Lender's satisfaction.  Lender will arrange the inspection promptly.  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Miscellaneous Proceeds, Lender will not be required to pay me any interest or earnings on such Miscellaneous Proceeds.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured by this Security Instrument, whether or not then due, with the excess, if any, paid to me.  Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

If all of the Property is taken or destroyed, the Miscellaneous Proceeds will be used to reduce the Sums Secured, whether or not then due.  If any of the Miscellaneous Proceeds remain after the Loan has been paid in full, the remaining proceeds will be paid to me.

Unless Lender and I agree otherwise in writing, if only a part of the Property is taken or destroyed, and the fair market value of the Property immediately before the partial taking or destruction either is equal to, or greater than, the amount of the Sums Secured immediately before the partial taking or destruction, then a portion of the Miscellaneous Proceeds will be applied to pay a portion of the Loan.  That portion will equal the Miscellaneous Proceeds multiplied by a fraction.  That fraction is as follows: (a) the total amount of the Sums Secured immediately before the partial taking or destruction; divided by (b) the fair market value of the Property immediately before the partial taking or destruction.  The remainder of the Miscellaneous Proceeds will be paid to me.

Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, if only a part of the Property is taken or destroyed, and the fair market value of the Property immediately before the partial taking or destruction is less than the amount of the Sums Secured immediately before the partial taking or destruction, the proceeds will be used to reduce the Sums Secured whether or not then due.

If I abandon the Property, or if I do not answer within 30 days, a notice from Lender stating that the Opposing Party (as defined below) offered to make an award to settle a claim for damages, Lender has the authority to settle

any claim and collect the proceeds. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a legal action in regard to Miscellaneous Proceeds. Lender may then use the Miscellaneous Proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

I will be in default if any lawsuit or other legal proceeding is brought seeking Forfeiture of the Property or seeking any other significant reduction of Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" means a legal order or judgment that takes away some or all of my rights in the Property, whether in a civil or in a criminal proceeding. I can cure that default by causing the lawsuit or legal proceeding to be dismissed with a legal ruling that, in Lender's reasonable judgment, precludes any Forfeiture or any other significant reduction of Lender's interest in the Property or rights under this Security Instrument. If there is any award or claim for damages for the reduction of Lender's interest or rights, the proceeds of that award or claim are assigned to and will be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations and of Lender's Rights.**

(a) **Borrower's Obligations.** Lender may allow me, any Borrower, and any Successor in Interest of Borrower to delay or to change the amount of the Periodic Payments of principal and interest due under the Note or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Note and under this Security Instrument.

Lender may allow those delays or changes for a Successor in Interest of Borrower, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against a Successor in Interest of Borrower for not fulfilling obligations under the Note or under this Security Instrument, even if Lender is requested to do so by Borrower or a Successor in Interest of Borrower.

(b) **Lender's Rights.** Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property; (2) Lender accepts payments from third Persons or Successors in Interest; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make immediate payment in full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower and of Persons Taking over Borrower's Rights or Obligations.** Except as provided in Section 18, any Successor in Interest of Borrower who takes over my rights or obligations under this Security Instrument in writing and who is approved by Lender will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. I will not be released from my liability under this Security Instrument unless Lender agrees to that release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument, except as provided in Section 20.

If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender can agree with the other Borrowers to delay enforcing any of Lender's rights or to modify or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection, and valuation fees. In regard to any other fees, the fact that this Security Instrument does not expressly authorize Lender to charge a specific fee to Borrower should not be interpreted to be a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

MAINE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3020 01/01 (02/01/07)                                    Page 10 of 16                        DocMagic *eForms* 800-649-1362
                                                                                                  www.docmagic.com

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). My acceptance of any such refund made by direct payment to me will constitute a waiver of any right of action I might have arising out of such overcharge, unless Applicable Law expressly provides otherwise.

