UNITED STATES DISTRICT COURT DISTRICT OF MAINE

| | |
|---|---|
| **WILMINGTON TRUST, NATIONAL ASSOCIATION NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR MFRA TRUST 2015-1**<br>    Plaintiff<br><br>v.<br><br>**HENRY W. HOWE IV**<br>&<br>**MELANIE B. HOWE**<br>    Defendants | CIVIL ACTION NO: 2:21-CV-00278-NT |
| **MELANIE B. HOWE**<br>    Counter Plaintiff<br><br>v.<br><br>**WILMINGTON TRUST, NATIONAL ASSOCIATION NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR MFRA TRUST 2015-1**<br>&<br>**FAY SERVICING LLC**<br>    Counter Defendants | |

**MELANIE HOWE'S REPLY TO PLAINTIFF'S OPPOSITION TO HER MOTION FOR PARTIAL SUMMARY JUDGMENT**

I.  INTRODUCTION

You could not dip a spoon into the barrel of mortgage debt and pull out the Howe Loan without bringing up scrapings from the very bottom. The Howe Loan has been in default for most of its existence. *See* Complaint at ¶ 7 (claiming the note was signed in 2007); Exhibit C to the Complaint (claiming that the note has been in default since 2014).

The Consumer Financial Protection Bureau ("CFPB") described the specialized marketplace to which the Plaintiff participates as follows:

> In 2009, the Federal Trade Commission (FTC) called the advent and growth of debt buying "the most significant change in the debt collection business" in recent years.

1

> Debt buyers purchase defaulted debt from creditors or other debt owners and thereby take title to the debt. Credit card debt comprises a large majority of the debt that debt buyers purchase. Debt buyers generated about one-third of debt collection revenue, or about $3.5 billion, in 2017. Creditors who sell their uncollected debt to debt buyers receive a certain up-front return, but these debts typically are sold at prices that are less than their face value. Debt buyers typically price their offers for portfolios based upon their projections of the amount they will be able to collect. The debt buyer incurs the risk of recovering less than the sum of the amount it paid to acquire the debt and its expenses to collect the debt.
>
> Typically, a debt buyer engages in debt collection, attempting to collect debts itself. However, a debt buyer also may use a third-party debt collector or a series of such debt collectors. If the debt buyer is unable to collect some of the debts it purchased, the debt buyer may sell the debt again to another debt buyer. Any single debt thus may be owned by multiple entities over its lifetime. The price paid for a debt generally will decline as the debt ages and passes from debt buyer to debt buyer, because the probability of payment decreases.

Debt Collection Practices (Regulation F), 85 FR 76734-01, *76736 (cleaned up).

Plaintiff acquired the Howe Loan when it was in default and after there were serious doubts about its collectability. **Howe 3-4**. The debt was acquired from one debt buyer to another and the Plaintiff elected to buy the debt during the Prior Action addressing the debt's collectability under Maine law and Plaintiff lost the right to collect in the Prior and waived any right to appeal the adverse decision against it. **Howe 4**. The Plaintiff also elected to conceal any of these facts from its own pleading before the Court as if to seek a do-over of the state court judgment against it which it never sought review. *See generally* Complaint (Doc. 1).

Plaintiff now denies it is a professional defaulted debt buyer (See Plaintiff's Response Melany Howe's Statement of Material Facts ("SMF Response") at ¶ 15. But the Plaintiff bought the Howe Loan when it was in default (*Id.*) from another professional default debt purchaser (Plaintiff's Proposed Amended Compliant (Doc. 47-1) at ¶ 21). As such, it meets the emerging definition of a professional, defaulted debt purchaser. 85 FR 76734-01, *76736. Who else would have acquired the Howe Loan under such circumstances and then proceeded to engage in pure subterfuge? Certainly no bank, no credit union, nor other traditional mortgage lender would choose to act unsafely and

2

unsoundly in the manner and form the Plaintiff has elected to act. But the law recognizes debt collectors are willing to use such underhanded methods of collection which is why Congress enacted the Fair Debt Collection Practices Act ("FDCPA"). 15 U.S.C.A. § 1692. In addition, the FDCPA was enacted not only to protect consumers but also to protect honest debt collectors who elect not to cut corners as part of the debt collection practices. *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 134 (2d Cir. 2017)(recognizing that the FDCPA is also intended "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged" by other debt collectors who ignore the laws and regulations related to debt collection practices).

