## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR MFRA TRUST 2015-1, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Docket No. 2:21-cv-00278-NT |
| HENRY W. HOWE IV and MELANIE B. HOWE, | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) ) | |
| MELANIE B. HOWE, | ) ) | |
| Counter-Plaintiff, | ) ) | |
| v. | ) ) | |
| WILMINGTON TRUST, NATIONAL ASSOCIATION NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR MFRA TRUST 2015-1 and FAY SERVICING, LLC, | ) ) ) ) ) ) ) | |
| Counter-Defendants. | ) | |

**ORDER ON DEFENDANT/COUNTERCLAIM-PLAINTIFF
MELANIE B. HOWE'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Before me is Defendant/Counterclaim-Plaintiff Melanie Howe's motion for
partial summary judgment (ECF No. 64). Specifically, Howe seeks entry of judgment
as a matter of law on (1) her affirmative defenses asserting that all of the Plaintiff's
claims are barred by the *Rooker-Feldman* doctrine and principles of claim preclusion,

and (2) her counterclaims against Plaintiff/Counterclaim-Defendant Wilmington Trust National Association, Not In Its Individual Capacity, But Solely As Trustee For MFRA Trust 2015-1, and Counterclaim-Defendant Fay Servicing, LLC under the Fair Debt Collection Practices Act and the Maine mortgage servicer good faith statute. For the reasons set forth below, Howe's motion is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND[1]

In 2007, Melanie Howe and her then-husband, Henry W. Howe, borrowed $208,000.00 from Challenge Financial Investors, Corp. ("**Challenge**") to purchase a home in Hollis, Maine (the "**Loan**"). Melanie Howe's Reply to Pl.'s Resp. to Def. Counter-Pl. Melanie Howe's Supporting Statement of Material Facts in Supp. of her Mot. for Partial Summ. J. ("**SMF**") ¶¶ 1– 2 (ECF No. 72). The Howes' Loan was secured by a mortgage on the Hollis property. SMF ¶ 2. The terms and conditions of the Loan and Mortgage are memorialized in a promissory note (the "**Note**") and mortgage (the "**Mortgage**"). SMF ¶ 2; Joint Ex. 1 ("**Note**") (ECF No. 63-1); Joint Ex. 2 (ECF No. 63-2). The Loan was later modified three times, most recently by a 2014

---

[1]    The facts are drawn from (1) documents in the stipulated summary judgment record (ECF No. 63) and (2) Howe's consolidated reply statement of material facts (ECF No. 72), which is a compilation of Howe's statement of material facts (ECF No. 65), the response to Howe's statement of material facts filed by Wilmington Trust National Association, Not In Its Individual Capacity, But Solely As Trustee For MFRA Trust 2015-1, and Counterclaim-Defendant Fay Servicing, LLC (together "**Counterclaim-Defendants**") (ECF No. 69), and Howe's reply statement of material facts (ECF No. 72). I construe the record evidence in the light most favorable to the Counterclaim-Defendants as the nonmoving parties and draw all reasonable inferences in their favor. *EdgePoint Cap. Holdings, LLC v. Apothecare Pharmacy, LLC*, 6 F.4th 50, 57 (1st Cir. 2021).

loan modification agreement with Nationstar Mortgage LLC (the "**Loan Modification Agreement**"). SMF ¶ 2; Joint Ex. 4 (ECF No. 63-4).

Under both the Loan and the Loan Modification Agreement, the Howes agreed to make payments towards the principal and interest on the first day of every month. Note at 1; Joint Ex. 4 at 2. If the Howes did not pay the full amount of each monthly payment on the due date, they agreed that they would be in default. Note at 2. If the Howes were ever in default, Challenge or whoever the "Note Holder" was at the time (defined as anyone who takes the Note by transfer and is entitled to receive payments under the Note) "may send [the Howes] a written notice" informing them that if they "do not pay the overdue amount by a certain date, the Note Holder may require [the Howes] to pay immediately the full amount of Principal which has not been paid and all the interest . . . owe[d] on that amount." Note at 2.

By the fall of 2014, the Howes had defaulted on the Loan by failing to make their monthly payments. SMF ¶ 3. At that time, the Loan was being serviced by Nationstar Mortgage LLC ("**Nationstar**"). SMF ¶ 3. On October 30, 2014, Nationstar sent a Notice of Default and Right to Cure letter to the Howes. SMF ¶ 3; *see* Joint Ex. 26 at 4, 36–44 (ECF No. 63-26).[2] Nationstar sent another Notice of Default and Right

---

[2]    Joint Exhibit 26, a declaration from a Nationstar employee, Alan R. Blunt, was filed as part of the Local Rule 56(h) Stipulated Record with the following note: "EXHIBIT 26 is being submitted provisionally pending clarification from Nationstar. Counsel has the original affidavit from Nationstar in his possession." At the hearing on Howe's partial motion for summary judgment, counsel explained that he had designated the declaration as provisional because he had been waiting for confirmation from Nationstar as to the number of years that the declaring employee had worked at Nationstar. Because the employee's tenure at Nationstar is not material, I accepted the Blunt declaration (with the blank placeholder for the number of years Blunt had worked at Nationstar) as part of the summary judgment record.

to Cure letter on August 13, 2015. SMF ¶ 3; Joint Ex. 26 at 4, 45–51. The letters warned that failure to pay the stated total necessary to cure the default ($4,194.69 in 2014 and $18,851.60 in 2015) "may result in acceleration of the sums secured by the [Mortgage], foreclosure proceedings and sale of the property." Joint Ex. 26 at 38, 47.

At the end of June 2017, MTGLQ Investors, LP ("**MGTLQ**") filed an action in Maine Superior Court against Challenge, naming the Howes and others as parties in interest to the suit ("**Prior Action**"). SMF ¶ 4; Joint Ex. 5 (ECF No. 63-5). The complaint in the Prior Action was titled "Complaint for Declaratory Judgment" and asked the court to find that MGTLQ was the owner of both the Note and Mortgage as of January 17, 2017, the date that MGTLQ recorded a mortgage assignment in which Nationstar purportedly assigned its interest in the Mortgage to MGTLQ. Joint Ex. 5 at 1, 5–6, 36. MGTLQ attached copies of the Note and Mortgage to its complaint and requested that the state court "order the formal and confirmatory transfer of the Mortgage and its ownership rights" of the Hollis property to MGTLQ, "confirm the transfer of the Mortgage and its ownership rights" to MGTLQ "*nunc pro tunc* as of January 17, 2017," and issue "an effective reaffirmation of the assignment from Mortgage Electronic Registration Systems, Inc." Joint Ex. 5 at 5. The complaint also asked the state court to "[r]ender an in rem permanent injunction concerning the ownership of the subject property mortgage, subject to any rights of redemption held by the mortgagees, rests with [MGTLQ]." Joint Ex. 5 at 6. In December of 2017, Wilmington Trust National Association, Not In Its Individual Capacity, But Solely

4

As Trustee For MFRA Trust 2015-1 ("**MFRA**") was substituted as the named plaintiff in the Prior Action. SMF ¶ 4.

