UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1<br>　　Plaintiff,<br><br>v.<br><br>Henry W. Howe and Melanie B. Howe,<br>　　Defendants,<br><br>and<br><br>Asset Acceptance, LLC, Credit Acceptance Corporation,<br>　　Parties-in-Interest<br><br>and<br><br>Melanie B. Howe,<br>　　Plaintiff-in-Counterclaim<br><br>v.<br><br>Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1, and Fay Servicing, LLC,<br>　　Defendants-in-Counterclaim. | Civil Action No.:<br>2:21-CV-00278-NT<br><br>Re:<br>334 Deerwander Road,<br>Hollis Center, ME 04042<br><br>Mortgage:<br>April 20, 2007<br>Book 15139, Page 0540 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION OF THIS COURT'S ORDER, [ECF 88], GRANTING SUMMARY JUDGMENT AGAINST FAY SERVICING LLC ON THE COUNTERCLAIM ALLEGING VIOLATIONS OF THE FDCPA**

Pursuant to Fed. R. Civ. P. 59(e) and 60(b), and Local Rule 7(f), Plaintiff in this matter, Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1 (hereinafter "Plaintiff" or "Wilmington"), and Defendant-in-Counterclaim, Fay Servicing LLC ("Fay"), by and through their attorneys, hereby submit this Memorandum of Law in support of their Motion for Reconsideration of the portion of this Court's Order granting Summary Judgment in favor of the Defendant, Melanie B. Howe ("Defendant" or "Howe") on her Counterclaim for violations of the Fair Debt Collection Practices Act ("FDCPA"), against Fay which is based on a determination that representations relating to the Plaintiff's foreclosure rights and the Defendant's risk of foreclosure as set forth in certain correspondence from Fay were improper as the Plaintiff had not yet recorded a Quitclaim Assignment of Mortgage ("QCAOM")

1

when the communications were sent and, as a result, did not have standing to foreclose.

## I.   INTRODUCTION

Howe's Counterclaim in this matter focuses on the initial failed attempt to confirm ownership of the Mortgage by the Plaintiff's predecessor-in-interest through a Declaratory Judgment action in Maine, which the Defendant argued should preclude the Plaintiff and/or Fay from sending any correspondence that mentions the enforcement of the Mortgage through foreclosure. Granting Summary Judgment for Howe on this point, this Court rejected Howe's theory that the Plaintiff's claims were barred by *res judicata*, but nonetheless held that communications that pre-dated the execution of the QCAOM violated the FDCPA. Reconsideration of this order is sought because although obtaining a QCAOM from the originator of a mortgage loan has become well-recognized as the primary path to establish standing to *file* a foreclosure action, as illustrated in the Law Court's decision in *U.S. Bank, N.A. v. Gordon*,[1] a QCAOM is *not* the only way to establish standing to enforce a mortgage. Another way to establish the ownership and right to enforce a mortgage is through a written instrument agreeing to modify the terms of a mortgage loan that includes an acknowledgment by the borrower of the right to enforce the mortgage by an entity who purchased the loan after origination.[2] This is because the owner of the mortgage loan would be the only entity that would have the authority to modify the terms of that contract for the borrower's benefit. Here, the summary judgment record reflects that the subject mortgage loan was modified on three separate occasions. In executing each Loan Modification Agreement, the Defendants themselves acknowledged that the mortgage is enforceable by the Lenders identified therein, which as agreed by all parties in the contract, were the successors-in-interest to the originating lender. Each of the three Loan Modification Agreements, and the subsequent notices informing the Defendants of the sale of the loan and the transfer of the rights to service the same, are included in the agreed summary judgment record. These documents are sufficient to demonstrate Fay's "lack of fault" as they show that Fay sent the

---

[1] 2020 ME 33, ¶¶ 10-11, 227 A.3d 577.
[2] *See Wells Fargo Bank, N.A. v. Burek* 2013 ME 87, ¶ 21, 81 A.3d 330.

mortgage statements and loss mitigation correspondence offering the Defendants possible solutions to avoid foreclosure in good faith. Combined with the acknowledgment that Fay is servicing the Howe Mortgage Loan for the owner of the loan, is the holder of the original Howe Note and the entity who advanced taxes, insurance and other sums to preserve the property and protect it from municipal foreclosure, Fay clearly had a good faith basis to send the correspondence at issue. For this reason, the Plaintiff and Fay respectfully request that this Court reconsider its Order granting Summary Judgment on the Defendant's FDCPA counterclaim.

