UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1<br><br>Plaintiff<br><br><br>vs.<br><br><br>Melanie B. Howe et. al.<br><br>Defendants<br><br>Melanie B. Howe<br><br>Counter-Plaintiff<br><br>Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1 and Fay Servicing, LLC<br><br>Counter-Defendants | CIVIL ACTION NO: 2:21-cv-00278-SDN<br><br><br><br><br><br>RE:<br>334 Deerwander Road, Hollis Center, ME 04042<br><br>Mortgage:<br>April 20, 2007<br>Book 15139, Page 0540 |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S FILING AT ECF NO. 121

Plaintiff, Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1, ("Wilmington"), by and through undersigned counsel, hereby responds to ECF No. 121, Howe's Brief on the Florida Receivership.  For the reasons stated herein, the Florida Court properly appointed a Receiver to wind up Challenge Financial Investors Corp., ("Challenge"), a corporation created and dissolved by that state. It is well-settled that "equity can compel one over whom it has personal jurisdiction to do an act even though that

act may affect property outside the court's territorial jurisdiction."[1] The relief Plaintiff obtained in Florida, including filing a Complaint wrapping up Challenge and seeking the appointment of a Receiver to execute the quitclaim assignment that supports the Count for Foreclosure and Sale in this matter, was well within the Florida Court's authority. The recorded Assignment of Mortgage must be given full faith and credit in these proceedings.

## I.
## INTRODUCTION

The overarching theme of the Defendant's memorandum is that the Florida action to wrap up Challenge was based on the same theory as the prior declaratory action in Maine. That false premise taints Howe's entire argument. As the Court recognized in its order denying Howe's Motion for Summary Judgment, the prior declaratory action in Maine was "effectively seeking declaratory relief as to the ownership of the Note and Mortgage." [ECF 88 at 18] The Florida action was brought to wrap up a Florida corporation. The Maine declaratory case was brought as an equitable remedy to convey the mortgage based on ownership and possession of the original Note.[2] In contrast, the Florida case was brought in the Florida Court with jurisdiction to appoint

---

[1] *See Welch v. Advance Auto Parts, Inc.,* 445 S.C. 640, 662-663 (May 21, 2025)(petition for cert. docketed Aug. 21, 2025), citing *Penn v. Lord Baltimore* (1750) 1 Ves. Sr. 444 (ordering specific performance of contract even though order affected lands in Pennsylvania and Maryland) and explicitly holding "that equity may force just such a thing has been a basic principle recognized for centuries."

[2] Between 2014 and December of 2019 many cases were advanced in Maine under the equitable trust doctrine to obtain declaratory judgments which vested ownership of a mortgage in the holder of a note under the theory that the holder of the note can obtain a valid written assignment of the mortgage or seek an equitable assignment of the interest held "in trust" by the mortgagee. *See, e.g.*, *U.S. Bank, N.A. v. Ibanez,* 458 Mass. 637, 941 N.E.2d 40, 54 (2011); *Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282, 292-93 (1st Cir. 2013)*. Beal* ended that practice in December 2019, but in footnote 12, the *Beal* Court reminded litigants that other ways exist to obtain assignments from failed corporations. *Beal Bank v. New Century*, 2019 ME 150 n. 12 (2019). One such way is to return to the state where the corporation failed to wrap it up and transfer any remaining interests retained by the originator, especially if the corporation no longer

a receiver to wrap up the defunct corporation pursuant to the Florida statutes that provide for both the creation and the wind-down of such entities.[3]    It is Florida, and Florida alone, that can wrap up a corporation formed and dissolved in Florida. The fact that it affected assets in Maine does not diminish the validity of the resulting assignment of the Mortgage, and it did not impair Ms. Howe's remaining right of redemption. Like the resolution of the asbestos litigation in *Welch,* centuries of law supported the Florida Court's power to act because it had jurisdiction over the corporate entity.  This is true even though its actions affected property outside its territorial jurisdiction.[4]

Moreover, Howe's plea to invoke the "clean hands" doctrine to invalidate the assignment of her loan, given her default in payment of same for over fifteen years, beyond the single payment of the Howe modified loan in 2014, must be rejected as Maine law, consistence with equitable jurisprudence across the nation, requires that a party seeking to advance the defense of unclean hands must themselves have "clean hands" regarding the claim and the matter generally.[5] Finally, as the Law Court reminded litigants in *Hamm v. Hamm*, while application of

---

has individuals with authority willing or able to execute transfer, assignment, or discharge documents.

[3] FL Stat. § 607 (2020).

