UNITED STATES DISTRICT COURT DISTRICT OF MAINE

| | |
|---|---|
| **WILMINGTON TRUST, NATIONAL ASSOCIATION NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR MFRA TRUST 2015-1**<br>    Plaintiff<br><br>v.<br><br>**HENRY W. HOWE IV,** *et al.*<br>    Defendants | CIVIL ACTION NO: 2:21-CV-00278-SDN (consolidated for trial purposes with CA No. 2:24-cv-00354) |
| **MELANIE B. HOWE**<br>    Counter-Plaintiff<br><br>v.<br><br>**WILMINGTON TRUST, NATIONAL ASSOCIATION NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR MFRA TRUST 2015-1,** *et al.*<br>    Counter Defendants | **MELANIE HOWE'S POST-TRIAL BRIEF** |

    Melanie Howe offers the following final argument in this matter. This argument will cite to the record, primarily by referring to her relevant proposed findings, i.e., (PFF ¶ 1). Ms. Howe will refer hereinafter to Case 2:21-CV-00278 as the "Note Action" and Case 2:24-cv-00354 as the "Foreclosure Action."

    **A. The Plaintiff's Claims are Barred by 32 M.R.S. §§ 11013(7)(8)**

    "[A] debt collector may not commence a collection action more than 6 years after the date of the consumer's last activity on the debt." 32 M.R.S. § 11013(8). More specifically, "[a] debt collector may not initiate a collection action when the debt collector knows or reasonably should know that the collection action is barred by the limitations period as set forth in subsection 8." *Id.* at §

1

11013(7).  A "debt collector" is "any person conducting business in this State . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another," and specifically a debt collector, in relevant part, is "any person regularly engaged in the enforcement of security interests securing debts" and provides that "[a] person is regularly engaged in the enforcement of security interests if that person enforced security interests more than 5 times in the previous calendar year." 32 M.R.S. § 11002(6). A "collection action" is "a lawsuit or arbitration proceeding initiated to collect a debt from a consumer." 32 M.R.S. § 11002(1-A).

  The Trust and Fay are debt collectors under the Maine FDCPA. PFF ¶¶ 4-5. Each commenced the Foreclosure Action.  PFF ¶ 8. Melanie Howe is a consumer under the Maine FDCPA, and the debt at issue is a consumer debt. PFF ¶ 6. The Note Action and the Foreclosure Action were both initiated more than six years after the Howes' last activity on the Note or Mortgage, and both Fay and the Trust knew or should have known that this was the case. PFF ¶ 3. The Note Action and the Foreclosure Action each qualify as a "collection action" under the Maine FDCPA because each is a lawsuit initiated to collect a debt — the alleged unpaid balance on the Howe promissory note — from a consumer—Ms. Howe. PFF ¶ 7. The Note Action is also a collection action under the Maine FDCPA because, quite clearly, it seeks a money judgment against a consumer personally. *Id.*

  An *in rem* foreclosure is a "collection action" under the Maine FDCPA. There is no Maine caselaw, but federal caselaw is instructive. In *Obduskey v. McCarthy & Holthus LLP, 586 U.S. 466 (2019),* delt with who is a debt collector and the Court held that when a collector limits its conduct to nonjudicial foreclosure activities, it may not be subject to the FDCPA and specifically reserved the question of whether entities primarily engaged in judicial foreclosure are subject to the FDCPA "for another day." *Id.* at 479. *Obduskey* hinged on the federal FDCPA's "limited-purpose definition," which makes entities whose principal purpose is enforcement of security interests "debt collectors"

2

only for the limited purposes of § 1692f(6) (hence the name). Maine's FDCPA contains no such limitation; it goes out of its way to include, "any person regularly engaged in the enforcement of security interests securing debts" in the definition of debt collector. 32 M.R.S. § 11002(6). So *Obduskey* has no bearing on Maine's FDCPA for that reason and because Maine is a judicial foreclosure state. The Circuit Courts' pre- and post-*Obduskey* decisions dealing with foreclosure and the FDCPA are persuasive in their treatment of what is and is not debt collection. See *Barnes v. Routh Crabtree Olsen PC*, 963 F.3d 993, 999 (9th Cir. 2020)('…a person who engages in debt collection before, during, or after the judicial foreclosure proceeding is subject to the full panoply of FDCPA prohibitions"). *See also Heintz v. Jenkins*, 514 U.S. 291, 299 (1995).