15. Notices Required under this Security Instrument. All notices given by me or Lender in connection with this Security Instrument must be in writing. Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless Applicable Law requires use of another method. The notice will be effective or "given" when mailed (or, if not mailed, when actually delivered) to my address, unless Applicable Law requires otherwise. Notice to any one Borrower will constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice will be addressed to me at the address stated in the section above titled "Description of the Property." A notice will be given to me at a different address if I give Lender a notice of my different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time.

Any notice that must be given to Lender under this Security Instrument will be given by delivering or mailing it to Lender's address stated in subsection (C) of the section above entitled "Words Used Often In This Document." A notice will be mailed or delivered to Lender at a different address if Lender gives me a notice of the different address. A notice to Lender required by this Security Instrument is not given until it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Law That Governs this Security Instrument; Interpretation. This Security Instrument is governed by federal law and the law that applies in the place where the Property is located. If any term of this Security Instrument or of the Note conflicts with the Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence will not be construed as a prohibition against agreement by contract.

As used in this Security Instrument: (a) words of the masculine gender will mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular will mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. I will be given one copy of the Note and of this Security Instrument.

18. Agreements about Lender's Rights If the Property Is Sold or Transferred. As used in this Section 18, "Interest in the Property" means any interest in the Property recognized or protected by Applicable Law including, for example, those interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, if the intent is the transfer of title by Borrower at a future date to a purchaser.

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any interest in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, Lender will not require immediate payment in full if prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement, following the procedures in Section 15. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

MAINE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3020 01/01 (02/01/07)                                   Page 11 of 18                    DocMagic ℰℱⓇℴⓇⓜⓈ 800-649-1362
www.docmagic.com

19. **Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required immediate payment in full, I may have the right to have enforcement of this Security Instrument ~~discontinued. I will have this right at any time before the earliest of: (a) five days before sale of the Property under~~ any power of sale granted by this Security Instrument; (b) such other period as Applicable Law might specify for the termination of my right to reinstate; or (c) before a judgment has been entered enforcing this Security Instrument, if I meet the following conditions:

(1) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if immediate payment in full had never been required;

(2) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(3) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(4) I do whatever Lender reasonably requires to assure that Lender's interest in the Property, Lender's rights under this Security Instrument, and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then the Note and this Security Instrument will remain in full effect as if immediate payment in full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required immediate payment in full under Section 18 above.

20. **Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Notice of Grievances.** The Note, or an interest in the Note, together with this Security Instrument, can be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects my Periodic Payments due under the Note and this Security Instrument and also performs other mortgage loan servicing obligations under the Note, this Security Instrument and Applicable Law is called the "Loan Servicer." There can be a change of the Loan Servicer as a result of the sale of the Note; there also can be one or more changes of the Loan Servicer unrelated to a sale of the Note. The law requires that I be given written notice of any change of the Loan Servicer. The written notice will be given in the manner required under RESPA. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA in connection with a notice of transfer of servicing. If the Note is sold, the Purchaser may hire a third party as Loan Servicer. In that case, the Loan Servicer, and not the Note Purchaser, will have mortgage loan servicing obligations to Borrower, except when the Note or Applicable Law expressly requires otherwise.

Lender and I agree that we will not start a lawsuit or legal proceeding or join, or be joined to, an existing lawsuit (such as a class action) that arises from the other party's actions pursuant to the Security Instrument or that claims the other party broke any promise or failed to fulfill any duty under this Security Instrument or relating to the Loan until: (a) the complaining party gives written notice in the manner provided in Section 15 to the other party; (b) the notice clearly describes the promise broken or the duty unfulfilled; and (c) the party receiving the notice is given a reasonable time to correct the problem. This provision does not apply if Applicable Law specifically authorizes a lawsuit by me against Lender under the facts in question and does not permit any cure or correction by Lender. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of default and opportunity to cure given to me pursuant to Section 22 and the demand for immediate payment in full given to Borrower pursuant to Section 18 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection are called "Environmental Laws."

Environmental Laws classify certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous or as pollutants or wastes by Environmental Laws and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances."