The Howe Loan would seem to be particularly low value because it had no valid chain of mortgage assignments to which it could be enforced, as the Plaintiff knew when it bought the Howe Loan. **Howe 14**. Instead, it could only be enforced as an unsecured debt. One of the Plaintiff's first acts as the new owner of the Howe Loan was to take over litigation in the state of Maine—the Prior Action—where the collectability of the debt was at issue by its own admission. **Howe 4.** The Prior Action pursued a failed legal and factual theory arguing that, since the Plaintiff possessed the note and, and since nobody else could enforce the mortgage without it, that they should be entitled to enforce the mortgage (in order to better collect on the note). See **Howe 4**, MTGLQ Complaint; Doc. 63-5; See *Beal Bank U.S. v. New Century Mortg. Corp.*, 217 A.3d 731 (Me. 2019) (case decided on the same theory as advanced in the Prior Action, which lead to dismissal of the Prior Action).[1]

---

[1] It should be noted that Plaintiff's counsel in this action was certainly aware of and knew about the *Beal Bank* decision since the same counsel represented another mortgage action in that case and presented and Amicus Curiae brief on behalf of Caliber Home Loans Inc. in that action. *See e.g.* BEAL BANK USA, Plaintiff/Appellant, v. NEW CENTURY MORTGAGE CORPORATION, Defendant/Appellee., 2019 WL 7757896 (Me.).

The Howe Loan unsecured, and enforced against a modest home owned by a disabled single mother of two would not have much value, given the statutory exemptions Ms. Howe could claim. 14 M.R.S.A. § 4422 (1)(A)-(B) (describing $160,000 exemption for residence). As discussed in the Parties' previous memoranda, that effort to claim the right to enforce the mortgage failed and the Plaintiff's complaint was dismissed, with prejudice. **Howe 9**. The parties now argue, largely, over the import of that state court judgment of dismissal which the Plaintiff elected to not seek appellate review and instead came to this Court without disclosing any facts related to its failed prior efforts. And while this action was pending the Plaintiff also sought the assistance of a foreign court in the State of Florida without disclosing to that court this action was pending or that Ms. Howe's interests were at stake. No bona fide creditor (i.e. lender, credit union, or mortgage lender) would have made such tactical choices since to do so would amount to unsafe and unsound lending practices. But a debt collector like the Plaintiff has no such concern and as demonstrated in its own papers presented to the Court does not care about safe and sound collection practices. 15 U.S.C.A. § 1692.

## II. CLAIM PRECLUSION BARS THE PLAINTIFF'S CLAIMS

Here, Ms. Howe argues that, when the Plaintiff brought the prior action: (a) the debt was accelerated; (b) the Plaintiff could have brought the present action on the note when it brought the prior action; and (c) that the Prior Action and the Present Action are part of the same transaction. There are no disputes of material facts to question this conclusion and Ms. Howe is entitled to judgment in her favor on this issue.

### a. The Howe Debt was Accelerated when the Prior Action was Filed

Howe's Statement of Material Facts (SMF) outlines the parties' positions on whether the Howes' debt was accelerated when the Prior Action was filed. Ms. Howe reiterates here that the Nationstar Mortgage, a servicer collecting on the Howe Loan from 2014-2017 swears that the "Howe Loan was in default . . . and had been accelerated . . . on February 21, 2017, when Nationstar

4

Mortgage LLC, . . . transferred servicing to Selene Finance." **Howe 3**. The Prior Action was filed on June 30, 2017, some months later. **Howe 4.** Neither Fay nor the Plaintiff provides any facts to contradict Nationstar's sworn testimony that the obligation under the note was accelerated when the Prior Action was filed. **SMF Response 3**. There is therefore no genuine dispute of material fact on whether the debt was accelerated and payable in full when the Prior Action was filed.

In order to properly deny the fact asserted by Howe, Plaintiff and its agents are required to provide evidence; they have not. See SMF Response 3. The unsworn argument of its counsel is not evidence to create a dispute of Nationstar's sworn testimony and as Nationstar's assignees, the Counter Defendants have no greater rights to claim otherwise since assignees stand in the shows of their assignors and have no greater rights or less responsibilities. *Portland Valve, Inc. v. Rockwood Sys. Corp.*, 460 A.2d 1383, 1389 (Me. 1983); *First Union Nat. Bank v. Curtis*, 2005 ME 108, ¶ 10, 882 A.2d 796, 798–99. The First Circuit explained it as follows:

> [U]nder contract principles, an "assignee 'stands in the shoes' of the assignor", *Williston* § 432, at 182, and "acquires a right against the obligor only to the extent that the obligor is under a duty to the assignor", *Restatement (Second) of Contracts* § 336(1) (1981). Finally, under principles of *res judicata*, a judgment against an assignor may in certain circumstances bind the assignee. 1B J. Moore, J. Lucas and T. Currier, *Moore's Federal Practice* ¶ 0.411[12] (2d ed. 1984).

*Rhode Island Hosp. Tr. Nat. Bank v. Ohio Cas. Ins. Co.*, 789 F.2d 74, 81 (1st Cir. 1986).