Melanie Howe, through counsel, opposed the relief sought by MFRA in the Prior Action, which she characterized as "an attempt by [MFRA] to correct what would be a standing defect should [MFRA] ever attempt to foreclose on a mortgage that Ms. Howe and her husband gave to [Challenge] . . . under the Maine Law Court decisions, *MERS v. Saunders*, 2010 ME 79, 2 A.3d 289, and *Bank of America v. Greenleaf*, 2014 ME 89, 96 A.3d 700, and their progeny." Joint Ex. 11 at 2–3 (ECF No. 63-11); *see* SMF ¶ 8. When MFRA moved for quiet title, and for default judgment and judgment on the pleadings, Howe filed an opposition. SMF ¶ 8; *see* Joint Ex. 11. The Superior Court dismissed the Prior Action in December of 2019, citing a recent Law Court decision that rejected a similar effort by a bank to establish that a note holder has a "pre-foreclosure right" to compel the assignment of an accompanying mortgage. Joint Ex. 12 (ECF No. 63-12) (citing *Beal Bank USA v. New Century Mortg. Corp.*, 2019 ME 150, 217 A.3d 731). Prior to dismissal of the Prior Action, the Superior Court held a hearing to address whether the dismissal should be with or without prejudice. *See* Joint Ex. 6 at 6 (ECF No. 63-6). Counsel for Howe advocated for dismissal with prejudice, and the state court agreed and entered a dismissal with prejudice and final judgment on February 26, 2020. *See* Joint Ex. 6 at 6.

Months later, MFRA filed a motion in the Prior Action to amend the judgment. Joint Ex. 13 (ECF No. 63-13). MFRA's motion acknowledged that the "method of establishing standing through a declaratory action brought against the originator

and any Party-in-Interest with a record interest in the property was precluded by the Law Court's decision in *Beal Bank . . . .*" Joint Ex. 13 at 2. And MFRA requested that the judgment be amended to specify that dismissal with prejudice only precluded a future action "as to the claims advanced in" the Prior Action. Joint Ex. 13 at 2–3. The Superior Court denied MFRA's motion to amend the judgment as untimely, but added even "[i]f timely, the motion to amend judgment would be denied." Joint Ex. 14 at 2 (ECF No. 63-14).

Meanwhile, Fay Servicing LLC ("**Fay**") had begun servicing the Howes' Loan in the fall of 2017. SMF ¶ 10. As a mortgage servicer, Fay collects payments from borrowers on behalf of others, pays insurance and taxes, and brings loans through foreclosure. SMF ¶ 10. When Fay began servicing the Loan, it was already in default. SMF ¶ 10. As servicer, Fay sent monthly mortgage statements to the Howe property informing the Howes that, because the Loan was in default: "[T]he balance of your loan has been accelerated (i.e., we have made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process)." Joint Ex. 35 (ECF No. 63-35); Joint Ex. 36 (ECF No. 63-36); *see* SMF ¶ 1. The statements also contained the following notices: "Fay Servicing is a debt collector, and information you provide to us will be used for that purpose"; and "You are late on your monthly payments. Failure to bring the account current may result in additional fees or expenses, and in certain instances, you may risk foreclosure - the loss of your home." Joint Ex. 35.[3] Fay

---

[3]      *See* Joint Ex. 36 ("You are late on your monthly payments. As a result, the balance of your loan has been accelerated (i.e., we have made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process.) Failure to bring the account current may result in

also sent several letters to the Howes informing them that Fay had "a right to invoke foreclosure based on the terms of [their] mortgage contract" and encouraging them to seek alternatives to foreclosure to avoid losing their home due to their failure to make payments. Joint Ex. 34 (ECF No. 63-34).

Fast-forward to 2021 in this Court. On September 30, 2021, at Fay's direction, MFRA filed a Complaint against Defendants Henry W. Howe IV and Melanie B. Howe related to the Loan. Compl. (ECF No. 1); SMF ¶ 13. MFRA alleges claims for breach of the Note and breach of contract, quantum meruit, and unjust enrichment. Compl. ¶¶ 14–42. Although MFRA alleges that the Note is secured by the Mortgage on the Hollis property, Compl. ¶ 12, MFRA did not seek foreclosure in this action.[4] *See* Compl. ¶¶ 14–42.

---

additional fees or expenses, and in certain instances, you may risk the loss of your home to a foreclosure sale.").

[4]    A point of clarification: MFRA did not initially bring a foreclosure count against the Howes. But in May of 2023, MFRA filed a motion to amend its Complaint to add a claim for foreclosure and sale. Mot. to Amend Compl. (ECF No. 47). MFRA explained in its motion to amend that Challenge is a defunct corporation in Florida so MFRA had been unable to find someone with authority to execute the quitclaim assignment of the Mortgage that MFRA needed to have standing to foreclose. Mot. to Amend Compl. 2. To get around this obstacle to foreclosure, MFRA initiated an action in Florida state court in August of 2022 requesting that a receiver be appointed for Challenge to wind up its affairs, and specifically to execute an assignment of the Mortgage to MFRA. Mot. to Amend Compl. 2. When now-defunct Challenge did not answer in the Florida action, MFRA moved for and received an entry of default against Challenge, and in February of 2023, the Florida state court granted MFRA's motion to appoint a receiver. Mot. to Amend Compl. 2–3. The receiver then executed a quitclaim assignment of the Mortgage from Challenge to MFRA. Mot. to Amend Compl. 3. That series of events in Florida led to MFRA trying to add the foreclosure count to this action. During the Local Rule 56(h) pre-filing conference I held on August 17, 2023, however, I denied MFRA's motion to amend its Complaint because it was filed more than twenty months after the Complaint was filed and three weeks after the deadline set in the Scheduling Order for amendment of the pleadings. I noted that MFRA did not provide a valid explanation for its delay and that Howe would be prejudiced because the timing of the motion to amend—filed after discovery had closed—would lead to additional costs, further delay in resolving the case, including Howe's counterclaims, and would likely have a significant impact on her defense counsel's trial strategy. Oral Order (ECF No. 59).

Defendant Melanie Howe filed an answer and affirmative defenses, and she asserted counterclaims against MFRA and Fay.[5] Answer & Affirmative Defenses, Countercls. & Demand for Jury Trial ("**Countercls.**") (ECF No. 8). Two of Howe's affirmative defenses are relevant to her motion for partial summary judgment. First, she asserts that MFRA's claims are barred by the *Rooker-Feldman* doctrine because MFRA lost its purported rights in the Prior Action and cannot, as a state court loser, appeal that judgment to this Court. Second, she alleges that MFRA's claims are barred by res judicata, collateral estoppel, and general claim preclusion because MFRA either did bring or could have brought its current claims in the Prior Action. Howe also brought counterclaims against Fay, as one of the servicers of the Loan, in which she alleges that Fay violated the Fair Debt Collection Practices Act and Maine's good faith servicing statute.