## II.   LEGAL STANDARD

Fed. R. Civ. P. 59(e) allows a party to bring a motion for reconsideration of a final judgment.[3] Although Rule 59(e) does not describe the requirements for obtaining reconsideration of an Order of the Court, the First Circuit has held that a Rule 59(e) motion may be granted based on "a manifest error of law or fact."[4] A Motion brought under Rule 59(e) "contests the correctness of the original decision based on the previous factual record, as opposed to a motion to reopen, which seeks a new hearing based on new or previously unavailable evidence." *Kuffour v. Sessions,* 907 F.3d 112, 114 (2018); *quoting In re O-S-G-*, 24 I. & N. Dec. at 57-58. Similarly, Rule 60(b) allows a party to seek relief from a final judgment for the following reasons:

> (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence . . .; (3) fraud . . ., misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged . . .; or (6) any other reason that justifies relief.

To obtain relief under Rule 60(b), a party must demonstrate "that his motion is timely; that exceptional circumstances exist, favoring extraordinary relief; that if the judgment is set aside, he has the right stuff to mount a potentially meritorious claim or defense; and that no unfair prejudice will accrue to the opposing parties should the motion be granted."[5]

## III.   ARGUMENT AND AUTHORITIES

---

[3] *See United States v. $23,000 in U.S. Currency*, 356 F.3d 157, 165 n. 9 (1st Cir. 2004), citing 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2810.1 (3d ed. 1998).
[4] *DiMarco-Zappa v. Cabanillas*, 238 F.3d 25, 34 (1st Cir. 2001), *quoting Aybar v. Crispin-Reyes*, 118 F.3d 10, 16 (1st Cir. 1997); *see Ruiz-Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 81-82 (1st Cir. 2008).
[5] *Karak v. Bursaw Oil Corp.*, 288 F.3d 15, 19 (1st Cir. 2002).

**A.      The Agreed Summary Judgment Record is Sufficient to Demonstrate Fay's Good Faith Basis for Sending Communications Referencing the Mortgage.**

As acknowledged in this Court's Order, the stipulated summary judgment record includes documentation demonstrating that the Howe Mortgage Loan was modified on three separate occasions following the origination of the loan.[6] In the 2010 Modification, both Defendants acknowledged the transfer of the Mortgage loan from the originating lender to CitiMortgage Inc., ("CitiMortgage"), and CitiMortgage's authority to modify and enforce the terms of the mortgage loan.[7] In the first paragraph of the 2010 Modification, the parties thereto agreed to modify the Howe Mortgage to identify CitiMortgage as the Lender.[8] Further, the 2010 Modification expressly indicates that:

> [t]his Loan Modification Agreement . . ., made July 20, 2010, between MELANIE B HOWE AND HENRY W. HOWE, IV, WIFE AND HUSBAND, ("Borrower") . . . and CitiMortgage, Inc. ("Lender"), . . . and Mortgage Electronic Registration Systems, Inc. . . . ("Mortgagee") amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") . . and (2) the Note bearing the same date as, and secured by, the Security Instrument which covers the . . . "Property", located at 334 DEERWANDER ROAD, HOLLIS CENTER, ME.[9]