[4] *See Welch,* 445 S.C. at 662-663; *Massie v. Watts, 6 Cranch*, 148, 160, 10 U.S. 148, 160 (1810)(citing *Penn v. Lord Baltimore* and collected cases for the proposition that "[u]pon the authority of these cases, and of others which are to be found in the books, as well as upon general principles, this court is of opinion that, in a case of fraud, of trust, or of contract, the jurisdiction of a court of chancery is sustainable wherever the person be found, although lands not within the jurisdiction of that court may be affected by the decree" and upholding the Kentucky federal court's jurisdiction to compel defendant over whom it had personal jurisdiction to convey land in Ohio).

[5] *Town of Bar Harbor v. Evans*, 499 A.2d 157 (1985)(Rejecting homeowner's Defense to his wrongful discharge of raw sewage into the Ocean based on statements made by engineer of hired by the town that it would take little to connect to town sewer")

the unclean hands doctrine is within the discretion of the court,[6] it should not be applied broadly where no duty of disclosure exists and discretion must be exercised "in furtherance of justice."[7] Where, as here, there was no duty to Howe, no equitable doctrine invalidates the assignment of the Howe Mortgage that establishes Wilmington's standing to foreclose its lien in this action.[8]

## A.    STATEMENT OF MATERIAL FACTS

1. The factual findings in ECF 88 issued by the Court in the original Note case, 2:21-CV-00278-NT, ("Note Action"), are incorporated by reference in this supplemental briefing requested by the Court to discuss the validity of the quitclaim assignment obtained through the complaint filed in Florida to appoint a receiver to wrap up Challenge and execute the quitclaim assignment that provided clear standing to file the action to foreclose the Howe Mortgage, and the paragraphs below provide additional background to address the factual allegations provided for the first time through a "Declaration of Counsel" in support of Howe's pretrial briefing.

---

[6] 584 A.2d 59, 62 (1990), citing *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.,* 324 U.S. 806, 815, 65 S.Ct. 993, 997, 89 L.Ed. 1381 (1945)

[7] *Id.*, citing *Gagne v. Cianbro Corp.,* 431 A.2d 1313, 1318 (Me.1981) (quoting *Fitch v. Whaples,* 220 A.2d 170, 173 (Me.1966)), and holding that the lower court in *Hamm* did abuse its discretion in applying the unclean hands doctrine to preclude the request for a constructive trust based on the allegation that the movant concealed his ownership of the Camp from his wife because the couple was divorced at the time of the transfer to the decedent.)

[8] *Oceanic Inn, Inc. v. Sloan's Cove*, 2016 ME 34, ¶19, 133 A.3d 1021, 1028-1029 (2016)(Law Court affirmed and awarded fees to lender for defense to validity of foreclosure and counterclaims for emotional distress finding that lender's attorney had no duty to disclose to borrower that he discovered the transfer of the ownership such that the Chapter 11 filing did not preclude the sale he conducted holding that, "a mortgagee foreclosing by power of sale does not owe a fiduciary duty to the mortgagor.")

2.  On July 24, 2010, Henry W. Howe, IV and Melanie B. Howe executed a Loan Modification Agreement acknowledging Wilmington's predecessors' ownership of and authority to modify the Howe Mortgage loan and, in turn, the loan was brought current. [ECF 47-7].

3.  On September 24, 2010, Challenge was administratively dissolved by the Florida Secretary of State, Division of Corporations, for failure to file its 2010 annual report, and the State of Florida lists the entity as an inactive Florida Profit Corporation. *See* Exhibit A (a true and correct copy of the Certificate of Administrative Dissolution for Annual Report). [ECF 63-15, ¶ 2].

4.  On July 30, 2011, Henry W. Howe, IV and Melanie B. Howe executed a second Loan Modification Agreement, again acknowledging Wilmington's predecessors' ownership of and authority to modify the Howe Mortgage loan, and, in turn the loan was again brought current. [ECF 47-8].

5.  On July 30, 2011, Henry W. Howe, IV and Melanie B. Howe executed a Compliance Agreement agreeing to cooperate with the lender in execution of additional documents in consideration of receiving a modification of their mortgage loan. *See* Exhibit B (a true and correct copy of the executed Compliance Agreement). [ECF 47-9]

6.  On August 12, 2014, Melanie B. Howe and Henry W. Howe, IV executed a third loan modification agreement, again acknowledging Wilmington's predecessors' ownership of and authority to modify the Howe Mortgage loan, and, in turn the loan was again brought current and said agreement was recorded in the York County Registry of Deeds in Book 16893, Page 631. *See* SMF ¶ 2; Joint Ex. 4 [ECF No. 63-4].

7.  Under both the loan and the loan modification agreement, the Howes agreed to make payments towards the principal and interest on the first day of every month. *See* Note at 1; Joint Ex. 4 at 2.

8.  If the Howes did not pay the full amount of each monthly payment on the due date, they agreed that they would be in default. *See* Note at 2. [ECF 88 at 3].

9.  The Howes made one payment following the modification of their loan in 2014, and on October 30, 2014, Nationstar sent a Notice of Default and Right to Cure letter to the Howes. SMF ¶ 3; *see* Joint Ex. 26 at 4, 36–44 [ECF No. 63-26].