      The Sixth Circuit addressed the question in a judicial foreclosure in *Glazer v. Chase Home Finance LLC*, 704 F.3d 453 (6th Cir. 2013). *Glazer* is instructive here because it thoughtfully discusses and hinges on the meaning of "debt collection" as applied to consumers under the federal FDCPA, which sheds light on what it means to "collect a debt from a consumer" under the Maine FDCPA. The *Glazer* court began by observing that, while the FDCPA does not define "debt collection," the statute defines "debt" broadly as any consumer obligation to pay money, regardless of whether the obligation is secured. *Id.* at 460–61. A home loan, it concluded, is therefore a "debt" even though it is secured by a mortgage. *Id.* at 461 (citing authorities from the Fourth and Eleventh Circuits). The court then reasoned:

> [E]very mortgage foreclosure, judicial or otherwise, is undertaken for the very purpose of obtaining payment on the underlying debt, either by persuasion (i.e., forcing a settlement) or compulsion (i.e., obtaining a judgment of foreclosure, selling the home at auction, and applying the proceeds from the sale to pay down the outstanding debt).

3

*Glazer*, 704 F.3d at 461.[1] The Sixth Circuit also observed that the existence of redemption rights[2] within the foreclosure process and the potential for deficiency judgments[3] confirm that the purpose of foreclosure is to obtain payment from a consumer. *Id. See also Wilson v. Draper & Goldberg, PLLC, 443 F.3d 373, 376 (4th Cir. 2006)* ((addressing non-judicial foreclosure) excluding *in rem* foreclosure from the FDCPA "would create an enormous loophole in the Act immunizing any debt from coverage if that debt happened to be secured by a real property interest and foreclosure proceedings were used to collect the debt." ); *Piper v. Portnoff Law Assocs., Ltd., 396 F.3d 227, 234 (3d Cir. 2005)* (addressing judicial foreclosure) "[i]f a collector were able to avoid liability under the FDCPA simply by choosing to proceed *in rem* rather than *in personam,* it would undermine the purpose of the FDCPA").

Maine's FDCPA, like the federal statute, applies to *in rem* foreclosures. Foreclosures are a way to collect money from people. Additionally, the Maine law contains provisions that specifically apply to parties engaged in actions against or involving real property. The MFDCPA defines "debt" the same way the federal act does. See 32 M.R.S. § 11002(5). As noted above, § 11002(6) expressly includes enforcers of security interests as debt collectors. It would be odd (and run contrary to canons of interpretation) for the Act to call a party "debt collector" because it regularly enforced mortgages, under 11002(6), but then not include enforcing mortgages in what it means to collect a debt.

The Plaintiff violated the Act's direct prohibition on collection actions on a dormant loan, and its claims are barred by Sections 11013(7)-(8) of the Maine FDCPA, and subject to Ms. Howe's

---

[1] The Supreme Court's decision in *Obduskey* narrowed *Glazier* in part by holding the FDCPA does not apply to debt collector's only conducting non-judicial foreclosures (which, of course does not apply in this case).
[2] Available in Maine under 14 M.R.S.A. § 6323 et seq.
[3] *See* Plaintiff's Complaint in the Foreclosure Action (ECF. 1) at ¶ 55 (admitting the Plaintiff is seeking a judgment of "personal liability" against Ms. Howe since there is no evidence in the record of her personal liability be discharged in bankruptcy).

4

Affirmative Defenses that the Note Action and the Foreclosure Action are illegal and are barred by the applicable six-year limitations period.[4][5] Judgment should be entered for Ms. Howe on all the Plaintiff's claims on this basis.