An "Environmental Cleanup" includes any removal, remedial action or other response as defined in an Environmental Law. An "Environmental Condition" means a condition that can cause or contribute to or otherwise trigger an Environmental Cleanup.

Except as provided below: (a) I will not permit Hazardous Substances to be present on the Property; (b) I will not use or store Hazardous Substances on the Property; and (c) I will not allow anyone else to do so. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. However, I may permit the presence on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property, and I may use or store these small quantities on the Property.

I will not do anything affecting the Property that violates Environmental Laws, and I will not allow anyone else to do so. I will not create an Environmental Condition affecting the Property or permit anyone else to do so or do anything which due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property.

If I know of: (a) any investigation, claim, demand, lawsuit or other action by the government or by a private party involving the Property and any Hazardous Substance or Environmental Laws; (b) any Environmental Conditions, for example, any spill or leak of any Hazardous Substance; or (c) any condition relating to a Hazardous Substance that reduces the value of the Property, I will promptly notify the Lender in writing. If the government or a private party notifies me (or I otherwise learn) that it is necessary to remove a Hazardous Substance affecting the Property or to take other remedial actions, I will promptly take all necessary remedial actions as required by Environmental Laws.

This Section does not require the Lender to conduct or pay for any Environmental Cleanup.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

22. **Lender's Rights If Borrower Fails to Keep Promises and Agreements.** After the occurrence of the conditions stated in subsections (a), (b) and (c) below, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. If all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may do this without making any further demand for payment. This requirement is called "immediate payment in full."

Lender may also require immediate payment in full if any of the events described in Section 18 occur, even if the conditions stated in subsections (a), (b) and (c) below are not met.

If Lender requires immediate payment in full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "foreclosure and sale." In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs allowed by law. These costs include reasonable attorneys' fees and costs of title evidence.

Lender may require immediate payment in full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument, including the promises to pay when due the Sums Secured;

(b) Lender sends to me, in the manner described in Section 15 above, a notice that states:

(1) The promise or agreement that I failed to keep;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date must be at least 30 days from the date on which the notice is given;

(4)  That if I do not correct the default by the date stated in the notice, Lender may require immediate payment in full, and Lender or another Person may acquire the Property by means of foreclosure and sale;

(5)  That if I meet the conditions stated in Section 19 above, I will have the right to have Lender's enforcement of this Security Instrument discontinued and to have the Note and this Security Instrument remain fully effective as if immediate payment in full had never been required; and

(6)  That I have the right in any lawsuit for foreclosure and sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c)  I do not correct the default stated in the notice from Lender by the date stated in that notice.

23.  **Lender's Obligation to Discharge this Security Instrument.**  When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering to the appropriate Registry of Deeds a discharge or release stating that this Security Instrument has been satisfied.  I will not be required to pay Lender for the discharge, but I will pay all costs of recording the discharge in the proper official records (unless those costs were collected in advance of my loan closing).

24.  **Payment During Foreclosure.**  I agree that Lender may accept rents from the Property, hazard insurance proceeds, condemnation awards, and any other monies produced by the Property or paid by me, even though Lender has demanded immediate payment in full and begun foreclosure and sale under Section 22 above.  Lender may use such monies to pay off any part of the Sums Secured without affecting Lender's right to continue foreclosure and sale.

25.  **Riders to this Security Instrument.**  The promises and agreements of each Rider are incorporated as a part of this Security Instrument.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in this Security Instrument and in the Rider signed by me and recorded with it.

_____ (Seal)
MELANIE B. HOWE                -Borrower

_____ (Seal)
HENRY W. HOWE, IV              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

Witness: _____

Witness: _____

MAINE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3020 01/01 (02/01/07)                    Page 15 of 16

DocMagic EFTRMS 800-649-1362
www.docmagic.com

————————— [Space Below This Line For Acknowledgment] —————————

State of Maine

County of _____York_____

    The foregoing instrument was acknowledged before me this _20th day of April, 2007_____

by _MELANIE B. HOWE AND HENRY W. HOWE, IV_____

and acknowledged the foregoing instrument to be Their free act and deed.