### b. The Present Action Could Have been brought with the Prior Action

As stated in Ms. Howe's Memorandum in Support of her Mot. for Partial Summary Judgment, ("Mem.") there was nothing preventing Plaintiff from bringing an action on the accelerated debt on the Howe Loan in the Prior Action. Mem. at 6. Under Maine law and civil procedure rules, an action or claim may be filed in the alternative. M.R.Civ. P 8(a)(2) ("relief in the alternative or of several different types may be demanded"). The Counter Defendants do not dispute this point and therefore concede they had a right to pursue the purported contract claims in the Prior Action but elected not to do so. SMF Response 7. Therefore, they waived the right to

5

pursue the remedy they had available before and are not now entitled to pursue a claim previously forfeited by their choice.

          c. **The Prior Action and the Present Action are Part of the Same Transaction; They Seek the Same End, and Revolve Around the Same Debt.**

Plaintiff argues in their Opposition Memorandum ("Opp.") that an action on the mortgage is separate from an action relating to a note. Specifically, Plaintiff argues that this action on the note (and modifications thereto) is separate from the Prior Action which related, it says, only to the mortgage. Opp. at 8. Counter Defendants conflate the issue in a disingenuous manner. It can be true that an obligation that cannot be enforced through an action on a note, alone, can be enforced through a foreclosure on a note and mortgage. All of the Plaintiff's cases on this notion that mortgages are mortgages and notes are notes (and never the twain shall meet) revolve around this point. *Johnson-Toothacre*, for example, holds, following Maine law, that a debt may be enforced, *in rem*, through a mortgage and note, even though the *in personum* obligation outlined in the note, alone, is not collectable. *Johnson-Toothaker*, 2022 WL 3278883. This is true, but Plaintiff's argument—that actions on notes and actions on mortgages are distinct by their very nature—does not follow.

An action on a mortgage is inexorably linked to the underlying obligation. *JPMorgan Chase Bank v. Virgulak*, 218 A.3d 596, 608 (Conn. App. Ct. 2019) (""A mortgage is a conveyance or retention of an interest in real property as security for performance of an obligation." Restatement (Third), Property, Mortgages § 1.1, p. 8–9 (1997). However, "[u]nless it secures an obligation, a mortgage is a nullity." Restatement (Third), supra, § 1.1, comment.'")(quotations and citations in original). There simply is no lawful way for the Plaintiff to have acted on the Mortgage without having acted on the underlying obligation.

Plaintiff's own argument in the Prior Action was that the underlying debt is inexorably linked to the obligation. It claims that because it holds the note, and because it holds rights from a modification agreement, that it, and only it, was entitled to enforce its note (thrice assigned) through

the mortgage, and the mortgagee (Challenge Financial) should be compelled to transfer the mortgage to them and ask that the court enter a permanent injunction to ensconce the Plaintiff's rights in the Howes' property. **Howe 4**, MTGLQ Complaint; Doc. 63-5.

MRFA cannot now say that their action on the mortgage was not also part of the same nucleus of operative facts—the same effort to enforce the Howe Loan.

### d. The Prior Action Sought more than Declaratory Relief

*Sebra,* citing decades of case law, hornbooks, and the Restatement (Second) of Judgments states a rule that *"*where the prior claim for declaratory relief was accompanied by a request for an injunction or other coercive relief, traditional claim preclusion principles apply." *Sebra v. Wentworth*, 990 A.2d 538, 542 (Me. 2010); *Cimasi v. City of Fentoxn*, 838 F.2d 298, 299 (8th Cir. 1988); 18A Charles Alan Wright, Arthur R. Miller Edward H. Cooper, *Federal Practice and Procedure* § 4446 at 313-14 (2002)). The facts of *Sebra* are not relevant to the proper analysis: whether the request for an injunction were accompanied by a request for an injunction or other coercive relief. The Prior Action sought more than just a declaration of rights and so claim preclusion applies.

Dated: November 16, 2023                                          Respectfully submitted,

*/s/ John Z. Steed*                                        */s/ Phillip R. Robinson*
John Zachary Steed                                         Phillip R. Robinson
Island Justice                                             *Admitted Pro Hac Vice*
P.O. Box 771                                               Consumer Law Center, LLC
Stonington, Maine 04681                                    10125 Colesville Rd., Suite 378
                                                           Silver Spring, MD 20901
207.771.7011                                               Telephone: 301.448.1304

john@islandjusticelaw.com                                  phillip@marylandconsumer.com

**Counsel for Defendant/Counter Plaintiff**                **Counsel for Defendant/Counter Plaintiff**
**Melanie Howe**                                           **Melanie Howe**