The parties completed their summary judgment briefing in late 2023. In early January 2024, the Maine Law Court issued long-awaited decisions in a pair of foreclosure-related cases. *See Finch v. U.S. Bank, N.A.*, 2024 ME 2, 307 A.3d 1049; *J.P. Morgan Mortg. Acquisition Corp. v. Moulton*, 2024 ME 13, 314 A.3d 134. Following those Law Court decisions, the parties requested, and I granted, leave to file supplemental memoranda of law to address any impact the cases might have on Howe's motion for partial summary judgment. Joint Mot. to File Suppl. Mem. of Law and Notice of Suppl. Authority (ECF No. 74); Order (ECF No. 75). I held oral argument on September 3, 2024.

---

[5]    Defendant Henry Howe defaulted. Order (ECF No. 19).

## LEGAL STANDARD

A party is entitled to summary judgment if she shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute is one that 'would permit a rational factfinder to resolve the issue in favor of either party,' and a material fact is one that has the 'potential to affect the outcome of the suit under the applicable law.'" *Gattineri v. Wynn MA, LLC*, 63 F.4th 71, 84–85 (1st Cir. 2023) (quoting *Joseph v. Lincare, Inc.*, 989 F.3d 147, 157 (1st Cir. 2021)). I "must consider the record and the reasonable inferences drawn therefrom in the light most favorable to the nonmovant," but I may ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Dixon-Tribou v. McDonough*, 86 F.4th 453, 458 (1st Cir. 2023) (quoting *Lahens v. AT&T Mobility P. R., Inc.*, 28 F.4th 325, 333 (1st Cir. 2022)).

Rule 56 of the Local Rules of the United States District Court for the District of Maine provides that any fact asserted in a statement of material facts must be supported "by a record citation." Local R. 56(b)–(d). This means that the fact or response must "be followed by a citation to the specific page or paragraph of identified record material supporting the assertion." Local R. 56(f). Local Rule 56(c) requires that a party opposing a motion for summary judgment must begin each opposing statement of material fact "with the designation 'Admitted,' 'Denied,' or 'Qualified.'" Local R. 56(c). If a fact is admitted, the statement should end with the "admitted" designation. *Id.* If a fact is denied or qualified, each denial or qualification must be supported by a record citation. *Id.* "[U]nless properly controverted," a fact that is

supported by record citations is "deemed admitted," and I may disregard any statement "not supported by a specific citation to record material properly considered on summary judgment." Local R. 56(f).

## DISCUSSION

Howe asserts that she is entitled to summary judgment on her affirmative defense that MFRA's claims are barred by the *Rooker-Feldman* doctrine. She also maintains that summary judgment in her favor is appropriate on her affirmative defense that MFRA's claims are barred by res judicata, collateral estoppel, and general claim preclusion because MFRA brought or could have brought the claims it is bringing here in the Prior Action. In addition, Howe contends that I should enter judgment as a matter of law on her counterclaims against Fay based on Fay's alleged violations of the Fair Debt Collection Practices Act and the Maine good faith servicing statute. I take these arguments in turn.

## I.  Howe's First Affirmative Defense – the *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine prevents lower federal courts from deciding "cases brought by state-court losers complaining of injuries caused by state-court judgments that were rendered before the district court proceedings commenced and invite district court review and rejection of those judgments." *Klimowicz v. Deutsche Bank Nat'l Tr. Co.*, 907 F.3d 61, 64 (1st Cir. 2018) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). A *Rooker-Feldman* challenge implicates this Court's jurisdiction. "[I]f federal litigation is initiated after state proceedings have ended, and the plaintiff implicitly or explicitly 'seeks review and

rejection of the state judgment,' " then the federal litigation "seeking an opposite result is an impermissible attempt to appeal the state judgment to the lower federal courts, and, under *Rooker-Feldman*, the federal courts lack jurisdiction." *Federación de Maestros de P. R. v. Junta de Relaciones del Trabajo de P. R.*, 410 F.3d 17, 24 (1st Cir. 2005) (quoting *Exxon Mobil*, 544 U.S. 280 at 291) (internal citation omitted).

To break that down, the doctrine applies only to cases where (1) there was a party who lost in a state court judgment that (2) was rendered before the federal action commenced, and (3) that party complains of injuries caused by the state court judgment, and (4) the case invites the district court to review and reject that judgment. *See Silva v. Massachusetts,* 351 F. App'x 450, 454 (1st Cir. 2009). Here, the record is clear that the first two criteria are met: MFRA was the "state-court loser" in the Prior Action and the judgment in the Prior Action was entered before MFRA initiated this federal action. So I focus my attention on the remaining two factors: whether MFRA's federal action complains of injuries caused by the Prior Action judgment and asks me to review and reject that Prior Action judgment.

The "caused by" question requires some additional explanation. Under *Exxon-Mobil*, a reviewing federal court must "examine whether the state court loser who files suit in federal court seeks redress for an injury *caused by the state court decision itself* or for an injury cause[d] by the defendant." *Galibois v. Fisher*, 174 F. App'x 579, 580 (1st Cir. 2006) (emphasis added). In other words:

> If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts

> as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction.

*Id.* (quoting *Noel v. Hall,* 341 F.3d 1148, 1164 (9th Cir. 2003)).

In this federal action, MFRA is not alleging injury *caused* by the Superior Court judgment. Instead, MFRA is alleging injuries caused by the Howes' failure to make payments under the Note. The asserted legal wrong is the Defendants' alleged breach of contract, not the state court judgment dismissing MFRA's 2017 pre-foreclosure suit with prejudice. The alleged breach of contract and related injuries "exist independent of the state court judgment." *Donovan v. Fowle*, 762 F. Supp. 2d 186, 197 (D. Me. 2011).

Nor does MFRA ask me to review and reject that state court judgment. In fact, as Howe points out in her motion for summary judgment, MFRA chose not to make the Court aware of the earlier litigation at all. It was Howe who brought it to my attention through her filings. "If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Miller v. Nichols*, 592 F. Supp. 2d 191, 196 (D. Me. 2009), *aff'd,* 586 F.3d 53 (1st Cir. 2009) (quoting *Exxon Mobil,* 544 U.S. at 293); *see also Galibois*, 174 F. App'x at 581 ("That [a party's] federal claim alleged injuries similar to those that [it] raised or could have raised in [its] state claim, while arguably relevant to preclusion analysis, does not bring *Rooker-Feldman* into play."). Because that is the case here, I conclude that the *Rooker-Feldman*

doctrine does not deprive this Court of jurisdiction and proceed to consider whether MFRA's claims are nevertheless precluded.