The 2010 Modification includes an acknowledgment that the modification of the loan was made "[i]n consideration of the mutual promises and agreements exchanged" between the parties thereto.[10] The 2010 Modification then sets forth the essential terms of the Modified Howe Mortgage Loan including: 1) the modified principal balance of $224,186.62 (bringing the defaulted loan current), 2) a reduction in the original 7.25 % interest rate under the Note rate to a step rate beginning at 2% for the first six years and increasing over time to 4.375% in the eighth year, 3) an expressed agreement that the "Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument," and 4) that the "Borrower understands and agrees that: (a) all the rights and remedies, stipulations, and conditions contained in the

---

[6] *See* Order 2-3, ECF Doc. No. 88 at PageID 1629-30.
[7] *See* First Loan Modification Agreement, ECF Doc. No. 63-3 at PageID 587.
[8] *See id.*
[9] *Id.*
[10] *Id.*

Security Instrument relating to the default in the making of payments under the Security Instrument shall also apply to default in making of the modified payments hereunder."[11]

In 2011, the Defendants once again sought to modify their loan after default.[12] Like the 2010 Modification, in entering into and receiving the benefit of the 2011 Modification, the Defendants acknowledged and agreed that the mortgage loan had been transferred to Nationstar Mortgage, LLC ("Nationstar"), and that Nationstar had the authority to modify and enforce the terms of the mortgage loan.[13] In the first paragraph of the 2011 Modification, the parties thereto agreed to modify the Howe Mortgage to identify Nationstar as the Lender thereunder.[14] Further, the 2011 Modification also includes an acknowledgment that it was made "[i]n consideration of the mutual promises and agreements" exchanged between the parties thereto.[15] The Defendants received the benefit of the 2011 Modification and the additional favorable terms provided thereunder, which brought the loan current through the capitalization of arrears that resulted in a modified principal balance of $223,204.66, and provided the Defendants with an additional year at the reduced 2% interest rate.[16]

In 2014, after defaulting once again, the Defendants returned to Nationstar and again acknowledged and modified the terms of the Howe Mortgage.[17] The loan was modified for a third time on August 12, 2014, providing the Defendants with an additional opportunity to bring the loan into good standing and maintain the same on favorable modified terms.[18] Again, in entering into and receiving the benefit of the 2014 Modification, the Defendants acknowledged Nationstar's standing to modify and enforce the terms of the mortgage loan.[19]. Further, like the two prior Loan Modification Agreements, the 2014 Modification includes an acknowledgment that it was made "[i]n consideration of the mutual promises and agreements" exchanged between the parties

---

[11] *Id.* ¶¶ 1, 2, 4, 5, ECF Doc. No. 63-3 at PageID 588.
[12] *See* Second Loan Modification Agreement, ECF Doc. No. 63-3 at PageID 580.
[13] *See id.* at 1-2, ECF Doc. No. 63-3 at PageID 580-81.
[14] *See id.*
[15] *Id.* at 1, ECF Doc. No. 63-3 at PageID 580.
[16] *See id.* ¶¶ 1, 2, ECF Doc. No. 63-3 at PageID 580-81.
[17] *See* Third Loan Modification Agreement, ECF Doc. No. 63-4 at PageID 592.
[18] *See id.*
[19] *See id.*

thereto.[20] The 2014 Modification provided for a modified principal balance of $237,329.72, however, the agreement also contained the additional favorable term of interest-bearing principal deferment and $23,199.73 of the principal balance was converted to non-interest-bearing principal and collection of that amount was deferred to the end of the loan.[21]

Following the 2014 Modification, the Defendants were sent a notice informing them that the servicing of the Howe Mortgage Loan had been transferred from Nationstar to Selene Finance, LP ("Selene") and then from Selene to Fay.[22] Likewise, after the 2014 Modification, the Defendants were also notified that the Howe Mortgage Loan had been sold to MTGLQ Investors, L.P.,[23] and that the loan had been sold to the Plaintiff.[24]