10. On or about July 28, 2015, the registered agent for Challenge resigned. *See* Exhibit C (a true and correct copy of the Florida Secretary of State website corporation search as to Challenge Financial Investors Corp.)

11. On February 3, 2022, Henry W. Howe, IV conveyed his interest in the subject property to Melanie B. Howe by deed which is recorded York County Registry of Deeds in Book 18944, Page 635, but he remains obliged on the Note and a defendant in the Note, Money had and Received, and Unjust Enrichment causes of action.

12. On August 26, 2022, to address the *Greenleaf* issue and establish record standing to foreclose beyond the acknowledgements of standing in the loan modification agreements, a Complaint for Declaratory Relief and Appointing Receiver to wrap up the affairs of the originator, Challenge, was filed in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida as Case No. 292022CA007254A001HC (because Challenge was a domestic Florida corporation). *See* ECF 63-15 (Florida Action Complaint); *see also* Exhibit D. (a true and correct copy of the filed complaint is attached hereto).

13. In paragraph 20 of ECF 121, Howe alleges that Challenge's "owner" declined to execute an assignment of the mortgage, however the individual who declined the request to sign because the Corporation was no longer active, Chris Faoro, is not accurately described as an "owner" in 2022, twelve years after Challenge was dissolved, and it was for this reason the action was brought. *See* ECF 63-15, ¶ 33.

14. On or about January 18, 2023, a Motion to Appoint Receiver was filed in the Florida Proceeding by Florida counsel. *See* ECF 63-16 (Motion to Appoint Receiver in Florida Action). *See* Exhibit E (a true and correct copy of the Motion to Appoint Receiver is attached hereto).

15. In Paragraph 23 of ECF 121, Howe alleges that the Motion to Appoint a Receiver did not inform the Florida Court that a suit on the Howe Note was pending, implying that the Howe Note action was relevant in the Florida Action regarding Challenge, that Wilmington had a duty to Howe to discuss its precise action to obtain the assignment of the Howe Mortgage which would support a future filing of a future action to foreclose the Howe Mortgage. This is not a factual allegation but an inaccurate legal argument because as a matter of Florida Law, Howe had no standing to challenge the resulting assignment let alone the appointment of a Receiver to transfer any remaining assets.[9] This is demonstrated by the fac that even if Howe had consented to judgment in the Note Action in 2021, in order to unquestionably establish standing to foreclose the Howe Mortgage, the action to wrap up Challenge in Florida and obtain the Quitclaim assignment was required.

---

[9] In Florida any attack on an assignment of Mortgage is between the two parties to the contract and a borrower has no standing to challenge the assignment. *See 78D Team, LLC v. U.S. Bank*, N.A., 324 So. 3d 483 (Fla. 3d DCA 2020); *HSBC v. Buset*, 241 So. 3d 882, 889, 892 (Fla. 3d DCA 2018)(rejecting borrower's challenge to the assignment of lender's mortgage).

16. Paragraph 24 of ECF 121 further alleges that the Howe Note Action "acts as a *lis pendens to* warn all persons that the subject property is subject to litigation of whatever interest Wilmington might have (if any)", however this statement is not accurate as there was no *lis pendens* or Attachment filed in connection with the Howe Note case as Counsel for Howe attests to in his Declaration.

17. Further, while Howe cannot challenge the authority of the Florida Court in this action, the statement that there was no irreparable harm to support the Court's decision to appoint a Receiver because the Note case was pending is inaccurate as demonstrated by the fact that even if Howe consented to Judgment in the Note Case, the Quitclaim Assignment was necessary to further support the standing necessary to file the Foreclosure Action in Maine.

18. On or about January 24, 2023, the Florida Circuit Court held a hearing concerning the Motion to Appoint Receiver. *See* Exhibit F (a true and correct copy of the Hillsborough County Clerk of Court website as to Case No. 292022CA007254A001HC).

19. On or about February 3, 2023, the Florida Circuit Court issued an order granting the Motion to Appoint a Receiver, and it appointed Paul Wersant, Esq., as the receiver for Challenge. *See* ECF 47- 17, pp. 3-5 and ECF 63-17; Exhibit G (a true and correct copy of the Order of Appointment is attached hereto).