### B. The Plaintiff's Foreclosure Claim is Barred by the Defense of Unclean Hands

The doctrine of unclean hands is available as an affirmative defense to actions in equity. *Hamm v. Hamm*, 584 A.2d 59, 61 (Me. 1990). Here, there is no dispute (*see* §§ A, C-G) that the actions violate Maine law, which implicates the unclean hands doctrine as well. *Bird v. Centennial Ins. Co.*, 11 F.3d 228, 234 (1st Cir. 1993)(holding a party's unlawful actions "underlying th[e] suit" barred any equitable relief they sought pursuant to the clean hands doctrine).

The Plaintiff deceived the Florida court by passing off the Florida Action as a routine matter of getting a note holder the mortgage it would be entitled to if Florida law applied, when, in fact, a final judgment in Maine had said it *was not* entitled to the Mortgage by virtue of having the note. PFF ¶¶ 12-14. The Plaintiff should not be able to benefit from its lack of candor. As discussed, and at

---

[4] *Johnson v. McNeil*, 2002 ME 99, 800 A.2d 702, does not save Plaintiff's claims. *McNeil* held that a mortgagee may foreclose on a mortgage deed even after the statute of limitations on the underlying note has expired. But the Legislature enacted § 11013(8) thirteen years later, as part of "An Act To Prevent Abusive Debt Collection Practices," P.L. 2015, c. 272, providing that the six-year bar "applies notwithstanding any other applicable statute of limitations" and "[n]otwithstanding any other provision of law." 32 M.R.S. § 11013(8). Whatever residual foreclosure rights *McNeil* recognized (the longer SOL on an action on a mortgage), § 11013(8) extinguishes them when the party bringing the action is a debt collector. A party that is not a debt collector could still enforce the obligation — but Fay and the Trust are. PFF ¶¶ 4–5.

[5] To the extent Plaintiff argues that the MFDCPA's six-year bar on collection actions was not properly pleaded as a defense, any such argument has been waived by implied consent under Fed. R. Civ. P. 15(b)(2). Defendant raised the six-year bar explicitly in her pretrial brief (ECF 135 at 4), identified it as a triable issue in her opening statement (Trial Tr. Vol. I at 8:25–9:10), and Plaintiff agreed it was "an issue of law for Your Honor to decide" (id. at 16:1–12). Defendant then elicited extensive testimony on debt collector status without objection (Trial Tr. Vol. II at 197–199, 220–223). *See Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1172 (1st Cir. 1995) (implied consent where claim is introduced outside the pleadings and the opposing party engages or silently acquiesces).

greater length at ECF 121 and ECF 128 (incorporated herein), the Plaintiff has unclean hands as to the Foreclosure Claim, and judgment should be entered for Ms. Howe on that count.

In most jurisdictions, the mortgage follows the note. *See* Restatement (Third) of Property (Mortgages) § 5.4(a) (1997). But not so in Maine. In Maine, "the promissory note is separate from the mortgage, and the promissory note's obligations are separate from the claims related to enforcement of the mortgage." *Knope v. Green Tree Servicing, LLC*, 2017 ME 95, ¶ 20, 161 A.3d 696, 702, as revised (Nov. 30, 2017). *Mortg. Elec. Registration Sys., Inc. v. Saunders,* 2010 ME 79, 2 A.3d 289; *Bank of Am., N.A. v. Greenleaf*, 2014 ME 89, 96 A.3d 700; *Beal Bank USA v. New Century Mortg. Corp.*, 2019 ME 150, 217 A.3d 731 (rejection of the equitable assignment theory that a mortgage should follow the note).[6]