—————————————————————

Notary Public, State of Maine

Connie Jo Miservino
Notary Public, Maine
My Commission Exp. 12/23/07
(Print or Type Name)


My commission expires: _____

Order No: 1309922 (Howe)

EXHIBIT 'A'

A CERTAIN LOT OR PARCEL OF LAND WITH ANY BUILDINGS THEREON, SITUATED ON THE DEERWANDER ROAD IN THE TOWN OF HOLLIS, COUNTY OF YORK, STATE OF MAINE AND BEING LOT 1 ON A PLAN ENTITLED, "PLAN OF LAND OF RUSSELL A. & LOIS A. BLACK, 344 DEERWANDER ROAD, HOLLIS, MAINE", PREPARED BY BH2M ENGINEERS, 28 STATE STREET, GORHAM, MAINE 04038 AND RECORDED IN YORK COUNTY REGISTRY OF DEEDS ON OCTOBER 25, 2000 IN PLAN BOOK 258, PAGE 41, TO WHICH PLAN AND THE RECORD THEREOF REFERENCE SHOULD BE MADE FOR A MORE PARTICULAR DESCRIPTION.

BEING THE SAME PREMISES CONVEYED TO HENRY HOWE AND MELANIE HOWE BY VIRTUE OF A DEED FROM CHRISTOPHER J. COTE AND HEATHER L. COTE, FORMERLY KNOWN AS HEATHER L. KING, DATED APRIL 20, 2007 AND TO BE RECORDED HEREWITH.

# END OF DOCUMENT



ATLANTIC TITLE COMPANY
76 ATLANTIC PLACE
SOUTH PORTLAND, ME 04106

BK 16893  PGS 631 - 637     09/22/2014  09:46:28 AM
INSTR # 2014038790         DEBRA ANDERSON
RECEIVED YORK SS           REGISTER OF DEEDS



Return to:
Document Recording Services
P.O. Box 3008
Tallahassee, FL  32315-3008

**This Document Prepared By:**
**NATIONSTAR MORTGAGE LLC**
**350 HIGHLAND DRIVE**
**LEWISVILLE, TX 75067**
**Tatiana Vakidis**

_____ [Space Above This Line For Recording Date] _____

| | |
|---|---|
| Original Recording Date: April 24, 2007 | Loan No: |
| Original Loan Amount: $208,000.00 | Investor Loan No: |
| New Money: $20,895.40 | MIN Number: |



# LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

        This Loan Modification Agreement ("Agreement"), made this 12th day of August, 2014, between **HENRY HOWE and MELANIE HOWE** ("Borrower") and **NATIONSTAR MORTGAGE LLC,** whose **address is 350 HIGHLAND DRIVE, LEWISVILLE, TX 75067** ("Lender"), and Mortgage Electronic Registration Systems, Inc. ("MERS"), and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS, ("Mortgagee"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated **April 20, 2007** and recorded in Book/Liber **15139**, Page **0540**, Instrument No: **2007019461,** of the **Official Records (Name of Records)** of **YORK County, ME (County and State, or other Jurisdiction)** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

### 334 DEERWANDER ROAD, HOLLIS CENTER, ME 04042,
#### (Property Address)

the real property described being set forth as follows:

**See Exhibit "A" attached hereto and made a part hereof;**

        In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument     Form 3179 1/01 (rev. 06/12)
8300b 01/14                                                                  (page 1 of 6)

EXHIBIT
D

1. As of **August 1, 2014**, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. $237,329.72, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. **$23,199.73** of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and Borrower will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is **$214,129.99**. Interest will be charged on the Interest Bearing Principal Balance at the yearly rate of **4.625%**, from **August 1, 2014**. Borrower promises to make monthly payments of principal and interest of U.S. **$979.92**, beginning on the **1st** day of **September, 2014**, and continuing thereafter on the same day of each succeeding month until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The yearly rate of **4.625%** will remain in effect until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The new Maturity Date will be **August 1, 2054**.