## II.    Howe's Second Affirmative Defense – Claim Preclusion

Howe argues that MFRA's claims against Howe in this action could have been raised in the Prior Action but were not, and that MFRA is now forum shopping its split claims here, which is not allowed under the doctrine of claim preclusion. Howe contends that res judicata precludes MFRA's claims because MFRA lost in the Prior Action between the parties when the state court entered judgment for Howe and dismissed the Prior Action with prejudice in an adjudication on the merits.

Maine law determines the preclusive effect of the Prior Action's judgment of dismissal with prejudice because "a judgment rendered in a state court is entitled to the same preclusive effect in federal court as it would be given within the state in which it was rendered." *Giragosian v. Ryan*, 547 F.3d 59, 63 (1st Cir. 2008). "[T]he party asserting the affirmative defense of res judicata[ ] bears the burden of proving its applicability." *Ring v. Leighton*, 2019 ME 8, ¶ 8, 200 A.3d 259.

Res judicata refers to a "court-made collection of rules designed to ensure that the same matter will not be litigated more than once." *Ne. Harbor Golf Club, Inc. v. Town of Mount Desert*, 618 A.2d 225, 227 (Me. 1992) (quoting *Beegan v. Schmidt,* 451 A.2d 642, 643–44 (Me. 1982)). Under the doctrine of res judicata, "parties cannot again come forward in the same legal mission against the same parties to secure a remedy previously denied." *Portland Water Dist. v. Town of Standish*, 2008 ME 23, ¶ 7, 940 A.2d 1097 (quoting *Harriman v. Border Trust Co.,* 2004 ME 28, ¶ 5, 842 A.2d 1266). The doctrine consists of two components: claim preclusion and issue

preclusion, which is sometimes called collateral estoppel. *Id.* ¶ 7. Howe raises both claim preclusion and collateral estoppel in her affirmative defense, but she argues only claim preclusion in her summary judgment motion so I train my focus there.

"Claim preclusion prevents relitigation if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been litigated in the first action." *Id.* ¶ 8 (quoting *Macomber v. MacQuinn-Tweedie*, 2003 ME 121, ¶ 22, 834 A.2d 131). The parties do not dispute that a valid final judgment was entered in the Prior Action so I need only analyze the first and third elements of claim preclusion.

## A.    Whether the Same Parties or Their Privies Are Involved

Howe maintains that she was a party to the Prior Action because she actively participated in that litigation, while MFRA argues that the parties are not identical for claim preclusion purposes. Maine law instructs to "look beyond the nominal parties of record to the real parties in interest" in order to determine who are "the 'parties' who will be bound by a prior judgment." *Ne. Harbor Golf Club*, 618 A.2d at 227 (quoting *Arsenault v. Carrier*, 390 A.2d 1048, 1050 (Me. 1978)). "A party 'includes all persons who, though not nominally parties,' " are " 'directly interested in the subject-matter, have a right to make a defense, or to control the proceedings, and to appeal from the judgment of the court, which right also includes the right to adduce testimony and cross-examine witnesses offered by the other side.' " *Id.* (quoting *Huard v. Pion,* 149 Me. 67, 69, 98 A.2d 261, 262 (1953)).

14

Here, I find that the same-party-or-privy element is met. MFRA was substituted for MTGLQ Investors, L.P. as the plaintiff in the Prior Action when MFRA acquired the Note. SMF ¶¶ 4–5; Joint Ex. 9 (ECF No. 63-9). MFRA admits that "Melanie Howe and Henry Howe were parties to the Prior Action." SMF ¶ 5. MFRA argues, however, that Howe was named only as a party-in-interest in the Prior Action. But MFRA cites no Maine case holding that a party-in-interest does not qualify as a party for preclusion purposes, and the case that it cites in support of its argument that the parties in both cases must be identical applied federal law, which differs from Maine law in that it requires "sufficient identicality between the parties in the two actions." *See Est. of Treworgy v. Comm'r, Dep't of Health & Hum. Servs.*, 2017 ME 179, ¶ 11, 169 A.3d 416.

The fact that MFRA's predecessor in the Prior Action named Howe as a party-in-interest is telling.[6] Howe is one of the two parties who took out the Loan evidenced by the Note at issue in the Prior Action, in addition to being the mortgagor living in the property securing the Note. So she had a direct interest in the subject matter of the Prior Action and she would have been bound by the judgment in the Prior Action in that—had MFRA prevailed and the state court ordered that MFRA owned the Mortgage because it held the Note—she would have been subject to enforcement of the Mortgage, likely in the form of foreclosure, by MFRA. Further, the state court

---

[6]    Under Maine's foreclosure statute, a lender seeking to foreclose must include "all parties in interest" in the civil action. 14 M.R.S. § 6321. Parties in interest are defined to include any "mortgagors, holders of fee interest, mortgagees, lessees . . ., lienors and attaching creditors" who are reflected in the registry of deeds "affecting the mortgaged premises." *Id.* As the Prior Action appears to have been a precursor suit to establish standing to bring a foreclosure action, I am mindful of that definition in conducting my party analysis.

allowed Howe to mount a defense in the Prior Action and she actively did so. Accordingly, I find that the same parties are involved in both litigations for claim preclusion purposes.

### B. Whether the Matters Presented Here Could Have Been Litigated in the Prior Action

Howe maintains that the claims presented in this action could have been litigated in the Prior Action. "Judicial economy, fairness to litigants, and the strong public interest favoring finality in judicial proceedings demand that a plaintiff present all relevant aspects of his cause of action in a single lawsuit." *Camps Newfound/Owatonna Corp. v. Town of Harrison*, 1998 ME 20, ¶ 12, 705 A.2d 1109 (quoting *Kradoska v. Kipp,* 397 A.2d 562, 567 (Me. 1979)). Therefore, "[a] plaintiff may not split a cause of action" and pursue it " 'in a piecemeal fashion by asserting in a subsequent lawsuit other grounds of recovery for the same claim' that the litigant had a reasonable opportunity to argue in the prior action." *Id.* (quoting *Kradoska,* 397 A.2d at 567, 569).