It is acknowledged that in *Greenleaf*, the Law Court held that a *foreclosing* mortgagee must demonstrate its possession of the note and ownership of the mortgage to establish its standing to *file* an action to foreclose the mortgage by sale, however, the case does not stand for the proposition that requires standing prior to filing, in the collection or loss mitigation efforts of a lender or servicer.[25] Moreover, six years after *Greenleaf*, the Law Court issued its decision in *Gordon* making it clear that a QCAOM from the lender that originated the loan is not the only way to establish standing to foreclose.[26] Standing to foreclose may also be established through evidence demonstrating that the original lender ratified an assignment of the mortgage made by MERS while acting as "nominee" of the original lender.[27]

Like the Ratification Assignment at issue in *Gordon*, which the Law Court acknowledged as valid and sufficient to establish the mortgagee's standing to foreclose,[28] Justice Levy's decision in *Burek* held that a Loan Modification Agreement is also a valid acknowledgment by the borrower

---

[20] *Id.*
[21] *See id.* ¶¶ 1, 2, ECF Doc. No. 63-4 at PageID 593.
[22] *See* Servicing Transfer Notice, ECF Doc. No. 63-29; Servicing Transfer Notice, ECF Doc. No. 63-31.
[23] *See* Notice of Assignment, Sale or Transfer of Ownership of Mortgage Loan, ECF Doc. No. 63-28 at PageID 1121
[24] *See* Notice of Sale of Ownership of Mortgage Loan, ECF Doc. No. 63-32 at PageID 1131.
[25] *Bank of Am., N.A. v. Greenleaf*, 2014 ME 89, ¶¶ 11, 12, 96 A.3d 700 (emphasis added).
[26] *See Gordon*, 2020 ME 33, ¶¶ 10-11, 227 A.3d 577.
[27] *See id.; see also id.* at ¶¶ 24-30 (Justice Horton's Concurring Opinion in *Gordon* criticized the Law Court's departure in *Greenleaf* from a long line of Maine precedent holding that the mortgage "follows" the note and made room for a mortgagee to establish its standing to foreclose in other ways).
[28] *See Gordon*, *supra* n. 24.

of the transfer of the mortgage loan and the lender's standing to enforce the same.[29]

Even the Law Court's decision in *Beal Bank* acknowledged that other documents may establish actual ownership of the mortgage, however, in that case, the additional documents upon which the plaintiff relied in support of its claim of ownership of the mortgage were not included in the trial record and so the Law Court could not reach the issue on appeal.[30] Unlike the *Beal* record, the summary judgment record in the instant action includes the additional documentation reflecting the transfer of ownership of the Howe Mortgage to the Plaintiff.[31]

Here, Fay relied, in good faith, on the Defendants' three expressed, written acknowledgments that the Howe Mortgage Loan had been transferred by the originating lender to its predecessor-in-interest. While it is true that, out of an abundance of caution, the Plaintiff went on to obtain a QCAOM from the Receiver appointed to wind up the affairs of the failed originator, this does not mean that transfer of the mortgage loan and the basis for standing to enforce were not already established through the three separate Loan Modification Agreements and the loan sale disclosures.[32] Because the documentation evidencing the sale of the Howe Mortgage Loan establishes that the Plaintiff had standing as the owner of the Mortgage when it sent the correspondence at issue, there is at least a genuine issue of material fact as to whether the representations set forth in said correspondence relating to the Plaintiff's foreclosure rights were improper.

In *Bond v. U.S.*, the Supreme Court recognized that, although closely related, the question of whether a party has suffered a legal injury is separate and distinct inquiry from that of whether that specific party has standing to bring a cause of action to seek redress for that injury.[33]

---

[29] *See Burek*, 2013 ME 87, ¶¶ 21-22, 81 A.3d 330 ("The proof of these transfers was buttressed by the evidence of the . . . loan modification agreement between the Bureks and Wells Fargo. . . That agreement plainly reflects the Bureks' and Wells Fargo's mutual understanding that . . . Wells Fargo had the right to enforce the note.").

[30] *Beal Bank U.S.A. v. New Century Mortgage Corporation*, 2019 ME 150, ¶ n.2, 217 A.3d 731 ("Because many of the documents Beal presented purporting to prove independent ownership of the mortgage were not admitted in evidence, we do not address further whether they were sufficient to demonstrate actual ownership").