20. Paragraph 25 of ECF 121 also improperly challenges the actions of the Florida Court in this Court by claiming that Howe, a citizen of Maine, was somehow a necessary defendant in the action to wrap up Challenge and incorrectly suggesting that the Florida Courts would have jurisdiction over her.[10]

---

[10] *Id.*

21. Paragraphs 26 and 27 of ECF 121 both inaccurately state that the prior Declaratory Action in Maine and the pending Howe Note action were relevant to the Florida Court's wrap up of Challenge, they were not.[11]

22. In paragraph 6 of its order, the Florida Circuit Court retained jurisdiction to enter such further orders or to take any action as it deems appropriate. *Id.*

23. On or about February 21, 2023, the Receiver executed a quitclaim assignment of the Howe Mortgage to Wilmington Trust, National Association, Not in Its Individual Capacity, but Solely as Trustee for MFRA Trust 2015-1, and the Quitclaim Assignment was recorded in the York County Registry of Deeds on May 12, 2023, in Book 19237, Page 344.  *See* ECF 47-16]; Exhibit H. (a true and correct copy of the Quitclaim Assignment is attached hereto).

24. Paragraph 29 of ECF 121 implies that "domestication" of an assignment of mortgage was required, but this is also inaccurate as "domestication" of recorded assignments of mortgage has never been required and assignments are executed daily throughout the United States, recorded in Maine  and effectively transfer mortgages as reflected on the registries of deeds without "domestication" or any further action to "effectuate" the assignment. It is true that a "judgment that purports to determine or transfer rights of a person not before the court is void as to that person,"[12] but, it is not true that the Florida Action adjudicated the rights of Howe to the subject premises. Where, as here, it is well-settled that Florida had jurisdiction over its citizen, Challenge, and Howe, a citizen of Maine, has the same interest in the subject premises before and after the Florida action—her Right of Redemption, there is nothing to

---

[11] *Id.*
[12] *Hanson v. Denckla,* 357 U.S. 235, 245-55 (1958).

domesticate.  It is Howe's Right of Redemption that is at issue in the instant action. She does

not own the Howe Note or the Howe Mortgage.

25. On May 15, 2023, the Quitclaim Assignment and the Florida Order appointing the receiver

were both recorded in the York County Registry of Deeds in Book 19238, Page 93.  [ECF

47-17].  *See* Exhibit I (a true and correct copy of the Quitclaim Assignment of Mortgage and

Order Appointing Receiver are attached hereto).

26. In Paragraphs 30-31 of ECF 121, Howe alleges that documentation of the Florida action was

relevant to the documents requested in Discovery in the Note Action for which both parties

had extended dates of production into May of 2023, and Wilmington denies this because the

Docket Record at ECF 47 (filed on May 26, 2023) specifically reflects disclosure of the fact

that Plaintiff had obtained a Quitclaim Assignment through the action in Florida and sought

to Amend its complaint accordingly.

27. Further knowledge of the Florida action is reflected in the May 23, 2023, correspondence

with Attorney Steed, wherein he communicated to the undersigned that he would not consent

to a motion to amend the complaint to add a count for foreclosure.  *See* Exhibit J (email

correspondence between undersigned counsel and Attorney Steed, dated May 23, 2023, is

attached hereto). The email correspondence and the Docket Record refute paragraph 8 of the

Declaration of Counsel offered in ECF 121.

28.  On May 26, 2023, Plaintiff filed its Motion to Amend its Complaint in the original 2021

action, and the Order of the Florida Court and the Quitclaim Assignment were filed as

exhibits thereto. ECF 47-17.

29. On August 17, 2023, the Court denied the opposed Motion to Amend the Complaint to add

the Foreclosure and Sale Count and to Stay and refer the matter to the Foreclosure Diversion

Program, ECF 59, and the Note Action proceeded on Howe's Motion for Summary Judgment.

30. The Motion for Summary Judgment on the Note Action was submitted on November 16, 2023, ECF 74, however on January 19, 2024, the Court granted the joint Motion to file supplemental briefing following the Law Court's decision in *Finch* and the briefing was completed in March of 2024. ECF 78.

31. On August 5, 2024, a 14 M.R.S. § 6111 Notice was sent to Melanie Howe c/o Attorney Steed and directly to Henry W. Howe. 2:24-cv-00354 ("Foreclosure Action") [24 ECF 1-10].

32. A single count Complaint for Foreclosure and Sale was filed October 21, 2024, service was completed and defaults entered for the parties-in-interest.  [24 ECF 1, 3, 6, 7, 8].

33. Henry Howe was dismissed from the foreclosure action having conveyed his interest to Melanie. [24-ECF 11 and 16].

34. Oral Argument of the Motion for Summary Judgment was held on September 3, 2024, and the decision on Summary Judgment entered December 18, 2024. [21-ECF 82, 88].

35. The Florida Action was administratively closed on January 16, 2025.  *See* Ex. F.

36. On June 17, 2025, Howe filed a consented to Motion to Consolidate the Note Action and the Foreclosure Action for trial and the Motion was granted July 1, 2025.  [24-ECF 19-20, 21-ECF 102].