Interests in real property are governed by the law of the situs. Restatement (Second) of Conflict of Laws § 223. Florida recognizes this rule. *Beale v. Beale*, 807 So. 2d 797, 798 (Fla. 1st DCA 2002) ("the laws of the state where [real property] is situated furnish the rules which govern its descent, alienation, and transfer"). Where an out-of-state mortgage creates an estate in land in the situs, Florida law says that the mortgage is governed by the law of the situs state. *In re Siegel's Estate*, 350 So. 2d 89, 91 (Fla. 4th DCA 1977). Under Maine law, a mortgage and its assignment "are conveyances of land in fee," *Brown v. Smith*, 101 Me. 545, 64 A. 915, 916 (1906). Maine law, therefore, controls — and under Maine law, the mortgage does not follow the note. *Beal Bank USA v. New Century Mortg. Corp.*, 2019 ME 150, 217 A.3d 731. The Florida receivership was premised on a legal theory that had been rejected as to the Howe Mortgage in a binding final judgment involving the same parties and the same locus of operative facts. PFF ¶¶ 13-14. But the Plaintiff concealed these material facts from the Florida Court. PFF ¶ 12.

---

[6] Plaintiff understood the implications of *Beal Bank* all too well. The Prior Action was dismissed with prejudice after a lengthy stay of proceedings while the parties waited for the decision in *Beal Bank*. PFF ¶ 13.

6

Plaintiff also made knowingly false statements and representations to the Florida Court. Plaintiff did not name Ms. Howe as a party, even though the Florida Action sought title to her home and even though it properly named her in the Prior Action as a party in interest. PFF ¶ 11. Instead, the Florida complaint presented by the Plaintiff falsely represented that the Plaintiff was "suing all parties who may claim an interest in the loan." (Ex. 23, ¶ 42.). And, not only did Ms. Howe claim an interest in the real estate at issue, but every prior holder of the Howe Mortgage also had a possible interest in the loan.[7]

Plaintiff's material omissions and misstatements were directed at the very heart of its foreclosure claim. *See Thomas v. Orcutt*, 777 A.2d 670 (Conn. 2001). As such, the Plaintiff has unclean hands and the doors of equity should be closed to it, and judgment should be entered for Ms. Howe on the Plaintiff's foreclosure and other claims since under longstanding Maine law, courts are not supposed to aid illegal conduct. *Lord v. Chadbourne,* 42 Me. 429, 434 (1856)(quoting Lord Mansfield).

### C. The Plaintiff's Counts in the Note Action are Barred by Claim Preclusion

As briefed in the Plaintiff's Motion for Partial Summary Judgment (ECF 64), and (ECF 73), the Plaintiff's Note Action is barred by the affirmative defense of claim preclusion.

### D. The Plaintiff's Foreclosure Claim Fails—it Does not Establish the Amount Owed.

To obtain a judgment of foreclosure, Plaintiff must prove "the amount due on the mortgage note, including reasonable attorney's fees and court costs." *Chase Home Fin. LLC v. Higgins*, 2009 ME

---

[7] The note was assigned from Challenge to MERS (Ex. 8), MERS to Nationstar (Ex. 8), Nationstar to MTGLQ (Ex. 12), and MTGLQ to the Trust (Ex. 20). PFF ¶ 21. There is nothing in the record — in the Florida action or in this action — establishing that Challenge would have any obligation to Plaintiff apart from the assumption that the mortgage follows the note. The relationship between Challenge and Plaintiff is separated by a gulf of sixteen years and numerous intervening contractual relationships. Plaintiff offered no legal theory explaining why it has any right to compel anything from Challenge by bypassing every intermediary assignee it claims came before it in these actions.

136, ¶ 11, 985 A.2d 508, 510–11.  Plaintiff's judgment figures rest on a 2014 Modification that is void because Nationstar and MERS had no authority to modify the Note.  In August 2014, Nationstar and MERS signed a document with the Howes purporting to increase the principal balance to $237,175.09. PFF ¶ 18; Ex. 9, pp. 47–48. But neither Nationstar nor MERS had any demonstrated authority to modify the note. Fannie Mae was the investor and owner at the time, yet the record contains no servicing agreement, power of attorney, or other document authorizing Nationstar or MERS to act on Fannie Mae's behalf in modifying the Note's terms. PFF ¶¶ 18–19. Plaintiff's witness could identify no such authority. *Id.* Every figure Plaintiff relies on in its proposed judgment — including the principal balance of $237,175.09 — derives from this unauthorized modification. PFF ¶ 20.