3. Borrower agrees to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and Security Instrument by the earliest of: (i) the date Borrower sells or transfers an interest in the Property, (ii) the date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

4. If Borrower makes a partial prepayment of Principal, Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

5. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

6. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   (a)   all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may



have otherwise been entitled; and

(b) all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

7. Borrower understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. **MERS is the Mortgagee, of record under the Security Instrument and this Agreement.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

8. In the event that I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the loan documents and did not reaffirm the mortgage debt under applicable law, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

9. By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

10. This Agreement modifies an obligation secured by an existing security instrument recorded in YORK

LC
8300b 01/14

Family—Fannie Mae Uniform Instrument

(page 3 of 6)

BK 16893    Page 634    INSTR#: 201403879(

County, ME, upon which all recordation taxes have been paid.  As of the date of this agreement, the unpaid principal balance of the original obligation secured by the existing security instrument is $216,434.32.  The principal balance secured by the existing security instrument as a result of this Agreement is $237,329.72, which amount represents the excess of the unpaid principal balance of this original obligation.

In Witness Whereof, the Lender and I have executed this Agreement.

_____ (Seal)
**HENRY HOWE**  -Borrower

_____ (Seal)
**MELANIE HOWE**  -Borrower

_____ [Space Below This Line For Acknowledgments] _____

State of Maine

County of _____YORK_____

The foregoing instrument was acknowledged before me, a Notary Public on

_____8/26/2014_____ by **HENRY HOWE and MELANIE HOWE**.                    SEAL

_____Martha E Huff_____
(Signature of person taking acknowledgment)

_____NOTARY PUBLIC_____
(Title or rank)

My commission expires: May 16, 2020

MARTHA E. HUFF
Notary Public, Maine
My Commission Expires May 16, 2020

LOA _____    gle Family—Fannie Mae Uniform Instrument
8300b 01/14                                                          Form 3179 1/01 (rev. 6/06)
                                                                      (page 4 of 6)

BK 16893      Page 635      INSTR#: 201403879?

**NATIONSTAR MORTGAGE LLC**

By: _____ (Seal) - Lender
Name: ____Krista Moore____
Title: ____Assistant Secretary____

_____8-29-14_____
Date of Lender's Signature

_____ [Space Below This Line For Acknowledgments] _____

The State of TX

County of _____Denton_____

Before me ____Bianca Hockensmith____ _Notary Public_ (name/title of officer) on this day personally appeared

____Krista  Moore____ , the ____Assistant Secretary____ of

~~Nationstar Mortgage LLC~~ ,

~~known to me~~ (or proved to me on the oath of _____ or through _____ (description of identity card or other document)) to be the person whose name is subscribed to the foregoing instrument and acknowledged  to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this ___29___ day of ___August___, A.D., ___2014___

_____
Signature of Officer

_____Notary Public_____
Title of Officer

My Commission expires : ___3/2/16___

BIANCA HOCKENSMITH
NOTARY PUBLIC
STATE OF TEXAS
EXPIRES
03-02-2016

LO...............  ...Je Family—Fannie Mae Uniform Instrument
8300b 01/14                                                          (page 5 of 6)

BK 16893     Page 636     INSTR#: 2014038790

_KM_   8-29-14   Krista Moore
---
Mortgage Electronic Registration Systems, Inc - Nominee for Lender

Title: Assistant Secretary

_____ [Space Below This Line For Acknowledgments] _____

The State of TX

County of _____Denton_____                    Notary Public

Before me _____Bianca Hockensmith_____ (name/title of officer) on this day personally appeared

_____Krista Moore_____, the _____Assistant Secretary_____ of

Mortgage Electronic Registration System, Inc. _____,

known to me (or proved to me on the oath of _____ or through _____ (description of identity card or other document)) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this ___27___ day of ___August___, A.D. __2014__.