Under Maine law, " '[t]o determine whether the matters presented for decision in the instant action were or might have been litigated in the prior action,' " I must " 'examine whether the same cause of action was before the court in the prior case.' " *Wilmington Tr. Co. v. Sullivan-Thorne*, 2013 ME 94, ¶ 8, 81 A.3d 371 (quoting *In re Kaleb D.*, 2001 ME 55, ¶ 8, 769 A.2d 179). To define a cause of action, Maine courts apply a "transactional test" which involves "examining the aggregate of connected operative facts that can be handled together conveniently for purposes of trial to determine if they were founded upon the same transaction, arose out of the same

16

nucleus of operative facts, and sought redress for essentially the same basic wrong." *Portland Water Dist.*, 2008 ME 23, ¶ 8, 940 A.2d 1097 (quoting *Norton v. Town of Long Island,* 2005 ME 109, ¶ 18, 883 A.2d 889); *see also Wilmington Tr.*, 2013 ME 94, ¶ 8, 81 A.3d 371 ("[W]hat factual grouping constitutes a transaction is to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.") (internal citation and quotations omitted). A later claim "is precluded even if the second action 'relies on a legal theory not advanced in the first case, seeks different relief than that sought in the first case, or involves evidence different from the evidence relevant to the first case.' " *Portland Water Dist.*, 2008 ME 23, ¶ 8, 940 A.2d 1097 (quoting *Norton,* 2005 ME 109, ¶ 18, 883 A.2d 889).

There is, however, an additional gloss to cases involving declaratory relief. If the first action ended in a declaratory judgment, "the preclusive effect" of the judgment "is limited to the matters actually declared." *Sebra v. Wentworth*, 2010 ME 21, ¶ 10, 990 A.2d 538. "For matters not declared, a litigant who sought solely declaratory relief in the prior action may pursue other legal relief without claim preclusion operating as a bar." *Id.* (internal citation and quotations omitted); *see also* Restatement (Second) of Judgments § 33 cmt. c (1982) ("A plaintiff who has lost a declaratory judgment action may . . . bring a subsequent action for other relief, subject to the constraint of the determinations made in the declaratory action."). But if a litigant sought both declaratory and injunctive "or other coercive relief" in the

prior action, then "traditional claim preclusion principles" apply. *Sebra*, 2010 ME 21, ¶ 10, 990 A.2d 538.

In this case, Howe argues that the Prior Action and this action are part of the same legal effort toward the same end (foreclosure) and that there was nothing stopping MFRA from pleading the claims it brings in this action as alternative claims to foreclosure in the Prior Action. Howe points out that MFRA admitted the preclusive effect of the Prior Action when it filed its motion in state court requesting that the court clarify that its dismissal with prejudice "only precludes a future action . . . for the claims advanced in [the Prior Action]." Joint Ex. 14. According to Howe, MFRA is engaging in impermissible claim-splitting. For its part, MFRA argues that the sole issue in the Prior Action was its standing to enforce the Mortgage, while here the issue is Howe's default under the Note. So MFRA maintains that the claims here are not identical because the Prior Action did not represent an action to enforce the Note or Mortgage against Howe.

While this question is a close one, I conclude that MFRA has the better argument. The complaint in the Prior Action is not a model of clarity, but it was effectively seeking declaratory relief as to the ownership of the Note and Mortgage. Although the complaint included a request for an "in rem permanent injunction concerning the ownership of the subject property mortgage," Joint Ex. 5 at 6, such an "injunction" would, in practical effect, only amount to the declaration that MFRA was seeking—that MFRA owned the Mortgage, not Challenge.[7] Accordingly, I apply the

---

[7]    To better understand the limits of what was at issue in the Prior Action, I considered what matters would have been "actually declared" had MFRA won in state court. A victory for MFRA would

declaratory judgment res judicata rules. *See Sebra*, 2010 ME 21, ¶ 10, 990 A.2d 538. Although res judicata would bar MFRA from re-requesting a declaration that it owned the Mortgage based on the assignment from Challenge's nominee, MFRA "may pursue other legal relief without claim preclusion operating as a bar." *Id.* Therefore, Howe is not entitled to summary judgment on MFRA's claims against her.

## III.    Howe's Counterclaims Against MFRA and Fay

Howe asserted two counterclaims against Fay and seeks summary judgment on both of them. Her first counterclaim alleges that MFRA and Fay engaged in debt collection practices that violate the Fair Debt Collection Practices Act. The second counterclaim against just Fay alleges that Fay's conduct also violated 14 M.R.S. § 6113, a Maine statute titled "Mortgage servicer duty of good faith."

### A.    Fair Debt Collection Practices Act

The Fair Debt Collection Practices Act ("**FDCPA**"), 15 U.S.C. §§ 1692–1692p, "is a landmark piece of consumer credit legislation designed to eliminate abusive, deceptive, and other unfair debt collection practices." *Arruda v. Sears, Roebuck & Co.*, 310 F.3d 13, 22 (1st Cir. 2002) (citing 15 U.S.C. § 1692). The FDCPA statutory scheme "is detailed and prohibits many activities" but "[t[he basic premise . . . is that its prophylaxis applies in connection with the collection of debts." *Id.* at 22–23. "In order

---

have meant a declaration that MFRA owned the Mortgage because Challenge intended for its nominee (Mortgage Electronic Registration Systems, Inc.) to assign Challenge's interest in the Mortgage to MFRA's predecessor. If MFRA had won in the Prior Action, the state court would have effectively confirmed and validated that assignment, and the preclusive effect of such a declaratory judgment would have been that Challenge could not later claim that it owned the Mortgage. The requested declaration was limited to the relationship between Challenge and MFRA. Howe's rights and obligations under the Mortgage, and her relationship to the lenders, were not at issue.

to prevail on a FDCPA claim, a plaintiff must prove that (1) [s]he was the object of collection activity arising from consumer debt, (2) the defendant is a debt collector within the meaning of the statute, and (3) the defendant engaged in a prohibited act or omission under the FDCPA." *Poulin v. The Thomas Agency*, 760 F. Supp. 2d 151, 158 (D. Me. 2011) (quoting *Krasnor v. Spaulding Law Office,* 675 F. Supp. 2d 208, 211 (D. Mass. 2009)).

Howe alleges that MFRA and Fay violated two provisions of the FDCPA: Section 1692e, which prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt"; and Section 1692f, which prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. §§ 1692e, 1692f. MFRA and Fay (together "**Counterclaim-Defendants**") challenge Howe's assertion that they are debt collectors under the FDCPA and maintain that Howe's FDCPA claim is time-barred.

### 1.    FDCPA's Definition of Debt Collector

The Counterclaim-Defendants argue that the evidence in the summary judgment record is insufficient to establish that MFRA and Fay are debt collectors under the FDCPA. The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Excluded from the "debt collector" definition is anyone trying to collect a debt that "was not in default at the time it was obtained by such

person." 15 U.S.C. § 1692a(6)(F). By contrast, "loan servicers who take on loans only after they are in default *may* fall under the definition of debt collector." *Beaulieu v. Bank of Am., N.A.*, No. 1:14-cv-00023-GZS, 2014 WL 4843809, at *12 (D. Me. Sept. 29, 2014) (emphasis added).