[31] *See* Notice of Sale of Ownership of Mortgage Loan, ECF Doc. No. 63-32 at PageID 1131.

[32] *See id.*

[33] *See Bond v. U.S.*, 564 U.S. 211, 218 (2011), *citing Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 96-97, 97 n.2 (1998); *see also In re Tamir* ("*Tamir I*"), 535 B.R. 465, 467 (Bankr.D.Me. 2015)(holding that the decision in *Greenleaf* determining that a lender cannot establish standing to bring foreclosure action based upon an Assignment of Mortgage

In its Order, this Court recognized that, although the Judgment dismissing the Prior Action may bar the Plaintiff from seeking a declaration that it owned the mortgage "based on the Assignment from Challenge's nominee," it is not barred from seeking other legal relief.[34] The documentation included in the agreed summary judgment record shows that the Plaintiff has been the owner of the Howe Mortgage Loan since August 8, 2017.[35] Even if Fay did not have standing to *file* a foreclosure action from December of 2020 through September of 2021 when it sent the correspondence at issue to Howe, as the owner of the Note and Mortgage, it still had the right to enforce the same through other non-judicial collection actions or through judicial action in any bankruptcy proceedings that may have been initiated.[36] Further, on February 21, 2023, the Plaintiff obtained the QCAOM, at which time it was able to establish its standing to bring a foreclosure action under Maine Law thus validating its prior representations as to its foreclosure rights.[37] Where, as here, the Loan Modification Agreements constitute valid acknowledgments by the Defendants that the originating lender had transferred the Howe Mortgage Loan to CitiMortgage and that the Loan had been further transferred to Nationstar, and the Defendants received proper notice informing them that ownership of the Loan had been further transferred to the Plaintiff, Fay was entitled to rely on the Defendants' representations in the Loan Modification Agreements when communicating with them in relation to their default. Accordingly, the Court's determination that Fay failed to demonstrate a lack of fault for any alleged FDCPA violations is based upon a manifest error of fact or law—that ONLY recording a Quitclaim Assignment can entitle a lender or servicer to communicate with its borrower regarding a default on the mortgage.

**B.    Fay's Communications Sent Prior to the QCAOM did not Violate the FDCPA.**

---

from MERS has no effect on "the validity of the noteholder's security interest in the mortgaged real estate" in the context of the bankruptcy proceedings), *aff'd* 566 B.R. 278, 285 (D.Me. 2016)(on appeal, Judge Hornby stated: "So how does the *Greenleaf* ruling on standing to bring a foreclosure action affect the creditor's secured status in this Chapter 11 bankruptcy case? The short answer, given the procedural posture, is that it does not. I agree with the Bankruptcy Court that the fact that at this date Tamir's creditors may not have standing to foreclose their mortgages on his properties is not a basis for determining the validity of their secured claims in this chapter 11 case." (internal quotations omitted)).

[34] *See* Order 19, ECF Doc. No. 88 at PageID 1646.
[35] *See* Notice of Sale of Ownership of Mortgage Loan, ECF Doc. No. 63-32 at PageID 1131.
[36] *See Tamir II*, 566 B.R. at 285.
[37] *See* QCAOM, ECF Doc. No. 63-39, PageID 1416.

The decision in *Tamir*, holding that an Assignment of Mortgage from MERS, although insufficient to establish standing to foreclose, may be valid for other purposes (such as establishing a lender's security interest in the mortgaged real estate in bankruptcy proceedings), further supports the finding that Fay's communications with the Defendants in the year prior to the filing of their Counterclaim did not constitute a violation of the FDCPA.[38] The only time that a Quitclaim Assignment would be required, if such an Assignment is even necessary in the face of written acknowledgments of standing as set forth in the Howe Loan Modifications, is at the time of *filing* a cause of action to foreclose.[39]