**B.    LAW AND ARGUMENT**

    **1.    Florida Law Regarding Dissolution of its Corporations Controls**

Upon information and belief, on or about September 25, 2010, the State of Florida's Division of Corporations administratively dissolved Challenge and changed its corporate status

to inactive because of its failure to file an annual report.[13]  However, Challenge, as a dissolved corporation, "continues its corporate existence but may not carry on any business except that appropriate to wind up and liquidate its business and affairs . . ."[14] A complaint to appoint receiver to wrap up the corporation was filed in Florida where Challenge was formed as a domestic corporation.[15]  Pursuant to Florida law, the Court may appoint a "trustee, custodian, or receiver, for any property owned or acquired by the corporation who may engage in any act permitted under subsection (1) if any director or officer of the dissolved corporation is unwilling or unable to serve or cannot be located."[16]

### 2.      The Receiver Steps into the Shoes of the Dissolved Corporation.

Pursuant to Florida law, "[a] court in a judicial proceeding . . . may appoint one or more receivers to wind up and liquidate, or one or more custodians to manage, the business and affairs of the corporation. The court shall hold a hearing, after notifying all parties to the proceeding and any interested persons designated by the court, before appointing a receiver or custodian. The court appointing a receiver or custodian has exclusive jurisdiction over the corporation and all of its property wherever located."[17]

While the Florida Court's Order appointing the Receiver cannot be challenged in this Court and must be given Full Faith and Credit, it is clear that the appointment was warranted to distribute the remaining assets of Challenge.  Howe argues that there is no emergency because the Note case was pending in Federal Court. Contrary to this claim, Plaintiff suffers a risk of a

---

[13] *See* Ex. A.
[14] FL Stat. § 607.1405(1) (2020).
[15] *See* ECF 63-15, Florida Case No. 292022CA007254A001HC Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County (Complaint for Declaratory Relief and Appointing Receiver to wrap-up the affairs of the originator, Challenge)
[16] FL Stat. § 607.1405(6) (2025).
[17] FL Stat. § 607.1432(1) (2019); *Welch,* 445 S.C. at 662-663; *Massie v. Watts*, 6 Cranch, at 160.

loss by no appointment of a receiver to execute the quitclaim assignment to initiate the foreclosure of the Howe Mortgage.  While a suit on a note or in equity may still lie, as in the instant matter, the risk of loss of the collateral is substantial if a mortgage is not assigned. At the very least, proceeding to enforce the note would result in a loss of priority since a lien based upon a note lawsuit would only have the lien seniority after the issuance, and recording of a judgment execution lien. There are also other collateral attacks that can be made upon a judgment execution lien which would affect its priority and ultimate enforceability that are not available in a foreclosure of mortgage lien not the least of which is the treatment in the event of a bankruptcy.

Howe mistakes not only the power of the Florida Court over its citizen corporation, but the role of the Receiver who acts with the Court's authority. As the Supreme Court of South Carolina explained this year in *Welch,* in connection with a widow's lawsuit against a Canadian producer of asbestos-containing insulation which caused her husband's death from mesothelioma, wherein the lower court appointed a receiver over the producer's insurance assets, "[t]he Receiver stands in the companies' shoes.  He may do whatever the corporation could do in relation to property, for it is in his possession subject to the control of the court." [18] "The equitable right to have a Receiver appointed is 'an ancient one.'"[19] "Its roots reach back to Elizabethan times when English courts appointed Receivers to manage and preserve the assets of a debtor's estate when there was a risk the debtor was purposefully diminishing it."[20]

Howe's reliance on *Booth v. Clark* is also misplaced as demonstrated in *Welch*. The *Welch* Court rejected the Defendant corporation's  reliance on *Booth v. Clark*, to constrict the powers of

---

[18] *See Welch* at 664.
[19] *Id.*, citing *Pelzer v. Hughes*, 27 S.C. 408, 416, 3 S.E. 781, 785 (1887).
[20] *Id.*, citing 1 Ralph Ewing Clark, Clark on Receivers § 4 (3d ed. 1959).

a receiver to assets within the state's boarders.[21]    It pointed out that *Booth* merely found that a receiver appointed by a state court had no *absolute right* to sue in a foreign jurisdiction.[22] *Booth* has been supplanted by various federal statutes and rules.[23] A receiver's right to sue in another state is controlled by the law of the foreign state, the full faith and credit clause, and comity.[24] "Equity can compel one over whom it has personal jurisdiction to do an act even though that act may affect property outside the court's territorial jurisdiction. That equity may force just such a thing has been a basic principle recognized for centuries."[25]    Recognizing the well-settled principles of *Penn v. Lord Baltimore,* Maine's Law Court has likewise recognized the jurisdiction of a state court over its citizen even when

> such an exercise of equity powers are where courts having jurisdiction of the person decree the specific performance of contracts to convey lands, enforce and regulate trusts, or relieve from fraud, actual or constructive, although the subject–matter of the contract, trust, or fraud, either real or personal property, be situated in another state or country. A leading case upon this subject, and one often cited in modern cases, is that of *Penn v. Lord Baltimore*, 1 Ves. Sr. 444, decided in 1750 by Lord Chancellor Hardwicke.