A contract "may be modified by a subsequent agreement, [but] the new agreement must comply with the requirements of a valid contract." *Roy v. Danis*, 553 A.2d 663, 664 (Me. 1989). "[I]f one without authority undertakes to make a contract for another, the contract is necessarily void. It is not the contract of the principal, for the pretended agent had no power to bind him." *Noyes v. Loring*, 55 Me. 408, 411 (1867). *See also 1550 MP Rd. LLC v. Teamsters Loc. Union No. 700*, 2019 IL 123046, ¶ 28, 131 N.E.3d 99, 107 ("Where a party lacks the legal authority to form a contract, the resulting contract is void ab initio."); *E. Cent. Water Dist. v. City of Grand Forks*, 2024 ND 135, ¶ 19, 9 N.W.3d 705, 712 (same).  The 2014 modification is void.

To the extent that the Plaintiff would argue Fannie ratified the unauthorized agreement, ratification requires proof that the ratifying party was aware of the agreement. See *Remmes v. Mark Travel Corp.*, 2015 ME 63, ¶ 21, 116 A.3d 466, 472 ("For ratification of an agent's actions to occur, it is necessary that all material facts be known by the principal"); *Est. of Frost*, 2016 ME 132, ¶ 19, 146 A.3d 118, 124 ("In order to ratify an agent's conduct, a principal must have knowledge of all material facts."). There is no such evidence in the record.

8

Every figure Plaintiff relies on in its judgment figures arises from the 2014 Modification. Plaintiff's proposed judgment and proof at trial all derive from the void modification terms. The Court cannot enter a judgment of foreclosure without proof of the amount actually due on the Note, *Higgins*, 2009 ME 136, ¶ 11, and Plaintiff has not met that burden.

### E. The Plaintiff's Foreclosure Claim Fails Because its Default Notice Does not Comply With Section 6111

Section 6111(1-A) requires the notice to include "[a]n itemization of all past due amounts causing the loan to be in default and the total amount due to cure the default" and "[a]n itemization of any other charges that must be paid in order to cure the default." 14 M.R.S. § 6111(1-A)(B)–(C). These are separate requirements. *US Bank Tr. Nat'l Ass'n as trustee for VRMTG Asset Tr. v. Thomas*, No. 2:19-CV-00361-JDL, 2022 WL 4546177, at *4 (D. Me. Sept. 29, 2022).

First, the § 6111 Notice demands over $40,000 for escrow items that neither the Plaintiff nor its predecessors had any right impose or collect. PFF ¶ 15. The right to collect escrow items comes from the mortgage's covenants, which vest exclusively in the "Lender" — Challenge Financial Investors. Ex. 3. Until 2023, at the earliest, Plaintiff's chain of assignments came from MERS. PFF ¶ 21. A MERS assignment does not pass on any mortgage covenants. The Court in *Saunders* explained, when discussing this topic, that "not one of the mortgage covenants . . . including the [borrowers'] obligations to make timely payments on the note, pay property taxes, obtain property insurance, and maintain and protect the property, is made to MERS or in favor of MERS. Each promise and covenant gives rights to the lender and its successors and assigns, whereas MERS's rights are limited solely to acting as a nominee." *Mortg. Elec. Registration Sys., Inc. v. Saunders*, 2010 ME 79, ¶ 10, 2 A.3d 289. "The only right MERS has in the [borrowers'] mortgage and note is the right to record the mortgage." *Id.* ¶ 15. And a MERS assignment conveys only that bare right, "because MERS could not have granted to another person or entity any greater interest in the

9

mortgage than that enjoyed by MERS." *Bank of Am., N.A. v. Greenleaf*, 2014 ME 89, ¶ 16, 96 A.3d 700.