_____
Signature of Officer
Notary Public

_____
Title of Officer

My Commission expires : ___3/2/16___



L.O.
8300b 01/14

...e Family—Fannie Mae Uniform Instrument



2)

(page 6 of 6)

# Exhibit "A"

Loan Number:

Property Address: **334 DEERWANDER ROAD, HOLLIS CENTER, ME 04042**

Legal Description:

A CERTAIN LOT OR PARCEL OF LAND WITH ANY BUILDINGS THEREON, SITUATED ON THE DEERWANDER ROAD IN THE TOWN OF HOLLIS, COUNTY OF YORK, STATE OF MAINE AND BEING LOT 1 ON A PLAN ENTITLED, PLAN OF LAND OF RUSSELL A. AND LOIS A. BLACK, 344 DEERWANDER ROAD, HOLLIS, MAINE, PREPARED BY BH2M ENGINEERS, 28 STATE STREET, GORHAM, MAINE 04038 AND RECORDED IN YORK COUNTY REGISTRY OF DEEDS ON OCTOBER 25, 2000 IN PLAN BOOK 258, PAGE 41, TO WHICH PLAN AND THE RECORD THEREOF REFERENCE SHOULD BE MADE FOR A MORE PARTICULAR DESCRIPTION.





Exhibit A Legal Description Attachment 11/12

*Page 1 of 1*

Doc# 2013017
Bk 16559 Ps
Received York >S
03/25/2013   10:00AM
Debra L. Anderson
Register of Deeds

Recording Requested By:
Nationstar Mortgage

When Recorded Return To:

DOCUMENT ADMINISTRATION
Nationstar Mortgage
2617 COLLEGE PARK
SCOTTSBLUFF, NE 69361

## CORPORATE ASSIGNMENT OF MORTGAGE

York, Maine
SELLER'S SERVICING #:
SELLER'S LENDER ID#: 255                 "HOWE"
POOL #: 255

MERS #:

Date of Assignment: March 1st, 2013
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR CHALLENGE
FINANCIAL INVESTORS, CORP., ITS SUCCESSORS AND/OR ASSIGNS at P.O. BOX 2026, FLINT, MI 48501
Assignee: NATIONSTAR MORTGAGE LLC at 350 HIGHLAND DRIVE, LEWISVILLE, TX 75067

Executed By: HENRY B. HOWE AND MELANIE W. HOWE, IV, WIFE AND HUSBAND To: MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR CHALLENGE FINANCIAL INVESTORS,
CORP.
Date of Mortgage: 04/20/2007 Recorded: 04/24/2007 in Book/Reel/Liber: 15139 Page/Folio: 0540 as Instrument
No.: 2007019461 in the County of York, State of Maine.

Property Address: 334 DEERWANDER ROAD, HOLLIS CENTER, ME  04042

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $208,000.00 with interest, secured thereby, with all moneys now owing
or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the
covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee,
the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR CHALLENGE FINANCIAL
INVESTORS, CORP., ITS SUCCESSORS AND/OR ASSIGNS
On

By:
REGINA LASHLEY, Assistant Secretary

STATE OF Nebraska
COUNTY OF Scotts Bluff

On              , before me, IRENE GUERRERO, a Notary Public in and for Scotts Bluff in the State of
Nebraska, personally appeared REGINA LASHLEY, Assistant Secretary, personally known to me (or proved to me
on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by
his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal,

IRENE GUERRERO
Notary Expires: 09/14/2013

GENERAL NOTARY - State of Nebraska
IRENE GUERRERO
My Comm. Exp. Sept. 14, 2013

(This area for notarial seal)

EXHIBIT

E

BK 17411     Page 360     INSTR#: 201... 3798 LAST PAGE OF DOCUMENT

Recording Requested By:
Nationstar Mortgage

BK 17411  PGS 360 - 360          01/26/2017 12:15:11 PM
INSTR # 2017003798              DEBRA ANDERSON
RECEIVED YORK SS               REGISTER OF DEEDS