"Creditors collecting on their own accounts are generally excluded from the statute's reach." *Chiang v. Verizon New Eng., Inc.*, 595 F.3d 26, 41 (1st Cir. 2010) (citing 15 U.S.C. § 1692a(6)(F)(ii)). But the law is not yet settled as to whether a debt purchaser may be a debt collector under the FDCPA. The Supreme Court has instructed that a debt buyer may "collect debts for its own account without triggering the statutory definition" of one who "regularly collects" debts owed to another. *Henson v. Santander Consumer USA, Inc.*, 582 U.S. 79, 83 (2017). But the *Henson* Court focused on the "regularly collects" half of the definition, not the "alternative definition" of a debt collector as someone engaged "in any business the principal purpose of which is the collection of any debts." *Id.* at 82; *see Barbato v. Greystone All., LLC*, 916 F.3d 260, 266 (3d Cir. 2019) (noting that "the Supreme Court went out of its way in *Henson* to say that it was not opining on whether debt buyers could also qualify as debt collectors under th[e] ['principal purpose'] prong of § 1692a(6)"). Therefore, if the principal purpose of MFRA's business is collecting any debts, it could meet that prong of the statutory debt collector definition.

Here, the Counterclaim-Defendants admit that they have attempted to collect on the Loan, which has been in default since 2014, and that MFRA acquired the Loan during the Prior Action in 2017. *See* Counter Def.'s Resp. to Counter Pl.'s Answer &

Affirmative Defenses, Countercls., & Demand for Jury Trial ¶¶ 1, 24 (ECF No. 30); SMF ¶ 15. And by virtue of the current lawsuit, MFRA is obviously seeking to collect on the defaulted Loan. But that does not mean that MFRA is a debt collector under the FDCPA as a matter of law. The parties dispute whether MFRA "is in the business of buying defaulted mortgage debts," SMF ¶ 15, and I cannot say on the record before me that "the principal purpose" of MFRA's business is collecting debts.[8] Viewed in the light most favorable to the Counterclaim-Defendants, there is a genuine issue of material fact as to whether MFRA falls within the FDCPA's definition of a debt collector.

Fay, on the other hand, undisputably does. The evidence in the summary judgment record establishes that Fay is a mortgage servicer that collects on behalf of others. SMF ¶ 10; Joint Ex. 24 at 12:9–12:22 (ECF 63-24). It also shows that, at the time Fay began servicing the Howe Loan in 2017, the Loan was in default. SMF ¶ 10; Joint Ex. 24 at 13:3–13:10. The Counterclaim-Defendants have not put forth any record citations that would put these facts in dispute. Applying these undisputed

---

[8]    "The plaintiff in an FDCPA action bears the burden of proving the defendant's debt collector status." *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 60 (2d Cir. 2004). Here, the record support Howe provides for its assertion that MFRA is in the business of buying defaulted mortgage debts is a bit murky. Howe points to the Rule 30(b)(6) deposition of Fay Servicing, LLC, in which Fay's corporate designee was asked if Fay knew what "the business of MFRA Trust is" and he responded that he "would imagine so" but that he personally did not know. Joint Ex. 24 at 56:10–54:13 (ECF No. 63-24). The corporate designee was then asked if he knew "of any facts that— to suggest that MFRA Trust is not in the business of buying defaulted mortgage debts" and he answered: "I do not know." Joint Ex. 24 at 56:21–54:24. The same witness was later put forward as the corporate designee to sit for the Rule 30(b)(6) deposition of MFRA. When asked if his answers as the MFRA corporate designee would be the same as they were when he had his "Fay Servicing corporate designee hat" on, he said yes. Joint Ex. 25 at 7:1–7:5 (ECF No. 63-25). But it does not appear that MFRA (through its Rule 30(b)(6) designee) was ever asked to identify the principal purpose of its business or even asked to confirm that MFRA's principal purpose is to collect debts, so I cannot draw that conclusion here.

facts to the definition of a debt collector under the FDCPA, I conclude that Fay is a debt collector. *See Weiner v. Rushmore Loan Mgmt. Servs., LLC*, 424 F. Supp. 3d 163, 167 (D. Mass. 2019) (holding that a business specializing in mortgage servicing "undoubtedly" meets the criteria of "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another").

### 2.    FDCPA's Statute of Limitations

The Counterclaim-Defendants also argue that Howe's FDCPA claim is barred by the FDCPA's one-year statute of limitations. Any suit for an FDCPA violation must be brought within one year of the date that the violation occurred. 15 U.S.C. § 1692k(d). "[A] cause of action under the FDCPA does not arise until the illegal debt collection activity occurs and the statute of limitations does not begin to run until that time." *Poulin*, 760 F. Supp. 2d at 157 (quoting *Bond v. U.S. Bank Nat'l Ass'n*, No. 09–14541, 2010 WL 1265852, at *3 (E.D. Mich. March 29, 2010)).

Howe's Counterclaims were filed on December 6, 2021. Howe alleges that in the twelve months prior to the filing of her Counterclaims, MFRA and Fay used false, deceptive, or misleading representations or means and acted unfairly or with unconscionable means in connection with the collection of the Loan, including threatening foreclosure when "they have no enforceable rights" in the Mortgage and filing this breach-of-Note action. Countercls. ¶¶ 55–59. The Counterclaim-Defendants argue that the FDCPA counterclaim is untimely because the FDCPA one-year statute of limitations began to run either in 2017 (when Howe alleges that the

Counterclaim-Defendants violated the FDCPA by sending mortgage statements asserting that they had a right to foreclose the Mortgage to collect on the Loan even though they did not own the Mortgage then) or in 2019 (when Howe alleges that they made phone calls asserting the same).

The record contains the following documents from the twelve-month period before Howe filed her Counterclaims:

- Letters from Fay to the Howes dated March 29, 2021 and April 1, 2021, informing them of options available "[a]s an alternative to foreclosure" if they "are having difficulty making [their] mortgage payments." Joint Ex. 34.

- A letter from Fay to the Howes dated September 21, 2021, stating: "We are sending this notice to you because you are behind on your mortgage payment. We want to notify you of possible ways to avoid losing your home. We have a right to invoke foreclosure based on the terms of your mortgage contract." Joint Ex. 34.[9]

- Monthly mortgage statements dated December 10, 2020, January 11, 2021, February 10, 2021, March 10, 2021, April 10, 2021, May 10, 2021, June 10, 2021, July 10, 2021, August 10, 2021, and September 11, 2021 that include a Delinquency Notice" stating: "You are late on your monthly payments. Failure to bring the account current may result in additional fees or expenses, and in

---

[9]    Letters with identical language also were apparently sent from Fay to the Howes on February 10, 2022, August 1, 2022, and January 25, 2023, after she had filed her Counterclaims but before MFRA received the February 21, 2023 quitclaim assignment of the Mortgage from the action it filed in Florida. Joint Ex. 34 (ECF No. 63-34).

certain instances, you may risk foreclosure - the loss of your home." Joint Ex. 35.[10]

The Counterclaim-Defendants do not dispute that these documents would qualify as communications under the FDCPA. *See* 15 U.S.C. § 1692a ("The term 'communication' means the conveying of information regarding a debt directly or indirectly to any person through any medium."). But they maintain that, because the allegedly prohibited communications *began* in 2017 or 2019, the above communications (which otherwise would comply with the one-year statute of limitations) are also time-barred. In support of this argument—which is essentially an assertion that for statute-of-limitations purposes, a continuing violation of the FDCPA is computed from the date the activity first occurs—the Counterclaim-Defendants cite *O'Brien v. Deutsche Bank National Trust Company*, 948 F.3d 31 (1st Cir. 2020).