Here, prior to the recording of the QCAOM, by statute, the Assignment from MERS in this matter would have been sufficient for a deed-in-lieu of foreclosure, a traditional sale deed, a modification of the loan or a discharge of the Howe Mortgage.[40] For this reason, as a matter of fact based on the agreed record in this case, case law, and on 33 M.R.S. § 508, the absence of a QCAOM does not support the finding of a violation of the FDCPA for communications with the Defendants prior to the recording of the QCAOM. As Judge Hornby explained, separation of the mortgage from the note does not nullify or void either instrument under Maine law, "[o]ne who takes a mortgagee's title holds it in trust for the owner of the debt to secure which the mortgage was given. If a mortgage is given to secure negotiable promissory notes, and the notes are transferred, the mortgagee and all claiming under him will hold the mortgaged property in trust for the holder of the notes."[41] The rationale for this is rooted in over a century of Maine Law. "If the note was assigned, and the mortgage was not, the assignee has an interest in the mortgage which will be protected by equity."[42] For these reasons, Maine Law further supports Fay's good faith efforts to enforce the security instrument prior to obtaining the QCAOM.

---

[38] *See Tamir I*, 535 B.R. at 467, *aff'd* 566 B.R. 278, 285.
[39] *See Tamir II*, 566 B.R. at 285 (on appeal, the U.S. District Court determined that an Assignment of Mortgage from MERS had no effect on the lender's secured claim in the bankruptcy proceedings. Said Assignment would only be relevant if the lender had brought a foreclosure action or filed a motion for relief from the automatic stay in order to seek foreclosure relief).
[40] *See* 33 M.R.S. § 508.
[41] *Id.* at 284, *quoting Jordan v. Cheney*, 74 Me. 359, 361 (1883).
[42] *Id., citing Cowan* & Scannell, Maine Real Estate Law and Practice § 13:2 (2d ed. 2007).

Based on the foregoing, the Plaintiff asks this Court to reconsider the portion of its decision holding that, because standing was not conferred until the QCAOM was executed, communications relating to the collection, enforcement and foreclosure of the Howe Mortgage Loan sent prior to the recording of the QCAOM were "objectively false." Whether the Loan Modifications ratified the standing necessary to *file* a foreclosure action is a legal issue that has not been determined by any Court, however, in light of the Law Court's decision in *Gordon*,[43] 33 M.R.S. § 508, the Maine statue affirming the validity of MERS Assignments for all purposes except *filing* a foreclosure case,[44] the precedent articulated in *Tamir* concerning pre-foreclosure actions,[45] the correspondence relating to the sale of the Loan,[46] as well as the plain language of the contracts themselves, Fay Servicing's communication with the Howes concerning the Mortgage default and the potential for foreclosure if the default were not resolved, was accurate, appropriate and in no way violated the FDCPA.

If this Court is not inclined to reconsider its Order and enter Judgment in favor of Fay and the Plaintiff on the Defendant's FDCPA Counterclaim, at a minimum the Plaintiff respectfully requests that this Court certify to the Law Court the question of whether a borrower's acknowledgment of a lender's standing to enforce a Note and Mortgage as set forth in the three written Mortgage Loan Modification Agreements which the borrower received the benefits of, is sufficient to estop the borrower from denying the authority of the lender and its successors-and-assigns (where proper notice documenting a sale or transfer of the Loan has been given) to communicate with the borrowers regarding their default and the provisions of the security instrument providing for the foreclosure of the mortgage lien.

DATED: January 2, 2025

/s/ Reneau J. Longoria, Esq.
Reneau J. Longoria, Esq. Bar No. 005746
Attorney for Plaintiff, Doonan, Graves & Longoria, LLC
100 Cummings Center, Suite 303C, Beverly, MA 01915

---

[43] 2020 ME 33, ¶¶ 10-11, 227 A.3d 577.
[44] *See* 33 M.R.S.A. § 508,
[45] *See Tamir II*, 566 B.R. at 285.
[46] ECF Doc. No. 63-32 at PageID 1131.