> The fact of the situs of the land being without the commonwealth does not exempt defendant from jurisdiction; the subject of the suit being the contract, and a court of equity dealing with persons, and compelling them to execute its decrees and transfer property within their control, whatever may be the situs.[26]

---

[21] 58 U.S. 322, 17 How. 322, 15 L.Ed. 164 (1854).

[22] 58 U.S. at 338, 17 How. 322. (emphasis added)

[23] *See Id.*, citing 2 Ralph Ewing Clark, Clark on Receivers § 591 (3d ed. 1959); *Mentink v. World Time Corp. of Am.*, 131 F.R.D. 210, 211 (S.D. Fla. 1990); 28 U.S.C. § 754 (2018).

[24] *See Id.*, citing 65 Am. Jur. 2d Receivers § 260 (Jan. 2025 Update); 2 Clark, supra, at § 591.

[25] *Id.*, citing *Penn v. Lord Baltimore* (1750) 1 Ves. Sr. 444 (ordering specific performance of contract even through order affected lands in Pennsylvania and Maryland).

[26] *Eaton v. McCall*, 86 Me. 346 (1894), citing *Pingree v. Coffin*, 12 Gray, 288 (Supreme Court of Massachusetts 1858).

Based on the controlling law and authorities, the Florida action to wind up Challenge was valid and the acts of the Receiver appointed by that Court to execute an assignment of Challenge's interest in the Howe Mortgage was valid. The Florida Court's order and the Receiver's quitclaim assignment should be given full faith and credit by this Court.

3.      **The Receiver correctly exercised his authority to transfer a remaining asset of the corporation, and this Maine Court will rule on the case to foreclose the land within its borders.**

Here, the Florida Court order appointing the Receiver to wind down a Florida corporation was unquestionably within the Court's powers. Challenge is a corporation formed and administratively dissolved by Florida. The court-appointed Receiver, acting with the authority of the Florida Court, likewise pursuant to the laws of Florida, had the authority to execute documents necessary to transfer any assets remaining in Challenge's name. Howe's Counterclaims are based on this very premise. Howe denies the Plaintiff has the standing to enforce its rights in the Howe Mortgage, notwithstanding the fact that she has thrice acknowledged, in her requests to modify the Howe Mortgage, that the entity, to whom she was once again promising to repay moneys lent to purchase the home, was in fact the owner of her loan. It was against this background that the Plaintiff sought and obtained the formal wind-down of Challenge through the Florida Courts to insure the requisite documentation of the Howe Mortgage from Challenge to the Plaintiff. The Florida action in no way impacted Howe's right of redemption, (which with possession were the only rights retained by Melanie Howe after the signing and recording of the mortgage[27]) and it was to this Court that the Plaintiff turned once it

---

[27] *Mortgage Electronic Registration Systems, Inc. v. Sanders,* 2 A.3d 289, 294 (Me. 2023).

had the requisite documentation to ensure an affirmative finding on its standing.  [21-ECF 47 and 24-ECF 1] It is this action that will adjudicate Howe's remaining rights in the subject premises. "In Maine, foreclosure is a creature of statute."[28] Where, as here, Maine is a title theory state, a foreclosure only terminates the equity of redemption.[29] In a title theory state, "a mortgage is a conditional conveyance vesting legal title to the property in the mortgagee, with the mortgagor retaining the equitable right of redemption and the right to possession."[30] The First Circuit's decision in *Summers* explains that the underlying rational for a mortgage's independent enforceability stems from the fact it was given in a mortgage title theory state.[31]  In a mortgage title theory state, "the right to foreclose should be treated as separate and distinct from the right to collect the underlying debt."[32]

The Florida action was not the foreclosure of lands in Maine.  The action was brought to transfer assets of a defunct entity over which the Florida Courts had jurisdiction notwithstanding the fact that the execution of the quitclaim assignment concerned Maine real estate and may ultimately support foreclosure of the lands outside of Florida. Whatever assets remained in Challenge as a result of the operation of the *Greenleaf* decision needed to be transferred.[33] The prescribed way for a defunct corporation to act under Florida law after it ceases to operate as an active corporation is to go through the wrapping up process.[34]  The process of filing an action to

---

[28] *KeyBank Nat'l Ass'n v. Keniston*, 298 A.3d 800, 2023 ME 38 (Me. 2023), *quoting Bank of Am., N.A. v. Greenleaf*, 2014 ME 89, ¶ 8, 96 A.3d 700; *see* 14 M.R.S. §§ 6101 - 6327 (2023).

[29] *Johnson-Toothaker v. Bayview Loan Servicing,* Civil Action No. 20-CV-00371-JDL, 2022 WL 3278883, at *4 (2022).