Neither Plaintiff nor any prior MERS assignee — including Fannie Mae — held anything more than MERS's bare right to record until 2023 at the earliest. None were the "Lender." None held the covenants that would permit the imposition of escrow charges. Challenge held those rights, and there is no evidence that Challenge or anyone acting on its behalf ever invoked them, paid on Challenge's behalf, or conveyed the right to collect them. Having the mortgage *now* does not mean that the Plaintiff is entitled to money that was paid by someone else back in 2016. Yet the § 6111 Notice demands tens of thousands in escrow advances — force-placed insurance, property taxes, mortgage insurance, and property preservation fees — paid and imposed (without authority) by servicers acting on behalf of MERS assignees with no claim to any mortgage covenant when they added those charges to the tally. PFF ¶¶ 15, 21. Even if the Plaintiff has full mortgage rights now (which Ms. Howe contests), no one had the right to collect escrow charges from 2014 to 2023, which it demands to be paid.

Second, the notice's itemization of monthly payments contradicts Plaintiff's own mortgage statements for more than three years. PFF ¶ 16. Plaintiff's witness admitted that "30 or 40 mortgage statements" reflect a different monthly amount due than what the notice states. *Id.* The discrepancies span from October 2014 through approximately January 2018 and are substantial — for example, the mortgage statement for December 1, 2014, states a total regular monthly payment of $1,556.32, but the § 6111 notice states $1,583.54 for the same payment date. *Id.* When asked what explained the discrepancy in the record, Plaintiff said: "there's not anything in the record" *Id.* TheMarch 1, 2017 payment is $1556.32 on the mortgage statements, but the Plaintiff demanded $1909.41. *Id.* The notice, therefore, does not provide the required accurate itemization of "all past due amounts" when Fay's own records contradict it for three years, and it cannot reconcile the discrepancy from evidence

10

in the record. In sum, the notice itemizes monthly payments that contradict the servicer's own records and demands escrow charges that only the "Lender" could impose.

Under § 6111 "the lender owes a basic statutory responsibility to explain to the borrower what precisely it contends is owed." *Fed. Nat'l Mortg. Ass'n v. Wilson*, No. 2:18-CV-00366-JAW, 2019 WL 1915618, at *3 (D. Me. Apr. 30, 2019). Plaintiff's notice did not do that. Because the notice did not strictly comply with § 6111(1-A)(B) and (C), Ms. Howe is entitled to judgment on the foreclosure claim such that Plaintiff is precluded from any future claim for the outstanding unaccelerated balance due on the note as of the date of the judgment. *Finch v. U.S. Bank, N.A.*, 2024 ME 2, ¶ 51 n.18, 307 A.3d 1049.

**F. Fay and the Trust are Liable to Ms. Howe for Violations of the FDCPA.**

In order to establish a claim under the FDCPA, Ms. Howe must show that (1) she is a "consumer" within the meaning of the statute, (2) the defendant is a "debt collector," (3) the challenged conduct is connected with the collection of a "debt," and (4) the defendant violated a provision of the FDCPA. *Pollard v. L. Off. of Mandy L. Spaulding*, 766 F.3d 98 (1st Cir. 2014). Partial summary judgment against Fay has already been determined by the Court. ECF 60. At trial, Fay stipulated that it is a debt collector under the FDCPA. PFF ¶ 23. Ms. Howe is a Consumer. PFF ¶ 6.

As to the Trust, it is a debt collector because its principal purpose is the collection of debts, and it acquired the Howe loan when it was in default. 15 U.S.C. § 1692a(6); PFF ¶ 24; *Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466, 468, 139 S. Ct. 1029, 1031, 203 L. Ed. 2d 390 (2019). This "principal purpose," as opposed to the more regularly litigated "regularly collects for another" test for whether an entity qualifies as a debt collector, has not been addressed by the First Circuit.