When Recorded Return To:

DOCUMENT ADMINISTRATION
Nationstar Mortgage
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019

### CORPORATE ASSIGNMENT OF MORTGAGE

York, Maine
SELLER'S SERVICING #            "HOWE"

Date of Assignment: January 17th, 2017
Assignor: NATIONSTAR MORTGAGE LLC at 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019
Assignee: MTGLQ INVESTORS, L.P at 200 WEST ST, NEW YORK, NY 10282-2102

Executed By: MELANIE B. HOWE AND HENRY W. HOWE, IV, WIFE AND HUSBAND To: MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR CHALLENGE FINANCIAL INVESTORS,
CORP.
Date of Mortgage: 04/20/2007 Recorded: 04/24/2007 in Book/Reel/Liber: 15139 Page/Folio: 0540 as Instrument
No.: 2007019461 In the County of York, State of Maine.

Property Address: 334 DEERWANDER ROAD, HOLLIS CENTER, ME 04042

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $208,000.00 with interest, secured thereby, and the full benefit of all the
powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys
unto the said Assignee, the Assignor's interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

NATIONSTAR MORTGAGE LLC
On January 17th, 2017

By: _____
MOHAMED HAMEED, Assistant Secretary

STATE OF Texas
COUNTY OF Dallas

On January 17th, 2017, before me, COLLEEN BARNETT, a Notary Public in and for Dallas in the State of Texas,
personally appeared MOHAMED HAMEED, Assistant Secretary, personally known to me to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
COLLEEN BARNETT
Notary Expires: 11/30/2019 #130453613

COLLEEN BARNETT
Notary Public, State of Texas
Comm. Expires 11-30-2019
Notary ID 130453613

(This area for notarial seal)

EXHIBIT
F

## ~~NOTICE TO DEFENDANTS~~
### FAIR DEBT COLLECTION PRACTICES ACT
### 32 M.R.S.A. § 11001 et seq.

WE ARE ATTEMPTING TO COLLECT A DEBT.  ANY AND ALL INFORMATION WHICH
WE OBTAIN WILL BE USED FOR THAT PURPOSE.

YOU HAVE THE RIGHT TO MAKE A WRITTEN OR ORAL REQUEST THAT
TELEPHONE CALLS REGARDING YOUR DEBT NOT BE MADE TO YOU AT YOUR
PLACE OF EMPLOYMENT.  ANY SUCH ORAL REQUEST WILL BE VALID FOR ONLY 10
DAYS UNLESS YOU PROVIDE WRITTEN CONFIRMATION OF THE REQUEST
POSTMARKED OR DELIVERED WITHIN 7 DAYS OF SUCH REQUEST.  YOU MAY
TERMINATE THIS REQUEST BY WRITING TO THE CREDITOR.

UNLESS YOU NOTIFY US THAT YOU DISPUTE ANY PORTION OF THIS DEBT
WITHIN 30 DAYS AFTER RECEIPT OF THIS NOTICE, THE DEBT WILL BE ASSUMED
VALID.  IF YOU NOTIFY US WITHIN 30 DAYS THAT THE DEBT, OR ANY PORTION
THEREOF, IS DISPUTED, WE WILL OBTAIN VERIFICATION OF THE DEBT AND WILL
MAIL YOU A COPY OF THE VERIFICATION.

UPON WRITTEN REQUEST WITHIN 30 DAYS AFTER RECEIPT OF THIS NOTICE, WE
WILL PROVIDE YOU THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR IF IT
IS DIFFERENT FROM THE CURRENT CREDITOR.  <u>NOTWITHSTANDING ANY OF
THE PROVISIONS OF THIS IMPORTANT NOTICE OF YOUR RIGHTS, WE RESERVE
THE RIGHT TO BRING A LAWSUIT AGAINST YOU WITHIN THE 30-DAY PERIOD.</u>