In *O'Brien*, the First Circuit affirmed a district court's decision that dismissed a mortgagor's claims against the holder and servicer of her mortgage because they were time-barred. 948 F.3d. at 32. But the statutes at issue in *O'Brien* were the Massachusetts Consumer Protection Act ("**Chapter 93A**") and the Massachusetts Fair Debt Collection Practices Act. *Id.* at 32. There was no alleged FDCPA violation,

---

[10]    The "Delinquency Notice" in the monthly mortgage statements dated October 11, 2021 and later is a bit longer:

> You are late on your monthly payments. As a result, the balance of your loan has been accelerated (i.e., we have made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process). Failure to bring the account current may result in additional fees or expenses, and in certain instances, you may risk the loss of your home to a foreclosure sale.

Joint Ex. 35 (ECF No. 63-35).

so the First Circuit did not consider in *O'Brien* how the FDCPA's statute of limitations applied. And the language of the FDCPA differs from that of Chapter 93A. *See id.* at 35 ("The limitations period for claims brought under Chapter 93A is four years from the date the cause of action accrues.") (citing Mass. Gen. Laws ch. 260, § 5A). So *O'Brien* is of limited use here.

Under the FDCPA, claims must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). That language "unambiguously" means that "[t]he FDCPA limitations period begins to run on the date the alleged FDCPA violation actually happened." *Rotkiske v. Klemm*, 589 U.S. 8, 13 (2019). It does not appear that the First Circuit has addressed whether a violation of the FDCPA occurs every time a prohibited communication is allegedly made or whether similar, continuing violations should instead be grouped together and treated as a single violation for purposes of the FDCPA's statute of limitations. The Fourth, Seventh, Eighth, and Tenth Circuits have all concluded that "the FDCPA's limitations period runs anew from the date of each violation." *See Bender v. Elmore & Throop, P.C.*, 963 F.3d 403, 407–08 (4th Cir. 2020) (concluding that "Section 1692k(d) establishes a separate one-year limitations period for each violation of the FDCPA" and vacating the district court's dismissal of the complaint as time-barred where at least two potential FDCPA violations were not barred by the one-year limitations period); *Gomez v. Cavalry Portfolio Servs., LLC*, 962 F.3d 963, 966 (7th Cir. 2020) (holding that FDCPA suit was "timely with respect to the third letter" sent to the plaintiff even though the debt collector had sent two earlier demand letters

26

because "[e]ach violation of a federal statute carries its own period of limitations" and "[t]he third letter was not an inevitable consequence of the first two"); *Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 694 (8th Cir. 2017) ("It does not matter that the debt collector's violation restates earlier assertions—if the plaintiff sues within one year of the violation, it is not barred by § 1692k(d)."); *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1188 (10th Cir. 2013) (evaluating each of the alleged violations individually to determine whether any portion of the plaintiff's claim was not barred by the statute of limitations); *see also Purnell v. Arrow Fin. Servs., LLC*, 303 F. App'x 297, 303 (6th Cir. 2008) (explaining that the fact the defendants sent a collection notice "outside the limitations period does not render [the p]laintiff's FDCPA claim time-barred, where, as here, [the p]laintiff has alleged a discrete violation within the limitations period" and holding that to the extent the plaintiff could prove that discrete FDCPA violations occurred within the limitations period, they were not time-barred) (internal citation and quotations omitted); *Miller v. Carrington Mortg. Servs., LLC*, 607 B.R. 1, 12–13 (D. Me. 2019) (holding that where FDCPA complaint was filed in early January 2019, "[a]ny calls that occurred before early January 2018 are untimely"). As the Fourth Circuit explained:

> This interpretation avoids creating a safe harbor for unlawful debt collection activity. Under the district court's approach, so long as a debtor does not initiate suit within one year of the first violation, a debt collector would be permitted to violate the FDCPA with regard to that debt indefinitely and with impunity. No matter how frequent or abusive such collection efforts might become, the debtor would be left entirely without a remedy simply because the debtor did not timely pursue the first violation. As the statutory text makes clear, Congress did not intend such a result.

*Bender*, 963 F.3d at 407.

Accordingly, Howe's claims based on alleged FDCPA violations that occurred on or after December 10, 2020 are timely.

### 3. Suitability of Summary Judgment

Having determined that at least Fay qualifies as a debt collector under the FDCPA and that Howe's claims relating to Fay's alleged violations in December 2020 and in 2021 are not time-barred, I turn to whether Howe has demonstrated that she is entitled to judgment as a matter of law on the FDCPA claims against Fay.

In addition to establishing that Fay is a debt collector, Howe must prove that she was the target of collection activity based on consumer debt and that Fay engaged in an act prohibited under the FDCPA. *See Poulin*, 760 F. Supp. 2d at 158. The Counterclaim-Defendants do not dispute that Howe was the object of collection activity based on the Note and Mortgage that she signed when she bought her house. So the first element is met. As to whether Fay engaged in FDCPA-prohibited acts, Howe maintains that MFRA and Fay had no right to commence this collection action following their loss in the Prior Action and that Fay's communications to Howe about its right to foreclose were false, deceptive, and misleading. Def. and Counter-Pl. Melanie Howe's Mot. for Summ. J. at 14–15 (ECF No. 64).

The FDCPA prohibits "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692e provides a non-exhaustive list comprising sixteen examples of false, deceptive, or misleading conduct that would violate the statute, including:

> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken . . . [and]

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e.

"[F]or FDCPA purposes, a collection letter is to be viewed from the perspective of the hypothetical unsophisticated consumer." *Pollard v. Law Off. of Mandy L. Spaulding*, 766 F.3d 98, 103 (1st Cir. 2014). Fay's September 2021 letter to Howe contains language—"We have a right to invoke foreclosure based on the terms of your mortgage contract" and "We want to notify you of possible ways to avoid losing your home"—that is objectively false given the outcome of the Prior Action and the fact that MFRA lacked a valid assignment proving that it owned the Mortgage. At that time, MFRA had no right to foreclose so Fay's statements to the contrary were deceptive and false. Joint Ex. 34. Further, the Delinquency Notice portion of the monthly mortgage statements sent to Howe informed her that Fay had "made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process." Joint Ex. 35. And the Delinquency Notice warned Howe that if she failed to bring her Loan current, "in certain instances, [she] may risk the loss of [her] home to a foreclosure sale." Joint Ex. 35. Again, this language is misleading because, at the time Fay was sending these communications, MFRA lacked standing to enforce the Mortgage so it could not legally succeed in any judicial foreclosure process and there was no risk that Howe would lose her home to a foreclosure sale.