[30] *Id.*, quoting *Mortg. Elec. Reg. Sys., Inc. v. Saunders*, 2010 ME 79, ¶ 8, 2 A.3d 289.

[31] *Summers v. Fin. Freedom Acquisition LLC,* 807 F.3d 351, 355, 358 (1st Cir. 2015).

[32] *Id.* at 358.

[33]  *Bank of America, N.A. v. Greenleaf,* 96 A.3d 700 (Me. 2014) (*Greenleaf I*); *Bank of America, N.A. v. Greenleaf,* 124 A.3d 1122 (Me. 2015) (*Greenleaf II*); *see also,* Maine Title 33 §508.

[34] FL Stat. § 607.1405(1) (2020).

appoint a receiver to wind down the affairs of the corporation, whether that be to assign or discharge a mortgage or dispose of any other assets remaining in the corporate name, is neither secret nor nefarious.  Howe had no right to the assets of Challenge and no standing in an action to wrap up that corporation.[35]  Howe is frustrated that she cannot forever avoid foreclosure because her original mortgage included MERS as a nominee for Challenge, but that is not the law in Maine.[36] The Florida suit was about  the lawful process to wrap-up the corporation and appoint a receiver to assign its interests in the Mortgage to the current owner of the Note.  The Florida Court lawfully exercised its jurisdiction over a Florida corporation.  The result is a recorded assignment of the Mortgage, so the Plaintiff clearly has standing to foreclose the subject mortgage.

Maine's unique treatment of mortgages originated with MERS, as nominee, created a unique situation for Mortgagees since *Greenleaf I*.[37]  It is a problem for purposes of foreclosure only.[38]  So, since 2016, lenders have returned to originators all over the nation for quitclaim assignments.  In the early years, the assignments were often obtained from performing entities. As the years pass and corporations dissolve, mortgagees will ever more frequently need to follow the Plaintiff's path in this case: (1) go to the state where the corporation ceased operations, (2) follow the process outlined in that jurisdiction, (3) request the appointment of a receiver to wind down the defunct entity, and (4) obtain a quitclaim assignment.  This is about a technical issue

---

[35] *See 78D Team, LLC v. U.S. Bank*, N.A., 324 So. 3d 483; *HSBC v. Buset*, 241 So. 3d at 889, 892 (rejecting borrower's challenge to the assignment of lender's mortgage).

[36] *See Wells Fargo Bank, N.A. v. Girouard*, 2024 WL 3691670 *1 (2024), citing *Finch v. U.S. Bank, N.A.*, 307 A.3d 1049 (Me. 2024) *overruling Pushard v. Bank of Am, N.A.*, 175 A.3d 103, 116 (Me. 2017); *Dream Capital v. Deutsche Bank*, 2020 WL 7066313 n. 6 (First lien holder's inability to establish standing to foreclose does not "wipe-out" the Mortgage).

[37] 2019 ME 150.

[38] *See* 33 M.R.S. § 508 concerning nominee mortgagees.

affecting standing in Maine. It has never been as if MERS were a punished scheme, as the

Plaintiff insinuates. *Beal Bank* alluded to the process in footnote 12, and it has been followed to

obtain quitclaim assignments across the nation since 2019.[39] The Florida Court that appointed

the receiver for Challenge, followed Florida laws and the appointment for the purpose of

wrapping up the corporation has been followed across the nation when wrapping up corporations

in similar circumstances.[40]

### 4. Florida Law also Controls on the Issue of Howe's Standing in the Florida Case

Howe had knowledge of the Florida action at least from May of 2023 through January of

2025 and took no action. At no point does Howe disclose *what* she would have advanced as a

defense if named in the Florida Action. The futility of any appearance in the Florida action is