In *Barbato*, the Third Circuit found that a debt buyer like the Plaintiff here, which purchased defaulted consumer debts and referred accounts to third-party servicers and collection attorneys for collection, was a debt collector under the principal purpose test. 916 F.3d at 262–63. The court

11

found that the default debt purchaser's "only business was the purchasing of debts for the purpose of collecting on those debts" and that "without the collection of those debts, Crown would cease to exist." *Id.* at 268. The court held that "[a]s long as a business's raison d'etre is obtaining payment on the debts that it acquires, it is a debt collector. Who actually obtains the payment or how they do so is of no moment." *Id.* at 266. See also *McAdory v. DNF Assocs., LLC*, 952 F.3d 1089 (9th Cir. 2020) (entity's principal purpose was debt collection where it derived "the vast majority of its income" from collecting on the debts it purchased").

Here, the Trust's only income comes from collecting payments on mortgage debts and taking ownership of properties through foreclosure. PFF ¶¶ 4, 24. It has no other investments. *Id.* Its raison d'etre is the collection and enforcement of debts. The Trust is a debt collector under the FDCPA. Melanie Howe also qualifies as a "consumer" under the FDCPA as a natural person allegedly obligated to pay a debt. 15 U.S.C. § 1692a(3); PFF ¶ 6.

Even though the Trust did not directly communicate with Ms. Howe, it is liable for Fay's FDCPA violations committed on its behalf since it also qualifies as a debt collector. *Barbato v. Greystone Alliance, LLC*, 916 F.3d 260, 270 (3d Cir. 2019) (debt buyer whose principal purpose was debt collection vicariously liable and "should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf."); *McAdory v. DNF Associates, LLC*, 952 F.3d 1089 (9th Cir. 2020) (same; DNF could not "avoid liability simply by referring the actual interactions with consumers to a third party"). The Trust authorized Fay to collect payments, impose fees, and initiate lawsuits on its behalf, including both the Note Action and the Foreclosure Action. PFF ¶ 25.

Fay and the Trust violated the FDCPA by threatening foreclosure without the right to foreclose. On September 21, 2021, Fay told Ms. Howe: "We have a right to invoke foreclosure based on the terms of your mortgage contract." PFF ¶ 26; Ex. 48, p. 1391. Every monthly statement from October 2019 through December 2020 warned Ms. Howe that if she did not pay, she "may

12

risk foreclosure — the loss of your home." PFF ¶ 26. But that was not true. The Trust had even told the Florida court that it could not foreclose. PFF ¶¶ 10, 27; Ex. 27, ¶ 14. Fay, additionally, had no procedures to verify the right to foreclose before sending these communications. PFF ¶ 32. Fay therefore violated § 1692e(2)(A) (false representation of the legal status of a debt), § 1692e(5) (threat to take action that cannot legally be taken), and § 1692e(10) (use of any deceptive means to collect or attempt to collect a debt).

Fay and the Trust violated the FDCPA by demanding amounts not owed. As outlined in Section D, above, Fay was charging Ms. Howe unauthorized escrow charges from October 2019 through December 2020. PFF ¶¶ 15, 28. This violates § 1692e(2)(A) (false representation of the amount of a debt), § 1692f (unfair or unconscionable means of collection), and § 1692f(1) (collection of amounts not authorized by the agreement or permitted by law).

Fay and the Trust violated the FDCPA by sending inspectors to Ms. Howe's property. Fay had no right to inspect or monitor her home without a valid mortgage assignment authorizing inspection. PFF ¶ 29. Ms. Howe testified that inspectors trespassed on her property in the summer after COVID started (2020) and, when confronted, yelled at her to "pay your bills." PFF ¶¶ 29, 35. She also testified that she has significant ongoing anxiety about inspectors, telling the Court she "always feel[s] like I'm being watched." PFF ¶ 35. These acts violate §§ 1692d, 1692e(10), and § 1692f(1).