"[T]he FDCPA is a strict liability statute" so "debt collectors are liable if they perform any intentional act that results in a violation, regardless of fault." *Shapiro v. Haenn*, 222 F. Supp. 2d 29, 43 n.8 (D. Me. 2002) (citing *Picht v. Jon R. Hawks, Ltd.*,

236 F.3d 446, 451 (8th Cir. 2001)). "In order to escape liability, a debt collector must establish a *lack* of fault as an affirmative defense." *Id.* Fay has not done that. Accordingly, summary judgment in Howe's favor on her FDCPA claim against Fay is appropriate.[11] Because questions remain, however, as to whether MFRA is a debt collector subject to the FDCPA's prohibitions and what actual damages Howe has sustained as a result of any FDCPA violations, I defer entering judgment for Howe on Count I of her Counterclaims until after trial.[12]

---

[11]     Howe also alleged that the Counterclaim-Defendants violated Section 1692f of the FDCPA, which is a catchall provision prohibiting debt collectors from "us[ing] unfair or unconscionable means" in trying to collect a debt. 15 U.S.C. § 1692f. "The FDCPA does not define 'unfair or unconscionable means,' but it does provide examples of conduct that could violate the provision." *Bowen v. Ditech Fin. LLC*, No. 2:16-cv-00195-JAW, 2017 WL 4183081, at *24 (D. Me. Sept. 20, 2017). "For example, it is a violation . . . to take or threaten to take any non-judicial action to effect dispossession . . . of property if there is no present right to possession." *Id.* (citing 15 U.S.C. § 1692f(6)). Howe points to this federal action and the action that MFRA initiated in Florida to obtain the Mortgage assignment from Challenge to argue that the Counterclaim-Defendants' forum shopping "is per se 'unfair or unconscionable means' of debt collection." Def. and Counter-Pl. Melanie Howe's Mot. for Summ. J. at 18 (ECF No. 64). Howe does not provide any case law to support this argument, however, and I cannot say that the Counterclaim-Defendants' court-based activities here and in Florida would fit under Section 1692f(6) because that only expressly makes it a violation to take any *nonjudicial* action to collect a debt. For those reasons, Howe has not shown that she is entitled to judgment as a matter of law under this section of the FDCPA. That said, at trial, she may still convince the jury that these actions were unfair or unconscionable means of collecting debt.

[12]     The Counterclaim-Defendants argue that summary judgment is inappropriate on Howe's FDCPA counterclaim because the record lacks proof that she "suffered a concrete and particularized injury, which is necessary to establish standing for her claim." Pl.'s Opp'n to Def. and Counter-Pl. Melanie Howe's Mot. for Partial Summ. J. at 18 (ECF No. 68) (citing *Spokeo v. Robins*, 578 U.S. 330, 341 (2016)). I disagree. The Section 1692e statutory violation that Howe has established "presents a risk of harm to [Howe]'s concrete interest established by the FDCPA to be free of 'any false, deceptive, or misleading representation or means in connection with the collection of any debt.' " *Girdler v. Convergent Outsourcing, Inc.*, No. 15-cv-13359-DJC, 2016 WL 7479541, at *3 (D. Mass. Dec. 29, 2016) (quoting 15 U.S.C. § 1692e). "[T]his injury is one that Congress has elevated to the status of a legally cognizable injury through the FDCPA." *Id.* (quoting *Church v. Accretive Health, Inc.*, 654 Fed. Appx. 990, 994 (11th Cir. 2016) (unpublished)). Accordingly, Howe has established Article III standing for her Section 1692e claim.

### B.    Maine's Mortgage Servicer Good Faith Statute

Finally, Howe moves for summary judgment on her counterclaim against Fay under 14 M.R.S. § 6113, Maine's statute titled "mortgage servicer duty of good faith." A mortgage servicer is "a person responsible for servicing an obligation, including a person that holds or owns an obligation . . . if the person also services the obligation." 14 M.R.S. § 6113(1)(B-1). The Counterclaim-Defendants do not dispute that Section 6113 applies to Fay.

As the title suggests, Section 6113 imposes a duty of good faith on mortgage servicers. Specifically, it provides that "[a] mortgage servicer shall act in good faith toward an obligor in the servicing of an obligation secured by a mortgage and in any foreclosure action relating to such an obligation." 14 M.R.S. § 6113(2). The statute defines "good faith" as "honesty in fact and the observance of reasonable commercial standards of fair dealing." 14 M.R.S. § 6113(1)(A). If a mortgage servicer violates its duty of good faith, the injured homeowner or obligor "may bring an action against the mortgage servicer for all actual damages sustained." 14 M.R.S. § 6113(4)(A).

Here, I agree with the Counterclaim-Defendants that Howe is not entitled to summary judgment on her Section 6113 claim. Usually, "the issue of good faith presents questions of fact which are peculiarly within the jury's province." *Downs v. Sawtelle*, 574 F.2d 1, 13 (1st Cir. 1978) (internal citation and quotations omitted); *see also C-B Kenworth, Inc. v. Gen. Motors Corp.*, 706 F. Supp. 952, 957 (D. Me. 1988) (finding that "determination of the statutory sufficiency of [a] notice given [under the Maine Motor Vehicle Dealer's Act], which requires the application of this statutory provision to the given facts, is, like the determination of 'good faith' . . . , a factual

31

issue for the jury to decide"); *Woods v. Bath Indus. Sales, Inc.*, 549 A.2d 1129, 1132 (Me. 1988) ("Good faith is a question of fact."). Even if the absence of good faith under Section 6113 could be decided on a summary judgment record, Howe has not met her burden here of demonstrating that Fay violated its duty of good faith in servicing the Loan. Accordingly, I deny Howe's request for summary judgment on Count II of her Counterclaims.

## CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Howe's motion for summary judgment (ECF No. 64). Specifically, Howe's motion for summary judgment on her affirmative defenses that MFRA's claims are barred by the *Rooker-Feldman* doctrine and res judicata are **DENIED**. On Count I of Howe's Counterclaims, the FDCPA claim, Howe's motion for summary judgment is **GRANTED** against Fay Servicing LLC and **DENIED** against MFRA. On Count II of her Counterclaims, the Maine mortgagor servicer good faith claim, Howe's motion for summary judgment is **DENIED**.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 18th day of December, 2024.