---

[39] *See, e.g., In re Mortgage Lenders Network USA, Inc.,* 2021 WL 426240 (Del. Ch. Apr. 5, 2021) (Order appointing receiver for the purpose of executing documents including Quitclaim assignments on the lender's behalf); *In re Aegis Mortgage Corp.,* C.A. No. 2019-0009-KSJM (Del. Ch. 2019) (Order) (Order appointing receiver for the purpose of executing documents including Quitclaim assignments on the lender's behalf); *In re First Magnus Financial Corporation (*Az. 2021) (Appointing a Receiver for the dissolved original mortgage lender and Order extending Appointment of Receiver to have continued authority to execute assignments); *In re Evest Lending, Inc.*, 2022-0685-JTL (Del. Ch. 2023) (Order appointing Receiver for dissolved original mortgage lender to execute necessary assignments); *accord In re Nationwide Lending Corp.*, 2024-0686-LWW (Del. Ch. 2024) (same); *In re Accredited Home Lenders, Inc. dba Home Funds Direct,* 37-2022-00033990-CU-MC-CTL (CA 2023); *In re American Home Mortgage Corporation dba American Brokers Conduit,* Index No. 604259/2023 (NY 2024); *In re American Home Mortgage Corporation dba American Brokers Conduit,* Index No. 608053/2024 (NY 2024); *In re American Home Mortgage Corporation dba American Brokers Conduit,* Index No. 608164/2023 (NY 2023); *In re American Home Mortgage Corporation dba American Home Mortgage*, Index No. 603546/2023 (NY 2023); *In re GMAC Mortgage Corporation,* Case No 2024-08119 (PA 2024); *In re New Century Mortgage Corp.,* S-CV-0051896 (CA 2024); *In re Platinum Capital Group,* 22TRCV00570 (CA 2023); *In re Best Rate Funding Corp.,* 30-2022-01289142-CUMC-CJC (CA 2023); *In re Coastal Capital Corp. d/b/a Clearlight Mortgage Corp.,* Index No. 610296/2024 (NY 2025); *In re Corestar Financial Group, LLC,* C-03-CV-23-001815 (MD 2024), and *In re Lendia, Inc.,* 22-cv-40153-MRG (MA 2023).
[40] *Id.*

controlled by Florida law.[41]  In Florida, any attack on an assignment of Mortgage between two lenders is precluded as the borrower has no standing to challenge the assignment.[42] For this reason Howe's claim to an interest in the Florida action is unavailing and does not impact the validity of the assignment obtained therefrom and recorded in Maine.

> **5.  <u>Wilmington should not be precluded from Foreclosing its Lien provided it can establish the elements necessary to foreclose in Maine.</u>**

Wilmington has continued to uphold the terms of its contracts with the Howes as the successor of the entity who lent them the money to purchase the home.  Wilmington and its predecessors have continued to pay property taxes and insurance to avoid tax foreclosure or in the event of a tragedy.  Howe has enjoyed the benefit of staying in the home long past her payments under the contract. Maine law does not prevent lenders from foreclosing mortgages that once had *Greenleaf* standing issues.[43]

## C.    <u>CONCLUSION</u>

Ms. Howe pleads unclean hands and trickery to attack the Quitclaim Assignment that establishes Wilmington's standing.  Howe asks for judgment in her favor as a sanction (i.e., a free house after years of not paying her loan, insurance, or taxes).  But she does not articulate how she was harmed or what she would have done but for the alleged misconduct.

Wilmington found a legitimate, legal way to establish its standing.  It did not engage in inequitable conduct.  Ms. Howe did not suffer harm because she or the Florida Court was tricked.

---

[41] *See 78D Team, LLC,* 324 So. 3d at 483; *HSBC*, 241 So. 3d at 889.
[42] *Id.*
[43] *See Wells Fargo Bank, N.A. v. Girouard*, 2024 WL 3691670 *1, citing *Finch v. U.S. Bank, N.A.*, 307 A.3d 1049 (Me. 2024) *overruling Pushard v. Bank of Am, N.A.*, 175 A.3d 103, 116 (Me. 2017).

Melanie Howe was not a necessary party to the Florida action to appoint a receiver to wrap up the affairs of Challenge. She has never held an ownership interest in Challenge and never had a right to its assets. The fact that one of Challenge's assets was the mortgage encumbering Ms. Howe's real estate in Maine does not change that. As Maine is a title theory state, once Howe mortgaged her interest in the premises, she retained only her Right of Redemption and her Right to Possession. She retained those rights before and after the Florida Action. Howe's argument that the Florida action was a second attempt to gain the equitable relief sought in the prior Maine action is also unpersuasive. While both actions sought the same end result, one sought equitable relief under Maine law. The Florida action sought and obtained completely different relief under Florida law. Accordingly, the recorded Assignment of Mortgage to Wilmington must be given full faith and credit in these proceedings.


Date: November 5, 2025                        /s/ Reneau J. Longoria, Esq.
                                             Reneau J. Longoria, Esq. Bar No. 005746
                                             Attorneys for Plaintiff
                                             Doonan, Graves & Longoria, LLC
                                             100 Cummings Center, Suite 303C
                                             Beverly, MA 01915
                                             (978) 921-2670
                                             RJL@dgandl.com

CERTIFICATE OF SERVICE

I, Reneau J. Longoria, Esq., hereby certify that on this 5th day of November 2025, I

served a copy of the above document by electronic notification using the CM/ECF system and/or

First-Class Mail to the following:

/s/ Reneau J. Longoria, Esq.
Reneau J. Longoria, Esq. Bar No. 005746
Attorneys for Plaintiff
Doonan, Graves & Longoria, LLC
100 Cummings Center, Suite 303C
Beverly, MA 01915
(978) 921-2670
RJL@dgandl.com

John Z. Steed, Esq.
Island Justice Law
40 School St.
P.O. Box 771
Stonington, ME 04681