### G. Fay Violated its Duty to Act in Good Faith under 14 M.R.S.A. § 6113.

Section 6113(2) requires a mortgage servicer to act in good faith in its dealings with an obligor. The statute defines "good faith" as "honesty in fact and the observance of reasonable commercial standards of fair dealing." 14 M.R.S. § 6113(1)(A). Fay stipulated at trial that it is a mortgage servicer under § 6113. (Vol. II, pp. 197–98.) Ms. Howe is an obligor under § 6113(1)(D). The Howe mortgage is an obligation under § 6113(1)(C). As noted above, Fay made false statements

in its communications with Ms. Howe. It told her it could foreclose on her, when it could not, and it told her she owed money she did not owe. These serious false statements, sustained from October 2019 through the filing of Ms. Howe's counterclaims, establish a pattern of Fay failing to meet its obligation to be honest.

FDCPA violations should be violations of the duty of good faith. No court has previously addressed whether FDCPA violations constitute per se violations of § 6113. However, Plaintiff asks this court to find that violating federal consumer protection laws while servicing a mortgage obligation of that same consumer constitutes a failure to observe reasonable commercial standards of fair dealing and is a violation of Section 6113.

### H. Damages under the FDCPA and Section 6113

Ms. Howe is entitled to statutory damages of $1,000 against each debt collector under the FDCPA. 15 U.S.C. § 1692k(a)(2)(A). The Court should award the maximum statutory amount against each given the frequency and persistence of the violations, their intentional nature, and the extent to which they were the product of deliberate corporate policy rather than isolated error. *See* 15 U.S.C. § 1692k(b)(1).

Ms. Howe is separately entitled to statutory damages not exceeding $15,000 under § 6113(4)(B) for Fay's pattern or practice of violating its duty of good faith. In determining the amount, the Court is directed to consider the facts in 14 M.R.S. § 6113(4)(B)(1)–(4) which warrant this sum given the gravity of the persistent violations and each factor weighs in favor of the maximum award of the full $15,000. Not only are there multiple individual violations of statutory duties in the record here, but Fay also testified that it had no policies for dealing with the specific requirement of Maine law and MERS assignments. PFF ¶ 32.

Ms. Howe is entitled to actual damages under both the FDCPA and state law. 15 U.S.C. § 1692k(a)(1); 14 M.R.S. § 6113(4)(A). Actual damages include compensation for emotional distress.

14

*Sweetland v. Stevens & James, Inc.*, 563 F. Supp. 2d 300, 304 (D. Me. 2008). Such damages may be established through plaintiff testimony alone, without medical evidence or expert testimony. *Goodin v. Bank of Am., N.A.,* 114 F. Supp. 3d 1197, 1211, 1210 (M.D. Fla. 2015) ($50,000 per plaintiff awarded by court based on lay testimony alone, without medical evidence, where bank repeatedly misrepresented amounts owed, ignored attempts to correct errors, crediting testimony about "feelings of loss of control and the very real fear of losing their home"); *Johnson v. Columbia Debt Recovery, LLC*, No. C20-573RSM, ECF No. 32 (W.D. Wash. June 17, 2021)($30,000 per plaintiff; "expert testimony is not a requirement for recovery" of emotional distress damages where collector made "numerous false and misleading statements").

The damages here run from October 2019 to December 2021, including the first-summer-of-COVID trespass and insults by Fay's inspectors, under the servicer duty of good faith, and from December 2020 to December 2021 for the FDCPA. Plaintiff leaves the amount of actual damages to the sound discretion of the Court.

### I. Prayer for Relief

Ms. Howe asks that Judgment be entered against the Plaintiff on all its claims and in favor of Ms. Howe, and that judgment be entered for her on all of her counterclaims, and that she be awarded her damages, costs, and attorney fees (to be pursued post-judgment).

Dated: February 20, 2026                                                          Respectfully Submitted,

/s/    John Z. Steed
John Z. Steed, Esq. Bar # 5399
Island Justice, LLC
P.O. Box 771
Stonington, Maine 04681
john@islandjusticelaw.com

15